## **EXHIBIT 2**

**Blackline**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LIGADO NETWORKS LLC *et al.*,[1] | Case No. 25-10006 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket ~~No~~Nos. —[●]** |

## ORDER (I) APPROVING
## PROPOSED DISCLOSURE STATEMENT AND
## FORM AND MANNER OF NOTICE OF DISCLOSURE
## STATEMENT HEARING, (II) ESTABLISHING SOLICITATION
## AND VOTING PROCEDURES, (III) SCHEDULING CONFIRMATION
## HEARING, (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR
## CONFIRMATION OF PROPOSED PLAN, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of Ligado Networks LLC and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (a) approving the Disclosure Statement and the form and manner of notice of the hearing to consider the same, (b) scheduling the Confirmation Hearing and the form and manner of notice thereof, (c) approving the procedures for soliciting votes and voting on the Plan, (d) approving the form of Ballots that the Debtors will send to Holders of Claims or Interests that are entitled to vote on the Plan, (e) approving the form of Notice of Non-Voting Status and third-party release opt-out form that

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A).  The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

the Debtors will send to Holders of Claims or Interests that are not entitled to vote on the Plan, (f) approving the notice and objection procedures for the Plan, and (g) seeking certain related relief,  all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409*;* and due and proper notice of the Motion having been provided to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing on the Motion; and all objections to the Motion having been withdrawn, resolved or overruled; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their estates and creditors; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**IT IS FOUND AND DETERMINED THAT:**

A.      <u>Notice of the Disclosure Statement Hearing and Disclosure Statement Objection Deadline</u>.  Notice of the hearing to consider approval of the Disclosure Statement (the "<u>Disclosure Statement Hearing</u>") and the deadline for filing objections to the Disclosure Statement, as set forth in the Motion, provided due, proper, and adequate notice, comported with due process, and complied with Bankruptcy Rules 2002 and 3017 and Local Rules 2002-1, 3017-1, and 9006-1.  No further notice is required.

B.      The Disclosure Statement.  The Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code.  All objections to the approval of the Disclosure Statement not previously withdrawn are overruled on the merits.

C.      Balloting and Voting Procedures.  The procedures set forth in the Motion for the solicitation and tabulation of votes to accept or reject the Plan are fair and equitable and consistent with section 1126 of the Bankruptcy Code.

D.      Ballots.  The Ballots substantially in the form annexed hereto as **Exhibits 2.A–2.~~G~~H**, including all voting instructions provided therein, are consistent with Official Bankruptcy Form No. B 314, address the particular needs of these chapter 11 cases, and provide adequate information and instructions for each individual entitled to vote to accept or reject the Plan.  No further information or instructions are necessary.

E.      Master Ballots and Beneficial Holder Ballots.  The Master Ballots, substantially in the form annexed hereto as **Exhibits 2.A and 2.~~D~~E**, and the Beneficial Holder Ballots, substantially in the form annexed hereto as **Exhibits 2.B and 2.~~E~~F**, including all instructions provided therein, address the particular needs of these chapter 11 cases, and are adequate.  No further information or instructions are necessary.

F.      Parties Entitled to Vote.  Pursuant to the Plan, the holders of Claims and/or Interests in the following Classes are entitled to vote on the Plan: (i) Class 3 (First Lien Claims), (ii) Class 4 (1.5 Lien Claims), (iii) Class 5 (Second Lien Notes Claims), (iv) Class 9 (Existing Series A-0 Preferred Units), and (v) Class 10 (Existing Series A-1 Preferred Units).

G.      Parties Not Entitled to Vote.  Pursuant to the Plan, the holders of Claims and/or Interests in the following Classes are not entitled to vote on the Plan: (i) Class 1 (Priority Non-Tax Claims), (ii) Class 2 (Other Secured Claims), (iii) Class 6 (General Unsecured Claims),

3

(iv) Class 7 (Intercompany Claims), (v) Class 8 (Intercompany Interests), (vi) Class 11 (Existing Series A-2 Preferred Units), (vii) Class 12 (Existing Series B Preferred Units), (viii) Class 13 (Existing Series C Preferred Units), (ix) Class 14 (Existing Series A Common Units), and (x) Class 15 (Existing Series B Common Units).  Likewise, holders of unclassified General Administrative Claims, Priority Tax Claims, DIP Claims, and Professional Fee Claims are not entitled to vote.

H.      <u>Notices of Non-Voting Status</u>.  The Notices of Non-Voting Status, substantially in the forms attached hereto as **<u>Exhibit 3</u>**, comply with the Bankruptcy Code, applicable Bankruptcy Rules, and applicable Local Rules and, together with the Confirmation Hearing Notice and, where applicable, the Disclosure Statement and the Plan, provide adequate notice to the Non-Voting Holders of their non-voting status.

I.      <u>Solicitation</u>.  The proposed distribution and contents of the Solicitation Packages comply with Bankruptcy Rules 2002 and 3017 and Local Rule 9006-1 and constitute sufficient notice to all interested parties of the Voting Record Date, Voting Deadline, Plan Objection Deadline, Confirmation Hearing, and other related matters.  The period proposed by the Debtors during which the Debtors may solicit votes to accept or reject the Plan is a reasonable and sufficient period of time for the Voting Classes to make an informed decision regarding whether to accept or reject the Plan and for the holders of Claims and Interests entitled to vote (or their Nominees) to timely return their Ballots or Master Ballots, as applicable, evidencing such decision.

J.      <u>Notice of Confirmation Hearing and Plan Objection Deadline</u>.  The form of the notice of the time, date, and place of the Confirmation Hearing and for filing objections or

responses to the Plan, provide due, proper, and adequate notice, comport with due process, and comply with Bankruptcy Rules 2002 and 3017 and Local Rule 9006-1.

K.    <u>Sufficient Notice</u>.  Other than the notices to be provided pursuant to the procedures set forth in the Motion are good and sufficient notices with respect to all matters pertinent to the relief requested in the Motion.  No further notice is required.

L.    <u>Relief is Warranted</u>.  The legal and factual bases set forth in the Motion establish just and sufficient cause to grant the relief requested therein.

**IT IS HEREBY ORDERED THAT**:

1.    The Motion is granted as set forth herein.

**I.    Disclosure Statement**

2.    The Disclosure Statement contains adequate information in accordance with section 1125 of the Bankruptcy Code and is **APPROVED**.

3.    All objections, if any, to the Disclosure Statement that have not been withdrawn or resolved as provided for in the record of the hearing are overruled on the merits.

4.    The form and manner of notice of the hearing on the Disclosure Statement complied with all applicable Bankruptcy Rules and Local Rules.

5.    The Disclosure Statement (including all applicable exhibits thereto) provides sufficient notice of the injunction, exculpation, and release provisions contained in Article VIII of the Plan, in accordance with Bankruptcy Rule 3016(c).

#4914-8593-8464v8

II.     **Solicitation and Voting Procedures**

    **A.  The Voting Record Date.**

       6.    The Voting Record Date shall be ~~April 25~~**[June 20]**, **2025**.  Only holders of Claims in the Voting Classes as of the Voting Record Date shall be entitled to vote to accept or reject the Plan.

       7.    With respect to transfers of Claims filed pursuant to Bankruptcy Rule 3001(e), the transferee shall be entitled to receive a Solicitation Package and, if the holder of such Claim is entitled to vote with respect to the Plan, cast a Ballot on account of such Claim only if: (a) all actions necessary to transfer such Claim are completed by the Voting Record Date; or (b) the transferee files by the Voting Record Date (i) all documentation required by Bankruptcy Rule 3001(e) to evidence the transfer; and (ii) a sworn statement of the transferor supporting the validity of the transfer.  In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote on the Plan and election with respect to the Third-Party Release made by the holder of such Claim as of the Voting Record Date.

    **B.  Solicitation Packages.**

       8.    The contents of the Solicitation Packages are **APPROVED**.

       9.    The Debtors shall mail the Solicitation Packages no later than **three (3) business days following the date of entry of the Disclosure Statement Order** (the "Solicitation Date") to the U.S. Trustee and holders of Claims and Interests in the Voting Classes entitled to vote on the Plan as of the Voting Record Date, as required by Bankruptcy Rule 3017(d).

#4914-8593-8464v8

10.     Solicitation Packages shall contain:

    a.  Instructions, including a QR code, for accessing the Disclosure Statement Order, the Disclosure Statement, and the Plan;

    b.  *Notice of (I) Hearing on Confirmation of the Proposed Plan, (II) Procedures for Objecting to the Confirmation of the Proposed Plan, and (III) Procedures and Deadline for Voting on the Proposed Plan*, substantially in the form attached as **Exhibit 1** to the proposed Order (the "Confirmation Hearing Notice");

    c.  a customized Ballot and a postage-prepaid return envelope; and

    d.  if the recipient is a Nominee, the applicable Master Ballots, together with a sufficient number of Beneficial Holder Ballots to be distributed to each Nominee's Beneficial Holders.

11.     Any holder of a Claim or an Interest may request an additional copy of the Disclosure Statement (and attachments) in electronic format on a USB flash drive or paper format by telephone or by written request.  Upon receipt of a telephonic or written request, the Debtors will provide such holder with a paper copy of the Plan and the Disclosure Statement at no cost to the creditor within five (5) business days thereafter.

12.     The Debtors shall not be required to send Solicitation Packages to creditors whose Allowed Claims have already been paid in full; *provided*, *however*, that if any such creditor would be entitled to receive a Solicitation Package for any other reason, then the Debtors shall send such creditor a Solicitation Package in accordance with the procedures set forth herein.  The Debtors are excused from mailing Solicitation Packages or any other materials related to voting or confirmation of the Plan to those addresses from which Solicitation Packages have been returned as undeliverable by the United States Postal Service unless the Debtors are provided with accurate addresses for the relevant parties before the Voting Deadline, and failure to mail Solicitation Packages or any other materials related to voting or confirmation of the Plan

to such parties shall not constitute inadequate notice of the Confirmation Hearing or the Voting Deadline and shall not violate Bankruptcy Rule 3017.

**C.  Notices of Non-Voting Status.**

13.     The Notices of Non-Voting Status are **APPROVED**.

14.     To the Non-Voting Holders, the Debtors shall send the Notice of Non-Voting Status substantially in the form attached hereto as **Exhibit 3**.

15.     The Debtors do not have to serve any notices in connection with solicitation of votes on the Plan to the holders of Intercompany Claims in Class 7 or Intercompany Interests in Class 8.

**D.  Ballots and Master Ballots.**

16.     The forms of Ballots, substantially in the form attached hereto as **Exhibits 2.A–2.~~G~~H**, and of Master Ballots, substantially in the form attached hereto as **Exhibits 2.A and 2.~~D~~E**, are **APPROVED**.

17.     The Debtors are authorized to make non-substantive changes to the Ballots and Master Ballots without further order of the Court, including ministerial changes to correct typographical and grammatical errors prior to mailing.

18.     The Voting Deadline shall be ~~May 29~~**[July 24]**, **2025 at 4:00 p.m. (prevailing Eastern Time)**.

19.     All Ballots (including Beneficial Holder Ballots) and Master Ballots must be properly executed, completed, and delivered to Omni by first-class mail, overnight courier, or hand delivery so that they are **actually received** by Omni no later than the Voting Deadline.  In addition to accepting hard copy Ballots via first class mail, overnight courier, and hand delivery,

the Debtors are authorized to accept Ballots (but not Master Ballots and non-pre-validated Beneficial Holder Ballots) via electronic, online transmission of Ballots at the following website: https://omniagentsolutions.com/Ligado-Ballots (the "E-Ballot Portal").  Parties who so elect may fill out a Ballot and electronically submit the Ballot utilizing the E-Ballot Portal.  Instructions for electronic, online transmission of Ballots will be set forth on the E-Ballot Portal.  The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

**E.  Tabulation Procedures.**

20.    The following tabulation procedures are **APPROVED**.

(a)    Except as otherwise provided herein or unless waived by the Debtors or permitted by order of the Court, the Debtors will reject the Ballots and Master Ballots that are not submitted on or prior to the Voting Deadline as invalid and will not count the votes submitted by such untimely Ballots or Master Ballots in connection with confirmation of the Plan.

(b)    Whenever a party casts more than one Ballot voting the same Claim(s) or Interest(s) before the Voting Deadline, the last valid Ballot received on or before the Voting Deadline will be deemed to reflect such party's intent, and thus, supersede any prior Ballot(s).

(c)    Whenever a properly completed, executed and timely returned Ballot (including Beneficial Holder Ballot) does not indicate either an acceptance or rejection of the Plan, the Ballot will not be counted.

(d)    Whenever a properly completed, executed, and timely returned Ballot (including Beneficial Holder Ballot) indicates both an acceptance and rejection of the Plan, the Ballot will not be counted.

(e)    A holder of a Claim or Interests, as applicable, in a Voting Class will be deemed to have voted the full amount of its Claim or Interest in such Class and will not be entitled to split its vote.  Any Ballot that partially accepts and partially rejects the Plan will not be counted.

9

(f)　　　Ballots cast by the same party that are received by Omni on the same day which are voted inconsistently will not be counted.

(g)　　　Additionally, the following Ballots will not be counted:

　　　i.　　　Any Ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the claimant or interest holder;

　　　ii.　　　Any Ballot cast by a party that does not hold a Claim or Interest, as applicable, in one of the Voting Classes;

　　　iii.　　　Any unsigned Ballot or Master Ballot;

　　　iv.　　　Any Ballot which the Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; or

　　　v.　　　Any Ballot or Master Ballot transmitted to Omni by means not specifically approved herein.

(h)　　　If a Ballot (including Beneficial Holder Ballot) is being signed by a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, such person must indicate such capacity when signing and, if requested by Omni, the applicable Nominee, the Debtors, or the Court, must submit proper evidence to so act on behalf of the holder of the relevant Claim or Interest, as applicable.  In addition, authorized signatories should provide their name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the applicable Ballot. Any Ballot (including Beneficial Holder Ballot) cast by a person or entity not entitled to vote, even if such person or entity casts a Ballot on account of a Claim or Interest, as applicable, in one of the Voting Classes.

(i)　　　The Debtors, and except as otherwise provided by order of the Court, may waive any defect or irregularity as to any particular Ballot or Master Ballot at any time, either before or after the Voting Deadline, and any such waiver will be documented in the voting certification to be filed by Omni (the "Voting Certification").

(j)　　　Neither the Debtors, nor any other person or entity, including Nominees, will have any duty to provide notification of defects or irregularities with respect to the delivered Ballots, nor will any of them incur any liability for failure to provide such notification.

(k)　　　Unless waived by the Debtors, and except as otherwise provided by order of the Court, any defects, or irregularities in connection with deliveries of

Ballots or Master Ballots must be cured prior to the Voting Deadline or such Ballots or Master Ballots, as applicable, will not be counted.

(l)     The Debtors are authorized to enter into stipulations or other agreements with the holders of Claims and Interests agreeing to the amount of their Claims or Interests for voting purposes.

21.     To assist in the solicitation process, Omni may contact parties that submit incomplete or otherwise deficient Ballots or Master Ballots to make a reasonable effort to cure such deficiencies; *provided*, *however*, that Omni is not obligated to do so.

**F.  The Confirmation Hearing.**

22.     The Confirmation Hearing shall be held on ~~June 10~~**[August 7], 2025 at ~~10:00 a.m.~~[2:00 p.m.]** (prevailing Eastern Time)**; *provided*, *however*, that the Confirmation Hearing may be adjourned or continued from time to time without further notice, including adjournments announced in open court or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Court.

**G.  Plan Supplement.**

23.     The Debtors shall file and serve the Plan Supplement on or before **the date that is seven (7) days before the Voting Deadline**.  If the Voting Deadline or the Plan Objection Deadline is extended, the Debtors shall be authorized to file the Plan Supplement by the earlier of seven (7) days prior to such extended Voting Deadline or Plan Objection Deadline, as applicable.

24.     The deadline to object or respond to confirmation of the Plan shall be ~~May 29~~**[July 24], 2025 at 4:00 p.m. (prevailing Eastern Time)**.

25.     Objections and responses, if any, to confirmation of the Plan, must: (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules; (c) set forth the name of

the objecting party, the nature and amount of Claims or Interests held or asserted by the objecting party against the Debtors' estates or property; (d) set forth the basis for the objection and the specific grounds therefor, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; and (e) be filed, together with proof of service.

26.     Registered users of this Court's case filing system must electronically file their objections and responses.   All other parties in interest must file their objections and responses in writing with the United States Bankruptcy Court Clerk's Office, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801.

27.     Pursuant to Bankruptcy Rule 3017, any objection or response also must be served upon and received by the following parties:

**Debtors**
Ligado Networks LLC
10802 Parkridge Boulevard
Reston, VA 20191
Attn: Vicky McPherson
Email: vicky@ligado.com

**Office of the U.S. Trustee**
Office of the U.S. Trustee for
the District of Delaware
844 King Street
Suite 2207, Lockbox 35
Wilmington, Delaware 19801
Attn: Benjamin Hackman, Esq.
Email: Benjamin.a.hackman@usdoj.gov

**Counsel to the Debtors**
Milbank LLP
55 Hudson Yards
New York, New York 10001
Attn: Dennis F. Dunne
Matthew L. Brod
Lauren C. Doyle
Telephone:   (212) 530-5000
Facsimile:    (212) 530-5219
Email: ddune@milbank.com
mbrod@milbank.com
ldoyle@milbank.com

**Co-Counsel to the Debtors**
Richards, Layton, & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Attn: Mark D. Collins
Michael J. Merchant
Amanda R. Steele
Telephone: (302) 651-7700
Facsimile:    (302) 651-7701
Email: collins@rlf.com
merchant@rlf.com
steele@rlf.com

**Counsel to the Ad Hoc Crossholder Group**
Kirkland & Ellis LLP
601 Lexington Avenue

**Counsel to the Ad Hoc First Lien Group**
Sidley Austin LLP

12

New York, NY 10022
Attn: Brian Schartz, P.C.
Derek I. Hunter
Email: brian.schartz@kirkland.com
derek.hunter@kirkland.com

-and-

Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
Attn: Patrick J. Nash, Jr., P.C.
Alan McCormick
Email: patrick.nash@kirkland.com
  alan.mccormick@kirkland.com

One South Dearborn
Chicago, IL 60603
Attn: Jason L. Hufendick
Dennis Twomey
Email: jhufendick@sidley.com
dtwomey@sidley.com

28.     Objections to confirmation of the Plan that are not timely filed and served in the manner set forth above shall not be considered and shall be deemed overruled.

29.     The Debtors are authorized to file and serve replies or an omnibus reply to any objections to the confirmation of the Plan along with a brief in support of confirmation (either separately or by a single, consolidated pleading), the Voting Certification and any affidavits or declarations in support of confirmation of the Plan on or before **the date that is three (3) business days prior to the Confirmation Hearing, at 4:00 p.m. (prevailing Eastern Time)** (the "Reply Deadline").  In addition, any party in interest may file and serve a statement in support of confirmation of the Plan and/or a reply to any objections to confirmation of the Plan on or before the Reply Deadline.  If the Confirmation Hearing is adjourned, the Reply Deadline shall be 12:00 p.m. (prevailing Eastern Time) on the date that is two (2) business days prior to the date of the adjourned Confirmation Hearing.

**H.  Confirmation Hearing Notice**

30.     The Confirmation Hearing Notice substantially in the form attached hereto as **Exhibit 1** is **APPROVED.**

13

#4914-8593-8464v8

31.     The Debtors shall publish the Publication Notice no later than three (3) business days after entry of this Order  in the *New York Times* and *USA Today*.

**I.  General**

32.     The Debtors are authorized to make non-substantive changes to the Disclosure Statement, the Plan, the Ballots, the Master Ballots, the Notice of Non-Voting Status, and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages prior to mailing.

33.     The Debtors are authorized to take all steps necessary or appropriate to carry out the provisions of this Order.

34.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

#4914-8593-8464v8

**EXHIBIT 1**

**Confirmation Hearing Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| LIGADO NETWORKS LLC *et al.*,[1] | Case No. 25-10006 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: [August 7], 2025 at [2:00 p.m.] (ET)]** |

**NOTICE OF (I) HEARING ON THE CONFIRMATION OF THE PLAN,**
**(II) PROCEDURES FOR OBJECTION TO THE CONFIRMATION OF THE PLAN,**
**AND (III) PROCEDURES AND DEADLINE FOR VOTING ON THE PROPOSED PLAN**

**TO ALL PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE THAT:**

1.      ***Approval of Disclosure Statement***.  On [●], 2025, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order (Docket No. [●]) (the "Disclosure Statement Order") approving the *Disclosure Statement for Joint Chapter 11 Plan of Ligado Networks LLC, and Its Affiliated Debtors and Debtors in Possession* (Docket No. 349[●]) (the "Disclosure Statement")[2] in the above-captioned chapter 11 cases. The Disclosure Statement Order, among other things, authorizes the Debtors to solicit votes to accept or reject the *Joint Chapter 11 Plan of Ligado Networks LLC and Its Affiliated Debtors and Debtors in Possession*, filed on March 22[●], 2025 (Docket No. 348[●]) (the "Plan").

2.      ***Confirmation Hearing***.   A hearing to consider confirmation of the Plan (the "Confirmation Hearing") has been scheduled before the Honorable Thomas M. Horan, United States Bankruptcy Judge, in the Bankruptcy Court, 824 North Market Street, 3rd Floor, Courtroom 7, Wilmington, Delaware 19801, on June 10[August 7], **2025 at** 10:00 a.m.[2:00 p.m.] **(prevailing Eastern Time)**.  The Confirmation Hearing may be adjourned or continued from time to time without further notice other than adjournments announced in open court or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the

---

[1]      The "Debtors" in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2]      Capitalized terms used but not defined in this Notice have the meanings ascribed to them in the Disclosure Statement or the Plan, as applicable.

Bankruptcy Court.  The Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing.

3.      ***Voting Record Date***.  The holders of Claims and Interests in the following classes as of ~~April 25~~**[June 20]**, 2025 (the "Voting Record Date") are entitled to vote on the Plan:

| Class | Description |
|-------|-------------|
| Class 3 | First Lien Claims |
| Class 4 | 1.5 Lien Claims |
| Class 5 | Second Lien Notes Claims |
| Class 9 | Existing Series A-0 Preferred Units |
| Class 10 | Existing Series A-1 Preferred Units |

4.      ***Voting Deadline***.  All votes to accept or reject the Plan must be **actually received** by the Debtors' voting and tabulation agent, Omni Agent Solutions, Inc. ("Omni"), by no later than ~~May 29~~**[July 24]**, **2025 at 4:00 p.m. (prevailing Eastern Time)** (the "Voting Deadline"). Any failure to follow the voting instructions included with your Ballot may disqualify your vote.

5.      ***Parties Not Entitled to Vote***.  Holders of Unimpaired Claims and Interests in classes 1, 2, 6, 7, 8, 11, 12, 13, 14, and 15 and of unclassified Claims are deemed to accept the Plan are not entitled to vote.  Such holders will not receive a Ballot and, instead, will receive a Notice of Non-Voting Status.

6.      ***Objections to Confirmation***.  The deadline to object to the confirmation of the Plan is ~~May 29~~**[July 24]**, **2025 at 4:00 p.m. (prevailing Eastern Time)** (the "Plan Objection Deadline").

7.      Objections, if any, to the confirmation of the Plan, must: (a) be in writing; (b) comply with the Bankruptcy Rules and Local Rules; (c) set forth the name of the objecting party and the nature and amount of Claims or Interests asserted by the objecting party; (d) provide the basis for the objection and the specific grounds therefor; and (e) be filed on or before the Plan Objection Deadline, together with proof of service.

8.      Registered users of the Bankruptcy Court's case filing system must file their objections and responses electronically.  All other parties must file their written objections and responses with the Clerk's Office, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801 to the attention of the chambers of the Honorable Thomas M. Horan, United States Bankruptcy Judge.

Any objections or responses must be served so that they are **actually received** by the following parties no later than the Plan Objection Deadline:

**Debtors**
Ligado Networks LLC
10802 Parkridge Boulevard
Reston, VA 20191
Attn: Vicky McPherson
Email: vicky@ligado.com

**Office of the U.S. Trustee**
Office of the U.S. Trustee for
the District of Delaware
844 King Street
Suite 2207, Lockbox 35
Wilmington, Delaware 19801
Attn: Benjamin Hackman, Esq.
Email: Benjamin.a.hackman@usdoj.gov

**Counsel to the Debtors**
Milbank LLP
55 Hudson Yards
New York, New York 10001
Attn: Dennis F. Dunne
Matthew L. Brod
Lauren C. Doyle
Telephone:   (212) 530-5000
Facsimile:    (212) 530-5219
Email: ddune@milbank.com
mbrod@milbank.com
ldoyle@milbank.com

**Co-Counsel to the Debtors**
Richards, Layton, & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Attn: Mark D. Collins
Michael J. Merchant
Amanda R. Steele
Telephone: (302) 651-7700
Facsimile:    (302) 651-7701
Email: collins@rlf.com
merchant@rlf.com
steele@rlf.com

**Counsel to the Ad Hoc Crossholder Group**
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Attn: Brian Schartz, P.C.
Derek I. Hunter
Email: brian.schartz@kirkland.com
derek.hunter@kirkland.com

**Counsel to the Ad Hoc First Lien Group**
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
Attn: Jason L. Hufendick
Dennis Twomey
Email: jhufendick@sidley.com
dtwomey@sidley.com

-and-

Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
Attn: Patrick J. Nash, Jr., P.C.
Alan McCormick
Email: patrick.nash@kirkland.com
  alan.mccormick@kirkland.com

3

9.      **IF ANY OBJECTION TO THE CONFIRMATION OF THE PLAN IS NOT FILED AND SERVED AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO CONFIRMATION OF THE PLAN.**

10.     ***Additional Information.***  Any party in interest wishing to obtain information about the solicitation procedures or copies of the Disclosure Statement or the Plan should contact the Debtors' voting and tabulation agent, Omni, by (i) writing: Ligado Networks, LLC Ballot Processing c/o Omni Agent Solutions, Inc. 5955 De Soto Ave., Suite 100 Woodland Hills, CA 91367, (ii) by email at LigadoInquiries@OmniAgnt.com, or (iii) at the following telephone numbers: (866) 956-2139 (domestic toll free) or (747) 288-6357 (international).  Interested parties may also review the Disclosure Statement and the Plan free of charge at https://omniagentsolutions.com/Ligado or by scanning the QR code below.  In addition, the Disclosure Statement and Plan are on file and may be reviewed by accessing the Bankruptcy Court's website: www.deb.uscourts.gov.  Note that a PACER password and login are needed to access documents on the Bankruptcy Court's website.  A PACER password can be obtained at: www.pacer.psc.uscourts.gov.  Copies of the Disclosure Statement and Plan may also be examined by interested parties during normal business hours at the office of the Clerk of the Bankruptcy Court.

### NOTICE REGARDING CERTAIN RELEASE, EXCULPATION AND INJUNCTION PROVISIONS IN THE PROPOSED PLAN

11.     **Releases, Exculpation, and Injunctions.  Please be advised that Article VIII of the Plan provides the following:**

A.      **Compromise and Settlement**

**The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their Estates, and all holders of Claims or Interests, (2) fair, equitable, and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to applicable bankruptcy law.  In addition, the allowance, classification, and treatment of any Allowed Claims of a Released Party take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist between the Debtors and any Released Party and, as of the Effective Date, any and all such Causes of Action are settled, compromised, and released as set forth in the Plan.  The Confirmation Order shall authorize and approve the releases by all Entities of all such contractual, legal, and equitable subordination rights and Causes of Action that are satisfied, compromised, and settled pursuant hereto.  Nothing in the Plan shall compromise or settle, in any way whatsoever, any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have against any Entity that is not a Released Party.**

**In accordance with the provisions of the Plan, and pursuant to Bankruptcy Rule 9019, without any further notice to, or action, order, or approval of, the Bankruptcy Court or the Canadian Court, after the Effective Date, the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle (1) Claims (including Causes of Action) against and Interests in the Debtors not previously Allowed (if any) and (2) claims (including Causes of Action) against other Entities.**

#4914-8593-8464v8

B.    **Discharge of Claims and Termination of Interests**

**Except as otherwise provided in the Plan, effective as of the Effective Date: (1) the distributions, rights, and treatment that are provided in the Plan for all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, whether known or unknown, against or in the Debtors or any of their assets, property, or Estates, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date and any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date; (2) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (3) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code; and (4) all entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date.  Notwithstanding the foregoing, all Existing Common Units shall remain in full force and effect and shall be governed by the terms of the applicable New Organizational Documents, including the Second Amended and Restated Operating Agreement.  The Confirmation Order shall be a judicial determination, subject to the Effective Date occurring, of the discharge of all Claims and Interests except as otherwise expressly provided in the Plan.**

C.    **Release of Liens**

**Except as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit First Lien Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and the effectiveness of the Exit First Lien Facility Documents, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall automatically revert to the Reorganized Debtors and each of their successors and assigns, and the Agents/Trustees and the DIP Agent shall be authorized to release any such mortgages, deeds of trust, Liens, pledges, or other security interests held by such holder and to take such actions as may be requested by the Reorganized Debtors to evidence the release of such mortgages, deeds of trust, Liens, pledges, or other security interests, including the execution, delivery, and filing or recording of any related releases or discharges as may be requested by the Reorganized Debtors or may be required in order to effectuate the foregoing.**

5

D.      **Releases of Released Parties**

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to applicable bankruptcy law, of the releases described in this Article VIII.D and shall constitute the Bankruptcy Court's finding that such releases are:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by this Article VIII.D; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Entity (including the Debtors) asserting any claim or Cause of Action released pursuant to this Article VIII.D.

1.      **Releases by the Debtors**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of each Debtor, each Reorganized Debtors, and each Estate, in each case, on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action, whether prepetition or postpetition, derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws, or otherwise that the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.  Notwithstanding

anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, (ii) any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have in connection with the Ligado Takings Case, ~~and~~ (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit First Lien Facility Documents, or any Claim or obligation arising under the Plan **and (iv) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct**.

