**<u>EXHIBIT 2</u>**

**Forms of Ballots**

**Exhibit 2.A**

**Class 3 Master Ballot (Notes)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIGADO NETWORKS LLC *et al.*,[1] | ) | Case No. 25-10006 (TMH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | |

## MASTER BALLOT FOR CLASS 3 CLAIMS (FIRST LIEN NOTES CLAIMS)

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY *BEFORE* COMPLETING THIS MASTER BALLOT.**

**IN ORDER FOR THE VOTES OF YOUR BENEFICIAL HOLDERS TO BE COUNTED FOR PURPOSES OF ACCEPTING OR REJECTING THE PLAN, THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY [JULY 10], 2025, AT 4:00 P.M., PREVAILING EASTERN TIME (THE "VOTING DEADLINE")**

---

The above-captioned debtors (the "Debtors") are soliciting votes on the *Joint Chapter 11 Plan of Ligado Networks LLC and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan") described in (and attached to) the *Disclosure Statement for Joint Chapter 11 Plan of Ligado Networks LLC, and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement").[2]

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or Disclosure Statement, as applicable.

You are receiving this master ballot (the "Master Ballot") because our records indicate that, as of **[June 6]**, 2025 (the "Voting Record Date"), you are a custodian, broker, dealer, commercial bank, trust company, a proxy holder or other agent or nominee (a "Nominee") for one or more beneficial holder (the "Beneficial Holders") of the notes identified in **Exhibit 1** attached hereto (the "First Lien Notes").  If you believe you have received this Master Ballot in error, please contact Omni Agent Solutions, Inc., the Debtors' solicitation agent (in such capacity, the "Solicitation Agent") immediately, at the address, telephone number, or email address set forth below.

You should use the Master Ballot to transmit votes of your Beneficial Holders to accept or reject the Plan and their elections to opt out of Third-Party Release set forth in Article VIII.D.2 of the Plan and in the Beneficial Holder Ballot.

You should have received a sufficient number of solicitation packages containing the Plan, the Disclosure Statement, and sufficient number of Class 3 Ballots customized for your Beneficial Holders (the "Beneficial Holder Ballots") for you to transmit to each of your Beneficial Holders. If you need to obtain additional Beneficial Holder Ballots or other solicitation materials, you may do so by: (a) accessing the Debtors' case website at https://omniagentsolutions.com/Ligado-Ballots; (b) writing to the Solicitation Agent at (i) LigadoInquiries@OmniAgnt.com, or (ii) Ligado Networks, LLC Ballot Processing, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367 or (c) calling (866) 956-2139 (toll-free) or (747) 288-6375 (international).

The Bankruptcy Court may confirm the Plan and thereby bind all of your Beneficial Holders whether or not they have voted. To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Plan, you must either (i) complete and return this Master Ballot so that the Solicitation Agent actually receives it on or before the Voting Deadline, which is **[July 10], 2025, at 4:00 p.m. (Eastern Time)** or (ii) "pre-validate" the Beneficial Holder Ballots before you distribute them to your Beneficial Holders with instructions to return them to the Solicitation Agent on or before the Voting Deadline.

Please complete and execute this Master Ballot and return it to the Solicitation Agent either:

    i.    in the return envelope provided or by submitting it by overnight courier or hand delivery to the following address, so as it is actually received by the Voting Deadline:

<div align="center">

Ligado Networks, LLC Ballot Processing
c/o Omni Agent Solutions, Inc.
5955 De Soto Ave., Suite 100
Woodland Hills, CA 91367

</div>

    ii.    by email to LigadoBallots@OmniAgnt.com; or

    iii.    by electronic, online transmission via the Solicitation Agent's online portal (the "E-Ballot Portal"), by visiting https://omniagentsolutions.com/Ligado-Ballots.  Click on the "Balloting"

section of the website and follow the instructions to transmit this Master Ballot.

**Item 1. Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐ is a custodian, broker, dealer, bank, or other Nominee for the Beneficial Holders of the Class 3 Claims listed in Item 2 below and is the record holder of the underlying First Lien Notes;

☐ is acting under a power of attorney and/or agency agreement (a copy of which will be provided upon request) granted by a Nominee that is the registered holder of the First Lien Notes underlying the Class 3 Claims listed in Item 2 below; or

☐ has been granted a proxy (an original of which is attached hereto) from a Nominee or a Beneficial Holder that is the registered holder of the First Lien Notes underlying the Class 3 Claims listed in Item 2 below and, accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holders of the First Lien Notes underlying the Class 3 Claims described in Item 2 below.

**Item 2. Votes on the Plan and Elections Regarding Third-Party Release.**

The undersigned transmits the following: (i) votes of its Beneficial Holders; and (ii) elections of its Beneficial Holders with respect to the Third-Party Release. The undersigned certifies that the following Beneficial Holders of Class 3 Claims, as identified by their respective customer account numbers set forth below, are Beneficial Holders of the First Lien Notes underlying their Class 3 Claims as of the Voting Record Date and have delivered to the undersigned, as their Nominee, properly executed Beneficial Holder Ballots (i) casting the following votes; and/or (ii) opting-out of the Third-Party Release.

Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table (use additional sheets in the format below as necessary). Please note that each Beneficial Holder must vote all its Class 3 Claims to accept or reject the Plan and may not split its vote. **Any Beneficial Holder Ballot that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan should not be counted.**

| Your Customer Account Number for Each Beneficial Holder of First Lien Notes Claims | Principal Amount of First Lien Notes Held as of the Voting Record Date | Indicate the vote cast on the Beneficial Holder Ballot by placing an "X" in the appropriate column below. | | | Item 3 If the box in Item 3 of the Beneficial Holder Ballot was checked, place an "X" below. |
|---|---|---|---|---|---|
| | | Accept the Plan | or | Reject the Plan | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| **TOTAL:** | $ | | | | |

**Please indicate on **Exhibit 1** hereto the CUSIP / ISIN for the First Lien Notes underlying Class 3 Claims voted above.**

**Item 3.** Certification as to Transcription of Information from Item 4 of the Beneficial Holder Ballots as to Class 3 Claims Voted Through Other Beneficial Holder Ballots.

The undersigned certifies that it has transcribed in the following table the information, if any, provided by its Beneficial Holders in Item 4 of their respective Beneficial Holder Ballots, identifying any Class 3 Claims for which such Beneficial Holders have submitted Beneficial Holder Ballots other than to the undersigned:

| Your Customer Account Number for Each Beneficial Holder Who Completed Item 4 of the Beneficial Holder Ballots | TRANSCRIBE FROM ITEM 4 OF THE BALLOTS: | | | |
| --- | --- | --- | --- | --- |
| | Name of Other Nominee through which the Beneficial Holder Held and Voted Other Class 3 Claims | The Beneficial Holder's Account Number at Other Nominee(s) | Principal Amount of Other Class 3 Claims the Beneficial Holder Voted through Other Nominee(s) | CUSIP of Other Class 3 Claims Voted through Other Nominee(s) |
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |

**Item 4.** Certification.

By signing this Master Ballot, the undersigned certifies that:

1.      it has delivered all solicitation materials, including the Plan, Disclosure Statement and a Beneficial Holder Ballot to each Beneficial Holder listed in Item 2 of this Master Ballot;

2.      it has received a properly completed and signed Beneficial Holder Ballot (or other form of transmission in accordance with its customary procedures) from each Beneficial Holder listed in Item 2 of this Master Ballot;

3.      it is the registered holder of the First Lien Notes underlying Class 3 Claims being voted or it has been authorized by each Beneficial Holder of Class 3 Claims listed in Item 2 of this Master Ballot to vote on the Plan;

4.      it has been authorized by each Beneficial Holder listed in Item 2 of this Master Ballot to submit this Master Ballot;

5.      it has properly disclosed: (a) the number of Beneficial Holders who submitted to it properly completed Beneficial Holder Ballots; (b) the amount of Class 3 Claims voted by each such Beneficial Holder; (c) each such Beneficial Holder's vote on the Plan; (d) each such Beneficial Holder's election concerning the Third-Party Release; (e) each such Beneficial Holder's certification as to other Class 3 Claims voted; and (f) the customer account or other identification number for each such Beneficial Holder;

6.      each Beneficial Holder listed in Item 2 of this Master Ballot has certified to the undersigned in Item 5 of the Beneficial Holder Ballot that it is eligible to vote on the Plan and make an election with respect to the Third-Party Release; and

7.      it will either forward to the Solicitation Agent all Beneficial Holder Ballots returned by the Beneficial Holders listed in Item 2 of this Master Ballot (whether properly completed or defective) or retain such Beneficial Holder Ballots for at least one (1) year from the Voting Deadline and disclose all information contained in such Beneficial Holder Ballots to the Bankruptcy Court, the Debtors, or the Reorganized Debtors, as the case may be, if requested.

Name of Nominee: _____
                    (*Print or type*)

Name of Proxy Holder or Agent for Nominee (if applicable): _____
                                            (*Print or type*)

DTC Participant Number: _____

Signature: _____

Name of Signatory: _____
                    (*Print or type*)

Title: _____

Address: _____

_____

_____

Date Completed: _____

Email Address: _____

Phone Number: _____

8

**PLEASE COMPLETE AND EXECUTE THIS MASTER BALLOT AND RETURN IT TO THE SOLICITATION AGENT EITHER:**

i. **IN THE RETURN ENVELOPE PROVIDED OR BY SUBMITTING IT BY OVERNIGHT COURIER OR HAND DELIVERY TO THE FOLLOWING ADDRESS, SO AS IT IS ACTUALLY RECEIVED BY THE VOTING DEADLINE:**

**LIGADO NETWORKS, LLC BALLOT PROCESSING
C/O OMNI AGENT SOLUTIONS, INC.
5955 DE SOTO AVE., SUITE 100
WOODLAND HILLS, CA 91367**

ii. **BY EMAIL TO LIGADOBALLOTS@OMNIAGNT.COM; OR**

iii. **BY ELECTRONIC, ONLINE TRANSMISSION VIA THE SOLICITATION AGENT'S ONLINE PORTAL THE E-BALLOT PORTAL, BY VISITING HTTPS://OMNIAGENTSOLUTIONS.COM/LIGADO-BALLOTS. CLICK ON THE "BALLOTING" SECTION OF THE WEBSITE AND FOLLOW THE INSTRUCTIONS TO TRANSMIT THIS MASTER BALLOT.**

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT AT (866) 956-2139 (U.S. TOLL FREE), OR (747) 288-6375 (INTERNATIONAL), OR LIGADOINQUIRIES@OMNIAGNT.COM.**

**THE MASTER BALLOT SHOULD NOT BE SENT TO THE DEBTORS, THE BANKRUPTCY COURT, OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS.**

**THIS MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE, WHICH IS 4:00 P.M. EASTERN TIME, ON [JULY 10], 2025.**

## **INSTRUCTIONS FOR COMPLETING THIS MASTER BALLOT**

1. The Debtors are soliciting votes of the holders of the First Lien Notes Claims (Class 3 Claims) on the Plan attached as **Exhibit A** to the Disclosure Statement.

2. You should immediately (and in no event later than three (3) business days after receipt) distribute the solicitation materials, including Beneficial Holder Ballots, to the Beneficial Holders of the First Lien Notes for whom you are acting as Nominee and take any action required to enable each such Beneficial Holders to timely vote the Class 3 Claims that it holds through you before the Voting Deadline, which is **4:00 p.m. Eastern Time, on [July 10], 2025**.

3. You may distribute the solicitation materials to your Beneficial Holders and collect their votes to accept or reject the Plan in accordance with your customary practices, including the use of "pre-validated" Beneficial Holder Ballots and "voting instruction forms" in lieu of (or in addition to) Beneficial Holder Ballots, through online voting, by phone, facsimile, or other electronic means.

4. If you are transmitting the votes of any Beneficial Holder other than yourself, you may either:

  i. "Pre-validate" each individual Beneficial Holder Ballot by signing the Beneficial Holder Ballot and including your DTC participant number, indicating the account number of the applicable Beneficial Holder and the principal amount of the First Lien Notes held by you for such Beneficial Holder. Forward the pre-validated Beneficial Holder Ballot, together with the rest of the solicitation package, to each of your Beneficial Holders with the instructions that each such Beneficial Holder must (i) complete the remaining information requested on the Beneficial Holder Ballot, including its voting and opt-out decision, within five (5) Business Days after the Beneficial Holder's receipt of the solicitation package, and (ii) return its Beneficial Holder Ballot directly to the Solicitation Agent in the return envelope to be provided in the solicitation package, such that it is received by the Solicitation Agent on or before the Voting Deadline; **or**

  ii. Forward a solicitation package to each of your Beneficial Holders along with the instruction to each Beneficial Holder to (i) fill in all Items on the Beneficial Holder Ballot and (ii) return its completed and executed Beneficial Holder Ballot to you in a return envelope provided by and addressed to you. In such case, you will reflect the votes and elections of your Beneficial Holders on this Master Ballot in accordance with these instructions and return the Master Ballot to the Solicitation Agent on or before the Voting Deadline. You should advise the Beneficial Holders to return their Beneficial Holder Ballots (or otherwise transmit their votes) to you by a date calculated to allow you to prepare and return the Master Ballot to the Solicitation Agent so that it is actually received by the Solicitation Agent on or before the Voting Deadline.

5.   You should maintain copies of the Beneficial Ballots or a list of the Beneficial Holders for whom you "pre-validated" their Beneficial Holder Ballot for inspection for at least one (1) year after the Effective Date.

6.   With regard to each Beneficial Holder Ballot returned to you by your Beneficial Holders, you must: (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the customer name or account number assigned by you to such Beneficial Holder; (b) execute the Master Ballot; (c) transmit the Master Ballot to the Solicitation Agent such that it is received on or before the Voting Deadline; and (d) retain such Beneficial Holder Ballots, whether in hard copy or by electronic direction, in your files for a period of one (1) year after the Effective Date.  You may be ordered to produce the Beneficial Ballots to the Debtors or the Bankruptcy Court.

7.   You should not count the votes transmitted by a Beneficial Holder Ballot that: (a) is illegible or contains insufficient information to permit the identification of the Beneficial Holder; (b) are cast by a party that does not hold a Class 3 Claim; (c) is unsigned; (d) is not marked to accept or reject the Plan; and (e) is submitted by a party not entitled to cast a vote in Class 3.

8.   If your Master Ballot is received **after** the Voting Deadline and if the Voting Deadline is not extended, the votes transmitted thereby may be counted only at the discretion of the Debtors.  Additionally, **votes transmitted by the following Master Ballots will not be counted**:

   i.   any Master Ballot to the extent it is illegible or contains insufficient information to permit the identification of the relevant Beneficial Holders;

   ii.  any Master Ballot sent by facsimile or any electronic means other than via email at: LigadoBallots@OmniAgnt.com;[3]

   iii. any Master Ballot that does not contain an original signature; and

   iv.  any Master Ballot submitted by any party that is not a registered holder of the First Lien Notes underlying the Class 3 Claims identified in Item 1 of the Beneficial Holder Ballot.

9.   The method of delivery of the Master Ballot to the Solicitation Agent is at your election and risk.  Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **actually receives** the executed Master Ballot.  In all cases, you should allow sufficient time to assure timely delivery.

10.  If multiple Master Ballots received prior to the Voting Deadline reflect votes with respect to the same Class 3 Claims, the latest, timely received and properly completed Master Ballot will supersede and revoke any earlier received Master Ballots.

---

[3] Note, *only* Master Ballots may be transmitted by email.  All other Ballots submitted by email **will not** be counted.

11.    If a Beneficial Holder simultaneously casts inconsistent Beneficial Holder Ballots with respect to the same Claim, such Beneficial Holder Ballots should not be counted.

12.    **Please be sure to sign and date the Master Ballot**.  You should indicate that you are signing the Master Ballot in your capacity as a Nominee and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, submit proper evidence to the requesting party to so act on behalf of your Beneficial Holders.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

13.    The following Master Ballots will not be counted in determining the acceptance or rejection of the Plan: (a) any Master Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holders of the votes being transmitted; (b) any Master Ballot cast by a party that is not entitled to vote on the Plan; and (c) any unsigned Master Ballot.

14.    The following additional rules apply to Master Ballots:

i.    votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such Nominee in the First Lien Notes as of the Voting Record Date, as evidenced by the record and depository listings.

ii.    votes submitted by Beneficial Holders, whether through a Master Ballot or pre-validated Beneficial Holder Ballots, will not be counted in excess of the record amount of the First Lien Notes held by the applicable Nominee;

iii.    to the extent that conflicting votes or "over-votes" are submitted, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, the Solicitation Agent will attempt to reconcile discrepancies with the Nominee;

iv.    to the extent that over-votes on a Master Ballot or pre-validated Beneficial Holder Ballots are not reconcilable prior to the preparation of the voting certification, the Solicitation Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Beneficial Ballots that contained the over-vote, but only to the extent of the Nominee's position in the First Lien Notes; and

v.    for purposes of tabulating votes, each Beneficial Holder holding through a particular account will be deemed to have voted the principal amount of its First Lien Notes in that particular account, although the Solicitation Agent may be asked to adjust such principal amount.

**PLEASE SUBMIT YOUR MASTER BALLOT PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE SOLICITATION AGENT AT (866) 956-2139 (DOMESTIC TOLL-FREE) OR +(747) 288-6375 (INTERNATIONAL)**

**NOTHING CONTAINED IN THESE INSTRUCTIONS OR IN THE ENCLOSED DOCUMENTS WILL RENDER YOU OR ANY OTHER ENTITY THE AGENT OF THE DEBTORS OR THE SOLICITATION AGENT OR AUTHORIZE YOU OR ANY OTHER ENTITY TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF ANY OF THE DEBTORS WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE DOCUMENTS ENCLOSED HEREWITH.**

**<u>Exhibit 1</u>**

**Please indicate below the CUSIP/ISIN to which this Master Ballot pertains.**

| | | |
|---|---|---|
| ☐ | 15.500% PIK Senior Secured First Lien Notes due 2023 | 144A CUSIP: 53225H AA8<br>144A ISIN: US53225HAA86 |
| ☐ | 15.500% PIK Senior Secured First Lien Notes due 2023 | REG S CUSIP: U5364H AA6<br>REG S ISIN: USU5364HAA69 |

## **Exhibit 2.B**

**Class 3 Beneficial Holder Ballot (Notes)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LIGADO NETWORKS LLC *et al.*,[1] | ) Case No. 25-10006 (TMH) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |

**BENEFICIAL BALLOT FOR VOTING TO ACCEPT**
**OR REJECT THE CHAPTER 11 PLAN OF LIGADO NETWORKS LLC ET AL.**

**CLASS 3 (FIRST LIEN NOTES CLAIMS)**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED IN ACCORDANCE WITH THE INSTRUCTIONS BELOW SO AS TO BE ACTUALLY RECEIVED BY THE DEBTORS' SOLICITATION AGENT BY [JULY 24], 2025, AT 4:00 P.M. (ET) (THE "VOTING DEADLINE").**

---

The above-captioned debtors (the "Debtors") are soliciting votes on the *Joint Chapter 11 Plan of Ligado Networks LLC and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan") described in (and attached to) the *Disclosure Statement for Joint Chapter 11 Plan of Ligado Networks LLC, and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement").[2] You are receiving this ballot (the "Beneficial Holder Ballot") because your broker, bank, or other nominee, or the agent of your broker, bank, or other nominee (each of the foregoing, a "Nominee") has identified you as a beneficial holder (a "Beneficial Holder") of the notes

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or Disclosure Statement, as applicable.

identified in **Exhibit 1** attached hereto (the "<u>First Lien Notes</u>") as of **[**June 20**]**, 2025 (the "<u>Voting Record Date</u>") and, accordingly, you hold a Class 3 Claim under the Plan and have the right to vote to accept or reject the Plan.

Nominees are authorized to collect votes to accept or reject the Plan from their Beneficial Holders in accordance with their customary practice, including the use of a "voting instruction form" in lieu of (or in addition to) this Beneficial Ballot or through online voting, by phone, facsimile, or other electronic means. Alternatively, your Nominee may choose to "pre-validate" your Beneficial Holder Ballot by signing the Beneficial Holder Ballot and adding the Nominee's DTC participant number, the Beneficial Holder's account number, and the principal amount of your Class 3 Claim as of the Voting Record Date. As part of the pre-validation process, your Nominee will instruct you to submit your Beneficial Holder Ballot directly to the Solicitation Agent on or before the Voting Deadline.

This Beneficial Holder Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan, making the election to opt out of the releases described below, if applicable, and making certain certifications. If you believe you have received this Beneficial Holder Ballot in error, please ***immediately*** contact Omni Agent Solutions, Inc., the proposed solicitation agent (the "<u>Solicitation Agent</u>"), at the address, telephone number, or email address set forth below.

