**EXHIBIT 3**

**Notice of Non-Voting Status and Opt-Out Form**

#4926-4042-0658v2

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| LIGADO NETWORKS LLC, *et al.*,[1] | Case No. 25-10006 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: [August 7], 2025 at [2:00 p.m.] (ET)]** |

**NOTICE OF NON-VOTING STATUS OF CERTAIN FOR UNIMPAIRED CLASSES**

**PLEASE TAKE NOTICE THAT** by the order dated [•], 2025 (the "Disclosure Statement Order"),[2] the United States Bankruptcy Court for the District Delaware (the "Court") approved the Disclosure Statement filed by the above-captioned Debtors [Docket No. [•]] and authorized the Debtors to solicit votes to accept or reject the *Joint Chapter 11 Plan of Ligado Networks LLC and Its Affiliated Debtors and Debtors in Possession* attached to the Disclosure Statement as **Exhibit A** (as it may be altered, amended supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan").

**PLEASE TAKE FURTHER NOTICE** that, as a holder of a Claim that is not impaired under the terms of the Plan, you are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are **not entitled to vote on the Plan**. Nevertheless, you are still entitled to opt out of the Third-Party Releases contained in the Plan. You may do so on the attached Opt-Out Form.

**PLEASE TAKE FURTHER NOTICE** that your rights are set forth in the Plan and described in the Disclosure Statement.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider confirmation of the Plan (the "Confirmation Hearing") will commence on **[August 7], 2025, at [2:00 p.m.], (ET)]** before the Honorable Thomas M. Horan, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, DE 19801.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **[July 24], 2025, at 4:00 p.m., prevailing Eastern Time**. Any objection to the Plan **must**: (i) be in

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2]   Capitalized terms not otherwise defined herein have the same meanings set forth in the Disclosure Statement Order.

writing; (ii) conform to the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any orders of the Court; (iii) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (iv) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so that it is **actually received** on or before **[July 24], 2025, at 4:00 p.m., prevailing Eastern Time**:

**Debtors**
Ligado Networks LLC
10802 Parkridge Boulevard
Reston, VA 20191
Attn: Vicky McPherson
Email: vicky@ligado.com

**Office of the U.S. Trustee**
Office of the U.S. Trustee for
the District of Delaware
844 King Street
Suite 2207, Lockbox 35
Wilmington, Delaware 19801
Attn: Benjamin Hackman, Esq.
Email: Benjamin.a.hackman@usdoj.gov

**Counsel to the Debtors**
Milbank LLP
55 Hudson Yards
New York, New York 10001
Attn: Dennis F. Dunne
Matthew L. Brod
Lauren C. Doyle
Telephone:    (212) 530-5000
Facsimile:    (212) 530-5219
Email: ddune@milbank.com
mbrod@milbank.com
ldoyle@milbank.com

**Co-Counsel to the Debtors**

Richards, Layton, & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Attn: Mark D. Collins
Michael J. Merchant
Amanda R. Steele
Telephone: (302) 651-7700
Facsimile:    (302) 651-7701
Email: collins@rlf.com
merchant@rlf.com
steele@rlf.com

**Counsel to the Ad Hoc Crossholder Group**
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Attn: Brian Schartz, P.C.
Derek I. Hunter
Email: brian.schartz@kirkland.com
derek.hunter@kirkland.com

-and-

Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
Attn: Patrick J. Nash, Jr., P.C.
Alan McCormick
Email: patrick.nash@kirkland.com
alan.mccormick@kirkland.com

**Counsel to the Ad Hoc First Lien Group**
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
Attn: Jason L. Hufendick
Dennis Twomey
Email: jhufendick@sidley.com
dtwomey@sidley.com

**PLEASE TAKE FURTHER NOTICE THAT** additional copies of the Plan, Disclosure

Statement, or any other solicitation materials (except for Ballots) are available free of charge and can be attained using any of the following: (1) the Debtors' case information website (https://omniagentsolutions.com/Ligado), (2) contacting the Debtors' Solicitation Agent at: (866) 956-2139 (domestic toll free) or (747) 288-6357 (international), (3) by writing the Solicitation Agent at either (a) Ligado Networks, LLC Ballot Processing c/o Omni Agent Solutions, Inc. 5955 De Soto Ave., Suite 100 Woodland Hills, CA 91367 or (b) LigadoInquiries@OmniAgnt.com (with "Ligado Solicitation Inquiry" in the subject line), or (4) scanning the QR code below. You may also obtain copies of any pleadings filed in these chapter 11 cases for a fee via PACER at: www.pacer.psc.uscourts.gov.

