## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LIGADO NETWORKS, LLC., *et al.*,[1] | Case No. 25-10006 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: August 7, 2025, at 2:00 p.m.**<br>**Objection Deadline: July 24, 2025, at 4:00 p.m.** |

### OBJECTION BY THE UNITED STATES OF AMERICA TO THE DEBTORS' JOINT CHAPTER 11 PLAN OF LIGADO NETWORKS, LLC

The United States of America (the "United States"), by and through the undersigned attorneys, objects to the confirmation of the *Joint Chapter 11 Plan of Ligado Networks, LLC and its Affiliated Debtors and Debtors in Possession* [Docket No. 696] ("Plan").[2] In support of its objection, the United States represents as follows:

### PRELIMINARY STATEMENT

The United States and the Debtors have discussed the inclusion of language in the confirmation order that would address this objection. Other parties may have comments to the United States' curative language. Because these discussions are ongoing and a final form of confirmation order is not available currently, the United States files this objection out of an abundance of caution and as a reservation of its rights.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2] Capitalized terms used in this Objection, but not otherwise defined herein shall have the meanings given to them in the Plan.

## BACKGROUND

1.      On January 5, 2025 ("Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2.      On June 24, 2025, the Debtors filed the Plan, amending the original plan. *See* Docket Nos. 696.  The Plan treats general unsecured creditor claims as unimpaired.  *See* Plan at Art. III.B.6.

3.      The United States is a party in interest in this matter. Before the Petition Date, the Federal Communications Commission ("FCC") issued various licenses and authorizations to certain Debtors, including but not limited to, licenses and authorizations to operate a mobile satellite system (the "FCC Licenses"). With the issuance of the FCC Licenses, the FCC also required the Debtors to entered into a National Security Agreement with the U.S. Department of Justice and the Federal Bureau of Investigations on September 24, 2015.  Subsequent to the issuance of the FCC Licenses, several parties petitioned the FCC to modify or terminate the FCC Licenses.  The FCC has yet to rule on the matter.

4.      On October 12, 2023, the Debtors sued the United States in the U.S. Court of Federal Claims, alleging that the United States interfered with the Debtors' FCC-licensed spectrum rights and that interference constituted a Fifth Amendment Taking. *See Ligado Networks LLC v. USA* (Case No. 23-CV-01797-EJD).  This lawsuit remains active.

## OBJECTION

5.      To confirm a chapter 11 plan, the Court must find that each applicable provision of Section 1129 is satisfied. *See In re Aspen Village at Lost Mountain*, 609 B.R. 555, 563 (Bankr. N.D. Ga. 2019); *see also In re Experient, Corp.*, 535 B.R. 386, 400-01 (Bankr. D. Colo. 2015). To

that end, this Court must independently evaluate the Plan "to determine if it complies with section 1129 even in the absence of an objection by a creditor." *In re Gyro-Trac (USA), Inc.*, 441 B.R. 470, 477 (Bankr. D.S.C. 2010) (citations omitted). The Debtors must "demonstrate by a preponderance of the evidence that [their] plan meets all the requirements of the Code." *In re Byrd Foods, Inc.*, 253 B.R. 196, 199 (Bankr. E.D. Va. 2000) (citations omitted).

6.      Here, the Court cannot confirm the Plan for seven reasons. First, the Plan effectively settles the United States' claims against the Debtors and/or their estates without the United States' consent. Second, the Debtors have not satisfied the requirements for non-consensual third-party releases. Third, the Plan fails to preserve setoff and recoupment. Fourth, the Plan attempts to assume and/or assign contracts with the United States without its consent, violating the Anti-Assignment Act and the Bankruptcy Code. Fifth, the Plan impermissibly expands this Court's exclusive jurisdiction. Sixth, the Plan fails to comply with all applicable non-bankruptcy law, specifically FCC law, as required by the Bankruptcy Code. Seventh, the Plan eliminates the applicable stay period for confirmation orders.

## A. __The Plan Impermissibly Broadens the Scope of 11 U.S.C. § 1123(b)(3)(A) by Compromising Claims Not Belonging to the Debtors__.

