**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| LIGADO NETWORKS LLC *et al.*,[1] | ) | Case No. 25-10006 (TMH) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Obj. Deadline: July 31, 2025 at 4:00 p.m. (ET)** |
|  | ) | **Hearing Date: August 7, 2025 at 2:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**(I) APPROVING THE AMENDMENT TO THE DIP CREDIT**
**AGREEMENT, (II) APPROVING THE LETTER AGREEMENT AND**
**AST POWER OF ATTORNEY, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "<u>Debtors</u>") respectfully state

as follows in support of this motion seeking authorization to amend the DIP Credit Agreement (the

"<u>Motion</u>"):

**<u>Background</u>**

1.      On January 5, 2025 (the "<u>Petition Date</u>"), the Debtors commenced these cases (the

"<u>Chapter 11 Cases</u>") by filing voluntary petitions for relief under chapter 11 of title 11 of the

United States Code (as amended, the "<u>Bankruptcy Code</u>").  The Debtors are authorized to continue

operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these

cases, and no committees have been appointed or designated.

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

2.      Further information regarding the Debtors' business, capital structure, and the facts and circumstances leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Douglas Smith, Chief Executive Officer of Ligado Networks LLC, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 2] (the "First Day Declaration").[2]

### Jurisdiction and Venue

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

4.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Debtors consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by this Court in connection with this Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the U.S. Constitution.

5.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.      The bases for the relief requested herein are sections 105, 361, 364, 503, and 507 of the Bankruptcy Code and rules 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 4001-2.

---

[2]     Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the First Day Declaration, the DIP Order (as defined below), or the DIP Amendment (as defined below), as applicable.

**Relief Requested**

7.    By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**,[3] (i) approving the proposed amendment to the DIP Credit Agreement, substantially in the form attached to the proposed Order as Exhibit 1 (the "DIP Amendment"), that provides for, among other things, (a) incremental commitments of up to approximately $547 million (such incremental commitments, the "Backstop Funding Commitments") to be used solely to pay the Refund Amount (as defined below) to AST and certain related fees associated with the financing to the extent (and up to the amount) required under the Framework Agreement, (b) a roll-up of certain Prepetition First Lien Secured Obligations on a 1:2 basis, such that (x) for each $2.00 of the Backstop Funding Commitments provided on the effective date of the DIP Amendment, $1.00 of Prepetition First Lien Secured Obligations will convert to Roll-Up Loans, and (y) for each $2.00 of incremental DIP Loans actually funded in the future, $1.00 of Prepetition First Lien Secured Obligations will convert to Roll-Up Loans at such future time, and (c) the payment of certain fees as consideration for the Backstop Funding Commitments, approving that certain Letter Agreement and AST Power of Attorney attached to the proposed order as Exhibit 2 (the "Letter Agreement") that, among other things, grants AST a power of attorney to enforce certain rights of Ligado under the DIP Amendment, and (iii) granting certain related relief.

8.    Except as expressly amended by the DIP Amendment and the Order granting the Motion, the DIP Facility will not be altered and will continue to be in full force and effect.

---

[3]    The proposed form of order attached as Exhibit A hereto, the DIP Amendment, and the Letter Agreement are not final and remain subject in their entirety to further review, modification, approval and continuing negotiations among the Debtors, AST, the Ad Hoc Cross-Holder Group, and the Ad Hoc First Lien Group.  All parties' rights are reserved.

9.      In support of the requested relief, the Debtors submit the declaration of Bruce Mendelsohn, a Partner and the Global Head of the Financing and Capital Solutions Group at Perella Weinberg Partners L.P. ("PWP"), attached hereto as **Exhibit B** (the "DIP Amendment Declaration").

### The DIP Amendment

I.      **The Existing DIP Facility**

10.      On January 6, 2025, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Granting Adequate Protection; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 4] (the "DIP Motion") seeking approval of the approximately $940 million DIP Facility and authorization to use the Prepetition Secured Parties' Cash Collateral.  On January 8, 2025, the Court entered an interim order [Docket No. 104] (the "Interim DIP Order") approving the DIP Facility on an interim basis and authorizing the Debtors to, among other things, borrow up to $12 million of DIP New Money Loans, use Cash Collateral, and provide adequate protection to the Prepetition Secured Parties.  On February 5, 2025, the Court entered the final order [Docket No. 188] (together with the Interim DIP Order, the "DIP Order") authorizing, among other things, the Debtors to borrow the remaining approximately $430 million of the DIP New Money Loans.

