**Exhibit B**

**DIP Amendment Declaration**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| LIGADO NETWORKS LLC *et al.*,[1] | ) ) ) | Case No. 25-10006 (TMH) |
| Debtors. | ) ) ) | (Jointly Administered) |

**DECLARATION OF BRUCE MENDELSOHN IN SUPPORT OF DEBTORS'
MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE AMENDMENT TO
THE DIP CREDIT AGREEMENT, (II) APPROVING THE LETTER AGREEMENT
AND AST POWER OF ATTORNEY, AND (III) GRANTING RELATED RELIEF**

Under 28 U.S.C. § 1746, I, Bruce Mendelsohn, declare as follows under penalty of perjury:

1. I am a Partner and the Global Head of the Financing and Capital Solutions Group at Perella Weinberg Partners L.P. ("PWP"), a financial advisory firm that maintains an office at 767 5th Avenue, New York, New York 10153. PWP is the investment banker for the above-captioned debtors and debtors in possession (collectively, the "Debtors").

2. I submit this declaration (this "Declaration") in support of the *Debtors' Motion for Entry of Order (I) Approving the Amendment to the DIP Credit Agreement, (II) Approving the Letter Agreement and AST Power of Attorney, and (III) Granting Related Relief* (the "Motion").[2] I am authorized to submit this Declaration on behalf of the Debtors.

3. I am familiar with the Debtors' day-to-day operations, business affairs, and books and records. Except as otherwise indicated, all facts set forth in this Declaration are based upon

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2] Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Motion.

my personal knowledge, my discussions with other members of the Debtors' senior management and advisors, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning the Debtors' operations. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

## PROFESSIONAL BACKGROUND AND QUALIFICATIONS

4. I have approximately 35 years of investment banking and capital structure advisory experience assisting companies on a wide range of strategic matters. I have advised companies, creditors, shareholders and other stakeholders with respect to issues relating to chapter 11 plan negotiations, debtor-in-possession financings, cash collateral usage, sale processes under section 363 of the Bankruptcy Code, and new money recapitalizations, in each case analyzing and evaluating business plans, cash flow forecasts and liquidity needs, as well as evaluating, negotiating and structuring financing transactions.

5. Prior to joining PWP in 2016, I was a partner at Goldman Sachs and served as Head of the Americas Restructuring Group as part of their U.S. Leveraged Finance team. Prior to working at Goldman Sachs, I worked for UBS and MJ Whitman in restructuring and distressed securities. I received a Bachelor of Arts degree from Emory University and an MBA from the Wharton School at the University of Pennsylvania.

6. PWP was engaged by the Debtors in August 2022 to serve as their investment banker and has been involved in all aspects of the Debtors' restructuring efforts, including the negotiation of the AST Transaction.

## THE DIP AMENDMENT

7. Based on my professional experience and familiarity with the AST Transaction, including the AST Backstop Condition, the DIP Facility, the DIP Amendment, and the negotiations between the Debtors and the DIP Lenders with respect to the DIP Amendment, I

2

believe the approval of the DIP Amendment that allows the Debtors to obtain the Backstop Funding Commitments is necessary to consummate the AST Transaction, which in turn is a critical component of the Debtors' overall restructuring strategy.

8. Prior to determining to enter into the DIP Amendment, the Debtors, with the assistance of PWP, considered various alternatives to obtain the financial assurance necessary to consummate the AST Transaction. The Debtors, with the assistance of PWP, made inquiries into potential sources of DIP financing to satisfy the AST Backstop Condition, including the Debtors' existing lenders or affiliates of existing lenders, and solicited proposals from various lending institutions with experience in providing such financing. The Debtors, with the assistance of PWP, contacted several potential lenders that PWP believed might be interested in providing DIP financing to the Debtors in an amount sufficient to satisfy the AST Backstop Condition.

9. None of these potential lenders submitted proposals for an incremental DIP facility and no additional lenders expressed interest in participating in an incremental DIP facility.

10. I believe that the process used to determine the most viable DIP financing for the Debtors to satisfy the AST Backstop Condition was appropriate under the circumstances, including, without limitation, in light of the Debtors' existing DIP Facility and the terms of the AST Transaction.

11. As part of this process, the Debtors, with the assistance of PWP, engaged in discussions with the Ad Hoc Groups regarding their interest in providing incremental DIP financing. I supervised these efforts on behalf of PWP and, along with individuals at PWP who report to me, directly interacted with these potential lenders.

12. The Debtors did not receive any viable incremental DIP proposals from any third-party lenders. The only incremental DIP proposal the Debtors received was the proposal for the

DIP Amendment, including the Backstop Funding Commitments, from the DIP Lenders. After considering all other options, the Debtors, in consultation with their advisors, including me and other individuals at PWP who report to me, determined that amending the existing DIP Facility to include the Backstop Funding Commitments was the only viable solution for satisfying the AST Backstop Condition.

13. The Debtors and the DIP Lenders, with the assistance of their respective advisors, engaged in extensive, good faith, arm's-length negotiations regarding the terms of the DIP Amendment.

14. The Backstop Funding Commitments made available to the Debtors under the DIP Amendment will provide them with the financing needed to satisfy the AST Backstop Condition, which is necessary for the Debtors to consummate the AST Transaction. The interest rates, premiums, fees, and the roll-up feature are integral components of the overall package required by the DIP Lenders as consideration for the extension of the incremental Backstop Funding Commitments and reflect the highly unusual nature of the financing contemplated by the DIP Amendment. The financing contemplated by the DIP Amendment will fund the Refund Amount to AST only upon the parties to the AST Transaction failing to obtain necessary regulatory approvals, *i.e.* an Approval Condition Failure (as defined in the Framework Agreement), and therefore involves unique risks and considerations  I believe that the principal economic terms proposed under the DIP Amendment are appropriate for these significantly unique circumstances. In my view, based on the discussions I observed, such economic terms reflect the best terms available to the Debtors. Indeed, no third-party lender submitted a viable proposal to provide financing on superior terms under these circumstances. It is my understanding that the DIP

Lenders would not have agreed to provide the Backstop Funding Commitments without these principal economic terms.

15. The Debtors, in consultation with their advisors, have determined that the DIP Amendment presents the best (and only) financing option currently available to the Debtors to satisfy the AST Backstop Condition.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: July 24, 2025                    /s/ Bruce Mendelsohn
                                                          Bruce Mendelsohn
                                                          Partner
                                                          Perella Weinberg Partners
                                                          *Investment Banker to the Debtors and Debtors-in-Possession*