**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>LIGADO NETWORKS LLC, *et al.*,[1]<br><br>Debtors. | Ch. 11<br>Case No. 25-10006 (TMH)<br>Jointly Administered<br>**Re: Docket No. 832** |

**INMARSAT GLOBAL LIMITED'S OPPOSITION TO**
**LIGADO'S MOTION TO SHORTEN THE NOTICE AND OBJECTION PERIOD FOR**
**ITS MOTION TO ENFORCE THE PARTIES' MEDIATED AGREEMENT**

1.  The Court should deny the motion of the Debtors ("Ligado") for an expedited hearing on its motion to enforce the "Mediated Agreement" because Ligado does not substantiate its claimed urgency and because Ligado's enforcement motion extensively relies on extrinsic evidence that is improper to consider—but that if considered would require substantial discovery that cannot be completed on Ligado's proposed schedule. The hearing date should be accelerated only if extrinsic evidence is excluded, and, in all events, any hearing should be combined with the earlier-filed enforcement motion of Inmarsat Global Limited ("Inmarsat").

**BACKGROUND**

2.  Inmarsat and Ligado are parties to a 100-year contract originally signed in 2007 (the "Cooperation Agreement") to coordinate satellite spectrum rights, and Ligado filed this bankruptcy in January because it was unable to pay more than $525 million that had come due

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A).

under the Cooperation Agreement. Ligado's pre-planned exit is premised on a commercial transaction whereby it would essentially sublease its spectrum rights to AST & Science, LLC ("AST") through the end of the Cooperation Agreement term in 2107. Inmarsat objected to being thrust into an involuntary 80-year partnership with AST without direct recourse to hold AST to the Cooperation Agreement.

3. As part of a Court-ordered mediation before Hon. Robert Drain (Ret.), Inmarsat, Ligado and AST entered into a binding term sheet, D.I. 692-1 (the "Mediated Agreement") that resolved Inmarsat's objections. It calls for the parties to draft and execute two definitive agreements implementing their settlement (including an Amended Cooperation Agreement), and, following Plan confirmation, for payments to Inmarsat totaling $520 million by March 2026.

4. A dispute arose in the drafting process, and yesterday Inmarsat moved to enforce certain unambiguous terms of the Mediated Agreement that AST is refusing to honor. D.I. 825. That motion is set for a hearing on September 22, 2025. Hours later, Ligado brought its own motion to enforce the Mediated Agreement, D.I. 826, and simultaneously moved to shorten the notice and objection time, so that its enforcement motion would be heard nine business days later, on August 27, 2025. D.I. 832.

**ARGUMENT**

5. The Court should deny Ligado's motion to shorten time, and should set its motion for the same date and time as Inmarsat's motion, for two reasons. *First*, Ligado does not even try to substantiate its claimed urgency, merely relying on conclusory assertions like "delay does not benefit any stakeholders." *Second*, Ligado's motion extensively cites and relies on multiple threads of extrinsic evidence—including transactions occurring in 2007, 2010, 2016 and 2025. Inmarsat believes that these materials cannot be considered as a matter of law both because the terms of the Mediated Agreement are unambiguous and because much of the extrinsic "evidence"

Ligado relies on is subject to the mediation privilege and should never have been disclosed to the Court in the first instance. Indeed, Inmarsat believes the Court may wish to determine as a threshold matter whether Ligado has violated the mediation privilege before turning to the merits of Ligado's motion. As the authority cited in Ligado's own motion provides, "'[c]ourts have consistently enforced parties' expectations of confidentiality during alternative dispute ('ADR') proceedings by excluding improperly disclosed confidential statements and sanctioning attorneys for improper disclosure of such statements.'" *Reynolds v. Knox Cnty. Gov't*, 2019 WL 13334792, at *1 (E.D. Tenn. Mar. 28, 2019) (quoting *Deluca v. Allied Domecq Quick Servs. Rest.*, 2006 WL 2713944, at *6 (E.D.N.Y. Sept. 22, 2006)). But if the Court ultimately decides to consider extrinsic materials, Inmarsat must be permitted sufficient time to conduct discovery—involving several witnesses and extensive documents—in order to rebut Ligado's smorgasbord of (false) accusations. Fair discovery simply cannot be conducted in the shrunken window of time Ligado proposes.

