# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| LIGADO NETWORKS LLC *et al.*,[1] | ) ) | Case No. 25-10006 (TMH) |
| Debtors. | ) ) ) ) ) | (Jointly Administered) **Re: D.I. 832 and 846** |

## DEBTORS' REPLY TO INMARSAT GLOBAL LIMITED'S OPPOSITION TO LIGADO'S MOTION TO SHORTEN THE NOTICE AND OBJECTION PERIOD FOR ITS MOTION TO ENFORCE THE PARTIES' MEDIATED AGREEMENT

The above-captioned debtors and debtors in possession (the "Debtors") submit this reply (the "Reply") to the objection to the *Debtors' Motion For Entry of an Order Shortening the Notice and Objection Periods and Waiving Local Rule 9006-1(C)(II) with Respect to the Debtors' Motion for an Order (I) Enforcing the AST Order and Mediated Agreement and (II) Granting Related Relief* [D.I. 832] (the "Motion to Shorten")[2] filed by Inmarsat Global Limited [D.I. 846] ("Inmarsat" and such objection, the "Objection") and in further support of the relief sought in the Motion to Shorten. For the reasons set forth herein, the Objection should be overruled and the Motion to Shorten should be granted.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2] Capitalized terms used but not otherwise defined herein have the respective meanings ascribed to them in the Motion to Shorten or the *Debtors' Motion for an Order (I) Enforcing the AST Order and Mediated Agreement and (II) Granting Related Relief* (the "Debtors' Motion to Enforce"), as applicable.

**Reply**

1. The Motion to Shorten seeks to shorten the notice period by one day regarding a dispute the parties have known about for weeks, while the Debtors are on the eve of plan confirmation and while the issues raised in the Debtors' Motion to Enforce are the only current impediment to moving forward. As further explained in the Motion to Shorten, Inmarsat is well aware of the issues raised in the Debtors' Motion to Enforce and will suffer no prejudice by the Motion to Shorten being granted. Indeed, if the Motion to Shorten is granted the notice period will be shortened by *only one* day to accommodate an already scheduled hearing date of August 27 and Inmarsat would have a full seven-day objection period to file an objection to the Debtors' Motion to Enforce. On the other hand, the Debtors will suffer severe prejudice if the Motion to Shorten is not granted as confirmation of the Debtors' proposed plan will be further delayed at the expense of all the stakeholders in these Chapter 11 Cases, putting at jeopardy the Debtors' ability to move forward. The arguments raised by Inmarsat in the Objection are without merit as (i) the Debtors urgently need resolution of the Debtors' Motion to Enforce and (ii) extensive discovery is not required for the Court to resolve this issue.

    A.    **Good Cause and the Exigencies of these Chapter 11 Cases Justify Shortening Notice**

2. Although the Objection attempts to paint a picture as to why additional time is needed to address the dispute raised in the competing motions to enforce, the parties have been well aware of this dispute for quite some time, and, as can be seen from Inmarsat's filing of its own motion to enforce just in advance of the Debtors' filing, this comes as no surprise to Inmarsat. Further, while Inmarsat is happy to keep delaying finalization and execution of an Amended Inmarsat Cooperation Agreement as required by the Mediated Agreement, it is the Debtors and the RSA parties (who have supported the Debtors since the filing of these Chapter 11 Cases) who will

be—and have been—affected by the unnecessary delay caused by Inmarsat, a situation which Inmarsat appears determined to continue to exploit.

3. The restructuring and transactions contemplated in these Chapter 11 Cases require a highly coordinated sequence of events and further delay only increases the costs and risks associated with completing the restructuring. As the parties are aware, there are several critical steps that need to occur to confirm the proposed plan and before the Debtors can begin making the payments to Inmarsat that the parties negotiated to be made on September 30, 2025, under the terms of the Mediated Agreement, including:

- Prompt resolution of the issue set forth in the competing motions to enforce;

- Finalization and execution of the Amended Inmarsat Cooperation Agreement (as set forth in footnote 4 of the Mediated Agreement);

- The Confirmation Hearing and hearing on the *Motion for Entry of an Order (I) Approving the Amendment to the DIP Credit Agreement, (II) Approving the Letter Agreement and AST Power of Attorney, and (III) Granting Related Relief* [D.I. 764] *(*the "DIP Amendment Motion")*;* and

- Sufficient time **following confirmation of the Plan and approval of the DIP Amendment Motion** to secure funds required for the payment of the Cure Payments required by the Mediated Agreement.

4. Inmarsat cavalierly assets that there is no reason "why the confirmation date cannot be adjourned by a few weeks" while knowing that the additional delay it seeks could imperil the entire restructuring. Ironically, one of the steps the Debtors believe should be the simplest to complete—execution of the Amended Inmarsat Cooperation Agreement once the Motions to Enforce are resolved—is one that Inmarsat seems to assert will require a significant amount of time and would even further delay confirmation. *See* Objection ¶ 7 n.2 ("Once the Court rules on the parties' motion to enforce, additional time will be required to complete the extensive definitive documents—including an Amended Cooperation Agreement with extensive exhibits—consistent with the Court's ruling."). Not only does this leave the Debtors and other parties in interest unclear

- 3 -

about the timeline Inmarsat is actually seeking, it also raises significant questions about what additional issues Inmarsat will seek to renegotiate with respect to the binding agreement that was already struck. Indeed, the Mediated Agreement is premised upon the Debtors making a quarterly payment to Inmarsat on September 30 and the first cure payment on October 31. Inmarsat's proposed timeline would jeopardize the carefully crafted and highly negotiated agreement that is embodied in the Mediated Agreement, which seems to be yet another attempt by them to renegotiate the deal.

