IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| LIGADO NETWORKS LLC *et al.*,[1] | ) Case No. 25-10006 (TMH) |
| Debtors. | ) (Jointly Administered) |
| | ) **Re: Docket Nos. 824, 825** |

### DEBTORS' OBJECTION TO INMARSAT'S MOTION FOR AN ORDER ENFORCING AND IMPLEMENTING THE MEDIATED AGREEMENT

The above-captioned debtors and debtors in possession (the "Debtors" or "Ligado") submit this objection (the "Objection") to the *Motion of Inmarsat Global Limited for Entry of an Order Enforcing and Implementing the Mediated Agreement* [Docket Nos. 824 (sealed), 825] (the "Inmarsat Motion"),[2] filed by Inmarsat Global Limited ("Inmarsat"), and respectfully state as follows:

### PRELIMINARY STATEMENT

1. Pursuant to the Mediated Agreement, which took months of vigorous negotiations to achieve, Ligado and AST carefully agreed with Inmarsat on the terms by which Inmarsat would offer affirmative support for Ligado and AST's initial regulatory applications "*for a proposed non-geostationary satellite orbit satellite system to be operated in the L-Band in North America (the*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in *Debtors' Motion for an Order (I) Enforcing the AST Order and Mediated Agreement and (II) Granting Related Relief* (the "Debtors' Motion to Enforce") [Docket Nos. 826 (sealed), 827].

*'Proposed NGSO System')*" (emphasis added) and a mechanism whereby Inmarsat could seek recourse against Ligado and AST if "the operations of [such] Proposed NGSO System," defined as a system proposed to operate in the L-Band in North America, breached any technical and/or geographic limit of a contemplated Amended Inmarsat Cooperation Agreement. Mediated Agreement §§ 2, 3. Ligado is ready to enter into an Amended Inmarsat Cooperation Agreement, and AST is ready to enter into an Inmarsat-AST Cooperation Agreement, reflecting the parties' agreements.

2. Inmarsat, however, insists that to move forward, AST and Ligado must agree that neither AST nor Ligado can ever seek separate rights to operate in the L-Band *outside of North America*. Neither the Inmarsat Cooperation Agreement nor the Mediated Agreement requires that, and neither AST nor Ligado have agreed to that at any point and will not agree to it now.

3. The Mediated Agreement unquestionably does not place such a drastic restriction on Ligado or AST. Indeed, the sections of the Mediated Agreement that the parties agreed to incorporate into an Amended Inmarsat Cooperation Agreement address only Inmarsat's support for the initial regulatory applications for the Proposed NGSO System to be operated in the L-Band in North America, Inmarsat's recourse against Ligado and AST if the Proposed NGSO System breaches the technical or geographic limitations of the Inmarsat Cooperation Agreement,[3] and payments owed thereunder to Inmarsat. *See* Mediated Agreement §§ 2-4.

4. Nor does the Inmarsat Cooperation Agreement have such a broad preclusive effect. Rather, it governs Ligado and Inmarsat's coordination of shared L-Band Spectrum "to provide for greater certainty with respect to satellite coordination of the L-[B]and for *North American operations*[.]" Inmarsat Cooperation Agreement at 1. Ligado and Inmarsat both hold licenses to

---

[3] The dispute procedures also apply to Inmarsat's breaches of such limitations. *See* Mediated Agreement § 3.

operate mobile satellite service ("MSS") systems in the L-Band Spectrum in North America and it is as to these "***overlapping L-band spectrum rights in North America***" (Inmarsat Motion ¶ 19) (emphasis added) that Ligado and Inmarsat agreed to coordinate their respective usage, including certain exclusive rights in the Inmarsat Cooperation Agreement.  Ligado fully intends to continue complying with that agreement.  It is simply that notwithstanding Inmarsat's arguments otherwise, nothing in the agreement to coordinate use of overlapping L-Band Spectrum in North America forever precludes Ligado or AST from obtaining separate rights to operate in any band, or specifically in the L-Band, anywhere else.  Instead, the Inmarsat Cooperation Agreement expressly contemplates that Ligado could obtain separate L-Band Spectrum rights, including in Inmarsat's "Exclusive Use" regions, through coordination agreements with other L-Band operators, and such separate spectrum rights would not be subject to the Inmarsat Cooperation Agreement or available to Inmarsat.

