## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LIGADO NETWORKS LLC *et al.,* | Case No. 25-10006 (TMH) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date: August 29, 2025 at 1:00 PM (EST)** |
| | **Objection Deadline: August 27, 2025 at 10:00 AM (EST)** |

### AST'S (A) OBJECTION TO INMARSAT'S MOTION FOR ENTRY OF ORDER ENFORCING AND IMPLEMENTING THE MEDIATED AGREEMENT AND (B) JOINDER IN SUPPORT OF DEBTORS' MOTION FOR ORDER ENFORCING THE AST ORDER AND MEDIATED AGREEMENT

AST & Science LLC ("**AST**"), for its objection to the *Motion of Inmarsat Global Limited for Entry of an Order Enforcing and Implementing the Mediated Agreement,* dated August 14, 2025 (Dkt. No. 825) (the "**Inmarsat Motion**"), and for its joinder to the *Debtors' Motion for an Order Enforcing the AST Order and Mediated Agreement and Granting Related Relief*, dated August 14, 2025 (Dkt. No. 827) (the "**Ligado Motion**"), respectfully states as follows:

### PRELIMINARY STATEMENT

1.     To facilitate approval of the AST Transaction, confirmation of the Debtors' plan of reorganization and the Debtors' emergence from Chapter 11, AST stepped up to resolve Inmarsat's objection to the AST Transaction by committing to fund $535 million of Inmarsat's $550 million

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

alleged cure claim ("**Cure Claim**") under its Cooperation Agreement with Ligado (capitalized terms as defined below). What's more, AST agreed to fund $420 million to be paid to Inmarsat in a matter of weeks (on October 31, 2025) and another $100 million to be paid to Inmarsat in March 2026—well before the anticipated regulatory approvals for the AST Transaction would be forthcoming and, thus, well in advance of consummation of the AST Transaction. Inmarsat's objection did not seek to restrict AST's use of non-Ligado spectrum outside of North America. Accordingly, it is absurd for Inmarsat to suggest at this 11th hour that AST somehow agreed in the Mediated Agreement (as defined below) to restrict its global business operations in such a manner. AST stepped up to give Inmarsat exactly what Inmarsat was seeking in its objection—prompt payment of its Cure Claim, and AST respectfully submits that this Court should put a stop to Inmarsat's anti-competitive efforts to obtain more than it sought or is entitled to.

2.      Before Inmarsat Global Limited ("**Inmarsat**") filed its objection, annexed hereto as Exhibit A (the "**Inmarsat Objection**") (Dkt. No. 462), on April 25, 2025 to the motion (the "**AST Transaction Motion**") by the above-captioned debtors (the "**Debtors**" or "**Ligado**") to enter into a transaction (the "**AST Transaction**") to provide AST with certain usage rights relating to Ligado's L-Band Spectrum in North America, it obtained a complete set of the definitive documents governing the AST Transaction (the "**Definitive Documents**").  These Definitive Documents include the Strategic Collaboration and Spectrum Usage Agreement, between Ligado Networks LLC and Spectrum USA I, LLC, an affiliate of AST, dated as of March 22, 2025 (Dkt. No. 352-3) (the "**Collaboration Agreement**").

3.      Exhibit 6 to the Collaboration Agreement (hereinafter, "**Exhibit 6**") ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████

4.      Based on the foregoing, Inmarsat has known since April 2025—and knew when it filed the Inmarsat Objection to the AST Transaction Motion—that the Definitive Documents governing the AST Transaction contain no limitation on AST's ability to use non-Ligado L-Band Spectrum outside of North America. Despite Inmarsat's late-breaking claim that its Cooperation Agreement with Ligado supposedly gives it exclusivity over the use of all L-Band Spectrum (even L-Band Spectrum not addressed by the Cooperation Agreement) outside of North America, Inmarsat tellingly failed to include in the Inmarsat Objection any objection or statement concerning any geographic or technical limits on AST's use of non-Ligado L-Band Spectrum.

5.      Rather, Inmarsat made a tactical decision to focus the Inmarsat Objection on its desire to receive prompt payment of its Cure Claim, as the *quid pro quo* for consenting to the AST Transaction. After the Inmarsat Objection was filed, the "Mediation Parties" (including the Debtors, Inmarsat and AST) engaged in <u>months</u> of negotiations to reach a comprehensive settlement of the Inmarsat Objection, culminating in the carefully crafted terms of the binding mediated agreement (the "**Mediated Agreement**") approved by the Mediation Parties. AST stepped up in the Mediated Agreement to facilitate prompt payment of Inmarsat's enormous Cure Claim.

6.      On June 23, 2025, following a hearing before this Court with respect to the AST

Transaction Motion, this Court entered an order (Dkt. No. 692) (the "**AST Order**") authorizing the Debtors to enter into the Definitive Documents, including the Collaboration Agreement and Exhibit 6 thereto. The Mediated Agreement was appended as Exhibit 1 to the AST Order. The AST Order provides that the Definitive Documents, including the Collaboration Agreement and Exhibit 6 thereto, "are approved in all respects."  AST Order ¶ 2.  There is nothing in the AST Order or the Mediated Agreement that overrides or derogates from Exhibit 6 concerning AST's spectrum usage rights. A copy of the AST Order, including the Mediated Agreement, is annexed hereto as Exhibit B.

