# **EXHIBIT E**

Inmarsat Letter Motion

**quinn emanuel** trial lawyers | new york

295 Fifth Avenue, New York, New York 10016-7103 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7341**

WRITER'S EMAIL ADDRESS
**benjaminfinestone@quinnemanuel.com**

April 16, 2025

<u>VIA ECF</u>

The Hon. Thomas M. Horan
United States Bankruptcy Court, District of Delaware
824 North Market Street, 3rd Floor
Wilmington, DE 19801

RE:  **Letter Motion Requesting Order Compelling Ligado Network LLC to Produce Unredacted Documents,** *In re Ligado Networks LLC, et al.*, **Case No. 25-10006-TMH (Bankr. D. Del.).**

Dear Judge Horan:

We write on behalf of Inmarsat Global Limited ("<u>Inmarsat</u>") to raise a discovery dispute in the above-captioned matter regarding the continued refusal by Ligado Networks, LLC (with its affiliated debtors in possession, "<u>Ligado</u>" or the "<u>Debtors</u>") to produce fully unredacted versions of the AST Definitive Documents—the very documents that it seeks to have the Court approve in the AST Motion.[1]  *See* ECF 352.  These documents are essential to enable Inmarsat to evaluate and respond to Ligado's proposed entry into and performance under the AST Definitive Documents, but Ligado has refused to share unredacted versions, asserting that they contain confidential information that cannot be produced even on an Attorney's Eyes Only ("<u>AEO</u>") basis.

---

[1]  The "AST Motion" is the *Motion for Entry of An Order (I) Authorizing the Debtors to Enter into the AST Definitive Documents and (II) Granting Related Relief* [ECF 352].  Capitalized terms not defined herein have the same meaning ascribed to them in the AST Motion.

**quinn emanuel urquhart & sullivan, llp**

ATLANTA | AUSTIN | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

Ligado's position is both indefensible and prejudicial to Inmarsat. Ligado is proposing for AST to essentially step into its shoes with respect to certain aspects of the Cooperation Agreement for purposes of a contract with **82 years** remaining in its term, but, at the same time, wants to block Inmarsat from seeing technical details essential to determining the feasibility of the proposed arrangement. Courts routinely deal with commercially sensitive information by tailored confidentiality orders, and only in the most extraordinary circumstances will a litigant be able to fully withhold relevant data from an interested party. Ligado has not and cannot meet its exceedingly high burden to do so here. Accordingly, Inmarsat requests that the Court issue an order compelling Ligado to produce fully unredacted copies of the AST Definitive Documents.

## Factual Background

### I.      Ligado's AST Motion and Inmarsat's Repeated Requests for the Unredacted AST Definitive Documents

In the AST Motion, Ligado is asking the Court to authorize its entry into and performance under the AST Definitive Documents, which include, among other things, a Framework Agreement and a Strategic Collaboration and Spectrum Usage Agreement (the "Collaboration Agreement"), each between AST and Ligado. *See* ECF 352. In those agreements, and particularly the Collaboration Agreement, Ligado purports to "grant to [AST] certain rights to use and receive many of the economic benefits of the Ligado L-band MSS Spectrum," which includes the spectrum usage rights that Inmarsat provides to Ligado under the Cooperation Agreement. *See* ECF 359-3 § 2.1, p.13 (Collaboration Agreement). Accordingly, Inmarsat has a vested interest in assessing what Ligado is purporting to do with the rights granted under the Cooperation Agreement.

Thus, on March 14, when the parties discussed mediation, Inmarsat requested that Ligado provide copies of the AST Definitive Documents to Inmarsat as soon as possible. ECF 410 ¶ 4. Ligado did not provide them. Instead, on March 22, Ligado filed the AST Motion, including the AST Definitive Documents, completely under seal. ECF 352. Inmarsat requested the agreements again on March 24. In response, Ligado provided heavily redacted documents. Inmarsat requested them again in subsequent discussions with Ligado's counsel on March 31, and again in discovery requests on April 1.[2] ECF 410 ¶ 5.

### II.     Ligado's Insufficient Modified Redactions and Inmarsat's Emergency Motion

On April 7, following a meet and confer, Debtors' counsel provided the Framework Agreement and its exhibits (including the Collaboration Agreement) with modified redactions on a confidential basis. However, these versions still contain significant redactions of information Inmarsat believes is critical to its rights under the Cooperation Agreement and its assessment of

---

[2]    In accordance with Rule 7026-1(c) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), a true and correct copy of the discovery requests are annexed hereto as Ex. 1.

the implications and feasibility of the AST Transaction, pursuant to which the Debtors purport to assign certain rights and economic benefits under the Cooperation Agreement to AST.[3]

On April 8, Inmarsat's counsel explained the foregoing to Debtors' counsel and renewed its request for unredacted versions of the AST Definitive Documents. *See* Ex. 2. In that request, Inmarsat offered to limit receipt of the unredacted versions solely to Inmarsat's counsel (including in-house counsel) and no more than two individuals who handle regulatory matters so as to assist in understanding the technical and operational agreements. *Id.* Ligado did not respond. Accordingly, on April 9, 2025, Inmarsat filed an emergency motion for entry of an order (i) adjourning the April 22 hearing on the AST Motion, (ii) extending the April 11 deadline to file objections to the AST Motion; and (iii) staying discovery temporarily to allow more time for the Debtors to provide fully unredacted versions of the AST Definitive Documents and thus avoid prejudice to Inmarsat. ECF 410 at 1. On April 11, the hearing on the AST Motion was consensually adjourned from April 22 to May 7 (ECF 421 at 2), and Ligado agreed to extend Inmarsat's deadline to object to April 25.

