## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LIGADO NETWORKS LLC, *et al.*,[1] | ) Case No. 25-10006 (TMH) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

### JOINT CHAPTER 11 PLAN OF LIGADO NETWORKS LLC
### AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION

**MILBANK LLP**

Dennis F. Dunne, Esq. (*pro hac vice*)
Matthew L. Brod, Esq. (*pro hac vice*)
Lauren C. Doyle, Esq.  (*pro hac vice*)
55 Hudson Yards
New York, New York 10001
Telephone:     (212) 530-5000
Facsimile:     (212) 530-5219

Andrew M. Leblanc
1101 New York Avenue, NW
Washington, DC 20005
Telephone:     (202) 835-7500
Facsimile:     (202) 263-7586

*Counsel for Debtors in Possession*

**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins, Esq. (Bar No. 2981)
Michael J. Merchant, Esq. (Bar No. 3854)
Amanda R. Steele, Esq. (Bar No. 5530)
920 North King Street
Wilmington, DE 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701

*Co-Counsel for Debtors in Possession*

Dated: September 8, 2025

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

# TABLE OF CONTENTS

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ................................................................ 1

    A.    Defined Terms .................................................................................... 1
    B.    Rules of Interpretation ..................................................................... 18
    C.    Computation of Time ....................................................................... 19
    D.    Governing Law ................................................................................ 19
    E.    Reference to Monetary Figures ........................................................ 20
    F.    Reference to the Debtors or the Reorganized Debtors........................ 20
    G.    Consultation, Information, Notice, and Consent Rights. ..................... 20

ARTICLE II ADMINISTRATIVE CLAIMS AND OTHER UNCLASSIFIED CLAIMS ........ 20

    A.    General Administrative Claims......................................................... 20
    B.    Professional Fee Claims .................................................................. 21
            1.    Final Fee Applications ......................................................... 21
            2.    Professional Fee Escrow Account ......................................... 21
            3.    Post-Effective Date Fees and Expenses ................................. 22
    C.    DIP Claims...................................................................................... 22
    D.    Priority Tax Claims.......................................................................... 23

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ....................................................................................... 23

    A.    Classification of Claims and Interests............................................... 23
    B.    Treatment of Claims and Interests ................................................... 24
            1.    Class 1 – Priority Non-Tax Claims....................................... 24
            2.    Class 2 – Other Secured Claims........................................... 24
            3.    Class 3 – First Lien Claims.................................................. 25
            4.    Class 4 – 1.5 Lien Term Loan Claims ................................... 25
            5.    Class 5 – Second Lien Notes Claims ..................................... 26
            6.    Class 6 – General Unsecured Claims..................................... 26
            7.    Class 7 – Intercompany Claims ............................................ 27
            8.    Class 8 – Intercompany Interests .......................................... 27
            9.    Class 9 – Existing Series A-0 Preferred Units ........................ 27
           10.    Class 10 – Existing Series A-1 Preferred Units ...................... 27
           11.    Class 11 – Existing Series A-2 Preferred Units ...................... 28
           12.    Class 12 – Existing Series B Preferred Units.......................... 28
           13.    Class 13 – Existing Series C Preferred Units.......................... 28
           14.    Class 14 – Existing Series A Common Units .......................... 29
           15.    Class 15 – Existing Series B Common Units .......................... 29
    C.    Special Provision Governing Unimpaired Claims, Executory Contracts and Unexpired Leases ...................................................................... 29
    D.    Intercompany Interests..................................................................... 29

ARTICLE IV ACCEPTANCE OR REJECTION OF PLAN .......................................................... 30

    A.    Voting Classes ................................................................................................. 30
    B.    Presumed Acceptance of the Plan .................................................................... 30
    C.    Confirmation Pursuant to Section 1129(a)(10) of the Bankruptcy Code ........... 30
    D.    Elimination of Vacant Classes ......................................................................... 30
    E.    Subordinated Claims ........................................................................................ 30

ARTICLE V MEANS FOR IMPLEMENTATION OF PLAN ................................................... 31

    A.    General Settlement of Claims and Interests ...................................................... 31
    B.    Restructuring Transactions ............................................................................... 31
    C.    Sources of Consideration for Plan Distributions ............................................... 32
        1.    Cash ..................................................................................................... 32
        2.    Exit First Lien Facility ......................................................................... 32
        3.    The AST Transaction ........................................................................... 33
        4.    New Preferred Units ............................................................................ 33
        5.    Boeing Order ....................................................................................... 33
    D.    Corporate Existence ......................................................................................... 34
    E.    Vesting of Assets in the Reorganized Debtors .................................................. 34
    F.    Cancellation of Loans, Securities, and Agreements .......................................... 34
    G.    Corporate and Other Entity Action ................................................................... 36
    H.    New Organizational Documents ....................................................................... 37
    I.    Directors and Officers of Reorganized Debtors ................................................ 37
        1.    Reorganized Parent Board .................................................................... 38
        2.    Officers of Reorganized Debtors .......................................................... 38
        3.    New Subsidiary Boards ........................................................................ 38
    J.    Exemption from Securities Laws ...................................................................... 38
    K.    Effectuating Documents; Further Transactions ................................................ 38
    L.    Section 1146 Exemption .................................................................................. 39
    M.    Preservation of Causes of Action ..................................................................... 39
    N.    Procedures for Treating Disputed Claims and Interests Under the Plan ............. 40
        1.    Allowance of Claims ............................................................................ 40
        2.    Prosecution of Objections to Claims or Interests .................................. 40
        3.    Estimation of Claims and Interests ....................................................... 41
        4.    Disallowance of Claims ........................................................................ 42
        5.    Distributions to Holders of Disputed Claims ........................................ 42

ARTICLE VI TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
        LEASES .......................................................................................................... 43

    A.    Assumption of Executory Contracts and Unexpired Leases .............................. 43
    B.    Cure of Defaults for Executory Contracts and Unexpired Leases Assumed ........ 43
    C.    Insurance Policies ............................................................................................ 44
        1.    Insurance Policies ................................................................................ 44
        2.    Directors and Officers Insurance Policies ............................................. 45
    D.    Indemnification Provisions ............................................................................... 46

E.      Modifications, Amendments, Supplements, Restatements, or Other Agreements ...................................................................................... 46
F.      Reservation of Rights ................................................................................. 46
G.     Contracts and Leases Entered into after Petition Date .......................... 47
H.     Rejection Damages Claims ........................................................................ 47
I.       Compensation and Benefits Programs ..................................................... 47

ARTICLE VII PROVISIONS GOVERNING DISTRIBUTIONS ............................................. 47

A.      Timing and Calculation of Amounts to Be Distributed ........................ 47
B.      Disbursing Agent ....................................................................................... 48
C.      Rights and Powers of Disbursing Agent ................................................. 48
      1.     Powers of the Disbursing Agent ..................................................... 48
      2.     Incurred Expenses ........................................................................... 48
D.      Delivery of Distributions and Undeliverable or Unclaimed Distributions .......... 48
      1.     Delivery of Distributions in General.............................................. 48
      2.     Delivery of Distributions to First Lien Trustee............................. 49
      3.     Delivery of Distributions to Second Lien Trustee ....................... 49
      4.     Delivery of Distributions to First Lien Agent .............................. 50
      5.     Delivery of Distributions to 1.5 Lien Agent ................................. 50
      6.     Delivery of Distributions on DIP Claims....................................... 50
      7.     Minimum Distributions.................................................................... 50
      8.     Undeliverable Distributions and Unclaimed Property ................. 51
E.      Compliance with Tax Requirements ......................................................... 51
F.      No Postpetition Interest on Claims and Interests ................................... 51
G.     Setoffs and Recoupment ........................................................................... 52
H.     Claims Paid or Payable by Third Parties ................................................. 52
      1.     Claims Paid by Third Parties .......................................................... 52
      2.     Claims Payable by Third Parties.................................................... 53
      3.     Applicability of Insurance Policies ................................................ 53
I.       Allocation Between Principal and Accrued Interest .............................. 53

ARTICLE VIII SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ................................................................................................ 53

A.      Compromise and Settlement ..................................................................... 53
B.      Discharge of Claims and Termination of Interests ................................ 54
C.      Release of Liens .......................................................................................... 54
D.      Releases of Released Parties ..................................................................... 55
      1.     Releases by the Debtors .................................................................. 55
      2.     Releases by Holders of Claims or Interests .................................. 56
E.      Exculpation ................................................................................................. 57
F.      Injunction .................................................................................................... 58

ARTICLE IX CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE ................... 58

A.      Conditions to Effective Date..................................................................... 58

B.        Waiver of Conditions ................................................................................. 60

ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN ................. 61

A.        Modification and Amendments.................................................................... 61
B.        Effect of Confirmation on Modifications ................................................... 61
C.        Revocation or Withdrawal of Plan.............................................................. 61

ARTICLE XI RETENTION OF JURISDICTION ........................................................ 62

ARTICLE XII MISCELLANEOUS PROVISIONS .................................................... 64

A.        Immediate Binding Effect........................................................................... 64
B.        Additional Documents ................................................................................ 65
C.        Payment of Statutory Fees ......................................................................... 65
D.        Reservation of Rights.................................................................................. 65
E.        Successors and Assigns............................................................................... 66
F.        Notices ........................................................................................................ 66
G.        Term of Injunctions or Stays...................................................................... 68
H.        Entire Agreement ....................................................................................... 69
I.        Exhibits ....................................................................................................... 69
J.        Nonseverability of Plan Provisions ............................................................ 69
K.        Votes Solicited in Good Faith..................................................................... 69
L.        Closing of Chapter 11 Cases ...................................................................... 70
M.        Document Retention ................................................................................... 70
N.        Conflicts...................................................................................................... 70
O.        Restructuring Expenses .............................................................................. 70
P.        Agents/Trustees Expenses .......................................................................... 70

**Introduction**

Ligado Networks LLC ("Ligado"); ATC Technologies, LLC; Ligado Networks (Canada) Inc.; Ligado Networks Build LLC; Ligado Networks Corp.; Ligado Networks Finance LLC; Ligado Networks Holdings (Canada) Inc.; Ligado Networks Inc. of Virginia; Ligado Networks Subsidiary LLC; One Dot Six LLC; and One Dot Six TVCC LLC (each a "Debtor" and, collectively, the "Debtors"), jointly propose this plan of reorganization, as it may be amended, supplemented, restated, or modified from time to time (together with the Plan Supplement, the "Plan"), for the resolution of certain outstanding Claims against, and Interests in, the Debtors, pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended and as in effect on the Confirmation Date or otherwise applicable to the Chapter 11 Cases, the "Bankruptcy Code"). Capitalized terms used and not otherwise defined shall have the meanings ascribed to such terms in Article I.A.

Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. The classifications of Claims and Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan does not contemplate substantive consolidation of any of the Debtors.

Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan.

ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms*

As used in the Plan, capitalized terms have the meanings set forth below:

1.    "*1.5 Lien Administrative Agent*" means U.S. Bank Trust Company, National Association, as administrative agent under the 1.5 Lien Credit Agreement.

2.    "*1.5 Lien Agents*" means the 1.5 Lien Administrative Agent and the 1.5 Lien Collateral Agent.

3.    "*1.5 Lien Collateral Agent*" means U.S. Bank Trust Company, National Association, as collateral agent under the 1.5 Lien Term Loan Documents.

4.　　"*1.5 Lien Credit Agreement*" means that certain 1.5 Lien Term Loan Agreement, by and among Ligado, as borrower, the guarantors party thereto, the 1.5 Lien Lenders, and the 1.5 Lien Agents, dated as of May 27, 2020, as amended, modified, or supplemented from time to time.

5.　　"*1.5 Lien Lenders*" means the financial institutions party from time to time to the 1.5 Lien Credit Agreement as lenders, issuing banks, or bank product providers, in their respective capacities as such.

6.　　"*1.5 Lien Term Loan Claims*" means all Claims arising on account of the 1.5 Lien Term Loan Facility or pursuant to or secured by the 1.5 Lien Credit Agreement or the other 1.5 Lien Loan Documents.

7.　　"*1.5 Lien Term Loan Documents*" means the documents that govern the 1.5 Lien Term Loan Facility, including the 1.5 Lien Credit Agreement.

8.　　"*1.5 Lien Term Loan Facility*" means the 1.5 lien term loan facility made available by the 1.5 Lien Lenders to the Debtors pursuant to and subject to the terms and conditions of the 1.5 Lien Credit Agreement.

9.　　"*Ad Hoc Crossholder Group*" means that certain *ad hoc* group of First Lien Noteholders, First Lien Lenders, 1.5 Lien Lenders, and Second Lien Noteholders represented by the Ad Hoc Crossholder Group Advisors.

10.　　"*Ad Hoc Crossholder Group Advisors*" means (a) Kirkland & Ellis LLP, as counsel to the Ad Hoc Crossholder Group and (b) any local counsel, and any other professionals and/or consultants for the Ad Hoc Crossholder Group.

11.　　"*Ad Hoc First Lien Group*" means that certain *ad hoc* group of First Lien Noteholders and First Lien Lenders represented by the Ad Hoc First Lien Group Advisors.

12.　　"*Ad Hoc First Lien Group Advisors*" means (a) Sidley Austin LLP, as counsel to the Ad Hoc First Lien Group, (b) Guggenheim Securities, LLC, as financial advisor, and (c) any local counsel, and any other professionals and/or consultants for the Ad Hoc First Lien Group.

13.　　"*Administrative Claim*" means any cost or expense of administration of the Chapter 11 Cases of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) Allowed Professional Fee Claims; (c) DIP Claims; (d) the Restructuring Expenses; and (e) all fees and charges assessed against the Estates pursuant to chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

14.　　"*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Entity that is not a Debtor, the term Affiliate shall apply to such Entity as if the Entity were a Debtor.

15.     "*Agents/Trustees*" means, collectively, the First Lien Trustee, the First Lien Agent, the 1.5 Lien Agents, and the Second Lien Trustees.

16.     "*Allowed*" means, with respect to any Claim or Interest, the extent to which such Claim or Interest is not Disputed, including Claims or Interests:  (a) for which a proof of Claim or has been timely filed in accordance with an order of the Bankruptcy Court and as to which no objection to allowance thereof has been timely interposed within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or order of the Bankruptcy Court; (b) that have been listed by the Debtors in their Schedules, if any are filed, as liquidated in a specified amount and is not disputed or contingent and for which no contrary proof of Claim has been timely filed; or (c) that is otherwise expressly Allowed pursuant to the terms of this Plan or a DIP Order or other Final Order of the Bankruptcy Court.  "Allow" and "Allowing" shall have correlative meanings.  Notwithstanding anything to the contrary herein, the Reorganized Debtors shall retain all claims and defenses with respect to Allowed Claims that are reinstated or otherwise Unimpaired pursuant to the Plan.

17.     "*Article*" refers to an article of the Plan.

18.     "*AST*" means, collectively, AST SpaceMobile, Inc., AST & Science, LLC, and Spectrum USA I, LLC.

19.     "*AST Advisors*" means Freshfields US LLP as counsel to AST.

20.     "*AST Definitive Agreements*" means the documents that govern the AST Transaction as the same may be amended or modified from time to time in accordance with their terms and the AST Definitive Agreements Order.

21.     "*AST Definitive Agreements Order*" means the Bankruptcy Court order authorizing entry into the AST Transaction by the Debtors, including the Mediated Agreement, which is attached as Exhibit 1 thereto.

22.     "*AST Transaction*" means the transaction provided for in the AST Definitive Agreements.

23.     "*Avoidance Actions*" means any and all actual or potential claims and Causes of Action to avoid a transfer of property from, or an obligation incurred by, one or more of the Debtors, that arise under chapter 5 of the Bankruptcy Code, including actions or remedies under sections 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code or under similar or related state, federal, or foreign statutes or common law, including fraudulent transfer laws.

24.     "*Bankruptcy Code*" has the meaning specified in the Introduction hereto.

25.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware or any other court having jurisdiction over the Chapter 11 Cases.

26.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as amended from time to time and as applicable to the Chapter 11 Cases, promulgated pursuant to 28 U.S.C. § 2075 and the general, local, and chamber rules of the Bankruptcy Court.

27.    "*Boeing Order*" means the *Order Approving the Stipulation Between Boeing and the Debtors (I) Resolving the Motion to Compel and (II) Establishing Schedule Regarding Boeing Cure Dispute*, dated July 28, 2025 [Docket No. 766], which shall continue in force following entry of the Confirmation Order.

28.    "*Break-Up Fee Order*" means the *Order Authorizing Payment of the AST Transaction Break-Up Fee and Break-Up Reimbursements*, dated January 27, 2025 [Docket No. 144] entered on the docket of the Chapter 11 Cases by the Bankruptcy Court approving the Break-Up Fee and the Break-Up Reimbursements (each as defined in the *Debtors' Motion for Entry of an Order Authorizing Payment of the AST Transaction Break-Up Fee and Break-Up Reimbursements*, dated January 6, 2025 [Docket No. 61]), which shall survive entry of the Confirmation Order.