2. **Releases by Holders of Claims or Interests**

As of the Effective Date, except for **(i)** the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring ~~or~~**, (ii) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct, or (iii) the rights provided or reserved for under the AST Definitive Agreements Order, or (iv)** as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case, from any and all Claims and Causes of Action whatsoever, whether prepetition or postpetition (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates, the Chapter 11 Cases the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors (including any of the Debtors' predecessors) or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors (including any of the Debtors' predecessors) and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and

the Plan and related agreements, instruments, and other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.

Entry of the Confirmation Order shall, subject to the occurrence of the Effective Date, constitute the Bankruptcy Court's approval of the releases contained in the Plan and a finding that each release described is (i) in exchange for the good and valuable consideration provided by the Released Parties, including without limitation, the Released Parties' contributions to implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the holders of Claims and Interests, (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a sound exercise of the Debtors' business judgment.

Nothing in this Plan prohibits, precludes, or enjoins any Governmental Unit from asserting or filing a proof of Claim on or before the Governmental Bar Date.[3]

E.    **Exculpation**

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action based on any act or omission occurring from the Petition Date through the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the Restructuring Support Agreement, the Restructuring, the DIP Facility, the DIP Orders, the DIP Documents, any Canadian Court Recognition Order, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes gross negligence, intentional fraud or willful misconduct as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code and have participated in good faith with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law,

---

[3]    "Governmental Bar Date" shall have the meaning set forth in the *Order Establishing (I) Various Bar Dates for Filing Proofs of Claim, (II) Approving the Form and Manner of Filing Proofs of Claim, (III) Approving Notices of Bar Dates, and (IV) Granting Related Relief* [Docket No. 340].

rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

F.    **Injunction**

Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests or Causes of Action or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, ~~and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise~~; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities released or settled pursuant to the Plan.

~~By accepting distributions pursuant to the Plan (including retaining any Interest in the Debtors as set forth in the Plan), each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth above.~~

~~The injunctions set forth above shall extend to any predecessors and/or successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property.  Immediately upon entry of the Confirmation Order, no Person or Entity may commence or pursue a Claim or Cause of Action (or continue to prosecute such Claim or Cause of Action to the extent filed prior to entry of the Confirmation Order) of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a~~

9

~~Claim or Cause of Action subject to Article VIII hereof (or anticipated to be subject to Article VIII following entry of the Confirmation Order but prior to the Effective Date), without the Bankruptcy Court (1) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind (or that, even if such Claim or Cause of Action represents a colorable Claim of any kind, it would not be subject to the releases set forth in Article VIII), and (2) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party.  Immediately upon entry of the Confirmation Order, any existing proceeding related to a claim or cause of action against any Released Parties or Exculpated Parties is hereby stayed until such parties seeking to prosecute such claims or cause of action comply with the procedures set forth in the foregoing paragraph.~~

\*\*\*

UNDER THE PLAN, "RELEASING PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH, (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (VII) WITH RESPECT TO EACH OF THE FOREGOING PERSONS IN CLAUSES (I) THROUGH (~~VI~~VIII), SUCH PERSONS' PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES (INCLUDING AFFILIATES OF ANY PREDECESSORS), CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS (INCLUDING EQUITY HOLDERS OF ANY PREDECESSORS), MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES, (VIII) THE HOLDERS OF ALL CLAIMS OR INTERESTS WHOSE VOTE TO ACCEPT OR REJECT THE PLAN IS SOLICITED BUT DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN ~~ARTICLE VIII.D.2~~ARTICLE VIII.D.2, AND (IX) THE HOLDERS OF ALL CLAIMS AND INTERESTS WHO WERE GIVEN NOTICE OF THE OPPORTUNITY AND SERVED WITH A PROVIDED FORM TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN ~~ARTICLE VIII.D.2~~ARTICLE VIII.D.2 BUT DID NOT TIMELY OPT OUT.

UNDER THE PLAN, "RELEASED PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH,  (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) EACH OF THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, ~~AND~~ (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (IX) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (I) THROUGH (~~VI~~VIII), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES, CURRENT AND FORMER OFFICERS AND

#4914-8593-8464v8

DIRECTORS, PRINCIPALS, EQUITY HOLDERS, MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES; PROVIDED, HOWEVER, THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) FILES AN OBJECTION TO THE PLAN OR (Y) OPTS OUT OF THE RELEASES SET FORTH IN ARTICLE VIIID.2, AS APPLICABLE, SHALL NOT BE A "RELEASED PARTY."

11

**PLEASE BE ADVISED THAT IF:**

 A. YOU ARE ENTITLED TO VOTE UNDER THE PLAN BUT DO NOT VOTE TO ACCEPT OR TO REJECT THE PLAN AND DO NOT OPT OUT OF GRANTING THE RELEASES IN ARTICLE VIII.D.2 OF THE PLAN;

 B. YOU VOTE TO ACCEPT OR REJECT THE PLAN AND DO NOT OPT OUT OF GRANTING THE RELEASES IN ARTICLE VIII.D.2 OF THE PLAN;

 C. YOU ~~ARE NOT ENTITLED TO VOTE~~WERE GIVEN NOTICE OF THE OPPORTUNITY AND SERVED WITH A PROVIDED FORM TO OPT OUT OF GRANTING THE RELEASES AND DO NOT OPT OUT OF GRANTING THE RELEASES IN ARTICLE VIII.D.2 OF THE PLAN, OR

 D. YOU ARE A RELEASED PARTY

**IN EACH CASE, YOU WILL BE DEEMED TO HAVE GRANTED THE RELEASES CONTAINED IN ARTICLE VIII.D.2 OF THE PLAN.**

  12. The Plan also contains other provisions that may affect your rights against the Debtors.

  13. **YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PROPOSED PLAN, INCLUDING THE INJUNCTION, RELEASE, AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

#4914-8593-8464v8

**<u>Additional Information</u>**

Interested parties may also review the Disclosure Statement and the Plan free of charge at https://omniagentsolutions.com/Ligado or by scanning the QR code below.



13

Dated _____, 2025
Wilmington, Delaware

*/s/ DRAFT*
Mark D. Collins, Esq. (Bar No. 2981)
Michael J. Merchant, Esq. (Bar No. 3854)
Amanda R. Steele, Esq. (Bar No. 5530)
Emily R. Mathews, Esq. (Bar No. 6866)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:        collins@rlf.com
              merchant@rlf.com
              steele@rlf.com
              mathews@rlf.com

-and-

Dennis F. Dunne, Esq. (admitted *pro hac vice*)
Matthew L. Brod, Esq. (admitted *pro hac vice*)
Lauren C. Doyle, Esq. (admitted *pro hac vice*)
**MILBANK LLP**
55 Hudson Yards
New York, New York 10001
Telephone:    (212) 530-5000
Facsimile:    (212) 530-5219
Email:        ddunne@milbank.com
              mbrod@milbank.com
              ldoyle@milbank.com

Andrew M. Leblanc, Esq. (admitted *pro hac vice*)
**MILBANK LLP**
1850 K Street, NW, Suite 1100
Washington DC 20006
Telephone:    (202) 835-7500
Facsimile:    (202) 263-7586
Email:        aleblanc@milbank.com

*Co-Counsel for Debtors in Possession*

14

## EXHIBIT 2

**Forms of Ballots**

**Exhibit 2.A**

**Class 3 Master Ballot (Notes)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIGADO NETWORKS LLC *et al.*,[1] | ) | Case No. 25-10006 (TMH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | |

**MASTER BALLOT FOR CLASS 3 CLAIMS (FIRST LIEN NOTES CLAIMS)**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY *BEFORE* COMPLETING THIS MASTER BALLOT.**

**IN ORDER FOR THE VOTES OF YOUR BENEFICIAL HOLDERS TO BE COUNTED FOR PURPOSES OF ACCEPTING OR REJECTING THE PLAN, THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY [~~MAY 29~~JULY 10], 2025, AT 4:00 P.M., PREVAILING EASTERN TIME (THE "VOTING DEADLINE")**

---

The above-captioned debtors (the "Debtors") are soliciting votes on the *Joint Chapter 11 Plan of Ligado Networks LLC and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan") described in (and attached to) the *Disclosure Statement for Joint Chapter 11 Plan of Ligado Networks LLC, and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement").[2]

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or Disclosure Statement, as applicable.

2

You are receiving this master ballot (the "Master Ballot") because our records indicate that, as of [~~March 21~~**June 6**], 2025 (the "Voting Record Date"), you are a custodian, broker, dealer, commercial bank, trust company, a proxy holder or other agent or nominee (a "Nominee") for one or more beneficial holder (the "Beneficial Holders") of the notes identified in **Exhibit 1** attached hereto (the "First Lien Notes").  If you believe you have received this Master Ballot in error, please contact Omni Agent Solutions, Inc., the Debtors' solicitation agent (in such capacity, the "Solicitation Agent") immediately, at the address, telephone number, or email address set forth below.

You should use the Master Ballot to transmit votes of your Beneficial Holders to accept or reject the Plan and their elections to opt out of Third-Party Release set forth in Article VIII.D.2 of the Plan and in the Beneficial Holder Ballot.

You should have received a sufficient number of solicitation packages containing the Plan, the Disclosure Statement, and sufficient number of Class 3 Ballots customized for your Beneficial Holders (the "Beneficial Holder Ballots") for you to transmit to each of your Beneficial Holders.  If you need to obtain additional Beneficial Holder Ballots or other solicitation materials, you may do so by: (a) accessing the Debtors' case website at https://omniagentsolutions.com/Ligado-Ballots; (b) writing to the Solicitation Agent at (i) LigadoInquiries@OmniAgnt.com, or (ii) Ligado Networks, LLC Ballot Processing, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367 or (c) calling (866) 956-2139 (toll-free) or (747) 288-6375 (international).

The Bankruptcy Court may confirm the Plan and thereby bind all of your Beneficial Holders whether or not they have voted. To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Plan, you must either (i) complete and return this Master Ballot so that the Solicitation Agent actually receives it on or before the Voting Deadline, which is [~~May 29~~**July 10**], 2025, at 4:00 p.m. (**Eastern Time**) or (ii) "pre-validate" the Beneficial Holder Ballots before you distribute them to your Beneficial Holders with instructions to return them to the Solicitation Agent on or before the Voting Deadline.

Please complete and execute this Master Ballot and return it to the Solicitation Agent either:

    i.    in the return envelope provided or by submitting it by overnight courier or hand delivery to the following address, so as it is actually received by the Voting Deadline:

<div align="center">

Ligado Networks, LLC Ballot Processing
c/o Omni Agent Solutions, Inc.
5955 De Soto Ave., Suite 100
Woodland Hills, CA 91367

</div>

    ii.    by                    email                    to ~~LigadoBallots@OmniAgnt.com~~**LigadoBallots@OmniAgnt.com**; or

iii.    by electronic, online transmission via the Solicitation Agent's online portal (the "E-Ballot Portal"), by visiting https://omniagentsolutions.com/Ligado-Ballots.  Click on the "Balloting" section of the website and follow the instructions to transmit this Master Ballot.

**Item 1. Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐    is a custodian, broker, dealer, bank, or other Nominee for the Beneficial Holders of the Class 3 Claims listed in Item 2 below and is the record holder of the underlying First Lien Notes;

☐    is acting under a power of attorney and/or agency agreement (a copy of which will be provided upon request) granted by a Nominee that is the registered holder of the First Lien Notes underlying the Class 3 Claims listed in Item 2 below; or

☐    has been granted a proxy (an original of which is attached hereto) from a Nominee or a Beneficial Holder that is the registered holder of the First Lien Notes underlying the Class 3 Claims listed in Item 2 below and, accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holders of the First Lien Notes underlying the Class 3 Claims described in Item 2 below.

**Item 2. Votes on the Plan and Elections Regarding Third-Party Release.**

The undersigned transmits the following: (i) votes of its Beneficial Holders; and (ii) elections of its Beneficial Holders with respect to the Third-Party Release.  The undersigned certifies that the following Beneficial Holders of Class 3 Claims, as identified by their respective customer account numbers set forth below, are Beneficial Holders of the First Lien Notes underlying their Class 3 Claims as of the Voting Record Date and have delivered to the undersigned, as their Nominee, properly executed Beneficial Holder Ballots (i) casting the following votes; and/or (ii) opting-out of the Third-Party Release.

Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table (use additional sheets in the format below as necessary).  Please note that each Beneficial Holder must vote all its Class 3 Claims to accept or reject the Plan and may not split its vote.  **Any Beneficial Holder Ballot that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan should not be counted.**

| Your Customer Account Number for Each Beneficial Holder of First Lien Notes Claims | Principal Amount of First Lien Notes Held as of the Voting Record Date | Indicate the vote cast on the Beneficial Holder Ballot by placing an "X" in the appropriate column below. | | | <u>Item 3</u><br>If the box in Item 3 of the Beneficial Holder Ballot was checked, place an "X" below. |
|---|---|---|---|---|---|
| | | Accept the Plan | or | Reject the Plan | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| **TOTAL:** | $ | | | | |

**Please indicate on <u>**Exhibit 1**</u> hereto the CUSIP / ISIN for the First Lien Notes underlying Class 3 Claims voted above.**

5

**Item 3.** **Certification as to Transcription of Information from Item 4 of the Beneficial Holder Ballots as to Class 3 Claims Voted Through Other Beneficial Holder Ballots.**

The undersigned certifies that it has transcribed in the following table the information, if any, provided by its Beneficial Holders in Item 4 of their respective Beneficial Holder Ballots, identifying any Class 3 Claims for which such Beneficial Holders have submitted Beneficial Holder Ballots other than to the undersigned:

| Your Customer Account Number for Each Beneficial Holder Who Completed Item 4 of the Beneficial Holder Ballots | TRANSCRIBE FROM ITEM 4 OF THE BALLOTS: | | | |
|---|---|---|---|---|
| | Name of Other Nominee through which the Beneficial Holder Held and Voted Other Class 3 Claims | The Beneficial Holder's Account Number at Other Nominee(s) | Principal Amount of Other Class 3 Claims the Beneficial Holder Voted through Other Nominee(s) | CUSIP of Other Class 3 Claims Voted through Other Nominee(s) |
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |

**Item 4. Certification.**

By signing this Master Ballot, the undersigned certifies that:

1.      it has delivered all solicitation materials, including the Plan, Disclosure Statement and a Beneficial Holder Ballot to each Beneficial Holder listed in Item 2 of this Master Ballot;

2.      it has received a properly completed and signed Beneficial Holder Ballot (or other form of transmission in accordance with its customary procedures) from each Beneficial Holder listed in Item 2 of this Master Ballot;

3.      it is the registered holder of the First Lien Notes underlying Class 3 Claims being voted or it has been authorized by each Beneficial Holder of Class 3 Claims listed in Item 2 of this Master Ballot to vote on the Plan;

6

4.      it has been authorized by each Beneficial Holder listed in Item 2 of this Master Ballot to submit this Master Ballot;

5.      it has properly disclosed: (a) the number of Beneficial Holders who submitted to it properly completed Beneficial Holder Ballots; (b) the amount of Class 3 Claims voted by each such Beneficial Holder; (c) each such Beneficial Holder's vote on the Plan; (d) each such Beneficial Holder's election concerning the Third-Party Release; (e) each such Beneficial Holder's certification as to other Class 3 Claims voted; and (f) the customer account or other identification number for each such Beneficial Holder;

6.      each Beneficial Holder listed in Item 2 of this Master Ballot has certified to the undersigned in Item 5 of the Beneficial Holder Ballot that it is eligible to vote on the Plan and make an election with respect to the Third-Party Release; and

7.      it will either forward to the Solicitation Agent all Beneficial Holder Ballots returned by the Beneficial Holders listed in Item 2 of this Master Ballot (whether properly completed or defective) or retain such Beneficial Holder Ballots for at least one (1) year from the Voting Deadline and disclose all information contained in such Beneficial Holder Ballots to the Bankruptcy Court, the Debtors, or the Reorganized Debtors, as the case may be, if requested.

Name of Nominee: _____
_____(*Print or type*)

Name of Proxy Holder or Agent for Nominee (if applicable):
_____
_____(*Print or type*)

DTC Participant Number:
_____

Signature: _____

Name of Signatory:
_____
_____(*Print or type*)

Title: _____

Address: _____

_____

_____

Date Completed: _____

Email Address: _____

Phone Number: _____

8

**PLEASE COMPLETE AND EXECUTE THIS MASTER BALLOT AND RETURN IT TO THE SOLICITATION AGENT EITHER:**

      i.    **IN THE RETURN ENVELOPE PROVIDED OR BY SUBMITTING IT BY OVERNIGHT COURIER OR HAND DELIVERY TO THE FOLLOWING ADDRESS, SO AS IT IS ACTUALLY RECEIVED BY THE VOTING DEADLINE:**

**LIGADO NETWORKS, LLC BALLOT PROCESSING**
**C/O OMNI AGENT SOLUTIONS, INC.**
**5955 DE SOTO AVE., SUITE 100**
**WOODLAND HILLS, CA 91367**

      ii.    **BY EMAIL TO LIGADOBALLOTS@OMNIAGNT.COM; OR**

      iii.    **BY ELECTRONIC, ONLINE TRANSMISSION VIA THE SOLICITATION AGENT'S ONLINE PORTAL THE E-BALLOT PORTAL, BY VISITING HTTPS://OMNIAGENTSOLUTIONS.COM/LIGADO-BALLOTS. CLICK ON THE "BALLOTING" SECTION OF THE WEBSITE AND FOLLOW THE INSTRUCTIONS TO TRANSMIT THIS MASTER BALLOT.**

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT AT (866) 956-2139 (U.S. TOLL FREE), OR (747) 288-6375 (INTERNATIONAL), OR LIGADOINQUIRIES@OMNIAGNT.COM.**

**THE MASTER BALLOT SHOULD NOT BE SENT TO THE DEBTORS, THE BANKRUPTCY COURT, OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS.**

**THIS MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE, WHICH IS 4:00 P.M. EASTERN TIME, ON [~~MAY 29~~JULY 10], 2025.**

## INSTRUCTIONS FOR COMPLETING THIS MASTER BALLOT

1.      The Debtors are soliciting votes of the holders of the First Lien Notes Claims (Class 3 Claims) on the Plan attached as **Exhibit A** to the Disclosure Statement.

2.      You should immediately (and in no event later than three (3) business days after receipt) distribute the solicitation materials, including Beneficial Holder Ballots, to the Beneficial Holders of the First Lien Notes for whom you are acting as Nominee and take any action required to enable each such Beneficial Holders to timely vote the Class 3 Claims that it holds through you before the Voting Deadline, which is **4:00 p.m. Eastern Time, on [~~May 29~~July 10], 2025**.

3.      You may distribute the solicitation materials to your Beneficial Holders and collect their votes to accept or reject the Plan in accordance with your customary practices, including the use of "pre-validated" Beneficial Holder Ballots and "voting instruction forms" in lieu of (or in addition to) Beneficial Holder Ballots, through online voting, by phone, facsimile, or other electronic means.

4.      If you are transmitting the votes of any Beneficial Holder other than yourself, you may either:

   i.      "Pre-validate" each individual Beneficial Holder Ballot by signing the Beneficial Holder Ballot and including your DTC participant number, indicating the account number of the applicable Beneficial Holder and the principal amount of the First Lien Notes held by you for such Beneficial Holder.  Forward the pre-validated Beneficial Holder Ballot, together with the rest of the solicitation package, to each of your Beneficial Holders with the instructions that each such Beneficial Holder must (i) complete the remaining information requested on the Beneficial Holder Ballot, including its voting and opt-out decision, within five (5) Business Days after the Beneficial Holder's receipt of the solicitation package, and (ii) return its Beneficial Holder Ballot directly to the Solicitation Agent in the return envelope to be provided in the solicitation package, such that it is received by the Solicitation Agent on or before the Voting Deadline; **or**

   ii.     Forward a solicitation package to each of your Beneficial Holders along with the instruction to each Beneficial Holder to (i) fill in all Items on the Beneficial Holder Ballot and (ii) return its completed and executed Beneficial Holder Ballot to you in a return envelope provided by and addressed to you.  In such case, you will reflect the votes and elections of your Beneficial Holders on this Master Ballot in accordance with these instructions and return the Master Ballot to the Solicitation Agent on or before the Voting Deadline.  You should advise the Beneficial Holders to return their Beneficial Holder Ballots (or otherwise transmit their votes) to you by a date calculated to allow you to prepare and return the Master Ballot to the Solicitation Agent so that it is actually received by the Solicitation Agent on or before the Voting Deadline.

10

5.   You should maintain copies of the Beneficial Ballots or a list of the Beneficial Holders for whom you "pre-validated" their Beneficial Holder Ballot for inspection for at least one (1) year after the Effective Date.

6.   With regard to each Beneficial Holder Ballot returned to you by your Beneficial Holders, you must: (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the customer name or account number assigned by you to such Beneficial Holder; (b) execute the Master Ballot; (c) transmit the Master Ballot to the Solicitation Agent such that it is received on or before the Voting Deadline; and (d) retain such Beneficial Holder Ballots, whether in hard copy or by electronic direction, in your files for a period of one (1) year after the Effective Date. You may be ordered to produce the Beneficial Ballots to the Debtors or the Bankruptcy Court.

7.   You should not count the votes transmitted by a Beneficial Holder Ballot that: (a) is illegible or contains insufficient information to permit the identification of the Beneficial Holder; (b) are cast by a party that does not hold a ~~Claim 3~~ Class **3 Claim**; (c) is unsigned; (d) is not marked to accept or reject the Plan; and (e) is submitted by a party not entitled to cast a vote in Class 3.

8.   If your Master Ballot is received **after** the Voting Deadline and if the Voting Deadline is not extended, the votes transmitted thereby may be counted only at the discretion of the Debtors.  Additionally, **votes transmitted by the following Master Ballots will not be counted**:

     i.    any Master Ballot to the extent it is illegible or contains insufficient information to permit the identification of the relevant Beneficial Holders;

     ii.   any Master Ballot sent by facsimile or any electronic means other than via email at: LigadoBallots@OmniAgnt.com;**[3]**

     iii.  any Master Ballot that does not contain an original signature; and

     iv.   any Master Ballot submitted by any party that is not a registered holder of the First Lien Notes underlying the Class 3 Claims identified in Item 1 of the Beneficial Holder Ballot.

9.   The method of delivery of the Master Ballot to the Solicitation Agent is at your election and risk.  Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **actually receives** the executed Master Ballot.  In all cases, you should allow sufficient time to assure timely delivery.

---

**[3] Note, *only* Master Ballots may be transmitted by email.  All other Ballots submitted by email will not be counted.**

10. If multiple Master Ballots received prior to the Voting Deadline reflect votes with respect to the same Class 3 Claims, the latest, timely received and properly completed Master Ballot will supersede and revoke any earlier received Master Ballots.

11. If a Beneficial Holder simultaneously casts inconsistent Beneficial Holder Ballots with respect to the same Claim, such Beneficial Holder Ballots should not be counted.

12. **Please be sure to sign and date the Master Ballot**. You should indicate that you are signing the Master Ballot in your capacity as a Nominee and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, submit proper evidence to the requesting party to so act on behalf of your Beneficial Holders. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

13. The following Master Ballots will not be counted in determining the acceptance or rejection of the Plan: (a) any Master Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holders of the votes being transmitted; (b) any Master Ballot cast by a party that is not entitled to vote on the Plan; and (c) any unsigned Master Ballot.

14. The following additional rules apply to Master Ballots:

    i. votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such Nominee in the First Lien Notes as of the Voting Record Date, as evidenced by the record and depository listings.

    ii. votes submitted by Beneficial Holders, whether through a Master Ballot or pre-validated Beneficial Holder Ballots, will not be counted in excess of the record amount of the First Lien Notes held by the applicable Nominee;

    iii. to the extent that conflicting votes or "over-votes" are submitted, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, the Solicitation Agent will attempt to reconcile discrepancies with the Nominee;

    iv. to the extent that over-votes on a Master Ballot or pre-validated Beneficial Holder Ballots are not reconcilable prior to the preparation of the voting certification, the Solicitation Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Beneficial Ballots that contained the over-vote, but only to the extent of the Nominee's position in the First Lien Notes; and

    v. for purposes of tabulating votes, each Beneficial Holder holding through a particular account will be deemed to have voted the principal amount of its First Lien Notes in that particular account, although the Solicitation Agent may be asked to adjust such principal amount.

    **PLEASE SUBMIT YOUR MASTER BALLOT PROMPTLY!**

12

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE SOLICITATION AGENT AT (866) 956-2139 (DOMESTIC TOLL-FREE) OR +(747) 288-6375 (INTERNATIONAL)**

**NOTHING CONTAINED IN THESE INSTRUCTIONS OR IN THE ENCLOSED DOCUMENTS WILL RENDER YOU OR ANY OTHER ENTITY THE AGENT OF THE DEBTORS OR THE SOLICITATION AGENT OR AUTHORIZE YOU OR ANY OTHER ENTITY TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF ANY OF THE DEBTORS WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE DOCUMENTS ENCLOSED HEREWITH.**

## **Exhibit 1**

**Please indicate below the CUSIP/ISIN to which this Master Ballot pertains.**

| | | |
|---|---|---|
| ☐ | 15.500% PIK Senior Secured First Lien Notes due 2023 | 144A CUSIP: 53225H AA8<br>144A ISIN: US53225HAA86 |
| ☐ | 15.500% PIK Senior Secured First Lien Notes due 2023 | REG S CUSIP: U5364H AA6<br>REG S ISIN: USU5364HAA69 |

**Exhibit 2.B**

**Class 3 Beneficial Holder Ballot (Notes)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIGADO NETWORKS LLC *et al.*,[1] | ) | Case No. 25-10006 (TMH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | |

**BENEFICIAL BALLOT FOR VOTING TO ACCEPT
OR REJECT THE CHAPTER 11 PLAN OF LIGADO NETWORKS LLC ET AL.**

**CLASS 3 (FIRST LIEN NOTES CLAIMS)**

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY
> BEFORE COMPLETING THIS BALLOT.**
>
> **IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE
> COMPLETED, EXECUTED, AND RETURNED IN ACCORDANCE WITH THE
> INSTRUCTIONS BELOW SO AS TO BE ACTUALLY RECEIVED BY THE
> DEBTORS' SOLICITATION AGENT BY [~~MAY 29~~JULY 24], 2025, AT 4:00 P.M.
> (ET) (THE "VOTING DEADLINE").**

    The above-captioned debtors (the "Debtors") are soliciting votes on the *Joint Chapter 11
Plan of Ligado Networks LLC and Its Affiliated Debtors and Debtors in Possession* (as it may be
altered, amended supplemented, or modified from time to time in accordance with its terms, and
including all exhibits and supplements thereto, the "Plan") described in (and attached to) the
*Disclosure Statement for Joint Chapter 11 Plan of Ligado Networks LLC, and Its Affiliated
Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified
from time to time in accordance with its terms, and including all exhibits and supplements
thereto, the "Disclosure Statement").[2]  You are receiving this ballot (the "Beneficial Holder
Ballot") because your broker, bank, or other nominee, or the agent of your broker, bank, or other

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as
       applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc.
       (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC
       (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado
       Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors'
       headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or Disclosure
       Statement, as applicable.

nominee (each of the foregoing, a "Nominee") has identified you as a beneficial holder (a "Beneficial Holder") of the notes identified in **Exhibit 1** attached hereto (the "First Lien Notes") as of [~~March 21~~**June 20**], 2025 (the "Voting Record Date") and, accordingly, you hold a Class 3 Claim under the Plan and have the right to vote to accept or reject the Plan.

Nominees are authorized to collect votes to accept or reject the Plan from their Beneficial Holders in accordance with their customary practice, including the use of a "voting instruction form" in lieu of (or in addition to) this Beneficial Ballot or through online voting, by phone, facsimile, or other electronic means. Alternatively, your Nominee may choose to "pre-validate" your Beneficial Holder Ballot by signing the Beneficial Holder Ballot and adding the Nominee's DTC participant number, the Beneficial Holder's account number, and the principal amount of your Class 3 Claim as of the Voting Record Date. As part of the pre-validation process, your Nominee will instruct you to submit your Beneficial Holder Ballot directly to the Solicitation Agent on or before the Voting Deadline.

This Beneficial Holder Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan, making the election to opt out of the releases described below, if applicable, and making certain certifications. If you believe you have received this Beneficial Holder Ballot in error, please *immediately* contact Omni Agent Solutions, Inc., the proposed solicitation agent (the "Solicitation Agent"), at the address, telephone number, or email address set forth below.

Your rights are described in the Plan and the Disclosure Statement, both of which you should have received with this Beneficial Holder Ballot. If you have not received such documents or have questions regarding the submission of your vote on the Plan and/or deadline to do so, please contact: (i) if you are both the Beneficial Holder and the registered holder of the First Lien Notes, the Solicitation Agent; or (ii) if you are not the registered holder, your Nominee. You may contact the Solicitation Agent by: (i) emailing ~~LigadoInquiries@OmniAgnt.com~~**LigadoInquiries@OmniAgnt.com** with a reference to "Ligado" in the subject line, or (ii) at the following telephone numbers: (866) 956-2139 (domestic toll free) or (747) 288-6357 (international).

The Plan may be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims that actually vote on the Plan in at least one Class of Claims entitled to vote on the Plan (not including the votes of any insiders) and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on each holder of Class 3 Claims regardless of whether or not such holder voted or voted against the Plan. Please review the Disclosure Statement for more information.