Your rights are described in the Plan and the Disclosure Statement, both of which you should have received with this Beneficial Holder Ballot. If you have not received such documents or have questions regarding the submission of your vote on the Plan and/or deadline to do so, please contact: (i) if you are both the Beneficial Holder and the registered holder of the First Lien Notes, the Solicitation Agent; or (ii) if you are not the registered holder, your Nominee. You may contact the Solicitation Agent by: (i) emailing <u>LigadoInquiries@OmniAgnt.com</u> with a reference to "Ligado" in the subject line, or (ii) at the following telephone numbers: (866) 956-2139 (domestic toll free) or (747) 288-6357 (international).

The Plan may be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims that actually vote on the Plan in at least one Class of Claims entitled to vote on the Plan (not including the votes of any insiders) and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on each holder of Class 3 Claims regardless of whether or not such holder voted or voted against the Plan. Please review the Disclosure Statement for more information.

To have your vote count as either an acceptance or rejection of the Plan, you must complete and sign this Beneficial Ballot and return it: (i) if you are the registered holder, directly to the Solicitation Agent on or before **[July 24], 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Voting Deadline</u>") using the enclosed self-addressed, postage paid envelope; or (ii) if you are not the registered holder, in accordance with your Nominee's instructions, either (a) to your Nominee as promptly as possible and in sufficient time to allow your Nominee to submit a master ballot (a "<u>Master Ballot</u>") reflecting your vote to the Solicitation Agent before the Voting Deadline, or (b) if

your Nominee provided you with a pre-validated Beneficial Holder Ballot, directly to the Solicitation Agent on or before the Voting Deadline.

**You should review the Disclosure Statement, the Plan, and the instructions contained in this Beneficial Ballot before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Class 3 Claim. This Ballot pertains solely to your Class 3 Claim. If you hold Claims or Interests in more than one Class that is entitled to vote on the Plan, you will receive a ballot for each such Class.**

**Your vote on this Beneficial Holder Ballot shall be applied to each Debtor against whom you have an allowed Class 3 Claim.**

<u>Item 1.</u> **Principal Amount of Class 3 Claim.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Beneficial Holder of the First Lien Notes identified on <u>**Exhibit 1**</u> in the following principal amount (insert amount in box below). If you do not know the principal amount of your First Lien Notes as of the Voting Record Date, please contact your Nominee for this information:

| |
|---|
| Principal Amount of Claim[3]: |
| |
| $_____ |

> \*\***<u>Exhibit 1</u>** hereto lists the CUSIP number for the First Lien Notes underlying your Class 3 Claim. You should confirm the CUSIP number provided in **<u>Exhibit 1</u>** matches your First Lien Notes.\*\*

<u>Item 2.</u> **Vote on Plan.**

The holder of the Class 3 Claim set forth in Item 1 votes to (please check one):

| ☐ **<u>ACCEPT</u>** (vote FOR) the Plan | ☐ **<u>REJECT</u>** (vote AGAINST) the Plan |
|---|---|

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**Any Beneficial Ballot that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan, will not be counted.**

<u>Item 3.</u> **Release.**

**WHETHER YOU VOTE TO ACCEPT OR REJECT THE PLAN OR ABSTAIN FROM VOTING ALTOGETHER, UNLESS YOU CHECK THE "OPT OUT" BOX IN ITEM 3 AND**

---

[3] For voting purposes only. Subject to tabulation rules.

**TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASE OF THE RELEASED PARTIES SET FORTH IN ARTICLE VIII.D.2 OF THE PLAN COPIED BELOW (THE "<u>THIRD-PARTY RELEASE</u>").**

**Article VIII of the Plan contains the following provisions:**

A.     *Compromise and Settlement*

The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their Estates, and all holders of Claims or Interests, (2) fair, equitable, and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to applicable bankruptcy law.  In addition, the allowance, classification, and treatment of any Allowed Claims of a Released Party take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist between the Debtors and any Released Party and, as of the Effective Date, any and all such Causes of Action are settled, compromised, and released as set forth in the Plan.  The Confirmation Order shall authorize and approve the releases by all Entities of all such contractual, legal, and equitable subordination rights and Causes of Action that are satisfied, compromised, and settled pursuant hereto.  Nothing in the Plan shall compromise or settle, in any way whatsoever, any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have against any Entity that is not a Released Party.

In accordance with the provisions of the Plan, and pursuant to Bankruptcy Rule 9019, without any further notice to, or action, order, or approval of, the Bankruptcy Court or the Canadian Court, after the Effective Date, the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle (1) Claims (including Causes of Action) against and Interests in the Debtors not previously Allowed (if any) and (2) claims (including Causes of Action) against other Entities.

B.     *Discharge of Claims and Termination of Interests*

Except as otherwise provided in the Plan, effective as of the Effective Date: (1) the distributions, rights, and treatment that are provided in the Plan for all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, whether known or unknown, against or in the Debtors or any of their assets, property, or Estates, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date and any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date; (2) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (3) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code; and (4) all entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and

properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date. Notwithstanding the foregoing, all Existing Common Units shall remain in full force and effect and shall be governed by the terms of the applicable New Organizational Documents, including the Second Amended and Restated Operating Agreement. The Confirmation Order shall be a judicial determination, subject to the Effective Date occurring, of the discharge of all Claims and Interests except as otherwise expressly provided in the Plan.

C.    *Release of Liens*

Except as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit First Lien Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and the effectiveness of the Exit First Lien Facility Documents, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall automatically revert to the Reorganized Debtors and each of their successors and assigns, and the Agents/Trustees and the DIP Agent shall be authorized to release any such mortgages, deeds of trust, Liens, pledges, or other security interests held by such holder and to take such actions as may be requested by the Reorganized Debtors to evidence the release of such mortgages, deeds of trust, Liens, pledges, or other security interests, including the execution, delivery, and filing or recording of any related releases or discharges as may be requested by the Reorganized Debtors or may be required in order to effectuate the foregoing.

D.    *Releases of Released Parties*

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to applicable bankruptcy law, of the releases described in this Article VIII.D and shall constitute the Bankruptcy Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by this Article VIII.D; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Entity (including the Debtors) asserting any claim or Cause of Action released pursuant to this Article VIII.D.

1.    **Releases by the Debtors**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of each Debtor, each Reorganized Debtors, and

each Estate, in each case, on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action, whether prepetition or postpetition, derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws, or otherwise that the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, (ii) any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have in connection with the Ligado Takings Case, (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit First Lien Facility Documents, or any Claim or obligation arising under the Plan and (iv) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct.

2.      **Releases by Holders of Claims or Interests**

As of the Effective Date, except for (i) the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring, (ii) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct, or (iii) the rights provided or reserved for under the AST Definitive Agreements Order, or (iv) as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing

Parties, in each case, from any and all Claims and Causes of Action whatsoever, whether prepetition or postpetition (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates, the Chapter 11 Cases the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors (including any of the Debtors' predecessors) or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors (including any of the Debtors' predecessors) and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.

Entry of the Confirmation Order shall, subject to the occurrence of the Effective Date, constitute the Bankruptcy Court's approval of the releases contained in the Plan and a finding that each release described is (i) in exchange for the good and valuable consideration provided by the Released Parties, including without limitation, the Released Parties' contributions to implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the holders of Claims and Interests, (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a sound exercise of the Debtors' business judgment.

Nothing in this Plan prohibits, precludes, or enjoins any Governmental Unit from asserting or filing a proof of Claim on or before the Governmental Bar Date.[4]

---

[4] "Governmental Bar Date" shall have the meaning set forth in the *Order Establishing (I) Various Bar Dates for Filing Proofs of Claim, (II) Approving the Form and Manner of Filing Proofs of Claim, (III) Approving Notices of Bar Dates, and (IV) Granting Related Relief* [Docket No. 340].

E.    *Exculpation*

**To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action based on any act or omission occurring from the Petition Date through the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the Restructuring Support Agreement, the Restructuring, the DIP Facility, the DIP Orders, the DIP Documents, any Canadian Court Recognition Order, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes gross negligence, intentional fraud or willful misconduct as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code and have participated in good faith with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

F.    *Injunction*

**Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests or Causes of Action or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (4) asserting any right of setoff, subrogation, or recoupment**

of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities released or settled pursuant to the Plan.

\*\*\*

UNDER THE PLAN, "RELEASING PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH, (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (VII) WITH RESPECT TO EACH OF THE FOREGOING PERSONS IN CLAUSES (I) THROUGH (VIII), SUCH PERSONS' PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES (INCLUDING AFFILIATES OF ANY PREDECESSORS), CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS (INCLUDING EQUITY HOLDERS OF ANY PREDECESSORS), MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES, (VIII) THE HOLDERS OF ALL CLAIMS OR INTERESTS WHOSE VOTE TO ACCEPT OR REJECT THE PLAN IS SOLICITED BUT DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE VIIID.2, AND (IX) THE HOLDERS OF ALL CLAIMS AND INTERESTS WHO WERE GIVEN NOTICE OF THE OPPORTUNITY AND SERVED WITH A PROVIDED FORM TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE VIIID.2 BUT DID NOT TIMELY OPT OUT.

UNDER THE PLAN, "RELEASED PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH,  (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) EACH OF THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (IX) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (I) THROUGH (VIII), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES, CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS, MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE

**HEIRS, EXECUTORS, ESTATES, AND NOMINEES; PROVIDED, HOWEVER, THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) FILES AN OBJECTION TO THE PLAN OR (Y) OPTS OUT OF THE RELEASES SET FORTH IN <u>ARTICLE VIIID.2</u>, AS APPLICABLE, SHALL NOT BE A "RELEASED PARTY."**

**IF YOU DO NOT CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE THIRD-PARTY RELEASE SET FORTH ABOVE.**

**IF YOU DO NOT CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES OF THE RELEASED PARTIES SET FORTH ABOVE.**

**UNLESS YOU CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, BY ACCEPTING DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT OF YOUR ALLOWED CLAIM OR INTEREST YOU WILL BE DEEMED TO HAVE AFFIRMATIVELY CONSENTED TO BE BOUND BY THE TERMS OF THE PLAN, INCLUDING, WITHOUT LIMITATION, THE RELEASES AND INJUNCTIONS SET FORTH ABOVE.**

**The holder (or authorized signatory of each holder) of the Class 3 Claim identified in Item 1 elects to:**

> ☐   **Opt out of the Third-Party Release contained in Article VIII.D.2 of the Plan.**

**Item 4.** **Certification with Respect to Class 3 Claims Held in Additional Accounts.**

By completing and returning this Beneficial Holder Ballot, the Beneficial Holder of the Class 3 Claim identified in Item 1 certifies that: (a) this Beneficial Holder Ballot is the only Beneficial Ballot submitted for the Class 3 Claims identified in Item 1, except as identified in the following table, and (b) *all* Beneficial Holder Ballots for Class 3 Claims submitted by the Beneficial Holder indicate the same vote to accept or reject the Plan that the Beneficial Holder has indicated in Item 2 of this Beneficial Holder Ballot. **If you hold Class 3 Claims through more than one Nominee, you must identify all Class 3 Claims held through each such Nominee in the following table and must vote all such Claims to either accept or reject the Plan on all Beneficial Holder Ballots you submit.**

ONLY COMPLETE ITEM 4 IF YOU HAVE SUBMITTED OTHER BENEFICIAL BALLOTS ON ACCOUNT OF CLASS 3 FIRST LIEN NOTES CLAIMS

| Name of Nominee Through Which You Hold and Vote Other Class 3 Claims[5] | Account Number with Such Other Nominee | Principal Amount of Other Class 3 Claims Voted Through Other Nominee | CUSIP of Other Class 3 Claims Voted |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

---

[5]   Insert your name if the Class 3 Claims are held by you in your own name or, if held in street name through a Nominee, insert the name of your Nominee.

**Item 5.** **Certifications.**

By signing this Beneficial Holder Ballot, the undersigned certifies that:

1.    as of the Voting Record Date, either: (a) it is the Beneficial Holder of the Class 3 Claim being voted on this Ballot; or (b) it is an authorized signatory for an entity that is the Beneficial Holder of such Class 3 Claim;

2.    it is eligible to vote on the Plan and make an election with respect to the Third-Party Release;

3.    it has received a copy of the Disclosure Statement and the other solicitation materials, including the Plan, and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

4.    it has cast the same vote with respect to all of its Class 3 Claims;

5.    no other Beneficial Holder Ballots with respect to the Class 3 Claims identified in Item 1 have been cast or, if any other Beneficial Holder Ballots have been cast with respect to such Claims, then any such Beneficial Holder Ballots cast earlier are hereby revoked;

6.    it acknowledges and understands that a vote to accept the Plan constitutes an acceptance of the treatment of the Class 3 Claim identified in Item 1; and

7.    it acknowledges and understands that the Debtors may make changes to the Plan as may be reasonably necessary and that, to the extent such changes are not material, the Debtors will not re-solicit acceptances or rejections of the Plan.

Name of Beneficial Holder: _____
*(print or type)*

Signature: _____

Name Of Signatory: _____
*(if other than Beneficial Holder)*

Title: _____

Address: _____

_____

Telephone Number and email: _____

Date Completed: _____

<u>**PLEASE COMPLETE, SIGN, AND DATE THIS**
**BENEFICIAL HOLDER BALLOT AND RETURN IT *PROMPTLY* IN ACCORDANCE**
**WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.**</u>

> **IF YOUR NOMINEE INSTRUCTS YOU TO SUBMIT YOUR VOTE BY VOTER INFORMATION FORM, E-MAIL, TELEPHONE CALL, OR OTHER CUSTOMARY METHOD, YOU ARE AUTHORIZED TO FOLLOW YOUR NOMINEE'S INSTRUCTIONS IN LIEU OF SUBMITTING THIS BENEFICIAL HOLDER BALLOT.**
>
> **THE VOTING DEADLINE FOR THE RECEIPT BY THE SOLICITATION AGENT OF THE MASTER BALLOT REFLECTING YOUR VOTE IS [JULY 24], 2025 AT 4:00 P.M. (PREVAILING EASTERN TIME).**
>
> **IF YOUR NOMINEE PROVIDED YOU WITH A PRE-VALIDATED BENEFICIAL HOLDER BALLOT, SUCH BENEFICIAL HOLDER BALLOT, ONCE EXECUTED BY YOU, MUST BE SUBMITTED SUCH THAT IT IS RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE THE VOTING DEADLINE. OTHERWISE, YOUR PROPERLY COMPLETED AND EXECUTED BENEFICIAL HOLDER BALLOT MUST BE RECEIVED BY YOUR NOMINEE WITH SUFFICIENT TIME TO PERMIT YOUR NOMINEE TO DELIVER YOUR VOTE TO THE SOLICITATION AGENT ON OR BEFORE THE VOTING DEADLINE.**

## INSTRUCTIONS FOR COMPLETING BENEFICIAL BALLOTS

1.  The Debtors are soliciting votes of the holders of certain Claims with respect to the Plan attached to the Disclosure Statement, which is being sent to you together with this Beneficial Holder Ballot.  Capitalized terms used in the Beneficial Holder Ballot or in these instructions but not otherwise defined therein or herein have the meanings set forth in the Plan or Disclosure Statement, as applicable.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE VOTING**.

2.  The Plan may be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims in at least one Class of impaired Claims and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

3.  If you are not both a beneficial and registered holder of the Class 3 Claim indicated in Item 1 of the Ballot, to have your vote counted, you must submit it through your Nominee (by Beneficial Ballot or otherwise according to the instructions received from your Nominee) with sufficient time to permit your Nominee to submit a Master Ballot reflecting your vote so that such Master Ballot is <u>actually</u> <u>received</u> by the Solicitation Agent on or prior to the Voting Deadline.

4.  The Voting Deadline for the receipt of Master Ballots by the Solicitation Agent is **[July 24], 2025 at 4:00 p.m. (prevailing Eastern Time)**.  Your completed Beneficial Ballot must be received by your Nominee with sufficient time to permit your Nominee to deliver your votes to the Solicitation Agent on or before the Voting Deadline.

5.  To ensure that your vote is counted for purposes of accepting or rejecting the Plan:

    i.   If your Nominee provided you with a pre-validated Beneficial Holder Ballot, please complete the remaining items on your pre-validated Beneficial Holder Ballot and return it directly to the Solicitation Agent by no later than the Voting Deadline, by either (a) using the return envelope provided with this Beneficial Holder Ballot, (b) if no return envelope is provided, by regular mail, overnight courier, or hand delivery to the Solicitation Agent's mailing address set forth above so that it is *actually received* by the Solicitation Agent on or before the Voting Deadline, which is **[July 24], 2025, at 4:00 p.m.**, Prevailing Eastern Time, or (c) via online submission by using the Solicitation Agent's online portal, by visiting https://omniagentsolutions.com/Ligado-Ballots, clicking on the "Balloting" section of the website, and following the instructions; OR

    ii.  if your Nominee has not pre-validated your Beneficial Holder Ballot, then you must submit your properly filled and executed Beneficial Holder Ballot to your Nominee in the manner directed by your Nominee with sufficient time to permit your Nominee to submit a Master Ballot reflecting your vote so that such Master Ballot is actually received by the Solicitation Agent on or before the Voting Deadline, which is **[July 24], 2025, at 4:00 p.m.**, Prevailing Eastern Time.  You may instruct

your Nominee to vote on your behalf in the Master Ballot by: (i) completing the Beneficial Holder Ballot; (ii) indicating your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Beneficial Holder Ballot; (iii) if applicable, indicating that you elect to opt out of the Third-Party Release in the box provided in Item 3 of the Beneficial Holder Ballot; and (iv) signing and returning the Beneficial Holder Ballot to your Nominee in accordance with the instructions provided by your Nominee.

6.      Except as otherwise provided herein or unless waived by the Debtors or permitted by order of the Bankruptcy Court, your vote will not be counted unless either (i) if you are a registered holder or you are voting through a pre-validated Beneficial Holder Ballot, your Beneficial Holder Ballot is received by the Solicitation Agent on or prior to the Voting Deadline; or (ii) a Master Ballot reflecting your vote is delivered by your Nominee to the Solicitation Agent on or before the Voting Deadline.

7.      The method of delivery of your Beneficial Holder Ballot is at your election and risk.   Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **actually** **receives** your executed Ballot.   You should allow sufficient time to assure timely delivery.

8.      If you cast more than one Beneficial Holder Ballot voting the same Class 3 Claims, the last valid Beneficial Holder Ballot (or Master Ballot reflecting your vote) received by the Solicitation Agent on or before the Voting Deadline shall be deemed to reflect your intent, and thus, supersede any prior Beneficial Holder Ballot.

9.      If you cast a timely Beneficial Holder Ballot that is properly completed and executed but does not indicate either an acceptance or rejection of the Plan, your vote will not be counted.

10.     If you cast a timely Beneficial Holder Ballot that is properly completed and executed but indicates both an acceptance and a rejection of the Plan, your vote will not be counted.

11.     This Beneficial Holder Ballot does **not** constitute, and will not be deemed to be, (a) a proof of Claim or (b) an assertion or admission with respect to any Claim.

12.     You will be deemed to have voted the full amount of your Class 3 Claim and are not entitled to split your vote.  Any Beneficial Holder Ballot that partially accepts and partially rejects the Plan will not be counted.

13.     **The following Beneficial Holder Ballots will *not* be counted for purposes of accepting or rejecting the Plan or, to the extent made, the opt out election unless the Debtors, in their sole discretion, determine otherwise**:

        i.      Any Beneficial Holder Ballot received after the Voting Deadline or received too late to allow your Nominee to submit a Master Ballot reflecting your vote on or before the Voting Deadline, unless the Debtors have granted an extension of the Voting Deadline in writing with respect to such ballot;

ii.    Any Beneficial Holder Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

iii.   Any Beneficial Holder Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan;

iv.    Any Beneficial Holder Ballot cast by a person or entity that is not entitled to vote, even if such person holds a Claim in a Class that is entitled to vote on the Plan;

v.     Any unsigned Beneficial Holder Ballot;

vi.    Any Beneficial Holder Ballot with respect to a vote that the Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; or

vii.   Any Beneficial Holder Ballot transmitted by means not specifically approved in these instructions.

14.    Please be sure to sign and date your Beneficial Holder Ballot.  You should indicate if you are signing a Beneficial Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise in a fiduciary or representative capacity and, if required or requested by the Solicitation Agent, the Debtors, your Nominee, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Beneficial Holder Ballot.

15.    If you hold Class 3 Claims through more than one Nominee or through multiple accounts, you should execute a separate Beneficial Holder Ballot for each block of the First Lien Notes you hold through any one Nominee and you must submit each such Beneficial Holder Ballot in accordance with the applicable Nominee's instructions.

16.    Subject to contrary orders of the Bankruptcy Court, any defects or irregularities in connection with the delivery of your Beneficial Holder Ballot must be cured prior to the Voting Deadline or such Beneficial Ballot (or a Master Ballot reflecting your vote) will not be counted. Notwithstanding the foregoing, the Debtors may, in their sole discretion, waive any defect or irregularity as to any particular Beneficial Holder Ballot or Master Ballot at any time, either before or after the Voting Deadline.