**Additional Information**

Interested parties may also review the Disclosure Statement and the Plan free of charge at https://omniagentsolutions.com/Ligado or by scanning the QR code below.



**Exhibit A**

**Opt-Out Form**

You are receiving this opt-out form because, as of as of [June 20], 2025 (the "Record Date"), you are a holder or potential holder of a Claim or Interest in a Class that is unimpaired under the Plan (the "Non-Voting Classes"). As such, you are presumed to accept the Plan, and as a result, **not** entitled to vote on the Plan; however, you are still entitled to opt out of the Third-Party Releases provided by the Plan. The Non-Voting Classes are as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 6 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 11 | Existing Series A-2 Preferred Units | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 12 | Existing Series B Preferred Units | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 13 | Existing Series C Preferred Units | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 14 | Existing Series A Common Units | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 15 | Existing Series B Common Units | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

If the Plan is confirmed and consummated, holders of Allowed Claims and Interests in the Non-Voting Classes will receive the following treatment:

- Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, in full and final satisfaction of such Allowed Priority Non-Tax Claim, each holder of an Allowed Priority Non-Tax Claim, if any, will, at the option of the Debtors or the Reorganized Debtors, (i) be paid in full in Cash or (ii) otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, in each case, or as soon as reasonably practicable thereafter.

- Except to the extent that a holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction of such Allowed Other Secured Claim, at the option of the Debtors or the Reorganized Debtors, (i) each such holder will receive payment in full in Cash, payable on the later of the Effective Date and the date that is ten

(10) Business Days after the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, in each case, or as soon as reasonably practicable thereafter, (ii) such holder's Allowed Other Secured Claim will be reinstated, or (iii) such holder will receive such other treatment so as to render such holder's Allowed Other Secured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code.

- Except to the extent that a holder of an Allowed General Unsecured Claim and the Debtor entity against which such Allowed General Unsecured Claim is asserted agree to less favorable treatment for such holder, in full satisfaction of its Allowed General Unsecured Claim, the holder thereof shall receive payment in Cash in an amount equal to such Allowed General Unsecured Claim plus any and all accrued and unpaid interest, fees, premiums, and all other obligations, amounts, and expenses due and owing thereunder, if any, (i) on the Effective Date (or as soon as reasonably practicable thereafter) to the extent such Claim is due and payable on the Effective Date or (ii) to the extent such Claim is not due and payable on the Effective Date, in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such General Unsecured Claim.

- Except to the extent that a holder of an Allowed Existing Series A-2 agrees to less favorable treatment, each holder of Allowed Existing Series A-2 Preferred Units shall retain its Existing Series A-2 Preferred Units in the form of the New Series B-2 Preferred Units.

- Except to the extent such holder agrees to less favorable treatment, each holder of Allowed Existing Series B Preferred Units shall retain its Existing Series B Preferred Units in the form of the New Series C Preferred Units.

- Except to the extent that a holder of an Allowed Existing Series C Preferred Unit agrees to less favorable treatment, each holder of Allowed Existing Series C Preferred Units shall retain its Existing Series C Preferred Units in the form of the New Series D Preferred Units.

- Except to the extent that a holder of an Allowed Existing Series A Common Unit agrees to less favorable treatment, each holder of Allowed Existing Series A Common Units shall retain its current Existing Series A Common Units.

- Except to the extent that a holder of an Allowed Existing Series B Common Unit agrees to less favorable treatment, each holder of Allowed Existing Series B Common Units shall retain its Existing Series B Common Units.