7.      The Court cannot confirm the Plan because it broadens the scope of 1123(b)(3)(A) of the Bankruptcy Code. Section 1123(b)(3)(A) permits the Debtors to settle or adjust any claim belonging to the *Debtors* or to the estates in the Plan. Here, instead of settling their own claims against creditors, the Debtors attempt to settle the claims *creditors* have against them, including unknown claims of unknown creditors without providing adequate notice. Specifically, the Plan provides that the Plan shall "constitute an arms' length and good faith compromise and settlement of all Claims, Interests, Causes of Action and controversies." Plan, Article V.A. The Bankruptcy

3

Code provides the Debtors no basis to include such "catch-all" settlement provisions in the Plan. A general settlement of claims directly contradicts the Plan's "unimpaired" treatment of general unsecured claims and impairs the holders of claims by not leaving all their rights unaltered.  11 U.S.C. § 1124(1).   Accordingly, the Plan cannot be confirmed.

### B. <u>Opt-Out Third-Party Releases are Not Consensual and Impair Creditors</u>.

8.     Through the use of an opt-out mechanism,[3] Article VIII(D) of the Plan effectively seeks to impose non-consensual third-party releases on non-debtor Releasing Parties. The releases cover all conceivable claims and causes of action arising from or related in any way to any of the Debtors, except for willful misconduct, intentional fraud or gross negligence. Plan, Article VIII.D. *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 216-27 (2024), prohibits non-consensual non-debtor releases.  Consent cannot be implied through inaction.  *See In re Smallhold, Inc.*, 665 B.R. 704, 720 (Bankr. D. Del. 2024) (noting "in the absence of some sort of affirmative expression of consent that would be sufficient as a matter of contract law, the creditor's silence in the face of a plan and form of ballot can no longer be sufficient").  Interfering with a creditor's rights and actions against co-liable third parties without the creditor's assent impairs such creditors by altering their rights under non-bankruptcy law.  Thus, the Plan's third-party releases and exculpations contradict the Plan's purported unimpaired treatment of general unsecured claims, rendering the Plan unconfirmable.

9.     Nonetheless, the United States opts out of and objects to the third-party non-debtor limitation of liability, discharge, injunction, exculpation and release provisions set forth in Article VIII and elsewhere in the Plan.

---

[3] See Article I(A) sections 159 and 160.

4

**C.  <u>The Plan Fails to Preserve Setoff and/or Recoupment</u>.**

10.     The Plan provides that all entities holding claims, interests or Causes of Action that have been discharged, released or are subject to exculpation are permanently enjoined after the Effective Date from "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action . . . " Plan, Article VIII.F. The Plan broadly defines "Causes of Action" to include setoff and recoupment. Plan, Article I.A, section 31.

11.     To the extent the Plan fails to preserve the setoff and recoupment for the United States, the Plan cannot be confirmed.[4] Confirmation of a plan does not extinguish timely-asserted setoffs. *In re Continental Airlines*, 134 F.3d at 542 (3d Cir. 1998). Like other creditors, the United States has the common law right to setoff mutual debts. "The government has the same right which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him." *United States v. Munsey Trust Co. of Washington, D.C.*, 332 U.S. 234 (1947) (citing *Gratiot v. United States*, 40 U.S. (15 Pet) 336, 370, 10 L.Ed. 759 (1841)); *see also Amoco Prod. Co. v. Fry*, 118 F.3d 812, 817 (D.C. Cir. 1997). This right – "which is inherent in the federal government – is broad and 'exists independent of any statutory grant of authority to the executive branch.'" *Marre v. United States*, 117 F.3d 297, 302 (5th Cir. 1997) (quoting *United States v. Tafoya*, 803 F.2d 140 (5th Cir. 1986)). Hence, the United States can setoff mutual prepetition debts and claims as well as postpetition debts and claims. *Zions First Nat'l Bank, N.A. v. Christiansen Bros. (In re Davidson Lumber Sales, Inc.)*, 66 F.3d 1560, 1569 (10th Cir. 1995); *Palm Beach County Bd. of Pub. Instruction v. Alfar Dairy, Inc. (In re Alfar Dairy,*

---

[4] The United States explicitly preserves and asserts any and all of its rights and defenses of setoff and recoupment