II.      **The Debtors' Need for Additional DIP Financing**

11.      As detailed in the First Day Declaration, the Debtors' restructuring strategy centers on the AST Transaction, which will allow AST to use Ligado's valuable rights to L-Band spectrum for space-based broadband services (the "Spectrum Rights") in exchange for significant financial

consideration.  As described in the AST Definitive Documents Motion,[4] the AST Transaction will provide Ligado with: (i) certain warrants, convertible notes, and/or cash, (ii) certain quarterly usage-right payments designed to cover the Debtors' costs of gaining access to and maintaining the Spectrum Rights, and (iii) a certain percentage of revenues derived from AST's use of the Spectrum Rights.

12.     On June 23, 2025, the Court entered an order [Docket No. 692] (the "AST Definitive Documents Order") approving the Debtors' entry into and performance under the AST Definitive Documents (as defined therein), including the Framework Agreement, which requires AST to provide to the Debtors a warrant to purchase AST shares, as well as make certain deferred payments, each as further described in the AST Definitive Documents Motion.

13.     As further set forth in the RSA and the Framework Agreement, the Debtors are required (the "AST Backstop Condition") to obtain financing commitments sufficient to refund to AST any payments advanced by AST to the Debtors for the purpose of satisfying any cure amounts for the benefit of Inmarsat in accordance with the AST Definitive Documents (the "Refund Amount") in the event of an Approval Condition Failure (as defined in the Framework Agreement).  In order for the Debtors to be in the position to satisfy the AST Backstop Condition, they require incremental debtor in possession financing.  Failure by the Debtors to satisfy the conditions to consummation of the AST Transaction would be catastrophic to the Debtors' restructuring process and could force these cases into an unwarranted chapter 7 liquidation.

14.     Based on the Debtors' prior efforts to obtain incremental financing from third party sources, the Debtors do not believe that alternative financing to satisfy the AST Backstop

---

[4]     The "AST Definitive Documents Motion" refers to the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Enter Into the AST Definitive Documents and (II) Granting Related Relief* [Docket No. 359].

Condition is available from sources other than the existing DIP Lenders . DIP Amendment Decl. ¶ 12. Accordingly, the Debtors, in consultation with their professional advisors, have determined that the existing DIP Lenders are the only parties that would be willing to provide the backstop financing commitments, and that, to allow for these additional commitments, it is necessary to amend the DIP Facility. *Id.* ¶ 12. The Debtors and the DIP Lenders have engaged in extensive, good faith, arm's-length negotiations regarding the terms on which the DIP Facility could be amended. *Id.* ¶ 13.

15.    As a result of these negotiations, the DIP Lenders have agreed to provide the Backstop Funding Commitments pursuant to the terms and subject to the conditions set forth in the DIP Amendment, and AST has agreed that the Backstop Funding Commitments satisfies the AST Backstop Condition.    Accordingly, the Debtors request authorization to enter into the Backstop Funding Commitments on the terms set forth in the DIP Amendment.

## III.    The DIP Amendment Terms

16.    Under the terms of the DIP Amendment, the aggregate Commitments under the DIP Facility will be increased by up to approximately $547 million, with corresponding DIP Loans to be made available to the Debtors under the DIP Facility if the Refund Amount becomes payable. The following chart summarizes certain principal terms of the DIP Amendment, as required by Local Rule 4001-2.[5]

| Term | Proposed Modification |
|---|---|
| **Commitments**<br><br>Bankruptcy Rule 4001(c)(1)(B) | The DIP Facility is to be upsized by increasing the amount of Commitments by approximately $547 million.<br><br>DIP Amendment § 1. |

---

[5]    The summaries contained in this table are qualified in their entirety by the provisions of the DIP Amendment. To the extent of any inconsistency, the terms of the DIP Amendment shall control. Capitalized terms used in the summaries have the meanings ascribed to them in the DIP Amendment.