6. Alternatively, if a hearing is to be expedited, the Court should conduct the hearing in the only manner feasible—without considering any of Ligado's proffered extrinsic evidence. That is especially appropriate where, as here, both sides argue that the disputed contract language is unambiguous. Regardless of when the hearing is held, the Court should hear the respective cross-motions at the same time.

I. **Ligado Has Shown No Urgency**

7. Ligado argues that an expedited hearing date is necessary because it "cannot confirm the Plan without resolving the disputes with Inmarsat," D.I. 832 ¶ 17, but fails to explain why the confirmation date cannot be adjourned by a few weeks to address these critical motions. The Mediated Agreement governs certain spectrum rights that are *the* bedrock component of Ligado's exit plan, which means that it is particularly appropriate for the Court to give these

motions due consideration. Once the parties have clarity about the spectrum rights at issue, which are presently disputed, the Plan can be confirmed.[2]

8.     Missing from Ligado's motion to shorten the notice and objection period is any explanation of harms that will befall anyone if the underlying motions are heard in the ordinary course, on September 22. The closest Ligado comes to identifying any harm is to conclude that "further delay does not benefit any stakeholders." D.I. 832 ¶ 18. But Ligado never says what stakeholders are harmed or why. Inmarsat is not interested in delay for delay's sake; it wants the Plan confirmed and the hundreds of millions in payments that would flow from confirmation. But, at the same time, Inmarsat should not be prejudiced by having to oppose a motion littered with improper extrinsic evidence that—if nonetheless considered by the Court—requires proper scrutiny and rebuttal.

## II.     Fair Discovery Is Not Feasible On Ligado's Proposed Schedule

9.     Ligado's proposed expedited timetable is not realistic, especially given the extensive discovery associated with Ligado's arguments. Ligado's underlying motion proclaims that "[t]he plain language of the Mediated Agreement is unambiguous," D.I. 826 ¶ 31, but, betraying no confidence in that position, instead focuses heavily on extrinsic evidence. For example:

- Ligado attaches excerpts from eight redline drafts of the Mediation Agreement between May and June 2025 (nearly all of which were directly exchanged with Judge Drain, and all of which are marked "Subject to All Mediation Privileges") that it claims have "particular relevance to this dispute." D.I. 826 ¶ 15; D.I. 830, Ex. B.

---

[2] Ligado is proposing a hearing on August 27, 2025, with Plan confirmation to follow, on September 3, 2025. This schedule is not realistic. Once the Court rules on the parties' motion to enforce, additional time will be required to complete the extensive definitive documents—including an Amended Cooperation Agreement with extensive exhibits—consistent with the Court's ruling.

- Ligado refers to "multiple conference calls among the parties" during the negotiation of the Mediation Agreement in which—allegedly—"AST explained in no uncertain terms" the position Ligado now wants the Court to adopt. D.I. 826 ¶ 17.

- Ligado attaches a declaration from its CEO, Doug Smith, regarding a proposed transaction in 2016 with a UK-based third party, Avanti Communications ("Avanti"), supposedly relevant to the issues at hand. D.I. 828. Smith refers to (hearsay) conversations about the Avanti transaction between the Chief Strategy Officer of Ligado and a former Inmarsat employee, as well as "internal discussions at Inmarsat," that allegedly undermine Inmarsat's position in this motion. *Id*. ¶¶ 9-12

- Ligado argues that the Cooperation Agreement applies *only* to spectrum rights in a certain part of the globe (referred to as ITU Region 2), but instead of pointing to a provision saying that explicitly, argues that that reading can be divined from stitching together various references in the Cooperation Agreement to operations in Region 2, and by comparing the certain maps in the Cooperation Agreement to an ITU map depicting the Regions. *Id*. ¶¶ 39-43.