    B.    **Extensive Discovery Is Not Required**

5. Inmarsat further argues that the Debtors' proposed "timetable is not realistic, especially given the extensive discovery associated with Ligado's arguments." *See* Objection ¶ 9. This is nothing more than an attempt to create unnecessary delay. The Mediated Agreement plainly does not provide what Inmarsat now seeks to insert into an Amended Inmarsat Cooperation Agreement. But, as is routine in matters of contractual interpretation, the Debtors have also pointed to parole evidence—***equally in Inmarsat's possession***—to support the Debtors' interpretation of the Mediated Agreement. If Inmarsat chooses to rest on its contention that the Mediated Agreement in unambiguous, that is Inmarsat's choice to make, but it cannot impose that choice on other parties under the threat of discovery that is wholly unnecessary.

6. There is no need for the scorched earth discovery that Inmarsat describes. The Debtors' Motion to Enforce explains why redlines of the term sheet— demonstrating that the very interpretation that Inmarsat now puts forth was rejected more than once—is both relevant and appropriate to be considered. The Debtors will argue the importance of that evidence at the proper time. Importantly, however, Inmarsat has access to all of the same documents that were exchanged between the parties, so no further discovery is needed on that front. If Inmarsat believes there are

documents that are consistent with their interpretation that were exchanged between the parties, they are free to introduce those, but none of this requires discovery.

7. Ligado also has identified evidence from 2007 and 2016 that is consistent with its interpretation of the Inmarsat Cooperation Agreement, and offered the declaration of Douglas Smith in support of that contention. If Inmarsat disputes the facts offered with respect to 2007 and 2016, both parties can take limited discovery of those issues, but nothing that Inmarsat claims to need is necessary to the dispute.[3] If Inmarsat has even one document that is consistent with its current interpretation (and inconsistent with its public filings in 2007 and its conduct in 2016), Inmarsat should make that known and the parties can take up whatever limited discovery is appropriate if this fact is actually in dispute. If there is a genuine dispute, there is no reason that such limited discovery cannot be completed quickly given the exigencies of the case. As a result, there is no merit to Inmarsat's contention that the need for discovery, if any is actually necessary, serves as a reason to deny the Motion to Shorten. Much less does it provide a basis to exclude extrinsic evidence if the Motion to Shorten is granted.

## Conclusion

8. For the reasons stated above, the Debtors respectfully request that the Court overrule the Objection, grant the Motion to Shorten, deny Inmarsat's request to exclude extrinsic evidence in the event the Motion to Shorten is granted, and grant such other and further relief as is just and proper. Although the Debtors believe that proceeding with the respective Motions to Enforce on August 27, 2025 does not prejudice Inmarsat and is justified by the exigencies of these cases, to the extent the Court determines that a standard timetable is preferable, the Debtors would

---

[3] For example, Inmarsat suggests it would need deposition testimony and documentary evidence from third party Avanti about discussions between Ligado and Inmarsat. *See* Objection ¶ 11. Such overbroad assertions only highlight the intent to use discovery as a delay tactic.

agree to proceed with the respective Motions to Enforce on September 3, 2025, *if* a Confirmation Hearing and hearing on the DIP Amendment Motion can be scheduled to occur promptly thereafter to ensure sufficient time to proceed as contemplated in the Mediated Agreement.

*[Remainder of page intentionally left blank.]*

| | |
|---|---|
| Dated August 15, 2025<br>Wilmington, Delaware | */s/ Zachary J. Javorsky*<br>Mark D. Collins, Esq. (Bar No. 2981)<br>Michael J. Merchant, Esq. (Bar No. 3854)<br>Amanda R. Steele, Esq. (Bar No. 5530)<br>Zachary J. Javorsky, Esq. (Bar No. 7069)<br>**RICHARDS, LAYTON & FINGER, P.A.**<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>Telephone: (302) 651-7700<br>Facsimile:  (302) 651-7701<br>Email:         collins@rlf.com<br>                    merchant@rlf.com<br>                    steele@rlf.com<br>                    javorsky@rlf.com<br><br>-and-<br><br>Dennis F. Dunne, Esq. (admitted *pro hac vice*)<br>Matthew L. Brod, Esq. (admitted *pro hac vice*)<br>Lauren C. Doyle, Esq. (admitted *pro hac vice*)<br>**MILBANK LLP**<br>55 Hudson Yards<br>New York, New York 10001<br>Telephone: (212) 530-5000<br>Facsimile:  (212) 530-5219<br>Email:         ddunne@milbank.com<br>                    mbrod@milbank.com<br>                    ldoyle@milbank.com<br><br>Andrew M. Leblanc, Esq. (admitted *pro hac vice*)<br>**MILBANK LLP**<br>1101 New York Avenue, NW<br>Washington DC 20005<br>Telephone: (202) 835-7500<br>Facsimile:  (202) 263-7586<br>Email:         aleblanc@milbank.com<br><br>*Co-Counsel for Debtors in Possession* |