5. Inmarsat's sudden insistence on a worldwide non-compete is not in keeping with the heavily negotiated terms of the Inmarsat Cooperation Agreement and the Mediated Agreement.  And neither Ligado nor AST should be forced to accept such a revisionist interpretation of either the Inmarsat Cooperation Agreement or the Mediated Agreement.  Instead, this Court should deny the Inmarsat Motion.

## ARGUMENT

6. Ligado and Inmarsat agreed to amend the Inmarsat Cooperation Agreement for the purpose of incorporating sections 2 through 4 of the Mediated Agreement.  *See* Mediated Agreement § 2 n.6.  Inmarsat cannot be permitted to fundamentally alter the terms of the Mediated

Agreement (or the Inmarsat Cooperation Agreement) by injecting words or concepts into the Amended Inmarsat Cooperation Agreement that the Mediated Agreement does not contain.

7. Inmarsat asserts that AST (and Ligado) must agree to grant Inmarsat exclusive use of the L-Band outside of North America and, as a result, never seek separate rights to operate in the L-Band outside of North America. *See, e.g.,* Inmarsat Motion ¶¶ 8-10, 47. In the Inmarsat Motion, Inmarsat attempts to ignore the unambiguous terms of the Mediated Agreement and manufacture a better deal for itself by imposing on Ligado and AST a far-reaching non-compete that the parties never agreed to and that is, consequently, absent from both the Mediated Agreement and the Inmarsat Cooperation Agreement.

8. Inmarsat's position is disingenuous, and the Court should deny the Inmarsat Motion. *First*, the Mediated Agreement is crystal clear: AST is not precluded from obtaining separate rights to operate in the L-Band outside of North America. *Second*, the Inmarsat Cooperation Agreement exclusively governs the spectrum to which Inmarsat and Ligado have overlapping rights in North America, and Inmarsat cannot now stretch the terms of that agreement to impose a broad non-compete obligation on Ligado and AST throughout the rest of the world.

**I.    Neither the AST Order nor the Mediated Agreement Precludes Ligado or AST from Obtaining Separate Rights to Operate in the L-Band Spectrum Outside North America**

9. Under Delaware law,[4] Inmarsat must be held to the plain meaning of the clear and unambiguous language it has agreed to in the Mediated Agreement. *See Manti Holdings, LLC v.*

---

[4] Inmarsat argues that New York law governs this dispute because the Inmarsat Cooperation Agreement is governed by New York law and the Mediated Agreement is a "subsequent modification" of the Cooperation Agreement. Inmarsat Motion ¶ 49 n.8. But the Mediated Agreement is not a modification or amendment of the Cooperation Agreement; it is an entirely new agreement between different parties (Inmarsat, AST, and Ligado) that by its terms "sets forth the principal terms of a consensual restructuring[.]" Mediated Agreement at 1. That the Mediated Agreement provides that the Cooperation Agreement *will in the future* be amended does not make the Mediated Agreement such an amendment itself. Indeed, the Mediated Agreement provides that the AST Transaction will be implemented pursuant to, among other things, provisions of the Framework Agreement, which

*Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021) (under Delaware law, courts interpreting a contract will "read the agreement as a whole and enforce the plain meaning of clear and unambiguous language."). Inmarsat cannot, at the last minute, inject words or concepts into the Amended Inmarsat Cooperation Agreement that were not agreed to in the Mediated Agreement.

10. But Inmarsat now seeks to add language to the Amended Inmarsat Cooperation Agreement to do just that. The Court should deny this request, enforce the plain meaning of the Mediated Agreement, and order Inmarsat to perform its obligations under the AST Order and Mediated Agreement, including by entering into an Amended Inmarsat Cooperation Agreement that incorporates the unambiguous terms of Sections 2-4 of the Mediated Agreement.