7.      The Mediated Agreement provides that AST and Inmarsat will execute a separate binding agreement (the "**Inmarsat-AST Agreement**") to give the parties the right to enforce directly against each other certain commitments made to each other in Sections 2-3 and Rider A of the Mediated Agreement. It also provides that Ligado and Inmarsat will execute a further amended Cooperation Agreement (the "**Amended Inmarsat Cooperation Agreement**"), incorporating Rider A and Sections 2-4 of the Mediated Agreement.

8.      AST negotiated the Mediated Agreement in good faith and stands by the provisions of the Mediated Agreement as written.  What AST cannot do is accede to Inmarsat's unreasonable and unfounded attempts to add brand new, punitive terms—nowhere to be found in the Definitive Documents, the Collaboration Agreement, Exhibit 6 or the Mediated Agreement—that preclude AST from operating in non-Ligado L-Band Spectrum outside of North America.

9.      Having failed to address the issue of AST's right to use non-Ligado L-Band Spectrum and other spectrum outside North America in both the Inmarsat Objection and the Mediated Agreement, Inmarsat now seeks through the Inmarsat Motion to procure this anti-competitive land grab by Court order.  The Court should reject this request for at least the following

three reasons. *First*, Inmarsat is attempting impermissibly to take three bites at the same apple when it already had the opportunity to advance its arguments about geographic limitations in the Inmarsat Objection and a second opportunity to secure such terms in the Mediated Agreement. But it did neither. Inmarsat is not entitled to a third bite at the apple through the Inmarsat Motion because it has waived its attempt to bind AST to geographic limitations as a matter of Third Circuit authority discussed more fully below. Indeed, Inmarsat was silent in the Inmarsat Objection about any supposed geographical constraints on AST because Inmarsat made the strategic and tactical decision to focus on obtaining payment of its Cure Claim as promptly as possible. Having made the tactical choice to pursue its Cure Claim rather than assert arguments about geographic restrictions, despite having had the complete set of Definitive Documents (including Exhibit 6), Inmarsat is bound by the consequences of its strategic choice, has waived its opportunity to raise the issue at this late juncture and is not now entitled to a third bite at the apple.

10.     *Second*, this Court can, and should, require Inmarsat to abide by the plain terms of the Mediated Agreement, which all parties agree is binding. To resolve the Inmarsat Motion, the Court need only direct Inmarsat to incorporate the exact language in Rider A and Sections 2-3 of the Mediated Agreement into the Inmarsat-AST Agreement, *see* Mediated Agreement n.5 & § 3(c), and Rider A and Sections 2-4 of the Mediated Agreement into the Amended Inmarsat Cooperation Agreement, *see id.* at n.4 & § 3(c), without adding any new substantive terms.

11.     *Finally*, Inmarsat's attempt to preclude AST from operating non-Ligado spectrum outside of North America is utterly unhinged from the plain language of the Mediated Agreement. The Mediated Agreement addresses AST's use of Ligado's L-Band Spectrum through AST's "Proposed NGSO System"—a term which is carefully, intentionally and dispositively defined in the Mediated Agreement as a "proposed non-geostationary satellite orbit satellite system *to be*

*operated in the L-Band in North America*." Mediated Agreement § 2 (emphasis added).  Nowhere does the Mediated Agreement restrict AST from employing its NGSO system outside North America or with respect to non-Ligado L-Band Spectrum or any other spectrum.  Thus, to the extent AST is operating any satellite system outside of North America, it is *by definition* not subject to any geographical restrictions that are imported into the Mediated Agreement.

12.     AST respectfully submits that Inmarsat's improper attempts to extract the anti-competitive benefits it seeks, directly at AST's expense, should be rejected.  Inmarsat's late-breaking position was strategically omitted from the Inmarsat Objection and finds no support in the Mediated Agreement. AST, Ligado and Ligado's creditors should not be held up on the eve of plan confirmation by Inmarsat's unfounded attempt to renegotiate the terms of a deal to which it already agreed.  Three bites at the apple is enough.

## <u>BACKGROUND</u>

**I.      Inmarsat Objects to the AST Transaction, But Makes a Strategic Decision To Pursue Recovery of Substantial Cure Claims Rather Than Advance Any Points Concerning Geographic or Technical Limitations.**

13.     On March 22, 2025, the Debtors filed the AST Transaction Motion, seeking authority to enter into the AST Transaction and the Definitive Documents.  In paragraph 11 of the AST Transaction Motion, the Debtors characterized the AST Transaction as an arrangement whereby the Debtors will provide AST with "usage rights with respect to certain of the Debtors' spectrum rights and related assets and collaborate with AST to commercialize the Debtors' spectrum rights." AST Transaction Motion ¶ 11.  In exchange, AST will make various payments to Ligado, including but not limited to a certain percentage of revenues derived from AST's use of the Debtors' spectrum rights.  *See id.*

14.     Among the Definitive Documents governing the terms of the AST Transaction is the Collaboration Agreement. ███████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████

15.    AST understands that Ligado produced a slightly redacted version of Exhibit 6 to Inmarsat on April 10, 2025.  Nevertheless, to ensure itself that it was appraised of *all* the terms and conditions in the Definitive Documents, Inmarsat fought bitterly with the Debtors to obtain access to the full suite of Definitive Documents, including the Collaboration Agreement and Exhibit 6. On April 16, 2025, Inmarsat filed a letter motion with this Court (annexed hereto as Exhibit E), seeking a complete, unredacted set of the Definitive Documents (Dkt. No. 431).  In that motion, Inmarsat claimed that full and complete access to the unredacted Definitive Documents was "essential to enable Inmarsat to evaluate and respond to Ligado's proposed entry into and performance under the Definitive Documents" and would allow Inmarsat to "be in a position to raise the relevant issues to the Court."  *See* Dkt. No. 431 at 1, 5.