## III.    Ligado's Continued Refusal to Provide Documents, Even Under an AEO Designation

In its emergency motion, Inmarsat highlighted three examples of Ligado's improper redactions. Inmarsat explained that "the entire substance of Exhibit 6 to the Collaboration Agreement (L-Band Technical Requirements) is redacted. That exhibit is referenced in Section 2.1 of the Collaboration Agreement as providing the requirements by which AST must abide to remain in compliance with the Cooperation Agreement" between Ligado and Inmarsat. ECF 410 ¶ 5. Thus, "[w]ithholding that exhibit from Inmarsat, the counterparty to the Cooperation Agreement, is simply not defensible." *Id.* "Similarly, Exhibit 3 (Future GEO Plan) and Exhibit 4 (Power Levels for SpectrumCo NGSO System) contain operational and technical details that are undoubtedly relevant to Inmarsat with respect to the Cooperation Agreement, yet their substance remains redacted." *Id.*; Ex. 3 (email communicating same to counsel and reiterating request for fully unredacted versions of the Framework Agreement and Collaboration Agreement).

On April 10—the day after Inmarsat filed its emergency motion—Ligado provided Exhibit 6 with modified redactions on a confidential basis. On April 11, Inmarsat asked Ligado to clarify whether it was refusing to produce fully unredacted AST Definitive Documents even on an AEO basis. Ligado's counsel responded, taking the position that "given the highly sensitive and competitive nature of the remaining redactions, they cannot be shared with Inmarsat's internal and outside counsel." Ex. 2. Two days later, Ligado modified its position again and provided Inmarsat with an unredacted copy of Exhibit 4 to the Collaboration Agreement on a confidential basis. Nonetheless, material redactions remain, including all of Exhibits 3, 5, 7, 10, portions of Exhibits 2 and 6, and portions of multiple pages of the Collaboration Agreement itself (pp.11, 14, 15, 17, 18, 19, 22, 24, 25, 35). Inmarsat reiterated that Ligado should provide fully unredacted versions

---

[3]    Copies of the redacted exhibits provided to Inmarsat that are referenced herein can be emailed to Chambers upon request.

of the agreements, and given the "Debtors' refusal to produce those documents, even on an [AEO] basis," the parties agreed to bring this issue to the Court's attention.[4]  Ex. 3.

### Argument

Ligado's continued refusal to produce unredacted versions of the AST Definitive Documents is indefensible and prejudicial to Inmarsat.  Accordingly, Inmarsat requests an order compelling Ligado to produce the unredacted AST Definitive Documents.

"Motions to compel discovery are governed by Federal Rule of Civil Procedure 37, made applicable pursuant to Federal Rules of Bankruptcy Procedure 7001 and 7037."[5] *Am. Media, Inc. v. Anderson Mgmt. Servs. (In re Anderson News, LLC)*, 615 B.R. 45, 50 (Bankr. D. Del. 2020). "When considering Bankruptcy Rule 7037 motions, the Court must first determine whether the item sought to be compelled is 'discoverable.'" *Id.*  "Bankruptcy Rule 7026(b)(1)[] provides that discovery may be had of 'any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.'" *Id.*

Ligado does not argue, and cannot seriously dispute, the relevance of the terms of a contract that it asks the Court to approve.  The only question is whether it can categorically shield aspects of the transaction so that ***no one*** representing Inmarsat can see them.  It cannot.

Courts may restrict or limit discovery of confidential information where "disclosure will work a clearly defined and serious injury to the party seeking" protection, which must show the risk of injury "with specificity." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (citation omitted).  And even if a party shows the risk of serious injury, that risk must be balanced against the need for disclosure. *Id.*  Moreover, courts must narrowly tailor confidentiality protections, which is why orders categorically "forbidding any disclosure of trade secrets or confidential commercial information are rare." *Fed. Open Market Comm. v. Merrill*, 443 U.S. 340, 362 n.24 (1979).  Rather, the "key issue" in most cases is "not whether the information will be disclosed but under what conditions."  8A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2043 (3d ed. 2025).  Thus even for something as sensitive as the formula for Coca-Cola, the answer to confidentiality concerns is not to fully block discovery but to devise "stringent protective orders and other safeguards." *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 107 F.R.D. 288, 298-99 (D. Del. 1985).  And where those safeguards include "Attorneys' Eyes Only" or similar restrictions, "even a very sensitive trade secret will be sufficiently protected and should be produced if relevant." *Taiyo Int'l, Inc. v. Phyto Tech Corp.*, 275 F.R.D. 497, 501 (D. Minn. 2011).  Only in extraordinary cases, such as where discovery risks compromising ongoing law

---

[4]   Pursuant to Local Rule 7026-1(d), undersigned counsel certifies that Inmarsat has made a reasonable effort to reach an agreement with counsel to the Debtors regarding the disputes discussed herein, but no agreement has been reached at this time.

[5]   This is a contested matter governed by Federal Bankruptcy Rule 9014, which incorporates by reference Federal Bankruptcy Rules 7026 and 7037. *See* Fed. R. Bankr. P. 9014(c).  Federal Bankruptcy Rules 7026 and 7037 provide that Rules 26 and 37 of the Federal Rules of Civil Procedure apply in adversary proceedings, respectively.  Fed. R. Bankr. P. 7026; Fed. R. Bankr. P. 7037.

enforcement functions, will courts find these sorts of restrictions inadequate and fully block discovery. *In re The City of New York*, 607 F.3d 923, 936 (2d Cir. 2010) ("attorneys' eyes only" disclosure to group of 50 class action attorneys deemed inadequate protection for information that could compromise undercover law enforcement functions).