29.    "*Business Day*" means any day other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or day on which commercial banks in New York are required or authorized by law to remain closed.

30.    "*Canadian Court*" means the Ontario Superior Court of Justice (Commercial List) having jurisdiction over the Recognition Proceedings.

31.    "*Cash*" means cash and cash equivalents in U.S. dollars.

32.    "*Cause of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, action, remedy, lien, indemnity, guaranty, suit, obligation, liability, loss, debt, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  For the avoidance of doubt, "Cause of Action" also includes:  (a) any right of setoff or counterclaim and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, including, but not limited to, Avoidance Actions; (d) any counterclaim or defense, including fraud, mistake, duress, usury, recoupment, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer or similar claim.

33.    "*CCAA*" means the Companies' Creditors Arrangement Act (Canada).

34.    "*Chapter 11 Case(s)*" means (a) when used with reference to a particular Debtor, the chapter 11 case filed for that Debtor under chapter 11 of the Bankruptcy Code in the

Bankruptcy Court and (b) when used with reference to all Debtors, the jointly administered chapter 11 cases for all of the Debtors.

35.     "*claim*" means any "claim," as such term is defined in section 101(5) of the Bankruptcy Code, and "*Claim*" means a claim as such term is defined in section 101(5) of the Bankruptcy Code against a Debtor.

36.     "*Claims and Noticing Agent*" means Omni Agent Solutions, Inc. in its capacity as the claims and noticing agent appointed in these cases.

37.     "*Class*" means a class of Claims or Interests designated in Article III of the Plan, pursuant to section 1123(a)(1) of the Bankruptcy Code.

38.     "*Claims Bar Date*" means unless otherwise provided in another order of the Bankruptcy Court, means the applicable bar dates set forth in the *Order Establishing (I) Bar Dates for Filing Proofs of Claim, Including Section 503(B)(9) Claims, (II) An Amended Schedules Bar Date and Rejection Damages Bar Date, (III) An initial Administrative Claims Bar Date, (IV) Approving the Form and Manner of Filing of Claims, (V) Approving Notices of Bar Dates, and (VI) Granting Related Relief* [Docket No. 340].

39.     "*Claims Objection Bar Date*" for all Claims, including 503(b)(9) Claims and other Administrative Claims, means, the later of: (a) 180 days after the Effective Date and (b) such other deadline for objecting to particular Claim(s) as may be established by the Plan, the Confirmation Order, or another order of the Bankruptcy Court.

40.     "*Compensation and Benefits Programs*" means all employment and severance agreements and policies, and all employment, wages, compensation, and benefit plans and policies, workers' compensation programs, savings plans, retirement plans, deferred compensation plans, nonqualified deferred compensation plans, supplemental executive retirement plans, healthcare plans, disability plans, severance benefit plans, bonus, commission, incentive and retention plans, programs, and payments, life and accidental death and dismemberment insurance plans and programs, for all employees of the Debtors, and all amendments and modifications thereto, applicable to the Debtors' employees, former employees, retirees, and non-employee directors and managers, in each case existing with the Debtors as of immediately prior to the Effective Date.

41.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

42.     "*Confirmation Date*" means the date upon which Confirmation occurs.

43.     "*Confirmation Order*" means the Bankruptcy Court order confirming the Plan pursuant to section 1129 of the Bankruptcy Code and approving the Disclosure Statement.

44.     "*Consenting Stakeholders*" shall have the meaning ascribed to such term in the Restructuring Support Agreement.

45.     "*Consummation*" means the occurrence of the Effective Date.

46.    "*Cooperation Agreement Litigation*" means the complaint filed in New York County Supreme Court under the caption Ligado Networks LLC, and Ligado Networks (Canada) Inc., v. Inmarsat Global Limited, on March 19, 2025, and the claims asserted therein and any other current or future litigation that includes substantially similar claims against Inmarsat or any of its Affiliates.

47.    "*D&O Policy*" means any Insurance Policy (including any "tail policy") issued or providing coverage at any time to any of the Debtors (and any of their predecessors) for certain liabilities of the Debtors and/or their current or former directors', members', trustees', officers', managers', and/or employees' liability and all agreements, documents, or instruments relating thereto maintained by the Debtors and in effect or purchased on or after the Petition Date.

48.    "*Debtor*" or "*Debtors*" have the meaning specified in the Introduction hereto.

49.    "*Definitive Documents*" shall have the meaning ascribed to such term in the Restructuring Support Agreement and shall include all documentation in connection with the Backstop Commitment (as such term is defined in the AST Definitive Agreements).  The Definitive Documents shall contain terms, conditions, representations, warranties, and covenants consistent in all material respects with the Plan and the Restructuring Support Agreement, and shall be subject to the consent rights of the Required Consenting Creditors and AST, as set forth in the Restructuring Support Agreement and the AST Definitive Agreements Order (as applicable).

50.    "*DIP Amendment Order*" means the *Order Authorizing the Debtors to (I) Amend the DIP Credit Agreement and (II) Enter into the Letter Agreement and AST Power of Attorney* [Docket No. [●]].

51.    U.S. Bank Trust Company, National Association, as administrative agent and collateral agent under the DIP Facility.

52.    "*DIP Agent*" means U.S. Bank Trust Company, National Association, as administrative agent and collateral agent under the DIP Facility.

53.    "*DIP Claims*" means all Claims against any Debtor arising on account of the DIP Facility or pursuant to or secured by the DIP Documents, including DIP New Money Claims and the DIP Roll-Up Claims.

54.    "*DIP Credit Agreement*" means that certain Senior Secured Super-Priority Debtor-In-Possession Loan Agreement, dated as of January 5, 2025, among Ligado, the other Debtors, the DIP Lenders and the DIP Agent, which governs the DIP Facility (including any amendments or supplements thereto).

55.    "*DIP Documents*" means the documents that govern the DIP Facility, including the DIP Credit Agreement.

56.    "*DIP Facility*" means the DIP New Money Loans and the DIP Roll-Up Loans.

57.    "*DIP Lenders*" means the lenders party to the DIP Credit Agreement from time to time.

58.    "*DIP Loans*" means the superpriority senior secured loans under the DIP Facility, including the DIP New Money Loans and the DIP Roll-Up Loans.

59.    "*DIP New Money Claim*" means any Claim derived from or based upon the DIP New Money Loans pursuant to the DIP Documents.

60.    "*DIP New Money Loans*" means the new money superpriority senior secured term loans in an aggregate initial principal amount of up to $441,999,891 (together with any applicable capitalized amount) extended to the Debtors pursuant to the DIP Credit Agreement and DIP Orders and any incremental amounts (together with any applicable capitalized amounts) provided pursuant to the DIP Credit Agreement and DIP Orders.

61.    "*DIP Roll-Up Claim*" means any Claim derived from or based upon the DIP Roll-Up Loans pursuant to the DIP Documents.

62.    "*DIP Roll-Up Loans*" means, collectively, the superpriority senior secured DIP Loans resulting from the "roll-up" of the First Lien Notes and/or First Lien Term Loans, in an initial principal amount of $466,349,014.27 (together with any applicable capitalized amount) and any incremental amounts (together with any applicable capitalized amounts), pursuant to the DIP Credit Agreement and DIP Orders.

63.    "*DIP Orders*" means the Interim DIP Order, the Final DIP Order, and the DIP Amendment Order (including any amendments or supplemental orders in connection with each of the foregoing).

64.    "*Director*" means a member of the board of directors or board of managers, as applicable, of Reorganized Parent.

65.    "*Disbursing Agent*" means one or more of the Reorganized Debtors and/or any other Entity or Entities selected by the Debtors or the Reorganized Debtors to make or facilitate distributions contemplated under the Plan.

66.    "*Disclosure Statement*" means that certain *Disclosure Statement for the Joint Chapter 11 Plan of Ligado Networks LLC and its Affiliated Debtors and Debtors in Possession*, dated June 24, 2025, as it may be amended, supplemented, restated, or modified from time to time, including all exhibits and schedules thereto and references therein, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and as approved by the Bankruptcy Court.

67.    "*Disputed*" means, with respect to a Claim, (a) that such Claim is disputed under Article V of the Plan or as to which the Debtors have interposed and not withdrawn an objection or request for estimation that has not been determined by a Final Order, (b) that proof of such Claim was required to be filed by order of the Bankruptcy Court but was not timely or properly filed, (c) that such Claim is listed in the Schedules, if any are filed, as unliquidated, contingent, or

disputed, and that no request for payment or proof of such Claim has been filed, or (d) that such Claim is otherwise disputed by any of the Debtors or Reorganized Debtors in accordance with applicable law or contract, which dispute has not been withdrawn, resolved, or overruled by a Final Order.  To the extent the Debtors dispute only the amount of a Claim, such Claim shall be deemed Allowed in the amount the Debtors do not dispute, if any, and Disputed as to the balance of such Claim.

68.    "*Distribution Record Date*" means the Effective Date or such earlier date as determined by the Reorganized Debtors.

69.    "*DTC*" means The Depository Trust Company or any successor thereto.

70.    "*Effective Date*" means the date selected by the Debtors that is the first Business Day after the Confirmation Date, on which all conditions to the Effective Date specified in Article IX.A have been satisfied (or waived in accordance with Article IX.B).

71.    "*Employment Agreement*" means any new and/or existing employment agreement or letter, indemnification agreement, severance agreement, or other agreement entered into with the Debtors' current and former officers and other employees by the Reorganized Debtors.

72.    "*Entity*" means any "entity," as such term is defined in section 101(15) of the Bankruptcy Code.

73.    "*Estate*" means, with respect to a particular Debtor, the estate created for such Debtor upon commencement of its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code, and the "*Estates*" means every Debtors' Estate, collectively.

74.    "*Exculpated Parties*" means, collectively, and in each case in their capacity as such, (i) the Debtors, (ii) the Reorganized Debtors, and (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), such Persons' current and former officers and directors, principals, members, partners, managers and Professionals, each in their respective capacities as such who served as of the Petition Date or during these Chapter 11 Cases.

75.    "*Executory Contract*" means a contract to which one or more of the Debtors are party, other than an Unexpired Lease, which contract is subject to assumption or rejection in accordance with section 365 of the Bankruptcy Code.

76.    "*Existing Common Units*" means, collectively, the Existing Series A Common Units and the Existing Series B Common Units.

77.    "*Existing Operating Agreement*" means that certain Amended and Restated Operating Agreement of Ligado Networks LLC, dated as of October 23, 2020, as amended on August 15, 2021 and March 7, 2024.

78.    "*Existing Series A Common Units*" means those certain Series A Common Units issued pursuant to the Existing Operating Agreement.

79.    "*Existing Series A-0 Preferred Units*" means those certain Series A-0 Preferred Units issued pursuant to the Existing Operating Agreement.

80.    "*Existing Series A-1 Preferred Units*" means those certain Series A-1 Preferred Units issued pursuant to the Existing Operating Agreement.

81.    "*Existing Series A-2 Preferred Units*" means those certain Series A-2 Preferred Units issued pursuant to the Existing Operating Agreement.

82.    "*Existing Series B Common Units*" means those certain Series B Common Units issued pursuant to the Existing Operating Agreement.

83.    "*Existing Series B Preferred Units*" means those certain Series B Preferred Units issued pursuant to the Existing Operating Agreement.

84.    "*Existing Series C Preferred Units*" means those certain Series C Preferred Units issued pursuant to the Existing Operating Agreement.

85.    "*Exit Debt Parties*" means, collectively, the Exit First Lien Facility Agent and the Exit First Lien Facility Lenders.

86.    "*Exit First Lien Facility*" means that certain first lien term loan credit facility to be entered into by the Reorganized Debtors on the Effective Date.

87.    "*Exit First Lien Facility Agent*" means the administrative and collateral agent, in its capacities as such, under the Exit First Lien Facility.

88.    "*Exit First Lien Facility Credit Agreement*" means the credit agreement governing the Exit First Lien Facility.

89.    "*Exit First Lien Facility Documents*" means the documents that govern the Exit First Lien Facility, including the Exit First Lien Facility Credit Agreement.

90.    "*Exit First Lien Facility Lenders*" means the banks, financial institutions, and the lenders party to the Exit First Lien Facility Documents.

91.    "*Exit First Lien Loans*" means the term loans made under the Exit First Lien Facility.

92.    "*FCC*" means the Federal Communications Commission.

93.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court.

94.    "*Final DIP Order(s)*" means the Bankruptcy Court order(s) authorizing use of cash collateral and the DIP Facility on a final basis (including any amendments or supplemental orders in connection therewith).

95.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction (including the Canadian Court) with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, seek certiorari, or move for a new trial, re-argument, or rehearing has expired and no appeal, petition for certiorari, or motion for a new trial, re-argument, or rehearing has been timely filed, or (b) any appeal, petition for certiorari, or motion for a new trial, re-argument, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, petitioned, or moved.

96.    "*First Lien Agent*" means U.S. Bank National Association, as administrative and collateral agent under the First Lien Credit Agreement.

97.    "*First Lien Claims*" means, collectively, the First Lien Term Loan Claims and the First Lien Notes Claims.

98.    "*First Lien Credit Agreement*" means that certain First Lien Loan Agreement, dated as of December 23, 2022, by and among Ligado, as borrower, the guarantors party thereto, the First Lien Lenders, and the First Lien Agent, as amended, modified, or supplemented from time to time.

99.    "*First Lien First Out Term Loans*" means the term loans made under the First Lien Term Loan Facility that constitute "First Out Loans" (as defined therein).

100.    "*First Lien First Out Term Loan Claims*" means any Claim derived from or based upon the First Lien First Out Term Loans.

101.    "*First Lien Indenture*" means that certain Indenture, dated as of October 23, 2020, by and among Ligado, as issuer, the guarantors party thereto, and the First Lien Trustee, as amended, modified, or supplemented from time to time.

102.    "*First Lien Lenders*" means the financial institutions party from time to time to the First Lien Credit Agreement as lenders, issuing banks, or bank product providers, in their respective capacities as such.

103.    "*First Lien Loan Documents*" means the documents that govern the First Lien Term Loan Facility, including the First Lien Credit Agreement.

104.    "*First Lien Loan PIK Interest*" has the meaning set forth in the First Lien Credit Agreement.

105.    "*First Lien Noteholders*" means the holders of the First Lien Notes.

106.    "*First Lien Notes*" means those certain 15.5% PIK Senior Secured First Lien Notes due 2023 issued pursuant to the First Lien Indenture.

107.    "*First Lien Notes Claims*" means any Claim on account of the First Lien Notes and payable under the First Lien Indenture.

108.    "*First Lien Notes Documents*" means the documents that govern the First Lien Notes, including the First Lien Indenture.

109.    "*First Lien Term Loan Claims*" means all Claims, other than the First Lien First Out Term Loan Claims, arising on account of the First Lien Term Loan Facility or pursuant to or secured by the First Lien Credit Agreement or the other First Lien Loan Documents.

110.    "*First Lien Term Loan Facility*" means the senior secured loan facility made available by the First Lien Lenders to the Debtors pursuant to and subject to the terms and conditions of the First Lien Credit Agreement.

111.    "*First Lien Term Loans*" means all term loans made under the First Lien Term Loan Facility.

112.    "*First Lien Trustee*" means U.S. Bank National Association, as indenture and collateral trustee under the First Lien Notes Documents.

113.    "*Foreign Representative*" means the entity authorized by the Bankruptcy Court to act as the foreign representative for the Debtors in the Recognition Proceedings.

114.    "*General Administrative Claim*" means any Administrative Claim other than a Professional Fee Claim, a DIP Claim, or a Claim for fees and charges assessed against the Estates under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930.

115.    "*General Unsecured Claim*" means any Unsecured Claim, other than an Intercompany Claim, against any Debtor.

116.    "*Governmental Unit*" means any "governmental unit," as such term is defined in section 101(27) of the Bankruptcy Code.

117.    "*Impaired*" means, with respect to a Claim, Interest, or a Class of Claims or Interests, "impaired" within the meaning of such term in section 1124 of the Bankruptcy Code.

118.    "*Incentive Plan*" means the Incentive Plan as defined in the Existing Operating Agreement.

119.    "*Indemnification Provisions*" means each of the Debtors' indemnification provisions in effect as of the Petition Date, whether in the Debtors' memoranda and articles of association, bylaws, certificates of incorporation, other formation documents, board resolutions, management or indemnification agreements, employment contracts, or otherwise providing a basis for any obligation of a Debtor to indemnify, defend, reimburse, or limit the liability of, or to advances fees and expenses to, any of the Debtors' current and former directors, officers, equity holders, managers, members, employees, accountants, investment bankers, attorneys, other professionals, and professionals of the Debtors, and such current and former directors', officers', and managers' respective Affiliates, each of the foregoing solely in their capacity as such.

120.    "*Inmarsat*" means Inmarsat Global Limited.