To have your vote count as either an acceptance or rejection of the Plan, you must complete and sign this Beneficial Ballot and return it: (i) if you are the registered holder, directly to the Solicitation Agent on or before [~~May 29~~**July 24**], 2025, at 4:00 p.m. (prevailing Eastern Time) (the "Voting Deadline") using the enclosed self-addressed, postage paid envelope; or (ii) if you are not the registered holder, in accordance with your Nominee's instructions, either (a) to your Nominee as promptly as possible and in sufficient time to allow your Nominee to submit a

3

master ballot (a "<u>Master Ballot</u>") reflecting your vote to the Solicitation Agent before the Voting Deadline, or (b) if your Nominee provided you with a pre-validated Beneficial Holder Ballot, directly to the Solicitation Agent on or before the Voting Deadline.

**You should review the Disclosure Statement, the Plan, and the instructions contained in this Beneficial Ballot before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Class 3 Claim. This Ballot pertains solely to your Class 3 Claim. If you hold Claims or Interests in more than one Class that is entitled to vote on the Plan, you will receive a ballot for each such Class.**

**Your vote on this Beneficial Holder Ballot shall be applied to each Debtor against whom you have an allowed Class 3 Claim.**

<u>Item 1.</u> **Principal Amount of Class 3 Claim.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Beneficial Holder of the First Lien Notes identified on **<u>Exhibit 1</u>** in the following principal amount (insert amount in box below). If you do not know the principal amount of your First Lien Notes as of the Voting Record Date, please contact your Nominee for this information:

| Principal Amount of Claim[3]: |
| :---: |
| $ |

> **\*\*<u>Exhibit 1</u>** hereto lists the CUSIP number for the First Lien Notes underlying your Class 3 Claim. You should confirm the CUSIP number provided in **<u>Exhibit 1</u>** matches your First Lien Notes.\*\*

<u>Item 2.</u> **Vote on Plan.**

The holder of the Class 3 Claim set forth in Item 1 votes to (please check one):

| ☐ **ACCEPT** (vote FOR) the Plan | ☐ **REJECT** (vote AGAINST) the Plan |
| :--- | :--- |

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**Any Beneficial Ballot that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan, will not be counted.**

<u>Item 3.</u> **Release.**

---

[3]    For voting purposes only. Subject to tabulation rules.

4

**WHETHER YOU VOTE TO ACCEPT OR REJECT THE PLAN OR ABSTAIN FROM VOTING ALTOGETHER, UNLESS YOU CHECK THE "OPT OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASE OF THE RELEASED PARTIES SET FORTH IN ARTICLE VIII.D.2 OF THE PLAN COPIED BELOW (THE "<u>THIRD-PARTY RELEASE</u>").**

**Article VIII of the Plan contains the following provisions:**

A.    ***Compromise and Settlement***

**The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their Estates, and all holders of Claims or Interests, (2) fair, equitable, and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to applicable bankruptcy law. In addition, the allowance, classification, and treatment of any Allowed Claims of a Released Party take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist between the Debtors and any Released Party and, as of the Effective Date, any and all such Causes of Action are settled, compromised, and released as set forth in the Plan. The Confirmation Order shall authorize and approve the releases by all Entities of all such contractual, legal, and equitable subordination rights and Causes of Action that are satisfied, compromised, and settled pursuant hereto. Nothing in the Plan shall compromise or settle, in any way whatsoever, any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have against any Entity that is not a Released Party.**

**In accordance with the provisions of the Plan, and pursuant to Bankruptcy Rule 9019, without any further notice to, or action, order, or approval of, the Bankruptcy Court or the Canadian Court, after the Effective Date, the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle (1) Claims (including Causes of Action) against and Interests in the Debtors not previously Allowed (if any) and (2) claims (including Causes of Action) against other Entities.**

B.    ***Discharge of Claims and Termination of Interests***

**Except as otherwise provided in the Plan, effective as of the Effective Date: (1) the distributions, rights, and treatment that are provided in the Plan for all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, whether known or unknown, against or in the Debtors or any of their assets, property, or Estates, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date and any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date; (2) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (3) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under sections 502(g),**

5

502(h), or 502(i) of the Bankruptcy Code; and (4) all entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date. Notwithstanding the foregoing, all Existing Common Units shall remain in full force and effect and shall be governed by the terms of the applicable New Organizational Documents, including the Second Amended and Restated Operating Agreement. The Confirmation Order shall be a judicial determination, subject to the Effective Date occurring, of the discharge of all Claims and Interests except as otherwise expressly provided in the Plan.

C.    *Release of Liens*

Except as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit First Lien Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and the effectiveness of the Exit First Lien Facility Documents, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall automatically revert to the Reorganized Debtors and each of their successors and assigns, and the Agents/Trustees and the DIP Agent shall be authorized to release any such mortgages, deeds of trust, Liens, pledges, or other security interests held by such holder and to take such actions as may be requested by the Reorganized Debtors to evidence the release of such mortgages, deeds of trust, Liens, pledges, or other security interests, including the execution, delivery, and filing or recording of any related releases or discharges as may be requested by the Reorganized Debtors or may be required in order to effectuate the foregoing.

D.    *Releases of Released Parties*

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to applicable bankruptcy law, of the releases described in this Article VIII.D and shall constitute the Bankruptcy Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by this Article VIII.D; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Entity (including the Debtors) asserting any claim or Cause of Action released pursuant to this Article VIII.D.

1.    **Releases by the Debtors**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law,

6

the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of each Debtor, each Reorganized Debtors, and each Estate, in each case, on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action, whether prepetition or postpetition, derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws, or otherwise that the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, (ii) any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have in connection with the Ligado Takings Case, ~~and~~ (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit First Lien Facility Documents, or any Claim or obligation arising under the Plan **and (iv) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct.**

2.      **Releases by Holders of Claims or Interests**

As of the Effective Date, except for **(i)** the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring ~~or~~**, (ii) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct, or (iii) the rights provided or reserved for under the AST Definitive Agreements Order, or (iv)** as otherwise provided in any order

of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case, from any and all Claims and Causes of Action whatsoever, whether prepetition or postpetition (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates, the Chapter 11 Cases the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors (including any of the Debtors' predecessors) or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors (including any of the Debtors' predecessors) and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.

Entry of the Confirmation Order shall, subject to the occurrence of the Effective Date, constitute the Bankruptcy Court's approval of the releases contained in the Plan and a finding that each release described is (i) in exchange for the good and valuable consideration provided by the Released Parties, including without limitation, the Released Parties' contributions to implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the holders of Claims and Interests, (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a sound exercise of the Debtors' business judgment.

Nothing in this Plan prohibits, precludes, or enjoins any Governmental Unit from asserting or filing a proof of Claim on or before the Governmental Bar Date.[4]

---

[4] "Governmental Bar Date" shall have the meaning set forth in the *Order Establishing (I) Various Bar Dates for Filing Proofs of Claim, (II) Approving the Form and Manner of Filing Proofs of Claim, (III) Approving Notices of Bar Dates, and (IV) Granting Related Relief* [Docket No. 340].

8

E.    *Exculpation*

**To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action based on any act or omission occurring from the Petition Date through the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the Restructuring Support Agreement, the Restructuring, the DIP Facility, the DIP Orders, the DIP Documents, any Canadian Court Recognition Order, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes gross negligence, intentional fraud or willful misconduct as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code and have participated in good faith with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

F.    *Injunction*

**Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests or Causes of Action or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such**

9

Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities released or settled pursuant to the Plan.

By accepting distributions pursuant to the Plan (including retaining any Interest in the Debtors as set forth in the Plan), each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth above.

The injunctions set forth above shall extend to any predecessors and/or successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property. Immediately upon entry of the Confirmation Order, no Person or Entity may commence or pursue a Claim or Cause of Action (or continue to prosecute such Claim or Cause of Action to the extent filed prior to entry of the Confirmation Order) of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII hereof (or anticipated to be subject to Article VIII following entry of the Confirmation Order but prior to the Effective Date), without the Bankruptcy Court (1) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind (or that, even if such Claim or Cause of Action represents a colorable Claim of any kind, it would not be subject to the releases set forth in Article VIII), and (2) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party. Immediately upon entry of the Confirmation Order, any existing proceeding related to a claim or cause of action against any Released Parties or Exculpated Parties is hereby stayed until such parties seeking to prosecute such claims or cause of action comply with the procedures set forth in the foregoing paragraph.

\*\*\*

UNDER THE PLAN, "RELEASING PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH, (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (VII) WITH RESPECT TO EACH OF THE FOREGOING PERSONS IN CLAUSES (I) THROUGH (VIVIII), SUCH PERSONS' PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES

(INCLUDING AFFILIATES OF ANY PREDECESSORS), CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS (INCLUDING EQUITY HOLDERS OF ANY PREDECESSORS), MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES, (VIII) THE HOLDERS OF ALL CLAIMS OR INTERESTS WHOSE VOTE TO ACCEPT OR REJECT THE PLAN IS SOLICITED BUT DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE VIIID.2, AND (IX) THE HOLDERS OF ALL CLAIMS AND INTERESTS WHO WERE GIVEN NOTICE OF THE OPPORTUNITY AND SERVED WITH A PROVIDED FORM TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE VIIID.2 BUT DID NOT TIMELY OPT OUT.

UNDER THE PLAN, "RELEASED PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH,  (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) EACH OF THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, AND (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (IX) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (I) THROUGH (VIVIII), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES, CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS, MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES; PROVIDED, HOWEVER, THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) FILES AN OBJECTION TO THE PLAN OR (Y) OPTS OUT OF THE RELEASES SET FORTH IN ARTICLE VIIID.2, AS APPLICABLE, SHALL NOT BE A "RELEASED PARTY."

IF YOU DO NOT CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE THIRD-PARTY RELEASE SET FORTH ABOVE.

IF YOU DO NOT CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES OF THE RELEASED PARTIES SET FORTH ABOVE.

UNLESS YOU CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, BY ACCEPTING DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT OF YOUR ALLOWED CLAIM OR INTEREST YOU WILL BE DEEMED TO HAVE AFFIRMATIVELY CONSENTED TO BE BOUND BY THE TERMS OF THE PLAN, INCLUDING, WITHOUT LIMITATION, THE RELEASES AND INJUNCTIONS

11

**SET FORTH ABOVE.**

**The holder (or authorized signatory of each holder) of the Class 3 Claim identified in Item 1 elects to:**

> ☐   **Opt out of the Third-Party Release contained in Article VIII.D.2 of the Plan.**

**Item 4.** **Certification with Respect to Class 3 Claims Held in Additional Accounts.**

By completing and returning this Beneficial Holder Ballot, the Beneficial Holder of the Class 3 Claim identified in Item 1 certifies that: (a) this Beneficial Holder Ballot is the only Beneficial Ballot submitted for the Class 3 Claims identified in Item 1, except as identified in the following table, and (b) *all* Beneficial Holder Ballots for Class 3 Claims submitted by the Beneficial Holder indicate the same vote to accept or reject the Plan that the Beneficial Holder has indicated in Item 2 of this Beneficial Holder Ballot. **If you hold Class 3 Claims through more than one Nominee, you must identify all Class 3 Claims held through each such Nominee in the following table and must vote all such Claims to either accept or reject the Plan on all Beneficial Holder Ballots you submit.**

ONLY COMPLETE ITEM 4 IF YOU HAVE SUBMITTED OTHER BENEFICIAL BALLOTS ON ACCOUNT OF CLASS 3 FIRST LIEN NOTES CLAIMS

| Name of Nominee Through Which You Hold and Vote Other Class 3 Claims[5] | Account Number with Such Other Nominee | Principal Amount of Other Class 3 Claims Voted Through Other Nominee | CUSIP of Other Class 3 Claims Voted |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

---

[5]   Insert your name if the Class 3 Claims are held by you in your own name or, if held in street name through a Nominee, insert the name of your Nominee.

13

**Item 5.** **Certifications.**

By signing this Beneficial Holder Ballot, the undersigned certifies that:

1.      as of the Voting Record Date, either: (a) it is the Beneficial Holder of the Class 3 Claim being voted on this Ballot; or (b) it is an authorized signatory for an entity that is the Beneficial Holder of such Class 3 Claim;

2.      it is eligible to vote on the Plan and make an election with respect to the Third-Party Release;

3.      it has received a copy of the Disclosure Statement and the other solicitation materials, including the Plan, and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

4.      it has cast the same vote with respect to all of its Class 3 Claims;

5.      no other Beneficial Holder Ballots with respect to the Class 3 Claims identified in Item 1 have been cast or, if any other Beneficial Holder Ballots have been cast with respect to such Claims, then any such Beneficial Holder Ballots cast earlier are hereby revoked;

6.      it acknowledges and understands that a vote to accept the Plan constitutes an acceptance of the treatment of the Class 3 Claim identified in Item 1; and

7.      it acknowledges and understands that the Debtors may make changes to the Plan as may be reasonably necessary and that, to the extent such changes are not material, the Debtors will not re-solicit acceptances or rejections of the Plan.

14

Name of Beneficial Holder: _____
                                          *(print or type)*

Signature: _____

Name Of Signatory: _____
                                *(if other than Beneficial Holder)*

Title: _____

Address: _____

_____

Telephone Number and email: _____

Date                                                              Completed:

_____

**PLEASE COMPLETE, SIGN, AND DATE THIS
BENEFICIAL HOLDER BALLOT AND RETURN IT *PROMPTLY* IN ACCORDANCE
WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.**

**IF YOUR NOMINEE INSTRUCTS YOU TO SUBMIT YOUR VOTE BY VOTER INFORMATION FORM, E-MAIL, TELEPHONE CALL, OR OTHER CUSTOMARY METHOD, YOU ARE AUTHORIZED TO FOLLOW YOUR NOMINEE'S INSTRUCTIONS IN LIEU OF SUBMITTING THIS BENEFICIAL HOLDER BALLOT.**

**THE VOTING DEADLINE FOR THE RECEIPT BY THE SOLICITATION AGENT OF THE MASTER BALLOT REFLECTING YOUR VOTE IS [~~MAY 29~~JULY 24], 2025 AT 4:00 P.M. (PREVAILING EASTERN TIME).**

**IF YOUR NOMINEE PROVIDED YOU WITH A PRE-VALIDATED BENEFICIAL HOLDER BALLOT, SUCH BENEFICIAL HOLDER BALLOT, ONCE EXECUTED BY YOU, MUST BE SUBMITTED SUCH THAT IT IS RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE THE VOTING DEADLINE. OTHERWISE, YOUR PROPERLY COMPLETED AND EXECUTED BENEFICIAL HOLDER BALLOT MUST BE RECEIVED BY YOUR NOMINEE WITH SUFFICIENT TIME TO PERMIT YOUR NOMINEE TO DELIVER YOUR VOTE TO THE SOLICITATION AGENT ON OR BEFORE THE VOTING DEADLINE.**

15

## INSTRUCTIONS FOR COMPLETING BENEFICIAL BALLOTS

1.  The Debtors are soliciting votes of the holders of certain Claims with respect to the Plan attached to the Disclosure Statement, which is being sent to you together with this Beneficial Holder Ballot.  Capitalized terms used in the Beneficial Holder Ballot or in these instructions but not otherwise defined therein or herein have the meanings set forth in the Plan or Disclosure Statement, as applicable.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE VOTING**.

2.  The Plan may be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims in at least one Class of impaired Claims and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

3.  If you are not both a beneficial and registered holder of the Class 3 Claim indicated in Item 1 of the Ballot, to have your vote counted, you must submit it through your Nominee (by Beneficial Ballot or otherwise according to the instructions received from your Nominee) with sufficient time to permit your Nominee to submit a Master Ballot reflecting your vote so that such Master Ballot is <u>actually</u> <u>received</u> by the Solicitation Agent on or prior to the Voting Deadline.

4.  The Voting Deadline for the receipt of Master Ballots by the Solicitation Agent is **[~~May 29~~July 24], 2025 at 4:00 p.m. (prevailing Eastern Time)**.  Your completed Beneficial Ballot must be received by your Nominee with sufficient time to permit your Nominee to deliver your votes to the Solicitation Agent on or before the Voting Deadline.

5.  To ensure that your vote is counted for purposes of accepting or rejecting the Plan:

    i.   If your Nominee provided you with a pre-validated Beneficial Holder Ballot, please complete the remaining items on your pre-validated Beneficial Holder Ballot and return it directly to the Solicitation Agent by no later than the Voting Deadline, by either (a) using the return envelope provided with this Beneficial Holder Ballot, (b) if no return envelope is provided, by regular mail, overnight courier, or hand delivery to the Solicitation Agent's mailing address set forth above so that it is *actually received* by the Solicitation Agent on or before the Voting Deadline, which is **[~~May 29~~July 24], 2025, at 4:00 p.m.**, Prevailing Eastern Time, or (c) via online submission by using the Solicitation Agent's online portal, by visiting ~~https://omniagentsolutions.com/Ligado-Ballots~~**https://omniagentsolutions.com/Ligado-Ballots**, clicking on the "Balloting" section of the website, and following the instructions; OR

    ii.  if your Nominee has not pre-validated your Beneficial Holder Ballot, then you must submit your properly filled and executed Beneficial Holder Ballot to your Nominee in the manner directed by your Nominee with sufficient time to permit

16

your Nominee to submit a Master Ballot reflecting your vote so that such Master Ballot is actually received by the Solicitation Agent on or before the Voting Deadline, which is **[~~May 29~~July 24], 2025, at 4:00 p.m.,** Prevailing Eastern Time. You may instruct your Nominee to vote on your behalf in the Master Ballot by: (i) completing the Beneficial Holder Ballot; (ii) indicating your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Beneficial Holder Ballot; (iii) if applicable, indicating that you elect to opt out of the Third-Party Release in the box provided in Item 3 of the Beneficial Holder Ballot; and (iv) signing and returning the Beneficial Holder Ballot to your Nominee in accordance with the instructions provided by your Nominee.

6. Except as otherwise provided herein or unless waived by the Debtors or permitted by order of the Bankruptcy Court, your vote will not be counted unless either (i) if you are a registered holder or you are voting through a pre-validated Beneficial Holder Ballot, your Beneficial Holder Ballot is received by the Solicitation Agent on or prior to the Voting Deadline; or (ii) a Master Ballot reflecting your vote is delivered by your Nominee to the Solicitation Agent on or before the Voting Deadline.

7. The method of delivery of your Beneficial Holder Ballot is at your election and risk.   Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **actually receives** your executed Ballot.   You should allow sufficient time to assure timely delivery.

8. If you cast more than one Beneficial Holder Ballot voting the same Class 3 Claims, the last valid Beneficial Holder Ballot (or Master Ballot reflecting your vote) received by the Solicitation Agent on or before the Voting Deadline shall be deemed to reflect your intent, and thus, supersede any prior Beneficial Holder Ballot.

9. If you cast a timely Beneficial Holder Ballot that is properly completed and executed but does not indicate either an acceptance or rejection of the Plan, your vote will not be counted.

10. If you cast a timely Beneficial Holder Ballot that is properly completed and executed but indicates both an acceptance and a rejection of the Plan, your vote will not be counted.

11. This Beneficial Holder Ballot does **not** constitute, and will not be deemed to be, (a) a proof of Claim or (b) an assertion or admission with respect to any Claim.

12. You will be deemed to have voted the full amount of your Class 3 Claim and are not entitled to split your vote.   Any Beneficial Holder Ballot that partially accepts and partially rejects the Plan will not be counted.

13. **The following Beneficial Holder Ballots will *not* be counted for purposes of accepting or rejecting the Plan or, to the extent made, the opt out election unless the Debtors, in their sole discretion, determine otherwise**:

    i.       Any Beneficial Holder Ballot received after the Voting Deadline or received too late to allow your Nominee to submit a Master Ballot reflecting your vote on or

17

before the Voting Deadline, unless the Debtors have granted an extension of the Voting Deadline in writing with respect to such ballot;

ii. Any Beneficial Holder Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

iii. Any Beneficial Holder Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan;

iv. Any Beneficial Holder Ballot cast by a person or entity that is not entitled to vote, even if such person holds a Claim in a Class that is entitled to vote on the Plan;

v. Any unsigned Beneficial Holder Ballot;

vi. Any Beneficial Holder Ballot with respect to a vote that the Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; or

vii. Any Beneficial Holder Ballot transmitted by means not specifically approved in these instructions.

14. Please be sure to sign and date your Beneficial Holder Ballot. You should indicate if you are signing a Beneficial Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise in a fiduciary or representative capacity and, if required or requested by the Solicitation Agent, the Debtors, your Nominee, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Beneficial Holder Ballot.

15. If you hold Class 3 Claims through more than one Nominee or through multiple accounts, you should execute a separate Beneficial Holder Ballot for each block of the First Lien Notes you hold through any one Nominee and you must submit each such Beneficial Holder Ballot in accordance with the applicable Nominee's instructions.

16. Subject to contrary orders of the Bankruptcy Court, any defects or irregularities in connection with the delivery of your Beneficial Holder Ballot must be cured prior to the Voting Deadline or such Beneficial Ballot (or a Master Ballot reflecting your vote) will not be counted. Notwithstanding the foregoing, the Debtors may, in their sole discretion, waive any defect or irregularity as to any particular Beneficial Holder Ballot or Master Ballot at any time, either before or after the Voting Deadline.

17. Neither the Debtors, the Solicitation Agent, your Nominee, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to your Beneficial Ballot, nor will any of them incur any liability for failure to provide such notification.

18.    This Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to: (i) vote to accept or reject the Plan; (ii) if applicable, opt-out of the Third-Party Release, and (iii) make the required certifications. Accordingly, at this time, you should not surrender the instruments representing or evidencing your First Lien Notes Claims, and neither the Debtors nor Solicitation Agent will accept delivery of any such instruments.

19.    You shall be deemed to have consented to the Third-Party Release unless you affirmatively opt out of the Third-Party Release by checking the box in Item 3 above, regardless of whether you voted to accept or reject the Plan or abstain from voting altogether.

20.    This Beneficial Holder Ballot does not constitute and will not be deemed to be: (a) a proof of Claim; or (b) an assertion or admission of a Claim.

**PLEASE SUBMIT YOUR BENEFICIAL HOLDER BALLOT PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL HOLDER BALLOT, THE VOTING OR THE OPT OUT PROCEDURES, PLEASE CONTACT YOUR NOMINEE OR THE SOLICITATION AGENT, AS APPLICABLE.**

**<u>Exhibit 1</u>**

**Please indicate below the CUSIP/ISIN to which this Beneficial Holder Ballot pertains.**

| | | |
|---|---|---|
| ☐ | 15.500% PIK Senior Secured First Lien Notes due 2023 | 144A CUSIP: 53225H AA8<br>144A ISIN: US53225HAA86 |
| ☐ | 15.500% PIK Senior Secured First Lien Notes due 2023 | REG S CUSIP: U5364H AA6<br>REG S ISIN: USU5364HAA69 |

**Exhibit 2.C**

**Class 3 Ballot (Term Loan)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

_____

|   |   |   |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| LIGADO NETWORKS LLC *et al.*,[1] | ) | Case No. 25-10006 (TMH) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |
_____ )

**BALLOT FOR VOTING TO ACCEPT OR REJECT**
**THE CHAPTER 11 PLANS OF LIGADO NETWORKS, LLC ET AL.**

**CLASS 43 (1.5FIRST LIEN TERM LOAN CLAIMS)**

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**
>
> **IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED IN ACCORDANCE WITH THE INSTRUCTIONS BELOW SO AS TO BE ACTUALLY RECEIVED BY THE DEBTORS' SOLICITATION AGENT BY [MAY 29JULY 24], 2025, AT 4:00 P.M. (ET) (THE "VOTING DEADLINE").**

The above-captioned debtors (the "Debtors") are soliciting votes on the *Joint Chapter 11 Plan of Ligado Networks LLC and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan") described in (and attached to) the *Disclosure Statement for Joint Chapter 11 Plan of Ligado Networks LLC, and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement")[2] included in the package (the "Solicitation Materials") you are receiving with this ballot (the "Ballot").

You are receiving this Ballot because the Debtors' records indicate that you may be a holder, a potential holder, an investment advisor, a sub-advisor, or a manager of various

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or Disclosure Statement, as applicable.

funds/accounts/investors with respect to a claim under the ~~1.5~~**First** Lien Term Loan Credit Agreement (a "Class 4**3** Claim") as of [~~March 21~~**June 20**], 2025 (the "Voting Record Date") and, as such, have the right to vote to accept or reject the Plan.

As described in more detail in the Disclosure Statement and the Plan, if the Plan is confirmed and the Effective Date occurs, then, subject to Section III.B of the Plan and except to the extent that you may agree to less favorable treatment, on the Effective Date, in exchange for your Allowed Class 4**3** Claim, you will receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Class 4**3** Claim, your Pro Rata share of the New Series A ~~2~~**1** Preferred Units.

**YOUR VOTE WILL BE APPLIED TO THOSE DEBTORS WHO ARE LIABLE TO YOU ON ACCOUNT OF YOUR CLASS 4<u>3</u> CLAIM.**

Your rights are described in the Disclosure Statement.  If you received the Solicitation Materials in electronic form and desire paper copies of any of them, or if you need to obtain additional Solicitation Materials, you may obtain them at no charge from Omni Agent Solutions, Inc. (the "Solicitation Agent") by: (i) emailing ~~LigadoInquiries@OmniAgnt.com~~**LigadoInquiries@OmniAgnt.com** with a reference to "Ligado" in the subject line, or (ii) at the following telephone numbers: (866) 956-2139 (domestic toll free) or (747) 288-6357 (international).

On the Petition Date, the website ~~https://omniagentsolutions.com/Ligado~~**https://omniagentsolutions.com/Ligado** will become publicly available and contain important information, hearing dates, and other key deadlines, as well as the docket for the Debtors' chapter 11 cases.  You may also obtain copies of any pleadings to be filed in these cases for a fee via PACER at: ~~http://www.deb.uscourts.gov~~**http://www.deb.uscourts.gov.**

This Ballot may not be used for any purpose other than for (i) casting your vote to accept or reject the Plan, (ii) indicating your election to opt out of certain releases described below, if applicable, and (iii) making certain certifications with respect to your vote.  If you believe you have received this Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent **immediately** at the email address set forth above.

**You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Class 4<u>3</u> Claim.  This Ballot pertains solely to your Class 4<u>3</u> Claim.  If you hold Claims or Interests in more than one Class that is entitled to vote on the Plan, you will receive a ballot for each such Class.**

**PLEASE SUBMIT YOUR BALLOT BY ONE OF THE FOLLOWING TWO METHODS:**

**<u>Via Paper Ballot</u>. Complete, sign, and date this Ballot and return it, properly executed, promptly via first class mail (or in the enclosed reply envelope), overnight courier, or hand delivery to:**

**Ligado Networks, LLC Ballot Processing**

**c/o Omni Agent Solutions, Inc.**
**5955 De Soto Ave., Suite 100**
**Woodland Hills, CA 91367**

**IF YOU WOULD LIKE TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND PROVIDE THE ANTICIPATED DATE AND TIME OF DELIVERY AT LEAST TWENTY-FOUR (24) HOURS IN ADVANCE.**

**<u>OR</u>**

<u>**Via Online Submission**</u>. **Submit your Ballot via the Solicitation Agent's online portal (the "<u>E-Ballot Portal</u>"), by visiting https://omniagentsolutions.com/Ligado-Ballots.   Click on the "Balloting" section of the website and follow the instructions to submit your Ballot.**

**The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**If you cast a Ballot using the E-Ballot Portal, you should NOT also submit a paper Ballot.**

**IF YOU WISH TO SUBMIT YOUR BALLOT THROUGH THE ONLINE E-BALLOT PORTAL BUT ARE UNABLE TO DO SO, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND SOMEONE WILL PROVIDE ASSISTANCE.**

**Item 1**. **Principal Amount of Class 4~~3~~ Claim.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of a holder) of a Class 4~~3~~ Claim in the following principal amount (insert amount in box below):

$$\text{\$}^3\text{_____}$$

**Item 2**. **Vote For or Against the Plan.**

The holder of the Class 4~~3~~ Claim set forth in Item 1 votes to (please check only **one** box):

| ☐   **ACCEPT** (vote FOR) the Plan | ☐   **REJECT** (vote AGAINST) the Plan |
|---|---|

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**Any Ballot that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan, will not be counted.**

**Item 3**. **Important Information Regarding the Releases of Claims by Holders of Claims or Interests**

**WHETHER YOU VOTE TO ACCEPT OR REJECT THE PLAN OR ABSTAIN FROM VOTING ALTOGETHER, UNLESS YOU CHECK THE "OPT OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES OF THE RELEASED PARTIES SET FORTH IN ARTICLE VIII.D.2 OF THE PLAN COPIED BELOW (THE "THIRD-PARTY RELEASE").**

**Article VIII of the Plan contains the following provisions:**

A.     *Compromise and Settlement*

**The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their Estates, and all holders of Claims or Interests, (2) fair, equitable, and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to applicable bankruptcy law. In addition, the allowance, classification, and treatment of any Allowed Claims of a Released Party take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist between the Debtors and any Released Party and, as of the Effective Date, any and all such Causes of Action are settled, compromised, and released as set forth in the Plan. The**

---

[3]     For voting purposes only.  Subject to tabulation rules.

4

Confirmation Order shall authorize and approve the releases by all Entities of all such contractual, legal, and equitable subordination rights and Causes of Action that are satisfied, compromised, and settled pursuant hereto.  Nothing in the Plan shall compromise or settle, in any way whatsoever, any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have against any Entity that is not a Released Party.

In accordance with the provisions of the Plan, and pursuant to Bankruptcy Rule 9019, without any further notice to, or action, order, or approval of, the Bankruptcy Court or the Canadian Court, after the Effective Date, the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle (1) Claims (including Causes of Action) against and Interests in the Debtors not previously Allowed (if any) and (2) claims (including Causes of Action) against other Entities.

B.    *Discharge of Claims and Termination of Interests*

Except as otherwise provided in the Plan, effective as of the Effective Date: (1) the distributions, rights, and treatment that are provided in the Plan for all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, whether known or unknown, against or in the Debtors or any of their assets, property, or Estates, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date and any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date; (2) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (3) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code; and (4) all entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date.  Notwithstanding the foregoing, all Existing Common Units shall remain in full force and effect and shall be governed by the terms of the applicable New Organizational Documents, including the Second Amended and Restated Operating Agreement.  The Confirmation Order shall be a judicial determination, subject to the Effective Date occurring, of the discharge of all Claims and Interests except as otherwise expressly provided in the Plan.