17.    Neither the Debtors, the Solicitation Agent, your Nominee, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to your Beneficial Ballot, nor will any of them incur any liability for failure to provide such notification.

18.    This Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to: (i) vote to accept or reject the Plan; (ii) if applicable, opt-out of the Third-Party Release, and (iii) make the required certifications. Accordingly, at this time, you should not surrender the instruments representing or evidencing your First Lien Notes

Claims, and neither the Debtors nor Solicitation Agent will accept delivery of any such instruments.

19.    You shall be deemed to have consented to the Third-Party Release unless you affirmatively opt out of the Third-Party Release by checking the box in Item 3 above, regardless of whether you voted to accept or reject the Plan or abstain from voting altogether.

20.    This Beneficial Holder Ballot does not constitute and will not be deemed to be: (a) a proof of Claim; or (b) an assertion or admission of a Claim.

**PLEASE SUBMIT YOUR BENEFICIAL HOLDER BALLOT PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL HOLDER BALLOT, THE VOTING OR THE OPT OUT PROCEDURES, PLEASE CONTACT YOUR NOMINEE OR THE SOLICITATION AGENT, AS APPLICABLE.**

## **Exhibit 1**

**Please indicate below the CUSIP/ISIN to which this Beneficial Holder Ballot pertains.**

| | | |
|---|---|---|
| ☐ | 15.500% PIK Senior Secured First Lien Notes due 2023 | 144A CUSIP: 53225H AA8<br>144A ISIN: US53225HAA86 |
| ☐ | 15.500% PIK Senior Secured First Lien Notes due 2023 | REG S CUSIP: U5364H AA6<br>REG S ISIN: USU5364HAA69 |

**Exhibit 2.C**

**Class 3 Ballot (Term Loan)**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIGADO NETWORKS LLC *et al.*,[1] | ) | Case No. 25-10006 (TMH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | |

**BALLOT FOR VOTING TO ACCEPT OR REJECT
THE CHAPTER 11 PLANS OF LIGADO NETWORKS, LLC ET AL.**

**CLASS 3 (FIRST LIEN TERM LOAN CLAIMS)**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED IN ACCORDANCE WITH THE INSTRUCTIONS BELOW SO AS TO BE ACTUALLY RECEIVED BY THE DEBTORS' SOLICITATION AGENT BY [JULY 24], 2025, AT 4:00 P.M. (ET) (THE "VOTING DEADLINE").**

---

The above-captioned debtors (the "Debtors") are soliciting votes on the *Joint Chapter 11 Plan of Ligado Networks LLC and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan") described in (and attached to) the *Disclosure Statement for Joint Chapter 11 Plan of Ligado Networks LLC, and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement")[2] included in the package (the "Solicitation Materials") you are receiving with this ballot (the "Ballot").

You are receiving this Ballot because the Debtors' records indicate that you may be a holder, a potential holder, an investment advisor, a sub-advisor, or a manager of various

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or Disclosure Statement, as applicable.

1

funds/accounts/investors with respect to a claim under the First Lien Term Loan Credit Agreement (a "Class 3 Claim") as of [June 20], 2025 (the "Voting Record Date") and, as such, have the right to vote to accept or reject the Plan.

As described in more detail in the Disclosure Statement and the Plan, if the Plan is confirmed and the Effective Date occurs, then, subject to Section III.B of the Plan and except to the extent that you may agree to less favorable treatment, on the Effective Date, in exchange for your Allowed Class 3 Claim, you will receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Class 3 Claim, your Pro Rata share of the New Series A-1 Preferred Units.

**YOUR VOTE WILL BE APPLIED TO THOSE DEBTORS WHO ARE LIABLE TO YOU ON ACCOUNT OF YOUR CLASS 3 CLAIM.**

Your rights are described in the Disclosure Statement.   If you received the Solicitation Materials in electronic form and desire paper copies of any of them, or if you need to obtain additional Solicitation Materials, you may obtain them at no charge from Omni Agent Solutions, Inc. (the "Solicitation Agent") by: (i) emailing LigadoInquiries@OmniAgnt.com with a reference to "Ligado" in the subject line, or (ii) at the following telephone numbers: (866) 956-2139 (domestic toll free) or (747) 288-6357 (international).

On the Petition Date, the website https://omniagentsolutions.com/Ligado will become publicly available and contain important information, hearing dates, and other key deadlines, as well as the docket for the Debtors' chapter 11 cases.  You may also obtain copies of any pleadings to be filed in these cases for a fee via PACER at: http://www.deb.uscourts.gov.

This Ballot may not be used for any purpose other than for (i) casting your vote to accept or reject the Plan, (ii) indicating your election to opt out of certain releases described below, if applicable, and (iii) making certain certifications with respect to your vote.  If you believe you have received this Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent **immediately** at the email address set forth above.

**You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Class 3 Claim.  This Ballot pertains solely to your Class 3 Claim.   If you hold Claims or Interests in more than one Class that is entitled to vote on the Plan, you will receive a ballot for each such Class.**

**PLEASE SUBMIT YOUR BALLOT BY ONE OF THE FOLLOWING TWO METHODS:**

**Via Paper Ballot. Complete, sign, and date this Ballot and return it, properly executed, promptly via first class mail (or in the enclosed reply envelope), overnight courier, or hand delivery to:**

<div align="center">

**Ligado Networks, LLC Ballot Processing**
**c/o Omni Agent Solutions, Inc.**
**5955 De Soto Ave., Suite 100**
**Woodland Hills, CA 91367**

</div>

**IF YOU WOULD LIKE TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND PROVIDE THE ANTICIPATED DATE AND TIME OF DELIVERY AT LEAST TWENTY-FOUR (24) HOURS IN ADVANCE.**

<u>**OR**</u>

<u>**Via Online Submission**</u>**. Submit your Ballot via the Solicitation Agent's online portal (the "<u>E-Ballot Portal</u>"), by visiting https://omniagentsolutions.com/Ligado-Ballots.   Click on the "Balloting" section of the website and follow the instructions to submit your Ballot.**

**The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**If you cast a Ballot using the E-Ballot Portal, you should NOT also submit a paper Ballot.**

**IF YOU WISH TO SUBMIT YOUR BALLOT THROUGH THE ONLINE E-BALLOT PORTAL BUT ARE UNABLE TO DO SO, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND SOMEONE WILL PROVIDE ASSISTANCE.**

**Item 1**. **Principal Amount of Class 3 Claim.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of a holder) of a Class 3 Claim in the following principal amount (insert amount in box below):

$$\$^3\rule{3cm}{0.4pt}$$

**Item 2**. **Vote For or Against the Plan.**

The holder of the Class 3 Claim set forth in Item 1 votes to (please check only **one** box):

| ☐ **ACCEPT** (vote FOR) the Plan | ☐ **REJECT** (vote AGAINST) the Plan |
|---|---|

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**Any Ballot that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan, will not be counted.**

**Item 3**. **Important Information Regarding the Releases of Claims by Holders of Claims or Interests**

**WHETHER YOU VOTE TO ACCEPT OR REJECT THE PLAN OR ABSTAIN FROM VOTING ALTOGETHER, UNLESS YOU CHECK THE "OPT OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES OF THE RELEASED PARTIES SET FORTH IN ARTICLE VIII.D.2 OF THE PLAN COPIED BELOW (THE "__THIRD-PARTY RELEASE__").**

**Article VIII of the Plan contains the following provisions:**

A.    *Compromise and Settlement*

**The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their Estates, and all holders of Claims or Interests, (2) fair, equitable, and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to applicable bankruptcy law. In addition, the allowance, classification, and treatment of any Allowed Claims of a Released Party take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist between the Debtors and any Released Party and, as of the Effective Date, any and all such Causes of Action are settled, compromised, and released as set forth in the Plan. The Confirmation Order shall authorize and approve the releases by all Entities of all such**

---

3    For voting purposes only.  Subject to tabulation rules.

contractual, legal, and equitable subordination rights and Causes of Action that are satisfied, compromised, and settled pursuant hereto.  Nothing in the Plan shall compromise or settle, in any way whatsoever, any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have against any Entity that is not a Released Party.

In accordance with the provisions of the Plan, and pursuant to Bankruptcy Rule 9019, without any further notice to, or action, order, or approval of, the Bankruptcy Court or the Canadian Court, after the Effective Date, the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle (1) Claims (including Causes of Action) against and Interests in the Debtors not previously Allowed (if any) and (2) claims (including Causes of Action) against other Entities.

B.    *Discharge of Claims and Termination of Interests*

Except as otherwise provided in the Plan, effective as of the Effective Date: (1) the distributions, rights, and treatment that are provided in the Plan for all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, whether known or unknown, against or in the Debtors or any of their assets, property, or Estates, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date and any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date; (2) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (3) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code; and (4) all entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date.  Notwithstanding the foregoing, all Existing Common Units shall remain in full force and effect and shall be governed by the terms of the applicable New Organizational Documents, including the Second Amended and Restated Operating Agreement.  The Confirmation Order shall be a judicial determination, subject to the Effective Date occurring, of the discharge of all Claims and Interests except as otherwise expressly provided in the Plan.

C.    *Release of Liens*

Except as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit First Lien Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and the effectiveness of the Exit First Lien Facility Documents, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security

interests shall automatically revert to the Reorganized Debtors and each of their successors and assigns, and the Agents/Trustees and the DIP Agent shall be authorized to release any such mortgages, deeds of trust, Liens, pledges, or other security interests held by such holder and to take such actions as may be requested by the Reorganized Debtors to evidence the release of such mortgages, deeds of trust, Liens, pledges, or other security interests, including the execution, delivery, and filing or recording of any related releases or discharges as may be requested by the Reorganized Debtors or may be required in order to effectuate the foregoing.

D.    ***Releases of Released Parties***

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to applicable bankruptcy law, of the releases described in this Article VIII.D and shall constitute the Bankruptcy Court's finding that such releases are:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by this Article VIII.D; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Entity (including the Debtors) asserting any claim or Cause of Action released pursuant to this Article VIII.D.

1.    **Releases by the Debtors**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of each Debtor, each Reorganized Debtors, and each Estate, in each case, on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action, whether prepetition or postpetition, derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws, or otherwise that the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and

Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, (ii) any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have in connection with the Ligado Takings Case, (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit First Lien Facility Documents, or any Claim or obligation arising under the Plan and (iv) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct.

2. **Releases by Holders of Claims or Interests**

As of the Effective Date, except for (i) the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring, (ii) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct, or (iii) the rights provided or reserved for under the AST Definitive Agreements Order, or (iv) as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case, from any and all Claims and Causes of Action whatsoever, whether prepetition or postpetition (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates, the Chapter 11 Cases the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors (including any of the Debtors' predecessors) or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise

7

to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors (including any of the Debtors' predecessors) and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.

Entry of the Confirmation Order shall, subject to the occurrence of the Effective Date, constitute the Bankruptcy Court's approval of the releases contained in the Plan and a finding that each release described is (i) in exchange for the good and valuable consideration provided by the Released Parties, including without limitation, the Released Parties' contributions to implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the holders of Claims and Interests, (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a sound exercise of the Debtors' business judgment.

Nothing in this Plan prohibits, precludes, or enjoins any Governmental Unit from asserting or filing a proof of Claim on or before the Governmental Bar Date.[4]

E.    ***Exculpation***

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action based on any act or omission occurring from the Petition Date through the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the Restructuring Support Agreement, the Restructuring, the DIP Facility, the DIP Orders, the DIP Documents, any Canadian Court Recognition Order, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes gross negligence, intentional fraud or willful misconduct as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to

---

[4]    "Governmental Bar Date" shall have the meaning set forth in the *Order Establishing (I) Various Bar Dates for Filing Proofs of Claim, (II) Approving the Form and Manner of Filing Proofs of Claim, (III) Approving Notices of Bar Dates, and (IV) Granting Related Relief* [Docket No. 340].

their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code and have participated in good faith with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

F.    *Injunction*

Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests or Causes of Action or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities released or settled pursuant to the Plan.

\*\*\*

UNDER THE PLAN, "RELEASING PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH, (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (VII) WITH RESPECT TO EACH OF THE FOREGOING PERSONS IN CLAUSES (I) THROUGH (VIII), SUCH PERSONS' PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES (INCLUDING AFFILIATES OF ANY PREDECESSORS), CURRENT AND FORMER

**OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS (INCLUDING EQUITY HOLDERS OF ANY PREDECESSORS), MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES, (VIII) THE HOLDERS OF ALL CLAIMS OR INTERESTS WHOSE VOTE TO ACCEPT OR REJECT THE PLAN IS SOLICITED BUT DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE VIIID.2, AND (IX) THE HOLDERS OF ALL CLAIMS AND INTERESTS WHO WERE GIVEN NOTICE OF THE OPPORTUNITY AND SERVED WITH A PROVIDED FORM TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE VIIID.2 BUT DID NOT TIMELY OPT OUT.**

**UNDER THE PLAN, "RELEASED PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH,  (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) EACH OF THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (IX) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (I) THROUGH (VIII), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES, CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS, MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES; PROVIDED, HOWEVER, THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) FILES AN OBJECTION TO THE PLAN OR (Y) OPTS OUT OF THE RELEASES SET FORTH IN ARTICLE VIIID.2, AS APPLICABLE, SHALL NOT BE A "RELEASED PARTY."**

**IF YOU DO NOT CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES OF THE RELEASED PARTIES SET FORTH ABOVE.**

**UNLESS YOU CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, BY ACCEPTING DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT OF YOUR ALLOWED CLAIM OR INTEREST YOU WILL BE DEEMED TO HAVE AFFIRMATIVELY CONSENTED TO BE BOUND BY THE TERMS OF THE PLAN, INCLUDING, WITHOUT LIMITATION, THE RELEASES AND INJUNCTIONS SET FORTH ABOVE.**

**The holder (or authorized signatory of each holder) of the Class 3 Claim identified in Item 1 elects to:**

> ☐    **Opt out of the Third-Party Releases contained in Article VIII.D.2 of the Plan.**

**Item 4. Certifications.**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

a.    as of the Voting Record Date, it either: (i) is the holder of the Class 3 Claim set forth in Item 1; or (ii) is an authorized signatory for the holder of the Class 3 Claim set forth in Item 1;

b.    it is eligible to vote on the Plan and make an election with respect to the Third-Party Release;

c.    it (or in the case of an authorized signatory, the relevant holder) has received the Solicitation Materials including a copy of the Disclosure Statement and acknowledges that the solicitation of votes on the Plan is being made pursuant to the terms and conditions set forth therein;

d.    it has cast the same vote with respect to all of its Class 3 Claims;

e.    no other Ballots with respect to the Class 3 Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Class 3 Claims, then any such Beneficial Holder Ballots cast earlier are hereby revoked;

f.    it acknowledges and understands that a vote to accept the Plan constitutes an acceptance of the treatment of the Class 3 Claim identified in Item 1; and

g.    it acknowledges and understands that the Debtors may make changes to the Plan as may be reasonably necessary and that, to the extent such changes are not material, the Debtors will not re-solicit acceptances or rejections of the Plan.

Name of holder: _____

*(print or type)*

Signature: _____

Name of Signatory: _____

*(if other than the Class 3 Claims holder)*

Title: _____

Address: _____

Telephone Number
and Email: _____

Date Completed: _____

---

**IF THE SOLICITATION AGENT DOES NOT <u>ACTUALLY RECEIVE</u> THIS BALLOT ON OR BEFORE [JULY 24], 2025, AT 4:00 P.M. (ET), UNLESS THE VOTING DEADLINE IS EXTENDED, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED ONLY IN THE DISCRETION OF THE DEBTORS.**

## <u>INSTRUCTIONS FOR COMPLETING THIS CLASS 3 CLAIM BALLOT</u>

1.     The Debtors are soliciting the votes on the Plan attached as **<u>Exhibit A</u>** to the Disclosure Statement.  Capitalized terms used in this Ballot or in these instructions but not otherwise defined therein or herein have the meaning set forth in the Plan or Disclosure Statement, as applicable.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE VOTING.**

2.     The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims in at least one Class of Claims that has the right to vote on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.  If the Plan is confirmed, it will be binding on you regardless of whether you vote at all or if you vote to reject the Plan. Please review the Disclosure Statement for more information.

3.     To ensure that your Ballot is counted, you <u>must</u> complete and submit this Ballot as instructed herein.  Ballots will not be accepted by electronic mail or facsimile, except as expressly set forth in the Ballot.

4.     To ensure that your vote is counted, you must: (a) complete this Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; (c) if you elect to opt out of the third-party releases, clearly indicate your decision in the box in Item 3 of your Ballot; and (d) sign and timely submit your Ballot as instructed herein.

5.     Your Ballot **<u>must</u>** be returned to the Solicitation Agent so as to be **<u>actually received</u>** by the Solicitation Agent on or before the Voting Deadline.  **The Voting Deadline is [July 24], 2025, at 4:00 p.m. (ET).**

6.     If your Ballot is received after the Voting Deadline, unless the Voting Deadline is extended, your vote may only be counted in the sole and absolute discretion of the Debtors. Additionally, **the following Ballots will <u>not</u> be counted**:

    (a)     Any Ballot that (i) partially rejects and partially accepts the Plan, (ii) is not marked to accept or reject the Plan, (iii) is marked both to accept and reject the Plan;

    (b)     Any Ballot sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), including the Debtors' financial or legal advisors, or any agent or indenture trustee for the Debtors' funded debt;

    (c)     Any Ballot sent by telecopy, electronic mail, facsimile, or other electronic means except for the E-Ballot Portal;

    (d)     Any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim voted;

    (e)     Any Ballot cast by a person or an entity that does not hold a Class 3 Claim or is not

an authorized signatory for such holder;

(f)     Any Beneficial Holder Ballot transmitted by means not specifically approved in these instructions; and/or

(g)     Any unsigned Ballot (for the avoidance of doubt, electronic signatures contained in E-Ballots validly submitted through the E-Ballot Portal will be deemed immediately legally valid and effective).

7.      The method of delivery of your Ballot to the Solicitation Agent is at your election and risk. Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **actually receives** your executed Ballot (or your E-Ballot validly submitted through the E-Ballot Portal). You should allow sufficient time to assure timely delivery.

8.      If multiple Ballots are received from the same holder of the same Class 3 Claim prior to the Voting Deadline, the latest, timely received, and valid Ballot will supersede and revoke any earlier received Ballots.

9.      If you cast a timely Ballot that is properly completed and executed but does not indicate either an acceptance or rejection of the Plan, your vote will not be counted.

10.     If you cast a timely Ballot that is properly completed and executed but indicates both an acceptance and a rejection of the Plan, your vote will not be counted.

11.     You must vote all of your Class 3 Claims either to accept or reject the Plan and may **not** split your vote.

12.     This Ballot does **not** constitute, and will not be deemed to be, (a) a proof of Claim or (b) an assertion or admission with respect to any Claim.

13.     **Please be sure to sign and date your Ballot**. If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of a holder of a Class 3 Claim. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to your Ballot.

14.     If you hold Claims or Interests in more than one Class you may receive more than one ballot coded for each such Class. Each ballot votes **only** your Claims or Interests indicated on that ballot, so please complete and return each ballot you receive.

15.     Subject to contrary orders of the Bankruptcy Court, any defects or irregularities in connection with the delivery of your Ballot must be cured prior to the Voting Deadline or such Ballot will not be counted. Notwithstanding the foregoing, the Debtors may, in their sole discretion, waive any defect or irregularity as to any particular Ballot at any time,

either before or after the Voting Deadline.

16.    Neither the Debtors, the Solicitation Agent, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to your Ballot, nor will any of them incur any liability for failure to provide such notification.

17.    This Ballot is not a letter of transmittal and may not be used for any purpose other than to: (i) vote to accept or reject the Plan; (ii) if applicable, opt-out of the Third-Party Release, and (iii) make the required certifications.   Accordingly, at this time, you should not surrender the instruments representing or evidencing your Class 3 Claims, and neither the Debtors nor Solicitation Agent will accept delivery of any such instruments.

18.    There may be changes made to the Plan that do not have a material adverse effect on the treatment of your Class 3 Claim.  If such non-material changes are made to the Plan, the Debtors will not resolicit your vote on the Plan.