**If the Plan is confirmed and consummated, the Third-Party Releases set forth in Article VIII of the Plan will become effective. THE THIRD-PARTY RELEASE IS SET FORTH IN ARTICLE VIII.D OF THE PLAN AND COPIED BELOW.**

| |
|---|
| **YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE SET FORTH IN ARTICLE VIII.D OF THE PLAN UNLESS YOU CHECK THE BOX BELOW AND COMPLETE AND SUBMIT THIS OPT-OUT FORM IN ACCORDANCE WITH THE INSTRUCTIONS SET FORTH BELOW.** |

## OPT-OUT FORM

**Article VIII of the Plan contains the following provisions:**

A.      **Compromise and Settlement**

**The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their Estates, and all holders of Claims or Interests, (2) fair, equitable, and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to applicable bankruptcy law. In addition, the allowance, classification, and treatment of any Allowed Claims of a Released Party take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist between the Debtors and any Released Party and, as of the Effective Date, any and all such Causes of Action are settled, compromised, and released as set forth in the Plan. The Confirmation Order shall authorize and approve the releases by all Entities of all such contractual, legal, and equitable subordination rights and Causes of Action that are satisfied, compromised, and settled pursuant hereto. Nothing in the Plan shall compromise or settle, in any way whatsoever, any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have against any Entity that is not a Released Party.**

**In accordance with the provisions of the Plan, and pursuant to Bankruptcy Rule 9019, without any further notice to, or action, order, or approval of, the Bankruptcy Court or the Canadian Court, after the Effective Date, the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle (1) Claims (including Causes of Action) against and Interests in the Debtors not previously Allowed (if any) and (2) claims (including Causes of Action) against other Entities.**

B.      **Discharge of Claims and Termination of Interests**

**Except as otherwise provided in the Plan, effective as of the Effective Date: (1) the distributions, rights, and treatment that are provided in the Plan for all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, whether known or unknown, against or in the Debtors or any of their assets, property, or Estates, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date and any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date; (2) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (3) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code; and (4) all entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date. Notwithstanding the foregoing, all Existing Common Units shall remain in full force and effect and shall be governed by the terms of the applicable New Organizational Documents, including the Second Amended and Restated Operating Agreement. The Confirmation Order shall be a judicial determination, subject to the Effective Date occurring, of the discharge of all Claims**

**and Interests except as otherwise expressly provided in the Plan.**

### C.      Release of Liens

**Except as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit First Lien Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and the effectiveness of the Exit First Lien Facility Documents, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall automatically revert to the Reorganized Debtors and each of their successors and assigns, and the Agents/Trustees and the DIP Agent shall be authorized to release any such mortgages, deeds of trust, Liens, pledges, or other security interests held by such holder and to take such actions as may be requested by the Reorganized Debtors to evidence the release of such mortgages, deeds of trust, Liens, pledges, or other security interests, including the execution, delivery, and filing or recording of any related releases or discharges as may be requested by the Reorganized Debtors or may be required in order to effectuate the foregoing.**

### D.      Releases of Released Parties

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to applicable bankruptcy law, of the releases described in this Article VIII.D and shall constitute the Bankruptcy Court's finding that such releases are:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by this Article VIII.D; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Entity (including the Debtors) asserting any claim or Cause of Action released pursuant to this Article VIII.D.**

#### 1.      Releases by the Debtors

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of each Debtor, each Reorganized Debtors, and each Estate, in each case, on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action, whether prepetition or postpetition, derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws, or otherwise that the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of**

the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, (ii) any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have in connection with the Ligado Takings Case, (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit First Lien Facility Documents, or any Claim or obligation arising under the Plan and (iv) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct.

2.    **Releases by Holders of Claims or Interests**

As of the Effective Date, except for (i) the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring, (ii) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct, or (iii) the rights provided or reserved for under the AST Definitive Agreements Order, or (iv) as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case, from any and all Claims and Causes of Action whatsoever, whether prepetition or postpetition (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates, the Chapter 11 Cases the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors (including any of the Debtors' predecessors) or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors (including any of the Debtors' predecessors) and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement,

3

the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.