*Inc.)*, 458 F.2d 1258, 1262 (5th Cir.), *cert. denied*, 409 U.S. 1048 (1972); *Mohawk Indus., Inc. v. United States (In re Mohawk Indus., Inc.)*, 82 B.R. 174, 178-79 (Bankr. D. Mass. 1987). The Plan makes no provision for these rights. Such treatment is impermissible, because Section 553 of the Bankruptcy Code preserves the right of setoff in bankruptcy as it exists outside bankruptcy, *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995), neither expanding nor constricting it, *United States v. Maxwell*, 157 F.3d 1099, 1102 (7th Cir. 1998). "[T]he government of the United States suffers no special handicap under § 553 of the Bankruptcy Code," *id.* at 1103, that alters this principle. Moreover, because "[s]etoff occupie[s] a favored position in our history of jurisprudence," *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1164 (2d Cir. 1979), courts do not interfere with its exercise absent "the most compelling circumstances." *Niagara Mohawk Power Corp. v. Utica Floor Maintenance, Inc. (In re Utica Floor Maintenance, Inc.)*, 41 B.R. 941, 944 (N.D.N.Y. 1984); *see also New Jersey Nat'l Bank v. Gutterman (In re Applied Logic Corp.)*, 576 F.2d 952 (2d Cir. 1978) ("The rule allowing setoff ... is not one that courts are free to ignore when they think application would be unjust."). Compelling circumstances generally entail criminal conduct or fraud by the creditor. *In re Whimsy, Inc.*, 221 B.R. 69 (S.D.N.Y. 1998). No such compelling circumstances are present here, and accordingly, the Plan must provide for and preserve the federal government's setoff rights. Failure to do so violates Section 1129(a)(1). ("The court shall confirm a plan only if . . . the plan complies with the applicable provisions of this title.").

12.    Similarly, the Plan improperly enjoins recoupment. A debtor's discharge does not affect recoupment. *See Megafoods Stores, Inc. v. Flagstaff Realty Assocs. (In re Flagstaff Realty Assocs.)*, 60 F.3d 1031, 1035-36 (3rd Cir. 1995) (holding that recoupment survives discharge following confirmation and implementation of chapter 11 plan even if creditor did not object to

plan or seek a stay pending appeal); *see also Beaumont v. Dep't of Veteran Affairs (In re Beaumont)*, 586 F.3d 776 (10th Cir. 2009); *Saif Corp. v. Harmon (In re Harmon)*, 188 B.R. 421, 425 (B.A.P. 9th Cir. 1995) ("Because recoupment only reduces a debt as opposed to constituting an independent basis for a debt, it is not a claim in bankruptcy, and is therefore unaffected by the debtor's discharge."); *Lunt v. Peoples Bank (In re Lunt)*, 500 B.R. 9, 16 (D. Kan. 2013); *Mercy Hosp. of Watertown v. New York*, 171 B.R. 490, 495 (N.D.N.Y. 1994); *Brown v. General Motors Corp.*, 152 B.R. 935, 938 (W.D. Wis. 1993) (holding right of recoupment not a claim or debt to be discharged in bankruptcy). For the same reasons as stated above for setoff, this Plan provision dispensing of creditors' recoupment is impermissible and impairs creditors, preventing its confirmation.

### D. **The Plan Violates the Anti-Assignment Act and the Bankruptcy Code.**

13.    The Plan envisions that entry of the Confirmation Order constitutes approval of the assumptions of the Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code. Plan, Article VI.A. The Plan further provides that any restrictions in any Executory Contracts and Unexpired Leases, including change in control provisions, are striken or modified such that the counterparties cannot terminate or use other remedies with respect to the Debtors' assumption. Plan, Article VI.A. Under 11 U.S.C. § 365(c)(1), a debtor "may not assume or assign any executory contract or unexpired lease of the debtor…if applicable law excuses such a party, other than the debtor, to such a contract or lease from accepting performance from or rendering performance to any entity other than the debtor or the debtor in possession." The Third Circuit has confirmed that, under the Anti-Assignment Act, debtors may not assign or assume any executory contract with the United States without first obtaining its consent. *See In re West Electronics, Inc.*, 852 F.2d 79, 83 (3d Cir. 1988). The United States does not consent, and objects,

to any attempt by the Debtors to assume and/or assign any federal contract, lease, claim or interest without first obtaining government consent and complying with all non-bankruptcy law.