| Term | Proposed Modification |
|---|---|
| Local Rule 4001-2(a)(i)(A), (a)(ii) | |
| **Conditions of Borrowing**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(i)(E) | The availability of the Backstop Incremental Loans shall be conditioned upon satisfaction of customary closing conditions for facilities of this type and purpose, including but not limited to:<br><br>(i) Receipt by the Backstop Incremental Lenders of executed counterparts of the DIP Amendment by each of the Loan Parties, each of the Backstop Incremental Lenders, the Required Ad Hoc Holders and the Required Lenders;<br><br>(ii) Delivery of a customary officer's certificate; and<br><br>(iii) The Bankruptcy Court's approval of the making of the Backstop Incremental Commitments and the Backstop Incremental Loans.<br><br>DIP Amendment § 4.<br><br>The funding of the Backstop Incremental Loans shall be conditioned upon satisfaction of certain funding conditions, including but not limited to:<br><br>(i) The Refund Amount shall be due and owing to AST in accordance with the terms of the Framework Agreement;<br><br>(ii) No Material Adverse Effect;<br><br>(iii) Receipt by the DIP Agent of an executed borrowing request; and<br><br>(iv) Certain Events of Default shall not have occurred and be continuing or shall not immediately occur upon giving effect to the Backstop Incremental Loans.<br><br>DIP Amendment § 5. |
| **Interest Rates**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(i)(B), (a)(ii) | Same as existing DIP Facility.<br><br>DIP Amendment, Annex A, § 2.06. |
| **Use of Backstop Incremental Loans**<br><br>Bankruptcy Rule 4001(b)(l)(B)(ii)<br><br>Local Rule 4001-2(a)(ii) | The proceeds of the Backstop Incremental Loans shall be used solely to fund the Refund Amount, solely to the extent due and payable in accordance with the terms of the Framework Agreement, and the Backstop Incremental OID.<br><br>DIP Amendment, Annex A, §3.12(c). |
| **"Roll-Up" Provisions**<br><br>Local Rule 4001-2(a)(i)(O) | For each $2.00 of Backstop Incremental Commitments held by any Backstop Incremental Lender as of the First Amendment Effective Date, such Lender shall be entitled to, and deemed to, convert $1.00 of Prepetition First Lien Secured Obligations into $1.00 of Roll-Up Loans; |

| Term | Proposed Modification |
|---|---|
| | and<br><br>For each $2.00 of Backstop Incremental Loans funded by such Backstop Incremental Lender on the Backstop Incremental Funding Date, such Lender shall be entitled to, and deemed to, convert $1.00 of Prepetition First Lien Secured Obligations into $1.00 of Roll-Up Loans.<br><br>DIP Amendment, Annex A, § 2.01(d). |
| **Fees**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(i)(B), (a)(ii) | Backstop Incremental Upfront Fee:  20.0% of the aggregate amount of the Backstop Incremental Commitments, payable in kind in Backstop Incremental Funded Loans on the First Amendment Effective Date.<br><br>Backstop Incremental OID:  5.0% of the aggregate principal amount of the Backstop Incremental Loans actually funded on the Backstop Incremental Funding Date, payable on the Backstop Incremental Funding Date and structured as original issue discount.<br><br>Backstop Incremental Unused Commitment Fee:  Unused commitment fee in an amount equal to the average daily balance of the unused Backstop Incremental Commitments, multiplied by 8.75% *per annum*, payable in kind in Backstop Incremental Funded Loans on the last business day of each calendar month.<br><br>DIP Amendment, Annex A, § 2.05(h), (i), (j). |
| **Mandatory Prepayments**<br><br>Local Rule 4001-2(a)(i)(E) | Substantially the same as the existing DIP Facility.<br><br>DIP Amendment, Annex A, § 2.10. |
| **Events of Default**<br><br>Bankruptcy Rule 4001(c)(l)(B)<br>Local Rule 4001-2(a)(i)(M), (a)(ii) | Substantially the same as the existing DIP Facility.<br><br>DIP Amendment, Annex A, § 8.01. |
| **Additional Covenants** | Each Backstop Incremental Lender agrees not to seek or support a dismissal of the chapter 11 cases and to use commercially reasonable efforts to affirmatively oppose the request for any such dismissal.<br><br>DIP Amendment § 13. |

## The Letter Agreement and AST Power of Attorney

17.    Section 9 of the Mediated Agreement (attached as Exhibit 1 to the AST Definitive

Documents Order) provides that "AST shall be granted a power of attorney in connection with the

8

Backstop Commitment and shall be entitled to exercise the power of attorney to submit a draw request under the DIP Facility on behalf of the Debtors in the amount of the Refund Amount and direct such payment to be made directly to AST in satisfaction of Ligado's obligation to pay the Refund Amount to AST."