- Ligado argues that "[b]etween execution of the original Inmarsat Cooperation Agreement in 2007 through last week, Inmarsat never took the position" that it is now taking, and Ligado cites, in support, a 2008 Inmarsat SEC filing. *Id*. ¶ 43 n.19.

10. Inmarsat believes that *all* of this extrinsic evidence is improper, because the Mediated Agreement—which is of course the best evidence of what the parties *did* agree to—is unambiguous, and, further, because the drafting history and conversations relating to the Mediated Agreement are categorically protected by the federal mediation privilege and Local Rule 9019–5(d). D.I. 825. ¶¶ 62-63 (Inmarsat's motion making these points). Ligado also contends that the Mediated Agreement is unambiguous. D.I. 826 ¶ 31.

11. However, in the event the Court disagrees, Inmarsat needs a fair opportunity to rebut Ligado's false allegations. The discovery necessary would likely include, for instance:

- Deposition testimony and documents about whether the Cooperation Agreement, when originally drafted in 2007 and amended and restated in 2010, was intended to be limited to Region 2;

5

- Deposition testimony and documents about the Avanti transaction in 2016, including from Avanti and the people allegedly involved in the relevant discussions (Doug Smith, Scott Wiener, and Pat McDougal); and

- Testimony and documents from numerous executives, attorneys and advisors (out of dozens) involved in negotiating and drafting the Mediated Agreement over several months this Spring.

12. Inmarsat has had Ligado's motion for less than a day, and so cannot provide a definitive list of the discovery that would be necessary. But, whatever the appropriate scope, it cannot possibly be completed in time for a hearing less than two weeks away.

### III. Alternatively, An Expedited Hearing Without Extrinsic Evidence Is Appropriate

13. In the alternative, since Ligado believes the Mediated Agreement is unambiguous—and Inmarsat agrees—if the Court is inclined to hold an expedited hearing, the Court should decide the issues without reference to extrinsic evidence.

14. Both parties agree that extrinsic evidence cannot change the meaning of unambiguous contract terms, D.I. 825 ¶ 62; D.I. 826 ¶¶ 29-21, and, if Ligado truly believes the Mediated Agreement is unambiguous—and if Ligado and/or its stakeholders truly cannot wait for this motion to proceed in the ordinary course—then the solution is for the Court to interpret the Mediated Agreement as a matter of law, based solely on the words the parties chose to use. That will provide the clarity necessary to allow the parties to finalize the definitive documentation contemplated by the Mediated Agreement and for the Plan to move forward.

### CONCLUSION

15. For the stated reasons, the Court should deny Ligado's motion to shorten the notice and objection period, and should instead set Ligado's motion to enforce the Mediated Agreement for the same date and time as Inmarsat's earlier-filed motion. Alternatively, any expedited hearing should be conducted without extrinsic evidence.

Dated: August 15, 2025

| | |
|---|---|
| STEPTOE LLP | PACHULSKI STANG ZIEHL & JONES LLP |
| By: /s/ Alfred M. Mamlet | By: /s/ Laura Davis Jones |
|     Alfred M. Mamlet (admitted *pro hac vice*) |     Laura Davis Jones (DE Bar No. 2436) |
|     1330 Connecticut Ave NW |     Timothy P. Cairns (DE Bar No. 4228) |
|     Washington, DC 20036 |     919 N. Market Street, 17th Floor |
|     (202) 429-3000 |     P.O. Box 8705 |
|     amamlet@steptoe.com |     Wilmington, DE  19899-8705 |
| |     (302) 652-4100 |
|     Charles Michael (admitted *pro hac vice*) |     ljones@pszjlaw.com |
|     1114 Avenue of the Americas |     tcairns@pszjlaw.com |
|     New York, New York 10036 | |
|     (212) 506-3900 | |
|     cmichael@steptoe.com | |

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Benjamin Finestone*
    Benjamin Finestone
    295 5th Avenue,
    New York, NY  10016
    (212) 849-7000
    benjaminfinestone@quinnemanuel.com

    Matthew Scheck
    300 West 6th St., Suite 2010
    Austin, TX  78701
    (737) 667-6100
    matthewscheck@quinnemanuel.com

*Counsel for Inmarsat Global Limited*