A. **The Mediated Agreement Addresses the Proposed NGSO System**

11. The Mediated Agreement addresses various terms and conditions for the Proposed NGSO System contemplated by the AST Transaction. "Proposed NGSO System" is defined within the Mediated Agreement as the "proposed non-geostationary satellite orbit satellite system *to be operated in the L-Band in North America*." Mediated Agreement § 2 (emphasis added). Any other satellite systems falling outside the scope of this definition are not governed by the Mediated Agreement and in turn will not be governed by the Amended Inmarsat Cooperation

---

includes a Delaware choice-of-law clause. *See* Framework Agreement § 8.10. In any event, the Debtors and Inmarsat agree that Delaware and New York law do not conflict on the relevant points. *See* Inmarsat Motion ¶ 49 n.8 ("Regardless, this motion is based on basic contract law precepts that do not vary across jurisdictions."). The relevant inquiry is the plain meaning of the unambiguous language of the Mediated Agreement. *Compare Penton Bus. Media Holdings, LLC v. Informa PLC*, 252 A.3d 445, 461 (Del. Ch.) (the court "will give priority to the parties' intentions as reflected in the four corners of the agreement construing the agreement as a whole and giving effect to all its provisions") *with Donohue v. Cuomo,* 164 N.Y.S.3d 39, 45 (2022) (noting that New York courts will generally not consider "[e]vidence outside the four corners of the document" and "'[t]he best evidence of what parties to a written agreement intend is what they say in their writing'").

Agreement. Thus, by its terms, the Mediated Agreement addresses only the defined Proposed NGSO System, which will operate *in North America*.[5]

12. Nevertheless, Inmarsat asserts that the Mediated Agreement bars AST from ever using L-Band Spectrum *outside* of North America. *See* Inmarsat Motion ¶ 48. In doing so, Inmarsat points to three provisions of the Mediated Agreement that do no such thing. *First*, Inmarsat asserts that the Mediated Agreement provides that the Amended Inmarsat Cooperation Agreement will provide a dispute resolution process if a party "breache[s] the technical and/or geographic limitations of the Amended Inmarsat Cooperation Agreement in Exhibits B, C, L, M, N, T and U . . . ." *See* Inmarsat Motion ¶¶ 7, 40, 48, 59. But what Inmarsat omits from its quotation is that "such breach [must be] alleged to either (a) be caused by Inmarsat's operations, or (b) be caused by the operations of the Proposed NGSO System, and/or the Ligado satellites." Mediated Agreement § 3. Thus, any "Coordination Breach" (as defined in the Mediated Agreement) that gives rise to Inmarsat's direct enforcement rights must be one that stems from operation of the Proposed NGSO System, which—by its definition—is to be operated *in North America*. The agreement does not contemplate that any actions by any other AST (or Ligado) satellite or system outside of North America or any use of separately obtained L-Band Spectrum could give rise to a Coordination Breach.

13. *Second*, Inmarsat asserts that the Mediated Agreement requires AST to formally commit to regulators "that the operations of all AST and Ligado spacecraft . . . will be consistent with and remain within the technical, geographic and other limitations in the Amended Inmarsat

---

[5] The Mediated Agreement in no way supports the relief Inmarsat seeks in its Motion. Inmarsat asks this Court to order that "AST is bound" and that "AST [and] its affiliates" are excluded from the L-Band Spectrum outside North America "as detailed in Exhibit L to the Amended Inmarsat Cooperation Agreement." Inmarsat Motion ¶ 47. The limitations set forth in Exhibit L apply to the Proposed NGSO System, not to AST and its affiliates, and, in any event, an Amended Inmarsat Cooperation Agreement does not yet exist. It is precisely the failure to reach such agreement that has landed the parties before this Court.

Cooperation Agreement." Inmarsat Motion ¶¶ 39, 48, 53, 56.  What the Mediated Agreement actually provides is that "[t]he applications" for the Proposed NGSO System must state such compliance.  Mediated Agreement § 2.  By agreeing to make such representation solely in "[t]he applications" for the Proposed NGSO System, which only operates in North America using Ligado's coordinated portion of North American L-Band Spectrum, neither Ligado nor AST agreed to forever forgo obtaining separate rights to operate in the L-Band outside of North America or to restrict other operations *outside* of North America.