16.    The Court granted Inmarsat's letter motion. (Dkt. No. 456). Consequently, Inmarsat (or its counsel) had complete copies of all of the Definitive Documents, including the Collaboration Agreement and Exhibit 6, by no later than April 23, 2025.  Inmarsat thus knew at that time that the AST Transaction did not restrict AST from operating in non-Ligado spectrum outside of North America.

17.    Inmarsat filed the Inmarsat Objection to the AST Transaction on April 25, 2025.

The overwhelming and predominant focus of the Inmarsat Objection is on Inmarsat's alleged right to be paid its $550 million Cure Claim. The Inmarsat Objection failed to contend that the Definitive Documents or the Collaboration Agreement or Exhibit 6 improperly authorize AST to use non-Ligado L-Band Spectrum outside of North America. Indeed, the Inmarsat Objection contains no reference whatsoever (let alone objection) to any geographic or technical limitations that should be imposed on AST's use of non-Ligado spectrum. The word "geography" or "geographic" was never used in the Inmarsat Objection. Instead, the Inmarsat Objection focused squarely on assuring that the Debtors would promptly make the very substantial ($550 million) cure payments that Inmarsat alleged it was owed. *See* Inmarsat Objection ¶¶ 5-6. Inmarsat thus made a tactical determination to focus the Inmarsat Objection on ensuring payment of its purported Cure Claim on the fastest timeline possible, not on any qualms about technical or geographic limitations.

## II.    The Court Approves the Collaboration Agreement, Including Exhibit 6, In its Entirety, Together with the Mediated Agreement.

18.    Following the filing of the Inmarsat Objection to the AST Transaction Motion, the Mediation Parties engaged in mediation. After <u>months</u> of negotiations, the Mediation Parties reached a settlement of the Inmarsat Objection that allowed for approval by this Court of the Definitive Documents (including the Collaboration Agreement and Exhibit 6) together with the Mediated Agreement that had been agreed to by all of the Mediation Parties.

19.    On June 23, 2025, the Court held a hearing with respect to the AST Transaction Motion, and then entered the AST Order. Of particular relevance, the AST Order provides that the "Debtors are authorized to enter into, and perform all obligations contemplated by, the AST Definitive Documents," including the Collaboration Agreement and Exhibit 6, and "the AST Definitive Documents are approved in all respects." AST Order ¶ 2. The AST Order also states

that the "Mediated Agreement is approved in its entirety and the parties agree to perform in accordance with and be bound by the terms set forth therein." *Id.* at ¶ 6.

20.     Based on the terms of the AST Order, authorizing entry into the Definitive Documents as well as the Mediated Agreement, it is obvious that Exhibit 6 (as well as the other Definitive Documents) must be read in harmony with the Mediated Agreement. ██████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

To the extent that the Mediated Agreement sought to impose restrictions on AST's ability to acquire spectrum for use outside of North America, in derogation of Exhibit 6, the Mediated Agreement would have had to do so clearly and unmistakably, with express reference to plain geographic and operative limitations on AST.  But, as shown below, the Mediated Agreement lacks *any* restriction on AST's ability to operate non-Ligado spectrum outside of North America.

## III.    The Inmarsat Motion Improperly Seeks To Secure for Inmarsat a Far Better Deal Than Reflected in the Definitive Documents and the Mediated Agreement.

21.     Through the Mediated Agreement, AST agreed to make $535 million of cure payments on Ligado's behalf far faster than originally proposed, including $420 million to be paid on October 31, 2025, $100 million to be paid on March 31, 2026 and $15 million to be paid on the Plan Effective Date.  *See* Mediated Agreement § 4.  With respect to the first $520 million (an enormous sum), AST has agreed to pay these amounts before it has any assurance that it will receive the necessary regulatory approvals for the AST Transaction. This is a remarkable demonstration by AST of support for the Debtors' reorganization, and was meant to put the Inmarsat Objection to rest once and for all.

22.     AST also agreed in the Mediated Agreement to enter into "a separate binding agreement" with Inmarsat, *i.e.*, the Inmarsat-AST Agreement, "to give the parties the right to

enforce directly against each other the commitments made to each other in Sections 2-3" and Rider A of the Mediated Agreement. *Id.* at n.5 & § 3(c). The Mediated Agreement provides further that Sections 2-4 and Rider A thereof are to be incorporated in a further amended cooperation agreement between Ligado and Inmarsat, *i.e.*, the Amended Inmarsat Cooperation Agreement. *Id.* at n.6. AST stands ready, willing and able to enter into the Inmarsat–AST Agreement containing Sections 2-3 and Rider A of the Mediated Agreement, but it is unwilling to *renegotiate* yet again the scope of the arrangements already achieved through the Definitive Documents and the Mediated Agreement. Inmarsat is not entitled to a third bite at the apple in these negotiations.