Here, Local Rule 9018-1 provides that if "documents are designated confidential by the producing party at the time of production, disclosure must be limited to members and employees of the law firm representing the receiving party." The entire reason these designations—and the protective orders that include them—exist is to address the concerns Ligado has raised. *See* Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .").

Ligado has entirely failed to explain why even stringent limitations on who can see the information is not enough. Ligado's vague, conclusory statement to Inmarsat that the information is so "highly sensitive" that it "cannot be shared with Inmarsat's internal and outside counsel," or "with individuals at Inmarsat who handle regulatory matters," is difficult to credit and, regardless, comes nowhere near meeting the requirement to show a "clearly defined and serious injury" with "specificity," *Pansy*, 23 F.3d at 786. This is especially so when weighed against Inmarsat's urgent and compelling need to understand the terms of a major transaction that very well may not be permitted under the Cooperation Agreement, the Bankruptcy Code, or relevant regulatory schemes, or that may be otherwise technologically or operationally infeasible. The only way for Inmarsat to be able to assess the AST Transaction—and be in a position to raise the relevant issues to the Court so that it may fully evaluate the AST Motion—is for Inmarsat to see ***all*** of the terms. Ligado's consistent refusal to provide the documents, even subject to strict protections, should make the Court all the more suspicious as to what is really motivating Ligado's stubborn insistence on absolute secrecy.

## Conclusion

The AST Definitive Documents greatly impact Inmarsat's valuable rights under the Cooperation Agreement, and it is impossible for Inmarsat to determine the exact impact that the AST Transaction may have on those rights, and indeed the feasibility of the AST Transaction altogether, without the ability to review those documents in their entirety. Despite the Court's April 11 order adjourning the April 22 hearing on the AST Motion (ECF 421 at 2), which Inmarsat requested to give Ligado more time to produce the unredacted documents and to avoid being prejudiced at the hearing (ECF 410 ¶ 7), Ligado continues to refuse to produce them, even on an AEO basis.[6] The Debtors' continued withholding of the Unredacted AST Definitive Documents is prejudicial to Inmarsat. Accordingly, Inmarsat requests an order compelling Ligado to produce the Unredacted AST Definitive Documents.

---

[6] Inmarsat renews its request (ECF 410 ¶ 6) that, if the Court orders Ligado to produce the unredacted AST Definitive Documents to Inmarsat on an AEO (including in-house counsel) basis, at least one individual who handles regulatory matters who can assist counsel in understanding the technical and operational aspects of the agreements, also be permitted to review the unredacted documents.

Thank you for the Court's attention to this matter.


Respectfully Submitted,

*/s/  Benjamin Finestone*
Benjamin Finestone
Quinn Emanuel Urquhart & Sullivan, LLP


cc:  Counsel of record

# EXHIBIT 1

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LIGADO NETWORKS LLC, *et. al.*[1] | Case No. 25-10006-TMH |
| Debtors. | Jointly Administered |

## INMARSAT GLOBAL LIMITED'S FIRST
## REQUEST FOR PRODUCTION OF DOCUMENTS TO THE DEBTORS

Pursuant to Federal Rules of Civil Procedure 26 and 34 and Federal Rules of Bankruptcy Procedure 7026, 7034, and 9014, Inmarsat Global Limited ("Inmarsat") requests that on or before April 11, 2025, or such other date agreed upon by the parties or ordered by the Court, Ligado Networks LLC and its affiliated debtors in possession (collectively, the "Debtors") produce the documents identified in the enclosed requests (the "Requests") fully and in accordance with the definitions and instructions set out below and provide such documents to Inmarsat at the offices of Quinn Emanuel Urquhart & Sullivan, LLP, 295 Fifth Avenue, New York, New York 10016.

---

[1]　The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A).

## DEFINITIONS

As used in these Requests the following words shall have the definitions listed below:

1.      "AST" means, collectively, AST SpaceMobile, Inc., AST & Science, LLC, and AST Spectrum USA I, LLC.

2.      "AST Definitive Agreements" have the meaning given to it in the Framework Agreement.

3.      "AST NGSO System" has the meaning given to it in the Spectrum Collaboration Agreement.

4.      "AST Transaction" has the meaning given to it in the Motion.

5.      "Backstop Commitment" has the meaning given to it in the Framework Agreement.

6.      "Backstop Financing" has the meaning given to it in the Framework Agreement.

7.      "Bankruptcy Code" means title 11 of the United States Code.

8.      "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

9.      "Break-Up Fee" has the meaning given to it in the Framework Agreement.

10.      "Catch-Up Duo Payments" has the meaning given to it in the Framework Agreement.

11.      "Chapter 11 Cases" means the chapter 11 cases of the Debtors jointly administered in the Bankruptcy Court under Case Number 25-10006-TMH.

12.      "Communication" means the transmittal of information of any kind, in any form, and by any means, and therefore includes, but is not limited to, any telephone conversation, face-to-face meeting or conversation, visit, conference, internal or external discussion, or exchange of Documents.  All written Communications shall include, without limitation, electronic, printed, typed, handwritten or other readable Documents, correspondence, memos, reports, contracts, both

initial and subsequent, diaries, logbooks, minutes, notes, studies, surveys, forecasts, emails, text messages, and instant messages.  A Request for Documents concerning any Communication among or between specified parties includes a request for any Communication among or between such parties, whether or not such Communication included or was directed to any other Person.