11

121. "*Inmarsat Cooperation Agreement*" means the Amended and Restated Cooperation Agreement, dated as of August 6, 2010, between the Debtors and Inmarsat Global Limited (as further amended and restated from time to time).

122. "*Insurer*" means any insurance company or third party administrator that issued or entered into an Insurance Policy and any respective predecessors and/or affiliates thereof.

123. "*Insurance Policies*" means all insurance policies that have been issued (or provide coverage) at any time to the Debtors or any of their predecessors, and all agreements, documents, or instruments relating thereto, including any D&O Policies, and workers' compensation.

124. "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

125. "*Intercompany Interest*" mean any Interest held by a Debtor in another Debtor.

126. "*Interest*" means any equity interests in the Debtors, including (a) all ordinary shares, units, common stock, preferred stock, membership interest, partnership interest or other instrument, evidencing any fixed or contingent ownership interest in the Debtors, whether or not transferable, including any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtors, (b) the rights of any Person or Entity to purchase or demand the issuance of any of the foregoing, including (i) conversion, exchange, voting participation, and dividend rights, (ii) liquidation preferences, (iii) options, warrants, and call and put rights, and (iv) share-appreciation rights, in each case, that existed immediately before the Effective Date, and (c) including all other "equity interests" (as defined in section 101(16) of the Bankruptcy Code) in the Debtors. "Interest" includes Existing Common Units, Existing Series A-0 Preferred Units, Existing Series A-1 Preferred Units, Existing Series A-2 Preferred Units, Existing Series B Preferred Units, and Existing Series C Preferred Units.

127. "*Interim DIP Order*" means the Bankruptcy Court order authorizing use of cash collateral and the DIP Facility on an interim basis pending entry of the Final DIP Order.

128. "*Interim Compensation Order*" means the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Retained Professionals.

129. "*ISED*" means Innovation, Science and Economic Development (Canada).

130. "*Lien*" means a "lien" as such term is defined in section 101(37) of the Bankruptcy Code.

131. "*Ligado Takings Case*" means the case in the U.S. Federal Court of Claims under the caption *Ligado Networks LLC v. USA* (Case No. 23-CV-01797-EJD).

132. "*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

12

133.   "*Management Incentive Plan*" means the new management incentive plan of the Reorganized Debtors, the terms of which shall be included in the Plan Supplement and shall be acceptable to the Required Consenting Creditors.

134.   "*New Boards*" means, collectively, the Reorganized Parent Board and New Subsidiary Boards.

135.   "*New Organizational Documents*" means the new bylaws, certificates of incorporation, certificates of formation, limited liability company agreements, operating agreements, including the Second Amended and Restated Operating Agreement, certificates of limited partnership, agreements of limited partnership, or such other organizational documents of the Reorganized Debtors, the forms of which shall be included in the Plan Supplement and shall be in form and substance acceptable to the Required Consenting Creditors.

136.   "*New Preferred Units*" means, collectively, the New Series A-1 Preferred Units, the New Series A-2 Preferred Units, the New Series A-3 Preferred Units, the New Series B-0 Preferred Units, the New Series B-1 Preferred Units, the New Series B-2 Preferred Units, the New Series C Preferred Units, and the New Series D Preferred Units.

137.   "*New Series A-1 Preferred Units*" means the new "Series A-1 Preferred Units" of Reorganized Parent to be authorized, issued, and outstanding on and after the Effective Date pursuant to the terms and conditions of the Second Amended and Restated Operating Agreement.

138.   "*New Series A-2 Preferred Units*" means the new "Series A-2 Preferred Units" of Reorganized Parent to be authorized, issued, and outstanding on and after the Effective Date pursuant to the terms and conditions of the Second Amended and Restated Operating Agreement.

139.   "*New Series A-3 Preferred Units*" means the new "Series A-3 Preferred Units" of Reorganized Parent to be authorized, issued, and outstanding on and after the Effective Date pursuant to the terms and conditions of the Second Amended and Restated Operating Agreement.

140.   "*New Series B-0 Preferred Units*" means the new "Series B-0 Preferred Units" of Reorganized Parent to be authorized, issued, and outstanding on and after the Effective Date pursuant to the terms and conditions of the Second Amended and Restated Operating Agreement.

141.   "*New Series B-1 Preferred Units*" means the new "Series B-1 Preferred Units" of Reorganized Parent to be authorized, issued, and outstanding on and after the Effective Date pursuant to the terms and conditions of the Second Amended and Restated Operating Agreement.

142.   "*New Series B-2 Preferred Units*" means the new "Series B-2 Preferred Units" of Reorganized Parent to be authorized, issued, and outstanding on and after the Effective Date pursuant to the terms and conditions of the Second Amended and Restated Operating Agreement.

143.   "*New Series C Preferred Units*" means the new "Series C Preferred Units" of Reorganized Parent to be authorized, issued, and outstanding on and after the Effective Date pursuant to the terms and conditions of the Second Amended and Restated Operating Agreement.

144.    "*New Series D Preferred Units*" means the new "Series D Preferred Units" of Reorganized Parent to be authorized, issued, and outstanding on and after the Effective Date pursuant to the terms and conditions of the Second Amended and Restated Operating Agreement.

145.    "*New Subsidiary Boards*" means the initial board of directors or managers (as applicable) for the Reorganized Debtors (other than the Reorganized Parent), as appointed pursuant to Article V.I.

146.    "*Notice of Entry of Confirmation Order*" means a notice to be sent by the Reorganized Debtors following the entry of the Confirmation Order stating that the Bankruptcy Court has confirmed the Plan and providing such other information as required by the Confirmation Order.

147.    "*Other Secured Claim*" means any Secured Claim against any Debtor other than an Administrative Claim, DIP Claim, Priority Claim, First Lien First Out Term Loan Claim, First Lien Claim, 1.5 Lien Term Loan Claim, or Second Lien Notes Claim.

148.    "*Person*" means any individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited partnership, trust, estate, unincorporated organization, Governmental Unit, or other Entity.

149.    "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

150.    "*Plan*" has the meaning specified in the Introduction hereto.

151.    "*Plan Supplement*" means the compilation of documents (or forms thereof), schedules, and exhibits to the Plan to be filed at least seven days prior to the deadline to object to Confirmation of the Plan or such later date as may be approved by the Bankruptcy Court, as each may be amended, supplemented, or modified from time to time prior to the occurrence of the Effective Date in accordance with the Plan, Restructuring Support Agreement, Bankruptcy Code, and Bankruptcy Rules, and which may include, as applicable: (a) the New Organizational Documents; (b) a list of the members of the New Boards (to the extent known); (c) the Exit First Lien Facility Documents; (d) the Restructuring Transactions Memorandum, (e) the Schedule of Retained Causes of Action; (f) the Management Incentive Plan, (g) the Schedule of Rejected Executory Contracts and Unexpired Leases (if any); and (g) such other documents as are necessary or advisable to implement the Restructuring contemplated by the Restructuring Support Agreement and the Plan, each of which shall be consistent with the Restructuring Support Agreement and subject to the consent of the Required Consenting Creditors.

152.    "*Priority Claim*" means any Priority Non-Tax Claim or Priority Tax Claim.

153.    "*Priority Non-Tax Claim*" means any Claim against any Debtor entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than an Administrative Claim, DIP Claim, or Priority Tax Claim.

154.    "*Priority Tax Claim*" means any Claim of a Governmental Unit against any Debtor entitled to priority pursuant to section 502(i) or 507(a)(8) of the Bankruptcy Code.

155.    "*Pro Rata*" means the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Interests in that Class.

156.    "*Professional*" means an Entity:  (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

157.    "*Professional Fee Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

158.    "*Professional Fee Escrow Account*" means an interest-bearing account in an amount equal to the total Professional Fee Reserve Amount funded by the Reorganized Debtors on the Effective Date.

159.    "*Professional Fee Reserve Amount*" means the aggregate amount of Professional Fee Claims that the Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Confirmation Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II.B of this Plan.

160.    "*Recognition Order*" means the recognition order entered by the Canadian Court in connection with the Restructuring and the Recognition Proceedings.

161.    "*Recognition Proceedings*" means the proceedings commenced in the Canadian Court by the Foreign Representative on behalf of the Debtors pursuant to Part IV of the CCAA.

162.    "*Released Parties*" means, collectively, and in each case in their capacity as such, (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Consenting Stakeholders, (iv) each of the Agents/Trustees, (v) the DIP Agent and the DIP Lenders, (vi) the Exit Debt Parties, (vii) AST, (viii) Viasat (subject to the AST Definitive Agreements Order), and (ix) each current and former affiliate of each entity in clause (i) through (viii), each of such party's current and former predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees; *provided*, *however*, that any holder of a Claim or Interest that (x) files an objection to the Plan or (y) opts out of the releases set forth in Article VIIID.2, as applicable, shall not be a "Released Party."

163.    "*Releasing Parties*" means, collectively, and in each case in their capacity as such, (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Consenting Stakeholders, (iv) the

15

Agents/Trustees, (v) the DIP Agent and the DIP Lenders, (vi) the Exit Debt Parties, (vii) AST, (viii) Viasat (subject to the AST Definitive Agreements Order), (ix) with respect to each of the foregoing Persons in clauses (i) through (viii), such Persons' predecessors, successors, assigns, subsidiaries, affiliates (including affiliates of any predecessors), current and former officers and directors, principals, equity holders (including equity holders of any predecessors), members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, (x) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but do not opt out of granting the releases set forth in Article VIII.D.2, and (xi) the holders of all Claims and Interests who were given notice of the opportunity and served with a provided form to opt out of granting the releases set forth in Article VIII.D.2 but did not timely opt out.

164.   "*Reorganized Parent*" means Ligado, or any successor to any such entity, by merger, consolidation, or otherwise, in each case on or after the Effective Date.

165.   "*Reorganized Parent Board*" means the initial board of Directors of the Reorganized Parent, as appointed pursuant to Article V.I.

166.   "*Reorganized Debtors*" means, collectively, the Reorganized Parent and its direct and indirect subsidiaries, or any successors thereto, by merger, consolidation, or otherwise, in each case on or after the Effective Date.

167.   "*Required Consenting Creditors*" shall have the meaning ascribed to such term in the Restructuring Support Agreement.

168.   "*Restructuring*" shall have the meaning ascribed to such term in the Restructuring Support Agreement.

169.   "*Restructuring Expenses*" means, collectively, (i) all of the Ad Hoc Crossholder Group's and Ad Hoc First Lien Group's reasonable and documented fees, costs, and expenses incurred through the Effective Date in connection with the Restructuring Transactions, including, without limitation, all reasonable and documented fees, costs, and expenses of the Ad Hoc Crossholder Group Advisors and Ad Hoc First Lien Group Advisors and (ii) the reasonable and documented fees, costs, and expenses of the AST Advisors incurred from the Petition Date through the Effective Date in connection with the Restructuring Transactions.

170.   "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement, dated as of January 5, 2025, by and among Ligado Networks LLC and certain of its direct and indirect subsidiaries listed on its signature page thereto, the Consenting Stakeholders, and AST, together with all exhibits and schedules thereto, as may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms.

171.   "*Restructuring Transactions*" has the meaning set forth in Article V.B.

172.   "*Restructuring Transactions Memorandum*" means a summary description of certain Restructuring Transactions to be included in the Plan Supplement that will set forth the

material transactions required to effectuate the Restructuring Transactions including any "tax steps memorandum" or other document describing the steps to be taken and the tax consequences thereof in connection with the Restructuring Transactions which shall be subject to the consent of the Required Consenting Creditors.

173.    "*Restructuring Term Sheet*" means that certain term sheet that sets forth the principal terms of the Restructuring Transaction, attached to the Restructuring Support Agreement as <u>Exhibit A</u>.

174.    "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means the schedule (if any) of Executory Contracts and Unexpired Leases that shall be rejected by each applicable Debtor as of the Effective Date, as set forth in the Plan or Plan Supplement.

175.    "*Schedule of Retained Causes of Action*" means a schedule of Causes of Action retained by the Reorganized Debtors filed as part of the Plan Supplement, which, for the avoidance of doubt, shall include, among others, any Causes of Action that the Debtors or the Reorganized Debtors, as applicable, may have in connection with (i) the Ligado Takings Case and (ii) the Cooperation Agreement Litigation (subject to the releases provided for under the AST Definitive Agreements Order).

176.    "*Schedules*" means the schedules of assets and liabilities, statements of financial affairs, lists of holders of Claims and Interests and all amendments or supplements thereto filed by the Debtors with the Bankruptcy Court.

177.    "*Second Amended and Restated Operating Agreement*" means the Operating Agreement as further amended and restated pursuant to the terms of the Restructuring Support Agreement, the form of which will be included in the Plan Supplement, or as otherwise agreed by the Debtors and the Required Consenting Creditors.

178.    "*Second Lien Collateral Trustee*" means U.S. Bank National Association, as collateral trustee under the Second Lien Notes Documents.

179.    "*Second Lien Indenture*" means that certain Indenture, dated as of October 23, 2020, by and among Ligado, as issuer, the guarantors party thereto, and the Second Lien Trustee.

180.    "Second Lien Noteholders" means the holders of the Second Lien Notes.

181.    "*Second Lien Notes*" means those certain 17.5% PIK Senior Secured Second Lien Notes due 2024 issued pursuant to the Second Lien Indenture.

182.    "*Second Lien Notes Claims*" means any Claim on account of the Second Lien Notes and payable under the Second Lien Indenture.

183.    "*Second Lien Notes Documents*" means the documents that govern the Second Lien Notes, including the Second Lien Indenture.

184.   "*Second Lien Trustee*" means Wilmington Savings Fund Society, FSB, as indenture trustee under the Second Lien Notes Documents.

185.   "*Second Lien Trustees*" means, collectively, the Second Lien Trustee and the Second Lien Collateral Trustee.

186.   "*Secured Claim*" means any Claim that is secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

187.   "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended, together with the rules and regulations promulgated thereunder.

188.   "*Strategic Collaboration and Spectrum Usage Agreement*" means that certain Strategic Collaboration and Spectrum Usage Agreement dated March 22, 2025, as amended, supplemented, or modified from time to time.

189.   "*Transaction Commission Plan*" means that certain Ligado Networks LLC Transaction Commission Plan which became effective on December 10, 2021, as amended, supplemented, or modified from time to time.

190.   "*Unexpired Lease*" means a lease to which one or more of the Debtors are party, which lease is subject to assumption or rejection in accordance with section 365 of the Bankruptcy Code.

191.   "*Unimpaired*" means, with respect to a Class, Claim, Interest, or a holder of a Claim or Interest, that such Class, Claim, Interest, or holder is not Impaired.

192.   "*Unsecured Claim*" means any Claim, other than an Administrative Claim, Priority Claim, Intercompany Claim, First Lien Claim, 1.5 Lien Term Loan Claim, Second Lien Notes Claim, or Other Secured Claim.

193.   "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

194.   "*Voting Record Date*" means June 20, 2025.

195.   "*Viasat*" means Viasat, Inc. together with Inmarsat.

B.     *Rules of Interpretation*

For purposes of the Plan and unless otherwise specified herein:  (1) each term, whether stated in the singular or the plural, shall include, in the appropriate context, both the singular and the plural; (2) each pronoun stated in the masculine, feminine, or neuter gender shall include, in

the appropriate context, the masculine, feminine, and the neuter gender; (3) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (4) all references to articles or Articles are references to the Articles hereof; (5) all captions and headings are inserted for convenience of reference only and are not intended to be a part of, or to affect the interpretation of, the Plan; (6) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (7) any reference to an existing document, schedule, or exhibit, whether or not filed, having been filed, or to be filed, shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (8) any reference to an event occurring on a specified date, including on the Effective Date, shall mean that the event will occur on that date or as soon thereafter as reasonably practicable; (9) any reference to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions except as specifically provided herein; (10) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time and as applicable to the Chapter 11 Cases; (11) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (12) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (13) any reference to a predecessor or predecessor of a Person in this Plan refers to and includes both immediate predecessors and any predecessors of a predecessor, except as may otherwise be clearly and expressly stated; and (14) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.    *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may or shall occur pursuant to the Plan is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.    *Governing Law*

Unless federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, and unless specifically stated otherwise, the laws of the State of New York, without giving effect to the principles of conflict of laws that would require the application of the laws of another jurisdiction, shall govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided, however*, that corporate or entity governance matters relating to the Debtors or the Reorganized Debtors shall be governed by the laws of the state of incorporation or organization of the relevant Debtor or Reorganized Debtor, as applicable.

19

E.    *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

F.    *Reference to the Debtors or the Reorganized Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G.    *Consultation, Information, Notice, and Consent Rights.*

Notwithstanding anything herein to the contrary, any and all consultation, information, notice, and consent rights of the parties to the Restructuring Support Agreement set forth in the Restructuring Support Agreement (including the exhibits thereto) with respect to the form and substance of the Plan, all exhibits to the Plan, and all other Definitive Documents, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.A. hereto) and fully enforceable as if stated in full herein.