C.    *Release of Liens*

Except as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit First Lien Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and the effectiveness of the Exit First Lien Facility Documents, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title,

**and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall automatically revert to the Reorganized Debtors and each of their successors and assigns, and the Agents/Trustees and the DIP Agent shall be authorized to release any such mortgages, deeds of trust, Liens, pledges, or other security interests held by such holder and to take such actions as may be requested by the Reorganized Debtors to evidence the release of such mortgages, deeds of trust, Liens, pledges, or other security interests, including the execution, delivery, and filing or recording of any related releases or discharges as may be requested by the Reorganized Debtors or may be required in order to effectuate the foregoing.**

D.    *Releases of Released Parties*

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to applicable bankruptcy law, of the releases described in this Article VIII.D and shall constitute the Bankruptcy Court's finding that such releases are:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by this Article VIII.D; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Entity (including the Debtors) asserting any claim or Cause of Action released pursuant to this Article VIII.D.**

1.    **Releases by the Debtors**

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of each Debtor, each Reorganized Debtors, and each Estate, in each case, on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action, whether prepetition or postpetition, derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws, or otherwise that the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the**

6

business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, (ii) any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have in connection with the Ligado Takings Case, ~~and~~ (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit First Lien Facility Documents, or any Claim or obligation arising under the Plan **and (iv) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct**.

2.    Releases by Holders of Claims or Interests

As of the Effective Date, except for **(i)** the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring ~~or~~**, (ii) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct, or (iii) the rights provided or reserved for under the AST Definitive Agreements Order, or (iv)** as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case, from any and all Claims and Causes of Action whatsoever, whether prepetition or postpetition (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates, the Chapter 11 Cases the Restructuring, the

purchase, sale, or rescission of the purchase or sale of any security of the Debtors (including any of the Debtors' predecessors) or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors (including any of the Debtors' predecessors) and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.

Entry of the Confirmation Order shall, subject to the occurrence of the Effective Date, constitute the Bankruptcy Court's approval of the releases contained in the Plan and a finding that each release described is (i) in exchange for the good and valuable consideration provided by the Released Parties, including without limitation, the Released Parties' contributions to implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the holders of Claims and Interests, (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a sound exercise of the Debtors' business judgment.

Nothing in this Plan prohibits, precludes, or enjoins any Governmental Unit from asserting or filing a proof of Claim on or before the Governmental Bar Date.[4]

E.   *Exculpation*

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action based on any act or omission occurring from the Petition Date through the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the Restructuring Support Agreement, the Restructuring, the DIP Facility, the DIP Orders, any Canadian Court Recognition Order, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act

---

[4]   "Governmental Bar Date" shall have the meaning set forth in the *Order Establishing (I) Various Bar Dates for Filing Proofs of Claim, (II) Approving the Form and Manner of Filing Proofs of Claim, (III) Approving Notices of Bar Dates, and (IV) Granting Related Relief* [Docket No. 340].

or constitutes **gross negligence,** intentional fraud or willful misconduct as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code and have participated in good faith with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

F.    *Injunction*

Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests or Causes of Action or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff~~, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise~~; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities released or settled pursuant to the Plan.

~~By accepting distributions pursuant to the Plan (including retaining any Interest in the Debtors as set forth in the Plan), each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without~~

9

limitation, the injunctions set forth above.

The injunctions set forth above shall extend to any predecessors and/or successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property. Immediately upon entry of the Confirmation Order, no Person or Entity may commence or pursue a Claim or Cause of Action (or continue to prosecute such Claim or Cause of Action to the extent filed prior to entry of the Confirmation Order) of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII hereof (or anticipated to be subject to Article VIII following entry of the Confirmation Order but prior to the Effective Date), without the Bankruptcy Court (1) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind (or that, even if such Claim or Cause of Action represents a colorable Claim of any kind, it would not be subject to the releases set forth in Article VIII), and (2) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party. Immediately upon entry of the Confirmation Order, any existing proceeding related to a claim or cause of action against any Released Parties or Exculpated Parties is hereby stayed until such parties seeking to prosecute such claims or cause of action comply with the procedures set forth in the foregoing paragraph.

\*\*\*

UNDER THE PLAN, "RELEASING PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH, (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (VII) WITH RESPECT TO EACH OF THE FOREGOING PERSONS IN CLAUSES (I) THROUGH (VIVIII), SUCH PERSONS' PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES (INCLUDING AFFILIATES OF ANY PREDECESSORS), CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS (INCLUDING EQUITY HOLDERS OF ANY PREDECESSORS), MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES, (VIII) THE HOLDERS OF ALL CLAIMS OR INTERESTS WHOSE VOTE TO ACCEPT OR REJECT THE PLAN IS SOLICITED BUT DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE VIII.D.2, AND (IX) THE HOLDERS OF ALL CLAIMS AND INTERESTS WHO WERE GIVEN NOTICE OF THE OPPORTUNITY AND SERVED WITH A PROVIDED FORM TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE VIII.D.2 BUT DID NOT TIMELY OPT OUT.

UNDER THE PLAN, "RELEASED PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH,  (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) **EACH OF** THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, ~~AND~~ (VII) **AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (IX)** EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (I) THROUGH (~~VI~~**VIII**), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES, CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS, MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES; PROVIDED, HOWEVER, THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) FILES AN OBJECTION TO THE PLAN OR (Y) OPTS OUT OF THE RELEASES SET FORTH IN <u>ARTICLE VIIID.2</u>, AS APPLICABLE, SHALL NOT BE A "RELEASED PARTY."

IF YOU DO NOT CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES OF THE RELEASED PARTIES SET FORTH ABOVE.

UNLESS YOU CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, BY ACCEPTING DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT OF YOUR ALLOWED CLAIM OR INTEREST YOU WILL BE DEEMED TO HAVE AFFIRMATIVELY CONSENTED TO BE BOUND BY THE TERMS OF THE PLAN, INCLUDING, WITHOUT LIMITATION, THE RELEASES AND INJUNCTIONS SET FORTH ABOVE.

**The holder (or authorized signatory of each holder) of the Class 4̶3 Claim identified in Item 1 elects to:**

> ☐    **Opt out of the Third-Party Releases contained in Article VIII.D.2 of the Plan.**

**Item 4. Certifications.**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

a.    as of the Voting Record Date, it either: (i) is the holder of the Class 4̶3 Claim set forth in Item 1; or (ii) is an authorized signatory for the holder of the Class 4̶3 Claim set forth in Item 1;

b.    it is eligible to vote on the Plan and make an election with respect to the Third-Party Release;

c.    it (or in the case of an authorized signatory, the relevant holder) has received the Solicitation Materials including a copy of the Disclosure Statement and acknowledges that the solicitation of votes on the Plan is being made pursuant to the terms and conditions set forth therein;

d.    it has cast the same vote with respect to all of its Class 4̶3 Claims;

e.    no other Ballots with respect to the Class 4̶3 Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Class 4̶3 Claims, then any such Beneficial Holder Ballots cast earlier are hereby revoked;

f.    it acknowledges and understands that a vote to accept the Plan constitutes an acceptance of the treatment of the Class 4̶3 Claim identified in Item 1; and

g.    it acknowledges and understands that the Debtors may make changes to the Plan as may be reasonably necessary and that, to the extent such changes are not material, the Debtors will not re-solicit acceptances or rejections of the Plan.

Name of holder: _____

*(print or type)*

Signature: _____

Name of Signatory: _____

*(if other than the Class 43 Claims holder)*

Title: _____

Address: _____

Telephone Number
and Email: _____

Date Completed: _____

---

**IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE THIS BALLOT ON OR BEFORE [~~MAY 29~~JULY 24], 2025, AT 4:00 P.M. (ET), UNLESS THE VOTING DEADLINE IS EXTENDED, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED ONLY IN THE DISCRETION OF THE DEBTORS.**

## INSTRUCTIONS FOR COMPLETING THIS CLASS ~~4~~3 CLAIM BALLOT

1.  The Debtors are soliciting the votes on the Plan attached as **Exhibit A** to the Disclosure Statement.  Capitalized terms used in this Ballot or in these instructions but not otherwise defined therein or herein have the meaning set forth in the Plan or Disclosure Statement, as applicable.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE VOTING.**

2.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims in at least one Class of Claims that has the right to vote on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.  If the Plan is confirmed, it will be binding on you regardless of whether you vote at all or if you vote to reject the Plan. Please review the Disclosure Statement for more information.

3.  To ensure that your Ballot is counted, you <u>must</u> complete and submit this Ballot as instructed herein.  Ballots will not be accepted by electronic mail or facsimile, except as expressly set forth in the Ballot.

4.  To ensure that your vote is counted, you must: (a) complete this Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; (c) if you elect to opt out of the third-party releases, clearly indicate your decision in the box in Item 3 of your Ballot; and (d) sign and timely submit your Ballot as instructed herein.

5.  Your Ballot **must** be returned to the Solicitation Agent so as to be **actually received** by the Solicitation Agent on or before the Voting Deadline.  **The Voting Deadline is [~~May 29~~July 24], 2025, at 4:00 p.m. (ET).**

6.  If your Ballot is received after the Voting Deadline, unless the Voting Deadline is extended, your vote may only be counted in the sole and absolute discretion of the Debtors.  Additionally, **the following Ballots will <u>not</u> be counted**:

    (a)  Any Ballot that (i) partially rejects and partially accepts the Plan, (ii) is not marked to accept or reject the Plan, (iii) is marked both to accept and reject the Plan;

    (b)  Any Ballot sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), including the Debtors' financial or legal advisors, or any agent or indenture trustee for the Debtors' funded debt;

    (c)  Any Ballot sent by telecopy, electronic mail, facsimile, or other electronic means except for the E-Ballot Portal;

    (d)  Any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim voted;

      (e)      Any Ballot cast by a person or an entity that does not hold a Class 4**3** Claim or is not an authorized signatory for such holder;

      (f)      Any Beneficial Holder Ballot transmitted by means not specifically approved in these instructions; and/or

      (g)      Any unsigned Ballot (for the avoidance of doubt, electronic signatures contained in E-Ballots validly submitted through the E-Ballot Portal will be deemed immediately legally valid and effective).

7. The method of delivery of your Ballot to the Solicitation Agent is at your election and risk. Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **actually receives** your executed Ballot (or your E-Ballot validly submitted through the E-Ballot Portal). You should allow sufficient time to assure timely delivery.

8. If multiple Ballots are received from the same holder of the same Class 4**3** Claim prior to the Voting Deadline, the latest, timely received, and valid Ballot will supersede and revoke any earlier received Ballots.

9. If you cast a timely Ballot that is properly completed and executed but does not indicate either an acceptance or rejection of the Plan, your vote will not be counted.

10. If you cast a timely Ballot that is properly completed and executed but indicates both an acceptance and a rejection of the Plan, your vote will not be counted.

11. You must vote all of your Class 4**3** Claims either to accept or reject the Plan and may **not** split your vote.

12. This Ballot does **not** constitute, and will not be deemed to be, (a) a proof of Claim or (b) an assertion or admission with respect to any Claim.

13. **Please be sure to sign and date your Ballot**. If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of a holder of a Class 4 **3** Claim. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to your Ballot.

14. If you hold Claims or Interests in more than one Class you may receive more than one ballot coded for each such Class. Each ballot votes **only** your Claims or Interests indicated on that ballot, so please complete and return each ballot you receive.

15. Subject to contrary orders of the Bankruptcy Court, any defects or irregularities in connection with the delivery of your Ballot must be cured prior to the Voting Deadline or such Ballot will not be counted. Notwithstanding the foregoing, the Debtors may, in their

sole discretion, waive any defect or irregularity as to any particular Ballot at any time, either before or after the Voting Deadline.

16.     Neither the Debtors, the Solicitation Agent, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to your Ballot, nor will any of them incur any liability for failure to provide such notification.

17.     This Ballot is not a letter of transmittal and may not be used for any purpose other than to: (i) vote to accept or reject the Plan; (ii) if applicable, opt-out of the Third-Party Release, and (iii) make the required certifications.  Accordingly, at this time, you should not surrender the instruments representing or evidencing your Class 4**3** Claims, and neither the Debtors nor Solicitation Agent will accept delivery of any such instruments.

18.     There may be changes made to the Plan that do not have a material adverse effect on the treatment of your Class 4**3** Claim.  If such non-material changes are made to the Plan, the Debtors will not resolicit your vote on the Plan.

**PLEASE SUBMIT YOUR BALLOT PROMPTLY, TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE VIA THE E-BALLOT PLATFORM, AS DIRECTED ABOVE, OR IN HARD COPY AT THE FOLLOWING ADDRESS:**

**LIGADO NETWORKS, LLC BALLOT PROCESSING
C/O OMNI AGENT SOLUTIONS, INC.
5955 DE SOTO AVE., SUITE 100
WOODLAND HILLS, CA 91367**

_____

**IF YOU WOULD LIKE TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND PROVIDE THE ANTICIPATED DATE AND TIME OF DELIVERY AT LEAST TWENTY-FOUR (24) HOURS IN ADVANCE.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE.**

**IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE THIS BALLOT VIA THE E-BALLOT PLATFORM OR IN HARD COPY, AS DIRECTED ABOVE, ON OR BEFORE THE VOTING DEADLINE, WHICH IS ON [MAY 29JULY 24], 2025, AT 4:00 P.M. (ET), UNLESS THE VOTING DEADLINE IS EXTENDED, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED ONLY IN THE SOLE AND ABSOLUTE DISCRETION OF THE DEBTORS.**

**Exhibit 2.D**
**Class 4 Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| LIGADO NETWORKS LLC *et al.*,[1] | ) | Case No. 25-10006 (TMH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | |

**BALLOT FOR VOTING TO ACCEPT OR REJECT**
**THE CHAPTER 11 PLANS OF LIGADO NETWORKS, LLC ET AL.**

**CLASS 4 (1.5 LIEN TERM LOAN CLAIMS)**

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY <u>BEFORE</u> COMPLETING THIS BALLOT.**
>
> **IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED IN ACCORDANCE WITH THE INSTRUCTIONS BELOW SO AS TO BE <u>ACTUALLY</u> RECEIVED BY THE DEBTORS' SOLICITATION AGENT BY [~~MAY 29~~JULY 24], 2025, AT 4:00 P.M. (ET) (THE "<u>VOTING DEADLINE</u>").**

 The above-captioned debtors (the "<u>Debtors</u>") are soliciting votes on the *Joint Chapter 11 Plan of Ligado Networks LLC and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "<u>Plan</u>") described in (and attached to) the *Disclosure Statement for Joint Chapter 11 Plan of Ligado Networks LLC, and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "<u>Disclosure Statement</u>")[2] included in the package (the "<u>Solicitation Materials</u>") you are receiving with this ballot (the "<u>Ballot</u>").

 You are receiving this Ballot because the Debtors' records indicate that you may be a holder, a potential holder, an investment advisor, a sub-advisor, or a manager of various

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or Disclosure Statement, as applicable.

1

funds/accounts/investors with respect to a claim under the 1.5 Lien Term Loan Credit Agreement (a "Class 4 Claim") as of [~~March 21~~**June 20**], 2025 (the "Voting Record Date") and, as such, have the right to vote to accept or reject the Plan.

As described in more detail in the Disclosure Statement and the Plan, if the Plan is confirmed and the Effective Date occurs, then, subject to Section III.B of the Plan and except to the extent that you may agree to less favorable treatment, on the Effective Date, in exchange for your Allowed Class 4 Claim, you will receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Class 4 Claim, your Pro Rata share of the New Series A-2 Preferred Units.

**YOUR VOTE WILL BE APPLIED TO THOSE DEBTORS WHO ARE LIABLE TO YOU ON ACCOUNT OF YOUR CLASS 4 CLAIM.**

Your rights are described in the Disclosure Statement. If you received the Solicitation Materials in electronic form and desire paper copies of any of them, or if you need to obtain additional Solicitation Materials, you may obtain them at no charge from Omni Agent Solutions, Inc. (the "Solicitation Agent") by: (i) emailing ~~LigadoInquiries@OmniAgnt.com~~**LigadoInquiries@OmniAgnt.com** with a reference to "Ligado" in the subject line, or (ii) at the following telephone numbers: (866) 956-2139 (domestic toll free) or (747) 288-6357 (international).

On the Petition Date, the website ~~https://omniagentsolutions.com/Ligado~~**https://omniagentsolutions.com/Ligado** will become publicly available and contain important information, hearing dates, and other key deadlines, as well as the docket for the Debtors' chapter 11 cases. You may also obtain copies of any pleadings to be filed in these cases for a fee via PACER at: ~~http://www.deb.uscourts.gov~~**http://www.deb.uscourts.gov.**

This Ballot may not be used for any purpose other than for (i) casting your vote to accept or reject the Plan, (ii) indicating your election to opt out of certain releases described below, if applicable, and (iii) making certain certifications with respect to your vote. If you believe you have received this Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent **immediately** at the email address set forth above.

**You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Class 4 Claim. This Ballot pertains solely to your Class 4 Claim. If you hold Claims or Interests in more than one Class that is entitled to vote on the Plan, you will receive a ballot for each such Class.**

**PLEASE SUBMIT YOUR BALLOT BY ONE OF THE FOLLOWING TWO METHODS:**

<u>**Via Paper Ballot**</u>**. Complete, sign, and date this Ballot and return it, properly executed, promptly via first class mail (or in the enclosed reply envelope), overnight courier, or hand delivery to:**

**Ligado Networks, LLC Ballot Processing**

**c/o Omni Agent Solutions, Inc.**
**5955 De Soto Ave., Suite 100**
**Woodland Hills, CA 91367**

**IF YOU WOULD LIKE TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND PROVIDE THE ANTICIPATED DATE AND TIME OF DELIVERY AT LEAST TWENTY-FOUR (24) HOURS IN ADVANCE.**

**OR**

**Via Online Submission. Submit your Ballot via the Solicitation Agent's online portal (the "E-Ballot Portal"), by visiting https://omniagentsolutions.com/Ligado-Ballots.   Click on the "Balloting" section of the website and follow the instructions to submit your Ballot.**

**The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**If you cast a Ballot using the E-Ballot Portal, you should NOT also submit a paper Ballot.**

**IF YOU WISH TO SUBMIT YOUR BALLOT THROUGH THE ONLINE E-BALLOT PORTAL BUT ARE UNABLE TO DO SO, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND SOMEONE WILL PROVIDE ASSISTANCE.**

**Item 1**. **Principal Amount of Class 4 Claim.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of a holder) of a Class 4 Claim in the following principal amount (insert amount in box below):

<div style="border:1px solid black; text-align:center; padding:15px;">

$$\$^3 \underline{\hspace{4cm}}$$

</div>

**Item 2**. **Vote For or Against the Plan.**

The holder of the Class 4 Claim set forth in Item 1 votes to (please check only **one** box):

| ☐    **ACCEPT** (vote FOR) the Plan | ☐    **REJECT** (vote AGAINST) the Plan |
|---|---|

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**Any Ballot that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan, will not be counted.**

**Item 3**. **Important Information Regarding the Releases of Claims by Holders of Claims or Interests**

**WHETHER YOU VOTE TO ACCEPT OR REJECT THE PLAN OR ABSTAIN FROM VOTING ALTOGETHER, UNLESS YOU CHECK THE "OPT OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES OF THE RELEASED PARTIES SET FORTH IN ARTICLE VIII.D.2 OF THE PLAN COPIED BELOW (THE "THIRD-PARTY RELEASE").**

**Article VIII of the Plan contains the following provisions:**

A.    *Compromise and Settlement*

**The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their Estates, and all holders of Claims or Interests, (2) fair, equitable, and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to applicable bankruptcy law. In addition, the allowance, classification, and treatment of any Allowed Claims of a Released Party take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist between the Debtors and any Released Party and, as of the Effective Date, any and all such Causes of Action are settled, compromised, and released as set forth in the Plan. The**

---

3    For voting purposes only. Subject to tabulation rules.

Confirmation Order shall authorize and approve the releases by all Entities of all such contractual, legal, and equitable subordination rights and Causes of Action that are satisfied, compromised, and settled pursuant hereto.  Nothing in the Plan shall compromise or settle, in any way whatsoever, any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have against any Entity that is not a Released Party.

In accordance with the provisions of the Plan, and pursuant to Bankruptcy Rule 9019, without any further notice to, or action, order, or approval of, the Bankruptcy Court or the Canadian Court, after the Effective Date, the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle (1) Claims (including Causes of Action) against and Interests in the Debtors not previously Allowed (if any) and (2) claims (including Causes of Action) against other Entities.

B.   *Discharge of Claims and Termination of Interests*

Except as otherwise provided in the Plan, effective as of the Effective Date: (1) the distributions, rights, and treatment that are provided in the Plan for all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, whether known or unknown, against or in the Debtors or any of their assets, property, or Estates, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date and any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date; (2) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (3) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code; and (4) all entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date.  Notwithstanding the foregoing, all Existing Common Units shall remain in full force and effect and shall be governed by the terms of the applicable New Organizational Documents, including the Second Amended and Restated Operating Agreement.  The Confirmation Order shall be a judicial determination, subject to the Effective Date occurring, of the discharge of all Claims and Interests except as otherwise expressly provided in the Plan.

C.   *Release of Liens*

Except as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit First Lien Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and the effectiveness of the Exit First Lien Facility Documents, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title,

and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall automatically revert to the Reorganized Debtors and each of their successors and assigns, and the Agents/Trustees **and the DIP Agent** shall be authorized to release any such mortgages, deeds of trust, Liens, pledges, or other security interests held by such holder and to take such actions as may be requested by the Reorganized Debtors to evidence the release of such mortgages, deeds of trust, Liens, pledges, or other security interests, including the execution, delivery, and filing or recording of any related releases or discharges as may be requested by the Reorganized Debtors or may be required in order to effectuate the foregoing.

D.    *Releases of Released Parties*

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to applicable bankruptcy law, of the releases described in this Article VIII.D and shall constitute the Bankruptcy Court's finding that such releases are:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by this Article VIII.D; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Entity (including the Debtors) asserting any claim or Cause of Action released pursuant to this Article VIII.D.

1.    **Releases by the Debtors**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of each Debtor, each Reorganized Debtors, and each Estate, in each case, on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action, whether prepetition or postpetition, derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws, or otherwise that the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the

6

business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, (ii) any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have in connection with the Ligado Takings Case, ~~and~~ (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit First Lien Facility Documents, or any Claim or obligation arising under the Plan **and (iv) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct**.

2.    **Releases by Holders of Claims or Interests**

As of the Effective Date, except for **(i)** the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring ~~or~~**, (ii) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct, or (iii) the rights provided or reserved for under the AST Definitive Agreements Order, or (iv)** as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case, from any and all Claims and Causes of Action whatsoever, whether prepetition or postpetition (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates, the Chapter 11 Cases the Restructuring, the

purchase, sale, or rescission of the purchase or sale of any security of the Debtors (including any of the Debtors' predecessors) or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors (including any of the Debtors' predecessors) and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.

Entry of the Confirmation Order shall, **subject to the occurrence of the Effective Date,** constitute the Bankruptcy Court's approval of the releases contained in the Plan and a finding that each release described is (i) in exchange for the good and valuable consideration provided by the Released Parties, including without limitation, the Released Parties' contributions to implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the holders of Claims and Interests, (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a sound exercise of the Debtors' business judgment.

**Nothing in this Plan prohibits, precludes, or enjoins any Governmental Unit from asserting or filing a proof of Claim on or before the Governmental Bar Date.[4]**

E.    *Exculpation*

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action **based on any act or omission occurring from the Petition Date through the Effective Date** in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the Restructuring Support Agreement, the Restructuring, the DIP Facility, the DIP Orders, any Canadian Court Recognition Order, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act

---

[4] **"Governmental Bar Date" shall have the meaning set forth in the** *Order Establishing (I) Various Bar Dates for Filing Proofs of Claim, (II) Approving the Form and Manner of Filing Proofs of Claim, (III) Approving Notices of Bar Dates, and (IV) Granting Related Relief* **[Docket No. 340].**

or constitutes **gross negligence,** intentional fraud or willful misconduct as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code and have participated in good faith with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

F.    *Injunction*

Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests or Causes of Action or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff~~, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise~~; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities released or settled pursuant to the Plan.

~~By accepting distributions pursuant to the Plan (including retaining any Interest in the Debtors as set forth in the Plan), each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without~~

9

limitation, the injunctions set forth above.

The injunctions set forth above shall extend to any predecessors and/or successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property. Immediately upon entry of the Confirmation Order, no Person or Entity may commence or pursue a Claim or Cause of Action (or continue to prosecute such Claim or Cause of Action to the extent filed prior to entry of the Confirmation Order) of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII hereof (or anticipated to be subject to Article VIII following entry of the Confirmation Order but prior to the Effective Date), without the Bankruptcy Court (1) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind (or that, even if such Claim or Cause of Action represents a colorable Claim of any kind, it would not be subject to the releases set forth in Article VIII), and (2) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party. Immediately upon entry of the Confirmation Order, any existing proceeding related to a claim or cause of action against any Released Parties or Exculpated Parties is hereby stayed until such parties seeking to prosecute such claims or cause of action comply with the procedures set forth in the foregoing paragraph.

\*\*\*

UNDER THE PLAN, "RELEASING PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH, (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (VII) WITH RESPECT TO EACH OF THE FOREGOING PERSONS IN CLAUSES (I) THROUGH (VIVIII), SUCH PERSONS' PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES (INCLUDING AFFILIATES OF ANY PREDECESSORS), CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS (INCLUDING EQUITY HOLDERS OF ANY PREDECESSORS), MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES, (VIII) THE HOLDERS OF ALL CLAIMS OR INTERESTS WHOSE VOTE TO ACCEPT OR REJECT THE PLAN IS SOLICITED BUT DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE VIII.D.2, AND (IX) THE HOLDERS OF ALL CLAIMS AND INTERESTS WHO WERE GIVEN NOTICE OF THE OPPORTUNITY AND SERVED WITH A PROVIDED FORM TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE VIII.D.2 BUT DID NOT TIMELY OPT OUT.

UNDER THE PLAN, "RELEASED PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH,  (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) EACH OF THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, AND (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (IX) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (I) THROUGH (VIVIII), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES, CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS, MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES; PROVIDED, HOWEVER, THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) FILES AN OBJECTION TO THE PLAN OR (Y) OPTS OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D.2, AS APPLICABLE, SHALL NOT BE A "RELEASED PARTY."

IF YOU DO NOT CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES OF THE RELEASED PARTIES SET FORTH ABOVE.

UNLESS YOU CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, BY ACCEPTING DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT OF YOUR ALLOWED CLAIM OR INTEREST YOU WILL BE DEEMED TO HAVE AFFIRMATIVELY CONSENTED TO BE BOUND BY THE TERMS OF THE PLAN, INCLUDING, WITHOUT LIMITATION, THE RELEASES AND INJUNCTIONS SET FORTH ABOVE.

11

**The holder (or authorized signatory of each holder) of the Class 4 Claim identified in Item 1 elects to:**

<table>
<tr><td>☐   <strong><u>Opt out of the Third-Party Releases contained in Article VIII.D.2 of the Plan.</u></strong></td></tr>
</table>

<u>Item 4</u>. **Certifications.**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

a.   as of the Voting Record Date, it either: (i) is the holder of the Class 4 Claim set forth in Item 1; or (ii) is an authorized signatory for the holder of the Class 4 Claim set forth in Item 1;

b.   it is eligible to vote on the Plan and make an election with respect to the Third-Party Release;

c.   it (or in the case of an authorized signatory, the relevant holder) has received the Solicitation Materials including a copy of the Disclosure Statement and acknowledges that the solicitation of votes on the Plan is being made pursuant to the terms and conditions set forth therein;

d.   it has cast the same vote with respect to all of its Class 4 Claims;

e.   no other Ballots with respect to the Class 4 Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Class 4 Claims, then any such Beneficial Holder Ballots cast earlier are hereby revoked;

f.   it acknowledges and understands that a vote to accept the Plan constitutes an acceptance of the treatment of the Class 4 Claim identified in Item 1; and

g.   it acknowledges and understands that the Debtors may make changes to the Plan as may be reasonably necessary and that, to the extent such changes are not material, the Debtors will not re-solicit acceptances or rejections of the Plan.

Name of holder: _____

*(print or type)*

Signature: _____

Name of Signatory: _____

*(if other than the Class 4 Claims holder)*

Title: _____

Address: _____

Telephone Number
and Email: _____

Date Completed: _____

**IF THE SOLICITATION AGENT DOES NOT <u>ACTUALLY RECEIVE</u> THIS BALLOT ON OR BEFORE [~~MAY 29~~<u>JULY 24</u>], 2025, AT 4:00 P.M. (ET), UNLESS THE VOTING DEADLINE IS EXTENDED, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED ONLY IN THE DISCRETION OF THE DEBTORS.**

13

## INSTRUCTIONS FOR COMPLETING THIS CLASS 4 CLAIM BALLOT

1.　The Debtors are soliciting the votes on the Plan attached as **Exhibit A** to the Disclosure Statement.  Capitalized terms used in this Ballot or in these instructions but not otherwise defined therein or herein have the meaning set forth in the Plan or Disclosure Statement, as applicable.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE VOTING.**

2.　The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims in at least one Class of Claims that has the right to vote on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.  If the Plan is confirmed, it will be binding on you regardless of whether you vote at all or if you vote to reject the Plan. Please review the Disclosure Statement for more information.

3.　To ensure that your Ballot is counted, you <u>must</u> complete and submit this Ballot as instructed herein.  Ballots will not be accepted by electronic mail or facsimile, except as expressly set forth in the Ballot.