**PLEASE SUBMIT YOUR BALLOT PROMPTLY**, TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE VIA THE E-BALLOT PLATFORM, AS DIRECTED ABOVE, OR IN HARD COPY AT THE FOLLOWING ADDRESS:

**LIGADO NETWORKS, LLC BALLOT PROCESSING
C/O OMNI AGENT SOLUTIONS, INC.
5955 DE SOTO AVE., SUITE 100
WOODLAND HILLS, CA 91367**

———————

**IF YOU WOULD LIKE TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND PROVIDE THE ANTICIPATED DATE AND TIME OF DELIVERY AT LEAST TWENTY-FOUR (24) HOURS IN ADVANCE.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE.**

---

**IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE THIS BALLOT VIA THE E-BALLOT PLATFORM OR IN HARD COPY, AS DIRECTED ABOVE, ON OR BEFORE THE VOTING DEADLINE, WHICH IS ON [JULY 24], 2025, AT 4:00 P.M. (ET), UNLESS THE VOTING DEADLINE IS EXTENDED, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED ONLY IN THE SOLE AND ABSOLUTE DISCRETION OF THE DEBTORS.**

---

**<u>Exhibit 2.D</u>**
**Class 4 Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIGADO NETWORKS LLC *et al.*,[1] | ) | Case No. 25-10006 (TMH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | |

**BALLOT FOR VOTING TO ACCEPT OR REJECT**
**THE CHAPTER 11 PLANS OF LIGADO NETWORKS, LLC ET AL.**

**CLASS 4 (1.5 LIEN TERM LOAN CLAIMS)**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED IN ACCORDANCE WITH THE INSTRUCTIONS BELOW SO AS TO BE ACTUALLY RECEIVED BY THE DEBTORS' SOLICITATION AGENT BY [JULY 24], 2025, AT 4:00 P.M. (ET) (THE "VOTING DEADLINE").**

---

The above-captioned debtors (the "Debtors") are soliciting votes on the *Joint Chapter 11 Plan of Ligado Networks LLC and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan") described in (and attached to) the *Disclosure Statement for Joint Chapter 11 Plan of Ligado Networks LLC, and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement")[2] included in the package (the "Solicitation Materials") you are receiving with this ballot (the "Ballot").

You are receiving this Ballot because the Debtors' records indicate that you may be a holder, a potential holder, an investment advisor, a sub-advisor, or a manager of various

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or Disclosure Statement, as applicable.

funds/accounts/investors with respect to a claim under the 1.5 Lien Term Loan Credit Agreement (a "Class 4 Claim") as of [June 20], 2025 (the "Voting Record Date") and, as such, have the right to vote to accept or reject the Plan.

As described in more detail in the Disclosure Statement and the Plan, if the Plan is confirmed and the Effective Date occurs, then, subject to Section III.B of the Plan and except to the extent that you may agree to less favorable treatment, on the Effective Date, in exchange for your Allowed Class 4 Claim, you will receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Class 4 Claim, your Pro Rata share of the New Series A-2 Preferred Units.

**YOUR VOTE WILL BE APPLIED TO THOSE DEBTORS WHO ARE LIABLE TO YOU ON ACCOUNT OF YOUR CLASS 4 CLAIM.**

Your rights are described in the Disclosure Statement. If you received the Solicitation Materials in electronic form and desire paper copies of any of them, or if you need to obtain additional Solicitation Materials, you may obtain them at no charge from Omni Agent Solutions, Inc. (the "Solicitation Agent") by: (i) emailing LigadoInquiries@OmniAgnt.com with a reference to "Ligado" in the subject line, or (ii) at the following telephone numbers: (866) 956-2139 (domestic toll free) or (747) 288-6357 (international).

On the Petition Date, the website https://omniagentsolutions.com/Ligado will become publicly available and contain important information, hearing dates, and other key deadlines, as well as the docket for the Debtors' chapter 11 cases. You may also obtain copies of any pleadings to be filed in these cases for a fee via PACER at: http://www.deb.uscourts.gov.

This Ballot may not be used for any purpose other than for (i) casting your vote to accept or reject the Plan, (ii) indicating your election to opt out of certain releases described below, if applicable, and (iii) making certain certifications with respect to your vote. If you believe you have received this Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent **immediately** at the email address set forth above.

**You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Class 4 Claim. This Ballot pertains solely to your Class 4 Claim. If you hold Claims or Interests in more than one Class that is entitled to vote on the Plan, you will receive a ballot for each such Class.**

**PLEASE SUBMIT YOUR BALLOT BY ONE OF THE FOLLOWING TWO METHODS:**

**Via Paper Ballot. Complete, sign, and date this Ballot and return it, properly executed, promptly via first class mail (or in the enclosed reply envelope), overnight courier, or hand delivery to:**

<div align="center">

**Ligado Networks, LLC Ballot Processing**
**c/o Omni Agent Solutions, Inc.**
**5955 De Soto Ave., Suite 100**
**Woodland Hills, CA 91367**

</div>

**IF YOU WOULD LIKE TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND PROVIDE THE ANTICIPATED DATE AND TIME OF DELIVERY AT LEAST TWENTY-FOUR (24) HOURS IN ADVANCE.**

<u>**OR**</u>

<u>**Via Online Submission**</u>**. Submit your Ballot via the Solicitation Agent's online portal (the "<u>E-Ballot Portal</u>"), by visiting https://omniagentsolutions.com/Ligado-Ballots.   Click on the "Balloting" section of the website and follow the instructions to submit your Ballot.**

**The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**If you cast a Ballot using the E-Ballot Portal, you should NOT also submit a paper Ballot.**

**IF YOU WISH TO SUBMIT YOUR BALLOT THROUGH THE ONLINE E-BALLOT PORTAL BUT ARE UNABLE TO DO SO, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND SOMEONE WILL PROVIDE ASSISTANCE.**

**Item 1**. **Principal Amount of Class 4 Claim.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of a holder) of a Class 4 Claim in the following principal amount (insert amount in box below):

$$\$^3 \underline{\hspace{4cm}}$$

**Item 2**. **Vote For or Against the Plan.**

The holder of the Class 4 Claim set forth in Item 1 votes to (please check only **one** box):

☐   **ACCEPT** (vote FOR) the Plan          ☐   **REJECT** (vote AGAINST) the Plan

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**Any Ballot that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan, will not be counted.**

**Item 3**. **Important Information Regarding the Releases of Claims by Holders of Claims or Interests**

**WHETHER YOU VOTE TO ACCEPT OR REJECT THE PLAN OR ABSTAIN FROM VOTING ALTOGETHER, UNLESS YOU CHECK THE "OPT OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES OF THE RELEASED PARTIES SET FORTH IN ARTICLE VIII.D.2 OF THE PLAN COPIED BELOW (THE "THIRD-PARTY RELEASE").**

**Article VIII of the Plan contains the following provisions:**

A.      ***Compromise and Settlement***

**The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their Estates, and all holders of Claims or Interests, (2) fair, equitable, and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to applicable bankruptcy law.  In addition, the allowance, classification, and treatment of any Allowed Claims of a Released Party take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist between the Debtors and any Released Party and, as of the Effective Date, any and all such Causes of Action are settled, compromised, and released as set forth in the Plan.  The Confirmation Order shall authorize and approve the releases by all Entities of all such**

---

[3]      For voting purposes only.  Subject to tabulation rules.

contractual, legal, and equitable subordination rights and Causes of Action that are satisfied, compromised, and settled pursuant hereto. Nothing in the Plan shall compromise or settle, in any way whatsoever, any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have against any Entity that is not a Released Party.

In accordance with the provisions of the Plan, and pursuant to Bankruptcy Rule 9019, without any further notice to, or action, order, or approval of, the Bankruptcy Court or the Canadian Court, after the Effective Date, the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle (1) Claims (including Causes of Action) against and Interests in the Debtors not previously Allowed (if any) and (2) claims (including Causes of Action) against other Entities.

B.    *Discharge of Claims and Termination of Interests*

Except as otherwise provided in the Plan, effective as of the Effective Date: (1) the distributions, rights, and treatment that are provided in the Plan for all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, whether known or unknown, against or in the Debtors or any of their assets, property, or Estates, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date and any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date; (2) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (3) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code; and (4) all entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date. Notwithstanding the foregoing, all Existing Common Units shall remain in full force and effect and shall be governed by the terms of the applicable New Organizational Documents, including the Second Amended and Restated Operating Agreement. The Confirmation Order shall be a judicial determination, subject to the Effective Date occurring, of the discharge of all Claims and Interests except as otherwise expressly provided in the Plan.

C.    *Release of Liens*

Except as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit First Lien Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and the effectiveness of the Exit First Lien Facility Documents, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security

**interests shall automatically revert to the Reorganized Debtors and each of their successors and assigns, and the Agents/Trustees and the DIP Agent shall be authorized to release any such mortgages, deeds of trust, Liens, pledges, or other security interests held by such holder and to take such actions as may be requested by the Reorganized Debtors to evidence the release of such mortgages, deeds of trust, Liens, pledges, or other security interests, including the execution, delivery, and filing or recording of any related releases or discharges as may be requested by the Reorganized Debtors or may be required in order to effectuate the foregoing.**

D.    ***Releases of Released Parties***

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to applicable bankruptcy law, of the releases described in this Article VIII.D and shall constitute the Bankruptcy Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by this Article VIII.D; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Entity (including the Debtors) asserting any claim or Cause of Action released pursuant to this Article VIII.D.**

1.    **Releases by the Debtors**

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of each Debtor, each Reorganized Debtors, and each Estate, in each case, on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action, whether prepetition or postpetition, derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws, or otherwise that the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and**

6

Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, (ii) any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have in connection with the Ligado Takings Case, (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit First Lien Facility Documents, or any Claim or obligation arising under the Plan and (iv) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct.

2.      **Releases by Holders of Claims or Interests**

As of the Effective Date, except for (i) the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring, (ii) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct, or (iii) the rights provided or reserved for under the AST Definitive Agreements Order, or (iv) as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case, from any and all Claims and Causes of Action whatsoever, whether prepetition or postpetition (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates, the Chapter 11 Cases the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors (including any of the Debtors' predecessors) or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise

7

to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors (including any of the Debtors' predecessors) and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.

Entry of the Confirmation Order shall, subject to the occurrence of the Effective Date, constitute the Bankruptcy Court's approval of the releases contained in the Plan and a finding that each release described is (i) in exchange for the good and valuable consideration provided by the Released Parties, including without limitation, the Released Parties' contributions to implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the holders of Claims and Interests, (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a sound exercise of the Debtors' business judgment.

Nothing in this Plan prohibits, precludes, or enjoins any Governmental Unit from asserting or filing a proof of Claim on or before the Governmental Bar Date.[4]

E.    *Exculpation*

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action based on any act or omission occurring from the Petition Date through the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the Restructuring Support Agreement, the Restructuring, the DIP Facility, the DIP Orders, the DIP Documents, any Canadian Court Recognition Order, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes gross negligence, intentional fraud or willful misconduct as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to

---

[4]    "Governmental Bar Date" shall have the meaning set forth in the *Order Establishing (I) Various Bar Dates for Filing Proofs of Claim, (II) Approving the Form and Manner of Filing Proofs of Claim, (III) Approving Notices of Bar Dates, and (IV) Granting Related Relief* [Docket No. 340].

their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code and have participated in good faith with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

F.    *Injunction*

Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests or Causes of Action or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities released or settled pursuant to the Plan.

***

UNDER THE PLAN, "RELEASING PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH, (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (VII) WITH RESPECT TO EACH OF THE FOREGOING PERSONS IN CLAUSES (I) THROUGH (VIII), SUCH PERSONS' PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES (INCLUDING AFFILIATES OF ANY PREDECESSORS), CURRENT AND FORMER

**OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS (INCLUDING EQUITY HOLDERS OF ANY PREDECESSORS), MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES, (VIII) THE HOLDERS OF ALL CLAIMS OR INTERESTS WHOSE VOTE TO ACCEPT OR REJECT THE PLAN IS SOLICITED BUT DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN <u>ARTICLE VIIID.2</u>, AND (IX) THE HOLDERS OF ALL CLAIMS AND INTERESTS WHO WERE GIVEN NOTICE OF THE OPPORTUNITY AND SERVED WITH A PROVIDED FORM TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN <u>ARTICLE VIIID.2</u> BUT DID NOT TIMELY OPT OUT.**

**UNDER THE PLAN, "RELEASED PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH,  (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) EACH OF THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (IX) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (I) THROUGH (VIII), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES, CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS, MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES; PROVIDED, HOWEVER, THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) FILES AN OBJECTION TO THE PLAN OR (Y) OPTS OUT OF THE RELEASES SET FORTH IN <u>ARTICLE VIIID.2</u>, AS APPLICABLE, SHALL NOT BE A "RELEASED PARTY."**

**IF YOU DO NOT CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES OF THE RELEASED PARTIES SET FORTH ABOVE.**

**UNLESS YOU CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, BY ACCEPTING DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT OF YOUR ALLOWED CLAIM OR INTEREST YOU WILL BE DEEMED TO HAVE AFFIRMATIVELY CONSENTED TO BE BOUND BY THE TERMS OF THE PLAN, INCLUDING, WITHOUT LIMITATION, THE RELEASES AND INJUNCTIONS SET FORTH ABOVE.**

**The holder (or authorized signatory of each holder) of the Class 4 Claim identified in Item 1 elects to:**

<table>
<tr><td>☐</td><td><strong>Opt out of the Third-Party Releases contained in Article VIII.D.2 of the Plan.</strong></td></tr>
</table>

**Item 4. Certifications.**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

a.  as of the Voting Record Date, it either: (i) is the holder of the Class 4 Claim set forth in Item 1; or (ii) is an authorized signatory for the holder of the Class 4 Claim set forth in Item 1;

b.  it is eligible to vote on the Plan and make an election with respect to the Third-Party Release;

c.  it (or in the case of an authorized signatory, the relevant holder) has received the Solicitation Materials including a copy of the Disclosure Statement and acknowledges that the solicitation of votes on the Plan is being made pursuant to the terms and conditions set forth therein;

d.  it has cast the same vote with respect to all of its Class 4 Claims;

e.  no other Ballots with respect to the Class 4 Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Class 4 Claims, then any such Beneficial Holder Ballots cast earlier are hereby revoked;

f.  it acknowledges and understands that a vote to accept the Plan constitutes an acceptance of the treatment of the Class 4 Claim identified in Item 1; and

g.  it acknowledges and understands that the Debtors may make changes to the Plan as may be reasonably necessary and that, to the extent such changes are not material, the Debtors will not re-solicit acceptances or rejections of the Plan.

Name of holder: _____
*(print or type)*

Signature: _____

Name of Signatory: _____
*(if other than the Class 4 Claims holder)*

Title: _____

Address: _____

Telephone Number
and Email: _____

Date Completed: _____

---

**IF THE SOLICITATION AGENT DOES NOT <u>ACTUALLY RECEIVE</u> THIS BALLOT ON OR BEFORE [JULY 24], 2025, AT 4:00 P.M. (ET), UNLESS THE VOTING DEADLINE IS EXTENDED, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED ONLY IN THE DISCRETION OF THE DEBTORS.**

## <u>INSTRUCTIONS FOR COMPLETING THIS CLASS 4 CLAIM BALLOT</u>

1.  The Debtors are soliciting the votes on the Plan attached as **<u>Exhibit A</u>** to the Disclosure Statement. Capitalized terms used in this Ballot or in these instructions but not otherwise defined therein or herein have the meaning set forth in the Plan or Disclosure Statement, as applicable. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE VOTING.**

2.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims in at least one Class of Claims that has the right to vote on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code. If the Plan is confirmed, it will be binding on you regardless of whether you vote at all or if you vote to reject the Plan. Please review the Disclosure Statement for more information.

3.  To ensure that your Ballot is counted, you <u>must</u> complete and submit this Ballot as instructed herein. Ballots will not be accepted by electronic mail or facsimile, except as expressly set forth in the Ballot.

4.  To ensure that your vote is counted, you must: (a) complete this Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; (c) if you elect to opt out of the third-party releases, clearly indicate your decision in the box in Item 3 of your Ballot; and (d) sign and timely submit your Ballot as instructed herein.

5.  Your Ballot **<u>must</u>** be returned to the Solicitation Agent so as to be **<u>actually received</u>** by the Solicitation Agent on or before the Voting Deadline. **The Voting Deadline is [July 24], 2025, at 4:00 p.m. (ET).**

6.  If your Ballot is received after the Voting Deadline, unless the Voting Deadline is extended, your vote may only be counted in the sole and absolute discretion of the Debtors. Additionally, **the following Ballots will <u>not</u> be counted**:

    (a)  Any Ballot that (i) partially rejects and partially accepts the Plan, (ii) is not marked to accept or reject the Plan, (iii) is marked both to accept and reject the Plan;

    (b)  Any Ballot sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), including the Debtors' financial or legal advisors, or any agent or indenture trustee for the Debtors' funded debt;

    (c)  Any Ballot sent by telecopy, electronic mail, facsimile, or other electronic means except for the E-Ballot Portal;

    (d)  Any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim voted;

    (e)  Any Ballot cast by a person or an entity that does not hold a Class 4 Claim or is not

13

an authorized signatory for such holder;

(f)     Any Beneficial Holder Ballot transmitted by means not specifically approved in these instructions; and/or

(g)     Any unsigned Ballot (for the avoidance of doubt, electronic signatures contained in E-Ballots validly submitted through the E-Ballot Portal will be deemed immediately legally valid and effective).

7.     The method of delivery of your Ballot to the Solicitation Agent is at your election and risk. Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **actually** **receives** your executed Ballot (or your E-Ballot validly submitted through the E-Ballot Portal). You should allow sufficient time to assure timely delivery.

8.     If multiple Ballots are received from the same holder of the same Class 4 Claim prior to the Voting Deadline, the latest, timely received, and valid Ballot will supersede and revoke any earlier received Ballots.

9.     If you cast a timely Ballot that is properly completed and executed but does not indicate either an acceptance or rejection of the Plan, your vote will not be counted.

10.    If you cast a timely Ballot that is properly completed and executed but indicates both an acceptance and a rejection of the Plan, your vote will not be counted.

11.    You must vote all of your Class 4 Claims either to accept or reject the Plan and may **not** split your vote.

12.    This Ballot does **not** constitute, and will not be deemed to be, (a) a proof of Claim or (b) an assertion or admission with respect to any Claim.

13.    **Please be sure to sign and date your Ballot**. If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of a holder of a Class 4 Claim. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to your Ballot.

14.    If you hold Claims or Interests in more than one Class you may receive more than one ballot coded for each such Class. Each ballot votes **only** your Claims or Interests indicated on that ballot, so please complete and return each ballot you receive.

15.    Subject to contrary orders of the Bankruptcy Court, any defects or irregularities in connection with the delivery of your Ballot must be cured prior to the Voting Deadline or such Ballot will not be counted. Notwithstanding the foregoing, the Debtors may, in their sole discretion, waive any defect or irregularity as to any particular Ballot at any time,

either before or after the Voting Deadline.

16.     Neither the Debtors, the Solicitation Agent, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to your Ballot, nor will any of them incur any liability for failure to provide such notification.

17.     This Ballot is not a letter of transmittal and may not be used for any purpose other than to: (i) vote to accept or reject the Plan; (ii) if applicable, opt-out of the Third-Party Release, and (iii) make the required certifications.  Accordingly, at this time, you should not surrender the instruments representing or evidencing your Class 4 Claims, and neither the Debtors nor Solicitation Agent will accept delivery of any such instruments.

18.     There may be changes made to the Plan that do not have a material adverse effect on the treatment of your Class 4 Claim.  If such non-material changes are made to the Plan, the Debtors will not resolicit your vote on the Plan.

**PLEASE SUBMIT YOUR BALLOT PROMPTLY, TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE VIA THE E-BALLOT PLATFORM, AS DIRECTED ABOVE, OR IN HARD COPY AT THE FOLLOWING ADDRESS:**

**LIGADO NETWORKS, LLC BALLOT PROCESSING**
**C/O OMNI AGENT SOLUTIONS, INC.**
**5955 DE SOTO AVE., SUITE 100**
**WOODLAND HILLS, CA 91367**
_____

**IF YOU WOULD LIKE TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND PROVIDE THE ANTICIPATED DATE AND TIME OF DELIVERY AT LEAST TWENTY-FOUR (24) HOURS IN ADVANCE.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE.**

**IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE THIS BALLOT VIA THE E-BALLOT PLATFORM OR IN HARD COPY, AS DIRECTED ABOVE, ON OR BEFORE THE VOTING DEADLINE, WHICH IS ON [JULY 24], 2025, AT 4:00 P.M. (ET), UNLESS THE VOTING DEADLINE IS EXTENDED, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED ONLY IN THE SOLE AND ABSOLUTE DISCRETION OF THE DEBTORS.**

**Exhibit 2.E**

**Class 5 Master Ballot**

#4926-4042-0658v2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LIGADO NETWORKS LLC *et al.*,[1] | ) Case No. 25-10006 (TMH) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) |
| | ) |

**MASTER BALLOT FOR CLASS 5 CLAIMS (SECOND LIEN NOTES CLAIMS)**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY *BEFORE* COMPLETING THIS MASTER BALLOT.**

**IN ORDER FOR THE VOTES OF YOUR BENEFICIAL HOLDERS TO BE COUNTED FOR PURPOSES OF ACCEPTING OR REJECTING THE PLAN, THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY [JULY 24], 2025, AT 4:00 P.M., PREVAILING EASTERN TIME (THE "VOTING DEADLINE")**

---

    The above-captioned debtors (the "Debtors") are soliciting votes on the *Joint Chapter 11 Plan of Ligado Networks LLC and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan") described in (and attached to) the *Disclosure Statement for Joint Chapter 11 Plan of Ligado Networks LLC, and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement").[2]

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or Disclosure Statement, as applicable.