Entry of the Confirmation Order shall, subject to the occurrence of the Effective Date, constitute the Bankruptcy Court's approval of the releases contained in the Plan and a finding that each release described is (i) in exchange for the good and valuable consideration provided by the Released Parties, including without limitation, the Released Parties' contributions to implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the holders of Claims and Interests, (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a sound exercise of the Debtors' business judgment.

Nothing in this Plan prohibits, precludes, or enjoins any Governmental Unit from asserting or filing a proof of Claim on or before the Governmental Bar Date.[3]

E.      **Exculpation**

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action based on any act or omission occurring from the Petition Date through the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the Restructuring Support Agreement, the Restructuring, the DIP Facility, the DIP Orders, the DIP Documents, any Canadian Court Recognition Order, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes gross negligence, intentional fraud or willful misconduct as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code and have participated in good faith with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

---

[3]    "Governmental Bar Date" shall have the meaning set forth in the *Order Establishing (I) Various Bar Dates for Filing Proofs of Claim, (II) Approving the Form and Manner of Filing Proofs of Claim, (III) Approving Notices of Bar Dates, and (IV) Granting Related Relief* [Docket No. 340].

F.      **Injunction**

Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests or Causes of Action or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities released or settled pursuant to the Plan.
\*\*\*

UNDER THE PLAN, "RELEASING PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH, (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (VII) WITH RESPECT TO EACH OF THE FOREGOING PERSONS IN CLAUSES (I) THROUGH (VIII), SUCH PERSONS' PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES (INCLUDING AFFILIATES OF ANY PREDECESSORS), CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS (INCLUDING EQUITY HOLDERS OF ANY PREDECESSORS), MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES, (VIII) THE HOLDERS OF ALL CLAIMS OR INTERESTS WHOSE VOTE TO ACCEPT OR REJECT THE PLAN IS SOLICITED BUT DO NOT OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE VIIID.2, AND (IX) THE HOLDERS OF ALL CLAIMS AND INTERESTS WHO WERE GIVEN NOTICE OF THE OPPORTUNITY AND SERVED WITH A PROVIDED FORM TO OPT OUT OF GRANTING THE RELEASES SET FORTH IN ARTICLE VIIID.2 BUT DID NOT TIMELY OPT OUT.

UNDER THE PLAN, "RELEASED PARTIES" MEANS, COLLECTIVELY, AND IN EACH CASE IN THEIR CAPACITY AS SUCH,  (I) THE DEBTORS, (II) THE REORGANIZED DEBTORS, (III) THE CONSENTING STAKEHOLDERS, (IV) EACH OF THE AGENTS/TRUSTEES, (V) THE DIP AGENT AND THE DIP LENDERS, (VI) THE EXIT DEBT PARTIES, (VII) AST, (VIII) VIASAT (SUBJECT TO THE AST DEFINITIVE AGREEMENTS ORDER), AND (IX) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (I) THROUGH (VIII), EACH OF SUCH PARTY'S CURRENT AND FORMER PREDECESSORS, SUCCESSORS, ASSIGNS, SUBSIDIARIES, AFFILIATES, CURRENT AND FORMER OFFICERS AND DIRECTORS, PRINCIPALS, EQUITY HOLDERS, MEMBERS, PARTNERS, MANAGERS, EMPLOYEES, AGENTS, ADVISORY BOARD MEMBERS, FINANCIAL ADVISORS, ATTORNEYS, ACCOUNTANTS, INVESTMENT BANKERS, CONSULTANTS, REPRESENTATIVES, MANAGEMENT COMPANIES, FUND ADVISORS, AND OTHER PROFESSIONALS, AND SUCH PERSONS' RESPECTIVE HEIRS, EXECUTORS, ESTATES, AND NOMINEES; PROVIDED, HOWEVER, THAT ANY HOLDER OF A CLAIM OR INTEREST THAT (X) FILES AN OBJECTION TO THE PLAN OR (Y) OPTS OUT OF THE RELEASES SET FORTH IN **ARTICLE VIIID.2**, AS APPLICABLE, SHALL NOT BE A "RELEASED PARTY."