14.    Not only does the Plan actively circumvent section 365(c)(1) by seeking to remove "change of control" restrictions in executory contracts and unexpired leases, it also fails to preserve such assignment restrictions as required by non-bankruptcy law with respect to other federal interests other than contracts and leases, such as licenses, as described below.

**E.    The Plan Does Not Comply with All Applicable Non-Bankruptcy Law.**

15.    The Debtors hold the FCC Licenses to operate their business.  The Communications Act of 1934, as amended, 47 U.S.C. §§ 151 et seq. (the "Communications Act") governs the FCC Licenses.  The FCC has primary responsibility for implementing and enforcing the Communications Act. "The Commission was expected to serve as the 'single Government agency' with 'unified jurisdiction' and 'regulatory power over all forms of electrical communication, whether by telephone, telegraph, cable, or radio.'" *United States v. Southwestern Cable Co.*, 392 U.S. 157, 168 (1968) (citations omitted).

16.    Although in bankruptcy, the Debtors remain responsible for complying with FCC regulations applicable to them and their operations, including regulatory requirements for operation and transfer of an FCC license. The Plan cannot be confirmed to the extent it fails to comply with the applicable non-bankruptcy law. *See* 11 U.S.C. § 1123(a); *see, e.g., In re Irving Tanning Co.*, 496 B.R. 644, 660 (B.A.P. 1st Cir. 2013) ("[A] plan must comply with those applicable nonbankruptcy laws that are not preempted by the Bankruptcy Code.").

17.    Specifically, and without limitation, the FCC's regulations (47 C.F.R. § 1.948) and the Communications Act (47 U.S.C. §310(d)), require: (i) an entity that holds a license to obtain FCC approval for a proposed transfer of that license or a proposed transfer of control of itself; and (ii)

8

an entity in control of an FCC licensee to obtain FCC approval of a proposed transfer of control of the FCC licensee, whether such transfer is voluntary or involuntary, whether such transfer is direct or indirect and irrespective of whether the entity possesses any other FCC license or authorization. "An FCC license is an assignable asset of a debtor's estate . . . provided the FCC consents to the assignment." *In re For Wayne Teslat, Inc.*, 665 F.3d 816, 820 (7th Cir. 2011) (internal citations omitted).

18.     Whether pursuing a plan of reorganization or a sale, the Debtors must ascertain the applicable FCC regulations and comply with all such FCC rules and regulations, including those pertaining to the transfer of FCC licenses and those pertaining to transfers of control of an FCC licensee. Paragraph 17 of Article IX.A of the Plan suggests that the Debtors understand that certain FCC approvals will be required prior to the Effective Date.[5]   Any order confirming the Plan should clearly provide that the Plan and the order confirming the plan do not relieve the Debtors or the Reorganized Debtors from their obligations to comply with the Communications Act and FCC rules and regulations and that no transfer of any FCC license or transfer of control of an FCC licensee shall take place prior to the FCC approving such transfer.

**F.     The Plan Impermissibly Expands the Bankruptcy Court Exclusive Jurisdiction.**

19.     The Plan cannot be confirmed to the extent that it expands the Bankruptcy Court's exclusive jurisdiction. While "the bankruptcy court plainly [may retain] jurisdiction to interpret and enforce its own prior orders," *Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195, 2205 (2009), it

---

[5] Article IX.A provides, in relevant part:

> The following are conditions [sic] to the Effective Date that shall have been satisfied or waived in accordance with Article IX.B: … (17) . . . all governmental and third-party approvals and consents, including FCC and ISED approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained . . . "

may not divest other courts of their concurrent jurisdiction to interpret bankruptcy court orders.

Rather, if, for example, the United States, post-confirmation, asserts liabilities in a non-bankruptcy

court of competent jurisdiction, that court may hear and determine all issues raised in the action,

including whether the defendant can rely on the confirmation order as an affirmative defense.