18.     Accordingly, and concurrently with the Debtors' entry into the DIP Amendment, the Debtors seek authorization from this Court to enter into, and this Court's approval of, the Letter Agreement which provides, among other things, and consistent with Paragraph 9 of the Mediated Agreement, that:

a)      The Debtors grant to AST a power of attorney to submit a Borrowing Request on Ligado's behalf upon the occurrence of a Funding Request Failure (as defined in the Letter Agreement);

b)      If an Approval Condition Failure (as defined in the Strategic Collaboration and Spectrum Usage Agreement) shall occur, then the Debtors shall immediately submit a draw request under the DIP Facility in an amount equal to the Refund Amount and direct such payment to be made directly to AST; and

c)      The Debtors acknowledge and agree that any claim of AST in respect of the Refund Amount shall have the status of an allowed administrative expense claim.

*See* Letter Agreement at paragraphs [●].[6]

---

[6]     The proposed form of order attached as Exhibit A hereto, the DIP Amendment, and the Letter Agreement are not final and remain subject in their entirety to further review, modification, approval and continuing negotiations among the Debtors, AST, the Ad Hoc Cross-Holder Group, and the Ad Hoc First Lien Group.  All parties' rights are reserved.

**Basis for Relief**

I.    **Entry Into the DIP Amendment Is a Reasonable Exercise of the Debtors' Sound Business Judgment and Is in the Best Interests of the Estates**

19.    The DIP Amendment represents a sound exercise of the Debtors' business judgment and is in the best interests of their estates.  Section 364 of the Bankruptcy Code authorizes the Debtors to obtain secured postpetition financing.  Courts grant a debtor's business judgment considerable deference in making the decision to obtain postpetition secured credit.  *See, e.g.*, *In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving a postpetition loan and receivables facility because it "reflect[ed] sound and prudent business judgment"); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.").

20.    To determine whether the business judgment standard is met, the Court need only "examine whether a reasonable business person would make a similar decision under similar circumstances."  *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981) (noting that courts should not second guess a debtor's business decision when that decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of [the debtor's] authority under the [Bankruptcy] Code").  Courts should evaluate the soundness of a debtor's business judgment, "in context, and considering the relative circumstances of the parties."  *In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003) ("Viewed in isolation, several of the terms of the [postpetition financing] might appear to be extreme or even unreasonable. Certainly, many of them

favor the DIP [l]ender.  But, taken in context, and considering the relative circumstances of the parties, the Court does not believe that the terms are unreasonable."); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co.* (*In re Elingsen McLean Oil Co.*), 65 B.R. 358, 365 n.7 (W.D. Mich. 1986) (recognizing that a debtor may have to enter into "hard bargains" to acquire funds for its reorganization).

21.    The Debtors and the DIP Lenders negotiated the DIP Amendment in good faith, at arm's-length, and with the assistance of their respective advisors.  DIP Amendment Decl. ¶ 13. The incremental financing made available to the Debtors by the DIP Amendment will provide the Debtors with the means to satisfy the AST Backstop Condition, which is necessary to consummate the AST Transaction. *Id.* ¶ 14.  The interest rates, premiums, fees, and the roll-up feature are all integral components of the overall package demanded by the DIP Lenders as consideration for the incremental Backstop Funding Commitments.  *Id.*

22.    The interest rates on the Backstop Incremental Loans will be the same as the interest rates on the existing DIP Loans.  Under the DIP Amendment, the Debtors will, subject to the Court's approval, pay certain fees (the "Backstop Financing Fees") to the Backstop Incremental Lenders, including the Backstop Incremental Upfront Fee, the Backstop Incremental OID, and the Backstop Incremental Unused Commitment Fee.  The Backstop Financing Fees are reasonable under the circumstances—the Backstop Incremental Lenders, representing the Debtors' best, and only, available source of postpetition financing necessary to satisfy the AST Backstop Condition, would not have agreed to extend the Backstop Funding Commitments but for the economics (including the Backstop Financing Fees) contained in the DIP Amendment. *See id.* ¶ 14.  Thus, the Backstop Financing Fees should not be viewed separately but rather as a part of the overall, substantial benefits provided to the estates as a result of the DIP Amendment.  Specifically, the

Backstop Financing Fees are necessary to enable the Debtors to obtain the Backstop Funding Commitments, which are necessary for the Debtors to proceed towards consummation of the AST Transaction that is critical to the Debtors' restructuring strategy.