14.     *Third*, Inmarsat points to the parties' agreement in Rider A to "strict compliance with the geographic, power, out-of-band emissions and other limits set forth in [the Amended Inmarsat Cooperation Agreement or the AST-Inmarsat Agreement, as applicable]" as support for its assertion that AST (and Ligado) agreed to be bound to all the technical and geographic restrictions of the Inmarsat Cooperation Agreement with respect to any separately-acquired rights to L-Band Spectrum.  Inmarsat Motion ¶¶ 6, 41, 46, 48, 59.  The assertion is illogical.  Agreement to use of Ligado's portion of the shared L-Band Spectrum in North America to operate the Proposed NGSO System does not equal agreement to be bound by any terms of the Inmarsat Cooperation Agreement for separately-obtained L-Band Spectrum rights or geographic regions not expressly covered by the Inmarsat Cooperation Agreement and the Mediated Agreement.  Otherwise, Rider A would have said so.

     **B.**     **Inmarsat Is Required To Support the Initial Regulatory Applications for Operation of the Proposed NGSO System in North America**

15.     Section 2 of the Mediated Agreement, titled "**Inmarsat Regulatory Support**," sets forth those provisions relating to Ligado and AST's initial regulatory applications that Inmarsat must support.  *See* Mediated Agreement § 2.  By the plain words of the Mediated Agreement, Ligado and AST agreed only that the ***initial*** regulatory applications will state that the Proposed

7

NGSO System (i) will be limited to North America and (ii) will comply with the Inmarsat Cooperation Agreement. That is because AST will operate the Proposed NGSO System using the rights Ligado currently coordinates with Inmarsat with respect to the use of the L-Band Spectrum *in North America* (the rights that are the subject of the Inmarsat Cooperation Agreement).

16. Ligado, AST and Inmarsat agreed that Inmarsat would support Ligado and AST's initial regulatory applications to the FCC and ISED (US and Canadian regulators, respectively) for the Proposed NGSO System to be operated in North America. Because of the overlapping spectrum rights in North America, Ligado and AST agreed that the application for the Proposed NGSO System (defined to operate in North America) would comply with the Inmarsat Cooperation Agreement. The Mediated Agreement states unambiguously that:

> [s]olely with respect to the initial FCC and ISED applications for the Proposed NGSO System, such applications shall (a) consistent with Inmarsat's exclusive rights vis-à-vis Ligado under the existing Inmarsat Cooperation Agreement, state that use of the L-Band by the Proposed NGSO System will comply with the Amended Inmarsat Cooperation Agreement, (b) with respect to the L-Band, be limited to Ligado's geographic coverage areas in North America specified in Exhibit L and Ligado's Spectrum assignments in the then-operative Spectrum Plan . . .

Mediated Agreement §2 n.7. By its express language, the Mediated Agreement requires that: (a) Inmarsat support Ligado and AST's initial regulatory applications (b) for a proposed non-geostationary satellite system to be operated in the L-Band in North America and such application must state (c) that the Proposed NGSO System's operation in the L-Band in North America will be limited to Ligado's geographic areas in North America and (d) that the Proposed NGSO System's operation in the L-Band in North America will comply with an Amended Inmarsat

8

Cooperation Agreement. Nothing in the foregoing precludes AST or Ligado from seeking separate rights to operate in the L-Band outside of North America.

17. Nor are Ligado or AST contending that the Inmarsat Cooperation Agreement "becomes a dead letter once AST decided to file a second regulatory application." Inmarsat Motion ¶ 58. Instead, under the Mediated Agreement, Inmarsat is only required to provide regulatory support with respect to the *initial* FCC and ISED applications for the Proposed NGSO System (which as explained above, is to be operated in North America). *See* Mediated Agreement § 2 n.7. Inmarsat is not so obligated with respect to any efforts by AST to seek regulatory approval for use of separately-obtained L-Band Spectrum. Consequently, the portion of the Mediated Agreement relevant to this dispute is limited to a very specific scenario: Ligado and Inmarsat are required to amend the Inmarsat Cooperation Agreement to provide that Inmarsat will provide regulatory support for the initial FCC and ISED applications for the Proposed NGSO System. Just because the Proposed NGSO System will operate within specified limits in defined geographical areas does not mean that AST is prohibited from ever operating any other system outside of these limits in other geographic areas. That limitation simply is not provided for in the Mediated Agreement or the Inmarsat Cooperation Agreement.