23.     Contrary to the contentions in the Inmarsat Motion, *see* ¶¶ 38-41, the plain language in Sections 2 and 3 of the Mediated Agreement does not preclude AST from operating non-Ligado spectrum in the L-band outside of North America, as explained below. Inmarsat has refused to honor its obligation to execute an Inmarsat-AST Agreement that is faithful to Sections 2 and 3 of the Mediated Agreement unless AST agrees to add *additional* language—with no basis in the Mediated Agreement and contrary to the Collaboration Agreement—that would restrict AST from acquiring spectrum outside of the AST Transaction and competing with Inmarsat in the L-Band outside of North America. Inmarsat is simply not entitled to the anti-competitive, fundamental limitation on AST's business it now seeks.

## <u>ARGUMENT</u>

## I.     **INMARSAT IS NOT ENTITLED TO A THIRD BITE AT THE APPLE TO OBTAIN AN ANTI-COMPETITIVE ADVANTAGE THAT IS CONTRARY TO THE AST ORDER, THE DEFINITIVE DOCUMENTS AND THE MEDIATED AGREEMENT.**

24.     The Inmarsat Motion should be denied because Inmarsat is attempting impermissibly to take three bites at the same apple, all so it can seek to impose terms that (i) are at odds with the Definitive Documents authorized and approved by this Court, and (ii) Inmarsat

failed to raise, first, when objecting to the AST Transaction and, then, when agreeing to be bound by the Mediated Agreement.

25.    **Bite 1**. Inmarsat failed to claim in the Inmarsat Objection that the Definitive Documents would impermissibly allow AST to use non-Ligado L-Band Spectrum outside of North America. As set forth in detail above at paragraphs 14-16, prior to filing the Inmarsat Objection, Inmarsat *fought bitterly for and obtained* access to all of the Definitive Documents, including

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████ Inmarsat was thus fully aware that the AST Transaction did not restrict AST's ability to acquire spectrum rights from third parties and operate outside North America.[2]

26.    The Inmarsat Objection stands in stark contradiction to Inmarsat's late-breaking clam that it "has made it abundantly clear throughout these proceedings that it will not agree to cede its exclusive right under the Cooperation Agreement to use the non-North American L-Band spectrum." Inmarsat Motion ¶ 3. Indeed, the Inmarsat Objection is devoid of any reference or comment whatsoever to geographic or technical limitations on AST's use of the L-Band Spectrum, let alone any objection to the specific terms of the AST Transaction on these points.  The Inmarsat Objection simply makes no reference whatsoever (let alone objection) to any geographic or technical limitations that should be imposed on AST's use of the L-Band Spectrum.

---

[2]    Furthermore, by April 2025 it was public knowledge (and the Court may take judicial notice) that AST had signed an agreement with Vodafone Group PLC to create a jointly-owned European satellite services business to serve mobile network operators in all European markets. *See* Press Release, Vodafone and AST SpaceMobile Sign Agreement to Create European Direct-To-Device Satellite Service Provider (Mar. 3, 2025), https://feeds.issuerdirect.com/news-release.html?newsid=5955993905752097&symbol=ASTS.

27.     Rather, the thrust of the Inmarsat Objection is that Inmarsat would withhold consent over the AST Transaction until Ligado promised to both assume the Cooperation Agreement and pay Inmarsat's alleged Cure Claim of $550 million "in the near future" rather than on the effective date of the Chapter 11 plan as originally contemplated by the AST Transaction. *See* Inmarsat Objection ¶¶ 3-4. Inmarsat contended that Ligado required Inmarsat's consent to enter into the AST Transaction, because the AST Transaction was a partial assignment to AST of "certain rights" and "economic benefits" (*i.e.*, the L-Band usage rights) under the Cooperation Agreement, rather than an assignment of the entire Cooperation Agreement to AST that could be assumed and assigned pursuant to 11 U.S.C. § 365.  *See* Inmarsat Objection ¶¶ 3, 4.

28.     Inmarsat made a tactical decision to omit from the Inmarsat Objection any arguments concerning geographic or technical limitations on AST's use of the L-Band Spectrum in favor of other arguments that would help ensure payment of Inmarsat's purported $550 million Cure Claim on the fastest timeline possible.

29.     **Bite  2**.    Ultimately, as memorialized in the Mediated Agreement, Inmarsat consented to the terms of the AST Transaction[3] once AST stepped up and agreed to provide Ligado with the funds to pay Inmarsat $535 million in satisfaction of Inmarsat's Cure Claim under the Cooperation Agreement on a highly expedited timetable—including prior to any regulatory approval of the AST Transaction and assurance from the regulators to AST that the AST Transaction can indeed be consummated. *See* Mediated Agreement § 4. AST's first payment of $420 million will be made only weeks from now, on October 31, 2025. Inmarsat was keenly focused on receiving these funds.

30.     And, based on AST's promise to advance the funds on Ligado's behalf, Inmarsat

---

[3]     *See* Mediated Agreement § 2.

withdrew its objection to the AST Transaction, resulting in the AST Order authorizing Ligado and AST to enter into the Definitive Documents, including the Collaboration Agreement and Exhibit 6, and approving such Documents "in all respects."  AST Order ¶ 2. ████████████████ ████████████████████████████████████████████████████████████ ████████████████████  In addition, as explained below, nothing in the Mediated Agreement to which Inmarsat is bound precludes AST from acquiring spectrum from third parties for use outside of North America. In other words, Inmarsat agreed to withdraw its objection to approval of the Definitive Documents, on the basis of a Mediated Agreement that does not preclude AST from using non-Ligado spectrum to operate outside of North America.