13.     The terms "concerning" and "relating to" (or an any variation thereof) mean describing, discussing, constituting, containing, considering, embodying, evaluating, mentioning, memorializing, supporting, collaborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, regarding, controverting, contradicting, made in connection with or by reason of, or derived or arising therefrom.

14.     "Confirmation Date" has the meaning given to it in the Plan.

15.     "Cooperation Agreement" means the Amended and Restated Cooperation Agreement that the Debtors and Inmarsat entered into on August 6, 2010 (as further amended and restated from time to time).

16.     "Covered Spectrum" means the frequencies 1525-1559 MHz and 1626.5-1660.5 MHz.

17.     "Cure Payment" means any payment required under section 365(b) of the Bankruptcy Code in order for the Debtors to assume or assign the Cooperation Agreement, *excluding* any alleged right or ability of the Debtors to set off or recoup against such amount.   For the avoidance of doubt, the Cure Payment is an amount no less than approximately $525 million.

18.     "DUO Payments" has the meaning given to it in the Framework Agreement.

19.     "Debtors" means Ligado and its affiliated debtors and debtors in possession in these Chapter 11 Cases (including in their pre- and post-petition capacities).

20.     The term "<u>Document</u>" is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure and includes written Communications, writings, drawings, graphs, charts, photographs, phone records, and any electronic, recorded, digitally encoded, graphic, and compiled data from which information can be obtained, originals, translations and drafts thereof, including all copies bearing notations and marks not found on the original.   The term "<u>Document</u>" also includes e-mails, text messages, instant messages, voice messages, and other electronic Communications, whether stored in a personal computer, network computer system, cellular device, backup computer tape, disk, or any other storage mechanism. The term "<u>Document</u>" further means any Document that is now or at any time in the possession, custody, or control of the entity to whom these Requests are directed (together with any predecessors, successors, affiliates, subsidiaries or divisions thereof, and their officers, directors, employees, agents and attorneys).   Without limiting the term "control" as used in the preceding sentence, a Person is deemed to be in control of a Document if the Person has the right to secure the Document or a copy thereof from another Person having actual possession thereof, including work product contracted by You from professional firms.

21.     "<u>Framework Agreement</u>" means the Framework Agreement by and among AST and Ligado, dated as of March 22, 2025.

22.     "<u>Hearing</u>" means the hearing on the Motion, currently scheduled to be held before the Hon. Thomas Horan on April 17, 2025.

23.     The term "<u>including</u>" means "including, but not limited to" and "including, without limitation."

24.     "<u>Inmarsat</u>" means Inmarsat Global Limited.

25.     "<u>Ligado</u>" means Ligado Networks LLC.

26.    "<u>Ligado ATC Deployment Right</u>" has the meaning given to it in the Spectrum Collaboration Agreement.

27.    "<u>Motion</u>" means *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Enter into the Definitive Documents and (II) Granting Related Relief.*

28.    The term "<u>Person</u>" includes both the singular and the plural, and means any natural Person, business entity, corporation, cooperative, bureau, public corporation, partnership, joint venture, group, club, association, institute, society, office, organization, and any governmental entity or department, agency, bureau, or political subdivision thereof.

29.    "<u>Plan</u>" means the *Joint Chapter 11 Plan of Ligado Networks LLC and Its Affiliated Debtors and Debtors in Possession* [ECF 348], as may be modified or amended.

30.    "<u>Spectrum Collaboration Agreement</u>" means the Strategic Collaboration and Spectrum Usage Agreement, by and among Ligado and Spectrum USA I, LLC, dated as of March 22, 2025.

31.    "<u>SpectrumCo NGSO System</u>" has the meaning given to that term in the Framework Agreement.

32.    "<u>SpectrumCo Usage Rights Consideration</u>" has the meaning given to that term in the Spectrum Collaboration Agreement.

33.    "<u>Viasat</u>" means Viasat, Inc.

34.    "<u>You</u>" and "<u>Your</u>" refer to the Debtors.

35.    For purposes of the Requests herein, terms not specifically defined shall be given their ordinary meanings as You understand them to be used.

36.    Each reference to the Debtors, AST, or any other corporation, partnership, joint venture, unincorporated association, government agency, entity, or other fictitious Person shall be

deemed to include each and all of its current or former subsidiaries, affiliates, predecessors, successors, parents, and assigns, and with respect to each of such entities, including all divisions, departments, or operating units, its officers, directors, shareholders, employees, partners, limited partners, representatives, agents, accountants, attorneys, principals, trustees, consultants, managers, advisors, and any other Person who acted on its behalf.

37.     Whenever necessary to bring Documents or other information within the scope of these Requests that might otherwise be construed to be outside their scope:

    (a)     the use of a verb in any tense shall be construed as the use of that verb in all other tenses;

    (b)     the use of a word in its singular form shall be deemed to include within its use the plural form as well;

    (c)     the use of a word in its plural form shall be deemed to include within its use the singular form as well;

    (d)     the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Requests all Documents that might otherwise be construed to be outside its scope; and

    (e)     the terms "all" and "each" shall be construed as both all and each.

## INSTRUCTIONS

1.     You are instructed to produce all Documents responsive to the Requests that are within Your possession, custody, or control, or in the possession, custody, or control of any other Person or entity acting or purporting to act on Your behalf.