Failure to reference the rights referred to in the immediately preceding paragraph as such rights relate to any document referenced in the Restructuring Support Agreement shall not impair such rights and obligations.

### ARTICLE II
### ADMINISTRATIVE CLAIMS AND OTHER UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, General Administrative Claims, Professional Fee Claims, DIP Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.    *General Administrative Claims*

Each holder of an Allowed General Administrative Claim, to the extent such Allowed General Administrative Claim has not already been paid during the Chapter 11 Cases and without any further action by such holder, shall receive, in full satisfaction of its General Administrative Claim, Cash equal to the Allowed amount of such General Administrative Claim on the Effective Date (or, if payment is not then due, when such payment otherwise becomes due in the applicable Debtor's ordinary course of business without further notice to or order of the Bankruptcy Court) or as soon as practicable thereafter or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code, unless otherwise agreed by the holder of such General Administrative Claim and the applicable Debtor.  For the avoidance of doubt, holders of a General Administrative Claim shall not be required to file a request for payment of a claim with the Bankruptcy Court.  Further, pursuant to Local Rule 3002-1, notwithstanding anything to the

contrary contained in this Plan, the government shall not be required to file any proof of claim or application for allowance for any claims covered by section 503(b)(1)(B), (C), or (D).

B.    *Professional Fee Claims*

1.    Final Fee Applications

All final requests for payment of Professional Fee Claims incurred prior to the Effective Date must be filed with the Bankruptcy Court and served on the Reorganized Debtors, the U.S. Trustee, and all other parties that have requested notice in these Chapter 11 Cases by no later than forty-five (45) days after the Effective Date, unless the Reorganized Debtors agree otherwise in writing.  Objections to Professional Fee Claims must be filed with the Bankruptcy Court and served on the Reorganized Debtors and the applicable Professional within twenty-one (21) days after the filing of the final fee application with respect to the applicable Professional Fees.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and any prior orders of the Bankruptcy Court in the Chapter 11 Cases, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court and, once approved by the Bankruptcy Court, shall be promptly paid in full in Cash from the Professional Fee Escrow Account; *provided*, *however*, that if the funds in the Professional Fee Escrow Account are insufficient to pay the full Allowed amounts of the Professional Fee Claims, the Reorganized Debtors shall promptly pay any remaining Allowed amounts from their Cash on hand.  Following the Effective Date, any provision of the Interim Compensation Order requiring Professionals to file an Interim Fee Application shall be waived.

For the avoidance of doubt, the immediately preceding paragraph shall not affect any professional-service Entity that is permitted to receive, and the Debtors are permitted to pay without seeking further authority from the Bankruptcy Court, compensation for services and reimbursement of expenses in the ordinary course of the Debtors' businesses (and in accordance with any relevant prior order of the Bankruptcy Court authorizing the payment of such professionals providing ordinary course services), which payments may continue notwithstanding the occurrence of Confirmation and Consummation.  Upon the Effective Date, the DIP Agent shall have no further obligations with respect to the Carve Out under and as defined in the DIP Orders.

2.    Professional Fee Escrow Account

As soon as practicable following the Confirmation Date, the Debtors shall fund the Professional Fee Escrow Account in an amount equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full in Cash to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court.  No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way.  No funds held in the Professional Fee Escrow Account shall be property of the Estates of the Debtors or the Reorganized Debtors.  When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full in Cash to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall be

remitted to the Reorganized Debtors without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity being required.

Professionals shall reasonably and in good faith estimate their unpaid Professional Fee Claims incurred in rendering services to the Debtors, or their Estates, as applicable, before and as of the Confirmation Date projected to be outstanding as of the anticipated Confirmation Date and shall deliver such estimate to counsel for the Debtors no later than ten (10) Business Days before the anticipated Confirmation Date; *provided*, *however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims. If a Professional does not provide an estimate, the Debtors shall estimate the unpaid and unbilled fees and expenses of such Professional in order for such Professional to be entitled to payment from the Professional Fee Escrow Account. The total aggregate amount so estimated to be outstanding as of the anticipated Confirmation Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account.

> 3.      Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, promptly pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors on and after the Effective Date. On the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order or approval of the Bankruptcy Court.

> C.      *DIP Claims*

All DIP Claims shall be deemed Allowed as of the Effective Date in an amount equal to (1) the principal amount outstanding under the DIP Facility on such date, (2) all interest accrued and unpaid thereon to the date of payment (including interest accrued through the Effective Date), and (3) all accrued and unpaid fees, expenses, and non-contingent indemnification obligations payable under the DIP Documents and the DIP Orders.

On the Effective Date, except to the extent a holder has agreed to alternative treatment, in full and final satisfaction of each Allowed DIP Claim, the DIP Loans giving rise to such Allowed DIP Claim shall be converted on a dollar-for-dollar basis into an Exit First Lien Loan in accordance with the DIP Documents and the Exit First Lien Facility Documents, and all Liens that secure the Obligations (as defined in the DIP Credit Agreement) under the DIP Credit Agreement shall be reaffirmed, ratified, and shall automatically secure all Obligations (as defined in the Exit First Lien Facility Credit Agreement) under the Exit First Lien Facility Credit Agreement, subject to the priorities of liens and payments set forth in the Exit First Lien Facility Documents.

D.    *Priority Tax Claims*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall receive Cash in an amount equal to such Allowed Priority Tax Claim on the Effective Date or as soon as practicable thereafter or such other treatment consistent with the provisions of sections 511 and 1129(a)(9) of the Bankruptcy Code.  In the event an Allowed Priority Tax Claim also is secured, such Claim shall, to the extent it is Allowed, be treated as an Allowed Other Secured Claim if such Claim is not otherwise paid or satisfied in full.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims and Interests*

Claims and Interests, except for General Administrative Claims, Professional Fee Claims, DIP Claims, and Priority Tax Claims, are classified in the Classes set forth in this Article III.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim or Allowed Interest, as applicable, in that Class.  To the extent a specified Class does not include any Allowed Claims or Allowed Interests, as applicable, then such Class shall be deemed not to exist.

The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth below.  The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.

| **Class** | **Claims or Interests** | **Status** | **Voting Rights** |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | Deemed to accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to accept |
| 3 | First Lien Claims | Impaired | Entitled to vote |
| 4 | 1.5 Lien Term Loan Claims | Impaired | Entitled to vote |
| 5 | Second Lien Notes Claims | Impaired | Entitled to vote |
| 6 | General Unsecured Claims | Unimpaired | Deemed to accept |
| 7 | Intercompany Claims | Either (i) Unimpaired or (ii) Impaired | Either (i) conclusively presumed to accept/not entitled to vote or (ii) deemed to have |

23

| **Class** | **Claims or Interests** | **Status** | **Voting Rights** |
|---|---|---|---|
| | | | rejected/not entitled to vote |
| 8 | Intercompany Interests | Either (i) Unimpaired or (ii) Impaired | Either (i) conclusively presumed to accept/not entitled to vote or (ii) deemed to have rejected/not entitled to vote |
| 9 | Existing Series A-0 Preferred Units | Impaired | Entitled to vote |
| 10 | Existing Series A-1 Preferred Units | Impaired | Entitled to vote |
| 11 | Existing Series A-2 Preferred Units | Unimpaired | Deemed to accept |
| 12 | Existing Series B Preferred Units | Unimpaired | Deemed to accept |
| 13 | Existing Series C Preferred Units | Unimpaired | Deemed to accept |
| 14 | Existing Series A Common Units | Unimpaired | Deemed to accept |
| 15 | Existing Series B Common Units | Unimpaired | Deemed to accept |

B.      *Treatment of Claims and Interests*

1.      Class 1 – Priority Non-Tax Claims

a.      *Classification*:  Class 1 consists of all Allowed Priority Non-Tax Claims.

b.      *Treatment*:  Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, in full and final satisfaction of such Allowed Priority Non-Tax Claim, each holder of an Allowed Priority Non-Tax Claim, if any, will, at the option of the Debtors or the Reorganized Debtors, (i) be paid in full in Cash or (ii) otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, in each case, or as soon as reasonably practicable thereafter.

c.      *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Allowed Priority Non-Tax Claims, if any, are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

2.      Class 2 – Other Secured Claims

a.      *Classification*:  Class 2 consists of all Allowed Other Secured Claims.

24

b.      *Treatment*:  Except to the extent that a holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction of such Allowed Other Secured Claim, at the option of the Debtors or the Reorganized Debtors, (i) each such holder will receive payment in full in Cash, payable on the later of the Effective Date and the date that is ten (10) Business Days after the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, in each case, or as soon as reasonably practicable thereafter, (ii) such holder's Allowed Other Secured Claim will be reinstated, or (iii) such holder will receive such other treatment so as to render such holder's Allowed Other Secured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code.

c.      *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

3.      Class 3 – First Lien Claims

a.      *Classification*:  Class 3 consists of all Allowed First Lien Claims.

b.      *Allowance*:  The First Lien Claims shall be Allowed (i) for the First Lien Term Loan Claims, in the aggregate principal amount of approximately $75,994,962 (including First Lien Loan PIK Interest), plus any and all accrued and unpaid interest, fees, premiums, and all other obligations, amounts, and expenses due and owing under the First Lien Credit Agreement or related documents on account of the First Lien Term Loan Claims as of the Effective Date (including amounts accrued through the Effective Date); and (ii) for the First Lien Notes Claims, in the aggregate principal amount of approximately $5,071,730,423 plus any and all accrued and unpaid interest, fees, premiums, and all other obligations, amounts, and expenses due and owing under the First Lien Indenture or related documents on account of the First Lien Notes Claims as of the Effective Date (including amounts accrued through the Effective Date).

c.      *Treatment*:  Except to the extent such holder agrees to less favorable treatment, on the Effective Date or as soon as reasonably practicable thereafter, each holder of an Allowed First Lien Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Allowed First Lien Claim, its Pro Rata share of the New Series A-1 Preferred Units.

d.      *Voting*:  Class 3 is Impaired under the Plan.  Therefore, holders of Allowed First Lien Claims are entitled to vote to accept or reject the Plan.

4.      Class 4 – 1.5 Lien Term Loan Claims

a.      *Classification*:  Class 4 consists of all Allowed 1.5 Lien Term Loan Claims.

b.      *Allowance*:  The 1.5 Lien Term Loan Claims shall be Allowed in the aggregate principal amount of approximately $591,504,126 plus any and all accrued and unpaid interest, fees, premiums, and all other obligations, amounts, and expenses due and owing under the 1.5 Lien Credit Agreement or related documents on account of the 1.5 Lien Term Loan Claims as of the Effective Date.

25

c.      *Treatment*:  Except to the extent such holder agrees to less favorable treatment, on the Effective Date or as soon as reasonably practicable thereafter, each holder of an Allowed 1.5 Lien Term Loan Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Allowed 1.5 Lien Term Loan Claim, its Pro Rata share of the New Series A-2 Preferred Units.

d.      *Voting*: Class 4 is Impaired under the Plan.  Therefore, holders of Allowed 1.5 Lien Term Loan Claims are entitled to vote to accept or reject the Plan.

5.      Class 5 – Second Lien Notes Claims

a.      *Classification*:  Class 5 consists of all Allowed Second Lien Notes Claims.

b.      *Allowance*:  The Second Lien Notes Claims shall be Allowed in the aggregate principal amount of approximately $2,050,029,494 plus any and all accrued and unpaid interest, fees, premiums, and all other obligations, amounts, and expenses due and owing under the Second Lien Indenture or related documents on account of the Second Lien Notes Claims as of the Effective Date.

c.      *Treatment*:  Except to the extent such holder agrees to less favorable treatment, on the Effective Date, each holder of an Allowed Second Lien Notes Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Allowed Second Lien Notes Claim, its Pro Rata share of the New Series A-3 Preferred Units.

d.      *Voting*: Class 5 is Impaired under the Plan.  Therefore, holders of Allowed Second Lien Notes Claims are entitled to vote to accept or reject the Plan.

6.      Class 6 – General Unsecured Claims

a.      *Classification*:  Class 6 consists of all Allowed General Unsecured Claims.

b.      *Treatment*:  Except to the extent that a holder of an Allowed General Unsecured Claim and the Debtor entity against which such Allowed General Unsecured Claim is asserted agree to less favorable treatment for such holder, in full satisfaction of its Allowed General Unsecured Claim, the holder thereof shall receive payment  in Cash in an amount equal to such Allowed General Unsecured Claim plus any and all accrued and unpaid interest, fees, premiums, and all other obligations, amounts, and expenses due and owing thereunder, if any, (i) on the Effective Date (or as soon as reasonably practicable thereafter) to the extent such Claim is due and payable on the Effective Date or (ii) to the extent such Claim is not due and payable on the Effective Date, in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such General Unsecured Claim.

c.      *Voting*:  Class 6 is Unimpaired under the Plan.  Holders of Allowed General Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

7.      Class 7 – Intercompany Claims

a.      *Classification*:  Class 7 consists of all Allowed Intercompany Claims.

b.      *Treatment*:  On the Effective Date, all Allowed Intercompany Claims, if any, will be adjusted, reinstated, or cancelled, to the extent reasonably determined to be appropriate by the Reorganized Debtors subject to the consent of the Required Consenting Creditors and in accordance with the Restructuring Transactions Memorandum.

c.      *Voting*:  Claims in Class 7 are either (i) Unimpaired, in which case the holders of such Claims are conclusively presumed to have accepted the Plan and are, therefore, not entitled to vote on the Plan or (ii) Impaired and not receiving or retaining any property under the Plan, in which case the holder of such Claims are deemed to have rejected the Plan, and are, therefore, not entitled to vote on the Plan.

8.      Class 8 – Intercompany Interests

a.      *Classification*:  Class 8 consists of all Intercompany Interests in the Debtors other than in Ligado, separately classified by Debtor.

b.      *Treatment*:  On the Effective Date, all Intercompany Interests, if any, will be adjusted, reinstated, or cancelled, to the extent reasonably determined to be appropriate by the Reorganized Debtors subject to the consent of the Required Consenting Creditors and in accordance with the Restructuring Transactions Memorandum.

c.      *Voting*:  Interests in Class 8 are either (i) Unimpaired, in which case the holders of such Interests are conclusively presumed to have accepted the Plan and are, therefore, not entitled to vote on the Plan or (ii) Impaired and not receiving or retaining any property under the Plan, in which case the holders of such Interests are deemed to have rejected the Plan, and are, therefore, not entitled to vote on the Plan.

9.      Class 9 – Existing Series A-0 Preferred Units

a.      *Classification*:  Class 9 consists of all Allowed Existing Series A-0 Preferred Units.

b.      *Treatment*:  Except to the extent such holder agrees to less favorable treatment, each holder of Allowed Existing Series A-0 Preferred Units shall retain its Existing Series A-0 Preferred Units, as amended by the Second Amended and Restated Operating Agreement, in the form of the New Series B-0 Preferred Units.

c.      *Voting*:  Class 9 is Impaired under the Plan.  Therefore, holders of Allowed Existing Series A-0 Preferred Units are entitled to vote to accept or reject the Plan.

10.      Class 10 – Existing Series A-1 Preferred Units

a.      *Classification*:   Class 10 consists of all Allowed Existing Series A-1 Preferred Units.

27

b.      *Treatment*: Except to the extent such holder agrees to less favorable treatment, each holder of Allowed Existing Series A-1 Preferred Units shall retain its Existing Series A-1 Preferred Units, as amended by the Second Amended and Restated Operating Agreement, in the form of the New Series B-1 Preferred Units.

c.      *Voting*:  Class 10 is Impaired under the Plan.  Therefore, holders of Allowed Existing Series A-1 Preferred Units are entitled to vote to accept or reject the Plan.