4.　To ensure that your vote is counted, you must: (a) complete this Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; (c) if you elect to opt out of the third-party releases, clearly indicate your decision in the box in Item 3 of your Ballot; and (d) sign and timely submit your Ballot as instructed herein.

5.　Your Ballot **must** be returned to the Solicitation Agent so as to be **actually received** by the Solicitation Agent on or before the Voting Deadline.  **The Voting Deadline is [~~May 29~~July 24], 2025, at 4:00 p.m. (ET).**

6.　If your Ballot is received after the Voting Deadline, unless the Voting Deadline is extended, your vote may only be counted in the sole and absolute discretion of the Debtors.  Additionally, **the following Ballots will <u>not</u> be counted**:

(a)　Any Ballot that (i) partially rejects and partially accepts the Plan, (ii) is not marked to accept or reject the Plan, (iii) is marked both to accept and reject the Plan;

(b)　Any Ballot sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), including the Debtors' financial or legal advisors, or any agent or indenture trustee for the Debtors' funded debt;

(c)　Any Ballot sent by telecopy, electronic mail, facsimile, or other electronic means except for the E-Ballot Portal;

(d)　Any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim voted;

14

(e)      Any Ballot cast by a person or an entity that does not hold a Class 4 Claim or is not an authorized signatory for such holder;

(f)      Any Beneficial Holder Ballot transmitted by means not specifically approved in these instructions; and/or

(g)      Any unsigned Ballot (for the avoidance of doubt, electronic signatures contained in E-Ballots validly submitted through the E-Ballot Portal will be deemed immediately legally valid and effective).

7.      The method of delivery of your Ballot to the Solicitation Agent is at your election and risk. Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **actually receives** your executed Ballot (or your E-Ballot validly submitted through the E-Ballot Portal). You should allow sufficient time to assure timely delivery.

8.      If multiple Ballots are received from the same holder of the same Class 4 Claim prior to the Voting Deadline, the latest, timely received, and valid Ballot will supersede and revoke any earlier received Ballots.

9.      If you cast a timely Ballot that is properly completed and executed but does not indicate either an acceptance or rejection of the Plan, your vote will not be counted.

10.      If you cast a timely Ballot that is properly completed and executed but indicates both an acceptance and a rejection of the Plan, your vote will not be counted.

11.      You must vote all of your Class 4 Claims either to accept or reject the Plan and may **not** split your vote.

12.      This Ballot does **not** constitute, and will not be deemed to be, (a) a proof of Claim or (b) an assertion or admission with respect to any Claim.

13.      **Please be sure to sign and date your Ballot**. If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of a holder of a Class 4 Claim. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to your Ballot.

14.      If you hold Claims or Interests in more than one Class you may receive more than one ballot coded for each such Class. Each ballot votes **only** your Claims or Interests indicated on that ballot, so please complete and return each ballot you receive.

15.      Subject to contrary orders of the Bankruptcy Court, any defects or irregularities in connection with the delivery of your Ballot must be cured prior to the Voting Deadline or such Ballot will not be counted. Notwithstanding the foregoing, the Debtors may, in their

sole discretion, waive any defect or irregularity as to any particular Ballot at any time, either before or after the Voting Deadline.

16.    Neither the Debtors, the Solicitation Agent, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to your Ballot, nor will any of them incur any liability for failure to provide such notification.

17.    This Ballot is not a letter of transmittal and may not be used for any purpose other than to: (i) vote to accept or reject the Plan; (ii) if applicable, opt-out of the Third-Party Release, and (iii) make the required certifications.  Accordingly, at this time, you should not surrender the instruments representing or evidencing your Class 4 Claims, and neither the Debtors nor Solicitation Agent will accept delivery of any such instruments.

18.    There may be changes made to the Plan that do not have a material adverse effect on the treatment of your Class 4 Claim.  If such non-material changes are made to the Plan, the Debtors will not resolicit your vote on the Plan.

**PLEASE SUBMIT YOUR BALLOT PROMPTLY, TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE VIA THE E-BALLOT PLATFORM, AS DIRECTED ABOVE, OR IN HARD COPY AT THE FOLLOWING ADDRESS:**

**LIGADO NETWORKS, LLC BALLOT PROCESSING**
**C/O OMNI AGENT SOLUTIONS, INC.**
**5955 DE SOTO AVE., SUITE 100**
**WOODLAND HILLS, CA 91367**
_____

**IF YOU WOULD LIKE TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND PROVIDE THE ANTICIPATED DATE AND TIME OF DELIVERY AT LEAST TWENTY-FOUR (24) HOURS IN ADVANCE.**


**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE.**

---

**IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE THIS BALLOT VIA THE E-BALLOT PLATFORM OR IN HARD COPY, AS DIRECTED ABOVE, ON OR BEFORE THE VOTING DEADLINE, WHICH IS ON [MAY 29JULY 24], 2025, AT 4:00 P.M. (ET), UNLESS THE VOTING DEADLINE IS EXTENDED, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED ONLY IN THE SOLE AND ABSOLUTE DISCRETION OF THE DEBTORS.**

17

**Exhibit 2.~~D~~E**

**Class 5 Master Ballot**

#4914-8593-8464v8

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| LIGADO NETWORKS LLC *et al.*,[1] | ) | Case No. 25-10006 (TMH) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |
|  | ) |  |

**MASTER BALLOT FOR CLASS 5 CLAIMS (SECOND LIEN NOTES CLAIMS)**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY *BEFORE* COMPLETING THIS MASTER BALLOT.**

**IN ORDER FOR THE VOTES OF YOUR BENEFICIAL HOLDERS TO BE COUNTED FOR PURPOSES OF ACCEPTING OR REJECTING THE PLAN, THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY [~~MAY 29~~JULY 24], 2025, AT 4:00 P.M., PREVAILING EASTERN TIME (THE "VOTING DEADLINE")**

---

The above-captioned debtors (the "Debtors") are soliciting votes on the *Joint Chapter 11 Plan of Ligado Networks LLC and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan") described in (and attached to) the *Disclosure Statement for Joint Chapter 11 Plan of Ligado Networks LLC, and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement").[2]

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or Disclosure Statement, as applicable.

2

You are receiving this master ballot (the "Master Ballot") because our records indicate that, as of [~~March 21~~**June 20**], 2025 (the "Voting Record Date"), you are a custodian, broker, dealer, commercial bank, trust company, a proxy holder or other agent or nominee (a "Nominee") for one or more beneficial holder (the "Beneficial Holders") of the notes identified in **Exhibit 1** attached hereto (the "Second Lien Notes").  If you believe you have received this Master Ballot in error, please contact Omni Agent Solutions, Inc., the Debtors' solicitation agent (in such capacity, the "Solicitation Agent") immediately, at the address, telephone number, or email address set forth below.

You should use the Master Ballot to transmit votes of your Beneficial Holders to accept or reject the Plan and their elections to opt out of Third-Party Release set forth in Article VIII.D.2 of the Plan and in the Beneficial Holder Ballot.

You should have received a sufficient number of solicitation packages containing the Plan, the Disclosure Statement, and sufficient number of Class 5 Ballots customized for your Beneficial Holders (the "Beneficial Holder Ballots") for you to transmit to each of your Beneficial Holders.  If you need to obtain additional Beneficial Holder Ballots or other solicitation materials, you may do so by: (a) accessing the Debtors' case website at https://omniagentsolutions.com/Ligado-Ballots; (b) writing to the Solicitation Agent at (i) LigadoInquiries@OmniAgnt.com, or (ii) Ligado Networks, LLC Ballot Processing, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367 or (c) calling (866) 956-2139 (toll-free) or (747) 288-6375 (international).

The Bankruptcy Court may confirm the Plan and thereby bind all of your Beneficial Holders whether or not they have voted. To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Plan, you must either (i) complete and return this Master Ballot so that the Solicitation Agent actually receives it on or before the Voting Deadline, which is [~~May 29~~**July 24**], 2025, at 4:00 p.m. (**Eastern Time**) or (ii) "pre-validate" the Beneficial Holder Ballots before you distribute them to your Beneficial Holders with instructions to return them to the Solicitation Agent on or before the Voting Deadline.

Please complete and execute this Master Ballot and return it to the Solicitation Agent either:

    i.    in the return envelope provided or by submitting it by overnight courier or hand delivery to the following address, so as it is actually received by the Voting Deadline:

<div align="center">

Ligado Networks, LLC Ballot Processing
c/o Omni Agent Solutions, Inc.
5955 De Soto Ave., Suite 100
Woodland Hills, CA 91367

</div>

    ii.    by email to ~~LigadoBallots@OmniAgnt.com~~**LigadoBallots@OmniAgnt.com**; or

3

iii.   by electronic, online transmission via the Solicitation Agent's online portal (the "<u>E-Ballot Portal</u>"), by visiting https://omniagentsolutions.com/Ligado-Ballots.  Click on the "Balloting" section of the website and follow the instructions to transmit this Master Ballot.

<u>Item 1.</u> **Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐   is a custodian, broker, dealer, bank, or other Nominee for the Beneficial Holders of the Class 5 Claims listed in Item 2 below and is the record holder of the underlying Second Lien Notes;

☐   is acting under a power of attorney and/or agency agreement (a copy of which will be provided upon request) granted by a Nominee that is the registered holder of the Second Lien Notes underlying the Class 5 Claims listed in Item 2 below; or

☐   has been granted a proxy (an original of which is attached hereto) from a Nominee or a Beneficial Holder that is the registered holder of the Second Lien Notes underlying the Class 5 Claims listed in Item 2 below and, accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holders of the Second Lien Notes underlying the Class 5 Claims described in Item 2 below.

<u>Item 2.</u> **Votes on the Plan and Elections Regarding Third-Party Release.**

The undersigned transmits the following: (i) votes of its Beneficial Holders; and (ii) elections of its Beneficial Holders with respect to the Third-Party Release.  The undersigned certifies that the following Beneficial Holders of Class 5 Claims, as identified by their respective customer account numbers set forth below, are Beneficial Holders of the Second Lien Notes underlying their Class 5 Claims as of the Voting Record Date and have delivered to the undersigned, as their Nominee, properly executed Beneficial Holder Ballots (i) casting the following votes; and/or (ii) opting-out of the Third-Party Release.

Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table (use additional sheets in the format below as necessary).  Please note that each Beneficial Holder must vote all its Class 5 Claims to accept or reject the Plan and may not split its vote.  **Any Beneficial Holder Ballot that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan should not be counted.**

4

| Your Customer Account Number for Each Beneficial Holder of Second Lien Notes Claims | Principal Amount of Second Lien Notes Held as of the Voting Record Date | Indicate the vote cast on the Beneficial Holder Ballot by placing an "X" in the appropriate column below. | | | **Item 3** If the box in Item 3 of the Beneficial Holder Ballot was checked, place an "X" below. |
|---|---|---|---|---|---|
| | | Accept the Plan | or | Reject the Plan | |
| | $ | | █ | | |
| | $ | | █ | | |
| | $ | | █ | | |
| | $ | | █ | | |
| | $ | | █ | | |
| | $ | | █ | | |
| | $ | | █ | | |
| | $ | | █ | | |
| | $ | | █ | | |
| | $ | | █ | | |
| **TOTAL:** | $ | | █ | | |

**Please indicate on <u>Exhibit 1</u> hereto the CUSIP / ISIN for the Second Lien Notes underlying Class 5 Claims voted above.**

**Item 3.** **Certification as to Transcription of Information from Item 4 of the Beneficial Holder Ballots as to Class 5 Claims Voted Through Other Beneficial Holder Ballots.**

The undersigned certifies that it has transcribed in the following table the information, if any, provided by its Beneficial Holders in Item 4 of their respective Beneficial Holder Ballots, identifying any Class 5 Claims for which such Beneficial Holders have submitted Beneficial Holder Ballots other than to the undersigned:

| Your Customer Account Number for Each Beneficial Holder Who Completed Item 4 of the Beneficial Holder Ballots | TRANSCRIBE FROM ITEM 4 OF THE BALLOTS: | | | |
|---|---|---|---|---|
| | Name of Other Nominee through which the Beneficial Holder Held and Voted Other Class 5 Claims | The Beneficial Holder's Account Number at Other Nominee(s) | Principal Amount of Other Class 5 Claims the Beneficial Holder Voted through Other Nominee(s) | CUSIP of Other Class 5 Claims Voted through Other Nominee(s) |
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |

**Item 4. Certification.**

By signing this Master Ballot, the undersigned certifies that:

1.      it has delivered all solicitation materials, including the Plan, Disclosure Statement and a Beneficial Holder Ballot to each Beneficial Holder listed in Item 2 of this Master Ballot;

2.      it has received a properly completed and signed Beneficial Holder Ballot (or other form of transmission in accordance with its customary procedures) from each Beneficial Holder listed in Item 2 of this Master Ballot;

3.      it is the registered holder of the Second Lien Notes underlying Class 5 Claims being voted or it has been authorized by each Beneficial Holder of Class 5 Claims listed in Item 2 of this Master Ballot to vote on the Plan;

6

4.      it has been authorized by each Beneficial Holder listed in Item 2 of this Master Ballot to submit this Master Ballot;

5.      it has properly disclosed: (a) the number of Beneficial Holders who submitted to it properly completed Beneficial Holder Ballots; (b) the amount of Class 5 Claims voted by each such Beneficial Holder; (c) each such Beneficial Holder's vote on the Plan; (d) each such Beneficial Holder's election concerning the Third-Party Release; (e) each such Beneficial Holder's certification as to other Class 5 Claims voted; and (f) the customer account or other identification number for each such Beneficial Holder;

6.      each Beneficial Holder listed in Item 2 of this Master Ballot has certified to the undersigned in Item 5 of the Beneficial Holder Ballot that it is eligible to vote on the Plan and make an election with respect to the Third-Party Release; and

7.      it will either forward to the Solicitation Agent all Beneficial Holder Ballots returned by the Beneficial Holders listed in Item 2 of this Master Ballot (whether properly completed or defective) or retain such Beneficial Holder Ballots for at least one (1) year from the Voting Deadline and disclose all information contained in such Beneficial Holder Ballots to the Bankruptcy Court, the Debtors, or the Reorganized Debtors, as the case may be, if requested.

Name of Nominee: _____
                                *(Print or type)*

Name of Proxy Holder or Agent for Nominee (if applicable):
_____

                                                  *(Print or type)*

DTC Participant Number:
_____

Signature: _____

Name of Signatory:
_____
                 *(Print or type)*

Title: _____

Address: _____

_____

_____

Date Completed: _____

Email Address: _____

Phone Number: _____

8

**PLEASE COMPLETE AND EXECUTE THIS MASTER BALLOT AND RETURN IT TO THE SOLICITATION AGENT EITHER:**

  i. **IN THE RETURN ENVELOPE PROVIDED OR BY SUBMITTING IT BY OVERNIGHT COURIER OR HAND DELIVERY TO THE FOLLOWING ADDRESS, SO AS IT IS ACTUALLY RECEIVED BY THE VOTING DEADLINE:**

    **LIGADO NETWORKS, LLC BALLOT PROCESSING**
    **C/O OMNI AGENT SOLUTIONS, INC.**
    **5955 DE SOTO AVE., SUITE 100**
    **WOODLAND HILLS, CA 91367**

  ii. **BY EMAIL TO LIGADOBALLOTS@OMNIAGNT.COM; OR**

  iii. **BY ELECTRONIC, ONLINE TRANSMISSION VIA THE SOLICITATION AGENT'S ONLINE PORTAL THE E-BALLOT PORTAL, BY VISITING HTTPS://OMNIAGENTSOLUTIONS.COM/LIGADO-BALLOTS. CLICK ON THE "BALLOTING" SECTION OF THE WEBSITE AND FOLLOW THE INSTRUCTIONS TO TRANSMIT THIS MASTER BALLOT.**

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT AT (866) 956-2139 (U.S. TOLL FREE), OR (747) 288-6375 (INTERNATIONAL), OR LIGADOINQUIRIES@OMNIAGNT.COM.**

**THE MASTER BALLOT SHOULD NOT BE SENT TO THE DEBTORS, THE BANKRUPTCY COURT, OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS.**

**THIS MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE, WHICH IS 4:00 P.M. EASTERN TIME, ON [~~MAY 29~~JULY 24], 2025.**

## INSTRUCTIONS FOR COMPLETING THIS MASTER BALLOT

1.  The Debtors are soliciting votes of the holders of the Second Lien Notes Claims (Class 5 Claims) on the Plan attached as **Exhibit A** to the Disclosure Statement.

2.  You should immediately (and in no event later than three (3) business days after receipt) distribute the solicitation materials, including Beneficial Holder Ballots, to the Beneficial Holders of the Second Lien Notes for whom you are acting as Nominee and take any action required to enable each such Beneficial Holders to timely vote the Class 5 Claims that it holds through you before the Voting Deadline, which is **4:00 p.m. Eastern Time, on [~~May 29~~July 24], 2025**.

3.  You may distribute the solicitation materials to your Beneficial Holders and collect their votes to accept or reject the Plan in accordance with your customary practices, including the use of "pre-validated" Beneficial Holder Ballots and "voting instruction forms" in lieu of (or in addition to) Beneficial Holder Ballots, through online voting, by phone, facsimile, or other electronic means.

4.  If you are transmitting the votes of any Beneficial Holder other than yourself, you may either:

    i.   "Pre-validate" each individual Beneficial Holder Ballot by signing the Beneficial Holder Ballot and including your DTC participant number, indicating the account number of the applicable Beneficial Holder and the principal amount of the Second Lien Notes held by you for such Beneficial Holder.  Forward the pre-validated Beneficial Holder Ballot, together with the rest of the solicitation package, to each of your Beneficial Holders with the instructions that each such Beneficial Holder must (i) complete the remaining information requested on the Beneficial Holder Ballot, including its voting and opt-out decision, within five (5) Business Days after the Beneficial Holder's receipt of the solicitation package, and (ii) return its Beneficial Holder Ballot directly to the Solicitation Agent in the return envelope to be provided in the solicitation package, such that it is received by the Solicitation Agent on or before the Voting Deadline; **or**

    ii.  Forward a solicitation package to each of your Beneficial Holders along with the instruction to each Beneficial Holder to (i) fill in all Items on the Beneficial Holder Ballot and (ii) return its completed and executed  Beneficial Holder Ballot to you in a return envelope provided by and addressed to you.  In such case, you will reflect the votes and elections of your Beneficial Holders on this Master Ballot in accordance with these instructions and return the Master Ballot to the Solicitation Agent on or before the Voting Deadline.  You should advise the Beneficial Holders to return their Beneficial Holder Ballots (or otherwise transmit their votes) to you by a date calculated to allow you to prepare and return the Master Ballot to the Solicitation Agent so that it is actually received by the Solicitation Agent on or before the Voting Deadline.

10

5.  You should maintain copies of the Beneficial Ballots or a list of the Beneficial Holders for whom you "pre-validated" their Beneficial Holder Ballot for inspection for at least one (1) year after the Effective Date.

6.  With regard to each Beneficial Holder Ballot returned to you by your Beneficial Holders, you must: (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the customer name or account number assigned by you to such Beneficial Holder; (b) execute the Master Ballot; (c) transmit the Master Ballot to the Solicitation Agent such that it is received on or before the Voting Deadline; and (d) retain such Beneficial Holder Ballots, whether in hard copy or by electronic direction, in your files for a period of one (1) year after the Effective Date. You may be ordered to produce the Beneficial Ballots to the Debtors or the Bankruptcy Court.

7.  You should not count the votes transmitted by a Beneficial Holder Ballot that: (a) is illegible or contains insufficient information to permit the identification of the Beneficial Holder; (b) are cast by a party that does not hold a ~~Claim 5~~ Class **5 Claim**; (c) is unsigned; (d) is not marked to accept or reject the Plan; and (e) is submitted by a party not entitled to cast a vote in Class 5.

8.  If your Master Ballot is received **after** the Voting Deadline and if the Voting Deadline is not extended, the votes transmitted thereby may be counted only at the discretion of the Debtors. Additionally, **votes transmitted by the following Master Ballots will not be counted**:

    i.  any Master Ballot to the extent it is illegible or contains insufficient information to permit the identification of the relevant Beneficial Holders;

    ii. any Master Ballot sent by facsimile or any electronic means other than via email at: LigadoBallots@OmniAgnt.com;**[3]**

    iii. any Master Ballot that does not contain an original signature; and

    iv. any Master Ballot submitted by any party that is not a registered holder of the Second Lien Notes underlying the Class 5 Claims identified in Item 1 of the Beneficial Holder Ballot.

9.  The method of delivery of the Master Ballot to the Solicitation Agent is at your election and risk. Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **actually receives** the executed Master Ballot. In all cases, you should allow sufficient time to assure timely delivery.

---

**[3]** **Note, *only* Master Ballots may be transmitted by email. All other Ballots submitted by email will not be counted.**

10. If multiple Master Ballots received prior to the Voting Deadline reflect votes with respect to the same Class 5 Claims, the latest, timely received and properly completed Master Ballot will supersede and revoke any earlier received Master Ballots.

11. If a Beneficial Holder simultaneously casts inconsistent Beneficial Holder Ballots with respect to the same Claim, such Beneficial Holder Ballots should not be counted.

12. **Please be sure to sign and date the Master Ballot**.  You should indicate that you are signing the Master Ballot in your capacity as a Nominee and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, submit proper evidence to the requesting party to so act on behalf of your Beneficial Holders.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

13. The following Master Ballots will not be counted in determining the acceptance or rejection of the Plan: (a) any Master Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holders of the votes being transmitted; (b) any Master Ballot cast by a party that is not entitled to vote on the Plan; and (c) any unsigned Master Ballot.

14. The following additional rules apply to Master Ballots:

   i. votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such Nominee in the Second Lien Notes as of the Voting Record Date, as evidenced by the record and depository listings.

   ii. votes submitted by Beneficial Holders, whether through a Master Ballot or pre-validated Beneficial Holder Ballots, will not be counted in excess of the record amount of the Second Lien Notes held by the applicable Nominee;

   iii. to the extent that conflicting votes or "over-votes" are submitted, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, the Solicitation Agent will attempt to reconcile discrepancies with the Nominee;

   iv. to the extent that over-votes on a Master Ballot or pre-validated Beneficial Holder Ballots are not reconcilable prior to the preparation of the voting certification, the Solicitation Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Beneficial Ballots that contained the over-vote, but only to the extent of the Nominee's position in the Second Lien Notes; and

   v. for purposes of tabulating votes, each Beneficial Holder holding through a particular account will be deemed to have voted the principal amount of its Second Lien Notes in that particular account, although the Solicitation Agent may be asked to adjust such principal amount.

   **PLEASE SUBMIT YOUR MASTER BALLOT PROMPTLY!**

12

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE SOLICITATION AGENT AT (866) 956-2139 (DOMESTIC TOLL-FREE) OR +(747) 288-6375 (INTERNATIONAL)**

**NOTHING CONTAINED IN THESE INSTRUCTIONS OR IN THE ENCLOSED DOCUMENTS WILL RENDER YOU OR ANY OTHER ENTITY THE AGENT OF THE DEBTORS OR THE SOLICITATION AGENT OR AUTHORIZE YOU OR ANY OTHER ENTITY TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF ANY OF THE DEBTORS WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE DOCUMENTS ENCLOSED HEREWITH.**

## <u>Exhibit 1</u>

**Please indicate below the CUSIP/ISIN to which this Master Ballot pertains.**

| | | |
|---|---|---|
| ☐ | 17.5% PIK Senior Secured Second Lien Notes due 2024 | 144A CUSIP: 53225H AC4<br>REG S CUSIP: U5364H AB4 |
| ☐ | 17.5% PIK Senior Secured Second Lien Notes due 2024 | 144A ISIN: US53225HAC43<br>REG S ISIN: USU5364HAB43 |

**Exhibit 2.~~E~~F**

**Class 5 Beneficial Holder Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| LIGADO NETWORKS LLC *et al.*,[1] | ) | Case No. 25-10006 (TMH) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |
|  | ) |  |

**BENEFICIAL BALLOT FOR VOTING TO ACCEPT
OR REJECT THE CHAPTER 11 PLAN OF LIGADO NETWORKS LLC ET AL.**

**CLASS 5 (SECOND LIEN NOTES CLAIMS)**

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**
>
> **IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED IN ACCORDANCE WITH THE INSTRUCTIONS BELOW SO AS TO BE ACTUALLY RECEIVED BY THE DEBTORS' SOLICITATION AGENT BY [~~MAY 29~~JULY 24], 2025, AT 4:00 P.M. (ET) (THE "VOTING DEADLINE").**

The above-captioned debtors (the "Debtors") are soliciting votes on the *Joint Chapter 11 Plan of Ligado Networks LLC and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan") described in (and attached to) the *Disclosure Statement for Joint Chapter 11 Plan of Ligado Networks LLC, and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement").[2]   You are receiving this ballot (the "Beneficial Holder Ballot") because your broker, bank, or other nominee, or the agent of your broker, bank, or other

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or Disclosure Statement, as applicable.

2

nominee (each of the foregoing, a "Nominee") has identified you as a beneficial holder (a "Beneficial Holder") of the notes identified in **Exhibit 1** attached hereto (the "Second Lien Notes") as of [~~March 21~~**June 20**], 2025 (the "Voting Record Date") and, accordingly, you hold a Class 5 Claim under the Plan and have the right to vote to accept or reject the Plan.

Nominees are authorized to collect votes to accept or reject the Plan from their Beneficial Holders in accordance with their customary practice, including the use of a "voting instruction form" in lieu of (or in addition to) this Beneficial Ballot or through online voting, by phone, facsimile, or other electronic means. Alternatively, your Nominee may choose to "pre-validate" your Beneficial Holder Ballot by signing the Beneficial Holder Ballot and adding the Nominee's DTC participant number, the Beneficial Holder's account number, and the principal amount of your Class 5 Claim as of the Voting Record Date. As part of the pre-validation process, your Nominee will instruct you to submit your Beneficial Holder Ballot directly to the Solicitation Agent on or before the Voting Deadline.

This Beneficial Holder Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan, making the election to opt out of the releases described below, if applicable, and making certain certifications. If you believe you have received this Beneficial Holder Ballot in error, please ***immediately*** contact Omni Agent Solutions, Inc., the proposed solicitation agent (the "Solicitation Agent"), at the address, telephone number, or email address set forth below.

Your rights are described in the Plan and the Disclosure Statement, both of which you should have received with this Beneficial Holder Ballot. If you have not received such documents or have questions regarding the submission of your vote on the Plan and/or deadline to do so, please contact: (i) if you are both the Beneficial Holder and the registered holder of the Second Lien Notes, the Solicitation Agent; or (ii) if you are not the registered holder, your Nominee. You may contact the Solicitation Agent by: (i) emailing ~~LigadoInquiries@OmniAgnt.com~~**LigadoInquiries@OmniAgnt.com** with a reference to "Ligado" in the subject line, or (ii) at the following telephone numbers: (866) 956-2139 (domestic toll free) or (747) 288-6357 (international).

The Plan may be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims that actually vote on the Plan in at least one Class of Claims entitled to vote on the Plan (not including the votes of any insiders) and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on each holder of Class 5 Claims regardless of whether or not such holder voted or voted against the Plan. Please review the Disclosure Statement for more information.

To have your vote count as either an acceptance or rejection of the Plan, you must complete and sign this Beneficial Ballot and return it: (i) if you are the registered holder, directly to the Solicitation Agent on or before [**~~May 29~~July 24**], 2025, at 4:00 p.m. (prevailing Eastern Time) (the "Voting Deadline") using the enclosed self-addressed, postage paid envelope; or (ii) if you are not the registered holder, in accordance with your Nominee's instructions, either (a) to your Nominee as promptly as possible and in sufficient time to allow your Nominee to submit a

3

master ballot (a "<u>Master Ballot</u>") reflecting your vote to the Solicitation Agent before the Voting Deadline, or (b) if your Nominee provided you with a pre-validated Beneficial Holder Ballot, directly to the Solicitation Agent on or before the Voting Deadline.

**You should review the Disclosure Statement, the Plan, and the instructions contained in this Beneficial Ballot before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Class 5 Claim.  This Ballot pertains solely to your Class 5 Claim.  If you hold Claims or Interests in more than one Class that is entitled to vote on the Plan, you will receive a ballot for each such Class.**

**Your vote on this Beneficial Holder Ballot shall be applied to each Debtor against whom you have an allowed Class 5 Claim.**

<u>Item 1.</u> **Principal Amount of Class 5 Claim.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Beneficial Holder of the Second Lien Notes identified on <u>**Exhibit 1**</u> in the following principal amount (insert amount in box below).  If you do not know the principal amount of your Second Lien Notes as of the Voting Record Date, please contact your Nominee for this information:

| Principal Amount of Claim[3]: |
| :---: |
| $ |

\*\***<u>Exhibit 1</u>** hereto lists the CUSIP number for the Second Lien Notes underlying your Class 5 Claim.  You should confirm the CUSIP number provided in **<u>Exhibit 1</u>** matches your Second Lien Notes.\*\*

<u>Item 2.</u> **Vote on Plan.**

The holder of the Class 5 Claim set forth in Item 1 votes to (please check one):



| ☐ **ACCEPT** (vote FOR) the Plan | ☐ **REJECT** (vote AGAINST) the Plan |
| :--- | :--- |

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**Any Beneficial Ballot that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan, will not be counted.**

---

[3]   For voting purposes only.  Subject to tabulation rules.

**Item 3.** Release.

WHETHER YOU VOTE TO ACCEPT OR REJECT THE PLAN OR ABSTAIN FROM VOTING ALTOGETHER, UNLESS YOU CHECK THE "OPT OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASE OF THE RELEASED PARTIES SET FORTH IN ARTICLE VIII.D.2 OF THE PLAN COPIED BELOW (THE "THIRD-PARTY RELEASE").