You are receiving this master ballot (the "Master Ballot") because our records indicate that, as of **[June 20]**, 2025 (the "Voting Record Date"), you are a custodian, broker, dealer, commercial bank, trust company, a proxy holder or other agent or nominee (a "Nominee") for one or more beneficial holder (the "Beneficial Holders") of the notes identified in **Exhibit 1** attached hereto (the "Second Lien Notes"). If you believe you have received this Master Ballot in error, please contact Omni Agent Solutions, Inc., the Debtors' solicitation agent (in such capacity, the "Solicitation Agent") immediately, at the address, telephone number, or email address set forth below.

You should use the Master Ballot to transmit votes of your Beneficial Holders to accept or reject the Plan and their elections to opt out of Third-Party Release set forth in Article VIII.D.2 of the Plan and in the Beneficial Holder Ballot.

You should have received a sufficient number of solicitation packages containing the Plan, the Disclosure Statement, and sufficient number of Class 5 Ballots customized for your Beneficial Holders (the "Beneficial Holder Ballots") for you to transmit to each of your Beneficial Holders. If you need to obtain additional Beneficial Holder Ballots or other solicitation materials, you may do so by: (a) accessing the Debtors' case website at https://omniagentsolutions.com/Ligado-Ballots; (b) writing to the Solicitation Agent at (i) LigadoInquiries@OmniAgnt.com, or (ii) Ligado Networks, LLC Ballot Processing, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367 or (c) calling (866) 956-2139 (toll-free) or (747) 288-6375 (international).

The Bankruptcy Court may confirm the Plan and thereby bind all of your Beneficial Holders whether or not they have voted. To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Plan, you must either (i) complete and return this Master Ballot so that the Solicitation Agent actually receives it on or before the Voting Deadline, which is **[July 24], 2025, at 4:00 p.m. (Eastern Time)** or (ii) "pre-validate" the Beneficial Holder Ballots before you distribute them to your Beneficial Holders with instructions to return them to the Solicitation Agent on or before the Voting Deadline.

Please complete and execute this Master Ballot and return it to the Solicitation Agent either:

     i.    in the return envelope provided or by submitting it by overnight courier or hand delivery to the following address, so as it is actually received by the Voting Deadline:

<div align="center">

Ligado Networks, LLC Ballot Processing
c/o Omni Agent Solutions, Inc.
5955 De Soto Ave., Suite 100
Woodland Hills, CA 91367

</div>

    ii.    by email to LigadoBallots@OmniAgnt.com; or

    iii.    by electronic, online transmission via the Solicitation Agent's online portal (the "E-Ballot Portal"), by visiting https://omniagentsolutions.com/Ligado-Ballots. Click on the "Balloting"

<div align="center">2</div>

section of the website and follow the instructions to transmit this Master Ballot.

**Item 1. Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐ is a custodian, broker, dealer, bank, or other Nominee for the Beneficial Holders of the Class 5 Claims listed in Item 2 below and is the record holder of the underlying Second Lien Notes;

☐ is acting under a power of attorney and/or agency agreement (a copy of which will be provided upon request) granted by a Nominee that is the registered holder of the Second Lien Notes underlying the Class 5 Claims listed in Item 2 below; or

☐ has been granted a proxy (an original of which is attached hereto) from a Nominee or a Beneficial Holder that is the registered holder of the Second Lien Notes underlying the Class 5 Claims listed in Item 2 below and, accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holders of the Second Lien Notes underlying the Class 5 Claims described in Item 2 below.

**Item 2. Votes on the Plan and Elections Regarding Third-Party Release.**

The undersigned transmits the following: (i) votes of its Beneficial Holders; and (ii) elections of its Beneficial Holders with respect to the Third-Party Release. The undersigned certifies that the following Beneficial Holders of Class 5 Claims, as identified by their respective customer account numbers set forth below, are Beneficial Holders of the Second Lien Notes underlying their Class 5 Claims as of the Voting Record Date and have delivered to the undersigned, as their Nominee, properly executed Beneficial Holder Ballots (i) casting the following votes; and/or (ii) opting-out of the Third-Party Release.

Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table (use additional sheets in the format below as necessary). Please note that each Beneficial Holder must vote all its Class 5 Claims to accept or reject the Plan and may not split its vote. **Any Beneficial Holder Ballot that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan should not be counted.**

| **Your Customer Account Number for Each Beneficial Holder of Second Lien Notes Claims** | **Principal Amount of Second Lien Notes Held as of the Voting Record Date** | **Indicate the vote cast on the Beneficial Holder Ballot by placing an "X" in the appropriate column below.** | | | **<u>Item 3</u> If the box in Item 3 of the Beneficial Holder Ballot was checked, place an "X" below.** |
|---|---|---|---|---|---|
| | | **Accept the Plan** | **or** | **Reject the Plan** | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| | $ | | | | |
| **TOTAL:** | $ | | | | |

\*\*Please indicate on **<u>Exhibit 1</u>** hereto the CUSIP / ISIN for the Second Lien Notes underlying Class 5 Claims voted above.\*\*

**Item 3.** **Certification as to Transcription of Information from Item 4 of the Beneficial Holder Ballots as to Class 5 Claims Voted Through Other Beneficial Holder Ballots.**

The undersigned certifies that it has transcribed in the following table the information, if any, provided by its Beneficial Holders in Item 4 of their respective Beneficial Holder Ballots, identifying any Class 5 Claims for which such Beneficial Holders have submitted Beneficial Holder Ballots other than to the undersigned:

| Your Customer Account Number for Each Beneficial Holder Who Completed Item 4 of the Beneficial Holder Ballots | TRANSCRIBE FROM ITEM 4 OF THE BALLOTS: | | | |
|---|---|---|---|---|
| | Name of Other Nominee through which the Beneficial Holder Held and Voted Other Class 5 Claims | The Beneficial Holder's Account Number at Other Nominee(s) | Principal Amount of Other Class 5 Claims the Beneficial Holder Voted through Other Nominee(s) | CUSIP of Other Class 5 Claims Voted through Other Nominee(s) |
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |

**Item 4.** **Certification.**

By signing this Master Ballot, the undersigned certifies that:

1.   it has delivered all solicitation materials, including the Plan, Disclosure Statement and a Beneficial Holder Ballot to each Beneficial Holder listed in Item 2 of this Master Ballot;

2.   it has received a properly completed and signed Beneficial Holder Ballot (or other form of transmission in accordance with its customary procedures) from each Beneficial Holder listed in Item 2 of this Master Ballot;

3.   it is the registered holder of the Second Lien Notes underlying Class 5 Claims being voted or it has been authorized by each Beneficial Holder of Class 5 Claims listed in Item 2 of this Master Ballot to vote on the Plan;

4.   it has been authorized by each Beneficial Holder listed in Item 2 of this Master Ballot to submit this Master Ballot;

5.      it has properly disclosed: (a) the number of Beneficial Holders who submitted to it properly completed Beneficial Holder Ballots; (b) the amount of Class 5 Claims voted by each such Beneficial Holder; (c) each such Beneficial Holder's vote on the Plan; (d) each such Beneficial Holder's election concerning the Third-Party Release; (e) each such Beneficial Holder's certification as to other Class 5 Claims voted; and (f) the customer account or other identification number for each such Beneficial Holder;

6.      each Beneficial Holder listed in Item 2 of this Master Ballot has certified to the undersigned in Item 5 of the Beneficial Holder Ballot that it is eligible to vote on the Plan and make an election with respect to the Third-Party Release; and

7.      it will either forward to the Solicitation Agent all Beneficial Holder Ballots returned by the Beneficial Holders listed in Item 2 of this Master Ballot (whether properly completed or defective) or retain such Beneficial Holder Ballots for at least one (1) year from the Voting Deadline and disclose all information contained in such Beneficial Holder Ballots to the Bankruptcy Court, the Debtors, or the Reorganized Debtors, as the case may be, if requested.

Name of Nominee: _____
                   (*Print or type*)

Name of Proxy Holder or Agent for Nominee (if applicable): _____
                           (*Print or type*)

DTC Participant Number: _____

Signature: _____

Name of Signatory: _____
                   (*Print or type*)

Title: _____

Address: _____

_____

_____

Date Completed: _____

Email Address: _____

Phone Number: _____

7

**PLEASE COMPLETE AND EXECUTE THIS MASTER BALLOT AND RETURN IT TO THE SOLICITATION AGENT EITHER:**

    i.    **IN THE RETURN ENVELOPE PROVIDED OR BY SUBMITTING IT BY OVERNIGHT COURIER OR HAND DELIVERY TO THE FOLLOWING ADDRESS, SO AS IT IS ACTUALLY RECEIVED BY THE VOTING DEADLINE:**

**LIGADO NETWORKS, LLC BALLOT PROCESSING
C/O OMNI AGENT SOLUTIONS, INC.
5955 DE SOTO AVE., SUITE 100
WOODLAND HILLS, CA 91367**

    ii.    **BY EMAIL TO LIGADOBALLOTS@OMNIAGNT.COM; OR**

    iii.    **BY ELECTRONIC, ONLINE TRANSMISSION VIA THE SOLICITATION AGENT'S ONLINE PORTAL THE E-BALLOT PORTAL, BY VISITING HTTPS://OMNIAGENTSOLUTIONS.COM/LIGADO-BALLOTS. CLICK ON THE "BALLOTING" SECTION OF THE WEBSITE AND FOLLOW THE INSTRUCTIONS TO TRANSMIT THIS MASTER BALLOT.**

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT AT (866) 956-2139 (U.S. TOLL FREE), OR (747) 288-6375 (INTERNATIONAL), OR LIGADOINQUIRIES@OMNIAGNT.COM.**

**THE MASTER BALLOT SHOULD NOT BE SENT TO THE DEBTORS, THE BANKRUPTCY COURT, OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS.**

**THIS MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE, WHICH IS 4:00 P.M. EASTERN TIME, ON [JULY 24], 2025.**

## <u>INSTRUCTIONS FOR COMPLETING THIS MASTER BALLOT</u>

1.      The Debtors are soliciting votes of the holders of the Second Lien Notes Claims (Class 5 Claims) on the Plan attached as **<u>Exhibit A</u>** to the Disclosure Statement.

2.      You should immediately (and in no event later than three (3) business days after receipt) distribute the solicitation materials, including Beneficial Holder Ballots, to the Beneficial Holders of the Second Lien Notes for whom you are acting as Nominee and take any action required to enable each such Beneficial Holders to timely vote the Class 5 Claims that it holds through you before the Voting Deadline, which is **4:00 p.m. Eastern Time, on [July 24], 2025**.

3.      You may distribute the solicitation materials to your Beneficial Holders and collect their votes to accept or reject the Plan in accordance with your customary practices, including the use of "pre-validated" Beneficial Holder Ballots and "voting instruction forms" in lieu of (or in addition to) Beneficial Holder Ballots, through online voting, by phone, facsimile, or other electronic means.

4.      If you are transmitting the votes of any Beneficial Holder other than yourself, you may either:

   i.      "Pre-validate" each individual Beneficial Holder Ballot by signing the Beneficial Holder Ballot and including your DTC participant number, indicating the account number of the applicable Beneficial Holder and the principal amount of the Second Lien Notes held by you for such Beneficial Holder. Forward the pre-validated Beneficial Holder Ballot, together with the rest of the solicitation package, to each of your Beneficial Holders with the instructions that each such Beneficial Holder must (i) complete the remaining information requested on the Beneficial Holder Ballot, including its voting and opt-out decision, within five (5) Business Days after the Beneficial Holder's receipt of the solicitation package, and (ii) return its Beneficial Holder Ballot directly to the Solicitation Agent in the return envelope to be provided in the solicitation package, such that it is received by the Solicitation Agent on or before the Voting Deadline; **or**

   ii.     Forward a solicitation package to each of your Beneficial Holders along with the instruction to each Beneficial Holder to (i) fill in all Items on the Beneficial Holder Ballot and (ii) return its completed and executed  Beneficial Holder Ballot to you in a return envelope provided by and addressed to you. In such case, you will reflect the votes and elections of your Beneficial Holders on this Master Ballot in accordance with these instructions and return the Master Ballot to the Solicitation Agent on or before the Voting Deadline. You should advise the Beneficial Holders to return their Beneficial Holder Ballots (or otherwise transmit their votes) to you by a date calculated to allow you to prepare and return the Master Ballot to the Solicitation Agent so that it is actually received by the Solicitation Agent on or before the Voting Deadline.

5.    You should maintain copies of the Beneficial Ballots or a list of the Beneficial Holders for whom you "pre-validated" their Beneficial Holder Ballot for inspection for at least one (1) year after the Effective Date.

6.    With regard to each Beneficial Holder Ballot returned to you by your Beneficial Holders, you must: (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the customer name or account number assigned by you to such Beneficial Holder; (b) execute the Master Ballot; (c) transmit the Master Ballot to the Solicitation Agent such that it is received on or before the Voting Deadline; and (d) retain such Beneficial Holder Ballots, whether in hard copy or by electronic direction, in your files for a period of one (1) year after the Effective Date.  You may be ordered to produce the Beneficial Ballots to the Debtors or the Bankruptcy Court.

7.    You should not count the votes transmitted by a Beneficial Holder Ballot that: (a) is illegible or contains insufficient information to permit the identification of the Beneficial Holder; (b) are cast by a party that does not hold a Class 5 Claim; (c) is unsigned; (d) is not marked to accept or reject the Plan; and (e) is submitted by a party not entitled to cast a vote in Class 5.

8.    If your Master Ballot is received **after** the Voting Deadline and if the Voting Deadline is not extended, the votes transmitted thereby may be counted only at the discretion of the Debtors.  Additionally, **votes transmitted by the following Master Ballots will not be counted**:

    i.    any Master Ballot to the extent it is illegible or contains insufficient information to permit the identification of the relevant Beneficial Holders;

    ii.    any Master Ballot sent by facsimile or any electronic means other than via email at: LigadoBallots@OmniAgnt.com;[3]

    iii.    any Master Ballot that does not contain an original signature; and

    iv.    any Master Ballot submitted by any party that is not a registered holder of the Second Lien Notes underlying the Class 5 Claims identified in Item 1 of the Beneficial Holder Ballot.

9.    The method of delivery of the Master Ballot to the Solicitation Agent is at your election and risk.  Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **actually receives** the executed Master Ballot.  In all cases, you should allow sufficient time to assure timely delivery.

10.    If multiple Master Ballots received prior to the Voting Deadline reflect votes with respect to the same Class 5 Claims, the latest, timely received and properly completed Master Ballot will supersede and revoke any earlier received Master Ballots.

---

[3] Note, **only** Master Ballots may be transmitted by email.  All other Ballots submitted by email **will not** be counted.

11.     If a Beneficial Holder simultaneously casts inconsistent Beneficial Holder Ballots with respect to the same Claim, such Beneficial Holder Ballots should not be counted.

12.     **Please be sure to sign and date the Master Ballot**.  You should indicate that you are signing the Master Ballot in your capacity as a Nominee and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, submit proper evidence to the requesting party to so act on behalf of your Beneficial Holders.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

13.     The following Master Ballots will not be counted in determining the acceptance or rejection of the Plan: (a) any Master Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holders of the votes being transmitted; (b) any Master Ballot cast by a party that is not entitled to vote on the Plan; and (c) any unsigned Master Ballot.

14.     The following additional rules apply to Master Ballots:

i.      votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such Nominee in the Second Lien Notes as of the Voting Record Date, as evidenced by the record and depository listings.

ii.     votes submitted by Beneficial Holders, whether through a Master Ballot or pre-validated Beneficial Holder Ballots, will not be counted in excess of the record amount of the Second Lien Notes held by the applicable Nominee;

iii.    to the extent that conflicting votes or "over-votes" are submitted, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, the Solicitation Agent will attempt to reconcile discrepancies with the Nominee;

iv.     to the extent that over-votes on a Master Ballot or pre-validated Beneficial Holder Ballots are not reconcilable prior to the preparation of the voting certification, the Solicitation Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Beneficial Ballots that contained the over-vote, but only to the extent of the Nominee's position in the Second Lien Notes; and

v.      for purposes of tabulating votes, each Beneficial Holder holding through a particular account will be deemed to have voted the principal amount of its Second Lien Notes in that particular account, although the Solicitation Agent may be asked to adjust such principal amount.

### PLEASE SUBMIT YOUR MASTER BALLOT PROMPTLY!

**IF YOU HAVE ANY QUESTIONS REGARDING THIS MASTER BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE SOLICITATION AGENT AT (866) 956-2139 (DOMESTIC TOLL-FREE) OR +(747) 288-6375 (INTERNATIONAL)**

**NOTHING CONTAINED IN THESE INSTRUCTIONS OR IN THE ENCLOSED DOCUMENTS WILL RENDER YOU OR ANY OTHER ENTITY THE AGENT OF THE DEBTORS OR THE SOLICITATION AGENT OR AUTHORIZE YOU OR ANY OTHER ENTITY TO USE ANY DOCUMENT OR MAKE ANY STATEMENTS ON BEHALF OF ANY OF THE DEBTORS WITH RESPECT TO THE PLAN, EXCEPT FOR THE STATEMENTS CONTAINED IN THE DOCUMENTS ENCLOSED HEREWITH.**

## Exhibit 1

**Please indicate below the CUSIP/ISIN to which this Master Ballot pertains.**

| | | |
|---|---|---|
| ☐ | 17.5% PIK Senior Secured Second Lien Notes due 2024 | 144A CUSIP: 53225H AC4<br>144A ISIN: US53225HAC43 |
| ☐ | 17.5% PIK Senior Secured Second Lien Notes due 2024 | REG S CUSIP: U5364HAB4<br>REG S ISIN: USU5364HAB43 |

**<u>Exhibit 2.F</u>**

**Class 5 Beneficial Holder Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| LIGADO NETWORKS LLC *et al.*,[1] | ) | Case No. 25-10006 (TMH) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |
|  | ) |  |

**BENEFICIAL BALLOT FOR VOTING TO ACCEPT**
**OR REJECT THE CHAPTER 11 PLAN OF LIGADO NETWORKS LLC ET AL.**

**CLASS 5 (SECOND LIEN NOTES CLAIMS)**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED IN ACCORDANCE WITH THE INSTRUCTIONS BELOW SO AS TO BE ACTUALLY RECEIVED BY THE DEBTORS' SOLICITATION AGENT BY [JULY 24], 2025, AT 4:00 P.M. (ET) (THE "VOTING DEADLINE").**

---

The above-captioned debtors (the "Debtors") are soliciting votes on the *Joint Chapter 11 Plan of Ligado Networks LLC and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan") described in (and attached to) the *Disclosure Statement for Joint Chapter 11 Plan of Ligado Networks LLC, and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement").[2]  You are receiving this ballot (the "Beneficial Holder Ballot") because your broker, bank, or other nominee, or the agent of your broker, bank, or other nominee (each of the foregoing, a "Nominee") has identified you as a beneficial holder (a "Beneficial Holder") of the notes

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or Disclosure Statement, as applicable.

identified in **Exhibit 1** attached hereto (the "Second Lien Notes") as of **[**June 20**]**, 2025 (the "Voting Record Date") and, accordingly, you hold a Class 5 Claim under the Plan and have the right to vote to accept or reject the Plan.

Nominees are authorized to collect votes to accept or reject the Plan from their Beneficial Holders in accordance with their customary practice, including the use of a "voting instruction form" in lieu of (or in addition to) this Beneficial Ballot or through online voting, by phone, facsimile, or other electronic means.  Alternatively, your Nominee may choose to "pre-validate" your DTC Beneficial Holder Ballot by signing the Beneficial Holder Ballot and adding the Nominee's DTC participant number, the Beneficial Holder's account number, and the principal amount of your Class 5 Claim as of the Voting Record Date.  As part of the pre-validation process, your Nominee will instruct you to submit your Beneficial Holder Ballot directly to the Solicitation Agent on or before the Voting Deadline.

This Beneficial Holder Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan, making the election to opt out of the releases described below, if applicable, and making certain certifications.  If you believe you have received this Beneficial Holder Ballot in error, please *immediately* contact Omni Agent Solutions, Inc., the proposed solicitation agent (the "Solicitation Agent"), at the address, telephone number, or email address set forth below.

Your rights are described in the Plan and the Disclosure Statement, both of which you should have received with this Beneficial Holder Ballot. If you have not received such documents or have questions regarding the submission of your vote on the Plan and/or deadline to do so, please contact: (i) if you are both the Beneficial Holder and the registered holder of the Second Lien Notes, the Solicitation Agent; or (ii) if you are not the registered holder, your Nominee. You may contact the Solicitation Agent by: (i) emailing LigadoInquiries@OmniAgnt.com with a reference to "Ligado" in the subject line, or (ii) at the following telephone numbers: (866) 956-2139 (domestic toll free) or (747) 288-6357 (international).