**YOU WILL BE DEEMED TO HAVE CONSENTED TO THE THIRD-PARTY RELEASE UNLESS YOU CHECK THE OPT-OUT BOX IN ITEM 2 BELOW AND COMPLETE AND SUBMIT THIS OPT-OUT FORM IN ACCORDANCE WITH THE INSTRUCTIONS BELOW.**

**Item 1.  Claims or Interests Held.**

The undersigned hereby certifies that, as of [June 20], 2025, the undersigned was the holder of the following Claims and/or Interests in the aggregate amount(s) specified below (insert amount(s) in applicable space(s) below):

Class 1 Priority Non-Tax Claims $_____

Class 2 Other Secured Claims $_____

Class 6 General Unsecured Claims $_____

Class 11 Existing Series A-2 Preferred Units $_____

Class 12 Existing Series B Preferred Units $_____

Class 13 Existing Series C Preferred Units $_____

Class 14 Existing Series A Common Units $_____

Class 15 Existing Series B Common Units $_____

**Item 2.  Third-Party  Release Opt Out**

☐    The undersigned elects to **OPT OUT** of the Third-Party Release so that it will not apply to me, the undersigned.

**Item 3.  Certifications.**

By signing this Opt-Out Form, the undersigned certifies that:

(a)    as of the Voting Record Date, it either:  (i) is the holder of the Claims/Interests set forth in Item 1; or (ii) is an authorized signatory for an entity that is a holder of the Claims/Interests set forth in Item 1;

(b)    it has received a copy of the notice to which this Opt-Out Form is attached and is submitting this Opt-Out Form pursuant to the terms and conditions set forth therein;

(c)    its election with respect to the Third-Party Plan Release applies to all Claims and Interests in the Class(es) set forth in Item 1; and

(d)    no other Opt-Out Forms with respect to the Claims/Interests set forth in Item 1 have been submitted or, if any other Opt-Out Forms have been submitted with respect to such Claims/Interests, then any such earlier Opt-Out Forms are hereby revoked.

| | |
|---|---|
| Name of Holder: | |
| | (Print or type) |
| Signature: | |
| Name of Signatory: | |
| | (If other than Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

## INSTRUCTIONS FOR SUBMITTING THIS OPT-OUT FORM

## PLEASE RETURN YOUR OPT-OUT FORM PROMPTLY

For this Opt-Out Form to be valid and effective, it must be completed and signed as provided above and returned to Omni Agent Solutions, Inc. (the "Solicitation Agent") by one of the following methods so as to be actually received by the Solicitation Agent on or before

**[July 24], 2025, at 4:00 p.m., prevailing Eastern Time.**

**In the prepaid, pre-addressed business reply envelope provided, or by first-class mail, overnight mail, or hand delivery to:**

**Ligado Networks, LLC Ballot Processing**
**c/o Omni Agent Solutions, Inc.**
**5955 De Soto Ave., Suite 100**
**Woodland Hills, CA 91367**

**OR**

**By electronic, online transmission via the Solicitation Agent's online portal (the "<u>E-Ballot Portal</u>"), by visiting https://omniagentsolutions.com/Ligado-Ballots.  Click on the "Balloting" section of the website and follow the instructions to transmit your Third-Party Plan Releases opt-out election.**

**The E-Ballot Portal is the sole manner in which the Opt-Out Forms will be accepted via electronic or online transmission.  Opt-Out Forms submitted by facsimile, email, or other means of electronic transmission will not be valid.**

**If you opt-out of the Third-Party Releases using the E-Ballot Portal, you should NOT also submit a paper opt out form.**

**IF YOU ARE UNABLE TO SUBMIT YOUR OPT OUT FORM THROUGH THE E-BALLOT PORTAL, PLEASE EMAIL LIGADOINQUIRIES@OMNIAGNT.COM WITH A REFERENCE TO "LIGADO" IN THE SUBJECT LINE AND SOMEONE WILL PROVIDE ASSISTANCE.**

**\* \* \* \* \* \***