Adjudication of such a defense is a proceeding over which the bankruptcy court, as a unit of the

district court, has "original but not exclusive jurisdiction." 28 U.S.C. § 1334(b) (emphasis added);

*see also Stern v. Marshall*, 131 S.Ct. 2594 (2011); *In re Mystic Tank Lines Corp*., 544 F.3d 524

(3d Cir. 2008) ("No provision of the Bankruptcy Code requires the Bankruptcy Court to hear all

'related to' claims . . . the only aspect of the bankruptcy proceeding over which the district courts

and their bankruptcy units have exclusive jurisdiction is 'the bankruptcy petition itself.'") (citing

*In re Wood*, 825 F.2d 90, 92 (5th Cir.1987)); *In re Combustion Eng'g, Inc*., 391 F.3d 190, 224-225

(3d Cir. 2004), as amended (Feb. 23, 2005) ("Section 105(a) permits a bankruptcy court to 'issue

any order, process or judgment that is necessary or appropriate to carry out the provisions' of the

Bankruptcy Code. But as the statute makes clear, [section] 105 does not provide an independent

source of federal subject matter jurisdiction."); *In re Skyline Woods Country Club*, 636 F.3d 467

(8th Cir. 2011); *Whitehouse v. LaRoche*, 277 F.3d 568, 576 (1st Cir. 2002). These restrictive

jurisdictional provisions impair creditors and are unsupported by law.

**G.   The Immediate Binding Effect Provisions in the Plan Are Inconsistent with the Federal Rules of Bankruptcy Procedure.**

20.     The Plan provides that upon consummation (occurrence of the Effective Date) the terms

of the Plan shall be "immediately effective and enforceable and deemed binding" on all relevant

parties "[n]otwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise[.]" Plan,

Article XII.A.   Although the Effective Date is likely years away, if it does occur soon after

confirmation, it may negatively affect the United States' appeal rights. If the Debtors consummate the Plan immediately after confirmation, the Debtors are effectively requesting that the Court shorten the time for appeal afforded by the federal bankruptcy rules. Pursuant to Rule 3020(e) of the Federal Rules of Bankruptcy Procedure, unless otherwise ordered by the Court, a fourteen-day stay is imposed from the date of entry of the confirmation. Under the Debtors' proposed scheme, if the United States is unable immediately to obtain a hearing before the appropriate Court to seek a stay, its appeal may be contended to be moot.

## **CONCLUSION**

For the reasons stated above, this Court must deny confirmation and should grant such other and further relief as the Court deems necessary and just.

Dated: July 24, 2025                                         Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

/s/ Leah V. Lerman
KIRK T. MANHARDT
RODNEY A. MORRIS
LEAH V. LERMAN
United States Department of Justice
Civil Division
1100 L Street, NW
Washington, DC 20005
Tel: (202) 307-0452
Fax: (202) 514-9163
E-mail: leah.v.lerman@usdoj.gov

*Attorneys for the United States of America*

11

## CERTIFICATE OF SERVICE

I certify that on July 24, 2025, a true and correct copy of the foregoing objection was served via electronic means through transmission facilities from the Court upon those parties authorized to participate and access the Electronic Filing System in the above-captioned case, and via email to the below parties:

**Debtors**: Vicky McPherson-  vicky@ligado.com

**Office of the US Ttrustee**: Benjamin Hackman, Esq. - Benjamin.a.hackman@usdoj.gov

**Counsel to the Debtors**: Dennis F. Dunne - Email: ddune@milbank.com; Matthew L. Brod - mbrod@milbank.com; Lauren C. Doyle ldoyle@milbank.com

**Co-Counsel to the Debtors**: Mark D. Collins - collins@rlf.com; Michael J. Merchant - merchant@rlf.com; Amanda R. Steele - steele@rlf.com

**Counsel to the Ad Hoc Crossholder Group**: Brian Schartz, P.C. - brian.schartz@kirkland.com; Derek I. Hunter - derek.hunter@kirkland.com; Patrick J. Nash, Jr., P.C. - patrick.nash@kirkland.com; Alan McCormick - alan.mccormick@kirkland.com

**Counsel to the Ad Hoc First Lien Group**: Jason L. Hufendick - jhufendick@sidley.com; Dennis Twomey - dtwomey@sidley.com

/s/ Leah V. Lerman
LEAH V. LERMAN

2