23.     Moreover, the DIP Amendment does not provide for an unconditional and complete roll-up of Prepetition First Lien Secured Obligations.  Rather, it provides for one roll-up event upon the date the DIP Amendment becomes effective and the funds are committed and a further conditional roll-up event if and when the Backstop Incremental Loans are funded, which will occur only if the Refund Amount is triggered under the Framework Agreement.  In each case, only $1.00 of Prepetition First Lien Secured Obligations will be rolled up for every $2.00 of Backstop Incremental Loans committed or funded, as applicable.

24.     The Debtors, in consultation with their advisors, have determined that the DIP Amendment presents the best (and only) financing option available to the Debtors to satisfy the AST Backstop Condition.  *Id.* ¶ 15.  Absent the Backstop Funding Commitments, the Debtors would not be able to consummate the AST Transaction, which would preclude them from consummating their chapter 11 plan to the detriment of all stakeholders.  Thus, the terms of the DIP Amendment reflect a sound exercise of the Debtors' business judgment, and the Debtors should be authorized to enter into the DIP Amendment and obtain the Backstop Funding Commitments.

## Notice

25.     The Debtors will provide notice of this Motion to:  (i) the Office of the U.S. Trustee for the District of Delaware; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (iii) Foley & Lardner LLP, as counsel to U.S. Bank National Association, in its capacities as Prepetition First Lien Notes Trustee, Prepetition First Lien Notes

Collateral Trustee, First Lien Collateral Trustee, First Lien Representative, Prepetition First Lien Loan Administrative Agent, Prepetition First Lien Loan Collateral Agent, Prepetition 1.5 Lien Collateral Agent, Initial Additional Pari Collateral Agent, Initial Additional Authorized Representative for the Notes Secured Parties, Senior Collateral Trustee, Junior Lien Representative, Junior Collateral Trustee, and DIP Agent; (iv) Seward & Kissel LLP, as counsel to Wilmington Savings Fund Society, in its capacity as Prepetition Second Lien Trustee and Prepetition Second Lien Collateral Trustee; (v) Jones Day LLP, as counsel to Jefferies Finance LLC, in its capacity as Prepetition 1.5 Lien Administrative Agent, Senior Lien Representative, and Junior Lien Representative; (vi) Sidley Austin LLP, as counsel to the Ad Hoc First Lien Group; (vii) Kirkland & Ellis LLP, as counsel to an Ad Hoc Cross-Holder Group; (viii) the Federal Communication Commission; (ix) the United States Securities and Exchange Commission; (x) the Internal Revenue Service; (xi) the state attorneys general for all states in which the Debtors conduct business; (xii) the United States Attorney's Office for the District of Delaware; and (xiii) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that that the motion notice requirements have been satisfied, and that no further notice is required under the circumstances.

### **No Prior Request**

26.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, and grant such other relief as the Court deems appropriate under the circumstances.

Dated July 24, 2025                   /s/ Amanda R. Steele
Wilmington, Delaware                  Mark D. Collins, Esq. (Bar No. 2981)
                                      Michael J. Merchant, Esq. (Bar No. 3854)
                                      Amanda R. Steele, Esq. (Bar No. 5530)
                                      Emily R. Mathews, Esq. (Bar No. 6866)
                                      **RICHARDS, LAYTON & FINGER, P.A.**
                                      One Rodney Square
                                      920 North King Street
                                      Wilmington, DE 19801
                                      Telephone:    (302) 651-7700
                                      Facsimile:    (302) 651-7701
                                      Email:        collins@rlf.com
                                                    merchant@rlf.com
                                                    steele@rlf.com
                                                    mathews@rlf.com

                                      -and-

                                      Dennis F. Dunne, Esq. (admitted *pro hac vice*)
                                      Matthew L. Brod, Esq. (admitted *pro hac vice*)
                                      Lauren C. Doyle, Esq. (admitted *pro hac vice*)
                                      **MILBANK LLP**
                                      55 Hudson Yards
                                      New York, New York 10001
                                      Telephone:    (212) 530-5000
                                      Facsimile:    (212) 530-5219
                                      Email:        ddunne@milbank.com
                                                    mbrod@milbank.com
                                                    ldoyle@milbank.com

                                      Andrew M. Leblanc, Esq. (admitted *pro hac vice*)
                                      **MILBANK LLP**
                                      1850 K Street, NW, Suite 1100
                                      Washington DC 20006
                                      Telephone:    (202) 835-7500
                                      Facsimile:    (202) 263-7586
                                      Email:        aleblanc@milbank.com

                                      *Co-Counsel for Debtors in Possession*