18. The unreasonableness of Inmarsat's position is further evidenced by its assertion that "[i]f the parties intended the footnote to mean that Inmarsat consents to, or waives all future objections to, AST operating in particular frequency bands and geographies, words to that effect would have been included." Inmarsat Motion ¶ 57. But Inmarsat conveniently misreads the entire provision. Precisely, Inmarsat must support only the initial regulatory applications **for the Proposed NGSO System**. If, in the future, Inmarsat chooses not to consent or to object to AST's efforts to operate in any frequency bands and geographies outside North America, it has the right

9

to do so; there is nothing in the Mediated Agreement to prevent it.  But the obverse is true—if the Mediated Agreement had limited AST and Ligado's L-Band usage forever to North America, the Mediated Agreement certainly would have said so.  An agreement to never compete globally is far too important of a deal point to not be explicitly stated in either the Mediated Agreement or the Inmarsat Cooperation Agreement.

II.     **The Inmarsat Cooperation Agreement Does Not Preclude Ligado or AST from Obtaining Separate Rights to L-Band Spectrum Outside of North America**

19.     Where the Mediated Agreement does not limit Ligado or AST from ever seeking separate rights to operate in the L-Band outside of North America, Inmarsat perforce suggests that the Inmarsat Cooperation Agreement has such preclusive effect.  Indeed, Inmarsat spills much ink in arguing that AST wants to "be carved out of Inmarsat's Exclusive Use of the L-band Spectrum outside of North America."  Inmarsat Motion ¶ 42.  But, no such right exists in the Inmarsat Cooperation Agreement.

20.     The Inmarsat Cooperation Agreement, instead, addresses *only* the L-Band Spectrum *in North America* that both Inmarsat and Ligado are licensed to use.  It is with respect to this "shared" spectrum that Inmarsat and Ligado must cooperate.  The recitals of the Inmarsat Cooperation Agreement plainly state that the parties desire to make efficient use of the L-Band Spectrum "to provide competitive and innovative, cost-effective communication solutions *to end users in North America* . . . ." and that the parties "wish to provide for greater certainty with respect to satellite coordination of the L-[B]and for *North American operations* . . . ."  Inmarsat Cooperation Agreement at 1.

21.     Similarly, as to the "Coordination of L-Band Spectrum," the Inmarsat Cooperation Agreement states, "[t]he Parties' coordination of the operation of their respective L-[B]and systems includes: (i) the use of spectrum by [Ligado] and Inmarsat *with respect to their North*

10

*American operations* as set forth" in the various spectrum plans.  Inmarsat Cooperation Agreement § 3.1(a).

22.     Inmarsat argues that "Exhibit L specifies which spectrum the parties will have the exclusive right to use and where[.]" Inmarsat Motion ¶ 21.  But Inmarsat, again, omits the critical piece.  Section 3.3(a)(i) of the Inmarsat Cooperation Agreement provides:

> In order to minimize interference among the Parties' respective operations and increase and make more efficient use of the L-band spectrum and orbital resource **in ITU Region 2, the Parties have jointly developed the "L-band Coordination Plan" as described in this Section 3.3 and attached as Exhibit L**, which describes how the spectrum usage described in the Spectrum Plans will be used by all the satellite systems indicated in Exhibit I ("Newly Coordinated Satellites") and Exhibit J ("Previously Coordinated Satellites").  The satellite systems (including both the space stations and their associated ground segments) identified in Exhibit I and Exhibit J are collectively referred to as the "Coordinated Networks."

Inmarsat Cooperation Agreement § 3.3(a)(i) (emphasis added).  The Inmarsat Cooperation Agreement plainly limits the L-Band Coordination Plan laid out in Exhibit L to ITU Region 2, which primarily includes North America.  Further, Exhibit L "describes how the spectrum usage described in the Spectrum Plans will be used by all the satellite systems [in the Coordinated Networks]." *Id.*  "Spectrum Plans" is defined in the Inmarsat Cooperation Agreement as "the use of spectrum by [Ligado] and Inmarsat with respect to their *North American operations* as set forth in the. . . 'Spectrum Plans[.]'" *Id.* § 3.1(a) (emphasis added).