31.    **Bite 3**.  Inmarsat now seeks a proverbial third bite at the apple by asking this Court to impose an anti-competitive term on AST that is nowhere in the Inmarsat Objection, is contrary to the Definitive Documents and is not contained in the Mediated Agreement.

32.    But the failure to raise the geographic restriction issue in the Inmarsat Objection, and the decision to settle on a Mediated Agreement that contains NO such restriction on its face, is fatal to the Inmarsat Motion because (A) Inmarsat waived any claim to a geographic restriction as a matter of Third Circuit precedent and (B) nothing in the Mediated Agreement can be read to overcome this Court's AST Order, providing that the Definitive Documents (including Exhibit 6) are approved with no geographic limitation on AST.

**A.    By Not Raising its Claim Concerning Geographic Limitations in the Inmarsat Objection, Inmarsat is Precluded from Doing So Now as a Matter of Third Circuit Law.**

33.    By failing to raise this issue of geographic limitations until **now,** precedent from the United States Court of Appeals for the Third Circuit instructs that Inmarsat waived its right to seek relief on this issue now.  *See In re Imerys Talc Am., Inc.*, 38 F.4th 361, 372 (3d Cir. 2022) ("An argument is waived where a party fails to adequately raise it with a minimum level of

thoroughness.") (internal quotations omitted); *see also In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 262 (3d Cir. 2009) ("A fleeting reference or vague allusion to an issue with not suffice to preserve [an argument] for appeal."). A party that "intentionally chose to raise other objections" at the appropriate time intentionally abandons that argument. *Imerys Talc*, 38 F.4th at 373 n.6. This intentional choice is particularly prejudicial, and a proper subject of wavier, when the abandoning party "had adequate notice and opportunity" to raise the applicable objection and instead "made the strategic decision to focus their objections on other grounds." *Id*. at 373.

34.     Here, Inmarsat plainly made an intentional choice to abandon any argument that the AST Transaction violates any alleged geographical limitations by failing to raise such arguments in the Inmarsat Objection—when it made a tactical decision to focus on seeking prompt payment of its Cure Claim, and by agreeing to withdraw the Inmarsat Objection on the basis of a Mediated Agreement lacking any such restriction. Inmarsat chose to forgo its geography-based argument in the Inmarsat Objection and agreed to the Mediated Agreement lacking the geographic limitations Inmarsat now seeks, despite having complete access to the unredacted suite of Definitive Documents, including Exhibit 6, prior to filing the Inmarsat Objection. Inmarsat "had adequate notice and opportunity to raise" its "objection at the appropriate time" and "instead made the strategic decision to focus" its "objection[] on other grounds," *id.* at 373, including on receiving payment of its alleged Cure Claim in as timely a manner as possible. Any "vague allusion," *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 262, to ensuring AST "will promptly satisfy all obligations" under the Cooperation Agreement, *see* Inmarsat Motion ¶ 32, is simply insufficient to preserve Inmarsat's argument that it has exclusive use of the L-Band outside of North America.

**B.      Nothing in the Mediated Agreement Can Be Read To Overcome the AST Order Approving the Definitive Documents (Including Exhibit 6) With No Geographical Restriction on AST.**

35.     In light of the AST Order, which authorized Ligado and AST to enter into the

Definitive Documents, and also approved the Definitive Documents together with the Mediated Agreement, it is obvious that Exhibit 6 (as well as the other Definitive Documents) must be read in harmony with the Mediated Agreement. *See Edelman Inc. v. Art Intern. (UK) Ltd.*, 841 F. Supp. 2d 810, 823 (S.D.N.Y. 2012) ("Under New York law, all writings which form part of a single transaction and are designed to effectuate the same purpose must be read together."). ███████

████████████████████████████████████████████████

███████████████████████████████████████ To the extent that the Mediated Agreement (which reflects the terms pursuant to which Inmarsat would agree to entry of the Definitive Documents) sought to impose restrictions on AST's ability to acquire spectrum for use outside of North America, in derogation of Exhibit 6, the Mediated Agreement would have had to do so clearly and unmistakably, with express reference to plain geographic and operative limitations on AST. But, as shown below, the Mediated Agreement lacks *any* restriction on AST's ability to operate in the L-Band outside of North America. Nor does it have any plain, express language that could derogate from the Collaboration Agreement.

36.    In short, Inmarsat is simply not entitled to secure for itself a better deal than it struck in the Mediated Agreement, and in doing so fundamentally limit the business of AST.

## II.    THE COURT SHOULD REQUIRE INMARSAT TO ABIDE BY THE MEDIATED AGREEMENT.

37.    Each of Ligado, Inmarsat and AST agree that the Mediated Agreement is a binding agreement. *See* Ligado Motion n.21; Inmarsat Motion ¶ 35. AST is willing to stand by the terms of the Mediated Agreement as drafted and as approved by this Court. AST respectfully submits that the Court can and should resolve the Ligado Motion and the Inmarsat Motion by directing Inmarsat to abide by the exact and precise language it negotiated *verbatim* in Rider A and Sections 2-4 of the Mediated Agreement, without trying to insert new, additional terms that seek to secure

a better deal than Inmarsat negotiated with AST and Ligado in the Mediated Agreement.