2.     If You cannot fully respond to the following Requests after exercising due diligence to secure the information requested thereby, so state, and specify (a) the portion of each Request

that cannot be responded to fully and completely, (b) what efforts were made to obtain the requested information, (c) the facts relied upon that support Your contention that the Requests cannot be answered fully and completely, and (d) any knowledge, information or belief You have concerning the unanswered portion of any such Requests.

3.      If there are no Documents responsive to any particular Request, Your response shall state so in writing.

4.      If any information requested in a Request is claimed to be privileged or otherwise immune from discovery, or if any Document is withheld from production based on a claim of privilege, immunity, or other ground, furnish a list specifying: (a) the nature of the privilege, immunity, or other ground claimed; (b) the authors of the Document; (c) all Persons who received copies of the Document, including the Document's indicated and blind copy recipients; (d) the date of the Document; (e) the type of Document withheld (*e.g.*, memorandum, letter, report, email, etc.); and (f) the general subject matter of the Document sufficient to enable the Ad Hoc Group to assess the applicability of the claimed privilege, immunity, or other ground for refusal to produce. For each item of information or Document You withhold based on a claim of privilege, immunity, or other ground, identify such information or Document with sufficient particularity for purposes of a motion to compel.  Notwithstanding any claim of privilege or immunity, any information or Documents falling within the scope of the Request which are not privileged or immune from production should be produced.

5.      If a portion of an otherwise responsive Document contains information subject to a claim of privilege, only that portion of the Document subject to the claim of privilege shall be deleted or redacted from the Document following the instructions in the preceding paragraph and the rest shall be produced.

6.      If Your response to a particular Request is a statement that You lack the ability to comply with that Request, You must specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in Your possession, custody, or control, in which case the name and address of any Person or entity known or believed by You to have possession, custody, or control of that information or category of information must be identified.

7.      A Document with handwritten, typewritten or other recorded notes, editing marks, etc., is not and shall not be deemed identical to one without such modifications, additions, or deletions.  The term "original" includes the file copy and copies of any Document if there is no actual original or ribbon copy.

8.      You shall produce Documents in the following manner and form:

*E-mails*.  E-mails shall be produced as single-page or multi-page TIFF images with accompanying full text and load file (DAT).  E-mail attachments shall be handled according to the provisions below applicable to loose electronic Documents and shall not be separated from the emails to which they are attached.  Native files for e-mails shall be maintained, and such files shall be produced upon request.

*Electronic Documents*.  Word and other electronic Documents shall be produced as single-page or multi-page TIFF images with accompanying full text and load file (DAT).  For Excel or other spreadsheet files, the native file shall be produced.  Native files for all other electronic Documents shall be maintained, and such files shall be produced upon request.

*Hard-Copy Documents*.  Hard-copy Documents shall be produced as single-page or multi-page TIFF images with accompanying full OCR text and load file (DAT).  All hard copy documents should be unitized to the smallest physical boundary.

*TIFF Images Generally*.  Any TIFF images produced shall consist of (a) single-page or multi-page, black and white, 300dpi group IV TIFF images with extension ".tif" and (b) text files, named after the bates number of the Document, with extension ".txt".  TIFF images may not be compressed using JPEG compression.  Metadata shall be provided in a delimited file with a ".dat" file extension and ASCII 020 and 254 delimiters for column break and text qualifier.  The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each Document.

9.      The following metadata should be supplied, where available:

| Field | Description |
|---|---|
| BegBates | Page ID of first page in a Document. |
| EndBates | Page ID of last page in a Document. |
| BegAttach | BegBates of parent record. |
| EndAttach | BegBates of last attached Document in family. |
| From | Author of the e-mail message. |
| To | Main recipient(s) of the e-mail message. |
| CC | Recipient(s) of "Carbon Copies" of the e-mail message. |
| BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. |
| DateSent | Sent date of an e-mail message. |
| TimeSent | Time the e-mail message was sent. |
| EMail_Subject | Subject of the e-mail message. |
| Author | Author field value pulled from metadata of the native file. |
| Title | Title field value extracted from the metadata of the native file. |
| Custodian | Textual value of custodian. |
| DateCreated | Creation date of the native file. |
| TimeCreated | Creation time of the native file. |
| EntryID | Unique identifier of e-mails in mail stores. |
| FileDescription | File extension or other description of native file type. |
| Filename | Original filename of native file. |
| Filesize | Size of native file, in bytes. |
| MD5Hash | MD5 hash-128-bit output. |
| Attach | Semi-colon delimited string of first level attachments in the e-mail. |
| DateLastMod | Date the native file was last modified. |

| TimeLastMod | Time native file was last modified. |
| PgCount | Number of pages in a Document. |
| NativeFile | Logical file path to the native file. |
| OCRPath | Logical file path to the OCR text. |

10.     You shall produce all Documents in the manner in which they are maintained in the usual course of Your business or You shall organize and label the Documents to correspond with the Requests.

11.     A Request shall be deemed to include a request for the entire Document requested, including any and all file folders within which the Document was contained, transmittal sheets or memoranda, cover letters, exhibits, enclosures, comments or attachments to the Document in addition to the Document itself.  In the case of email attachments, if either the email or any of its attachments is responsive, produce the email and all of the corresponding attachments.

12.     If and to the extent Documents are maintained in a database or other electronic format, You shall produce along with the Document software that will enable access to the electronic Documents or database as You would access such electronic Documents or database in the ordinary course of Your business.

13.     Documents shall be produced in such fashion as to identify the department, branch or office in which they were located and, where applicable, the natural Person in whose possession the Document was found and the business address of each Document's custodian(s).