11.     Class 11 – Existing Series A-2 Preferred Units

a.      *Classification*:  Class 11 consists of all Allowed Existing Series A-2 Preferred Units.

b.      *Treatment*:  Except to the extent such holder agrees to less favorable treatment, each holder of Allowed Existing Series A-2 Preferred Units shall retain its Existing Series A-2 Preferred Units in the form of the New Series B-2 Preferred Units.

c.      *Voting*: Class 11 is Unimpaired under the Plan.  Holders of Allowed Existing Series A-2 Preferred Units are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

12.     Class 12 – Existing Series B Preferred Units

a.      *Classification*:  Class 12 consists of all Allowed Existing Series B Preferred Units.

b.      *Treatment*:  Except to the extent such holder agrees to less favorable treatment, each holder of Allowed Existing Series B Preferred Units shall retain its Existing Series B Preferred Units in the form of the New Series C Preferred Units.

c.      *Voting*: Class 12 is Unimpaired under the Plan.  Holders of Allowed Existing Series B Preferred Units are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

13.     Class 13 – Existing Series C Preferred Units

a.      *Classification*:  Class 13 consists of all Allowed Existing Series C Preferred Units.

b.      *Treatment*:  Except to the extent such holder agrees to less favorable treatment, each holder of Allowed Existing Series C Preferred Units shall retain its Existing Series C Preferred Units in the form of the New Series D Preferred Units.

c.      *Voting*: Class 13 is Unimpaired under the Plan.  Holders of Allowed Existing Series C Preferred Units are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

14. Class 14 – Existing Series A Common Units

a. Classification: Class 14 consists of all Allowed Existing Series A Common Units.

b. *Treatment*: Except to the extent such holder agrees to less favorable treatment, each holder of Allowed Existing Series A Common Units shall retain its current Existing Series A Common Units.

c. *Voting*: Class 14 is Unimpaired under the Plan. Holders of Allowed Existing Series A Common Units are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

15. Class 15 – Existing Series B Common Units

a. *Classification*: Class 15 consists of all Existing Series B Common Units.

b. *Treatment*: Except to the extent such holder agrees to less favorable treatment, each holder of Allowed Existing Series B Common Units shall retain its Existing Series B Common Units.

c. *Voting*: Class 15 is Unimpaired under the Plan. Holders of Allowed Existing Series B Common Units are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

C. *Special Provision Governing Unimpaired Claims, Executory Contracts and Unexpired Leases*

Except as otherwise provided in the Plan, nothing under the Plan shall impair, prevent or otherwise adversely affect, the Debtors' or Reorganized Debtors' rights and defenses in respect of any Unimpaired Claims, Executory Contracts, and/or Unexpired Leases including all rights in respect of legal and equitable defenses to, or setoffs or recoupment against, and Causes of Action against any such Unimpaired Claims, Executory Contracts, and/or Unexpired Leases.

D. *Intercompany Interests*

To the extent reinstated under this Plan, (i) distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience and due to the importance of maintaining the prepetition corporate structure for the ultimate benefit of the Holders of New Preferred Interests, and in exchange for the Debtors' and the Reorganized Debtors' agreement under this Plan to make certain distributions to the Holders of Allowed Claims, and (ii) other than as described in the Restructuring Transactions Memorandum, all Intercompany Interests shall be owned on and after the Effective Date by the same Reorganized Debtor that corresponds with the Debtor that owned such Intercompany Interests immediately prior to the Effective Date.

**ARTICLE IV**
**ACCEPTANCE OR REJECTION OF PLAN**

A.    *Voting Classes*

Holders of Claims or Interests in Classes 3, 4, 5, 9, and 10 as of the Voting Record Date are entitled to vote to accept or reject the Plan.

An Impaired Class of Claims shall be deemed to have accepted the Plan if, not counting any holder designated pursuant to section 1126(e) of the Bankruptcy Code, (1) holders of at least two-thirds in amount of the Allowed Claims held by holders who actually voted in such Class have voted to accept the Plan, and (2) holders of more than one-half in number of the Allowed Claims held by holders who actually voted in such Class have voted to accept the Plan.

An Impaired Class of Interests shall be deemed to have accepted the Plan if, not counting any holder designated pursuant to section 1126(e) of the Bankruptcy Code, holders of at least two-thirds in amount of the Allowed Interests held by holders who actually voted in such Class have voted to accept the Plan.  For any Debtor that does not otherwise have an Impaired Class of Claims, the votes of a Class of Claims that is Impaired under the joint Plan to accept the Plan shall be deemed an acceptance of the Plan by an Impaired Class of Claims with respect to such Debtor.

B.    *Presumed Acceptance of the Plan*

Classes 1, 2, 6, 7, 8, 11, 12, 13, 14, and 15 are Unimpaired under the Plan.  Holders of Claims or Interests in such Classes are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

C.    *Confirmation Pursuant to Section 1129(a)(10) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.  The Debtors shall seek Confirmation pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and Bankruptcy Rules.

D.    *Elimination of Vacant Classes*

Any Class that does not have a Claim or an Interest as of the date of the Confirmation hearing shall be deemed eliminated from the Plan for all purposes.

E.    *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to

30

the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### ARTICLE V
### MEANS FOR IMPLEMENTATION OF PLAN

A.    *General Settlement of Claims and Interests*

Pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute an arms' length and good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies resolved pursuant to the Plan. All distributions made to holders of Allowed Claims and Interests in any Class in accordance with the Plan are intended to be, and shall be, final and indefeasible.

B.    *Restructuring Transactions*

Prior to, on, or after the Effective Date, subject to and consistent with the terms of their obligations under the Plan and the Restructuring Support Agreement, and subject to the consent of the Required Consenting Creditors and to the extent applicable, the consent rights of AST, the Debtors shall be authorized to enter into such transactions and take such other actions (which, for the avoidance of doubt, shall in each case be in form, substance, and structure acceptable to the Required Consenting Creditors, and, to the extent applicable the consent rights of AST as set forth in the Restructuring Support Agreement) as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan, and as set forth in and consistent with the Restructuring Transactions Memorandum, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, or reorganization containing terms that are consistent with the terms of the Plan, the Restructuring Support Agreement, and other applicable Definitive Documents, and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan, the Restructuring Support Agreement, and other applicable Definitive Documents; (3) the filing of appropriate certificates of incorporation, merger, migration, consolidation, or other organizational documents with the appropriate governmental authorities pursuant to applicable law; (4) the execution and delivery of the New Organizational Documents and the issuance, distribution, reservation, or dilution, as applicable, of the New Preferred Units, as set forth herein and in the Second Amended and Restated Operating Agreement; (5) the execution and delivery of the Exit First Lien Facility Documents; (6) execution, delivery, and/or performance of any applicable obligations or requirements of the Debtors' and/or Reorganized Debtors in connection with the AST Transaction and as set forth in the AST Definitive Agreements and the AST Definitive Agreements Order; and (7) all other actions that the Reorganized Debtors determine are necessary or appropriate; provided that such other actions

31

are consistent with the terms of the Plan, the Restructuring Support Agreement, and the other applicable Definitive Documents (collectively, the "Restructuring Transactions").

The Confirmation Order shall and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

C.     *Sources of Consideration for Plan Distributions*

1.     Cash

The Debtors or the Reorganized Debtors, as applicable, shall fund distributions under the Plan required to be paid in Cash, if any, with Cash on hand, including Cash from operations and any Cash received on the Effective Date, the proceeds under the DIP Facility, the proceeds under the Exit First Lien Facility, and any proceeds received in connection with the AST Transaction.

2.     Exit First Lien Facility

On the Effective Date, the Reorganized Debtors shall incur the Exit First Lien Facility as provided in the Exit First Lien Facility Documents in an aggregate amount equal to a cashless conversion of all outstanding DIP Loans as of the Effective Date (or an amount otherwise agreed to by the Debtors and the Required Consenting Creditors).

Confirmation shall be deemed approval of the Exit First Lien Facility and the Exit First Lien Facility Documents, to the extent not approved by the Bankruptcy Court previously (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Debtors or Reorganized Debtors in connection therewith) and the Reorganized Debtors shall be authorized to execute and deliver those documents necessary or appropriate to incur the Exit First Lien Facility, including the Exit First Lien Facility Documents, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval, subject to such modifications as the Reorganized Debtors and the Exit Debt Parties may mutually agree to be necessary to consummate the Exit First Lien Facility.

On the Effective Date, all Liens and security interests granted pursuant to, or in connection with the Exit First Lien Facility Documents, as applicable, (including any Liens and security interests granted on the Debtors' assets) shall (i) be valid, binding, perfected, enforceable liens and security interests in the property described in the Exit First Lien Facility Documents, with the priorities established in respect thereof under applicable non-bankruptcy law and any applicable intercreditor agreements, and (ii) not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under any applicable law, the Plan, or the Confirmation Order.

The Reorganized Debtors and the persons granted Liens and security interests under the Exit First Lien Facility are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security

32

interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order without the need for any filings or recordings) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

3.      The AST Transaction

On or before the Effective Date, the Debtors and/or the Reorganized Debtors, as applicable, and AST shall continue to perform in accordance with the AST Definitive Agreements, and in compliance with the AST Definitive Agreements Order, and take all steps required thereunder in connection with the AST Transaction, including the provision by AST of all payment obligations provided for in the AST Definitive Agreements. For the avoidance of doubt, and notwithstanding anything else herein, the terms of the AST Definitive Agreements Order shall survive entry of the Confirmation Order, and in the event of a conflict between the AST Definitive Agreements Order, on the one hand, and the Plan, Confirmation Order, or any other documents related thereto, on the other hand, the terms of the AST Definitive Agreements Order shall control.

4.      New Preferred Units

The Reorganized Debtors shall be authorized to issue a certain number of New Preferred Units pursuant to the New Organizational Documents. The issuance of the New Preferred Units shall be authorized without the need for any further corporate action. On the Effective Date, the New Preferred Units shall be issued and distributed as provided for the Restructuring Transactions Memorandum pursuant to, and in accordance with, this Plan.

All of the shares of the New Preferred Units issued pursuant to this Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance referred to in Article VII hereof shall be governed by the terms and conditions set forth in this Plan applicable to such distribution or issuance, including the New Organizational Documents, which terms and conditions shall bind each Entity receiving such distribution or issuance. Any Entity's acceptance of the New Preferred Units shall be deemed as its agreement to the New Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their terms. The New Organizational Documents will provide preemptive rights only to the New Series A-1 Preferred Units, which shall apply with respect to all issuances of Units or debt (subject to customary carveouts). For the avoidance of doubt, any and all preemptive rights currently provided for in the Existing Operating Agreement will be waived and not apply with respect to any transactions in connection with the Plan and/or Restructuring.

5.      Boeing Order

The Debtors shall comply with all terms and obligations of the Boeing Order, including, but not limited to, payment of the Final Cure Amount (as defined in the Boeing Order). For the avoidance of doubt, and notwithstanding anything else herein, the terms of the Boeing Order shall continue in force following entry of the Confirmation Order, and in the event of a conflict between

33

the Boeing Order, on the one hand, and the Plan, Confirmation Order, or any other documents related thereto, on the other hand, the terms of the Boeing Order shall control.

### D. *Corporate Existence*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated herein, including the Restructuring Transactions Memorandum, each of the Reorganized Debtors and their direct and indirect subsidiaries shall continue to exist after the Effective Date as a separate corporation, limited liability company, limited partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, limited partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective bylaws, limited liability company agreement, operating agreement, limited partnership agreement (or other formation documents) in effect prior to the Effective Date, except to the extent such formation documents are amended under the Plan or otherwise (including with respect to the Second Amended and Restated Operating Agreement), and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval of the Bankruptcy Court, the Canadian Court (to the extent permitted by Canadian law), or any other Entity (other than any requisite filings required under applicable law).

### E. *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated herein, including the Restructuring Transactions Memorandum, on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property in each Estate, all Causes of Action (including, without limitation, all Causes of Action identified in the Schedule of Retained Causes of Action), and any property acquired by the Debtors pursuant to the Plan shall vest in the Reorganized Debtors, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtors may operate their businesses and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court, the Canadian Court, or any other Entity and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, including for the avoidance of doubt any restrictions on the use, acquisition, sale, lease, or disposal of property under section 363 of the Bankruptcy Code.

The Plan shall be conclusively deemed to be adequate notice that Liens, Claims, charges, or other encumbrances are being extinguished.

### F. *Cancellation of Loans, Securities, and Agreements*

Except as otherwise provided in the Plan (including with respect to Unimpaired Claims or the Exit First Lien Facility), on the Effective Date:  (1)  the First Lien Claims, the 1.5 Lien Term Loan Claims, the Second Lien Notes Claims, the DIP Claims, and any other certificate, equity security, share, note, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of, or ownership interest in, the

34

Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of, or ownership interest in, the Debtors that are reinstated pursuant to the Plan), shall be deemed cancelled, surrendered, and discharged as to the Debtors without any need for further action or approval of the Bankruptcy Court, the Canadian Court, or any holder thereof or any other person or entity, and the Reorganized Debtors shall not have any continuing obligations thereunder or in any way related thereto; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation, or similar documents governing the shares, certificates, notes, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of, or ownership interest in, the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically reinstated pursuant to the Plan) shall be deemed satisfied in full, released, and discharged without any need for further action or approval of the Bankruptcy Court, the Canadian Court, or any holder thereof or any other person or entity.

Notwithstanding Confirmation or the occurrence of the Effective Date, each of the DIP Documents, First Lien Loan Documents, First Lien Notes Documents and 1.5 Lien Term Loan Documents, and the Second Lien Notes Documents shall remain in effect solely for the purposes of (a) allowing the holders of DIP Claims, First Lien Claims, 1.5 Lien Term Loan Claims, or Second Lien Notes Claims to receive distributions under the Plan; and (b) allowing and preserving the rights of the Agents/Trustee and the DIP Agent to (i) make distributions on account of such Claims; (ii) maintain, enforce, and exercise its liens, including, without limitation, First Lien Trustee and Second Lien Trustee charging liens against any money or property distributed or allocable on account of such Claims; (iii) seek compensation and reimbursement for any reasonable and documented fees and expenses incurred in connection with the implementation of the Plan; (iv) maintain, enforce, and exercise any right or obligation to compensation, indemnification, expense reimbursement, or contribution, or any other claim or entitlement that each of the Agents/Trustee and DIP Agent may have under the Plan or the applicable the DIP Documents, First Lien Loan Documents, First Lien Notes Documents, 1.5 Lien Term Loan Documents, and the Second Lien Notes Documents; (v) appear and raise issues in these Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court after the Effective Date on matters relating to the Plan or the applicable the DIP Documents, First Lien Loan Documents, First Lien Notes Documents, 1.5 Lien Term Loan Documents, and the Second Lien Term Loan Documents; and (vi) take any action and execute any documents necessary to terminate, cancel, extinguish, and/or evidence the release of any and all Liens and other security interests with respect to the DIP Claims, First Lien Claims, 1.5 Lien Term Loan Claims, or Second Lien Notes Claims including, without limitation, the preparation and filing, in form, substance, and content reasonably acceptable to the applicable Agents/Trustee or DIP Agent, of any and all documents necessary to terminate, satisfy, or release any Liens and other security interests held by the applicable Agents/Trustee or DIP Agent, including UCC-3 termination statements.

Moreover, on and after the Effective Date, all duties, responsibilities or obligations of the applicable Agents/Trustee or DIP Agent under the DIP Documents, First Lien Loan Documents, First Lien Notes Documents, 1.5 Lien Term Loan Documents, and Second Lien Notes Documents shall be fully discharged and shall have no rights or obligations arising from or related to such

35

agreements or documentation, or the cancellation thereof, except for the rights provided or reserved under the Plan.

Notwithstanding the foregoing, all Existing Common Units shall remain in full force and effect, shall not be deemed cancelled, surrendered, or discharged, and shall be governed by the terms of the applicable New Organizational Documents, including the Second Amended and Restated Operating Agreement.

Upon the full payment or other satisfaction of an Allowed Other Secured Claim, or promptly thereafter, the holder of such Allowed Other Secured Claim shall deliver to the Debtors or Reorganized Debtors, as applicable, any collateral or other property of a Debtor held by such holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Other Secured Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or lis pendens, or similar interests or documents.

G.    *Corporate and Other Entity Action*

On the Effective Date, all actions contemplated under the Plan (including, for the avoidance of doubt, the Plan Supplement) shall be deemed authorized and approved in all respects, including, as applicable: (1) appointment of the New Boards pursuant to Article V.K and any other managers, directors, or officers for the Reorganized Debtors identified in the Plan Supplement; (2) the issuance and distribution of the New Preferred Units by the Reorganized Parent; (3) entry into the New Organizational Documents (including the Second Amended and Restated Operating Agreement); (4) entry into the Exit First Lien Facility Documents; (5) implementation of the Restructuring Transactions; (6) the assumption, assumption and assignment, or rejection (to the extent applicable), as applicable, of Executory Contracts and Unexpired Leases; and (7) all other actions contemplated under or required to consummate the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate or other Entity structure of the Debtors or the Reorganized Debtors, and any corporate or other Entity action required by the Debtors or Reorganized Debtors in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action or approval by the security holders, managers, or officers of the Debtors or the Reorganized Debtors. Prior to, on, or after the Effective Date (as appropriate), all matters provided for pursuant to this Plan that would otherwise require approval of the security holders, directors, officers, managers, members, or partners of the Debtors (as of prior to the Effective Date) shall be deemed to have been so approved and shall be in effect prior to, on, or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the security holders, directors, officers, managers, members or partners of the Debtors or the Reorganized Debtors, or the need for any approvals, authorizations, actions, or consents of any Person or Entity. The authorizations and approvals contemplated by this Article V.G shall be effective notwithstanding any requirements under applicable non-bankruptcy law.