Article VIII of the Plan contains the following provisions:

A.     *Compromise and Settlement*

The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their Estates, and all holders of Claims or Interests, (2) fair, equitable, and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to applicable bankruptcy law. In addition, the allowance, classification, and treatment of any Allowed Claims of a Released Party take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist between the Debtors and any Released Party and, as of the Effective Date, any and all such Causes of Action are settled, compromised, and released as set forth in the Plan. The Confirmation Order shall authorize and approve the releases by all Entities of all such contractual, legal, and equitable subordination rights and Causes of Action that are satisfied, compromised, and settled pursuant hereto. Nothing in the Plan shall compromise or settle, in any way whatsoever, any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have against any Entity that is not a Released Party.
In accordance with the provisions of the Plan, and pursuant to Bankruptcy Rule 9019, without any further notice to, or action, order, or approval of, the Bankruptcy Court or the Canadian Court, after the Effective Date, the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle (1) Claims (including Causes of Action) against and Interests in the Debtors not previously Allowed (if any) and (2) claims (including Causes of Action) against other Entities.

B.     *Discharge of Claims and Termination of Interests*

Except as otherwise provided in the Plan, effective as of the Effective Date: (1) the distributions, rights, and treatment that are provided in the Plan for all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, whether known or unknown, against or in the Debtors or any of their assets, property, or Estates, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date and any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date; (2) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (3) all Claims and Interests shall be satisfied,

5

discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code; and (4) all entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date.  Notwithstanding the foregoing, all Existing Common Units shall remain in full force and effect and shall be governed by the terms of the applicable New Organizational Documents, including the Second Amended and Restated Operating Agreement.  The Confirmation Order shall be a judicial determination, subject to the Effective Date occurring, of the discharge of all Claims and Interests except as otherwise expressly provided in the Plan.

C.      *Release of Liens*

Except as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit First Lien Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and the effectiveness of the Exit First Lien Facility Documents, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall automatically revert to the Reorganized Debtors and each of their successors and assigns, and the Agents/Trustees and the DIP Agent shall be authorized to release any such mortgages, deeds of trust, Liens, pledges, or other security interests held by such holder and to take such actions as may be requested by the Reorganized Debtors to evidence the release of such mortgages, deeds of trust, Liens, pledges, or other security interests, including the execution, delivery, and filing or recording of any related releases or discharges as may be requested by the Reorganized Debtors or may be required in order to effectuate the foregoing.

D.      *Releases of Released Parties*

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to applicable bankruptcy law, of the releases described in this Article VIII.D and shall constitute the Bankruptcy Court's finding that such releases are:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by this Article VIII.D; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Entity (including the Debtors) asserting any claim or Cause of Action released pursuant to this Article VIII.D.

1.      **Releases by the Debtors**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations

6

contemplated by the Restructuring or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of each Debtor, each Reorganized Debtors, and each Estate, in each case, on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action, whether prepetition or postpetition, derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws, or otherwise that the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, (ii) any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have in connection with the Ligado Takings Case, ~~and~~ (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit First Lien Facility Documents, or any Claim or obligation arising under the Plan **and (iv) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct.**

2.    Releases by Holders of Claims or Interests

As of the Effective Date, except for **(i)** the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring ~~or~~**, (ii) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross**

7

negligence, intentional fraud, or willful misconduct, or (iii) the rights provided or reserved for under the AST Definitive Agreements Order, or (iv) as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case, from any and all Claims and Causes of Action whatsoever, whether prepetition or postpetition (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates, the Chapter 11 Cases the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors (including any of the Debtors' predecessors) or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors (including any of the Debtors' predecessors) and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.

Entry of the Confirmation Order shall, subject to the occurrence of the Effective Date, constitute the Bankruptcy Court's approval of the releases contained in the Plan and a finding that each release described is (i) in exchange for the good and valuable consideration provided by the Released Parties, including without limitation, the Released Parties' contributions to implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the holders of Claims and Interests, (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a sound exercise of the Debtors' business judgment.

Nothing in this Plan prohibits, precludes, or enjoins any Governmental Unit from asserting or filing a proof of Claim on or before the Governmental Bar Date.[4]

[4] "Governmental Bar Date" shall have the meaning set forth in the *Order Establishing (I) Various Bar Dates for Filing Proofs of Claim, (II) Approving the Form and Manner of Filing Proofs of Claim, (III)*

E.    *Exculpation*

**To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action based on any act or omission occurring from the Petition Date through the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the Restructuring Support Agreement, the Restructuring, the DIP Facility, the DIP Orders, the DIP Documents, any Canadian Court Recognition Order, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes gross negligence, intentional fraud or willful misconduct as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code and have participated in good faith with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

F.    *Injunction*

**Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests or Causes of Action or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or**

---

*Dates for Filing Proofs of Claim, (II) Approving the Form and Manner of Filing Proofs of Claim, (III) Approving Notices of Bar Dates, and (IV) Granting Related Relief* [Docket No. 340].

liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, ~~and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise~~; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities released or settled pursuant to the Plan.

~~By accepting distributions pursuant to the Plan (including retaining any Interest in the Debtors as set forth in the Plan), each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth above.~~

~~The injunctions set forth above shall extend to any predecessors and/or successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property. Immediately upon entry of the Confirmation Order, no Person or Entity may commence or pursue a Claim or Cause of Action (or continue to prosecute such Claim or Cause of Action to the extent filed prior to entry of the Confirmation Order) of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII hereof (or anticipated to be subject to Article VIII following entry of the Confirmation Order but prior to the Effective Date), without the Bankruptcy Court (1) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind or that, even if such Claim or Cause of Action represents a colorable Claim of any kind, it would not be subject to the releases set forth in Article VIII), and (2) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party. Immediately upon entry of the Confirmation Order, any existing proceeding related to a claim or cause of action against any Released Parties or Exculpated Parties is hereby stayed until such parties seeking to prosecute such claims or cause of action comply with the procedures set forth in the foregoing paragraph.~~

\*\*\*

10

UNDER THE PLAN, "RELEASING PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH, (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (VII) WITH RESPECT TO EACH OF THE FOREGOING PERSONS IN CLAUSES (I) THROUGH (VI~~VIII~~), SUCH PERSONS' PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES (INCLUDING AFFILIATES OF ANY PREDECESSORS), CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS (INCLUDING EQUITY HOLDERS OF ANY PREDECESSORS), MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES, (VIII) THE HOLDERS OF ALL CLAIMS OR INTERESTS WHOSE VOTE TO ACCEPT OR REJECT THE PLAN IS SOLICITED BUT DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE VIII.D.2, AND (IX) THE HOLDERS OF ALL CLAIMS AND INTERESTS WHO WERE GIVEN NOTICE OF THE OPPORTUNITY AND SERVED WITH A PROVIDED FORM TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE VIII.D.2 BUT DID NOT TIMELY OPT OUT.

UNDER THE PLAN, "RELEASED PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH,  (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) EACH OF THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, ~~AND~~ (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (IX) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (I) THROUGH (VI~~VIII~~), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES, CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS, MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES; PROVIDED, HOWEVER, THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) FILES AN OBJECTION TO THE PLAN OR (Y) OPTS OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D.2, AS APPLICABLE, SHALL NOT BE A "RELEASED PARTY."

IF YOU DO NOT CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE THIRD-PARTY RELEASE SET FORTH ABOVE.

IF YOU DO NOT CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY

**SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES OF THE RELEASED PARTIES SET FORTH ABOVE.**

**UNLESS YOU CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, BY ACCEPTING DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT OF YOUR ALLOWED CLAIM OR INTEREST YOU WILL BE DEEMED TO HAVE AFFIRMATIVELY CONSENTED TO BE BOUND BY THE TERMS OF THE PLAN, INCLUDING, WITHOUT LIMITATION, THE RELEASES AND INJUNCTIONS SET FORTH ABOVE.**

**The holder (or authorized signatory of each holder) of the Class 5 Claim identified in Item 1 elects to:**

> ☐    **Opt out of the Third-Party Release contained in Article VIII.D.2 of the Plan.**

**Item 4.** **Certification with Respect to Class 5 Claims Held in Additional Accounts.**

By completing and returning this Beneficial Holder Ballot, the Beneficial Holder of the Class 5 Claim identified in Item 1 certifies that: (a) this Beneficial Holder Ballot is the only Beneficial Ballot submitted for the Class 5 Claims identified in Item 1, except as identified in the following table, and (b) *all* Beneficial Holder Ballots for Class 5 Claims submitted by the Beneficial Holder indicate the same vote to accept or reject the Plan that the Beneficial Holder has indicated in Item 2 of this Beneficial Holder Ballot. **If you hold Class 5 Claims through more than one Nominee, you must identify all Class 5 Claims held through each such Nominee in the following table and must vote all such Claims to either accept or reject the Plan on all Beneficial Holder Ballots you submit.**

ONLY COMPLETE ITEM 4 IF YOU HAVE SUBMITTED OTHER BENEFICIAL BALLOTS ON ACCOUNT OF CLASS 5 SECOND LIEN NOTES CLAIMS

| Name of Nominee Through Which You Hold and Vote Other Class 5 Claims[5] | Account Number with Such Other Nominee | Principal Amount of Other Class 5 Claims Voted Through Other Nominee | CUSIP of Other Class 5 Claims Voted |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

---

[5]    Insert your name if the Class 5 Claims are held by you in your own name or, if held in street name through a Nominee, insert the name of your Nominee.

13

**Item 5.** **Certifications.**

By signing this Beneficial Holder Ballot, the undersigned certifies that:

1.  as of the Voting Record Date, either: (a) it is the Beneficial Holder of the Class 5 Claim being voted on this Ballot; or (b) it is an authorized signatory for an entity that is the Beneficial Holder of such Class 5 Claim;

2.  it is eligible to vote on the Plan and make an election with respect to the Third-Party Release;

3.  it has received a copy of the Disclosure Statement and the other solicitation materials, including the Plan, and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

4.  it has cast the same vote with respect to all of its Class 5 Claims;

5.  no other Beneficial Holder Ballots with respect to the Class 5 Claims identified in Item 1 have been cast or, if any other Beneficial Holder Ballots have been cast with respect to such Claims, then any such Beneficial Holder Ballots cast earlier are hereby revoked;

6.  it acknowledges and understands that a vote to accept the Plan constitutes an acceptance of the treatment of the Class 5 Claim identified in Item 1; and

7.  it acknowledges and understands that the Debtors may make changes to the Plan as may be reasonably necessary and that, to the extent such changes are not material, the Debtors will not re-solicit acceptances or rejections of the Plan.

14

Name of Beneficial Holder: _____

*(print or type)*

Signature: _____

Name Of Signatory: _____

*(if other than Beneficial Holder)*

Title: _____

Address: _____

_____

Telephone Number and email: _____

Date                                                                         Completed:

_____

**PLEASE COMPLETE, SIGN, AND DATE THIS
BENEFICIAL HOLDER BALLOT AND RETURN IT *PROMPTLY* IN ACCORDANCE
WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.**

> **IF YOUR NOMINEE INSTRUCTS YOU TO SUBMIT YOUR VOTE BY VOTER INFORMATION FORM, E-MAIL, TELEPHONE CALL, OR OTHER CUSTOMARY METHOD, YOU ARE AUTHORIZED TO FOLLOW YOUR NOMINEE'S INSTRUCTIONS IN LIEU OF SUBMITTING THIS BENEFICIAL HOLDER BALLOT.**
>
> **THE VOTING DEADLINE FOR THE RECEIPT BY THE SOLICITATION AGENT OF THE MASTER BALLOT REFLECTING YOUR VOTE IS [~~MAY 29~~JULY 24], 2025 AT 4:00 P.M. (PREVAILING EASTERN TIME).**
>
> **IF YOUR NOMINEE PROVIDED YOU WITH A PRE-VALIDATED BENEFICIAL HOLDER BALLOT, SUCH BENEFICIAL HOLDER BALLOT, ONCE EXECUTED BY YOU, MUST BE SUBMITTED SUCH THAT IT IS RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE THE VOTING DEADLINE. OTHERWISE, YOUR PROPERLY COMPLETED AND EXECUTED BENEFICIAL HOLDER BALLOT MUST BE RECEIVED BY YOUR NOMINEE WITH SUFFICIENT TIME TO PERMIT YOUR NOMINEE TO DELIVER YOUR VOTE TO THE SOLICITATION AGENT ON OR BEFORE THE VOTING DEADLINE.**

## INSTRUCTIONS FOR COMPLETING BENEFICIAL BALLOTS

1. The Debtors are soliciting votes of the holders of certain Claims with respect to the Plan attached to the Disclosure Statement, which is being sent to you together with this Beneficial Holder Ballot. Capitalized terms used in the Beneficial Holder Ballot or in these instructions but not otherwise defined therein or herein have the meanings set forth in the Plan or Disclosure Statement, as applicable. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE VOTING**.

2. The Plan may be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims in at least one Class of impaired Claims and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

3. If you are not both a beneficial and registered holder of the Class 5 Claim indicated in Item 1 of the Ballot, to have your vote counted, you must submit it through your Nominee (by Beneficial Ballot or otherwise according to the instructions received from your Nominee) with sufficient time to permit your Nominee to submit a Master Ballot reflecting your vote so that such Master Ballot is <u>actually</u> <u>received</u> by the Solicitation Agent on or prior to the Voting Deadline.

4. The Voting Deadline for the receipt of Master Ballots by the Solicitation Agent is **[~~May 29~~July 24], 2025 at 4:00 p.m. (prevailing Eastern Time)**. Your completed Beneficial Ballot must be received by your Nominee with sufficient time to permit your Nominee to deliver your votes to the Solicitation Agent on or before the Voting Deadline.

5. To ensure that your vote is counted for purposes of accepting or rejecting the Plan:

   i. If your Nominee provided you with a pre-validated Beneficial Holder Ballot, please complete the remaining items on your pre-validated Beneficial Holder Ballot and return it directly to the Solicitation Agent by no later than the Voting Deadline, by either (a) using the return envelope provided with this Beneficial Holder Ballot, (b) if no return envelope is provided, by regular mail, overnight courier, or hand delivery to the Solicitation Agent's mailing address set forth above so that it is *actually received* by the Solicitation Agent on or before the Voting Deadline, which is **[~~May 29~~July 24], 2025, at 4:00 p.m.**, Prevailing Eastern Time, or (c) via online submission by using the Solicitation Agent's online portal, by visiting ~~https://omniagentsolutions.com/Ligado-Ballots~~**https://omniagentsolutions.com/Ligado-Ballots**, clicking on the "Balloting" section of the website, and following the instructions; OR

   ii. if your Nominee has not pre-validated your Beneficial Holder Ballot, then you must submit your properly filled and executed Beneficial Holder Ballot to your Nominee in the manner directed by your Nominee with sufficient time to permit

16

your Nominee to submit a Master Ballot reflecting your vote so that such Master Ballot is actually received by the Solicitation Agent on or before the Voting Deadline, which is [~~May 29~~July 24], 2025, at 4:00 p.m., Prevailing Eastern Time.  You may instruct your Nominee to vote on your behalf in the Master Ballot by: (i) completing the Beneficial Holder Ballot; (ii) indicating your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Beneficial Holder Ballot; (iii) if applicable, indicating that you elect to opt out of the Third-Party Release in the box provided in Item 3 of the Beneficial Holder Ballot; and (iv) signing and returning the Beneficial Holder Ballot to your Nominee in accordance with the instructions provided by your Nominee.

6.      Except as otherwise provided herein or unless waived by the Debtors or permitted by order of the Bankruptcy Court, your vote will not be counted unless either (i) if you are a registered holder or you are voting through a pre-validated Beneficial Holder Ballot, your Beneficial Holder Ballot is received by the Solicitation Agent on or prior to the Voting Deadline; or (ii) a Master Ballot reflecting your vote is delivered by your Nominee to the Solicitation Agent on or before the Voting Deadline.

7.      The method of delivery of your Beneficial Holder Ballot is at your election and risk.  Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **actually** **receives** your executed Ballot.  You should allow sufficient time to assure timely delivery.

8.      If you cast more than one Beneficial Holder Ballot voting the same Class 5 Claims, the last valid Beneficial Holder Ballot (or Master Ballot reflecting your vote) received by the Solicitation Agent on or before the Voting Deadline shall be deemed to reflect your intent, and thus, supersede any prior Beneficial Holder Ballot.

9.      If you cast a timely Beneficial Holder Ballot that is properly completed and executed but does not indicate either an acceptance or rejection of the Plan, your vote will not be counted.

10.     If you cast a timely Beneficial Holder Ballot that is properly completed and executed but indicates both an acceptance and a rejection of the Plan, your vote will not be counted.

11.     This Beneficial Holder Ballot does **not** constitute, and will not be deemed to be, (a) a proof of Claim or (b) an assertion or admission with respect to any Claim.

12.     You will be deemed to have voted the full amount of your Class 5 Claim and are not entitled to split your vote.  Any Beneficial Holder Ballot that partially accepts and partially rejects the Plan will not be counted.

13.     **The following Beneficial Holder Ballots will *not* be counted for purposes of accepting or rejecting the Plan or, to the extent made, the opt out election unless the Debtors, in their sole discretion, determine otherwise**:

        i.      Any Beneficial Holder Ballot received after the Voting Deadline or received too late to allow your Nominee to submit a Master Ballot reflecting your vote on or

before the Voting Deadline, unless the Debtors have granted an extension of the Voting Deadline in writing with respect to such ballot;

ii.    Any Beneficial Holder Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

iii.    Any Beneficial Holder Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan;

iv.    Any Beneficial Holder Ballot cast by a person or entity that is not entitled to vote, even if such person holds a Claim in a Class that is entitled to vote on the Plan;

v.    Any unsigned Beneficial Holder Ballot;

vi.    Any Beneficial Holder Ballot with respect to a vote that the Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; or

vii.    Any Beneficial Holder Ballot transmitted by means not specifically approved in these instructions.

14.    Please be sure to sign and date your Beneficial Holder Ballot. You should indicate if you are signing a Beneficial Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise in a fiduciary or representative capacity and, if required or requested by the Solicitation Agent, the Debtors, your Nominee, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Beneficial Holder Ballot.

15.    If you hold Class 5 Claims through more than one Nominee or through multiple accounts, you should execute a separate Beneficial Holder Ballot for each block of the Second Lien Notes you hold through any one Nominee and you must submit each such Beneficial Holder Ballot in accordance with the applicable Nominee's instructions.

16.    Subject to contrary orders of the Bankruptcy Court, any defects or irregularities in connection with the delivery of your Beneficial Holder Ballot must be cured prior to the Voting Deadline or such Beneficial Ballot (or a Master Ballot reflecting your vote) will not be counted. Notwithstanding the foregoing, the Debtors may, in their sole discretion, waive any defect or irregularity as to any particular Beneficial Holder Ballot or Master Ballot at any time, either before or after the Voting Deadline.

17.    Neither the Debtors, the Solicitation Agent, your Nominee, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to your Beneficial Ballot, nor will any of them incur any liability for failure to provide such notification.

18

18. This Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to: (i) vote to accept or reject the Plan; (ii) if applicable, opt-out of the Third-Party Release, and (iii) make the required certifications. Accordingly, at this time, you should not surrender the instruments representing or evidencing your Second Lien Notes Claims, and neither the Debtors nor Solicitation Agent will accept delivery of any such instruments.

19. You shall be deemed to have consented to the Third-Party Release unless you affirmatively opt out of the Third-Party Release by checking the box in Item 3 above, regardless of whether you voted to accept or reject the Plan or abstain from voting altogether.

20. This Beneficial Holder Ballot does not constitute and will not be deemed to be: (a) a proof of Claim; or (b) an assertion or admission of a Claim.

**PLEASE SUBMIT YOUR BENEFICIAL HOLDER BALLOT PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL HOLDER BALLOT, THE VOTING OR THE OPT OUT PROCEDURES, PLEASE CONTACT YOUR NOMINEE OR THE SOLICITATION AGENT, AS APPLICABLE.**

19

### Exhibit 1

**Please indicate below the CUSIP/ISIN to which this Beneficial Holder Ballot pertains.**

| | | |
|---|---|---|
| ☐ | 17.5% PIK Senior Secured Second Lien Notes due 2024 | 144A CUSIP: 53225H AC4<br>REG S CUSIP: U5364H AB4 |
| ☐ | 17.5% PIK Senior Secured Second Lien Notes due 2024 | 144A ISIN: US53225HAC43<br>REG S ISIN: USU5364HAB43 |

**Exhibit 2.~~F~~G**

**Class 9 Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

_____

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| LIGADO NETWORKS LLC *et al.*,[1] | ) | Case No. 25-10006 (TMH) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |
| _____ | ) |  |

**BALLOT FOR VOTING TO ACCEPT OR REJECT**
**THE CHAPTER 11 PLANS OF LIGADO NETWORKS, LLC ET AL.**

**CLASS 9 (EXISTING SERIES A-0 PREFERRED INTERESTS)**

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**
>
> **IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED IN ACCORDANCE WITH THE INSTRUCTIONS BELOW SO AS TO BE ACTUALLY RECEIVED BY THE DEBTORS' SOLICITATION AGENT BY [~~MAY 29~~JULY 24], 2025, AT 4:00 P.M. (ET) (THE "VOTING DEADLINE").**

The above-captioned debtors (the "Debtors") are soliciting votes on the *Joint Chapter 11 Plan of Ligado Networks LLC and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan") described in (and attached to) the *Disclosure Statement for Joint Chapter 11 Plan of Ligado Networks LLC, and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement")[2] included in the package (the "Solicitation Materials") you are receiving with this ballot (the "Ballot").

You are receiving this Ballot because the Debtors' records indicate that you may be a holder, a potential holder, an investment advisor, a sub-advisor, or a manager of various

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or Disclosure Statement, as applicable.

1

funds/accounts/investors with respect to an interest in the Existing Series A-0 Preferred Units(a "Class 9 Interest") as of [~~March 21~~**June 20**], 2025 (the "Voting Record Date") and, as such, have the right to vote to accept or reject the Plan.

As described in more detail in the Disclosure Statement and the Plan, if the Plan is confirmed and the Effective Date occurs, then, subject to Section III.B of the Plan and except to the extent you agree to less favorable treatment, each holder of Allowed Existing Series A-0 Preferred Units shall retain its Existing Series A-0 Preferred Units, as amended by the Second Amended and Restated Operating Agreement, in the form of the New Series B-0 Preferred Units.

**YOUR VOTE WILL BE APPLIED TO THOSE DEBTORS WHO ARE LIABLE TO YOU ON ACCOUNT OF YOUR CLASS 9 INTERESTS.**

Your rights are described in the Disclosure Statement. If you received the Solicitation Materials in electronic form and desire paper copies of any of them, or if you need to obtain additional Solicitation Materials, you may obtain them at no charge from Omni Agent Solutions, Inc. (the "Solicitation Agent") by: (i) emailing ~~LigadoInquiries@OmniAgnt.com~~**LigadoInquiries@OmniAgnt.com** with a reference to "Ligado" in the subject line, or (ii) at the following telephone numbers: (866) 956-2139 (domestic toll free) or (747) 288-6357 (international).

On the Petition Date, the website ~~https://omniagentsolutions.com/Ligado~~**https://omniagentsolutions.com/Ligado** will become publicly available and contain important information, hearing dates, and other key deadlines, as well as the docket for the Debtors' chapter 11 cases. You may also obtain copies of any pleadings to be filed in these cases for a fee via PACER at: ~~http://www.deb.uscourts.gov.~~**http://www.deb.uscourts.gov.**

This Ballot may not be used for any purpose other than for (i) casting your vote to accept or reject the Plan, (ii) indicating your election to opt out of certain releases described below, if applicable, and (iii) making certain certifications with respect to your vote. If you believe you have received this Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent **immediately** at the email address set forth above.

**You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Class 9 Interest. This Ballot pertains solely to your Class 9 Interest. If you hold Claims or Interests in more than one Class that is entitled to vote on the Plan, you will receive a ballot for each such Class.**

**PLEASE SUBMIT YOUR BALLOT BY ONE OF THE FOLLOWING TWO METHODS:**

**<u>Via Paper Ballot</u>. Complete, sign, and date this Ballot and return it, properly executed, promptly via first class mail (or in the enclosed reply envelope), overnight courier, or hand delivery to:**

**Ligado Networks, LLC Ballot Processing
c/o Omni Agent Solutions, Inc.**

**5955 De Soto Ave., Suite 100**
**Woodland Hills, CA 91367**

**IF YOU WOULD LIKE TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND PROVIDE THE ANTICIPATED DATE AND TIME OF DELIVERY AT LEAST TWENTY-FOUR (24) HOURS IN ADVANCE.**

<u>**OR**</u>

<u>Via Online Submission</u>. **Submit your Ballot via the Solicitation Agent's online portal (the "<u>E-Ballot Portal</u>"), by visiting https://omniagentsolutions.com/Ligado-Ballots.   Click on the "Balloting" section of the website and follow the instructions to submit your Ballot.**

**The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**If you cast a Ballot using the E-Ballot Portal, you should NOT also submit a paper Ballot.**

**IF YOU WISH TO SUBMIT YOUR BALLOT THROUGH THE ONLINE E-BALLOT PORTAL BUT ARE UNABLE TO DO SO, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND SOMEONE WILL PROVIDE ASSISTANCE.**

**Item 1**. **Principal Amount of Class 9 Interest.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of a holder) of a Class 9 Interest in the following amount (insert amount in box below):

$$\boxed{\ \ \$^3\text{_____}\ \ }$$

**Item 2**. **Vote For or Against the Plan.**

The holder of the Class 9 Interest set forth in Item 1 votes to (please check only **one** box):

☐    **ACCEPT** (vote FOR) the Plan          ☐    **REJECT** (vote AGAINST) the Plan

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**Any Ballot that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan, will not be counted.**

**Item 3**. **Important Information Regarding the Releases of Claims by Holders of Claims or Interests**

**WHETHER YOU VOTE TO ACCEPT OR REJECT THE PLAN OR ABSTAIN FROM VOTING ALTOGETHER, UNLESS YOU CHECK THE "OPT OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES OF THE RELEASED PARTIES SET FORTH IN ARTICLE VIII.D.2 OF THE PLAN COPIED BELOW (THE "THIRD-PARTY RELEASE").**

**Article VIII of the Plan contains the following provisions:**

A.      ***Compromise and Settlement***

**The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their Estates, and all holders of Claims or Interests, (2) fair, equitable, and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to applicable bankruptcy law. In addition, the allowance, classification, and treatment of any Allowed Claims of a Released Party take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist between the Debtors and any Released Party and, as of the Effective Date, any and all such**

---

3      For voting purposes only. Subject to tabulation rules.

Causes of Action are settled, compromised, and released as set forth in the Plan. The Confirmation Order shall authorize and approve the releases by all Entities of all such contractual, legal, and equitable subordination rights and Causes of Action that are satisfied, compromised, and settled pursuant hereto. Nothing in the Plan shall compromise or settle, in any way whatsoever, any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have against any Entity that is not a Released Party.

In accordance with the provisions of the Plan, and pursuant to Bankruptcy Rule 9019, without any further notice to, or action, order, or approval of, the Bankruptcy Court or the Canadian Court, after the Effective Date, the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle (1) Claims (including Causes of Action) against and Interests in the Debtors not previously Allowed (if any) and (2) claims (including Causes of Action) against other Entities.

B.    *Discharge of Claims and Termination of Interests*

Except as otherwise provided in the Plan, effective as of the Effective Date: (1) the distributions, rights, and treatment that are provided in the Plan for all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, whether known or unknown, against or in the Debtors or any of their assets, property, or Estates, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date and any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date; (2) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (3) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code; and (4) all entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date. Notwithstanding the foregoing, all Existing Common Units shall remain in full force and effect and shall be governed by the terms of the applicable New Organizational Documents, including the Second Amended and Restated Operating Agreement. The Confirmation Order shall be a judicial determination, subject to the Effective Date occurring, of the discharge of all Claims and Interests except as otherwise expressly provided in the Plan.

C.    *Release of Liens*

Except as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit First Lien Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and the effectiveness of the Exit First Lien Facility Documents, all mortgages, deeds of trust, Liens, pledges, or other security interests against

any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall automatically revert to the Reorganized Debtors and each of their successors and assigns, and the Agents/Trustees **and the DIP Agent** shall be authorized to release any such mortgages, deeds of trust, Liens, pledges, or other security interests held by such holder and to take such actions as may be requested by the Reorganized Debtors to evidence the release of such mortgages, deeds of trust, Liens, pledges, or other security interests, including the execution, delivery, and filing or recording of any related releases or discharges as may be requested by the Reorganized Debtors or may be required in order to effectuate the foregoing.

D.      *Releases of Released Parties*

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to applicable bankruptcy law, of the releases described in this Article VIII.D and shall constitute the Bankruptcy Court's finding that such releases are:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by this Article VIII.D; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Entity (including the Debtors) asserting any claim or Cause of Action released pursuant to this Article VIII.D.

1.      **Releases by the Debtors**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of each Debtor, each Reorganized Debtors, and each Estate, in each case, on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action, whether prepetition or postpetition, derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws, or otherwise that the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the

transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, (ii) any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have in connection with the Ligado Takings Case, ~~and~~ (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit First Lien Facility Documents, or any Claim or obligation arising under the Plan **and (iv) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct**.

2. **Releases by Holders of Claims or Interests**

As of the Effective Date, except for **(i)** the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring ~~or~~**, (ii) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct, or (iii) the rights provided or reserved for under the AST Definitive Agreements Order, or (iv)** as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case, from any and all Claims and Causes of Action whatsoever, whether prepetition or postpetition (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the

Reorganized Debtors, or the Estates, the Chapter 11 Cases the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors (including any of the Debtors' predecessors) or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors (including any of the Debtors' predecessors) and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.

Entry of the Confirmation Order shall, subject to the occurrence of the Effective Date, constitute the Bankruptcy Court's approval of the releases contained in the Plan and a finding that each release described is (i) in exchange for the good and valuable consideration provided by the Released Parties, including without limitation, the Released Parties' contributions to implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the holders of Claims and Interests, (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a sound exercise of the Debtors' business judgment.