The Plan may be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims that actually vote on the Plan in at least one Class of Claims entitled to vote on the Plan (not including the votes of any insiders) and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on each holder of Class 5 Claims regardless of whether or not such holder voted or voted against the Plan.  Please review the Disclosure Statement for more information.

To have your vote count as either an acceptance or rejection of the Plan, you must complete and sign this Beneficial Ballot and return it: (i) if you are the registered holder, directly to the Solicitation Agent on or before **[July 24], 2025, at 4:00 p.m. (prevailing Eastern Time)** (the "Voting Deadline") using the enclosed self-addressed, postage paid envelope; or (ii) if you are not the registered holder, in accordance with your Nominee's instructions, either (a) to your Nominee as promptly as possible and in sufficient time to allow your Nominee to submit a master ballot (a "Master Ballot") reflecting your vote to the Solicitation Agent before the Voting Deadline, or (b) if

your Nominee provided you with a pre-validated Beneficial Holder Ballot, directly to the Solicitation Agent on or before the Voting Deadline.

**You should review the Disclosure Statement, the Plan, and the instructions contained in this Beneficial Ballot before you vote.  You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Class 5 Claim.  This Ballot pertains solely to your Class 5 Claim.  If you hold Claims or Interests in more than one Class that is entitled to vote on the Plan, you will receive a ballot for each such Class.**

**Your vote on this Beneficial Holder Ballot shall be applied to each Debtor against whom you have an allowed Class 5 Claim.**

<u>Item 1.</u> **Principal Amount of Class 5 Claim.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Beneficial Holder of the Second Lien Notes identified on **<u>Exhibit 1</u>** in the following principal amount (insert amount in box below).  If you do not know the principal amount of your Second Lien Notes as of the Voting Record Date, please contact your Nominee for this information:

<div style="border:1px solid;padding:1em;text-align:center;">

Principal Amount of Claim[3]:


$_____

</div>

**\*\*<u>Exhibit 1</u>** hereto lists the CUSIP number for the Second Lien Notes underlying your Class 5 Claim.  You should confirm the CUSIP number provided in **<u>Exhibit 1</u>** matches your Second Lien Notes.\*\***

<u>Item 2.</u> **Vote on Plan.**

The holder of the Class 5 Claim set forth in Item 1 votes to (please check one):

| | |
|---|---|
| **<u>ACCEPT</u>** (vote FOR) the Plan | **<u>REJECT</u>** (vote AGAINST) the Plan |

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**Any Beneficial Ballot that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan, will not be counted.**

<u>Item 3.</u> **Release.**

**WHETHER YOU VOTE TO ACCEPT OR REJECT THE PLAN OR ABSTAIN FROM**

---

[3]    For voting purposes only.  Subject to tabulation rules.

**VOTING ALTOGETHER, UNLESS YOU CHECK THE "OPT OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASE OF THE RELEASED PARTIES SET FORTH IN ARTICLE VIII.D.2 OF THE PLAN COPIED BELOW (THE "THIRD-PARTY RELEASE").**

Article VIII of the Plan contains the following provisions:

A.    *Compromise and Settlement*

**The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their Estates, and all holders of Claims or Interests, (2) fair, equitable, and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to applicable bankruptcy law. In addition, the allowance, classification, and treatment of any Allowed Claims of a Released Party take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist between the Debtors and any Released Party and, as of the Effective Date, any and all such Causes of Action are settled, compromised, and released as set forth in the Plan. The Confirmation Order shall authorize and approve the releases by all Entities of all such contractual, legal, and equitable subordination rights and Causes of Action that are satisfied, compromised, and settled pursuant hereto. Nothing in the Plan shall compromise or settle, in any way whatsoever, any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have against any Entity that is not a Released Party.**
**In accordance with the provisions of the Plan, and pursuant to Bankruptcy Rule 9019, without any further notice to, or action, order, or approval of, the Bankruptcy Court or the Canadian Court, after the Effective Date, the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle (1) Claims (including Causes of Action) against and Interests in the Debtors not previously Allowed (if any) and (2) claims (including Causes of Action) against other Entities.**

B.    *Discharge of Claims and Termination of Interests*

**Except as otherwise provided in the Plan, effective as of the Effective Date: (1) the distributions, rights, and treatment that are provided in the Plan for all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, whether known or unknown, against or in the Debtors or any of their assets, property, or Estates, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date and any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date; (2) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (3) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code; and (4) all entities shall be precluded from asserting against the Debtors, the Debtors'**

Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date. Notwithstanding the foregoing, all Existing Common Units shall remain in full force and effect and shall be governed by the terms of the applicable New Organizational Documents, including the Second Amended and Restated Operating Agreement. The Confirmation Order shall be a judicial determination, subject to the Effective Date occurring, of the discharge of all Claims and Interests except as otherwise expressly provided in the Plan.

C.    *Release of Liens*

Except as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit First Lien Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and the effectiveness of the Exit First Lien Facility Documents, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall automatically revert to the Reorganized Debtors and each of their successors and assigns, and the Agents/Trustees and the DIP Agent shall be authorized to release any such mortgages, deeds of trust, Liens, pledges, or other security interests held by such holder and to take such actions as may be requested by the Reorganized Debtors to evidence the release of such mortgages, deeds of trust, Liens, pledges, or other security interests, including the execution, delivery, and filing or recording of any related releases or discharges as may be requested by the Reorganized Debtors or may be required in order to effectuate the foregoing.

D.    *Releases of Released Parties*

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to applicable bankruptcy law, of the releases described in this Article VIII.D and shall constitute the Bankruptcy Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by this Article VIII.D; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Entity (including the Debtors) asserting any claim or Cause of Action released pursuant to this Article VIII.D.

1.    **Releases by the Debtors**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever

released and discharged, by and on behalf of each Debtor, each Reorganized Debtors, and each Estate, in each case, on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action, whether prepetition or postpetition, derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws, or otherwise that the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, (ii) any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have in connection with the Ligado Takings Case, (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit First Lien Facility Documents, or any Claim or obligation arising under the Plan and (iv) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct.

2.      Releases by Holders of Claims or Interests

As of the Effective Date, except for (i) the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring, (ii) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct, or (iii) the rights provided or reserved for under the AST Definitive Agreements Order, or (iv) as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and

6

forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case, from any and all Claims and Causes of Action whatsoever, whether prepetition or postpetition (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates, the Chapter 11 Cases the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors (including any of the Debtors' predecessors) or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors (including any of the Debtors' predecessors) and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.

Entry of the Confirmation Order shall, subject to the occurrence of the Effective Date, constitute the Bankruptcy Court's approval of the releases contained in the Plan and a finding that each release described is (i) in exchange for the good and valuable consideration provided by the Released Parties, including without limitation, the Released Parties' contributions to implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the holders of Claims and Interests, (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a sound exercise of the Debtors' business judgment.

Nothing in this Plan prohibits, precludes, or enjoins any Governmental Unit from asserting or filing a proof of Claim on or before the Governmental Bar Date.[4]

---

[4]    "Governmental Bar Date" shall have the meaning set forth in the *Order Establishing (I) Various Bar Dates for Filing Proofs of Claim, (II) Approving the Form and Manner of Filing Proofs of Claim, (III) Approving Notices of Bar Dates, and (IV) Granting Related Relief* [Docket No. 340].

E.    *Exculpation*

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action based on any act or omission occurring from the Petition Date through the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the Restructuring Support Agreement, the Restructuring, the DIP Facility, the DIP Orders, the DIP Documents, any Canadian Court Recognition Order, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes gross negligence, intentional fraud or willful misconduct as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code and have participated in good faith with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

F.    *Injunction*

Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests or Causes of Action or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (4) asserting any right of setoff, subrogation, or recoupment

8

of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities released or settled pursuant to the Plan.

***

UNDER THE PLAN, "RELEASING PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH, (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (VII) WITH RESPECT TO EACH OF THE FOREGOING PERSONS IN CLAUSES (I) THROUGH (VIII), SUCH PERSONS' PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES (INCLUDING AFFILIATES OF ANY PREDECESSORS), CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS (INCLUDING EQUITY HOLDERS OF ANY PREDECESSORS), MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES, (VIII) THE HOLDERS OF ALL CLAIMS OR INTERESTS WHOSE VOTE TO ACCEPT OR REJECT THE PLAN IS SOLICITED BUT DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN **D.2**, AND (IX) THE HOLDERS OF ALL CLAIMS AND INTERESTS WHO WERE GIVEN NOTICE OF THE OPPORTUNITY AND SERVED WITH A PROVIDED FORM TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN **D.2** BUT DID NOT TIMELY OPT OUT.

UNDER THE PLAN, "RELEASED PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH,  (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) EACH OF THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (IX) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (I) THROUGH (VIII), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES, CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS, MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND

**ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES; PROVIDED, HOWEVER, THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) FILES AN OBJECTION TO THE PLAN OR (Y) OPTS OUT OF THE RELEASES SET FORTH IN <u>D.2</u>, AS APPLICABLE, SHALL NOT BE A "RELEASED PARTY."**

       **IF YOU DO NOT CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE THIRD-PARTY RELEASE SET FORTH ABOVE.**

       **IF YOU DO NOT CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES OF THE RELEASED PARTIES SET FORTH ABOVE.**

       **UNLESS YOU CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, BY ACCEPTING DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT OF YOUR ALLOWED CLAIM OR INTEREST YOU WILL BE DEEMED TO HAVE AFFIRMATIVELY CONSENTED TO BE BOUND BY THE TERMS OF THE PLAN, INCLUDING, WITHOUT LIMITATION, THE RELEASES AND INJUNCTIONS SET FORTH ABOVE.**

**The holder (or authorized signatory of each holder) of the Class 5 Claim identified in Item 1 elects to:**

<div style="border: 1px solid black; text-align: center;">

**Opt out of the Third-Party Release contained in Article VIII.D.2 of the Plan.**

</div>

**Item 4.** **Certification with Respect to Class 5 Claims Held in Additional Accounts.**

By completing and returning this Beneficial Holder Ballot, the Beneficial Holder of the Class 5 Claim identified in Item 1 certifies that: (a) this Beneficial Holder Ballot is the only Beneficial Ballot submitted for the Class 5 Claims identified in Item 1, except as identified in the following table, and (b) *all* Beneficial Holder Ballots for Class 5 Claims submitted by the Beneficial Holder indicate the same vote to accept or reject the Plan that the Beneficial Holder has indicated in Item 2 of this Beneficial Holder Ballot. **If you hold Class 5 Claims through more than one Nominee, you must identify all Class 5 Claims held through each such Nominee in the following table and must vote all such Claims to either accept or reject the Plan on all Beneficial Holder Ballots you submit.**

ONLY COMPLETE ITEM 4 IF YOU HAVE SUBMITTED OTHER BENEFICIAL BALLOTS ON ACCOUNT OF CLASS 5 SECOND LIEN NOTES CLAIMS

| Name of Nominee Through Which You Hold and Vote Other Class 5 Claims[5] | Account Number with Such Other Nominee | Principal Amount of Other Class 5 Claims Voted Through Other Nominee | CUSIP of Other Class 5 Claims Voted |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

---

[5] Insert your name if the Class 5 Claims are held by you in your own name or, if held in street name through a Nominee, insert the name of your Nominee.

**Item 5.** **Certifications.**

By signing this Beneficial Holder Ballot, the undersigned certifies that:

1. as of the Voting Record Date, either: (a) it is the Beneficial Holder of the Class 5 Claim being voted on this Ballot; or (b) it is an authorized signatory for an entity that is the Beneficial Holder of such Class 5 Claim;

2. it is eligible to vote on the Plan and make an election with respect to the Third-Party Release;

3. it has received a copy of the Disclosure Statement and the other solicitation materials, including the Plan, and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

4. it has cast the same vote with respect to all of its Class 5 Claims;

5. no other Beneficial Holder Ballots with respect to the Class 5 Claims identified in Item 1 have been cast or, if any other Beneficial Holder Ballots have been cast with respect to such Claims, then any such Beneficial Holder Ballots cast earlier are hereby revoked;

6. it acknowledges and understands that a vote to accept the Plan constitutes an acceptance of the treatment of the Class 5 Claim identified in Item 1; and

7. it acknowledges and understands that the Debtors may make changes to the Plan as may be reasonably necessary and that, to the extent such changes are not material, the Debtors will not re-solicit acceptances or rejections of the Plan.

Name of Beneficial Holder: _____
                                        *(print or type)*

Signature: _____

Name Of Signatory: _____
                                  *(if other than Beneficial Holder)*

Title: _____

Address: _____

_____

Telephone Number and email: _____

Date Completed: _____

**PLEASE COMPLETE, SIGN, AND DATE THIS
BENEFICIAL HOLDER BALLOT AND RETURN IT *PROMPTLY* IN ACCORDANCE
WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE.**

> **IF YOUR NOMINEE INSTRUCTS YOU TO SUBMIT YOUR VOTE BY VOTER INFORMATION FORM, E-MAIL, TELEPHONE CALL, OR OTHER CUSTOMARY METHOD, YOU ARE AUTHORIZED TO FOLLOW YOUR NOMINEE'S INSTRUCTIONS IN LIEU OF SUBMITTING THIS BENEFICIAL HOLDER BALLOT.**
>
> **THE VOTING DEADLINE FOR THE RECEIPT BY THE SOLICITATION AGENT OF THE MASTER BALLOT REFLECTING YOUR VOTE IS [JULY 24], 2025 AT 4:00 P.M. (PREVAILING EASTERN TIME).**
>
> **IF YOUR NOMINEE PROVIDED YOU WITH A PRE-VALIDATED BENEFICIAL HOLDER BALLOT, SUCH BENEFICIAL HOLDER BALLOT, ONCE EXECUTED BY YOU, MUST BE SUBMITTED SUCH THAT IT IS RECEIVED BY THE SOLICITATION AGENT ON OR BEFORE THE VOTING DEADLINE. OTHERWISE, YOUR PROPERLY COMPLETED AND EXECUTED BENEFICIAL HOLDER BALLOT MUST BE RECEIVED BY YOUR NOMINEE WITH SUFFICIENT TIME TO PERMIT YOUR NOMINEE TO DELIVER YOUR VOTE TO THE SOLICITATION AGENT ON OR BEFORE THE VOTING DEADLINE.**

**INSTRUCTIONS FOR COMPLETING BENEFICIAL BALLOTS**

1.  The Debtors are soliciting votes of the holders of certain Claims with respect to the Plan attached to the Disclosure Statement, which is being sent to you together with this Beneficial Holder Ballot.  Capitalized terms used in the Beneficial Holder Ballot or in these instructions but not otherwise defined therein or herein have the meanings set forth in the Plan or Disclosure Statement, as applicable.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE VOTING**.

2.  The Plan may be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims in at least one Class of impaired Claims and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

3.  If you are not both a beneficial and registered holder of the Class 5 Claim indicated in Item 1 of the Ballot, to have your vote counted, you must submit it through your Nominee (by Beneficial Ballot or otherwise according to the instructions received from your Nominee) with sufficient time to permit your Nominee to submit a Master Ballot reflecting your vote so that such Master Ballot is <u>actually</u> <u>received</u> by the Solicitation Agent on or prior to the Voting Deadline.

4.  The Voting Deadline for the receipt of Master Ballots by the Solicitation Agent is **[July 24], 2025 at 4:00 p.m. (prevailing Eastern Time)**.  Your completed Beneficial Ballot must be received by your Nominee with sufficient time to permit your Nominee to deliver your votes to the Solicitation Agent on or before the Voting Deadline.

5.  To ensure that your vote is counted for purposes of accepting or rejecting the Plan:

    i.   If your Nominee provided you with a pre-validated Beneficial Holder Ballot, please complete the remaining items on your pre-validated Beneficial Holder Ballot and return it directly to the Solicitation Agent by no later than the Voting Deadline, by either (a) using the return envelope provided with this Beneficial Holder Ballot, (b) if no return envelope is provided, by regular mail, overnight courier, or hand delivery to the Solicitation Agent's mailing address set forth above so that it is *actually received* by the Solicitation Agent on or before the Voting Deadline, which is **[July 24], 2025, at 4:00 p.m.**, Prevailing Eastern Time, or (c) via online submission by using the Solicitation Agent's online portal, by visiting https://omniagentsolutions.com/Ligado-Ballots, clicking on the "Balloting" section of the website, and following the instructions; OR

    ii.  if your Nominee has not pre-validated your Beneficial Holder Ballot, then you must submit your properly filled and executed Beneficial Holder Ballot to your Nominee in the manner directed by your Nominee with sufficient time to permit your Nominee to submit a Master Ballot reflecting your vote so that such Master Ballot is actually received by the Solicitation Agent on or before the Voting Deadline, which is **[July 24], 2025, at 4:00 p.m.**, Prevailing Eastern Time.  You may instruct

your Nominee to vote on your behalf in the Master Ballot by: (i) completing the Beneficial Holder Ballot; (ii) indicating your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Beneficial Holder Ballot; (iii) if applicable, indicating that you elect to opt out of the Third-Party Release in the box provided in Item 3 of the Beneficial Holder Ballot; and (iv) signing and returning the Beneficial Holder Ballot to your Nominee in accordance with the instructions provided by your Nominee.

6.      Except as otherwise provided herein or unless waived by the Debtors or permitted by order of the Bankruptcy Court, your vote will not be counted unless either (i) if you are a registered holder or you are voting through a pre-validated Beneficial Holder Ballot, your Beneficial Holder Ballot is received by the Solicitation Agent on or prior to the Voting Deadline; or (ii) a Master Ballot reflecting your vote is delivered by your Nominee to the Solicitation Agent on or before the Voting Deadline.

7.      The method of delivery of your Beneficial Holder Ballot is at your election and risk.   Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **actually** **receives** your executed Ballot.   You should allow sufficient time to assure timely delivery.

8.      If you cast more than one Beneficial Holder Ballot voting the same Class 5 Claims, the last valid Beneficial Holder Ballot (or Master Ballot reflecting your vote) received by the Solicitation Agent on or before the Voting Deadline shall be deemed to reflect your intent, and thus, supersede any prior Beneficial Holder Ballot.

9.      If you cast a timely Beneficial Holder Ballot that is properly completed and executed but does not indicate either an acceptance or rejection of the Plan, your vote will not be counted.

10.     If you cast a timely Beneficial Holder Ballot that is properly completed and executed but indicates both an acceptance and a rejection of the Plan, your vote will not be counted.

11.     This Beneficial Holder Ballot does **not** constitute, and will not be deemed to be, (a) a proof of Claim or (b) an assertion or admission with respect to any Claim.

12.     You will be deemed to have voted the full amount of your Class 5 Claim and are not entitled to split your vote.  Any Beneficial Holder Ballot that partially accepts and partially rejects the Plan will not be counted.

13.     **The following Beneficial Holder Ballots will *not* be counted for purposes of accepting or rejecting the Plan or, to the extent made, the opt out election unless the Debtors, in their sole discretion, determine otherwise**:

        i.      Any Beneficial Holder Ballot received after the Voting Deadline or received too late to allow your Nominee to submit a Master Ballot reflecting your vote on or before the Voting Deadline, unless the Debtors have granted an extension of the Voting Deadline in writing with respect to such ballot;

ii.    Any Beneficial Holder Ballot that is illegible or contains insufficient information to permit the identification of the claimant;

iii.    Any Beneficial Holder Ballot cast by a person or entity that does not hold a Claim in a Class that is entitled to vote to accept or reject the Plan;

iv.    Any Beneficial Holder Ballot cast by a person or entity that is not entitled to vote, even if such person holds a Claim in a Class that is entitled to vote on the Plan;

v.    Any unsigned Beneficial Holder Ballot;

vi.    Any Beneficial Holder Ballot with respect to a vote that the Court determines, after notice and a hearing, was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code; or

vii.    Any Beneficial Holder Ballot transmitted by means not specifically approved in these instructions.

14.    Please be sure to sign and date your Beneficial Holder Ballot.  You should indicate if you are signing a Beneficial Holder Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise in a fiduciary or representative capacity and, if required or requested by the Solicitation Agent, the Debtors, your Nominee, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Beneficial Holder Ballot.

15.    If you hold Class 5 Claims through more than one Nominee or through multiple accounts, you should execute a separate Beneficial Holder Ballot for each block of the Second Lien Notes you hold through any one Nominee and you must submit each such Beneficial Holder Ballot in accordance with the applicable Nominee's instructions.

16.    Subject to contrary orders of the Bankruptcy Court, any defects or irregularities in connection with the delivery of your Beneficial Holder Ballot must be cured prior to the Voting Deadline or such Beneficial Ballot (or a Master Ballot reflecting your vote) will not be counted. Notwithstanding the foregoing, the Debtors may, in their sole discretion, waive any defect or irregularity as to any particular Beneficial Holder Ballot or Master Ballot at any time, either before or after the Voting Deadline.