23.     Exhibit L referenced in Section 3.3 of the Inmarsat Cooperation Agreement specifies how Ligado and Inmarsat must allocate L-Band Spectrum within geographic regions *of North America*.[6]  Ligado and Inmarsat agreed in the Inmarsat Cooperation Agreement that certain

---

[6] Furthermore, Inmarsat's argument that the image in Exhibit L defining Inmarsat Region A (*Id.*, Ex. L at L-15) grants Inmarsat "Exclusive Use" of L-Band Spectrum in "the entire world outside the orange boundary around North America" is mistaken.  *See* Inmarsat Motion ¶¶ 21-24.  As explained herein, Exhibit L is limited to North American operations and to the extent any graphics appear to broaden the scope of Exhibit L to the rest of the

11

frequencies would be subject to sharing and to define geographic limitations within North America for each party's usage to avoid interference between the parties.  For example, Exhibit L specifies that ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████ *Id.*, Ex. L § 1.1(c)(iv).  This further clarifies that the Inmarsat Cooperation Agreement, and specifically the "L-band Coordination Plan" laid out in Exhibit L, governs the operations of Ligado and Inmarsat, including exclusive access to certain portions of L-Band spectrum, with respect to North America—the region where the parties **both have** access rights to the L-Band Spectrum and thus need to coordinate those rights.  The Inmarsat Cooperation Agreement does not cover any geographic area (nor any geographic limitation) outside of the areas explicitly subject to coordination.

24.     Specifically, as it relates to the current dispute, the Inmarsat Cooperation Agreement cannot be understood to preclude Ligado (and, by extension, AST) from ever seeking separate rights to operate in any "Inmarsat Region" including where Inmarsat has exclusive use of the shared L-Band Spectrum governed by the Inmarsat Cooperation Agreement.  Exhibit L of the Inmarsat Cooperation Agreement expressly provides:



*Id.*, Ex. L, § 1.1(c)(v).  Accordingly, even the Inmarsat Cooperation Agreement itself contemplates that Ligado may have coordination agreements with other L-Band system operators that give Ligado L-Band Spectrum rights within Inmarsat Regions A, A1, or B, and Inmarsat does not have

---

planet, the Inmarsat Cooperation Agreement makes clear that is not the case.  *See* Inmarsat Cooperation Agreement § 3.1(a) ████████████████████████████████████ ████████████████████████

an automatic right to use such separately-obtained spectrum. Thus, not only does the Inmarsat Cooperation Agreement not preclude Ligado (or AST) from separately obtaining L-Band Spectrum globally or even within the Inmarsat Regions, but it also expressly contemplates it.

25. There is no credible reading of the Inmarsat Cooperation Agreement that makes it a worldwide non-compete agreement with respect to L-Band Spectrum or any other spectrum globally. The Inmarsat Cooperation Agreement is instead only an agreement between Ligado and Inmarsat that governs how the parties will cooperate and provide each other with the exclusive use of specific **shared** L-Band Spectrum to avoid interference in areas of overlapping coverage, *i.e., North America*.[7]

26. If Ligado or AST were to seek MSS L-Band Spectrum licenses outside of the North American region and were to seek coordination outside of North America, Ligado or AST would be free to initiate such an effort and Inmarsat would be free to oppose that effort. These respective rights of the parties remain unchanged and are not limited by either the current Inmarsat Cooperation Agreement or the Mediated Agreement.