38.     As relevant here, the Mediated Agreement provides that Rider A and Sections 2-4 thereof are to be incorporated into the Amended Inmarsat Cooperation Agreement (to which AST will not be a party), *see* Mediated Agreement § 2 n.6, § 3(c), and that Rider A and Sections 2-3 of the Mediated Agreement are to be incorporated into the Inmarsat-AST Agreement (to which AST will be a party).  *See* Mediated Agreement § 1 n.5, § 3(c).  AST is perfectly willing to abide by the plain terms of the Mediated Agreement by simply incorporating the exact language of Rider A and Sections 2-4 into the Amended Inmarsat Cooperation Agreement and Rider A and Sections 2-3 into the Inmarsat-AST Agreement.

39.     Since the Court entered the AST Order, Inmarsat has rejected this agreed-upon language in a desperate attempt to gild the lily and renegotiate a better deal for itself than the one it negotiated during mediation.  Inmarsat simply refuses to execute the Inmarsat-AST Agreement or the Amended Inmarsat Cooperation Agreement unless AST and Ligado agree to insert new, anti-competitive terms precluding AST from acquiring spectrum to operate in the L-Band outside of North America.  But AST must draw the line here—Inmarsat has already sought and failed to obtain these terms in the binding Mediated Agreement, and AST cannot allow Inmarsat to *renegotiate* the very terms by which the parties agreed to be bound.

## III.    THE MEDIATED AGREEMENT PROVIDES NO SUPPORT FOR INMARSAT'S CONTENTION THAT AST IS PRECLUDED FROM ACQUIRING SPECTRUM TO OPERATE IN THE L-BAND OUTSIDE OF NORTH AMERICA.

40.     As Ligado has shown, Inmarsat is seeking to secure for itself anti-competitive restrictions that have no basis in the Definitive Documents or the Court-approved Mediated Agreement.  *See* Ligado Motion ¶¶ 31-36.  The Definitive Documents governing the AST Transaction contemplate that Ligado will provide AST with usage of Ligado's L-Band Spectrum rights in North America.  *See* Collaboration Agreement.  However, it certainly does not follow

from this that AST has agreed to limit its entire business operations, in the L-Band Spectrum or otherwise, to North America.  In fact, AST currently conducts—and has every right to conduct (whether in the L-Band, S-Band, or otherwise)—business outside of North America. It is ludicrous for Inmarsat even to suggest that AST would have agreed to the anti-competitive, geographic limitations Inmarsat now seeks to impose on AST's growth.  As shown below, the plain terms of the Mediated Agreement provide no support for Inmarsat's twisted position.

> **A.** **The Definitive Documents Do Not Prohibit AST From Using Non-Ligado L-Band Spectrum Outside of North America.**

41.    AST is not, and will not be, a party to the Cooperation Agreement.  Nor is it taking an assignment of the Cooperation Agreement.  *See* AST Transaction Motion ¶ 14 (explaining that, through the Collaboration Agreement, Ligado would "grant to AST certain rights to use and receive many of the economic benefits of Ligado's L-Band MSS Spectrum").  As a result, even if the Cooperation Agreement contained the geographic restrictions on Ligado's use of the L-Band that Inmarsat claims it does (it does not, *see* Ligado Motion ¶¶ 37-50), such restrictions would not apply to AST unless AST agreed to them, which it plainly has not.  Rather, AST is bound only by the terms set forth in the Collaboration Agreement, including Exhibit 6 thereof.

42.    The L-Band Spectrum usage rights that Ligado granted to AST in the Collaboration Agreement are defined by reference to Exhibit 6. *See* Collaboration Agreement § 2.1. Nothing in the plain language of the Mediated Agreement changes this fundamental premise.

43.    Critically, Inmarsat supports its (incorrect) contention that the Collaboration Agreement "mandate[s] AST's compliance with all of the Cooperation Agreement's terms," only by improperly deleting the **"to the extent set forth in Exhibit 6"** language from its quotation of

the Collaboration Agreement.  *See* Inmarsat Motion ¶ 30.[4]  This strategic omission lacks candor.

44.    Moreover, despite having had access to a fully unredacted version of Exhibit 6 for months, Inmarsat does not (as it cannot) claim that Exhibit 6 prohibits AST from operating in the L-Band Spectrum outside of North America.  Thus, nothing in the Collaboration Agreement (or any of the Definitive Documents), restricts AST from acquiring spectrum to operate in the L-Band outside of North America.

**B.    The Plain Language of the Mediated Agreement Does Not Prohibit AST From Acquiring Spectrum To Use in the L-Band Outside of North America.**

45.    As it relates to AST, the focus of the Mediated Agreement is on AST's use of the "Proposed NGSO System."  The Mediated Agreement carefully and intentionally defines the "Proposed NGSO System" as "a proposed non-geostationary satellite orbit satellite system to be operated in the L-Band in *North America*." Mediated Agreement § 2 (emphasis added).  Consistent with the geographic limitation in the very definition of Proposed NGSO System, the Mediated Agreement is clear that it relates *only* to AST's use of the Proposed NGSO System in North America, and does not restrict AST's use of the L-Band or other spectrum in any other geographic regions.