14.     Documents attached to each other should not be separated.

15.     Documents not otherwise responsive to these Requests shall be produced if such Documents concern, relate to, mention, discuss, refer to, describe, or explain the Documents which are called for by these Requests.

16.     The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical.

17.     In producing Documents and other materials, You are requested to furnish all Documents or things in Your possession, custody or control, including but not limited to Documents or information possessed directly by You or Your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, accountants, investigators, or by Your attorneys or their agents, employees, representatives, agents, consultants, or investigators.

18.     If You object to any part of any Request, You shall state fully in writing the nature of the objection.  Notwithstanding any objections, You shall respond to the Request as narrowed in a way that renders it not overbroad in Your opinion, and state the extent to which You have narrowed that Request for purposes of Your response.  You shall also comply fully with the other parts of the Request to which You are not objecting.

19.     In the event any Document responsive to any Request has been lost, discarded, or destroyed, that Document is to be identified by stating as completely as possible: (a) the authors or creators of the Document; (b) all Persons who received copies of the Document, including the Document's indicated and blind copy recipients; (c) the custodian of the Document; (d) the date of the Document; (e) the type of Document (*e.g.*, memorandum, letter, report, email, etc.); (f) the Document's date of destruction or discard, manner of destruction or discard, and the reason for destruction or discard; and (g) the Persons authorizing and carrying out such destruction or discarding of the Document.  Each Request shall be construed independently and not with reference to any other Request for the purpose of limitation.

20.     Each Request shall be deemed to be continuing in nature.  If at any time additional Documents or information come into Your possession, custody or control or are brought to Your attention, prompt supplementation of Your response to these Requests is required.

21.     Inmarsat requests that Documents and Communications responsive to the Requests shall be produced on a rolling basis with production completed on or before April 11, 2025.

## DOCUMENT REQUESTS[2]

1.     Documents sufficient to identify which "rights" and "economic benefits" (Spectrum Collaboration Agreement Recital D) under the Cooperation Agreement Ligado purports to grant to AST pursuant to the AST Transaction.

2.     All Document and Communications concerning Ligado's continued rights to exercise the Ligado ATC Deployment Right under the AST Transaction.

3.     All Documents and Communications concerning the Backstop Commitment, Backstop Financing, and Financing Sources.

4.     All Documents and Communications concerning AST's ability to meet its obligations (payment or otherwise) under the AST Definitive Agreements relating to the Cooperation Agreement, including AST's ability to pay  (i) the SpectrumCo Usage Rights Consideration, (ii) the DUO Payments, and (iii) the Catch-Up DUO Payments (if any) to Ligado.

5.     All Documents and Communications concerning the anticipated likelihood and timing of regulatory approval for (i) the AST NGSO System and (ii) any other conditions of the AST Transaction.

---

[2]   These Requests are without prejudice to Inmarsat's right to serve additional or supplemental discovery requests or notices on the Debtor or any other party in connection with the Motion, the Chapter 11 Cases, or in any other contested matter, adversary proceeding, or case.  Inmarsat reserves all rights.

6.      All Documents and Communications concerning the anticipated timing of the Cure Payment.

7.      Documents sufficient to determine Ligado's and AST's ability to satisfy the Cure Payment in full as of the Confirmation Date.

8.      All Documents and Communications concerning section 5.6 of the Framework Agreement (Viasat Payment).

9.      All Documents and Communications concerning the Break-Up Fee.

10.      All Communications with AST concerning Inmarsat, Viasat, or the Cooperation Agreement.

11.      All Documents and Communications concerning the potential for AST's operation of the SpectrumCo NGSO System to interfere with Inmarsat's L-Band usage.

12.      All Documents and Communications concerning any procedures or mechanisms in place to avoid any interference with Inmarsat's L-Band spectrum usage caused by or relating to AST's operation of the SpectrumCo NGSO System.

13.      All Documents and Communications concerning any actual or potential grant, sale, lease, assignment, or other transfer of Covered Spectrum or rights under the Cooperation Agreement, including any alternatives, or efforts to locate alternatives, to the AST Transaction.

14.      All valuations of the Covered Spectrum or rights under the Cooperation Agreement, and all Documents and Communications relating thereto.

15.      All Documents and Communications regarding the costs or benefits of delaying the Bankruptcy Court's approval of the Debtors' entry into the AST Definitive Agreements.

16.      Unredacted copies of the AST Definitive Agreements, including all attachments, amendments, and exhibits thereto.

17.   All Documents and Communications You intend to rely upon at the Hearing.

Dated: April 1, 2025             **PACHULSKI STANG ZIEHL & JONES LLP**
Wilmington, Delaware

                                 */s/ Laura Davis Jones*
                                 Laura Davis Jones (DE Bar No. 2436)
                                 Timothy P. Cairns (DE Bar No. 4228)
                                 919 N. Market Street, 17th Floor
                                 P.O. Box 8705
                                 Wilmington, DE  19899-8705 (Courier 19801)
                                 Telephone: (302) 652-4100
                                 Email: ljones@pszjlaw.com
                                          tcairns@pszjlaw.com

                                 -and-

                                 **QUINN EMANUEL URQUHART & SULLIVAN, LLP**
                                 Benjamin Finestone
                                 Matthew Scheck
                                 Kate Scherling
                                 295 5th Avenue,
                                 New York, NY  10016
                                 Telephone: (212) 849-7000
                                 Email: benjaminfinestone@quinnemanuel.com
                                          matthewscheck@quinnemanuel.com
                                          katescherling@quinnemanuel.com