H.    *New Organizational Documents*

On the Effective Date, Reorganized Parent shall enter into the New Organizational Documents, including the Second Amended and Restated Operating Agreement, which shall become effective and binding in accordance with its terms and conditions upon the parties thereto, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or Entity.  On or prior to the Effective Date or as soon thereafter as is practicable, the Reorganized Debtors shall, if so required under applicable state law, file their New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in their respective states, provinces, or countries of incorporation in accordance with the corporate laws of the respective states, provinces, or countries of incorporation or formation.  Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents will prohibit the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code.  After the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents and other constituent documents as permitted by the laws of their respective states, provinces, or countries of incorporation or formation, and their respective New Organizational Documents, without further order of the Bankruptcy Court or the Canadian Court.

Each holder of New Preferred Units and Existing Common Units shall be deemed to be a party to and bound to the terms of the Second Amended and Restated Operating Agreement from and after the Effective Date, even if not a signatory thereto.

I.    *Directors and Officers of Reorganized Debtors*

As of the Effective Date, unless otherwise stated herein, in the Plan Supplement, or the applicable New Organizational Documents, the terms of the current members of the boards of directors or managers (as applicable) of the Debtors shall expire, such directors shall be deemed to have resigned, and the initial boards of directors or managers (as applicable), including the New Boards, and the officers of each Reorganized Debtor entity shall be appointed in accordance with the respective New Organizational Documents.  The members of the New Boards will be identified in the Plan Supplement to the extent known.  Each such director, manager, and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtors.

Except to the extent that a member of the board of directors or managers, as applicable, of a Debtor continues to serve as a director or manager of such Reorganized Debtor on the Effective Date, the members of the board of directors or managers, as applicable, of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the Reorganized Debtors on or after the Effective Date and each such director or manager shall be deemed to have resigned or shall otherwise cease to be a director or manager of the applicable Debtor on the Effective Date.  Commencing on the Effective Date, each of the directors or managers, as applicable, of each of the Reorganized Debtors shall serve pursuant to the terms of the applicable organizational documents of such Reorganized Debtor and may be replaced or removed in accordance with such organizational documents.

37

1.      Reorganized Parent Board

The initial Reorganized Parent Board shall be appointed on the Effective Date in accordance with the Restructuring Support Agreement and the Second Amended and Restated Operating Agreement.  The initial Reorganized Parent Board shall be disclosed in the Plan Supplement to the extent known.

2.      Officers of Reorganized Debtors

Except as otherwise provided in the Plan Supplement, the officers of the respective Reorganized Debtors immediately before the Effective Date, as applicable, shall serve as the initial officers of each of the respective Reorganized Debtors on and after the Effective Date.  After the Effective Date, the selection of officers of the Reorganized Debtors shall be as provided by their respective organizational documents.

3.      New Subsidiary Boards

On the Effective Date, the New Subsidiary Boards shall be appointed in accordance with the applicable New Organizational Documents or as set forth in the Plan Supplement.

J.      *Exemption from Securities Laws*

The offer, issuance, and distribution under the Plan of the New Preferred Units shall be exempt, without further act or actions by any Entity, from registration under the Securities Act and any other applicable securities laws to the fullest extent permitted by section 1145 of the Bankruptcy Code.  Subject to any transfer provisions and other applicable provisions set forth in the New Organizational Documents, these securities may be resold without registration under the Securities Act or other federal securities laws pursuant to the exemption provided by section 4(a)(1) of the Securities Act, unless the holder is an "underwriter" with respect to such securities, as that term is defined in section 1145(b) of the Bankruptcy Code.  In addition, subject to any transfer provisions and other applicable provisions set forth in the New Organizational Documents, such section 1145 exempt securities generally may be resold without registration under state securities laws pursuant to various exemptions provided by the respective laws of the several states.

To the extent section 1145 of the Bankruptcy Code is not available, the New Preferred Units may be issued to holders that are "accredited investors" of the type described in Rule 501(a)(1), (2), (3) or (7) promulgated under the Securities Act or a "qualified institutional buyer" (a "QIB") as defined in Rule 144A under the Securities Act, or section 4(a)(2) of the Securities Act, Regulation D and/or Regulation S promulgated under the Securities Act (and in each case, on equivalent state law registration exemptions).

K.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Reorganized Debtors and the officers and members of the New Boards thereof are authorized to, and may issue, execute, deliver, file, or record, such contracts, securities, instruments, releases, and other agreements or documents and take such

actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, and the securities issued pursuant to the Plan in the name, and on behalf, of the Reorganized Debtors, without the need for any approvals, authorization, or consents, except for those expressly required pursuant to the Plan or the New Organizational Documents.

L.    *Section 1146 Exemption*

Pursuant to and to the extent provided in section 1146 of the Bankruptcy Code, (1) the issuance, transfer, or exchange of any securities, instruments, or documents, (2) the creation of any lien, mortgage, deed of trust, or other security interest, (3) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan or the reinvesting, transfer, or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated in the Plan (whether to one or more of the Reorganized Debtors or otherwise), (4) the grant of collateral under the Exit First Lien Facility Documents, and (5) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, FCC filing or recording fee, ISED filing or recording fee, other regulatory filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

M.    *Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released pursuant to the AST Definitive Agreements Order or released or exculpated herein (including, without limitation, by the Debtors) pursuant to the releases and exculpations contained in the Plan, including in Article VIII of the Plan, which shall be deemed released and waived by the Debtors and Reorganized Debtors as of the Effective Date.

The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Person or Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against it. The Debtors and the**

39

**Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity.** Unless any Cause of Action against a Person or Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that a Debtor may hold against any Person or Entity shall vest in the Reorganized Debtors. The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, Filing, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court, except to the extent otherwise required by Federal Rule of Civil Procedure 23.1(c) pursuant to Bankruptcy Rule 7023.1. For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Article V.O include any Claim or Cause of Action with respect to, or against, a Released Party or Exculpated Party.

N.    *Procedures for Treating Disputed Claims and Interests Under the Plan*

1.    Allowance of Claims

Except as otherwise set forth in the Plan, after the Effective Date, the Reorganized Debtors shall have any and all rights and defenses that the applicable Debtor(s) had with respect to any Claim immediately before the Effective Date, except with respect to any Claim deemed Allowed or released under the Plan. Except as specifically provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed in accordance with the Plan.

Any Claim that has been listed in the Schedules as disputed, contingent or unliquidated, and for which no Proof of Claim has been timely filed, shall be disallowed and expunged without any further notice to any Entity or action, order or approval of the Bankruptcy Court.

2.    Prosecution of Objections to Claims or Interests

a.    Time to File Objections to Claims or Interests

Any objections to Disputed Claims or Disputed Interests shall be Filed on or before the later of (1) the Claims Objection Bar Date and (2) such later date as may be specifically fixed by the Bankruptcy Court. For the avoidance of doubt, the Bankruptcy Court may extend the time period to object to Disputed Claims and Disputed Interests.

b.      Authority to Prosecute and Settle Objections to Claims and Interests

Except as otherwise specifically provided in the Plan, the Debtors, prior to the Effective Date, and, after the Effective Date, the Reorganized Debtors shall have the sole authority to: (i) file, withdraw or litigate to judgment, objections to Claims and Interests (except for those Allowed pursuant to the Plan or the Confirmation Order); (ii) settle or compromise any Disputed Claim or Disputed Interest without any further notice to or action, order or approval by the Bankruptcy Court; and (iii) direct the Claims and Noticing Agent to adjust the claims register to reflect all resolutions of Disputed Claims without any further notice to or action, order or approval by the Bankruptcy Court. Notwithstanding the foregoing, nothing contained herein shall affect the rights of any party in interest to object to any fee application.

c.      Authority to Amend Schedules

The Debtors, prior to the Effective Date, and the Reorganized Debtors, after the Effective Date, shall have the authority to amend the Schedules with respect to any Claim (other than any Claim Allowed or released hereunder or otherwise by a Final Order) and to make Distributions based on such amended Schedules (if no Proof of Claim is timely filed in response to such amendment) without approval of the Bankruptcy Court. If any such amendment to the Schedules reduces the amount of a Claim or changes the nature or priority of a Claim that was previously scheduled as undisputed, liquidated and not contingent, the Debtors or the Reorganized Debtors, as applicable, shall provide the holder of such Claim with notice of such amendment and the opportunity to file a Proof of Claim.

d.      Adjustment to Claims Without Objection

Any duplicate Claim or any Claim that has been paid, satisfied, amended, or superseded may be adjusted or deemed disallowed without the Reorganized Debtors having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      Estimation of Claims and Interests

The Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim or Disputed Interest pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim or Interest at any time during litigation concerning any objection to any Claim or Interest, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim or Disputed Interest, the amount so estimated shall constitute either the Allowed amount of such Claim or Interest or a maximum limitation on such Claim or Interest, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim or Interest, the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claim or Interest. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and

41

not exclusive of one another. Claims and Interests may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

4.       Disallowance of Claims

Any Claims held by Entities from which the Bankruptcy Court has determined that property is recoverable under section 542, 543, 547, 548, 549, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer that the Bankruptcy Court has determined is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims shall not receive any distributions on account of such Claims until such time as all Causes of Action against that Entity under any of the foregoing provisions of the Bankruptcy Code have been settled resolved by a Final Order and the full amount of such recoverable property has been paid or turned over to the Debtors or the Reorganized Debtors, as applicable.

All Proofs of Claim Filed on account of an indemnification obligation shall be deemed satisfied and disallowed as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court. All Proofs of Claim Filed on account of an employee benefit shall be deemed satisfied and disallowed as of the Effective Date to the extent the Reorganized Debtors elect to assume or otherwise honor such employee benefit, without any further notice to or action, order, or approval of the Bankruptcy Court.

Except as provided herein or otherwise agreed to by the Reorganized Debtors in their sole discretion, any and all Proofs of Claim Filed after the Claims Bar Date shall be deemed Disallowed as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Claim has been deemed timely Filed by a Final Order, unless the Holders of such Claims received prior written authorization of, as applicable, the Bankruptcy Court or the applicable Debtor or Reorganized Debtor for filing such Proofs of Claim.

5.       Distributions to Holders of Disputed Claims

Notwithstanding anything to the contrary herein, if any portion of a Claim or Interest is Disputed, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Disputed Interest becomes Allowed.

To the extent that a Disputed Claim or Disputed Interest ultimately becomes Allowed, distributions (if any) shall be made to the holder of such Allowed Claim or Allowed Interest in accordance with the provisions of the Plan, less any previous distribution, if any, that was made on account of the undisputed portion of such Claim. As soon as practicable after the date that the order or judgment finding or deeming any Disputed Claim or Disputed Interest to be Allowed has become a Final Order, the Disbursing Agent shall provide to the holder of such Claim or Interest the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest.

## ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption of Executory Contracts and Unexpired Leases*

Except as otherwise provided herein, each Executory Contract and Unexpired Lease, with the consent of the Required Consenting Creditors, shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date, pursuant to section 365 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (1) was previously assumed or rejected; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a motion to reject, assume, or assume and assign that is (i) filed on or before the Confirmation Date or (ii) otherwise filed so as to be decided upon notice and a hearing prior to the Effective Date; or (4) is designated specifically as an Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases (if any).   The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to Affiliates.   Unless previously approved by the Bankruptcy Court, the Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described rejections, assumptions, and assumptions and assignments, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code and effective on the occurrence of the Effective Date.

Each Executory Contract and Unexpired Lease assumed pursuant to this Article VI.A or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, shall revest in, and be fully enforceable by, the Reorganized Debtors in accordance with its terms (including any amendments to any Executory Contracts and Unexpired Leases that were entered into after the Petition Date), except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.   To the maximum extent permitted by law, to the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" or similar provision), then such provision shall be deemed modified or stricken such that the transactions contemplated by the Plan shall not entitle the non-Debtor that is party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

Notwithstanding anything else herein, the putative cure of the Inmarsat Cooperation Agreement shall be governed by the AST Definitive Agreements Order.

B.    *Cure of Defaults for Executory Contracts and Unexpired Leases Assumed*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the applicable cure amount in Cash on the Effective Date or in the ordinary course of business, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree without further order of the

43

Bankruptcy Court or the Canadian Court.  In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made within seven (7) Business Days following the entry of a Final Order or orders resolving the dispute and approving the assumption and shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and payment of the applicable cure amount, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  Any proof of Claim filed with respect to an Executory Contract or Unexpired Lease that is assumed shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Bankruptcy Court or the Canadian Court.

Notwithstanding anything else herein, the putative assumption or rejection of the Inmarsat Cooperation Agreement shall be governed by the AST Definitive Agreements Order.

C.     *Insurance Policies*

1.     Insurance Policies

Except as otherwise explicitly provided with respect to an Insurance Policy, notwithstanding anything to the contrary in the Disclosure Statement, Plan, the Definitive Documents, the Confirmation Order, any bar date order or notice, any claim objection or notice of satisfaction of claims, or any other document related to any of the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction, discharge or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases):

a.     on the Effective Date, all Insurance Policies shall be assumed in their entireties, unaltered, by the Reorganized Debtors pursuant to sections 105 and 365 of the Bankruptcy Code and shall continue in full force and effect thereafter in accordance with their respective terms and conditions;

b.     the Reorganized Debtors shall be liable in full for all of their and all of the Debtors' obligations under the Insurance Policies in accordance with and subject to the terms and conditions of the Insurance Policies, regardless of whether any such obligations arise or become due before, on, or after the Effective Date, and without the need or requirement for an Insurer to file or serve any objection to a notice of proposed cure amount (or lack of such notice) or file or serve a request, motion, or application for payment of or Proof of Claim, cure amount, or Administrative Claim;

44

c.      nothing shall permit or otherwise effectuate a sale, assignment or other transfer of the Insurance Policies, any portion thereof, and/or any rights, benefits, claims, proceeds, rights to payment, or recoveries under and/or relating to the Insurance Policies without the prior express written consent of the applicable Insurer; and

d.      from and after the Effective Date, the automatic stay of section 362(a) of the Bankruptcy Code and the injunctions set forth in Article VIII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (1) (A) claimants with valid workers' compensation claims, (B) claimants with claims against non-Debtors that may be entitled to coverage under Insurance Policies with respect to such claims, or (C) direct action claims against any of the Insurers under applicable non-bankruptcy law to proceed with their claims; (2) the Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims, (B) claims against non-Debtors who may be entitled to coverage under the Insurance Policies with respect to such claims, (C) claims where a claimant asserts a direct claim against any of the Insurers under applicable non-bankruptcy law, or an order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay and/or the injunctions set forth in Article VIII of the Plan to proceed with its claim, and (D) all costs in relation to each of the foregoing; (3) the Insurers to draw on or against, use or apply any or all of the collateral or security provided by or on behalf of the Debtors (and the Reorganized Debtors, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the Debtors (and the Reorganized Debtors, as applicable) and/or apply such proceeds to the obligations of the Debtors (and the Reorganized Debtors, as applicable) under the Insurance Policies in such order as the Insurer may determine; and (4) the Insurers to cancel any Insurance Policies and take other actions relating to the Insurance Policies (including effectuating a setoff and/or asserting any recoupment or subrogation rights or claims) to the extent permitted by such Insurance Policy and/or applicable non-bankruptcy law.

2.      Directors and Officers Insurance Policies

On the Effective Date, the Reorganized Debtors shall be deemed to have assumed all of the D&O Policies pursuant to sections 105 and 365(a) of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court.  Confirmation shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no proof of Claim need be Filed.  The Debtors and, after the Effective Date, the Reorganized Debtors shall retain the ability to supplement such D&O Policies as the Debtors or Reorganized Debtors, as applicable, may deem necessary.  For the avoidance of doubt, entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' foregoing assumption of each of the unexpired D&O Policies.

In addition, on or after the Effective Date, none of the Reorganized Debtors shall terminate or otherwise reduce the coverage under any D&O Policies (including any "tail policy" and all agreements, documents, or instruments related thereto) in effect on or prior to the Effective Date, with respect to conduct occurring prior thereto, and all current and former directors, officers, and

45

managers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such D&O Policies for the full term of such policies regardless of whether such current and former directors, officers, and managers remain in such positions after the Effective Date, all in accordance with and subject in all respects to the terms and conditions of the D&O Policies, which shall not be altered.

D. *Indemnification Provisions*

On and as of the Effective Date, and except as prohibited by applicable law and subject to the limitations set forth herein, the Indemnification Provisions will be assumed and irrevocable and will survive the Consummation, and the New Organizational Documents will provide to the fullest extent provided by law for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to the Debtors' and the Reorganized Debtors' current and former directors, officers, equity holders, managers, members, employees, accountants, investment bankers, attorneys, other professionals, agents of the Debtors, and such current and former directors', officers', equity holders', managers', members' and employees' respective Affiliates (each of the foregoing solely in their capacity as such) at least to the same extent as the Indemnification Provisions, against any Claims or Causes of Action, whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and, notwithstanding anything in the Plan to the contrary, none of the Reorganized Debtors will amend and/or restate the New Organizational Documents before or after the Effective Date to terminate or adversely affect any of the Indemnification Provisions.