Nothing in this Plan prohibits, precludes, or enjoins any Governmental Unit from asserting or filing a proof of Claim on or before the Governmental Bar Date.[4]

E.    *Exculpation*

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action based on any act or omission occurring from the Petition Date through the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the Restructuring Support Agreement, the Restructuring, the DIP Facility, the DIP Orders, the DIP Documents, any Canadian Court Recognition Order, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action

---

[4]    "Governmental Bar Date" shall have the meaning set forth in the *Order Establishing (I) Various Bar Dates for Filing Proofs of Claim, (II) Approving the Form and Manner of Filing Proofs of Claim, (III) Approving Notices of Bar Dates, and (IV) Granting Related Relief* [Docket No. 340].

arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes gross negligence, intentional fraud or willful misconduct as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code and have participated in good faith with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

F.    *Injunction*

Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests or Causes of Action or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities released or settled pursuant to the Plan.

By accepting distributions pursuant to the Plan (including retaining any Interest in the Debtors as set forth in the Plan), each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed

to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth above.

The injunctions set forth above shall extend to any predecessors and/or successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property. Immediately upon entry of the Confirmation Order, no Person or Entity may commence or pursue a Claim or Cause of Action (or continue to prosecute such Claim or Cause of Action to the extent filed prior to entry of the Confirmation Order) of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII hereof (or anticipated to be subject to Article VIII following entry of the Confirmation Order but prior to the Effective Date), without the Bankruptcy Court (1) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind (or that, even if such Claim or Cause of Action represents a colorable Claim of any kind, it would not be subject to the releases set forth in Article VIII), and (2) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party. Immediately upon entry of the Confirmation Order, any existing proceeding related to a claim or cause of action against any Released Parties or Exculpated Parties is hereby stayed until such parties seeking to prosecute such claims or cause of action comply with the procedures set forth in the foregoing paragraph.

\*\*\*

UNDER THE PLAN, "RELEASING PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH, (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (VII) WITH RESPECT TO EACH OF THE FOREGOING PERSONS IN CLAUSES (I) THROUGH (VIVIII), SUCH PERSONS' PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES (INCLUDING AFFILIATES OF ANY PREDECESSORS), CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS (INCLUDING EQUITY HOLDERS OF ANY PREDECESSORS), MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES, (VIII) THE HOLDERS OF ALL CLAIMS OR INTERESTS WHOSE VOTE TO ACCEPT OR REJECT THE PLAN IS SOLICITED BUT DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE VIIID.2, AND (IX) THE HOLDERS OF ALL CLAIMS AND INTERESTS WHO WERE GIVEN NOTICE OF THE OPPORTUNITY AND SERVED WITH A

**PROVIDED FORM TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE VIIID.2 BUT DID NOT TIMELY OPT OUT.**

UNDER THE PLAN, "RELEASED PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH,   (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) EACH OF THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, AND (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (IX) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (I) THROUGH (VIVIII), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES, CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS, MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES; PROVIDED, HOWEVER, THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) FILES AN OBJECTION TO THE PLAN OR (Y) OPTS OUT OF THE RELEASES SET FORTH IN ARTICLE VIIID.2, AS APPLICABLE, SHALL NOT BE A "RELEASED PARTY."

IF YOU DO NOT CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES OF THE RELEASED PARTIES SET FORTH ABOVE.

UNLESS YOU CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, BY ACCEPTING DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT OF YOUR ALLOWED CLAIM OR INTEREST YOU WILL BE DEEMED TO HAVE AFFIRMATIVELY CONSENTED TO BE BOUND BY THE TERMS OF THE PLAN, INCLUDING, WITHOUT LIMITATION, THE RELEASES AND INJUNCTIONS SET FORTH ABOVE.

**The holder (or authorized signatory of each holder) of the Class 9 Interest identified in Item 1 elects to:**

> ☐ **Opt out of the Third-Party Releases contained in Article VIII.D.2 of the Plan.**

**Item 4. Certifications.**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

a.  as of the Voting Record Date, it either: (i) is the holder of the Class 9 Interest set forth in Item 1; or (ii) is an authorized signatory for the holder of the Class 9 Interest set forth in Item 1;

b.  it is eligible to vote on the Plan and make an election with respect to the Third-Party Release;

c.  it (or in the case of an authorized signatory, the relevant holder) has received the Solicitation Materials including a copy of the Disclosure Statement and acknowledges that the solicitation of votes on the Plan is being made pursuant to the terms and conditions set forth therein;

d.  it has cast the same vote with respect to all of its Class 9 Interest;

e.  no other Ballots with respect to the Class 9 Interest identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Class 9 Interests, then any such Beneficial Holder Ballots cast earlier are hereby revoked;

f.  it acknowledges and understands that a vote to accept the Plan constitutes an acceptance of the treatment of the Class 9 Interest identified in Item 1; and

g.  it acknowledges and understands that the Debtors may make changes to the Plan as may be reasonably necessary and that, to the extent such changes are not material, the Debtors will not re-solicit acceptances or rejections of the Plan.

Name of holder: _____

*(print or type)*

Signature: _____

Name of Signatory: _____

*(if other than the Class 9 Interest holder)*

Title: _____

Address: _____

Telephone Number
and Email: _____

Date Completed: _____

---

**IF THE SOLICITATION AGENT DOES NOT <u>ACTUALLY RECEIVE</u> THIS BALLOT ON OR BEFORE [~~MAY 29~~JULY 24], 2025, AT 4:00 P.M. (ET), UNLESS THE VOTING DEADLINE IS EXTENDED, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED ONLY IN THE DISCRETION OF THE DEBTORS.**

## INSTRUCTIONS FOR COMPLETING THIS CLASS 9 INTEREST BALLOT

1. The Debtors are soliciting the votes on the Plan attached as **Exhibit A** to the Disclosure Statement. Capitalized terms used in this Ballot or in these instructions but not otherwise defined therein or herein have the meaning set forth in the Plan or Disclosure Statement, as applicable. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE VOTING.**

2. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims in at least one Class of Claims that has the right to vote on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code. If the Plan is confirmed, it will be binding on you regardless of whether you vote at all or if you vote to reject the Plan. Please review the Disclosure Statement for more information.

3. To ensure that your Ballot is counted, you <u>must</u> complete and submit this Ballot as instructed herein. Ballots will not be accepted by electronic mail or facsimile, except as expressly set forth in the Ballot.

4. To ensure that your vote is counted, you must: (a) complete this Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; (c) if you elect to opt out of the third-party releases, clearly indicate your decision in the box in Item 3 of your Ballot; and (d) sign and timely submit your Ballot as instructed herein.

5. Your Ballot **must** be returned to the Solicitation Agent so as to be **actually received** by the Solicitation Agent on or before the Voting Deadline. **The Voting Deadline is [~~May 29~~July 24], 2025, at 4:00 p.m. (ET).**

6. If your Ballot is received after the Voting Deadline, unless the Voting Deadline is extended, your vote may only be counted in the sole and absolute discretion of the Debtors. Additionally, **the following Ballots will <u>not</u> be counted**:

   (a) Any Ballot that (i) partially rejects and partially accepts the Plan, (ii) is not marked to accept or reject the Plan, (iii) is marked both to accept and reject the Plan;

   (b) Any Ballot sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), including the Debtors' financial or legal advisors, or any agent or indenture trustee for the Debtors' funded debt;

   (c) Any Ballot sent by telecopy, electronic mail, facsimile, or other electronic means except for the E-Ballot Portal;

   (d) Any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim voted;

    (e)       Any Ballot cast by a person or an entity that does not hold a Class 9 Interest or is not an authorized signatory for such holder;

    (f)       Any Beneficial Holder Ballot transmitted by means not specifically approved in these instructions; and/or

    (g)       Any unsigned Ballot (for the avoidance of doubt, electronic signatures contained in E-Ballots validly submitted through the E-Ballot Portal will be deemed immediately legally valid and effective).

7.       The method of delivery of your Ballot to the Solicitation Agent is at your election and risk. Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **actually receives** your executed Ballot (or your E-Ballot validly submitted through the E-Ballot Portal).  You should allow sufficient time to assure timely delivery.

8.       If multiple Ballots are received from the same holder of the same Class 9 Interest prior to the Voting Deadline, the latest, timely received, and valid Ballot will supersede and revoke any earlier received Ballots.

9.       If you cast a timely Ballot that is properly completed and executed but does not indicate either an acceptance or rejection of the Plan, your vote will not be counted.

10.     If you cast a timely Ballot that is properly completed and executed but indicates both an acceptance and a rejection of the Plan, your vote will not be counted.

11.     You must vote all of your Class 9 Interests either to accept or reject the Plan and may **not** split your vote.

12.     This Ballot does **not** constitute, and will not be deemed to be, (a) a proof of Claim or (b) an assertion or admission with respect to any Claim.

13.     **Please be sure to sign and date your Ballot**.  If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of a holder of a Class 9 Interest.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to your Ballot.

14.     If you hold Claims or Interests in more than one Class you may receive more than one ballot coded for each such Class.  Each ballot votes **only** your Claims or Interests indicated on that ballot, so please complete and return each ballot you receive.

15.     Subject to contrary orders of the Bankruptcy Court, any defects or irregularities in connection with the delivery of your Ballot must be cured prior to the Voting Deadline or such Ballot will not be counted.  Notwithstanding the foregoing, the Debtors may, in their

sole discretion, waive any defect or irregularity as to any particular Ballot at any time, either before or after the Voting Deadline.

16.    Neither the Debtors, the Solicitation Agent, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to your Ballot, nor will any of them incur any liability for failure to provide such notification.

17.    This Ballot is not a letter of transmittal and may not be used for any purpose other than to: (i) vote to accept or reject the Plan; (ii) if applicable, opt-out of the Third-Party Release, and (iii) make the required certifications. Accordingly, at this time, you should not surrender the instruments representing or evidencing your Class 9 Interests or Units, and neither the Debtors nor Solicitation Agent will accept delivery of any such instruments.

18.    There may be changes made to the Plan that do not have a material adverse effect on the treatment of your Class 9 Interests. If such non-material changes are made to the Plan, the Debtors will not resolicit your vote on the Plan.

**PLEASE SUBMIT YOUR BALLOT PROMPTLY, TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE VIA THE E-BALLOT PLATFORM, AS DIRECTED ABOVE, OR IN HARD COPY AT THE FOLLOWING ADDRESS:**

**LIGADO NETWORKS, LLC BALLOT PROCESSING**
**C/O OMNI AGENT SOLUTIONS, INC.**
**5955 DE SOTO AVE., SUITE 100**
**WOODLAND HILLS, CA 91367**

_____

**IF YOU WOULD LIKE TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND PROVIDE THE ANTICIPATED DATE AND TIME OF DELIVERY AT LEAST TWENTY-FOUR (24) HOURS IN ADVANCE.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE.**

**IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE THIS BALLOT VIA THE E-BALLOT PLATFORM OR IN HARD COPY, AS DIRECTED ABOVE, ON OR BEFORE THE VOTING DEADLINE, WHICH IS ON [~~MAY 29~~JULY 24], 2025, AT 4:00 P.M. (ET), UNLESS THE VOTING DEADLINE IS EXTENDED, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED ONLY IN THE SOLE AND ABSOLUTE DISCRETION OF THE DEBTORS.**

17

**Exhibit 2.~~G~~H**

**Class 10 Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

———————————————————————

In re:                                                )       Chapter 11
                                                      )
LIGADO NETWORKS LLC *et al.*,[1]              )       Case No. 25-10006 (TMH)
                                                      )
                            Debtors.                  )       (Jointly Administered)
                                                      )
                                                      )
                                                      )
———————————————————————

**BALLOT FOR VOTING TO ACCEPT OR REJECT
THE CHAPTER 11 PLANS OF LIGADO NETWORKS, LLC ET AL.**

**CLASS 10 (EXISTING SERIES A-1 PREFERRED INTERESTS)**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED IN ACCORDANCE WITH THE INSTRUCTIONS BELOW SO AS TO BE ACTUALLY RECEIVED BY THE DEBTORS' SOLICITATION AGENT BY [~~MAY 29~~JULY 24], 2025, AT 4:00 P.M. (ET) (THE "VOTING DEADLINE").**

---

The above-captioned debtors (the "Debtors") are soliciting votes on the *Joint Chapter 11 Plan of Ligado Networks LLC and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan") described in (and attached to) the *Disclosure Statement for Joint Chapter 11 Plan of Ligado Networks LLC, and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement")[2] included in the package (the "Solicitation Materials") you are receiving with this ballot (the "Ballot").

You are receiving this Ballot because the Debtors' records indicate that you may be a holder, a potential holder, an investment advisor, a sub-advisor, or a manager of various

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or Disclosure Statement, as applicable.

funds/accounts/investors with respect to an interest in the Existing Series A-1 Preferred Units(a "Class 10 Interest") as of [~~March 21~~**June 20**], 2025 (the "Voting Record Date") and, as such, have the right to vote to accept or reject the Plan.

As described in more detail in the Disclosure Statement and the Plan, if the Plan is confirmed and the Effective Date occurs, then, subject to Section III.B of the Plan and except to the extent such holder agrees to less favorable treatment, each holder of Allowed Existing Series A-1 Preferred Units shall retain its Existing Series A-1 Preferred Units, as amended by the Second Amended and Restated Operating Agreement, in the form of the New Series B-1 Preferred Units.

**YOUR VOTE WILL BE APPLIED TO THOSE DEBTORS WHO ARE LIABLE TO YOU ON ACCOUNT OF YOUR CLASS 10 INTERESTS.**

Your rights are described in the Disclosure Statement. If you received the Solicitation Materials in electronic form and desire paper copies of any of them, or if you need to obtain additional Solicitation Materials, you may obtain them at no charge from Omni Agent Solutions, Inc. (the "Solicitation Agent") by: (i) emailing ~~LigadoInquiries@OmniAgnt.com~~**LigadoInquiries@OmniAgnt.com** with a reference to "Ligado" in the subject line, or (ii) at the following telephone numbers: (866) 956-2139 (domestic toll free) or (747) 288-6357 (international).

On the Petition Date, the website ~~https://omniagentsolutions.com/Ligado~~**https://omniagentsolutions.com/Ligado** will become publicly available and contain important information, hearing dates, and other key deadlines, as well as the docket for the Debtors' chapter 11 cases. You may also obtain copies of any pleadings to be filed in these cases for a fee via PACER at: ~~http://www.deb.uscourts.gov~~**http://www.deb.uscourts.gov.**

This Ballot may not be used for any purpose other than for (i) casting your vote to accept or reject the Plan, (ii) indicating your election to opt out of certain releases described below, if applicable, and (iii) making certain certifications with respect to your vote. If you believe you have received this Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent **immediately** at the email address set forth above.

**You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Class 10 Interest. This Ballot pertains solely to your Class 10 Interest. If you hold Claims or Interests in more than one Class that is entitled to vote on the Plan, you will receive a ballot for each such Class.**

**PLEASE SUBMIT YOUR BALLOT BY ONE OF THE FOLLOWING TWO METHODS:**

**Via Paper Ballot. Complete, sign, and date this Ballot and return it, properly executed, promptly via first class mail (or in the enclosed reply envelope), overnight courier, or hand delivery to:**

**Ligado Networks, LLC Ballot Processing**

**c/o Omni Agent Solutions, Inc.**
**5955 De Soto Ave., Suite 100**
**Woodland Hills, CA 91367**

**IF YOU WOULD LIKE TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND PROVIDE THE ANTICIPATED DATE AND TIME OF DELIVERY AT LEAST TWENTY-FOUR (24) HOURS IN ADVANCE.**

**<u>OR</u>**

<u>**Via Online Submission**</u>. **Submit your Ballot via the Solicitation Agent's online portal (the "<u>E-Ballot Portal</u>"), by visiting https://omniagentsolutions.com/Ligado-Ballots.   Click on the "Balloting" section of the website and follow the instructions to submit your Ballot.**

**The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**If you cast a Ballot using the E-Ballot Portal, you should NOT also submit a paper Ballot.**

**IF YOU WISH TO SUBMIT YOUR BALLOT THROUGH THE ONLINE E-BALLOT PORTAL BUT ARE UNABLE TO DO SO, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND SOMEONE WILL PROVIDE ASSISTANCE.**

**Item 1**. **Principal Amount of Class 10 Interest.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of a holder) of a Class 10 Interest in the following amount (insert amount in box below):

$$\$^3 \underline{\hspace{3cm}}$$

**Item 2**. **Vote For or Against the Plan.**

The holder of the Class 10 Interest set forth in Item 1 votes to (please check only **one** box):

| ☐ **ACCEPT** (vote FOR) the Plan | ☐ **REJECT** (vote AGAINST) the Plan |
|---|---|

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**Any Ballot that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan, will not be counted.**

**Item 3**. **Important Information Regarding the Releases of Claims by Holders of Claims or Interests**

**WHETHER YOU VOTE TO ACCEPT OR REJECT THE PLAN OR ABSTAIN FROM VOTING ALTOGETHER, UNLESS YOU CHECK THE "OPT OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES OF THE RELEASED PARTIES SET FORTH IN ARTICLE VIII.D.2 OF THE PLAN COPIED BELOW (THE "THIRD-PARTY RELEASE").**

**Article VIII of the Plan contains the following provisions:**

A.    *Compromise and Settlement*

**The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their Estates, and all holders of Claims or Interests, (2) fair, equitable, and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to applicable bankruptcy law. In addition, the allowance, classification, and treatment of any Allowed Claims of a Released Party take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist between the Debtors and any Released Party and, as of the Effective Date, any and all such**

---

[3]    For voting purposes only. Subject to tabulation rules.

Causes of Action are settled, compromised, and released as set forth in the Plan.  The Confirmation Order shall authorize and approve the releases by all Entities of all such contractual, legal, and equitable subordination rights and Causes of Action that are satisfied, compromised, and settled pursuant hereto.  Nothing in the Plan shall compromise or settle, in any way whatsoever, any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have against any Entity that is not a Released Party.

In accordance with the provisions of the Plan, and pursuant to Bankruptcy Rule 9019, without any further notice to, or action, order, or approval of, the Bankruptcy Court or the Canadian Court, after the Effective Date, the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle (1) Claims (including Causes of Action) against and Interests in the Debtors not previously Allowed (if any) and (2) claims (including Causes of Action) against other Entities.

> B.      *Discharge of Claims and Termination of Interests*

Except as otherwise provided in the Plan, effective as of the Effective Date: (1) the distributions, rights, and treatment that are provided in the Plan for all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, whether known or unknown, against or in the Debtors or any of their assets, property, or Estates, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date and any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date; (2) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (3) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code; and (4) all entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date.  Notwithstanding the foregoing, all Existing Common Units shall remain in full force and effect and shall be governed by the terms of the applicable New Organizational Documents, including the Second Amended and Restated Operating Agreement.  The Confirmation Order shall be a judicial determination, subject to the Effective Date occurring, of the discharge of all Claims and Interests except as otherwise expressly provided in the Plan.

> C.      *Release of Liens*

Except as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit First Lien Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and the effectiveness of the Exit First Lien Facility Documents, all mortgages, deeds of trust, Liens, pledges, or other security interests against

any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall automatically revert to the Reorganized Debtors and each of their successors and assigns, and the Agents/Trustees **and the DIP Agent** shall be authorized to release any such mortgages, deeds of trust, Liens, pledges, or other security interests held by such holder and to take such actions as may be requested by the Reorganized Debtors to evidence the release of such mortgages, deeds of trust, Liens, pledges, or other security interests, including the execution, delivery, and filing or recording of any related releases or discharges as may be requested by the Reorganized Debtors or may be required in order to effectuate the foregoing.

D. *Releases of Released Parties*

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to applicable bankruptcy law, of the releases described in this Article VIII.D and shall constitute the Bankruptcy Court's finding that such releases are:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by this Article VIII.D; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Entity (including the Debtors) asserting any claim or Cause of Action released pursuant to this Article VIII.D.

1. **Releases by the Debtors**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of each Debtor, each Reorganized Debtors, and each Estate, in each case, on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action, whether prepetition or postpetition, derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws, or otherwise that the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the

transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, (ii) any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have in connection with the Ligado Takings Case, ~~and~~ (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit First Lien Facility Documents, or any Claim or obligation arising under the Plan **_and (iv) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct_**.

2.    **Releases by Holders of Claims or Interests**

As of the Effective Date, except for **_(i)_** the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring ~~or~~**_, (ii) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct, or (iii) the rights provided or reserved for under the AST Definitive Agreements Order, or (iv)_** as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case, from any and all Claims and Causes of Action whatsoever, whether prepetition or postpetition (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the

Reorganized Debtors, or the Estates, the Chapter 11 Cases the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors (including any of the Debtors' predecessors) or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors (including any of the Debtors' predecessors) and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.

Entry of the Confirmation Order shall, subject to the occurrence of the Effective Date, constitute the Bankruptcy Court's approval of the releases contained in the Plan and a finding that each release described is (i) in exchange for the good and valuable consideration provided by the Released Parties, including without limitation, the Released Parties' contributions to implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the holders of Claims and Interests, (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a sound exercise of the Debtors' business judgment.

Nothing in this Plan prohibits, precludes, or enjoins any Governmental Unit from asserting or filing a proof of Claim on or before the Governmental Bar Date.[4]

E.  *Exculpation*

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action based on any act or omission occurring from the Petition Date through the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the Restructuring Support Agreement, the Restructuring, the DIP Facility, the DIP Orders, the DIP Documents, any Canadian Court Recognition Order, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action

---

[4] "Governmental Bar Date" shall have the meaning set forth in the *Order Establishing (I) Various Bar Dates for Filing Proofs of Claim, (II) Approving the Form and Manner of Filing Proofs of Claim, (III) Approving Notices of Bar Dates, and (IV) Granting Related Relief* [Docket No. 340].

arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes gross negligence, intentional fraud or willful misconduct as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code and have participated in good faith with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

F.    *Injunction*

Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests or Causes of Action or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, ~~and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise~~; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities released or settled pursuant to the Plan.

~~By accepting distributions pursuant to the Plan (including retaining any Interest in the Debtors as set forth in the Plan), each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed~~

to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth above.

The injunctions set forth above shall extend to any predecessors and/or successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property. Immediately upon entry of the Confirmation Order, no Person or Entity may commence or pursue a Claim or Cause of Action (or continue to prosecute such Claim or Cause of Action to the extent filed prior to entry of the Confirmation Order) of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII hereof (or anticipated to be subject to Article VIII following entry of the Confirmation Order but prior to the Effective Date), without the Bankruptcy Court (1) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind (or that, even if such Claim or Cause of Action represents a colorable Claim of any kind, it would not be subject to the releases set forth in Article VIII), and (2) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party. Immediately upon entry of the Confirmation Order, any existing proceeding related to a claim or cause of action against any Released Parties or Exculpated Parties is hereby stayed until such parties seeking to prosecute such claims or cause of action comply with the procedures set forth in the foregoing paragraph.

\*\*\*

UNDER THE PLAN, "RELEASING PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH, (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (VII) WITH RESPECT TO EACH OF THE FOREGOING PERSONS IN CLAUSES (I) THROUGH (VIVIII), SUCH PERSONS' PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES (INCLUDING AFFILIATES OF ANY PREDECESSORS), CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS (INCLUDING EQUITY HOLDERS OF ANY PREDECESSORS), MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES, (VIII) THE HOLDERS OF ALL CLAIMS OR INTERESTS WHOSE VOTE TO ACCEPT OR REJECT THE PLAN IS SOLICITED BUT DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE VIIID.2, AND (IX) THE HOLDERS OF ALL CLAIMS AND INTERESTS WHO WERE GIVEN NOTICE OF THE OPPORTUNITY AND SERVED WITH A

**PROVIDED FORM TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE VIIID.2 BUT DID NOT TIMELY OPT OUT.**

UNDER THE PLAN, "RELEASED PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH,  (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) **EACH OF** THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, ~~AND~~ (VII) **AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (IX)** EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (I) THROUGH (~~VI~~**VIII**), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES, CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS, MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES; PROVIDED, HOWEVER, THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) FILES AN OBJECTION TO THE PLAN OR (Y) OPTS OUT OF THE RELEASES SET FORTH IN ARTICLE VIIID.2, AS APPLICABLE, SHALL NOT BE A "RELEASED PARTY."

IF YOU DO NOT CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES OF THE RELEASED PARTIES SET FORTH ABOVE.

UNLESS YOU CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, BY ACCEPTING DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT OF YOUR ALLOWED CLAIM OR INTEREST YOU WILL BE DEEMED TO HAVE AFFIRMATIVELY CONSENTED TO BE BOUND BY THE TERMS OF THE PLAN, INCLUDING, WITHOUT LIMITATION, THE RELEASES AND INJUNCTIONS SET FORTH ABOVE.

**The holder (or authorized signatory of each holder) of the Class 10 Interest identified in Item 1 elects to:**

> ☐   **Opt out of the Third-Party Releases contained in Article VIII.D.2 of the Plan.**

**Item 4. Certifications.**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

a.  as of the Voting Record Date, it either: (i) is the holder of the Class 10 Interest set forth in Item 1; or (ii) is an authorized signatory for the holder of the Class 10 Interest set forth in Item 1;

b.  it is eligible to vote on the Plan and make an election with respect to the Third-Party Release;

c.  it (or in the case of an authorized signatory, the relevant holder) has received the Solicitation Materials including a copy of the Disclosure Statement and acknowledges that the solicitation of votes on the Plan is being made pursuant to the terms and conditions set forth therein;

d.  it has cast the same vote with respect to all of its Class 10 Interest;

e.  no other Ballots with respect to the Class 10 Interest identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Class 10 Interests, then any such Beneficial Holder Ballots cast earlier are hereby revoked;

f.  it acknowledges and understands that a vote to accept the Plan constitutes an acceptance of the treatment of the Class 10 Interest identified in Item 1; and

g.  it acknowledges and understands that the Debtors may make changes to the Plan as may be reasonably necessary and that, to the extent such changes are not material, the Debtors will not re-solicit acceptances or rejections of the Plan.

Name of holder: _____

*(print or type)*

Signature: _____

Name of Signatory: _____

*(if other than the Class 10 Interest holder)*

Title: _____

Address: _____

Telephone Number
and Email: _____

Date Completed: _____

---

**IF THE SOLICITATION AGENT DOES NOT <u>ACTUALLY RECEIVE</u> THIS BALLOT ON OR BEFORE [~~MAY 29~~JULY 24], 2025, AT 4:00 P.M. (ET), UNLESS THE VOTING DEADLINE IS EXTENDED, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED ONLY IN THE DISCRETION OF THE DEBTORS.**

## **INSTRUCTIONS FOR COMPLETING THIS CLASS 10 INTEREST BALLOT**

1.      The Debtors are soliciting the votes on the Plan attached as **Exhibit A** to the Disclosure Statement.  Capitalized terms used in this Ballot or in these instructions but not otherwise defined therein or herein have the meaning set forth in the Plan or Disclosure Statement, as applicable.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE VOTING.**

2.      The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims in at least one Class of Claims that has the right to vote on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.  If the Plan is confirmed, it will be binding on you regardless of whether you vote at all or if you vote to reject the Plan. Please review the Disclosure Statement for more information.

3.      To ensure that your Ballot is counted, you <u>must</u> complete and submit this Ballot as instructed herein.  Ballots will not be accepted by electronic mail or facsimile, except as expressly set forth in the Ballot.

4.      To ensure that your vote is counted, you must: (a) complete this Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; (c) if you elect to opt out of the third-party releases, clearly indicate your decision in the box in Item 3 of your Ballot; and (d) sign and timely submit your Ballot as instructed herein.

5.      Your Ballot **<u>must</u>** be returned to the Solicitation Agent so as to be **<u>actually received</u>** by the Solicitation Agent on or before the Voting Deadline.  **The Voting Deadline is [~~May 29~~July 24], 2025, at 4:00 p.m. (ET).**

6.      If your Ballot is received after the Voting Deadline, unless the Voting Deadline is extended, your vote may only be counted in the sole and absolute discretion of the Debtors.  Additionally, **the following Ballots will <u>not</u> be counted**:

(a)      Any Ballot that (i) partially rejects and partially accepts the Plan, (ii) is not marked to accept or reject the Plan, (iii) is marked both to accept and reject the Plan;

(b)      Any Ballot sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), including the Debtors' financial or legal advisors, or any agent or indenture trustee for the Debtors' funded debt;

(c)      Any Ballot sent by telecopy, electronic mail, facsimile, or other electronic means except for the E-Ballot Portal;

(d)      Any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim voted;

(e)     Any Ballot cast by a person or an entity that does not hold a Class 10 Interest or is not an authorized signatory for such holder;

(f)     Any Beneficial Holder Ballot transmitted by means not specifically approved in these instructions; and/or

(g)     Any unsigned Ballot (for the avoidance of doubt, electronic signatures contained in E-Ballots validly submitted through the E-Ballot Portal will be deemed immediately legally valid and effective).

7.     The method of delivery of your Ballot to the Solicitation Agent is at your election and risk. Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **actually receives** your executed Ballot (or your E-Ballot validly submitted through the E-Ballot Portal).  You should allow sufficient time to assure timely delivery.

8.     If multiple Ballots are received from the same holder of the same Class 10 Interest prior to the Voting Deadline, the latest, timely received, and valid Ballot will supersede and revoke any earlier received Ballots.

9.     If you cast a timely Ballot that is properly completed and executed but does not indicate either an acceptance or rejection of the Plan, your vote will not be counted.

10.    If you cast a timely Ballot that is properly completed and executed but indicates both an acceptance and a rejection of the Plan, your vote will not be counted.

11.    You must vote all of your Class 10 Interests either to accept or reject the Plan and may **not** split your vote.

12.    This Ballot does **not** constitute, and will not be deemed to be, (a) a proof of Claim or (b) an assertion or admission with respect to any Claim.