17.    Neither the Debtors, the Solicitation Agent, your Nominee, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to your Beneficial Ballot, nor will any of them incur any liability for failure to provide such notification.

18.    This Beneficial Holder Ballot is not a letter of transmittal and may not be used for any purpose other than to: (i) vote to accept or reject the Plan; (ii) if applicable, opt-out of the Third-Party Release, and (iii) make the required certifications. Accordingly, at this time, you should not surrender the instruments representing or evidencing your Second Lien

16

Notes Claims, and neither the Debtors nor Solicitation Agent will accept delivery of any such instruments.

19.    You shall be deemed to have consented to the Third-Party Release unless you affirmatively opt out of the Third-Party Release by checking the box in Item 3 above, regardless of whether you voted to accept or reject the Plan or abstain from voting altogether.

20.    This Beneficial Holder Ballot does not constitute and will not be deemed to be: (a) a proof of Claim; or (b) an assertion or admission of a Claim.

**PLEASE SUBMIT YOUR BENEFICIAL HOLDER BALLOT PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL HOLDER BALLOT, THE VOTING OR THE OPT OUT PROCEDURES, PLEASE CONTACT YOUR NOMINEE OR THE SOLICITATION AGENT, AS APPLICABLE.**

### Exhibit 1

**Please indicate below the CUSIP/ISIN to which this Beneficial Holder Ballot pertains.**

| | | |
|---|---|---|
| ☐ | 17.5% PIK Senior Secured Second Lien Notes due 2024 | 144A CUSIP: 53225H AC4<br>144A ISIN: US53225HAC43 |
| ☐ | 17.5% PIK Senior Secured Second Lien Notes due 2024 | REG S CUSIP: U5364HAB4<br>REG S ISIN: USU5364HAB43 |

**<u>Exhibit 2.G</u>**

**Class 9 Ballot**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIGADO NETWORKS LLC *et al.*,[1] | ) | Case No. 25-10006 (TMH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | |

## BALLOT FOR VOTING TO ACCEPT OR REJECT
## THE CHAPTER 11 PLANS OF LIGADO NETWORKS, LLC ET AL.

### CLASS 9 (EXISTING SERIES A-0 PREFERRED INTERESTS)

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**

**IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED IN ACCORDANCE WITH THE INSTRUCTIONS BELOW SO AS TO BE ACTUALLY RECEIVED BY THE DEBTORS' SOLICITATION AGENT BY [JULY 24], 2025, AT 4:00 P.M. (ET) (THE "VOTING DEADLINE").**

---

The above-captioned debtors (the "Debtors") are soliciting votes on the *Joint Chapter 11 Plan of Ligado Networks LLC and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan") described in (and attached to) the *Disclosure Statement for Joint Chapter 11 Plan of Ligado Networks LLC, and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement")[2] included in the package (the "Solicitation Materials") you are receiving with this ballot (the "Ballot").

You are receiving this Ballot because the Debtors' records indicate that you may be a holder, a potential holder, an investment advisor, a sub-advisor, or a manager of various

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or Disclosure Statement, as applicable.

funds/accounts/investors with respect to an interest in the Existing Series A-0 Preferred Units (a "<u>Class 9 Interest</u>") as of **[**June 20**]**, 2025 (the "<u>Voting Record Date</u>") and, as such, have the right to vote to accept or reject the Plan.

As described in more detail in the Disclosure Statement and the Plan, if the Plan is confirmed and the Effective Date occurs, then, subject to Section III.B of the Plan and except to the extent you agree to less favorable treatment, each holder of Allowed Existing Series A-0 Preferred Units shall retain its Existing Series A-0 Preferred Units, as amended by the Second Amended and Restated Operating Agreement, in the form of the New Series B-0 Preferred Units.

**YOUR VOTE WILL BE APPLIED TO THOSE DEBTORS WHO ARE LIABLE TO YOU ON ACCOUNT OF YOUR CLASS 9 INTERESTS.**

Your rights are described in the Disclosure Statement. If you received the Solicitation Materials in electronic form and desire paper copies of any of them, or if you need to obtain additional Solicitation Materials, you may obtain them at no charge from Omni Agent Solutions, Inc. (the "<u>Solicitation Agent</u>") by: (i) emailing <u>LigadoInquiries@OmniAgnt.com</u> with a reference to "Ligado" in the subject line, or (ii) at the following telephone numbers: (866) 956-2139 (domestic toll free) or (747) 288-6357 (international).

On the Petition Date, the website <u>https://omniagentsolutions.com/Ligado</u> will become publicly available and contain important information, hearing dates, and other key deadlines, as well as the docket for the Debtors' chapter 11 cases. You may also obtain copies of any pleadings to be filed in these cases for a fee via PACER at: http://www.deb.uscourts.gov.

This Ballot may not be used for any purpose other than for (i) casting your vote to accept or reject the Plan, (ii) indicating your election to opt out of certain releases described below, if applicable, and (iii) making certain certifications with respect to your vote. If you believe you have received this Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent **immediately** at the email address set forth above.

**You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Class 9 Interest. This Ballot pertains solely to your Class 9 Interest. If you hold Claims or Interests in more than one Class that is entitled to vote on the Plan, you will receive a ballot for each such Class.**

**PLEASE SUBMIT YOUR BALLOT BY ONE OF THE FOLLOWING TWO METHODS:**

<u>**Via Paper Ballot**</u>**. Complete, sign, and date this Ballot and return it, properly executed, promptly via first class mail (or in the enclosed reply envelope), overnight courier, or hand delivery to:**

<div align="center">

**Ligado Networks, LLC Ballot Processing**
**c/o Omni Agent Solutions, Inc.**
**5955 De Soto Ave., Suite 100**
**Woodland Hills, CA 91367**

</div>

**IF YOU WOULD LIKE TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND PROVIDE THE ANTICIPATED DATE AND TIME OF DELIVERY AT LEAST TWENTY-FOUR (24) HOURS IN ADVANCE.**

<u>**OR**</u>

<u>**Via Online Submission**</u>. **Submit your Ballot via the Solicitation Agent's online portal (the "<u>E-Ballot Portal</u>"), by visiting https://omniagentsolutions.com/Ligado-Ballots.   Click on the "Balloting" section of the website and follow the instructions to submit your Ballot.**

**The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**If you cast a Ballot using the E-Ballot Portal, you should NOT also submit a paper Ballot.**

**IF YOU WISH TO SUBMIT YOUR BALLOT THROUGH THE ONLINE E-BALLOT PORTAL BUT ARE UNABLE TO DO SO, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND SOMEONE WILL PROVIDE ASSISTANCE.**

**Item 1**. **Principal Amount of Class 9 Interest.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of a holder) of a Class 9 Interest in the following amount (insert amount in box below):

$\$^3$_____

**Item 2**. **Vote For or Against the Plan.**

The holder of the Class 9 Interest set forth in Item 1 votes to (please check only **one** box):

☐    **ACCEPT** (vote FOR) the Plan          ☐    **REJECT** (vote AGAINST) the Plan

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**Any Ballot that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan, will not be counted.**

**Item 3**. **Important Information Regarding the Releases of Claims by Holders of Claims or Interests**

**WHETHER YOU VOTE TO ACCEPT OR REJECT THE PLAN OR ABSTAIN FROM VOTING ALTOGETHER, UNLESS YOU CHECK THE "OPT OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES OF THE RELEASED PARTIES SET FORTH IN ARTICLE VIII.D.2 OF THE PLAN COPIED BELOW (THE "THIRD-PARTY RELEASE").**

**Article VIII of the Plan contains the following provisions:**

A.    ***Compromise and Settlement***

**The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their Estates, and all holders of Claims or Interests, (2) fair, equitable, and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to applicable bankruptcy law.  In addition, the allowance, classification, and treatment of any Allowed Claims of a Released Party take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist between the Debtors and any Released Party and, as of the Effective Date, any and all such Causes of Action are settled, compromised, and released as set forth in the Plan.  The**

---

[3]    For voting purposes only.  Subject to tabulation rules.

Confirmation Order shall authorize and approve the releases by all Entities of all such contractual, legal, and equitable subordination rights and Causes of Action that are satisfied, compromised, and settled pursuant hereto.  Nothing in the Plan shall compromise or settle, in any way whatsoever, any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have against any Entity that is not a Released Party.

In accordance with the provisions of the Plan, and pursuant to Bankruptcy Rule 9019, without any further notice to, or action, order, or approval of, the Bankruptcy Court or the Canadian Court, after the Effective Date, the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle (1) Claims (including Causes of Action) against and Interests in the Debtors not previously Allowed (if any) and (2) claims (including Causes of Action) against other Entities.

B.    *Discharge of Claims and Termination of Interests*

Except as otherwise provided in the Plan, effective as of the Effective Date: (1) the distributions, rights, and treatment that are provided in the Plan for all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, whether known or unknown, against or in the Debtors or any of their assets, property, or Estates, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date and any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date; (2) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (3) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code; and (4) all entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date.  Notwithstanding the foregoing, all Existing Common Units shall remain in full force and effect and shall be governed by the terms of the applicable New Organizational Documents, including the Second Amended and Restated Operating Agreement.  The Confirmation Order shall be a judicial determination, subject to the Effective Date occurring, of the discharge of all Claims and Interests except as otherwise expressly provided in the Plan.

C.    *Release of Liens*

Except as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit First Lien Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and the effectiveness of the Exit First Lien Facility Documents, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title,

and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall automatically revert to the Reorganized Debtors and each of their successors and assigns, and the Agents/Trustees and the DIP Agent shall be authorized to release any such mortgages, deeds of trust, Liens, pledges, or other security interests held by such holder and to take such actions as may be requested by the Reorganized Debtors to evidence the release of such mortgages, deeds of trust, Liens, pledges, or other security interests, including the execution, delivery, and filing or recording of any related releases or discharges as may be requested by the Reorganized Debtors or may be required in order to effectuate the foregoing.

D.    *Releases of Released Parties*

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to applicable bankruptcy law, of the releases described in this Article VIII.D and shall constitute the Bankruptcy Court's finding that such releases are:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by this Article VIII.D; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Entity (including the Debtors) asserting any claim or Cause of Action released pursuant to this Article VIII.D.

1.    **Releases by the Debtors**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of each Debtor, each Reorganized Debtors, and each Estate, in each case, on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action, whether prepetition or postpetition, derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws, or otherwise that the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual

arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, (ii) any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have in connection with the Ligado Takings Case, (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit First Lien Facility Documents, or any Claim or obligation arising under the Plan and (iv) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct.

2.      Releases by Holders of Claims or Interests

As of the Effective Date, except for (i) the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring, (ii) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct, or (iii) the rights provided or reserved for under the AST Definitive Agreements Order, or (iv) as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case, from any and all Claims and Causes of Action whatsoever, whether prepetition or postpetition (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates, the Chapter 11 Cases the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors (including any of the Debtors' predecessors)

or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors (including any of the Debtors' predecessors) and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.

Entry of the Confirmation Order shall, subject to the occurrence of the Effective Date, constitute the Bankruptcy Court's approval of the releases contained in the Plan and a finding that each release described is (i) in exchange for the good and valuable consideration provided by the Released Parties, including without limitation, the Released Parties' contributions to implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the holders of Claims and Interests, (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a sound exercise of the Debtors' business judgment.

Nothing in this Plan prohibits, precludes, or enjoins any Governmental Unit from asserting or filing a proof of Claim on or before the Governmental Bar Date.[4]

E.    *Exculpation*

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action based on any act or omission occurring from the Petition Date through the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the Restructuring Support Agreement, the Restructuring, the DIP Facility, the DIP Orders, the DIP Documents, any Canadian Court Recognition Order, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes gross negligence, intentional fraud or willful misconduct as determined by a Final Order, but in all respects

---

[4]    "Governmental Bar Date" shall have the meaning set forth in the *Order Establishing (I) Various Bar Dates for Filing Proofs of Claim, (II) Approving the Form and Manner of Filing Proofs of Claim, (III) Approving Notices of Bar Dates, and (IV) Granting Related Relief* [Docket No. 340].

such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code and have participated in good faith with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

F.    *Injunction*

Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests or Causes of Action or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities released or settled pursuant to the Plan.

***

UNDER THE PLAN, "RELEASING PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH, (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (VII) WITH RESPECT TO EACH OF THE FOREGOING PERSONS IN CLAUSES (I) THROUGH (VIII), SUCH PERSONS' PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES

(INCLUDING AFFILIATES OF ANY PREDECESSORS), CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS (INCLUDING EQUITY HOLDERS OF ANY PREDECESSORS), MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES, (VIII) THE HOLDERS OF ALL CLAIMS OR INTERESTS WHOSE VOTE TO ACCEPT OR REJECT THE PLAN IS SOLICITED BUT DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN **ARTICLE VIII.D.2**, AND (IX) THE HOLDERS OF ALL CLAIMS AND INTERESTS WHO WERE GIVEN NOTICE OF THE OPPORTUNITY AND SERVED WITH A PROVIDED FORM TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN **ARTICLE VIII.D.2** BUT DID NOT TIMELY OPT OUT.

UNDER THE PLAN, "RELEASED PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH,  (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) EACH OF THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (IX) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (I) THROUGH (VIII), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES, CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS, MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES; PROVIDED, HOWEVER, THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) FILES AN OBJECTION TO THE PLAN OR (Y) OPTS OUT OF THE RELEASES SET FORTH IN **ARTICLE VIII.D.2**, AS APPLICABLE, SHALL NOT BE A "RELEASED PARTY."

IF YOU DO NOT CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES OF THE RELEASED PARTIES SET FORTH ABOVE.

UNLESS YOU CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, BY ACCEPTING DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT OF YOUR ALLOWED CLAIM OR INTEREST YOU WILL BE DEEMED TO HAVE AFFIRMATIVELY CONSENTED TO BE BOUND BY THE TERMS OF THE PLAN, INCLUDING, WITHOUT LIMITATION, THE RELEASES AND INJUNCTIONS SET FORTH ABOVE.

**The holder (or authorized signatory of each holder) of the Class 9 Interest identified in Item 1 elects to:**

☐     **Opt out of the Third-Party Releases contained in Article VIII.D.2 of the Plan.**

**Item 4. Certifications.**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

a.     as of the Voting Record Date, it either: (i) is the holder of the Class 9 Interest set forth in Item 1; or (ii) is an authorized signatory for the holder of the Class 9 Interest set forth in Item 1;

b.     it is eligible to vote on the Plan and make an election with respect to the Third-Party Release;

c.     it (or in the case of an authorized signatory, the relevant holder) has received the Solicitation Materials including a copy of the Disclosure Statement and acknowledges that the solicitation of votes on the Plan is being made pursuant to the terms and conditions set forth therein;

d.     it has cast the same vote with respect to all of its Class 9 Interest;

e.     no other Ballots with respect to the Class 9 Interest identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Class 9 Interests, then any such Beneficial Holder Ballots cast earlier are hereby revoked;

f.     it acknowledges and understands that a vote to accept the Plan constitutes an acceptance of the treatment of the Class 9 Interest identified in Item 1; and

g.     it acknowledges and understands that the Debtors may make changes to the Plan as may be reasonably necessary and that, to the extent such changes are not material, the Debtors will not re-solicit acceptances or rejections of the Plan.

Name of holder:

_____

*(print or type)*

Signature:

_____

Name of Signatory:

_____

*(if other than the Class 9 Interest holder)*

Title:

_____

Address:

_____

Telephone Number
and Email:

_____

Date Completed:

_____

---

**IF THE SOLICITATION AGENT DOES NOT <u>ACTUALLY RECEIVE</u> THIS BALLOT ON OR BEFORE [JULY 24], 2025, AT 4:00 P.M. (ET), UNLESS THE VOTING DEADLINE IS EXTENDED, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED ONLY IN THE DISCRETION OF THE DEBTORS.**

### INSTRUCTIONS FOR COMPLETING THIS CLASS 9 INTEREST BALLOT

1.    The Debtors are soliciting the votes on the Plan attached as **Exhibit A** to the Disclosure Statement.  Capitalized terms used in this Ballot or in these instructions but not otherwise defined therein or herein have the meaning set forth in the Plan or Disclosure Statement, as applicable.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE VOTING.**

2.    The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims in at least one Class of Claims that has the right to vote on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.  If the Plan is confirmed, it will be binding on you regardless of whether you vote at all or if you vote to reject the Plan. Please review the Disclosure Statement for more information.

3.    To ensure that your Ballot is counted, you <u>must</u> complete and submit this Ballot as instructed herein.  Ballots will not be accepted by electronic mail or facsimile, except as expressly set forth in the Ballot.

4.    To ensure that your vote is counted, you must: (a) complete this Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; (c) if you elect to opt out of the third-party releases, clearly indicate your decision in the box in Item 3 of your Ballot; and (d) sign and timely submit your Ballot as instructed herein.

5.    Your Ballot **must** be returned to the Solicitation Agent so as to be **actually received** by the Solicitation Agent on or before the Voting Deadline.  **The Voting Deadline is [July 24], 2025, at 4:00 p.m. (ET).**

6.    If your Ballot is received after the Voting Deadline, unless the Voting Deadline is extended, your vote may only be counted in the sole and absolute discretion of the Debtors. Additionally, **the following Ballots will <u>not</u> be counted**:

   (a)    Any Ballot that (i) partially rejects and partially accepts the Plan, (ii) is not marked to accept or reject the Plan, (iii) is marked both to accept and reject the Plan;

   (b)    Any Ballot sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), including the Debtors' financial or legal advisors, or any agent or indenture trustee for the Debtors' funded debt;

   (c)    Any Ballot sent by telecopy, electronic mail, facsimile, or other electronic means except for the E-Ballot Portal;

   (d)    Any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim voted;

   (e)    Any Ballot cast by a person or an entity that does not hold a Class 9 Interest or is

not an authorized signatory for such holder;

(f)    Any Beneficial Holder Ballot transmitted by means not specifically approved in these instructions; and/or

(g)    Any unsigned Ballot (for the avoidance of doubt, electronic signatures contained in E-Ballots validly submitted through the E-Ballot Portal will be deemed immediately legally valid and effective).

7.    The method of delivery of your Ballot to the Solicitation Agent is at your election and risk. Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **actually receives** your executed Ballot (or your E-Ballot validly submitted through the E-Ballot Portal). You should allow sufficient time to assure timely delivery.

8.    If multiple Ballots are received from the same holder of the same Class 9 Interest prior to the Voting Deadline, the latest, timely received, and valid Ballot will supersede and revoke any earlier received Ballots.

9.    If you cast a timely Ballot that is properly completed and executed but does not indicate either an acceptance or rejection of the Plan, your vote will not be counted.

10.    If you cast a timely Ballot that is properly completed and executed but indicates both an acceptance and a rejection of the Plan, your vote will not be counted.

11.    You must vote all of your Class 9 Interests either to accept or reject the Plan and may **not** split your vote.

12.    This Ballot does **not** constitute, and will not be deemed to be, (a) a proof of Claim or (b) an assertion or admission with respect to any Claim.

13.    **Please be sure to sign and date your Ballot**. If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of a holder of a Class 9 Interest. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to your Ballot.

14.    If you hold Claims or Interests in more than one Class you may receive more than one ballot coded for each such Class. Each ballot votes **only** your Claims or Interests indicated on that ballot, so please complete and return each ballot you receive.

15.    Subject to contrary orders of the Bankruptcy Court, any defects or irregularities in connection with the delivery of your Ballot must be cured prior to the Voting Deadline or such Ballot will not be counted. Notwithstanding the foregoing, the Debtors may, in their sole discretion, waive any defect or irregularity as to any particular Ballot at any time,

either before or after the Voting Deadline.

16.    Neither the Debtors, the Solicitation Agent, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to your Ballot, nor will any of them incur any liability for failure to provide such notification.

17.    This Ballot is not a letter of transmittal and may not be used for any purpose other than to: (i) vote to accept or reject the Plan; (ii) if applicable, opt-out of the Third-Party Release, and (iii) make the required certifications.  Accordingly, at this time, you should not surrender the instruments representing or evidencing your Class 9 Interests or Units, and neither the Debtors nor Solicitation Agent will accept delivery of any such instruments.

18.    There may be changes made to the Plan that do not have a material adverse effect on the treatment of your Class 9 Interests.  If such non-material changes are made to the Plan, the Debtors will not resolicit your vote on the Plan.