27. Moreover, it is disingenuous for Inmarsat to now proclaim that it has been critically focused on its exclusive use of global L-Band Spectrum to the exclusion of Ligado and AST when no such provision appears in the Inmarsat Cooperation Agreement and this purported "focus" has not been mentioned once in any filing by Inmarsat prior to the Inmarsat Motion. For example, Inmarsat asserts that, in objecting to the AST Motion, its "position was quite clear" that "AST would have to comply with (among other things) Inmarsat's exclusive use of ***non-North American*** L-band Spectrum under the Cooperation Agreement." Inmarsat Motion ¶ 32 (emphasis added). It

---

[7] Inmarsat acknowledges as much when noting that "[t]he [Inmarsat] Cooperation Agreement coordinated the parties' **combined** L-[B]and [S]pectrum rights, but other satellite operators have rights to use other portions of the L-[B]and [S]pectrum . . . ." Inmarsat Motion ¶ 20 n.6.

is curious then that *nowhere* in Inmarsat's objection does Inmarsat actually make this assertion. Indeed, Inmarsat never even used the terms "geographic" or "geographical" in any prior filings. Instead, as highlighted in the Inmarsat Motion, Inmarsat's true motivation was seeking assurance that Ligado's monetary obligations under the Inmarsat Cooperation Agreement would be met. *See id.* ("If Inmarsat was going to be thrust into a partnership with AST, the objection [to the AST Motion] explained, 'Inmarsat's consent' was necessary, and Inmarsat would not consent unless it was 'assured that Ligado and/or AST will promptly *satisfy all obligations—monetary and otherwise—under the Cooperation Agreement*.'") (emphasis added).

28. In any event, notwithstanding Inmarsat's repeated assertions to the contrary, Ligado is not assigning the Inmarsat Cooperation Agreement to AST, and AST is only bound to the terms to which it has agreed to be bound in the Mediated Agreement. The rights and benefits granted to AST in the AST Definitive Documents are derived from the FCC licenses granted to Ligado; they are not rights and benefits arising under the Inmarsat Cooperation Agreement. The AST Definitive Documents permit Ligado to share with AST certain rights and economic benefits that Ligado has under its FCC spectrum licenses, subject to Ligado's obligations with respect to *shared* spectrum under the Inmarsat Cooperation Agreement. The essence of the AST Transaction is effectively a customer purchasing access rights. AST is not getting unlimited access to Ligado's spectrum, nor is it getting any legal right of ownership to the spectrum or rights under the Inmarsat Cooperation Agreement. Ligado is not assigning its rights or its obligations to AST. But even if AST were, as Inmarsat argues, stepping into Ligado's shoes (it is not), the Inmarsat Cooperation Agreement in no way forecloses AST (or Ligado) from seeking separate rights to operate in the L-Band outside of North America.

## **CONCLUSION**

29. For the reasons set forth above and in the Debtors' Motion to Enforce, the Debtors ask that the Court sustain the Objection and deny the relief sought in the Inmarsat Motion.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| Dated: August 27, 2025<br>Wilmington, Delaware | /s/ *Michael J. Merchant*<br>Mark D. Collins, Esq. (Bar No. 2981)<br>Michael J. Merchant, Esq. (Bar No. 3854)<br>Amanda R. Steele, Esq. (Bar No. 5530)<br>Emily R. Mathews, Esq. (Bar No. 6866)<br>**RICHARDS, LAYTON & FINGER, P.A.**<br><br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>Telephone: (302) 651-7700<br>Facsimile: (302) 651-7701<br>Email: collins@rlf.com<br>merchant@rlf.com<br>steele@rlf.com<br>mathews@rlf.com<br><br>-and-<br><br>Dennis F. Dunne, Esq. (admitted *pro hac vice*)<br>Matthew L. Brod, Esq. (admitted *pro hac vice*)<br>Lauren C. Doyle, Esq. (admitted *pro hac vice*)<br>**MILBANK LLP**<br>55 Hudson Yards<br>New York, New York 10001<br>Telephone: (212) 530-5000<br>Facsimile: (212) 530-5219<br>Email: ddunne@milbank.com<br>mbrod@milbank.com<br>ldoyle@milbank.com<br><br>Andrew M. Leblanc, Esq. (admitted *pro hac vice*)<br>Melanie Westover Yanez, Esq. (admitted *pro hac vice*)<br>**MILBANK LLP**<br>1101 New York Avenue, NW<br>Washington DC 20005<br>Telephone: (202) 835-7500<br>Facsimile: (202) 263-7586<br>Email: aleblanc@milbank.com<br>mwyanez@milbank.com<br><br>*Co-Counsel for Debtors in Possession* |