46.    Inmarsat relies on four specific provisions of the Mediated Agreement to claim that Inmarsat obtained "direct recourse against AST to ensure [AST's] [full] compliance" with the provisions of the Cooperation Agreement that, in Inmarsat's view, give it the "exclusive right to

---

[4]    In particular, the Inmarsat Motion states that "[t]he Ligado-AST 'Strategic Collaboration and Spectrum Usage Agreement' grants AST the 'exclusive right to use the Ligado L-Band MSS Spectrum,' subject to AST's 'observance of the measures and actions deemed necessary by Ligado to remain in compliance in all material respects with . . . the applicable terms, conditions, limitations, operational requirements, and technical requirements . . . required to ensure Ligado remains in compliance with . . . the Cooperation Agreement,'" *see* Inmarsat Motion ¶ 30 (alterations in original), **clearly omitting the critical qualifying clause "to the extent set forth in Exhibit 6"** from the end of the sentence it quotes.  *See* Coordination Agreement § 2.1.

use the L-Band spectrum outside of North America."  Inmarsat Motion ¶¶ 37, 40; *see also id*. at

¶¶ 38-41, 48.  However, Inmarsat is demonstrably incorrect in its interpretation of each of these

provisions and supports its position only by strategically omitting key language from the selective

quotes it takes from each provision.

                a)       ***Section 2 of the of the Mediated Agreement.***  The Mediated Agreement

provides that the applications by Ligado and AST to the FCC and ISED, *i.e.*, to the

regulators in United States and Canada, "for a proposed non-geostationary satellite orbit

satellite system to be operated in the L-Band in North America (the 'Proposed NGSO

System')" will "state that the operations of AST and Ligado spacecraft, individually and

taken as a whole, and regardless of orbit, will be consistent with and remain within the

technical, geographic and other limitations in the Amended Inmarsat Cooperation

Agreement."  *See* Mediated Agreement § 2.  This provision, however, imposes no

limitation on AST's ability to apply to use the L-Band outside of North America.  Rather,

the regulatory applications in which these commitments must be made will be seeking

approval for AST's use of a satellite system in the United States and Canada.  Here,

Inmarsat disregards the fact that the quoted language applies only to applications to the

regulators in the United States and Canada, studiously omits the critical "Proposed NGSO

System" language contained in Section 2 of the Mediated Agreement when it quotes these

provisions, and fails altogether to grapple with the impact of the limited definition of this

term when relying on Section 2.  *See* Inmarsat Motion ¶¶ 39, 48.[5]

---

[5]      Where the Inmarsat Motion relies on Section 2 of the Mediated Agreement to claim that "the regulatory applications for AST's proposed NGSO system will 'state that the operations of ***all*** AST and Ligado spacecraft, individually and taken as a whole, and regardless of orbit, ***will be consistent and remain within the technical, geographic and other limitations in the***

b)      ***Section 3 of the Mediated Agreement.***  The Mediated Agreement provides Inmarsat with remedies against AST and Ligado for a "Coordination Breach."  Mediated Agreement § 3.  But, critically, a "Coordination Breach" is defined as a breach of "the technical and/or geographic limitations of the Amended Inmarsat Cooperation Agreement in Exhibits B, C, L, M, N, T and U" that "is alleged to either (a) be caused by Inmarsat's operations, or (b) be caused by the operations of the Proposed NGSO System and/or the Ligado satellites." *Id.*   Thus, as it relates to AST, a "Coordination Breach" for which Inmarsat may have recourse against AST is strictly limited to a breach of the technical or geographical limitations in the Cooperation Agreement that is caused by "*the operations of the Proposed NGSO System,*" which, by definition, is limited to satellite system that is "*to be operated in the L-Band in North America.*"  *Id.* at § 2 (emphasis added).

AST's operations within the L-Band outside of North America are, by definition, not operations of the "Proposed NGSO System" that could cause a "Coordination Breach" within the scope of the Mediated Agreement, and therefore, the terms of the Cooperation Agreement, including Exhibit L therein, do not apply to (or restrict) AST's operations in the L-Band outside of North America.  However, in arguing (incorrectly) that the "Mediated Agreement unambiguously binds AST (and Ligado) to all the technical and geographic restrictions of the Cooperation Agreement, including those in Exhibit L," Inmarsat shrewdly omits from its quotations the second half of the definition of a "Coordination Breach" that, as to AST, requires such a breach to be caused by the

---

***Amended Inmarsat Cooperation Agreement,***'" *id.* at ¶ 39 (emphasis in original), Inmarsat cleverly declines to use the defined term "Proposed NGSO System" that is clearly included in Section 2 of the Mediated Agreement, *see* Mediated Agreement § 2, and fails to inform the Court that the definition of that term is circumscribed to a satellite system to be operated in North America.  *See* Inmarsat Motion ¶¶ 39, 48.

operations of the Proposed NGSO System that, by definition, is limited to a system "operated in the L-Band in North America."  *See* Inmarsat Motion ¶ 48; Mediated Agreement § 2.[6]

   c)    ***Footnote 5 of the Mediated Agreement.***  AST and Inmarsat also agreed in footnote 5 of the Mediated Agreement to "execute a separate binding agreement (the 'Inmarsat-AST Agreement') to give the parties the right to enforce directly against each other the commitments made to each other in Sections 2-3 hereof in connection with any Coordination Breach."  Mediated Agreement § 1 n.5.  But, as explained just above, and as concerns AST, a "Coordination Breach" is limited to a breach of the Cooperation Agreement Limits caused by AST's operation of the Proposed NGSO System, which by definition is "to be operated in the L-Band in North America."  *Id.* at §§ 2, 3.  Again, Inmarsat strategically ignores critical language, omitting the dispositive "in connection with any Coordination Breach" language from its quotations of, and reliance on, footnote 5 of the Mediated Agreement.  *See* Inmarsat Motion ¶ 38.[7]  An agreement to give Inmarsat the right to enforce certain terms of the Cooperation Agreement with respect to AST's operations in the L-Band Spectrum in North America is simply not the same as, and cannot be interpreted to constitute, an agreement to impose restrictions on AST's use of the L-Band Spectrum outside of North America.