                                 -and-

                                 **STEPTOE LLP**
                                 Jeffrey M. Reisner
                                 Charles Michael
                                 1114 Avenue of the Americas
                                 New York, NY  10036
                                 Telephone:  (212) 506-3900
                                 Email: jreisner@steptoe.com
                                          cmichael@steptoe.com

                                 Alfred M. Mamlet
                                 Joshua R. Taylor
                                 1330 Connecticut Avenue, NW
                                 Washington, DC  20036
                                 Telephone:  (202) 429-3000
                                 Email: amamlet@steptoe.com
                                          jrtaylor@steptoe.com

14

*Counsel to Inmarsat Global Limited*

# EXHIBIT 2

| Subject: | RE: CONFIDENTIAL Ligado - AST Motion - Redaction |
|----------|--------------------------------------------------|
| **Sent:** | 4/11/2025, 1:00:16 PM |
| **From:** | Yanez, Melanie<MWYanez@milbank.com> |
| **To:** | Kate Scherling; Matthew Scheck |
| **Cc:** | Leblanc, Andrew; Campbell, Patrick; Brod, Matt; Benjamin Finestone |

---

**[EXTERNAL EMAIL from mwyanez@milbank.com]**

---

Yes, it is Ligado's position that given the highly sensitive commercial and competitive nature of the remaining redactions, they cannot be shared with Inmarsat's internal and outside counsel.  Nor can the information be shared with individuals at Inmarsat who handle regulatory matters, as were included in Inmarsat's most recent request.

Can we touch base on timing for letter submissions if your client is amenable to proceeding that way and this issue cannot be resolved through mediation?

Best regards,
Melanie

Melanie Westover Yanez | Milbank | Special Counsel
1850 K Street, NW, Suite 1100 | Washington D.C. 20006
T: +1 202.835.7560
MWYanez@milbank.com | milbank.com

---

**From:** Kate Scherling <katescherling@quinnemanuel.com>
**Sent:** Friday, April 11, 2025 12:37 PM
**To:** Yanez, Melanie <MWYanez@milbank.com>; Matthew Scheck <matthewscheck@quinnemanuel.com>
**Cc:** Leblanc, Andrew <ALeblanc@milbank.com>; Campbell, Patrick <PCampbell@milbank.com>; Brod, Matt <MBrod@milbank.com>; Benjamin Finestone <benjaminfinestone@quinnemanuel.com>
**Subject:** [EXT] RE: CONFIDENTIAL Ligado - AST Motion - Redaction

Melanie –

Just to clarify, is Ligado's position that it will not share fully unredacted versions even on an Attorneys'-Eyes-Only basis?

Thank you,
Kate

**Kate Scherling**
**Quinn Emanuel Urquhart & Sullivan, LLP**
295 Fifth Avenue
New York, NY 10016
212-849-7178 (Office)
646-737-4713 (Cell)

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message

---

**From:** Yanez, Melanie <MWYanez@milbank.com>
**Sent:** Thursday, April 10, 2025 9:45 PM
**To:** Kate Scherling <katescherling@quinnemanuel.com>; Matthew Scheck <matthewscheck@quinnemanuel.com>
**Cc:** Leblanc, Andrew <ALeblanc@milbank.com>; Campbell, Patrick <PCampbell@milbank.com>; Brod, Matt <MBrod@milbank.com>
**Subject:** RE: CONFIDENTIAL Ligado - AST Motion - Redaction

**[EXTERNAL EMAIL from mwyanez@milbank.com]**

---

Kate,

We disagree with the assertions made below.  Rather than address them at this time, we have attached Exhibit 6 to the Collaboration Agreement marked as "Confidential" on a confidential basis.  Ligado believes the remaining redactions must continue to be redacted.

As discussed, we are hopeful that the modifications made to the redactions may resolve Inmarsat's objection to the remaining redactions.  If, however, that is not the case, and if the parties are unable to resolve disputes through mediation, we propose to resolve the redaction dispute through submission of discovery letters filed with the Court, not to exceed 5 pages.  We expect Inmarsat would submit its letter and Ligado would respond.  As mentioned, it is likely most efficient to keep the April 22 hearing time to be used for the discovery conference.  Under the local rules, the discovery conference is no less than 10 days following submission of the letter, but we understand from our local counsel that the parties may be able to modify that timeline by agreement.  Please let us know if (1) Inmarsat intends to continue to challenge the redaction of information and (2) that it is amenable to resolving the dispute by letter submissions and a discovery conference.  If yes to both, we can be available to discuss timing of the letters to lead to resolution for April 22.


Best regards,
Melanie

Melanie Westover Yanez  |  Milbank  |  Special Counsel
1850 K Street, NW, Suite 1100 | Washington D.C. 20006
T: +1 202.835.7560
MWYanez@milbank.com | milbank.com


**From:** Kate Scherling <katescherling@quinnemanuel.com>
**Sent:** Tuesday, April 8, 2025 5:45 PM
**To:** Yanez, Melanie <MWYanez@milbank.com>; Matthew Scheck <matthewscheck@quinnemanuel.com>
**Cc:** Leblanc, Andrew <ALeblanc@milbank.com>; Campbell, Patrick <PCampbell@milbank.com>; Brod, Matt <MBrod@milbank.com>
**Subject:** [EXT] RE: CONFIDENTIAL Ligado - AST Motion - Redaction

Melanie –

Thank you for sending the AST agreements with revised redactions.  However, these versions still contain significant redactions of information we believe is important.  For example, the entire substance of Exhibit 6 to the Collaboration Agreement (titled "L-band Technical Requirements") is redacted.  That exhibit is referenced in Section 2.1 of the Collaboration Agreement as providing requirements that AST must abide by to remain in compliance with the Cooperation Agreement, among other things.  Shielding that exhibit from Inmarsat, which is the counterparty to the Cooperation Agreement, is simply not defensible.  Similarly, Exhibits 3 and 4 contain operation and technical details that are undoubtedly relevant to Inmarsat in connection with the Cooperation Agreement.