E. *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract and Unexpired Lease that is assumed and, if applicable, assigned to the Reorganized Debtors, shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously terminated or is otherwise not in effect.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts or Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

F. *Reservation of Rights*

Nothing contained in the Plan shall constitute an admission by the Debtors that any Executory Contract or Unexpired Lease is, in fact, an Executory Contract or Unexpired Lease or that the Debtors or the Reorganized Debtors have any liability thereunder.

G.     *Contracts and Leases Entered into after Petition Date*

Contracts and leases entered into after the Petition Date by any Debtor, will be performed by the applicable Debtor or Reorganized Debtor, as the case may be, liable thereunder in the ordinary course of its business.  Accordingly, such contracts and leases will survive and remain unaffected by entry of the Confirmation Order.

H.     *Rejection Damages Claims*

If the rejection of an Executory Contract or Unexpired Lease by the Debtors results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be classified and treated in Class 6 (General Unsecured Claims).

I.     *Compensation and Benefits Programs*

Except as otherwise set forth herein, on the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall assume all Employment Agreements.  Pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

Subject to the provisions of this Plan, all Compensation and Benefits Programs shall be treated as Executory Contracts under this Plan and deemed assumed on the Effective Date pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, except for: (a) the Transaction Commission Plan, the Incentive Plan, and all other employee equity or equity-based incentive plans, and any provisions set forth in the Compensation and Benefits Programs that provide for rights to acquire Interests in any of the Debtors, which shall not constitute or be deemed to constitute Executory Contracts and shall be deemed terminated on the Effective Date; (b) Compensation and Benefits Programs that have been rejected pursuant to an order of a Bankruptcy Court; and (c) Compensation and Benefits Programs that, as of the entry of the Confirmation Order, have been specifically waived by the beneficiaries of any employee benefit plan or contract.

A counterparty to a Compensation and Benefits Program assumed pursuant to this Plan shall have the same rights under such Compensation and Benefits Program as such counterparty had thereunder immediately prior to such assumption (unless otherwise agreed by such counterparty and the applicable Reorganized Debtor(s)); *provided, however*, that any assumption of Compensation and Benefits Programs pursuant to this Plan or any of the Restructuring Transactions shall not trigger or be deemed to trigger any change of control, immediate or acceleration of vesting, termination, or similar provisions therein.

## ARTICLE VII
## PROVISIONS GOVERNING DISTRIBUTIONS

A.     *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan or paid pursuant to a prior Bankruptcy Court order, on the Effective Date (or if a Claim or Interest is not Allowed on the Effective Date, on the date

47

that such Claim or Interest becomes Allowed), each holder of an Allowed Claim or Allowed Interest shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests in the applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

B.    *Disbursing Agent*

All distributions under the Plan shall be made by the Disbursing Agent on the Effective Date. If the Disbursing Agent is one or more of the Reorganized Debtors or any of the Agents/Trustees, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

C.    *Rights and Powers of Disbursing Agent*

1.    Powers of the Disbursing Agent

Without further order of the Bankruptcy Court or the Canadian Court, the Disbursing Agent shall be empowered to: (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all distributions contemplated hereby; (iii) employ professionals and incur reasonable fees and expenses to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.    Incurred Expenses

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable and documented fees and expenses incurred by the Disbursing Agent (including any of the Agents/Trustees acting as Disbursing Agent) on and after, or in contemplation of, the Effective Date (including taxes) and any reasonable and documented compensation and expense reimbursement claims (including reasonable and documented attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors. For the avoidance of doubt, the payment of such fees and expenses shall not override the Reorganized Debtors' independent obligation under the DIP Documents, First Lien Loan Documents, First Lien Notes Documents,1.5 Lien Term Loan Documents, Second Lien Notes Documents, the Final DIP Order and the Plan to pay any fees and expenses incurred by the Agents/Trustee and DIP Agent.

D.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.    Delivery of Distributions in General

Except as otherwise provided in the Plan or prior Bankruptcy Court order, the Disbursing Agent shall make distributions to holders of Allowed Claims as of the Distribution Record Date at

the address for each such holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of Reorganized Debtors.

2.      Delivery of Distributions to First Lien Trustee

The First Lien Trustee shall be deemed to be the holder of all applicable Allowed Class 3 First Lien Notes Claims for purposes of distributions to be made hereunder, and all distributions on account of such Allowed Claims shall be made to or at the direction of the First Lien Trustee for further distribution, as soon as practicable following the Effective Date, to or on behalf of the applicable holders of Allowed Class 3 First Lien Notes Claims in accordance with the terms of the applicable First Lien Notes Documents and the Plan, subject to the rights of the First Lien Trustee to exercise its charging lien against such distribution in accordance with the First Lien Notes Documents regardless of whether such distribution is made by the First Lien Trustee or at its direction. If the record holder of the First Lien Notes is DTC or its nominee or another securities depository or custodian thereof, and such First Lien Note is represented by a global security held by or on behalf of DTC or such other securities depository or custodian, then each beneficial holder of such First Lien Note shall be deemed to have surrendered such First Lien Note upon surrender of the applicable global security by DTC or such other securities depository or custodian thereof. Notwithstanding anything in the Plan to the contrary, and without limiting the exculpation and release provisions of the Plan or to the extent resulting from its gross negligence or willful misconduct, the First Lien Trustee shall not have any liability to any Entity with respect to distributions made or directed to be made by the First Lien Trustee, nor shall the First Lien Trustee have any obligation to make any distribution that is not delivered to it in a form that is distributable through the facilities of DTC. The First Lien Trustee shall be deemed a "Disbursing Agent" for purposes of the Plan.

3.      Delivery of Distributions to Second Lien Trustee

The Second Lien Trustee shall be deemed to be the holder of all applicable Allowed Class 5 Second Lien Notes Claims for purposes of distributions to be made hereunder, and all distributions on account of such Allowed Claims shall be made to or at the direction of the Second Lien Trustee for further distribution, as soon as practicable following the Effective Date, to or on behalf of the applicable holders of Allowed Class 5 Second Lien Notes Claims in accordance with the terms of the applicable Second Lien Notes Documents and the Plan, subject to the rights of the Second Lien Trustee to exercise its charging lien against such distributions in accordance with the Second Lien Notes Documents regardless of whether such distribution is made by the Second Lien Trustee or at its direction. Notwithstanding anything in the Plan to the contrary, and without limiting the exculpation and release provisions of the Plan or to the extent resulting from its gross negligence or willful misconduct, the Second Lien Trustee shall not have any liability to any Entity with respect to distributions made or directed to be made by the Second Lien Trustee, nor shall the Second Lien Trustee have any obligation to make any distribution that is not delivered to it in a form that is distributable through the facilities of DTC. The Second Lien Trustee shall be deemed a "Disbursing Agent" for purposes of the Plan.

4.      Delivery of Distributions to First Lien Agent

Distributions on account of Allowed Class 3 First Lien Term Loan Claims shall be made by the Debtors or Reorganized Debtors, as applicable, to the First Lien Agent for redistribution to the holders of Allowed Class 3 First Lien Term Loan Claims.  As soon as practicable following compliance with the requirements set forth in Article VII of the Plan, the First Lien Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of the holders of Allowed Class 3 First Lien Term Loan Claims in accordance with the terms of the First Lien Loan Documents and the Plan.  Notwithstanding anything in the Plan to the contrary, and without limiting the exculpation and release provisions of the Plan or to the extent resulting from its gross negligence or willful misconduct, the First Lien Agent shall not have any liability to any Entity with respect to distributions made or directed to be made by the First Lien Agent, and the First Lien Agent shall be deemed a "Disbursing Agent" for purposes of the Plan.

5.      Delivery of Distributions to 1.5 Lien Agent

Distributions on account of Allowed Class 4 1.5 Lien Term Loan Claims shall be made by the Debtors or Reorganized Debtors, as applicable, to the 1.5 Lien Agent for redistribution to the holders of Allowed Class 4 1.5 Lien Term Loan Claims.  As soon as practicable following compliance with the requirements set forth in Article VII of the Plan, the 1.5 Lien Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of the holders of Allowed Class 4 1.5 Lien Term Loan Claims in accordance with the terms of the 1.5 Lien Loan Documents and the Plan.  Notwithstanding anything in the Plan to the contrary, and without limiting the exculpation and release provisions of the Plan or to the extent resulting from its gross negligence or willful misconduct, the 1.5 Lien Agent shall not have any liability to any Entity with respect to distributions made or directed to be made by the 1.5 Lien Agent, and the 1.5 Lien Agent shall be deemed a "Disbursing Agent" for purposes of the Plan.

6.      Delivery of Distributions on DIP Claims

The DIP Agent shall be deemed to be the holder of all applicable DIP Claims for purposes of distributions to be made hereunder, and all distributions on account of such DIP Claims shall be made to the DIP Agent.  As soon as practicable following the Effective Date, the DIP Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of the applicable holders of DIP Claims in accordance with the terms of the DIP Documents, subject to any modifications to such distributions in accordance with the terms of the Plan.  Notwithstanding anything in the Plan to the contrary, and without limiting the exculpation and release provisions of the Plan or to the extent resulting from its gross negligence or willful misconduct, the DIP Agent shall not have any liability to any Entity with respect to distributions made or directed to be made by the DIP Agent, and the DIP Agent shall be deemed a "Disbursing Agent" for purposes of the Plan.

7.      Minimum Distributions

No fractional New Preferred Units shall be distributed, and no Cash shall be distributed with respect to such fractional amounts.  When any distribution pursuant to the Plan would

otherwise result in the issuance of a number of shares of New Preferred Units that is not a whole number, the actual distribution of New Preferred Units shall be rounded as follows:  (i) fractions of greater than one-half (½) shall be rounded to the next higher whole number, and (ii) fractions of one-half (½) or less shall be rounded to the next lower whole number with no further payment therefor.  The total number of authorized shares of New Preferred Units to be distributed to holders of Allowed Claims shall be adjusted as necessary to account for the foregoing rounding.

8.      Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the date on which such distribution was attempted to be made; *provided further*, that the Debtors or Reorganized Debtors, as applicable, shall use reasonable efforts to locate a holder if any distribution is returned as undeliverable.  After such date, all unclaimed property or interests in property shall revert to Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court or the Canadian Court (notwithstanding any applicable federal, provincial, or state escheat, abandonment, or unclaimed property laws to the contrary), and the claim of any holder to such property or interest in property shall be discharged and forever barred.

E.      *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Reorganized Debtors and the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens, and encumbrances.  Any Person entitled to receive any property as an issuance or distribution under this Plan shall deliver to the applicable Disbursing Agent or, if different, the applicable withholding agent, a properly completed and duly executed IRS Form W-9 or (if the payee is a foreign Person) an appropriate IRS Form W-8 (including any supporting documentation) (as applicable).

F.      *No Postpetition Interest on Claims and Interests*

Unless otherwise specifically provided for in the Restructuring Support Agreement, Plan, Confirmation Order, the DIP Facility, the DIP Orders, or other Bankruptcy Court order or otherwise required by applicable law, postpetition interest shall not accrue or be paid on any

51

Claims or Interests, and no holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any such Claim or Interest.

G.      *Setoffs and Recoupment*

Except for Claims that are expressly Allowed hereunder, the Debtors and the Reorganized Debtors may, but shall not be required to, set off against any Claim or Interest (for purposes of determining the Allowed amount of such Claim or Interest on which distribution shall be made), any claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the holder of such Claim or Interest; *provided*, that neither the failure to do so nor the allowance of any Claim or Interest hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claim the Debtors or the Reorganized Debtors may have against the holder of such Claim or Interest.

Notwithstanding anything else herein, in the event the Inmarsat Cooperation Agreement is not assumed pursuant to AST Definitive Agreements Order, Inmarsat's rights are fully reserved as to whether or not the Debtors may set off or recoup claims that the Debtors assert against amounts owed to Inmarsat under the Inmarsat Cooperation Agreement.

H.      *Claims Paid or Payable by Third Parties*

1.      Claims Paid by Third Parties

The Debtors or Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without an objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court or the Canadian Court, to the extent that the holder of such Claim receives payment (before or after the Effective Date) on account of such Claim from a party that is not a Debtor or Reorganized Debtors; *provided*, *however*, if such holder is required to repay all or any portion of a Claim (either by contract or by order of a court of competent jurisdiction) to the party that is not a Debtor or Reorganized Debtor, and such holder in fact repays all or a portion of the Claim to such third party, the repaid amount of such Claim shall remain subject to the applicable treatment set forth in the Plan and the respective rights and defenses of the Debtors or Reorganized Debtors, as applicable, and the holder of such Claim. To the extent a holder of a Claim receives a distribution on account of such Claim under the Plan and receives payment from a party that is not a Debtor or Reorganized Debtor on account of such Claim, such holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Debtor or Reorganized Debtor, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such holder to timely repay or return such distribution shall result in the holder owing the applicable Reorganized Debtor annualized interest at the federal judgment rate, as in effect as of the Petition Date, on such amount owed for each Business Day after the 10-day grace period specified above until the amount is repaid.

2.    Claims Payable by Third Parties

To the extent that one or more of the Debtors' Insurers agree to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such Insurers' satisfaction, the applicable portion of such Claim may be expunged without an objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court or the Canadian Court; *provided*, *however*, if such holder is required to repay all or any portion of a Claim (either by contract or by order of a court of competent jurisdiction) to an Insurer, and such holder in fact repays all or a portion of the Claim to such Insurer, the repaid amount of such Claim shall remain subject to the applicable treatment set forth in the Plan and the respective rights and defenses of the Debtors or Reorganized Debtors, as applicable, and the holder of such Claim.

3.    Applicability of Insurance Policies

Except as otherwise provided in the Plan, payments to holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Policy.  Except as otherwise expressly set forth in the Plan, nothing herein shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity, including any holders of Claims, may hold against any other Entity, including Insurers or any insured party, under any Insurance Policies, nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any rights or defenses, including coverage defenses, held by such Insurers.

I.    *Allocation Between Principal and Accrued Interest*

Except as otherwise provided in the Plan, the aggregate consideration paid to holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, accrued through the Effective Date.

## ARTICLE VIII
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.    *Compromise and Settlement*

The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of the Debtors, their Estates, and all holders of Claims or Interests, (2) fair, equitable, and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to applicable bankruptcy law.  In addition, the allowance, classification, and treatment of any Allowed Claims of a Released Party take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist between the Debtors and any Released Party and, as of the Effective Date, any and all such Causes of Action are settled, compromised, and released as set forth in the Plan.  The Confirmation Order shall authorize and approve the releases by all Entities of all such contractual, legal, and equitable subordination rights and Causes of Action that are satisfied, compromised, and settled pursuant hereto.  Nothing in the Plan shall compromise or

settle, in any way whatsoever, any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have against any Entity that is not a Released Party.

In accordance with the provisions of the Plan, and pursuant to Bankruptcy Rule 9019, without any further notice to, or action, order, or approval of, the Bankruptcy Court or the Canadian Court, after the Effective Date, the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle (1) Claims (including Causes of Action) against and Interests in the Debtors not previously Allowed (if any) and (2) claims (including Causes of Action) against other Entities.

B.    *Discharge of Claims and Termination of Interests*

Except as otherwise provided in the Plan, effective as of the Effective Date: (1) the distributions, rights, and treatment that are provided in the Plan for all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, whether known or unknown, against or in the Debtors or any of their assets, property, or Estates, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date and any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date; (2) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (3) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code; and (4) all entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date. Notwithstanding the foregoing, all Existing Common Units shall remain in full force and effect and shall be governed by the terms of the applicable New Organizational Documents, including the Second Amended and Restated Operating Agreement. The Confirmation Order shall be a judicial determination, subject to the Effective Date occurring, of the discharge of all Claims and Interests except as otherwise expressly provided in the Plan.

C.    *Release of Liens*

**Except as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit First Lien Facility Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and the effectiveness of the Exit First Lien Facility Documents, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall automatically revert to the Reorganized Debtors and each of their successors and assigns, and the Agents/Trustees and the DIP Agent shall be authorized to release any such mortgages, deeds of trust, Liens, pledges, or other security interests held by such holder**

54

and to take such actions as may be requested by the Reorganized Debtors to evidence the release of such mortgages, deeds of trust, Liens, pledges, or other security interests, including the execution, delivery, and filing or recording of any related releases or discharges as may be requested by the Reorganized Debtors or may be required in order to effectuate the foregoing.

D.    *Releases of Released Parties*

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to applicable bankruptcy law, of the releases described in this Article VIII.D and shall constitute the Bankruptcy Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by this Article VIII.D; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Entity (including the Debtors) asserting any claim or Cause of Action released pursuant to this Article VIII.D.

1.    Releases by the Debtors

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of each Debtor, each Reorganized Debtors, and each Estate, in each case, on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action, whether prepetition or postpetition, derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws, or otherwise that the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP

55

Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, (ii) any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have in connection with the Ligado Takings Case, (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or Agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit First Lien Facility Documents, or any Claim or obligation arising under the Plan and (iv) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct.