13.    **Please be sure to sign and date your Ballot**.  If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of a holder of a Class 10 Interest.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to your Ballot.

14.    If you hold Claims or Interests in more than one Class you may receive more than one ballot coded for each such Class.  Each ballot votes **only** your Claims or Interests indicated on that ballot, so please complete and return each ballot you receive.

15.    Subject to contrary orders of the Bankruptcy Court, any defects or irregularities in connection with the delivery of your Ballot must be cured prior to the Voting Deadline or such Ballot will not be counted.  Notwithstanding the foregoing, the Debtors may, in their

15

sole discretion, waive any defect or irregularity as to any particular Ballot at any time, either before or after the Voting Deadline.

16.    Neither the Debtors, the Solicitation Agent, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to your Ballot, nor will any of them incur any liability for failure to provide such notification.

17.    This Ballot is not a letter of transmittal and may not be used for any purpose other than to: (i) vote to accept or reject the Plan; (ii) if applicable, opt-out of the Third-Party Release, and (iii) make the required certifications. Accordingly, at this time, you should not surrender the instruments representing or evidencing your Class 10 Interests or Units, and neither the Debtors nor Solicitation Agent will accept delivery of any such instruments.

18.    There may be changes made to the Plan that do not have a material adverse effect on the treatment of your Class 10 Interests. If such non-material changes are made to the Plan, the Debtors will not resolicit your vote on the Plan.

**PLEASE SUBMIT YOUR BALLOT PROMPTLY, TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE VIA THE E-BALLOT PLATFORM, AS DIRECTED ABOVE, OR IN HARD COPY AT THE FOLLOWING ADDRESS:**

**LIGADO NETWORKS, LLC BALLOT PROCESSING**
**C/O OMNI AGENT SOLUTIONS, INC.**
**5955 DE SOTO AVE., SUITE 100**
**WOODLAND HILLS, CA 91367**

———————

**IF YOU WOULD LIKE TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND PROVIDE THE ANTICIPATED DATE AND TIME OF DELIVERY AT LEAST TWENTY-FOUR (24) HOURS IN ADVANCE.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE.**

---

**IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE THIS BALLOT VIA THE E-BALLOT PLATFORM OR IN HARD COPY, AS DIRECTED ABOVE, ON OR BEFORE THE VOTING DEADLINE, WHICH IS ON [MAY 29JULY 24], 2025, AT 4:00 P.M. (ET), UNLESS THE VOTING DEADLINE IS EXTENDED, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED ONLY IN THE SOLE AND ABSOLUTE DISCRETION OF THE DEBTORS.**

17

**EXHIBIT 3**

**Notice of Non-Voting Status and Opt-Out Form**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIGADO NETWORKS LLC, *et al.*,[1] | ) | Case No. 25-10006 (TMH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: [~~June 10~~August 7], 2025 at ~~10:00 a.m.~~[2:00 p.m.] (ET)]** |

### NOTICE OF NON-VOTING STATUS OF CERTAIN ~~FOR~~ UNIMPAIRED CLASSES

**PLEASE TAKE NOTICE THAT** by the order dated [•], 2025 (the "Disclosure Statement Order"),[2] the United States Bankruptcy Court for the District Delaware (the "Court") approved the Disclosure Statement filed by the above-captioned Debtors [Docket No. [•]] and authorized the Debtors to solicit votes to accept or reject the *Joint Chapter 11 Plan of Ligado Networks LLC and Its Affiliated Debtors and Debtors in Possession* attached to the Disclosure Statement as **Exhibit A** (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan").

**PLEASE TAKE FURTHER NOTICE** that, as a holder of a Claim that is not impaired under the terms of the Plan, you are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are **not entitled to vote on the Plan**. Nevertheless, you are still entitled to opt out of the Third-Party Releases contained in the Plan. You may do so on the attached Opt-Out Form.

**PLEASE TAKE FURTHER NOTICE** that your rights are set forth in the Plan and described in the Disclosure Statement.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider confirmation of the Plan (the "Confirmation Hearing") will commence on **[~~June 10~~August 7], 2025, at ~~10:00 a.m., prevailing Eastern Time~~[2:00 p.m.], (ET)]** before the Honorable Thomas M. Horan, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, DE 19801.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2] Capitalized terms not otherwise defined herein have the same meanings set forth in the Disclosure Statement Order.

[~~May 29~~July 24], 2025, at 4:00 p.m., prevailing Eastern Time.  Any objection to the Plan **must**: (i) be in writing; (ii) conform to the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any orders of the Court; (iii) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (iv) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so that it is **actually received** on or before [~~May 29~~July 24], **2025, at 4:00 p.m., prevailing Eastern Time**:

| | |
|---|---|
| **Debtors**<br>Ligado Networks LLC<br>10802 Parkridge Boulevard<br>Reston, VA 20191<br>Attn: Vicky McPherson<br>Email: vicky@ligado.com | **Office of the U.S. Trustee**<br>Office of the U.S. Trustee for<br>the District of Delaware<br>844 King Street<br>Suite 2207, Lockbox 35<br>Wilmington, Delaware 19801<br>Attn: Benjamin Hackman, Esq.<br>Email: Benjamin.a.hackman@usdoj.gov |
| **Counsel to the Debtors**<br>Milbank LLP<br>55 Hudson Yards<br>New York, New York 10001<br>Attn: Dennis F. Dunne<br>Matthew L. Brod<br>Lauren C. Doyle<br>Telephone:    (212) 530-5000<br>Facsimile:    (212) 530-5219<br>Email: ddune@milbank.com<br>mbrod@milbank.com<br>ldoyle@milbank.com | **Co-Counsel to the Debtors**<br>Richards, Layton, & Finger, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, Delaware 19801<br>Attn: Mark D. Collins<br>Michael J. Merchant<br>Amanda R. Steele<br>Telephone: (302) 651-7700<br>Facsimile:    (302) 651-7701<br>Email: collins@rlf.com<br>merchant@rlf.com<br>steele@rlf.com |
| **Counsel to the Ad Hoc Crossholder Group**<br>Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>Attn: Brian Schartz, P.C.<br>Derek I. Hunter<br>Email: brian.schartz@kirkland.com<br>derek.hunter@kirkland.com<br><br>-and-<br><br>Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, IL 60654<br>Attn: Patrick J. Nash, Jr., P.C.<br>Alan McCormick<br>Email: patrick.nash@kirkland.com<br>alan.mccormick@kirkland.com | **Counsel to the Ad Hoc First Lien Group**<br>Sidley Austin LLP<br>One South Dearborn<br>Chicago, IL 60603<br>Attn: Jason L. Hufendick<br>Dennis Twomey<br>Email: jhufendick@sidley.com<br>dtwomey@sidley.com |

**PLEASE TAKE FURTHER NOTICE THAT** additional copies of the Plan, Disclosure Statement, or any other solicitation materials (except for Ballots) are available free of charge and can be attained using any of the following: (1) the Debtors' case information website (https://omniagentsolutions.com/Ligado), (2) contacting the Debtors' Solicitation Agent at: (866) 956-2139 (domestic toll free) or (747) 288-6357 (international), (3) by writing the Solicitation Agent at either (a) Ligado Networks, LLC Ballot Processing c/o Omni Agent Solutions, Inc. 5955 De Soto Ave., Suite 100 Woodland Hills, CA 91367 or (b) LigadoInquiries@OmniAgnt.com (with "Ligado Solicitation Inquiry" in the subject line), or (4) scanning the QR code below. You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at: www.pacer.psc.uscourts.gov.

### **Additional Information**

Interested parties may also review the Disclosure Statement and the Plan free of charge at ~~https://omniagentsolutions.com/Ligado~~ **https://omniagentsolutions.com/Ligado** or by scanning the QR code below.

(Mod)



**Exhibit A**

**Opt-Out Form**

You are receiving this opt-out form because, as of as of [~~March 21~~**June 20**], 2025 (the "Record Date"), you are a holder or potential holder of a Claim or Interest in a Class that is unimpaired under the Plan (the "Non-Voting Classes"). As such, you are presumed to accept the Plan, and as a result, **not** entitled to vote on the Plan; however, you are still entitled to opt out of the Third-Party Releases provided by the Plan. The Non-Voting Classes are as follows:

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 6 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 11 | Existing Series A-2 Preferred Units | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 12 | Existing Series B Preferred Units | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 13 | Existing Series C Preferred Units | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 14 | Existing Series A Common Units | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 15 | Existing Series B Common Units | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

If the Plan is confirmed and consummated, holders of Allowed Claims and Interests in the Non-Voting Classes will receive the following treatment:

- Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, in full and final satisfaction of such Allowed Priority Non-Tax Claim, each holder of an Allowed Priority Non-Tax Claim, if any, will, at the option of the Debtors or the Reorganized Debtors, (i) be paid in full in Cash or (ii) otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, in each case, or as soon as reasonably practicable thereafter.

- Except to the extent that a holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction of such Allowed Other Secured Claim, at the option of the Debtors or the Reorganized Debtors, (i) each such holder will receive

payment in full in Cash, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, in each case, or as soon as reasonably practicable thereafter, (ii) such holder's Allowed Other Secured Claim will be reinstated, or (iii) such holder will receive such other treatment so as to render such holder's Allowed Other Secured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code.

- Except to the extent that a holder of an Allowed General Unsecured Claim and the Debtor entity against which such Allowed General Unsecured Claim is asserted agree to less favorable treatment for such holder, in full satisfaction of its Allowed General Unsecured Claim, the holder thereof shall receive payment in Cash in an amount equal to such Allowed General Unsecured Claim plus any and all accrued and unpaid interest, fees, premiums, and all other obligations, amounts, and expenses due and owing thereunder, if any, (i) on the Effective Date (or as soon as reasonably practicable thereafter) to the extent such Claim is due and payable on the Effective Date or (ii) to the extent such Claim is not due and payable on the Effective Date, in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such General Unsecured Claim.

- Except to the extent that a holder of an Allowed Existing Series A-2 agrees to less favorable treatment, each holder of Allowed Existing Series A-2 Preferred Units shall retain its Existing Series A-2 Preferred Units in the form of the New Series B-2 Preferred Units.

- Except to the extent such holder agrees to less favorable treatment, each holder of Allowed Existing Series B Preferred Units shall retain its Existing Series B Preferred Units in the form of the New Series C Preferred Units.

- Except to the extent that a holder of an Allowed Existing Series C Preferred Unit agrees to less favorable treatment, each holder of Allowed Existing Series C Preferred Units shall retain its Existing Series C Preferred Units in the form of the New Series D Preferred Units.

- Except to the extent that a holder of an Allowed Existing Series A Common Unit agrees to less favorable treatment, each holder of Allowed Existing Series A Common Units shall retain its current Existing Series A Common Units.

- Except to the extent that a holder of an Allowed Existing Series B Common Unit agrees to less favorable treatment, each holder of Allowed Existing Series B Common Units shall retain its Existing Series B Common Units.

**If the Plan is confirmed and consummated, the Third-Party Releases set forth in Article VIII of the Plan will become effective.   THE THIRD-PARTY RELEASE IS SET FORTH IN ARTICLE VIII.D OF THE PLAN AND COPIED BELOW.**

| |
|---|
| **YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE VIII.D OF THE PLAN UNLESS YOU CHECK THE BOX BELOW AND COMPLETE AND SUBMIT THIS OPT-OUT FORM IN ACCORDANCE WITH THE INSTRUCTIONS SET FORTH BELOW.** |

## OPT-OUT FORM

**Article VIII of the Plan contains the following provisions:**

A. **Compromise and Settlement**

The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their Estates, and all holders of Claims or Interests, (2) fair, equitable, and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to applicable bankruptcy law. In addition, the allowance, classification, and treatment of any Allowed Claims of a Released Party take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist between the Debtors and any Released Party and, as of the Effective Date, any and all such Causes of Action are settled, compromised, and released as set forth in the Plan. The Confirmation Order shall authorize and approve the releases by all Entities of all such contractual, legal, and equitable subordination rights and Causes of Action that are satisfied, compromised, and settled pursuant hereto. Nothing in the Plan shall compromise or settle, in any way whatsoever, any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have against any Entity that is not a Released Party.

In accordance with the provisions of the Plan, and pursuant to Bankruptcy Rule 9019, without any further notice to, or action, order, or approval of, the Bankruptcy Court or the Canadian Court, after the Effective Date, the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle (1) Claims (including Causes of Action) against and Interests in the Debtors not previously Allowed (if any) and (2) claims (including Causes of Action) against other Entities.

B. **Discharge of Claims and Termination of Interests**

Except as otherwise provided in the Plan, effective as of the Effective Date: (1) the distributions, rights, and treatment that are provided in the Plan for all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, whether known or unknown, against or in the Debtors or any of their assets, property, or Estates, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date and any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date; (2) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (3) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code; and (4) all entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date. Notwithstanding the foregoing, all Existing Common Units shall remain in full force and effect and shall be governed by the terms of the applicable New Organizational Documents, including the Second Amended and Restated Operating Agreement. The Confirmation Order shall be a judicial determination, subject to the Effective Date occurring,

1

of the discharge of all Claims and Interests except as otherwise expressly provided in the Plan.

### C. Release of Liens

Except as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit First Lien Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and the effectiveness of the Exit First Lien Facility Documents, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall automatically revert to the Reorganized Debtors and each of their successors and assigns, and the Agents/Trustees **and the DIP Agent** shall be authorized to release any such mortgages, deeds of trust, Liens, pledges, or other security interests held by such holder and to take such actions as may be requested by the Reorganized Debtors to evidence the release of such mortgages, deeds of trust, Liens, pledges, or other security interests, including the execution, delivery, and filing or recording of any related releases or discharges as may be requested by the Reorganized Debtors or may be required in order to effectuate the foregoing.

### D. Releases of Released Parties

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to applicable bankruptcy law, of the releases described in this Article VIII.D and shall constitute the Bankruptcy Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by this Article VIII.D; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Entity (including the Debtors) asserting any claim or Cause of Action released pursuant to this Article VIII.D.

#### 1. Releases by the Debtors

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of each Debtor, each Reorganized Debtors, and each Estate, in each case, on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action, whether prepetition or postpetition, derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws, or otherwise that the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Chapter 11 Cases, the Restructuring, the purchase, sale, or

rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, (ii) any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have in connection with the Ligado Takings Case, ~~and~~ (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit First Lien Facility Documents, or any Claim or obligation arising under the Plan **and (iv) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct**.

### 2.      Releases by Holders of Claims or Interests

As of the Effective Date, except for **(i)** the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring ~~or~~**, (ii) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct, or (iii) the rights provided or reserved for under the AST Definitive Agreements Order, or (iv)** as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case, from any and all Claims and Causes of Action whatsoever, whether prepetition or postpetition (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates, the Chapter 11 Cases the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors (including any of the Debtors' predecessors) or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors (including any of the Debtors' predecessors) and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the

negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.

Entry of the Confirmation Order shall, subject to the occurrence of the Effective Date, constitute the Bankruptcy Court's approval of the releases contained in the Plan and a finding that each release described is (i) in exchange for the good and valuable consideration provided by the Released Parties, including without limitation, the Released Parties' contributions to implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the holders of Claims and Interests, (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a sound exercise of the Debtors' business judgment.

Nothing in this Plan prohibits, precludes, or enjoins any Governmental Unit from asserting or filing a proof of Claim on or before the Governmental Bar Date.[3]

E. **Exculpation**

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action based on any act or omission occurring from the Petition Date through the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the Restructuring Support Agreement, the Restructuring, the DIP Facility, the DIP Orders, the DIP Documents, any Canadian Court Recognition Order, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes gross negligence, intentional fraud or willful misconduct as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code and have participated in good faith with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

---

[3] "Governmental Bar Date" shall have the meaning set forth in the *Order Establishing (I) Various Bar Dates for Filing Proofs of Claim, (II) Approving the Form and Manner of Filing Proofs of Claim, (III) Approving Notices of Bar Dates, and (IV) Granting Related Relief* [Docket No. 340].

F.   **Injunction**

Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests or Causes of Action or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff~~, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise~~; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities released or settled pursuant to the Plan.

~~By accepting distributions pursuant to the Plan (including retaining any Interest in the Debtors as set forth in the Plan), each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth above.~~

~~The injunctions set forth above shall extend to any predecessors and/or successors of the Debtors, the Reorganized Debtors, the Released Parties, and the Exculpated Parties and their respective property and interests in property.  Immediately upon entry of the Confirmation Order, no Person or Entity may commence or pursue a Claim or Cause of Action (or continue to prosecute such Claim or Cause of Action to the extent filed prior to entry of the Confirmation Order) of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII hereof (or anticipated to be subject to Article VIII following entry of the Confirmation Order but prior to the Effective Date), without the Bankruptcy Court (1) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind (or that, even if such Claim or Cause of Action represents a colorable Claim of any kind, it would not be subject to the releases set forth in Article VIII), and (2) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party.  Immediately upon entry of the Confirmation Order, any existing proceeding related to a claim or cause of action against any Released~~

~~Parties or Exculpated Parties is hereby stayed until such parties seeking to prosecute such claims or cause of action comply with the procedures set forth in the foregoing paragraph.~~

\*\*\*

UNDER THE PLAN, "RELEASING PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH, (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (VII) WITH RESPECT TO EACH OF THE FOREGOING PERSONS IN CLAUSES (I) THROUGH (~~VI~~VIII), SUCH PERSONS' PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES (INCLUDING AFFILIATES OF ANY PREDECESSORS), CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS (INCLUDING EQUITY HOLDERS OF ANY PREDECESSORS), MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES, (VIII) THE HOLDERS OF ALL CLAIMS OR INTERESTS WHOSE VOTE TO ACCEPT OR REJECT THE PLAN IS SOLICITED BUT DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE VIII.D.2, AND (IX) THE HOLDERS OF ALL CLAIMS AND INTERESTS WHO WERE GIVEN NOTICE OF THE OPPORTUNITY AND SERVED WITH A PROVIDED FORM TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE VIII.D.2 BUT DID NOT TIMELY OPT OUT.

UNDER THE PLAN, "RELEASED PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH, (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) EACH OF THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, ~~AND~~ (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (IX) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (I) THROUGH (~~VI~~VIII), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES, CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS, MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES; PROVIDED, HOWEVER, THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) FILES AN OBJECTION TO THE PLAN OR (Y) OPTS OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D.2, AS APPLICABLE, SHALL NOT BE A "RELEASED PARTY."

> **YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE UNLESS YOU CHECK THE OPT-OUT BOX IN ITEM 2 BELOW AND COMPLETE AND SUBMIT THIS OPT-OUT FORM IN ACCORDANCE WITH THE INSTRUCTIONS BELOW.**

**Item 1.  Claims or Interests Held.**

The undersigned hereby certifies that, as of [~~March 21~~**June 20**], 2025, the undersigned was the holder of the following Claims and/or Interests in the aggregate amount(s) specified below (insert amount(s) in applicable space(s) below):

Class 1 Priority Non-Tax Claims $_____

Class 2 Other Secured Claims $_____

Class 6 General Unsecured Claims $_____

Class 11 Existing Series A-2 Preferred Units $_____

Class 12 Existing Series B Preferred Units $_____

Class 13 Existing Series C Preferred Units $_____

Class 14 Existing Series A Common Units $_____

Class 15 Existing Series B Common Units $_

**Item 2**.  **Third-Party  Release Opt Out**

☐  The undersigned elects to **OPT OUT** of the Third-Party Release so that it will not apply to  me, the undersigned.

**Item 3**.  **Certifications.**

By signing this Opt-Out Form, the undersigned certifies that:

(a)  as of the Voting Record Date, it either:  (i) is the holder of the Claims/Interests set forth in Item 1; or (ii) is an authorized signatory for an entity that is a holder of the Claims/Interests set forth in Item 1;

(b)  it has received a copy of the notice to which this Opt-Out Form is attached and is submitting this Opt-Out Form pursuant to the terms and conditions set forth therein;

(c)  its election with respect to the Third-Party Plan Release applies to all Claims and Interests in the Class(es) set forth in Item 1; and

(d)  no other Opt-Out Forms with respect to the Claims/Interests set forth in Item 1 have been submitted or, if any other Opt-Out Forms have been submitted with respect to such Claims/Interests, then any such earlier Opt-Out Forms are hereby revoked.

| | |
|---|---|
| Name of Holder: | _____ |
| | (Print or type) |
| Signature: | _____ |
| Name of Signatory: | _____ |
| | (If other than Holder) |
| Title: | _____ |
| Address: | _____ |
| | _____ |
| | _____ |
| Telephone Number: | _____ |
| Email: | _____ |
| Date Completed: | _____ |

**INSTRUCTIONS FOR SUBMITTING THIS OPT-OUT FORM**

**PLEASE RETURN YOUR OPT-OUT FORM PROMPTLY**

For this Opt-Out Form to be valid and effective, it must be completed and signed as provided above and returned to Omni Agent Solutions, Inc. (the "Solicitation Agent") by **one** of the following methods so as to be **actually received** by the Solicitation Agent on or before [~~May 29~~July 24], 2025, at 4:00 p.m., prevailing Eastern Time.

In the prepaid, pre-addressed business reply envelope provided, or by first-class mail, overnight mail, or hand delivery to:

<div align="center">

Ligado Networks, LLC Ballot Processing
c/o Omni Agent Solutions, Inc.
5955 De Soto Ave., Suite 100
Woodland Hills, CA 91367

**OR**

</div>

By electronic, online transmission via the Solicitation Agent's online portal (the "E-Ballot Portal"), by visiting https://omniagentsolutions.com/Ligado-Ballots. Click on the "Balloting" section of the website and follow the instructions to transmit your Third-Party Plan Releases opt-out election.

The E-Ballot Portal is the sole manner in which the Opt-Out Forms will be accepted via electronic or online transmission. Opt-Out Forms submitted by facsimile, email, or other means of electronic transmission will not be valid.

If you opt-out of the Third-Party Releases using the E-Ballot Portal, you should NOT also submit a paper opt out form.

IF YOU ARE UNABLE TO SUBMIT YOUR OPT OUT FORM THROUGH THE E-BALLOT PORTAL, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND SOMEONE WILL PROVIDE ASSISTANCE.

<div align="center">

**\* \* \* \* \* \***

</div>

**Exhibit 4**

**Disclosure Statement Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LIGADO NETWORKS LLC *et al.*,[1] | ) Case No. 25-10006 (TMH) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Obj. Deadline: April 18, 2025 at 4:00 p.m. (ET)** |
| | ) **Hearing Date: April 28, 2025 at 2:00 p.m. (ET)** |

**NOTICE OF HEARING TO CONSIDER**
**APPROVAL OF PROPOSED DISCLOSURE STATEMENT**
**FOR JOINT CHAPTER 11 PLAN OF LIGADO NETWORKS LLC**
**AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION**

**TO ALL PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE THAT** on March 21, 2025, Ligado Networks LLC and certain of its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), filed the *Joint Chapter 11 Plan of Reorganization of Ligado Networks LLC and Its Affiliated Debtors and Debtors in Possession*, [Docket No. 348] (as may be amended, modified, or supplemented, the "Proposed Plan")[2] and the proposed *Disclosure Statement for Joint Chapter 11 Plan of Reorganization of Ligado Networks LLC and Its Affiliated Debtors and Debtors in Possession* [Docket No. 349] (as may be amended, modified, or supplemented, the "Proposed Disclosure Statement").

**PLEASE TAKE FURTHER NOTICE THAT:**

1. A hearing (the "Hearing") will be held before the Honorable Thomas M. Horan, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), 824 North Market Street, 3rd Floor, Courtroom 7, Wilmington, Delaware 19801, on **April 28, 2025 at 2:00 p.m. (prevailing Eastern Time)**, to

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Proposed Disclosure Statement or the Proposed Plan, applicable.

#4914-8593-8464v8#**4926-4042-0658v2**

consider entry of an order determining, among other things, that the Proposed Disclosure Statement contains "adequate information" within the meaning ascribed to such term in section 1125 of the Bankruptcy Code and approving the Proposed Disclosure Statement.

2. Any party in interest wishing to obtain a copy of the Proposed Disclosure Statement and the Proposed Plan should contact Omni, the Debtors' voting and tabulation agent, Omni, by (i) writing: Ligado Networks, LLC Ballot Processing c/o Omni Agent Solutions, Inc. 5955 De Soto Ave., Suite 100 Woodland Hills, CA 91367, (ii) by email at LigadoInquiries@OmniAgnt.com, or (iii) at the following telephone numbers: (866) 956-2139 (domestic toll-free) or (747) 288-6357 (international). Interested parties may also review the Proposed Disclosure Statement and the Proposed Plan free of charge at https://omniagentsolutions.com/Ligado. In addition, the Proposed Disclosure Statement and Proposed Plan are on file with the Bankruptcy Court and may be reviewed by accessing the Bankruptcy Court's website: www.deb.uscourts.gov. Note that a PACER password and login are needed to access documents on the Bankruptcy Court's website. A PACER password can be obtained at: www.pacer.psc.uscourts.gov. Copies of the Proposed Disclosure Statement and Proposed Plan may also be examined by interested parties during normal business hours at the office of the Clerk of the Bankruptcy Court.

3. Objections, if any, to approval of the Proposed Disclosure Statement must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Bankruptcy Rules; (iii) set forth the name of the objecting party and the nature and amount of Claims or Interests held or asserted by such party against the Debtors' estates or property; (iv) provide the basis for objection and specific grounds thereof, and provide proposed language that, if accepted and incorporated by the Debtors, would obviate such objection; and (v) be filed, together with proof of service, with the Bankruptcy Court and served so that they are **actually received** by the following parties no later than **April 18, 2025 at 4:00 p.m. (prevailing Eastern Time)**:

| **Debtors** | **Office of the U.S. Trustee** |
|---|---|
| Ligado Networks LLC | Office of the U.S. Trustee for |
| 10802 Parkridge Boulevard | the District of Delaware |
| Reston, VA 20191 | 844 King Street |
| Attn: Vicky McPherson | Suite 2207, Lockbox 35 |
| Email: vicky@ligado.com | Wilmington, Delaware 19801 |
| | Attn: Benjamin Hackman, Esq. |
| | Email: Benjamin.a.hackman@usdoj.gov |
| | |
| **Counsel to the Debtors** | **Co-Counsel to the Debtors** |
| Milbank LLP | Richards, Layton, & Finger, P.A. |
| 55 Hudson Yards | One Rodney Square |
| New York, New York 10001 | 920 North King Street |
| Attn: Dennis F. Dunne | Wilmington, Delaware 19801 |
| Matthew L. Brod | Attn: Mark D. Collins |
| Lauren C. Doyle | Michael J. Merchant |
| Telephone:   (212) 530-5000 | Amanda R. Steele |
| Facsimile:   (212) 530-5219 | Telephone: (302) 651-7700 |
| Email: ddune@milbank.com | Facsimile:   (302) 651-7701 |
| mbrod@milbank.com | Email: collins@rlf.com |
| ldoyle@milbank.com | merchant@rlf.com |

**Counsel to the Ad Hoc Crossholder Group**
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Attn: Brian Schartz, P.C.
Derek I. Hunter
Email: brian.schartz@kirkland.com
derek.hunter@kirkland.com

-and-

Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
Attn: Patrick J. Nash, Jr., P.C.
Alan McCormick
Email: patrick.nash@kirkland.com
alan.mccormick@kirkland.com

steele@rlf.com
**Counsel to the Ad Hoc First Lien Group**
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
Attn: Jason L. Hufendick
Dennis Twomey
Email: jhufendick@sidley.com
dtwomey@sidley.com

**4. IF AN OBJECTION TO THE PROPOSED DISCLOSURE STATEMENT IS NOT FILED AND SERVED STRICTLY AS PRESCRIBED HEREIN, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE PROPOSED DISCLOSURE STATEMENT OR THE ADEQUACY THEREOF AND MAY NOT BE HEARD AT THE HEARING.**

**5.** The Hearing may be adjourned from time to time without further notice to parties in interest other than by an announcement in Bankruptcy Court of such adjournment on the date scheduled for the Hearing or as indicated in any notice of agenda of matters scheduled for hearing filed by the Debtors with the Bankruptcy Court. The Debtors may modify the Proposed Disclosure Statement, if necessary, prior to, during, or as a result of the Hearing without further notice.

**Additional Information**

Interested parties may also review the Disclosure Statement and the Plan free of charge at https://omniagentsolutions.com/Ligado or by scanning the QR code below.

(Del)



| | |
|---|---|
| Dated _____, 2025 | /s/ DRAFT |
| Wilmington, Delaware | Mark D. Collins, Esq. (Bar No. 2981) |
| | Michael J. Merchant, Esq. (Bar No. 3854) |
| | Amanda R. Steele, Esq. (Bar No. 5530) |
| | Emily R. Mathews, Esq. (Bar No. 6866) |
| | **RICHARDS, LAYTON & FINGER, P.A.** |
| | One Rodney Square |
| | 920 North King Street |
| | Wilmington, DE 19801 |
| | Telephone:     (302) 651-7700 |
| | Facsimile:     (302) 651-7701 |
| | Email:        collins@rlf.com |
| | merchant@rlf.com |
| | steele@rlf.com |
| | mathews@rlf.com |

-and-

Dennis F. Dunne, Esq. (admitted *pro hac vice*)
Matthew L. Brod, Esq. (admitted *pro hac vice*)
Lauren C. Doyle, Esq. (admitted *pro hac vice*)
**MILBANK LLP**
55 Hudson Yards
New York, New York 10001
Telephone:     (212) 530-5000
Facsimile:     (212) 530-5219
Email:        ddunne@milbank.com
mbrod@milbank.com
ldoyle@milbank.com

Andrew M. Leblanc, Esq. (admitted *pro hac vice*)
**MILBANK LLP**
1850 K Street, NW, Suite 1100
Washington DC 20006
Telephone:     (202) 835-7500
Facsimile:     (202) 263-7586
Email:        aleblanc@milbank.com

*Co-Counsel for Debtors in Possession*