**PLEASE SUBMIT YOUR BALLOT PROMPTLY, TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE VIA THE E-BALLOT PLATFORM, AS DIRECTED ABOVE, OR IN HARD COPY AT THE FOLLOWING ADDRESS:**

**LIGADO NETWORKS, LLC BALLOT PROCESSING**
**C/O OMNI AGENT SOLUTIONS, INC.**
**5955 DE SOTO AVE., SUITE 100**
**WOODLAND HILLS, CA 91367**

_____

**IF YOU WOULD LIKE TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND PROVIDE THE ANTICIPATED DATE AND TIME OF DELIVERY AT LEAST TWENTY-FOUR (24) HOURS IN ADVANCE.**


**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE.**

---

**IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE THIS BALLOT VIA THE E-BALLOT PLATFORM OR IN HARD COPY, AS DIRECTED ABOVE, ON OR BEFORE THE VOTING DEADLINE, WHICH IS ON [JULY 24], 2025, AT 4:00 P.M. (ET), UNLESS THE VOTING DEADLINE IS EXTENDED, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED ONLY IN THE SOLE AND ABSOLUTE DISCRETION OF THE DEBTORS.**

---

**Exhibit 2.H**

**Class 10 Ballot**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| LIGADO NETWORKS LLC *et al.*,[1] | ) | Case No. 25-10006 (TMH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | |

**BALLOT FOR VOTING TO ACCEPT OR REJECT
THE CHAPTER 11 PLANS OF LIGADO NETWORKS, LLC ET AL.**

**CLASS 10 (EXISTING SERIES A-1 PREFERRED INTERESTS)**

> **PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS CAREFULLY BEFORE COMPLETING THIS BALLOT.**
>
> **IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED IN ACCORDANCE WITH THE INSTRUCTIONS BELOW SO AS TO BE ACTUALLY RECEIVED BY THE DEBTORS' SOLICITATION AGENT BY [JULY 24], 2025, AT 4:00 P.M. (ET) (THE "VOTING DEADLINE").**

The above-captioned debtors (the "Debtors") are soliciting votes on the *Joint Chapter 11 Plan of Ligado Networks LLC and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan") described in (and attached to) the *Disclosure Statement for Joint Chapter 11 Plan of Ligado Networks LLC, and Its Affiliated Debtors and Debtors in Possession* (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement")[2] included in the package (the "Solicitation Materials") you are receiving with this ballot (the "Ballot").

You are receiving this Ballot because the Debtors' records indicate that you may be a holder, a potential holder, an investment advisor, a sub-advisor, or a manager of various

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or Disclosure Statement, as applicable.

funds/accounts/investors with respect to an interest in the Existing Series A-1 Preferred Units(a "Class 10 Interest") as of **[**June 20**]**, 2025 (the "Voting Record Date") and, as such, have the right to vote to accept or reject the Plan.

As described in more detail in the Disclosure Statement and the Plan, if the Plan is confirmed and the Effective Date occurs, then, subject to Section III.B of the Plan and except to the extent such holder agrees to less favorable treatment, each holder of Allowed Existing Series A-1 Preferred Units shall retain its Existing Series A-1 Preferred Units, as amended by the Second Amended and Restated Operating Agreement, in the form of the New Series B-1 Preferred Units.

**YOUR VOTE WILL BE APPLIED TO THOSE DEBTORS WHO ARE LIABLE TO YOU ON ACCOUNT OF YOUR CLASS 10 INTERESTS.**

Your rights are described in the Disclosure Statement. If you received the Solicitation Materials in electronic form and desire paper copies of any of them, or if you need to obtain additional Solicitation Materials, you may obtain them at no charge from Omni Agent Solutions, Inc. (the "Solicitation Agent") by: (i) emailing LigadoInquiries@OmniAgnt.com with a reference to "Ligado" in the subject line, or (ii) at the following telephone numbers: (866) 956-2139 (domestic toll free) or (747) 288-6357 (international).

On the Petition Date, the website https://omniagentsolutions.com/Ligado will become publicly available and contain important information, hearing dates, and other key deadlines, as well as the docket for the Debtors' chapter 11 cases. You may also obtain copies of any pleadings to be filed in these cases for a fee via PACER at: http://www.deb.uscourts.gov.

This Ballot may not be used for any purpose other than for (i) casting your vote to accept or reject the Plan, (ii) indicating your election to opt out of certain releases described below, if applicable, and (iii) making certain certifications with respect to your vote. If you believe you have received this Ballot in error, or if you believe that you have received the wrong ballot, please contact the Solicitation Agent **immediately** at the email address set forth above.

**You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Class 10 Interest. This Ballot pertains solely to your Class 10 Interest. If you hold Claims or Interests in more than one Class that is entitled to vote on the Plan, you will receive a ballot for each such Class.**

**PLEASE SUBMIT YOUR BALLOT BY ONE OF THE FOLLOWING TWO METHODS:**

**Via Paper Ballot. Complete, sign, and date this Ballot and return it, properly executed, promptly via first class mail (or in the enclosed reply envelope), overnight courier, or hand delivery to:**

<div align="center">

**Ligado Networks, LLC Ballot Processing**
**c/o Omni Agent Solutions, Inc.**
**5955 De Soto Ave., Suite 100**
**Woodland Hills, CA 91367**

</div>

**IF YOU WOULD LIKE TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND PROVIDE THE ANTICIPATED DATE AND TIME OF DELIVERY AT LEAST TWENTY-FOUR (24) HOURS IN ADVANCE.**

<u>**OR**</u>

<u>**Via Online Submission**</u>. **Submit your Ballot via the Solicitation Agent's online portal (the "<u>E-Ballot Portal</u>"), by visiting https://omniagentsolutions.com/Ligado-Ballots.   Click on the "Balloting" section of the website and follow the instructions to submit your Ballot.**

**The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**If you cast a Ballot using the E-Ballot Portal, you should NOT also submit a paper Ballot.**

**IF YOU WISH TO SUBMIT YOUR BALLOT THROUGH THE ONLINE E-BALLOT PORTAL BUT ARE UNABLE TO DO SO, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND SOMEONE WILL PROVIDE ASSISTANCE.**

**Item 1**. **Principal Amount of Class 10 Interest.**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the holder (or authorized signatory of a holder) of a Class 10 Interest in the following amount (insert amount in box below):

$$\$^3 \underline{\hspace{3cm}}$$

**Item 2**. **Vote For or Against the Plan.**

The holder of the Class 10 Interest set forth in Item 1 votes to (please check only **one** box):

| ☐   **ACCEPT** (vote FOR) the Plan | ☐   **REJECT** (vote AGAINST) the Plan |
|---|---|

THE DEBTORS RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

**Any Ballot that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan, will not be counted.**

**Item 3**. **Important Information Regarding the Releases of Claims by Holders of Claims or Interests**

**WHETHER YOU VOTE TO ACCEPT OR REJECT THE PLAN OR ABSTAIN FROM VOTING ALTOGETHER, UNLESS YOU CHECK THE "OPT OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES OF THE RELEASED PARTIES SET FORTH IN ARTICLE VIII.D.2 OF THE PLAN COPIED BELOW (THE "__THIRD-PARTY RELEASE__").**

**Article VIII of the Plan contains the following provisions:**

A.      *Compromise and Settlement*

**The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their Estates, and all holders of Claims or Interests, (2) fair, equitable, and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to applicable bankruptcy law. In addition, the allowance, classification, and treatment of any Allowed Claims of a Released Party take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist between the Debtors and any Released Party and, as of the Effective Date, any and all such Causes of Action are settled, compromised, and released as set forth in the Plan. The**

---

[3]    For voting purposes only.  Subject to tabulation rules.

Confirmation Order shall authorize and approve the releases by all Entities of all such contractual, legal, and equitable subordination rights and Causes of Action that are satisfied, compromised, and settled pursuant hereto.  Nothing in the Plan shall compromise or settle, in any way whatsoever, any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have against any Entity that is not a Released Party.

In accordance with the provisions of the Plan, and pursuant to Bankruptcy Rule 9019, without any further notice to, or action, order, or approval of, the Bankruptcy Court or the Canadian Court, after the Effective Date, the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle (1) Claims (including Causes of Action) against and Interests in the Debtors not previously Allowed (if any) and (2) claims (including Causes of Action) against other Entities.

B.    *Discharge of Claims and Termination of Interests*

Except as otherwise provided in the Plan, effective as of the Effective Date: (1) the distributions, rights, and treatment that are provided in the Plan for all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, whether known or unknown, against or in the Debtors or any of their assets, property, or Estates, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date and any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date; (2) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (3) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code; and (4) all entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date.  Notwithstanding the foregoing, all Existing Common Units shall remain in full force and effect and shall be governed by the terms of the applicable New Organizational Documents, including the Second Amended and Restated Operating Agreement.  The Confirmation Order shall be a judicial determination, subject to the Effective Date occurring, of the discharge of all Claims and Interests except as otherwise expressly provided in the Plan.

C.    *Release of Liens*

Except as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit First Lien Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and the effectiveness of the Exit First Lien Facility Documents, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title,

and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall automatically revert to the Reorganized Debtors and each of their successors and assigns, and the Agents/Trustees and the DIP Agent shall be authorized to release any such mortgages, deeds of trust, Liens, pledges, or other security interests held by such holder and to take such actions as may be requested by the Reorganized Debtors to evidence the release of such mortgages, deeds of trust, Liens, pledges, or other security interests, including the execution, delivery, and filing or recording of any related releases or discharges as may be requested by the Reorganized Debtors or may be required in order to effectuate the foregoing.

D.    *Releases of Released Parties*

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to applicable bankruptcy law, of the releases described in this Article VIII.D and shall constitute the Bankruptcy Court's finding that such releases are:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by this Article VIII.D; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Entity (including the Debtors) asserting any claim or Cause of Action released pursuant to this Article VIII.D.

1.    **Releases by the Debtors**

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of each Debtor, each Reorganized Debtors, and each Estate, in each case, on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action, whether prepetition or postpetition, derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws, or otherwise that the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual

arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, (ii) any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have in connection with the Ligado Takings Case, (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit First Lien Facility Documents, or any Claim or obligation arising under the Plan and (iv) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct.

2.      **Releases by Holders of Claims or Interests**

As of the Effective Date, except for (i) the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring, (ii) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct, or (iii) the rights provided or reserved for under the AST Definitive Agreements Order, or (iv) as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case, from any and all Claims and Causes of Action whatsoever, whether prepetition or postpetition (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates, the Chapter 11 Cases the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors (including any of the Debtors' predecessors)

or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors (including any of the Debtors' predecessors) and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.

Entry of the Confirmation Order shall, subject to the occurrence of the Effective Date, constitute the Bankruptcy Court's approval of the releases contained in the Plan and a finding that each release described is (i) in exchange for the good and valuable consideration provided by the Released Parties, including without limitation, the Released Parties' contributions to implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the holders of Claims and Interests, (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a sound exercise of the Debtors' business judgment.

Nothing in this Plan prohibits, precludes, or enjoins any Governmental Unit from asserting or filing a proof of Claim on or before the Governmental Bar Date.[4]

E.    *Exculpation*

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action based on any act or omission occurring from the Petition Date through the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the Restructuring Support Agreement, the Restructuring, the DIP Facility, the DIP Orders, the DIP Documents, any Canadian Court Recognition Order, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes gross negligence, intentional fraud or willful misconduct as determined by a Final Order, but in all respects

---

[4]    "Governmental Bar Date" shall have the meaning set forth in the *Order Establishing (I) Various Bar Dates for Filing Proofs of Claim, (II) Approving the Form and Manner of Filing Proofs of Claim, (III) Approving Notices of Bar Dates, and (IV) Granting Related Relief* [Docket No. 340].

such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code and have participated in good faith with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

F.    *Injunction*

Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests or Causes of Action or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities released or settled pursuant to the Plan.

\*\*\*

UNDER THE PLAN, "RELEASING PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH, (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (VII) WITH RESPECT TO EACH OF THE FOREGOING PERSONS IN CLAUSES (I) THROUGH (VIII), SUCH PERSONS' PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES

(INCLUDING AFFILIATES OF ANY PREDECESSORS), CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS (INCLUDING EQUITY HOLDERS OF ANY PREDECESSORS), MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES, (VIII) THE HOLDERS OF ALL CLAIMS OR INTERESTS WHOSE VOTE TO ACCEPT OR REJECT THE PLAN IS SOLICITED BUT DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE VIII.D.2, AND (IX) THE HOLDERS OF ALL CLAIMS AND INTERESTS WHO WERE GIVEN NOTICE OF THE OPPORTUNITY AND SERVED WITH A PROVIDED FORM TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE VIII.D.2 BUT DID NOT TIMELY OPT OUT.

UNDER THE PLAN, "RELEASED PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH,  (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) EACH OF THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (IX) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (I) THROUGH (VIII), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES, CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS, MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES; PROVIDED, HOWEVER, THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) FILES AN OBJECTION TO THE PLAN OR (Y) OPTS OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D.2, AS APPLICABLE, SHALL NOT BE A "RELEASED PARTY."

IF YOU DO NOT CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES OF THE RELEASED PARTIES SET FORTH ABOVE.

UNLESS YOU CHECK THE "OPT-OUT" BOX IN ITEM 3 AND TIMELY SUBMIT YOUR BALLOT, BY ACCEPTING DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT OF YOUR ALLOWED CLAIM OR INTEREST YOU WILL BE DEEMED TO HAVE AFFIRMATIVELY CONSENTED TO BE BOUND BY THE TERMS OF THE PLAN, INCLUDING, WITHOUT LIMITATION, THE RELEASES AND INJUNCTIONS SET FORTH ABOVE.

**The holder (or authorized signatory of each holder) of the Class 10 Interest identified in Item 1 elects to:**

> ☐ **Opt out of the Third-Party Releases contained in Article VIII.D.2 of the Plan.**

**Item 4. Certifications.**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

a. as of the Voting Record Date, it either: (i) is the holder of the Class 10 Interest set forth in Item 1; or (ii) is an authorized signatory for the holder of the Class 10 Interest set forth in Item 1;

b. it is eligible to vote on the Plan and make an election with respect to the Third-Party Release;

c. it (or in the case of an authorized signatory, the relevant holder) has received the Solicitation Materials including a copy of the Disclosure Statement and acknowledges that the solicitation of votes on the Plan is being made pursuant to the terms and conditions set forth therein;

d. it has cast the same vote with respect to all of its Class 10 Interest;

e. no other Ballots with respect to the Class 10 Interest identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Class 10 Interests, then any such Beneficial Holder Ballots cast earlier are hereby revoked;

f. it acknowledges and understands that a vote to accept the Plan constitutes an acceptance of the treatment of the Class 10 Interest identified in Item 1; and

g. it acknowledges and understands that the Debtors may make changes to the Plan as may be reasonably necessary and that, to the extent such changes are not material, the Debtors will not re-solicit acceptances or rejections of the Plan.

Name of holder: _____
                _____
                *(print or type)*

Signature: _____

Name of Signatory: _____
                   *(if other than the Class 10 Interest holder)*

Title: _____

Address: _____

Telephone Number
and Email: _____

Date Completed: _____

---

**IF THE SOLICITATION AGENT DOES NOT <u>ACTUALLY RECEIVE</u> THIS BALLOT ON OR BEFORE [JULY 24], 2025, AT 4:00 P.M. (ET), UNLESS THE VOTING DEADLINE IS EXTENDED, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED ONLY IN THE DISCRETION OF THE DEBTORS.**

## <u>INSTRUCTIONS FOR COMPLETING THIS CLASS 10 INTEREST BALLOT</u>

1. The Debtors are soliciting the votes on the Plan attached as **<u>Exhibit A</u>** to the Disclosure Statement. Capitalized terms used in this Ballot or in these instructions but not otherwise defined therein or herein have the meaning set forth in the Plan or Disclosure Statement, as applicable. **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE VOTING.**

2. The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of Claims in at least one Class of Claims that has the right to vote on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code. If the Plan is confirmed, it will be binding on you regardless of whether you vote at all or if you vote to reject the Plan. Please review the Disclosure Statement for more information.

3. To ensure that your Ballot is counted, you <u>must</u> complete and submit this Ballot as instructed herein. Ballots will not be accepted by electronic mail or facsimile, except as expressly set forth in the Ballot.

4. To ensure that your vote is counted, you must: (a) complete this Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; (c) if you elect to opt out of the third-party releases, clearly indicate your decision in the box in Item 3 of your Ballot; and (d) sign and timely submit your Ballot as instructed herein.

5. Your Ballot **<u>must</u>** be returned to the Solicitation Agent so as to be **<u>actually received</u>** by the Solicitation Agent on or before the Voting Deadline. **The Voting Deadline is [July 24], 2025, at 4:00 p.m. (ET).**

6. If your Ballot is received after the Voting Deadline, unless the Voting Deadline is extended, your vote may only be counted in the sole and absolute discretion of the Debtors. Additionally, **the following Ballots will <u>not</u> be counted**:

    (a) Any Ballot that (i) partially rejects and partially accepts the Plan, (ii) is not marked to accept or reject the Plan, (iii) is marked both to accept and reject the Plan;

    (b) Any Ballot sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), including the Debtors' financial or legal advisors, or any agent or indenture trustee for the Debtors' funded debt;

    (c) Any Ballot sent by telecopy, electronic mail, facsimile, or other electronic means except for the E-Ballot Portal;

    (d) Any Ballot that is illegible or contains insufficient information to permit the identification of the holder of the Claim voted;

    (e) Any Ballot cast by a person or an entity that does not hold a Class 10 Interest or is

13

not an authorized signatory for such holder;

(f)     Any Beneficial Holder Ballot transmitted by means not specifically approved in these instructions; and/or

(g)     Any unsigned Ballot (for the avoidance of doubt, electronic signatures contained in E-Ballots validly submitted through the E-Ballot Portal will be deemed immediately legally valid and effective).

7.     The method of delivery of your Ballot to the Solicitation Agent is at your election and risk. Except as otherwise provided herein, such delivery will be deemed made only when the Solicitation Agent **actually receives** your executed Ballot (or your E-Ballot validly submitted through the E-Ballot Portal). You should allow sufficient time to assure timely delivery.

8.     If multiple Ballots are received from the same holder of the same Class 10 Interest prior to the Voting Deadline, the latest, timely received, and valid Ballot will supersede and revoke any earlier received Ballots.

9.     If you cast a timely Ballot that is properly completed and executed but does not indicate either an acceptance or rejection of the Plan, your vote will not be counted.

10.     If you cast a timely Ballot that is properly completed and executed but indicates both an acceptance and a rejection of the Plan, your vote will not be counted.

11.     You must vote all of your Class 10 Interests either to accept or reject the Plan and may **not** split your vote.

12.     This Ballot does **not** constitute, and will not be deemed to be, (a) a proof of Claim or (b) an assertion or admission with respect to any Claim.

13.     **Please be sure to sign and date your Ballot**. If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Solicitation Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of a holder of a Class 10 Interest. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to your Ballot.

14.     If you hold Claims or Interests in more than one Class you may receive more than one ballot coded for each such Class. Each ballot votes **only** your Claims or Interests indicated on that ballot, so please complete and return each ballot you receive.

15.     Subject to contrary orders of the Bankruptcy Court, any defects or irregularities in connection with the delivery of your Ballot must be cured prior to the Voting Deadline or such Ballot will not be counted. Notwithstanding the foregoing, the Debtors may, in their sole discretion, waive any defect or irregularity as to any particular Ballot at any time,

either before or after the Voting Deadline.

16.    Neither the Debtors, the Solicitation Agent, nor any other person or entity, will be under any duty to provide notification of defects or irregularities with respect to your Ballot, nor will any of them incur any liability for failure to provide such notification.

17.    This Ballot is not a letter of transmittal and may not be used for any purpose other than to: (i) vote to accept or reject the Plan; (ii) if applicable, opt-out of the Third-Party Release, and (iii) make the required certifications.  Accordingly, at this time, you should not surrender the instruments representing or evidencing your Class 10 Interests or Units, and neither the Debtors nor Solicitation Agent will accept delivery of any such instruments.

18.    There may be changes made to the Plan that do not have a material adverse effect on the treatment of your Class 10 Interests.  If such non-material changes are made to the Plan, the Debtors will not resolicit your vote on the Plan.

**PLEASE SUBMIT YOUR BALLOT PROMPTLY**, TO BE ACTUALLY RECEIVED BY THE SOLICITATION AGENT BY THE VOTING DEADLINE VIA THE E-BALLOT PLATFORM, AS DIRECTED ABOVE, OR IN HARD COPY AT THE FOLLOWING ADDRESS:

**LIGADO NETWORKS, LLC BALLOT PROCESSING**
**C/O OMNI AGENT SOLUTIONS, INC.**
**5955 DE SOTO AVE., SUITE 100**
**WOODLAND HILLS, CA 91367**

———————

IF YOU WOULD LIKE TO COORDINATE HAND DELIVERY OF YOUR BALLOT, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND PROVIDE THE ANTICIPATED DATE AND TIME OF DELIVERY AT LEAST TWENTY-FOUR (24) HOURS IN ADVANCE.

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE.

IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE THIS BALLOT VIA THE E-BALLOT PLATFORM OR IN HARD COPY, AS DIRECTED ABOVE, ON OR BEFORE THE VOTING DEADLINE, WHICH IS ON [JULY 24], 2025, AT 4:00 P.M. (ET), UNLESS THE VOTING DEADLINE IS EXTENDED, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED ONLY IN THE SOLE AND ABSOLUTE DISCRETION OF THE DEBTORS.