---

[6]    The Inmarsat Motion states only that "[t]he Mediated Agreement defines a Coordination Breach to include one party 'breach[ing] the technical and/or ***geographic limitations*** of the Amended Inmarsat Cooperation Agreement in ***Exhibit[] . . . L***,'" Inmarsat Motion ¶ 48 (emphasis and alteration in original), studiously omitting the later provisions of the quoted sentence that specify the limited operations that potentially could cause a Coordination Breach.

[7]    The Inmarsat Motion states only that "the Mediated Agreement provides that 'AST and Inmarsat shall execute a separate binding agreement (the 'Inmarsat-AST Agreement') to give the parties the right to enforce directly against each other the commitments made to each other in Sections 2-3 hereof . . . .'" *Id.* at ¶ 38 (alteration in original).

d)    ***Rider A to the Mediated Agreement.***  Rider A states that the "[p]arties

expressly agree that strict compliance with the geographic, power, out-of-band emissions

and other limits *set forth in this Agreement* ('Cooperation Agreement Limits') is essential

to the integrity of this Agreement."  Mediated Agreement at Rider A.  However, as shown

above, the Cooperation Agreement Limits in the Mediated Agreement pertain *only* to

operations of the Proposed NGSO System "to be operated in the L-Band in North

America."  *Id.* at § 2.  AST's operations in the L-Band outside North America are therefore

not even addressed by, much less limited by or essential to, the Mediated Agreement.

47.    Thus, there is simply no support for Inmarsat's wild claim that the Mediated

Agreement requires AST's "full compliance" with the Cooperation Agreement or gives Inmarsat

the "exclusive right to use L-Band spectrum outside of North America."  Inmarsat Motion ¶¶ 37,

40.  Indeed, it is only by improperly and selectively omitting critical and carefully negotiated

language in the Mediated Agreement that Inmarsat can even attempt to support its position that

the Mediated Agreement precludes AST from operating in the L-Band Spectrum outside of North

America, as shown above.[8]  However, "[i]t is black-letter law" in "New York" that "courts are to

construe contract terms so as, where possible, to give rational meaning to all provisions in the

document."  *Glencore Ltd. v. Degussa Engineered Carbons L.P.*, 848 F. Supp. 2d 410, 433

(S.D.N.Y. 2012); *accord Maryland Casualty Co. v. Grigoli Enters.*, 2014 WL 1022356, at *3 (D.

Del. Mar. 13, 2014) (applying Delaware law) ("the court must read the insurance contract as a

whole, give effect to all provisions therein, and interpret the terms in a common sense manner.").

If the Mediated Agreement truly contained this drastic limitation on AST's operations, there would

---

[8]    A chart comparing the full text of the provisions that Inmarsat quotes with Inmarsat's
selective quotations from those provisions is attached as Exhibit F hereto.

be no need to twist the plain terms of the Mediated Agreement by quoting so selectively from it.

48.     In short, it is plain that the Mediated Agreement imposes no restrictions on AST's operation of satellites in the L-Band outside of North America, and the Court should not now countenance Inmarsat's attempt to secure a better deal for itself than it was able to obtain in the binding Mediated Agreement to which it has already agreed.

## **CONCLUSION**

49.     For the foregoing reasons, the Court should deny the Inmarsat Motion.  It should also grant the Ligado Motion in its entirety, and enter an order (i) enforcing the AST Order and the Mediated Agreement, (ii) prohibiting Inmarsat from seeking to insert into the Inmarsat-AST Agreement any terms or limitations not set forth in the Mediated Agreement, and (iii) granting such other relief as the Court deems just and proper.

*[remainder of page intentionally left blank]*

Dated: August 27, 2025
Wilmington, Delaware

*/s/ Jeremy W. Ryan*
Jeremy W. Ryan (Bar No. 4057)
Katelin A. Morales (Bar No. 6683)
Sameen Rizvi (Bar No. 6902)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, DE 19801
Telephone:    (302) 984-6000
Facsimile:    (302) 658-1192
Email:        jryan@potteranderson.com
              kmorales@potteranderson.com
              srizvi@potteranderson.com

-and-

Madlyn Gleich Primoff (admitted *pro hac vice*)
Henry Hutten (admitted *pro hac vice*)
Alexander Rich (admitted *pro hac vice*)
Sarah Margolis (admitted *pro hac vice*)
**FRESHFIELDS US LLP**
3 World Trade Center
174 Greenwich Street, 51st Floor
New York, New York 10007
Telephone:    (212) 277-4000
Facsimile:    (212) 277-4001
Email:        madlyn.primoff@freshfields.com
              henry.hutten@freshfields.com
              alexander.rich@freshfields.com
              sarah.margolis@freshfields.com

*Counsel for AST & Science LLC*