We therefore reiterate our request for fully unredacted versions of the Framework Agreement and Collaboration Agreement.  We first made our request on March 24, which is when we received the initial heavily redacted documents.  We have subsequently reiterated our request in discovery and in discussions between Milbank's transactional counsel and Steptoe (on March 31).  Yet all we have are still significantly redacted documents.  This is prejudicial to us as our objection is due in three days (April 11).  We can agree to limit the unredacted versions solely to counsel (including Inmarsat's in-house counsel) and one or two individuals who handle regulatory matters to assist in understanding the technical and operational aspects of the agreements.  We reserve all rights.

Best,
Kate


**Kate Scherling**
**Quinn Emanuel Urquhart & Sullivan, LLP**
295 Fifth Avenue
New York, NY 10016
212-849-7178 (Office)
646-737-4713 (Cell)

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message

**From:** Yanez, Melanie <MWYanez@milbank.com>
**Sent:** Monday, April 7, 2025 8:16 PM
**To:** Matthew Scheck <matthewscheck@quinnemanuel.com>; Kate Scherling <katescherling@quinnemanuel.com>

**[EXTERNAL EMAIL from mwyanez@milbank.com]**

**Confidential**

Matt, Kate,

As discussed today, attached is an updated version of Framework Agreement (together with its attachments and exhibits), which was attached to the AST Motion.  This updated Framework Agreement reflects modifications to the redactions Ligado can share with Inmarsat and its counsel.  The remaining redactions are generally of proprietary commercial information regarding operational plans and strategies of Ligado or AST.  Please keep this updated version confidential.

Best regards,
Melanie

Melanie Westover Yanez  |  **Milbank**  |  Special Counsel
1850 K Street, NW, Suite 1100 | Washington D.C. 20006
T: +1 202.835.7560
MWYanez@milbank.com | milbank.com

==================================== IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor. ==================================== This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

==================================== IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor. ==================================== This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

==================================== IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Milbank LLP is not intended or written to be, and cannot be used, by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor. ==================================== This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

# EXHIBIT 3

| Subject: | RE: In re Ligado- AST Definitive Documents |
|---|---|
| Sent: | 4/14/2025, 8:53:04 AM |
| From: | Kate Scherling<katescherling@quinnemanuel.com> |
| To: | Yanez, Melanie; Matthew Scheck |
| Cc: | Leblanc, Andrew; Campbell, Patrick; Brod, Matt |

Melanie –

Inmarsat's position remains that we need to receive the fully unredacted versions of the agreements that undoubtedly implicate Inmarsat's rights under the Cooperation Agreement and for which the Debtors seek Court approval. Given the Debtors' refusal to produce those documents, even on an Attorneys'-Eyes-Only basis, Inmarsat agrees that we will need to bring this issue to the Court's attention. To that end, Inmarsat will endeavor to make its submission to the Court by this Wednesday, April 16.

Thanks,
Kate

**Kate Scherling**
**Quinn Emanuel Urquhart & Sullivan, LLP**
295 Fifth Avenue
New York, NY 10016
212-849-7178 (Office)
646-737-4713 (Cell)

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message

**From:** Yanez, Melanie <MWYanez@milbank.com>
**Sent:** Sunday, April 13, 2025 4:17 PM
**To:** Matthew Scheck <matthewscheck@quinnemanuel.com>; Kate Scherling <katescherling@quinnemanuel.com>
**Cc:** Leblanc, Andrew <ALeblanc@milbank.com>; Campbell, Patrick <PCampbell@milbank.com>; Brod, Matt <MBrod@milbank.com>
**Subject:** In re Ligado- AST Definitive Documents

**[EXTERNAL EMAIL from mwyanez@milbank.com]**

Kate, Matt,

In a further effort to resolve any issues regarding redactions, attached please find Exhibit 4 to the Collaboration Agreement, that the Company is sharing with Inmarsat on a Confidential basis.

Please let us know if there remains any dispute on redactions and if so, and if they cannot be resolved in mediation, if we can proceed with letter submissions and a discovery conference. If so, we believe, as noted on our prior call, that it is important that Inmarsat submit its letter promptly to allow for a response and a 4/22 conference.

Let us know if you would like to discuss.

Best regards,
Melanie

Melanie Westover Yanez | Milbank | Special Counsel
1850 K Street, NW, Suite 1100 | Washington D.C. 20006
T: +1 202.835.7560
mwyanez@milbank.com | milbank.com

============================================= IRS Circular 230 Disclosure: U.S. federal tax advice in the foregoing message from Marshak LLP is not intended or written to be and cannot be used by any person for the purpose of avoiding tax penalties that may be imposed regarding the transactions or matters addressed. Some of that advice may have been written to support the promotion or marketing of the transactions or matters addressed within the meaning of IRS Circular 230, in which case you should seek advice based on your particular circumstances from an independent tax advisor. ============================================= This e-mail message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.