2.      Releases by Holders of Claims or Interests

As of the Effective Date, except for (i) the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring, (ii) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct, (iii) the rights provided or reserved for under the AST Definitive Agreements Order, or (iv) as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case, from any and all Claims and Causes of Action whatsoever, whether prepetition or postpetition (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates, the Chapter 11 Cases the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors (including any of the Debtors' predecessors) or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements

56

between the Debtors (including any of the Debtors' predecessors) and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.

Entry of the Confirmation Order shall, subject to the occurrence of the Effective Date, constitute the Bankruptcy Court's approval of the releases contained in the Plan and a finding that each release described is (i) in exchange for the good and valuable consideration provided by the Released Parties, including without limitation, the Released Parties' contributions to implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the holders of Claims and Interests, (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a sound exercise of the Debtors' business judgment.

Nothing in this Plan prohibits, precludes, or enjoins any Governmental Unit from asserting or filing a proof of Claim on or before the Governmental Bar Date.[2]

E.    *Exculpation*

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action based on any act or omission occurring from the Petition Date through the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the Restructuring Support Agreement, the Restructuring, the DIP Facility, the DIP Orders, the DIP Documents, any Canadian Court Recognition Order, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes gross negligence, intentional fraud or willful misconduct as determined by a Final Order, but in all respects

---

[2]    "Governmental Bar Date" shall have the meaning set forth in the *Order Establishing (I) Various Bar Dates for Filing Proofs of Claim, (II) Approving the Form and Manner of Filing Proofs of Claim, (III) Approving Notices of Bar Dates, and (IV) Granting Related Relief* [Docket No. 340].

such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code and have participated in good faith with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

F.    *Injunction*

Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests or Causes of Action or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities released or settled pursuant to the Plan.

## ARTICLE IX
## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

A.    *Conditions to Effective Date*

The following are conditions to the Effective Date that shall have been satisfied or waived in accordance with Article IX.B:

1.      the Restructuring Support Agreement shall not have been terminated and remains in full force and effect;

2.      the Bankruptcy Court shall have entered an order approving the Disclosure Statement, and such order shall not have been reversed, stayed, modified, or vacated on appeal;

3.      the Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order and such order shall not have been reversed, stayed, modified, or vacated on appeal;

4.      the Definitive Documents and the Restructuring Transactions Memorandum shall be consistent with the Restructuring Support Agreement and otherwise approved by the parties thereto consistent with their respective consent and approval rights as set forth in the Restructuring Support Agreement and the AST Definitive Agreements Order (as applicable);

5.      all actions, documents, and agreements necessary to implement and consummate the Plan (including any Plan Supplement) shall have been effected and executed;

6.      the Debtors shall have otherwise substantially consummated the Restructuring Transactions (subject to the consent of the Required Consenting Creditors and, as applicable, the consent rights of AST), and all transactions contemplated by this Plan and in the Definitive Documents, in a manner consistent in all respects with this Plan, unless waived by the Required Consenting Creditors and with respect to the transactions over which AST has consent rights, AST;

7.      the Bankruptcy Court shall have entered the DIP Orders and the Final DIP Order shall be in full force and effect;

8.      all Exit First Lien Facility Documents shall have been executed and delivered by each party thereto, and any conditions precedent related thereto shall have been satisfied or waived;

9.      the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed;

10.     all conditions precedent to the issuance of the New Preferred Units, other than the occurrence of the Effective Date, shall have occurred;

11.     the New Organizational Documents for Reorganized Parent shall have been adopted on terms consistent with the Restructuring Support Agreement;

12.     the Professional Fee Escrow Account shall have been established and funded as provided herein;

13.     all fees, expenses, and premiums payable pursuant to the Restructuring Support Agreement, the Plan, and other Definitive Documents, or pursuant to any order of the Bankruptcy Court shall have been paid by the Debtors or the Reorganized Debtors, as applicable, and all Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date shall have been paid in full in Cash by the Debtors or the Reorganized Debtors, as applicable;

14.     none of the Chapter 11 Cases shall have been converted to a case under chapter 7 of the Bankruptcy Code or dismissed;

15.     no Bankruptcy Court order appointing a trustee or examiner with expanded powers shall have been entered and remain in effect under any chapter of the Bankruptcy Code with respect to the Debtors;

16.     the Plan shall not have been materially amended, altered, or modified from the Plan as confirmed by the Confirmation Order, unless such material amendment, alteration, or modification has been made in accordance with the terms of the Plan as confirmed by the Confirmation Order;

17.     the Approval Condition (as defined in the Framework Agreement) shall have occurred, and all governmental and third-party approvals and consents, including FCC and ISED approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on such transactions;

18.     the AST Definitive Agreements Order shall have been entered and remain in full force and effect and the AST Definitive Agreements shall not have been terminated in accordance with any applicable terms and no default giving any party thereto the right to terminate any of the AST Definitive Agreements shall exist thereunder; and

19.     the Debtors shall have complied with all terms and obligations of the Boeing Order, including, but not limited to, payment of the Final Cure Amount (as defined in the Boeing Order), if any.

B.     *Waiver of Conditions*

The conditions to Confirmation and the Effective Date set forth in this Article IX may be waived by the Debtors upon the prior written consent of each of the Required Consenting Creditors and AST (to the extent consent rights over such condition are set forth in the Restructuring Support Agreement), without notice, leave, or order of the Bankruptcy Court or the Canadian Court; provided that the Debtors may not waive the conditions set forth in Article IX.A.2 and IX.A.3.   If the Plan is confirmed for fewer than all of the Debtors, only the conditions applicable to the Debtor

60

or Debtors for which the Plan is confirmed must be satisfied or waived for the Effective Date to occur.

# ARTICLE X
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN

A.    *Modification and Amendments*

Except as otherwise specifically provided in the Plan, and subject to the terms of the Restructuring Support Agreement, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan and the terms of the Restructuring Support Agreement, each Debtor expressly reserves its respective rights to revoke, withdraw, alter, amend, or modify the Plan with respect to such Debtor, one or more times, after Confirmation, to the extent necessary to carry out the purposes and intent of the Plan and the Restructuring Support Agreement, including by structuring the Plan, the Restructuring, and the Restructuring Transactions in a manner that maximizes tax efficiencies, provided that no such revocation, withdrawal, alteration, amendment, or modification for the purposes of tax efficiencies shall be consummated without the prior consent of the Required Consenting Creditors. Each Debtor may, to the extent necessary, initiate proceedings in the Bankruptcy Court or the Canadian Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan and the Restructuring Support Agreement. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article X. Without the prior written consent of AST and Viasat, no modification, amendment, or alteration of the Plan may be made if such modification, amendment, or alteration would be contrary to or inconsistent with the AST Definitive Agreements or the AST Definitive Agreements Order.

B.    *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof until entry of the Confirmation Order are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.    *Revocation or Withdrawal of Plan*

The Debtors reserve the right to revoke or withdraw the Plan with respect to any or all of the Debtors prior to the Confirmation Date and to file subsequent plans of reorganization, subject in each instance to the Restructuring Support Agreement. If the Debtors revoke or withdraw the Plan or Confirmation or the Effective Date does not occur then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant

to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity. For the avoidance of doubt, except as provided in the Restructuring Support Agreement, nothing in the Plan shall be construed as requiring termination or avoidance of the Restructuring Support Agreement upon non-occurrence of the Effective Date (subject, in all respects, to any consent, termination, or other rights of the Consenting Stakeholders under the Restructuring Support Agreement) or as otherwise preventing the Restructuring Support Agreement from being effective in accordance with its terms.

## ARTICLE XI
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.    allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or Unsecured status, or amount of any Claim or Interest, including (a) the resolution of any request for payment of any Administrative Claims and (b) the resolution of any objections to the Secured or Unsecured status, priority, amount, or allowance of Claims or Interests;

2.    decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals pursuant to the Bankruptcy Code or the Plan;

3.    resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtors are party or with respect to which the Debtors may be liable, and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims for rejection damages or cure amounts pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed, or assumed and assigned; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.    ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5.    adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

6.    adjudicate, decide, or resolve any and all matters related to sections 1141 and 1146 of the Bankruptcy Code;

7.  enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8.  enter and enforce any order for the sale or transfer of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.  resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10. issue injunctions, enter, and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan and ensure compliance with the Plan;

11. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII, and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

12. resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely repaid pursuant to Article VII.H.1;

13. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14. determine any other matters that may arise in connection with, or relate to, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15. enter an order or final decree concluding or closing the Chapter 11 Cases;

16. adjudicate any and all disputes arising from or relating to distributions under the Plan;

17. consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18. determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.     hear and determine matters concerning state, local, federal taxes and fees in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21.     hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in the Plan, including under Article VIII, regardless of whether such termination occurred before or after the Effective Date;

22.     determine whether and in what amount a Claim is Allowed;

23.     recover all assets of the Debtors and property of the Estates, wherever located;

24.     resolve any disputes concerning whether an Entity had sufficient notice of the Chapter 11 Case, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Case, any bar date established in the Chapter 11 Case, or any deadline for responding or objecting to the amount of a cure, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

25.     hear and determine any rights, claims, or Causes of Action held by, or accruing to, the Debtor pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory;

26.     adjudicate any maritime claims or liens, to the extent permitted by law;

27.     enforce all orders previously entered by the Bankruptcy Court; and

28.     hear any other matter as to which the Bankruptcy Court has jurisdiction.

*provided*, *however*, that documents contained in the Plan Supplement shall be governed in accordance with applicable jurisdictional, forum selection, or dispute resolution clauses in such documents.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect*

Subject to Article IX.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon Consummation, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have

accepted the Plan), all Entities that are party, or subject, to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all of the Debtors' counterparties to Executory Contracts, Unexpired Leases, and any other prepetition agreements.

B.      *Additional Documents*

On or before the Effective Date, the Debtors may enter into any such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Reorganized Debtors, as applicable, and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.  For the avoidance of doubt, such agreements or documents shall not be materially inconsistent with the provisions of this Plan.

C.      *Payment of Statutory Fees*

All fees under 28 U.S.C. § 1930 and any interest thereon under 31 U.S.C. § 3717 (together, "Statutory Fees") outstanding as of the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date.  On and after the Effective Date, the Reorganized Debtors shall be jointly and severally liable for paying any and all Statutory Fees in full in Cash when due in each Chapter 11 Case for each quarter (including any fraction thereof) until the earliest of such Chapter 11 Case being closed, dismissed or converted to a case under chapter 7 of the Bankruptcy Code.  The Debtors shall file all monthly operating reports due before the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Reorganized Debtors shall file with the Bankruptcy Court a post-confirmation quarterly report for each Chapter 11 Case for each quarter (including any fraction thereof) such case is pending, using UST Form 11-PCR. Notwithstanding anything to the contrary in the Plan, (i) Statutory Fees are Allowed; (ii) the U.S. Trustee shall not be required to file any proof of claim or any other request(s) for payment with respect to Statutory Fees; and (iii) the U.S. Trustee shall not be treated as providing any release under the Plan.

D.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests before Consummation.

E.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.      *Notices*

All notices, requests, and demands to or upon the Debtors shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, addressed as follows:

If to the Debtors, to:

    Ligado Networks LLC
    10802 Parkridge Boulevard
    Reston, VA 20191
    Attention:  Vicky McPherson
            Vicky@ligado.com

    with copies (which shall not constitute notice) to:

    Milbank LLP
    55 Hudson Yards
    New York, New York 10001
    Attention:  Dennis F. Dunne
            ddunne@milbank.com

            Matthew L. Brod
            mbrod@milbank.com

            Lauren C. Doyle
            ldoyle@milbank.com

    -and-

    Milbank LLP
    1850 K Street, NW, Suite 1100
    Washington, DC 20006
    Attention:  Andrew M. Leblanc
            aleblanc@milbank.com

If to a member of the Ad Hoc First Lien Group:

     Sidley Austin LLP
     787 Seventh Avenue
     New York, New York 10019
     Attention:  Stephen E. Hessler
             shessler@sidley.com

             Jason Hufendick
             jhufendick@sidley.com

     -and-

     Sidley Austin LLP
     One South Dearborn
     Chicago, Illinois 60603
     Attention:  Dennis M. Twomey
             dtwomey@sidley.com

If to a member of the Ad Hoc Crossholder Group:

     Kirkland & Ellis LLP
     601 Lexington Avenue
     New York, NY 10022
     Attention:  Brian Schartz, P.C.
             brian.schartz@kirkland.com

             Derek I. Hunter
             derek.hunter@kirkland.com

     -and-

     Kirkland & Ellis LLP
     300 North LaSalle
     Chicago, IL 60654
     Attention:  Patrick J. Nash Jr., P.C.
             patrick.nash@kirkland.com

     -and-

       Kirkland & Ellis LLP
       4550 Travis Street
       Dallas, TX 75205
       Attention:  David M. Nemecek, P.C.
              david.nemecek@kirkland.com

if to AST:

       AST & Science, LLC
       Midland Intl. Air & Space Port
       2901 Enterprise Lane
       Midland, TX 79706
       Attention: Andrew M. Johnson
       andrew.johnson@ast-science.com

       with copies (which shall not constitute notice) to:

       Freshfields US LLP
       3 World Trade Center
       175 Greenwich Street
       New York, NY 10007
       Attention:  Madlyn Gleich Primoff
              madlyn.primoff@freshfields.com

In the Notice of Entry of Confirmation Order, the Debtors shall notify all Entities that, in order to continue to receive documents after the Effective Date pursuant to Bankruptcy Rule 2002, such Entity (excluding the U.S. Trustee) must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After service of the Notice of Entry of Confirmation and the occurrence of the Effective Date, the Debtors shall be authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to the U.S. Trustee, those Entities whose right are affected by such documents, and those Entities who have filed such renewed requests.

       G.     *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court or the Canadian Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  For the avoidance of doubt, (1) upon the Effective Date, the automatic stay pursuant to section 362 of the Bankruptcy Code of any litigation proceedings against or involving the Debtors shall terminate, and (2) all injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.    *Entire Agreement*

Except as otherwise indicated, the Plan (including the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.    *Exhibits*

All exhibits, schedules, supplements, and appendices to the Plan (including any other documents to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date) are incorporated into and are a part of the Plan as if set forth in full in the Plan. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, and except with respect to the AST Definitive Agreements, AST Definitive Agreements Order, and the Break-Up Fee Order, the Plan shall control.

J.    *Nonseverability of Plan Provisions*

Before Confirmation, if any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors (and with the consent of the Required Consenting Creditors), may alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without consent of the Debtors and the Required Consenting Creditors; and (3) nonseverable and mutually dependent.

K.    *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors shall be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and, pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys shall be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any previous plan, and, therefore, none of any such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan and any previous plan.

L.      *Closing of Chapter 11 Cases*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022, any applicable Local Rules of the Bankruptcy Court, and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

M.      *Document Retention*

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with its current document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

N.      *Conflicts*

In the event of a conflict between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of a conflict between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order); *provided,* that, in the event any such conflict is a material conflict of the type that would require the Debtors to re-solicit the votes of Holders of Claims against the Debtors under section 1127 of the Bankruptcy Code, the Plan shall control solely with respect to such provision giving rise to such material conflict.  In the event of a conflict between the Confirmation Order and the Plan, the Confirmation Order shall control.

O.      *Restructuring Expenses*

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date shall be paid in full in cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases) without the requirement to file a fee application with the Bankruptcy Court and will not be subject to any requirement that (i) any party file any application with the Bankruptcy Court or (ii) the Bankruptcy Court enters any further orders.  All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least five (5) Business Days before the anticipated Effective Date; *provided*, that such estimate shall not be considered an admission or limitation with respect to such Restructuring Expenses.

P.      *Agents/Trustees Expenses*

The fees, costs, and expenses of the Agents/Trustee incurred, or estimated to be incurred, up to and including the Effective Date shall be paid in full in cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases) without the requirement to file a fee application with the Bankruptcy Court and will not be subject to any requirement that (i) any party file any application with the Bankruptcy Court or (ii) the Bankruptcy Court enters any further orders.  All such fees, costs, and expenses, to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least five (5) Business Days before the anticipated Effective Date; *provided*, that such estimate

70

shall not be considered an admission or limitation with respect to such fees, costs, and expenses of the Agents/Trustees.

*[Remainder of page intentionally left blank]*

Dated:  September 8, 2025

Respectfully submitted,

LIGADO NETWORKS LLC
LIGADO NETWORKS CORP.
LIGADO NETWORKS HOLDINGS (CANADA) INC.
LIGADO NETWORKS (CANADA) INC.
ATC TECHNOLOGIES, LLC
LIGADO NETWORKS INC. OF VIRGINIA
ONE DOT SIX LLC
ONE DOT SIX TVCC LLC
LIGADO NETWORKS SUBSIDIARY LLC
LIGADO NETWORKS FINANCE LLC
LIGADO NETWORKS BUILD LLC

By:    /s/ Douglas Smith
            Name: Douglas Smith
            Title: Chief Executive Officer