## EXHIBIT 1

**Blackline of Amended Plan**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIGADO NETWORKS LLC, *et al.*,[1] | ) | Case No. 25-10006 (TMH) |
| | ) | |
| Debtors. | ) | |
| | ) | (Jointly Administered) |

### JOINT CHAPTER 11 PLAN OF LIGADO NETWORKS LLC
### AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION

**MILBANK LLP**

Dennis F. Dunne, Esq. (*pro hac vice*)
Matthew L. Brod, Esq. (*pro hac vice*)
Lauren C. Doyle, Esq.  (*pro hac vice*)

55 Hudson Yards
New York, New York 10001
Telephone:     (212) 530-5000
Facsimile:     (212) 530-5219

Andrew M. Leblanc
~~1850 K Street~~**1101 New York Avenue**, NW~~, Suite 1100~~
Washington, DC ~~20006~~**20005**
Telephone:     (202) 835-7500
Facsimile:     (202) 263-7586

*Counsel for Debtors in Possession*

**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins, Esq. (Bar No. 2981)
Michael J. Merchant, Esq. (Bar No. 3854)
Amanda R. Steele, Esq. (Bar No. 5530)

920 North King Street
Wilmington, DE 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701

*Co-Counsel for Debtors in Possession*

Dated: ~~June 24~~**September 8**, 2025

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

**TABLE OF CONTENTS**

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW .................................................................................1

 A. Defined Terms ...........................................................................................1
 B. Rules of Interpretation .......................................................................~~18~~**19**
 C. Computation of Time ........................................................................~~19~~**20**
 D. Governing Law .................................................................................~~19~~**20**
 E. Reference to Monetary Figures ........................................................~~19~~**20**
 F. Reference to the Debtors or the Reorganized Debtors. .....................~~19~~**20**
 G. Consultation, Information, Notice, and Consent Rights. ..................~~19~~**20**

ARTICLE II ADMINISTRATIVE CLAIMS AND OTHER UNCLASSIFIED CLAIMS .........~~20~~**21**

 A. General Administrative Claims ........................................................~~20~~**21**
 B. Professional Fee Claims ...................................................................~~20~~**21**
  1. Final Fee Applications ..........................................................~~20~~**21**
  2. Professional Fee Escrow Account .........................................~~21~~**22**
  3. Post-Effective Date Fees and Expenses ...............................22
 C. DIP Claims .......................................................................................~~22~~**23**
 D. Priority Tax Claims ..........................................................................~~22~~**23**

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .......~~22~~**23**

 A. Classification of Claims and Interests .............................................~~22~~**23**
 B. Treatment of Claims and Interests ...................................................~~24~~**25**
  1. Class 1 – Priority Non-Tax Claims .......................................~~24~~**25**
  2. Class 2 – Other Secured Claims ...........................................~~24~~**25**
  3. Class 3 – First Lien Claims ..................................................~~24~~**25**
  4. Class 4 – 1.5 Lien Term Loan Claims ..................................~~25~~**26**
  5. Class 5 – Second Lien Notes Claims ....................................~~25~~**26**
  6. Class 6 – General Unsecured Claims ....................................~~26~~**27**
  7. Class 7 – Intercompany Claims ............................................~~26~~**27**
  8. Class 8 – Intercompany Interests ..........................................27
  9. Class 9 – Existing Series A-0 Preferred Units ......................~~27~~**28**
  10. Class 10 – Existing Series A-1 Preferred Units ....................~~27~~**28**
  11. Class 11 – Existing Series A-2 Preferred Units ....................~~27~~**28**
  12. Class 12 – Existing Series B Preferred Units ........................~~28~~**29**
  13. Class 13 – Existing Series C Preferred Units ........................~~28~~**29**
  14. Class 14 – Existing Series A Common Units .........................~~28~~**29**
  15. Class 15 – Existing Series B Common Units .........................29
 C. Special Provision Governing Unimpaired Claims, Executory Contracts and Unexpired Leases ......................................................................~~29~~**30**
 D. Intercompany Interests .....................................................................~~29~~**30**

ARTICLE IV ACCEPTANCE OR REJECTION OF PLAN ............................................ 2930

    A.    Voting Classes ................................................................................................ 2930
    B.    Presumed Acceptance of the Plan ................................................................... 3031
    C.    Confirmation Pursuant to Section 1129(a)(10) of the Bankruptcy Code ........ 3031
    D.    Elimination of Vacant Classes ....................................................................... 3031
    E.    Subordinated Claims ....................................................................................... 3031

ARTICLE V MEANS FOR IMPLEMENTATION OF PLAN ..................................... 31

    A.    General Settlement of Claims and Interests .................................................... 31
    B.    Restructuring Transactions .............................................................................. 3132
    C.    Sources of Consideration for Plan Distributions ........................................... 32
          1.    Cash .................................................................................................. 32
          2.    Exit First Lien Facility .................................................................... 3233
          3.    The AST Transaction ...................................................................... 33
          4.    New Preferred Units ........................................................................ 3334
          **5.**    **Boeing Order** ................................................................................. **34**
    D.    Corporate Existence ........................................................................................ 3334
    E.    Vesting of Assets in the Reorganized Debtors ............................................... 3435
    F.    Cancellation of Loans, Securities, and Agreements ....................................... 3435
    G.    Corporate and Other Entity Action ................................................................. 3637
    H.    New Organizational Documents ..................................................................... 3637
    I.    Directors and Officers of Reorganized Debtors ............................................. 3738
          1.    Reorganized Parent Board ............................................................... 3738
          2.    Officers of Reorganized Debtors .................................................... 3739
          3.    New Subsidiary Boards .................................................................... 3739
    J.    Exemption from Securities Laws .................................................................... 3839
    K.    Effectuating Documents; Further Transactions .............................................. 3839
    L.    Section 1146 Exemption ................................................................................. 3840
    M.    Preservation of Causes of Action ................................................................... 3940
    N.    Procedures for Treating Disputed Claims and Interests Under the Plan ......... 4041
          1.    Allowance of Claims ....................................................................... 4041
          2.    Prosecution of Objections to Claims or Interests ........................... 4041
          3.    Estimation of Claims and Interests .................................................. 4142
          4.    Disallowance of Claims ................................................................... 4143
          5.    Distributions to Holders of Disputed Claims .................................. 4243

ARTICLE VI TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
            LEASES ............................................................................................. 4244

    A.    Assumption of Executory Contracts and Unexpired Leases ........................... 4244
    B.    Cure of Defaults for Executory Contracts and Unexpired Leases Assumed ... 4344
    C.    Insurance Policies ........................................................................................... 4445
          1.    Insurance Policies ............................................................................ 4445
          2.    Directors and Officers Insurance Policies ....................................... 4546

D.      Indemnification Provisions .................................................. 45 47
E.      Modifications, Amendments, Supplements, Restatements, or Other
        Agreements ........................................................................ 46 47
F.      Reservation of Rights ......................................................... 46 47
G.      Contracts and Leases Entered into after Petition Date ......... 46 48
H.      Rejection Damages Claims ................................................. 46 48
I.      Compensation and Benefits Programs .................................. 46 48

ARTICLE VII PROVISIONS GOVERNING DISTRIBUTIONS .................. 47 49

A.      Timing and Calculation of Amounts to Be Distributed ........ 47 49
B.      Disbursing Agent .............................................................. 47 49
C.      Rights and Powers of Disbursing Agent ............................. 48 49
        1.      Powers of the Disbursing Agent ............................ 48 49
        2.      Incurred Expenses ................................................ 48 49
D.      Delivery of Distributions and Undeliverable or Unclaimed Distributions ... 48 50
        1.      Delivery of Distributions in General ...................... 48 50
        2.      Delivery of Distributions to First Lien Trustee ....... 48 50
        3.      Delivery of Distributions to Second Lien Trustee .... 49 50
        4.      Delivery of Distributions to First Lien Agent ......... 49 51
        5.      Delivery of Distributions to 1.5 Lien Agent ........... 50 51
        6.      Delivery of Distributions on DIP Claims ............... 50 51
        7.      Minimum Distributions .......................................... 50 52
        8.      Undeliverable Distributions and Unclaimed Property ... 50 52
E.      Compliance with Tax Requirements .................................... 51 52
F.      No Postpetition Interest on Claims and Interests ................. 51 53
G.      Setoffs and Recoupment .................................................... 51 53
H.      Claims Paid or Payable by Third Parties ............................. 52 53
        1.      Claims Paid by Third Parties ................................. 52 53
        2.      Claims Payable by Third Parties ............................ 52 54
        3.      Applicability of Insurance Policies ......................... 53 54
I.      Allocation Between Principal and Accrued Interest ............. 53 54

ARTICLE VIII SETTLEMENT, RELEASE, INJUNCTION, AND RELATED
              PROVISIONS ........................................................ 53 55

A.      Compromise and Settlement .............................................. 53 55
B.      Discharge of Claims and Termination of Interests .............. 53 55
C.      Release of Liens ................................................................ 54 56
D.      Releases of Released Parties ............................................. 54 56
        1.      Releases by the Debtors ........................................ 55 56
        2.      Releases by Holders of Claims or Interests ............ 56 57
E.      Exculpation ...................................................................... 57 59
F.      Injunction ......................................................................... 58 59

ARTICLE IX CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE ............ 58 60

    A.      Conditions to Effective Date ....................................................................... 58 60
    B.      Waiver of Conditions .................................................................................. 60 62

ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN ........ 60 62

    A.      Modification and Amendments .................................................................... 60 62
    B.      Effect of Confirmation on Modifications .................................................... 61 63
    C.      Revocation or Withdrawal of Plan .............................................................. 61 63

ARTICLE XI RETENTION OF JURISDICTION ....................................................... 61 63

ARTICLE XII MISCELLANEOUS PROVISIONS ..................................................... 64 66

    A.      Immediate Binding Effect ........................................................................... 64 66
    B.      Additional Documents ................................................................................. 64 66
    C.      Payment of Statutory Fees .......................................................................... 65 67
    D.      Reservation of Rights .................................................................................. 65 67
    E.      Successors and Assigns ............................................................................... 65 67
    F.      Notices ......................................................................................................... 65 67
    G.      Term of Injunctions or Stays ....................................................................... 68 70
    H.      Entire Agreement ........................................................................................ 68 70
    I.      Exhibits ....................................................................................................... 68 70
    J.      Nonseverability of Plan Provisions ............................................................. 68 70
    K.      Votes Solicited in Good Faith ..................................................................... 69 71
    L.      Closing of Chapter 11 Cases ....................................................................... 69 71
    M.      Document Retention .................................................................................... 69 71
    N.      Conflicts ...................................................................................................... 69 71
    O.      Restructuring Expenses ............................................................................... 69 72
    P.      Agents/Trustees Expenses ........................................................................... 70 72

## Introduction

Ligado Networks LLC ("Ligado"); ATC Technologies, LLC; Ligado Networks (Canada) Inc.; Ligado Networks Build LLC; Ligado Networks Corp.; Ligado Networks Finance LLC; Ligado Networks Holdings (Canada) Inc.; Ligado Networks Inc. of Virginia; Ligado Networks Subsidiary LLC; One Dot Six LLC; and One Dot Six TVCC LLC (each a "Debtor" and, collectively, the "Debtors"), jointly propose this plan of reorganization, as it may be amended, supplemented, restated, or modified from time to time (together with the Plan Supplement, the "Plan"), for the resolution of certain outstanding Claims against, and Interests in, the Debtors, pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended and as in effect on the Confirmation Date or otherwise applicable to the Chapter 11 Cases, the "Bankruptcy Code"). Capitalized terms used and not otherwise defined shall have the meanings ascribed to such terms in Article I.A.

Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. The classifications of Claims and Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan does not contemplate substantive consolidation of any of the Debtors.

Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan.

ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms*

As used in the Plan, capitalized terms have the meanings set forth below:

1.    "*1.5 Lien Administrative Agent*" means U.S. Bank Trust Company, National Association, as administrative agent under the 1.5 Lien Credit Agreement.

2.    "*1.5 Lien Agents*" means the 1.5 Lien Administrative Agent and the 1.5 Lien Collateral Agent.

3.    "*1.5 Lien Collateral Agent*" means U.S. Bank Trust Company, National Association, as collateral agent under the 1.5 Lien Term Loan Documents.

4.    "*1.5 Lien Credit Agreement*" means that certain 1.5 Lien Term Loan Agreement, by and among Ligado, as borrower, the guarantors party thereto, the 1.5 Lien Lenders, and the

26.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as amended from time to time and as applicable to the Chapter 11 Cases, promulgated pursuant to 28 U.S.C. § 2075 and the general, local, and chamber rules of the Bankruptcy Court.

**27.    "*Boeing Order*" means the *Order Approving the Stipulation Between Boeing and the Debtors (I) Resolving the Motion to Compel and (II) Establishing Schedule Regarding Boeing Cure Dispute*, dated July 28, 2025 [Docket No. 766], which shall continue in force following entry of the Confirmation Order.**

**28.**    27.   "*Break-Up Fee Order*" means the *Order Authorizing Payment of the AST Transaction Break-Up Fee and Break-Up Reimbursements*, dated January 27, 2025 [Docket No. 144] entered on the docket of the Chapter 11 Cases by the Bankruptcy Court approving the Break-Up Fee and the Break-Up Reimbursements (each as defined in the *Debtors' Motion for Entry of an Order Authorizing Payment of the AST Transaction Break-Up Fee and Break-Up Reimbursements*, dated January 6, 2025 [Docket No. 61]), which shall survive entry of the Confirmation Order.

**29.**    28.   "*Business Day*" means any day other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or day on which commercial banks in New York are required or authorized by law to remain closed.

**30.**    29.   "*Canadian Court*" means the Ontario Superior Court of Justice (Commercial List) having jurisdiction over the Recognition Proceedings.

**31.**    30.   "*Cash*" means cash and cash equivalents in U.S. dollars.

**32.**    31.   "*Cause of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, action, remedy, lien, indemnity, guaranty, suit, obligation, liability, loss, debt, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  For the avoidance of doubt, "Cause of Action" also includes:  (a) any right of setoff or counterclaim and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, including, but not limited to, Avoidance Actions; (d) any counterclaim or defense, including fraud, mistake, duress, usury, recoupment, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer or similar claim.

**33.**    32.   "*CCAA*" means the Companies' Creditors Arrangement Act (Canada).

**34.**    33.   "*Chapter 11 Case(s)*" means (a) when used with reference to a particular Debtor, the chapter 11 case filed for that Debtor under chapter 11 of the Bankruptcy Code in the

4

Bankruptcy Court and (b) when used with reference to all Debtors, the jointly administered chapter 11 cases for all of the Debtors.

**35.** ~~34.~~ "*claim*" means any "claim," as such term is defined in section 101(5) of the Bankruptcy Code, and "*Claim*" means a claim as such term is defined in section 101(5) of the Bankruptcy Code against a Debtor.

**36.** ~~35.~~ "*Claims and Noticing Agent*" means Omni Agent Solutions, Inc. in its capacity as the claims and noticing agent appointed in these cases.

**37.** ~~36.~~ "*Class*" means a class of Claims or Interests designated in Article III of the Plan, pursuant to section 1123(a)(1) of the Bankruptcy Code.

**38.** ~~37.~~ "*Claims Bar Date"* means unless otherwise provided in another order of the Bankruptcy Court, means the applicable bar dates set forth in the *Order Establishing (I) Bar Dates for Filing Proofs of Claim, Including Section 503(B)(9) Claims, (II) An Amended Schedules Bar Date and Rejection Damages Bar Date, (III) An initial Administrative Claims Bar Date, (IV) Approving the Form and Manner of Filing of Claims, (V) Approving Notices of Bar Dates, and (VI) Granting Related Relief* [Docket No. 340].

**39.** ~~38.~~ "*Claims Objection Bar Date***"** for all Claims, including 503(b)(9) Claims and other Administrative Claims, means, the later of: (a) 180 days after the Effective Date and (b) such other deadline for objecting to particular Claim(s) as may be established by the Plan, the Confirmation Order, or another order of the Bankruptcy Court.

**40.** ~~39.~~ "*Compensation and Benefits Programs*" means all employment and severance agreements and policies, and all employment, wages, compensation, and benefit plans and policies, workers' compensation programs, savings plans, retirement plans, deferred compensation plans, nonqualified deferred compensation plans, supplemental executive retirement plans, healthcare plans, disability plans, severance benefit plans, bonus, commission, incentive and retention plans, programs, and payments, life and accidental death and dismemberment insurance plans and programs, for all employees of the Debtors, and all amendments and modifications thereto, applicable to the Debtors' employees, former employees, retirees, and non-employee directors and managers, in each case existing with the Debtors as of immediately prior to the Effective Date.

**41.** ~~40.~~ "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

**42.** ~~41.~~ "*Confirmation Date*" means the date upon which Confirmation occurs.

**43.** ~~42.~~ "*Confirmation Order*" means the Bankruptcy Court order confirming the Plan pursuant to section 1129 of the Bankruptcy Code and approving the Disclosure Statement.

**44.** ~~43.~~ "*Consenting Stakeholders*" shall have the meaning ascribed to such term in the Restructuring Support Agreement.

5

**45.** 44. "*Consummation*" means the occurrence of the Effective Date.

**46.** 45. "*Cooperation Agreement Litigation*" means the complaint filed in New York County Supreme Court under the caption Ligado Networks LLC, and Ligado Networks (Canada) Inc., v. Inmarsat Global Limited, on March 19, 2025, and the claims asserted therein and any other current or future litigation that includes substantially similar claims against Inmarsat or any of its Affiliates.

**47.** 46. "*D&O Policy*" means any Insurance Policy (including any "tail policy") issued or providing coverage at any time to any of the Debtors (and any of their predecessors) for certain liabilities of the Debtors and/or their current or former directors', members', trustees', officers', managers', and/or employees' liability and all agreements, documents, or instruments relating thereto maintained by the Debtors and in effect or purchased on or after the Petition Date.

**48.** 47. "*Debtor*" or "*Debtors*" have the meaning specified in the Introduction hereto.

**49.** 48. "*Definitive Documents*" shall have the meaning ascribed to such term in the Restructuring Support Agreement and shall include all documentation in connection with the Backstop Commitment (as such term is defined in the AST Definitive Agreements). The Definitive Documents shall contain terms, conditions, representations, warranties, and covenants consistent in all material respects with the Plan and the Restructuring Support Agreement, and shall be subject to the consent rights of the Required Consenting Creditors and AST, as set forth in the Restructuring Support Agreement and the AST Definitive Agreements Order (as applicable).

**50.** "*DIP Amendment Order*" means the *Order Authorizing the Debtors to (I) Amend the DIP Credit Agreement and (II) Enter into the Letter Agreement and AST Power of Attorney* [Docket No. [●]].

**51.** U.S. Bank Trust Company, National Association, as administrative agent and collateral agent under the DIP Facility.

**52.** 49. "*DIP Agent*" means U.S. Bank Trust Company, National Association, as administrative agent and collateral agent under the DIP Facility.

**53.** 50. "*DIP Claims*" means all Claims against any Debtor arising on account of the DIP Facility or pursuant to or secured by the DIP Documents, including DIP New Money Claims and the DIP Roll-Up Claims.

**54.** 51. "*DIP Credit Agreement*" means that certain Senior Secured Super-Priority Debtor-In-Possession Loan Agreement, dated as of January 5, 2025, among Ligado, the other Debtors, the DIP Lenders and the DIP Agent, which governs the DIP Facility (including any amendments or supplements thereto).

6

**55.** ~~52.~~ "*DIP Documents*" means the documents that govern the DIP Facility, including the DIP Credit Agreement.

**56.** ~~53.~~ "*DIP Facility*" means the DIP New Money Loans and the DIP Roll-Up Loans.

**57.** ~~54.~~ "*DIP Lenders*" means the lenders party to the DIP Credit Agreement from time to time.

**58.** ~~55.~~ "*DIP Loans*" means the superpriority senior secured loans under the DIP Facility, including the DIP New Money Loans and the DIP Roll-Up Loans.

**59.** ~~56.~~ "*DIP New Money Claim*" means any Claim derived from or based upon the DIP New Money Loans pursuant to the DIP Documents.

**60.** ~~57.~~ "*DIP New Money Loans*" means the new money superpriority senior secured term loans in an aggregate initial principal amount of up to $441,999,891 (together with any applicable capitalized amount) extended to the Debtors pursuant to the DIP Credit Agreement and DIP Orders and any incremental amounts (together with any applicable capitalized amounts) provided pursuant to the DIP Credit Agreement and DIP Orders.

**61.** ~~58.~~ "*DIP Roll-Up Claim*" means any Claim derived from or based upon the DIP Roll-Up Loans pursuant to the DIP Documents.

**62.** ~~59.~~ "*DIP Roll-Up Loans*" means, collectively, the superpriority senior secured DIP Loans resulting from the "roll-up" of the First Lien Notes and/or First Lien Term Loans, in an initial principal amount of $466,349,014.27 (together with any applicable capitalized amount) and any incremental amounts (together with any applicable capitalized amounts), pursuant to the DIP Credit Agreement and DIP Orders.

**63.** ~~60.~~ "*DIP Orders*" means the Interim DIP Order ~~and~~**, the** Final DIP **Order, and the DIP Amendment** ~~Order~~ (including any amendments or supplemental orders in connection ~~therewith~~**with each of the foregoing)**.

**64.** ~~61.~~ "*Director*" means a member of the board of directors or board of managers, as applicable, of Reorganized Parent.

**65.** ~~62.~~ "*Disbursing Agent*" means one or more of the Reorganized Debtors and/or any other Entity or Entities selected by the Debtors or the Reorganized Debtors to make or facilitate distributions contemplated under the Plan.

**66.** ~~63.~~ "*Disclosure Statement*" means that certain *Disclosure Statement for the Joint Chapter 11 Plan of Ligado Networks LLC and its Affiliated Debtors and Debtors in Possession*, dated June 24, 2025, as it may be amended, supplemented, restated, or modified from time to time, including all exhibits and schedules thereto and references therein, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and as approved by the Bankruptcy Court.

7

**67.** ~~64.~~ "*Disputed*" means, with respect to a Claim, (a) that such Claim is disputed under Article V of the Plan or as to which the Debtors have interposed and not withdrawn an objection or request for estimation that has not been determined by a Final Order, (b) that proof of such Claim was required to be filed by order of the Bankruptcy Court but was not timely or properly filed, (c) that such Claim is listed in the Schedules, if any are filed, as unliquidated, contingent, or disputed, and that no request for payment or proof of such Claim has been filed, or (d) that such Claim is otherwise disputed by any of the Debtors or Reorganized Debtors in accordance with applicable law or contract, which dispute has not been withdrawn, resolved, or overruled by a Final Order. To the extent the Debtors dispute only the amount of a Claim, such Claim shall be deemed Allowed in the amount the Debtors do not dispute, if any, and Disputed as to the balance of such Claim.

**68.** ~~65.~~ "*Distribution Record Date*" means the Effective Date or such earlier date as determined by the Reorganized Debtors.

**69.** ~~66.~~ "*DTC*" means The Depository Trust Company or any successor thereto.

**70.** ~~67.~~ "*Effective Date*" means the date selected by the Debtors that is the first Business Day after the Confirmation Date, on which all conditions to the Effective Date specified in Article IX.A have been satisfied (or waived in accordance with Article IX.B).

**71.** ~~68.~~ "*Employment Agreement*" means any new and/or existing employment agreement or letter, indemnification agreement, severance agreement, or other agreement entered into with the Debtors' current and former officers and other employees by the Reorganized Debtors.

**72.** ~~69.~~ "*Entity*" means any "entity," as such term is defined in section 101(15) of the Bankruptcy Code.

**73.** ~~70.~~ "*Estate*" means, with respect to a particular Debtor, the estate created for such Debtor upon commencement of its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code, and the "*Estates*" means every Debtors' Estate, collectively.

**74.** ~~71.~~ "*Exculpated Parties*" means, collectively, and in each case in their capacity as such, (i) the Debtors, (ii) the Reorganized Debtors, and (iii) with respect to each of the foregoing Persons in clauses (i) through (ii), such Persons' current and former officers and directors, principals, members, partners, managers and Professionals, each in their respective capacities as such who served as of the Petition Date or during these Chapter 11 Cases.

**75.** ~~72.~~ "*Executory Contract*" means a contract to which one or more of the Debtors are party, other than an Unexpired Lease, which contract is subject to assumption or rejection in accordance with section 365 of the Bankruptcy Code.

**76.** ~~73.~~ "*Existing Common Units*" means, collectively, the Existing Series A Common Units and the Existing Series B Common Units.

8

77. ~~74.~~ "*Existing Operating Agreement*" means that certain Amended and Restated Operating Agreement of Ligado Networks LLC, dated as of October 23, 2020, as amended on August 15, 2021 and March 7, 2024.

78. ~~75.~~ "*Existing Series A Common Units*" means those certain Series A Common Units issued pursuant to the Existing Operating Agreement.

79. ~~76.~~ "*Existing Series A-0 Preferred Units*" means those certain Series A-0 Preferred Units issued pursuant to the Existing Operating Agreement.

80. ~~77.~~ "*Existing Series A-1 Preferred Units*" means those certain Series A-1 Preferred Units issued pursuant to the Existing Operating Agreement.

81. ~~78.~~ "*Existing Series A-2 Preferred Units*" means those certain Series A-2 Preferred Units issued pursuant to the Existing Operating Agreement.

82. ~~79.~~ "*Existing Series B Common Units*" means those certain Series B Common Units issued pursuant to the Existing Operating Agreement.

83. ~~80.~~ "*Existing Series B Preferred Units*" means those certain Series B Preferred Units issued pursuant to the Existing Operating Agreement.

84. ~~81.~~ "*Existing Series C Preferred Units*" means those certain Series C Preferred Units issued pursuant to the Existing Operating Agreement.

85. ~~82.~~ "*Exit Debt Parties*" means, collectively, the Exit First Lien Facility Agent and the Exit First Lien Facility Lenders.

86. ~~83.~~ "*Exit First Lien Facility*" means that certain first lien term loan credit facility to be entered into by the Reorganized Debtors on the Effective Date.

87. ~~84.~~ "*Exit First Lien Facility Agent*" means the administrative and collateral agent, in its capacities as such, under the Exit First Lien Facility.

88. ~~85.~~ "*Exit First Lien Facility Credit Agreement*" means the credit agreement governing the Exit First Lien Facility.

89. ~~86.~~ "*Exit First Lien Facility Documents*" means the documents that govern the Exit First Lien Facility, including the Exit First Lien Facility Credit Agreement.

90. ~~87.~~ "*Exit First Lien Facility Lenders*" means the banks, financial institutions, and the lenders party to the Exit First Lien Facility Documents.

91. ~~88.~~ "*Exit First Lien Loans*" means the term loans made under the Exit First Lien Facility.

9

**92.** ~~89.~~ "*FCC*" means the Federal Communications Commission.

**93.** ~~90.~~ "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court.

**94.** ~~91.~~ "*Final DIP Order(s)*" means the Bankruptcy Court order(s) authorizing use of cash collateral and the DIP Facility on a final basis (including any amendments or supplemental orders in connection therewith).

**95.** ~~92.~~ "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction (including the Canadian Court) with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, seek certiorari, or move for a new trial, re-argument, or rehearing has expired and no appeal, petition for certiorari, or motion for a new trial, re-argument, or rehearing has been timely filed, or (b) any appeal, petition for certiorari, or motion for a new trial, re-argument, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, petitioned, or moved.

**96.** ~~93.~~ "*First Lien Agent*" means U.S. Bank National Association, as administrative and collateral agent under the First Lien Credit Agreement.

**97.** ~~94.~~ "*First Lien Claims*" means, collectively, the First Lien Term Loan Claims and the First Lien Notes Claims.

**98.** ~~95.~~ "*First Lien Credit Agreement*" means that certain First Lien Loan Agreement, dated as of December 23, 2022, by and among Ligado, as borrower, the guarantors party thereto, the First Lien Lenders, and the First Lien Agent, as amended, modified, or supplemented from time to time.

**99.** ~~96.~~ "*First Lien First Out Term Loans*" means the term loans made under the First Lien Term Loan Facility that constitute "First Out Loans" (as defined therein).

**100.** ~~97.~~ "*First Lien First Out Term Loan Claims*" means any Claim derived from or based upon the First Lien First Out Term Loans.

**101.** ~~98.~~ "*First Lien Indenture*" means that certain Indenture, dated as of October 23, 2020, by and among Ligado, as issuer, the guarantors party thereto, and the First Lien Trustee, as amended, modified, or supplemented from time to time.

**102.** ~~99.~~ "*First Lien Lenders*" means the financial institutions party from time to time to the First Lien Credit Agreement as lenders, issuing banks, or bank product providers, in their respective capacities as such.

**103.** ~~100.~~ "*First Lien Loan Documents*" means the documents that govern the First Lien Term Loan Facility, including the First Lien Credit Agreement.

10

**104.** ~~101.~~ "*First Lien Loan PIK Interest*" has the meaning set forth in the First Lien Credit Agreement.

**105.** ~~102.~~ "*First Lien Noteholders*" means the holders of the First Lien Notes.

**106.** ~~103.~~ "*First Lien Notes*" means those certain 15.5% PIK Senior Secured First Lien Notes due 2023 issued pursuant to the First Lien Indenture.

**107.** ~~104.~~ "*First Lien Notes Claims*" means any Claim on account of the First Lien Notes and payable under the First Lien Indenture.

**108.** ~~105.~~ "*First Lien Notes Documents*" means the documents that govern the First Lien Notes, including the First Lien Indenture.

**109.** ~~106.~~ "*First Lien Term Loan Claims*" means all Claims, other than the First Lien First Out Term Loan Claims, arising on account of the First Lien Term Loan Facility or pursuant to or secured by the First Lien Credit Agreement or the other First Lien Loan Documents.

**110.** ~~107.~~ "*First Lien Term Loan Facility*" means the senior secured loan facility made available by the First Lien Lenders to the Debtors pursuant to and subject to the terms and conditions of the First Lien Credit Agreement.

**111.** ~~108.~~ "*First Lien Term Loans*" means all term loans made under the First Lien Term Loan Facility.

**112.** ~~109.~~ "*First Lien Trustee*" means U.S. Bank National Association, as indenture and collateral trustee under the First Lien Notes Documents.

**113.** ~~110.~~ "*Foreign Representative*" means the entity authorized by the Bankruptcy Court to act as the foreign representative for the Debtors in the Recognition Proceedings.

**114.** ~~111.~~ "*General Administrative Claim*" means any Administrative Claim other than a Professional Fee Claim, a DIP Claim, or a Claim for fees and charges assessed against the Estates under chapter 123 of title 28 United States Code, 28 U.S.C. §§ 1911-1930.

**115.** ~~112.~~ "*General Unsecured Claim*" means any Unsecured Claim, other than an Intercompany Claim, against any Debtor.

**116.** ~~113.~~ "*Governmental Unit*" means any "governmental unit," as such term is defined in section 101(27) of the Bankruptcy Code.

**117.** ~~114.~~ "*Impaired*" means, with respect to a Claim, Interest, or a Class of Claims or Interests, "impaired" within the meaning of such term in section 1124 of the Bankruptcy Code.

**118.** ~~115.~~ "*Incentive Plan*" means the Incentive Plan as defined in the Existing Operating Agreement.

11

119. 116. "*Indemnification Provisions*" means each of the Debtors' indemnification provisions in effect as of the Petition Date, whether in the Debtors' memoranda and articles of association, bylaws, certificates of incorporation, other formation documents, board resolutions, management or indemnification agreements, employment contracts, or otherwise providing a basis for any obligation of a Debtor to indemnify, defend, reimburse, or limit the liability of, or to advances fees and expenses to, any of the Debtors' current and former directors, officers, equity holders, managers, members, employees, accountants, investment bankers, attorneys, other professionals, and professionals of the Debtors, and such current and former directors', officers', and managers' respective Affiliates, each of the foregoing solely in their capacity as such.

120. 117. "*Inmarsat*" means Inmarsat Global Limited.

121. 118. "*Inmarsat Cooperation Agreement*" means the Amended and Restated Cooperation Agreement, dated as of August 6, 2010, between the Debtors and Inmarsat Global Limited (as further amended and restated from time to time).

122. 119. "*Insurer*" means any insurance company or third party administrator that issued or entered into an Insurance Policy and any respective predecessors and/or affiliates thereof.

123. 120. "*Insurance Policies*" means all insurance policies that have been issued (or provide coverage) at any time to the Debtors or any of their predecessors, and all agreements, documents, or instruments relating thereto, including any D&O Policies, and workers' compensation.

124. 121. "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor.

125. 122. "*Intercompany Interest*" mean any Interest held by a Debtor in another Debtor.

126. 123. "*Interest*" means any equity interests in the Debtors, including (a) all ordinary shares, units, common stock, preferred stock, membership interest, partnership interest or other instrument, evidencing any fixed or contingent ownership interest in the Debtors, whether or not transferable, including any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtors, (b) the rights of any Person or Entity to purchase or demand the issuance of any of the foregoing, including (i) conversion, exchange, voting participation, and dividend rights, (ii) liquidation preferences, (iii) options, warrants, and call and put rights, and (iv) share-appreciation rights, in each case, that existed immediately before the Effective Date, and (c) including all other "equity interests" (as defined in section 101(16) of the Bankruptcy Code) in the Debtors. "Interest" includes Existing Common Units, Existing Series A-0 Preferred Units, Existing Series A-1 Preferred Units, Existing Series A-2 Preferred Units, Existing Series B Preferred Units, and Existing Series C Preferred Units.

**127.** ~~124.~~ "*Interim DIP Order*" means the Bankruptcy Court order authorizing use of cash collateral and the DIP Facility on an interim basis pending entry of the Final DIP Order.

**128.** ~~125.~~ "*Interim Compensation Order*" means the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Retained Professionals.

**129.** ~~126.~~ "*ISED*" means Innovation, Science and Economic Development (Canada).

**130.** ~~127.~~ "*Lien*" means a "lien" as such term is defined in section 101(37) of the Bankruptcy Code.

**131.** ~~128.~~ "*Ligado Takings Case*" means the case in the U.S. Federal Court of Claims under the caption *Ligado Networks LLC v. USA* (Case No. 23-CV-01797-EJD).

**132.** ~~129.~~ "*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

**133.** ~~130.~~ "*Management Incentive Plan*" means the new management incentive plan of the Reorganized Debtors, the terms of which shall be included in the Plan Supplement and shall be acceptable to the Required Consenting Creditors.

**134.** ~~131.~~ "*New Boards*" means, collectively, the Reorganized Parent Board and New Subsidiary Boards.

**135.** ~~132.~~ "*New Organizational Documents*" means the new bylaws, certificates of incorporation, certificates of formation, limited liability company agreements, operating agreements, including the Second Amended and Restated Operating Agreement, certificates of limited partnership, agreements of limited partnership, or such other organizational documents of the Reorganized Debtors, the forms of which shall be included in the Plan Supplement and shall be in form and substance acceptable to the Required Consenting Creditors.

**136.** ~~133.~~ "*New Preferred Units*" means, collectively, the New Series A-1 Preferred Units, the New Series A-2 Preferred Units, the New Series A-3 Preferred Units, the New Series B-0 Preferred Units, the New Series B-1 Preferred Units, the New Series B-2 Preferred Units, the New Series C Preferred Units, and the New Series D Preferred Units.

**137.** ~~134.~~ "*New Series A-1 Preferred Units*" means the new "Series A-1 Preferred Units" of Reorganized Parent to be authorized, issued, and outstanding on and after the Effective Date pursuant to the terms and conditions of the Second Amended and Restated Operating Agreement.

**138.** ~~135.~~ "*New Series A-2 Preferred Units*" means the new "Series A-2 Preferred Units" of Reorganized Parent to be authorized, issued, and outstanding on and after the Effective Date pursuant to the terms and conditions of the Second Amended and Restated Operating Agreement.

13

139.    ~~136.~~ *"New Series A-3 Preferred Units"* means the new "Series A-3 Preferred Units" of Reorganized Parent to be authorized, issued, and outstanding on and after the Effective Date pursuant to the terms and conditions of the Second Amended and Restated Operating Agreement.

140.    ~~137.~~ *"New Series B-0 Preferred Units"* means the new "Series B-0 Preferred Units" of Reorganized Parent to be authorized, issued, and outstanding on and after the Effective Date pursuant to the terms and conditions of the Second Amended and Restated Operating Agreement.

141.    ~~138.~~ *"New Series B-1 Preferred Units"* means the new "Series B-1 Preferred Units" of Reorganized Parent to be authorized, issued, and outstanding on and after the Effective Date pursuant to the terms and conditions of the Second Amended and Restated Operating Agreement.

142.    ~~139.~~ *"New Series B-2 Preferred Units"* means the new "Series B-2 Preferred Units" of Reorganized Parent to be authorized, issued, and outstanding on and after the Effective Date pursuant to the terms and conditions of the Second Amended and Restated Operating Agreement.

143.    ~~140.~~ *"New Series C Preferred Units"* means the new "Series C Preferred Units" of Reorganized Parent to be authorized, issued, and outstanding on and after the Effective Date pursuant to the terms and conditions of the Second Amended and Restated Operating Agreement.

144.    ~~141.~~ *"New Series D Preferred Units"* means the new "Series D Preferred Units" of Reorganized Parent to be authorized, issued, and outstanding on and after the Effective Date pursuant to the terms and conditions of the Second Amended and Restated Operating Agreement.

145.    ~~142.~~ *"New Subsidiary Boards"* means the initial board of directors or managers (as applicable) for the Reorganized Debtors (other than the Reorganized Parent), as appointed pursuant to Article V.I.

146.    ~~143.~~ *"Notice of Entry of Confirmation Order"* means a notice to be sent by the Reorganized Debtors following the entry of the Confirmation Order stating that the Bankruptcy Court has confirmed the Plan and providing such other information as required by the Confirmation Order.

147.    ~~144.~~ *"Other Secured Claim"* means any Secured Claim against any Debtor other than an Administrative Claim, DIP Claim, Priority Claim, First Lien First Out Term Loan Claim, First Lien Claim, 1.5 Lien Term Loan Claim, or Second Lien Notes Claim.

148.    ~~145.~~ *"Person"* means any individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited partnership, trust, estate, unincorporated organization, Governmental Unit, or other Entity.

14

**149.** ~~146.~~ "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

**150.** ~~147.~~ "*Plan*" has the meaning specified in the Introduction hereto.

**151.** ~~148.~~ "*Plan Supplement*" means the compilation of documents (or forms thereof), schedules, and exhibits to the Plan to be filed at least seven days prior to the deadline to object to Confirmation of the Plan or such later date as may be approved by the Bankruptcy Court, as each may be amended, supplemented, or modified from time to time prior to the occurrence of the Effective Date in accordance with the Plan, Restructuring Support Agreement, Bankruptcy Code, and Bankruptcy Rules, and which may include, as applicable: (a) the New Organizational Documents; (b) a list of the members of the New Boards (to the extent known); (c) the Exit First Lien Facility Documents; (d) the Restructuring Transactions Memorandum, (e) the Schedule of Retained Causes of Action; (f) the Management Incentive Plan, (g) the Schedule of Rejected Executory Contracts and Unexpired Leases (if any); and (g) such other documents as are necessary or advisable to implement the Restructuring contemplated by the Restructuring Support Agreement and the Plan, each of which shall be consistent with the Restructuring Support Agreement and subject to the consent of the Required Consenting Creditors.

**152.** ~~149.~~ "*Priority Claim*" means any Priority Non-Tax Claim or Priority Tax Claim.

**153.** ~~150.~~ "*Priority Non-Tax Claim*" means any Claim against any Debtor entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than an Administrative Claim, DIP Claim, or Priority Tax Claim.

**154.** ~~151.~~ "*Priority Tax Claim*" means any Claim of a Governmental Unit against any Debtor entitled to priority pursuant to section 502(i) or 507(a)(8) of the Bankruptcy Code.

**155.** ~~152.~~ "*Pro Rata*" means the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Interests in that Class.

**156.** ~~153.~~ "*Professional*" means an Entity:  (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**157.** ~~154.~~ "*Professional Fee Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

**158.** ~~155.~~ "*Professional Fee Escrow Account*" means an interest-bearing account in an amount equal to the total Professional Fee Reserve Amount funded by the Reorganized Debtors on the Effective Date.

15

**159.** ~~156.~~ "*Professional Fee Reserve Amount*" means the aggregate amount of Professional Fee Claims that the Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Confirmation Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II.B of this Plan.

**160.** ~~157.~~ "*Recognition Order*" means the recognition order entered by the Canadian Court in connection with the Restructuring and the Recognition Proceedings.

**161.** ~~158.~~ "*Recognition Proceedings*" means the proceedings commenced in the Canadian Court by the Foreign Representative on behalf of the Debtors pursuant to Part IV of the CCAA.

**162.** ~~159.~~ "*Released Parties*" means, collectively, and in each case in their capacity as such,  (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Consenting Stakeholders, (iv) each of the Agents/Trustees, (v) the DIP Agent and the DIP Lenders, (vi) the Exit Debt Parties, (vii) AST, (viii) Viasat (subject to the AST Definitive Agreements Order), and (ix) each current and former affiliate of each entity in clause (i) through (viii), each of such party's current and former predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees; *provided*, *however*, that any holder of a Claim or Interest that (x) files an objection to the Plan or (y) opts out of the releases set forth in ~~Article VIII.D.2~~**Article VIIID.2**, as applicable, shall not be a "Released Party."

**163.** ~~160.~~ "*Releasing Parties*" means, collectively, and in each case in their capacity as such, (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Consenting Stakeholders, (iv) the Agents/Trustees, (v) the DIP Agent and the DIP Lenders, (vi) the Exit Debt Parties, (vii) AST, (viii) Viasat (subject to the AST Definitive Agreements Order), (ix) with respect to each of the foregoing Persons in clauses (i) through (viii), such Persons' predecessors, successors, assigns, subsidiaries, affiliates (including affiliates of any predecessors), current and former officers and directors, principals, equity holders (including equity holders of any predecessors), members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, (x) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but do not opt out of granting the releases set forth in ~~Article VIII.D.2~~**Article VIIID.2**, and (xi) the holders of all Claims and Interests who were given notice of the opportunity and served with a provided form to opt out of granting the releases set forth in ~~Article VIII.D.2~~**Article VIIID.2** but did not timely opt out.

**164.** ~~161.~~ "*Reorganized Parent*" means Ligado, or any successor to any such entity, by merger, consolidation, or otherwise, in each case on or after the Effective Date.

16

165. ~~162.~~ "*Reorganized Parent Board*" means the initial board of Directors of the Reorganized Parent, as appointed pursuant to Article V.I.

166. ~~163.~~ "*Reorganized Debtors*" means, collectively, the Reorganized Parent and its direct and indirect subsidiaries, or any successors thereto, by merger, consolidation, or otherwise, in each case on or after the Effective Date.

167. ~~164.~~ "*Required Consenting Creditors*" shall have the meaning ascribed to such term in the Restructuring Support Agreement.

168. ~~165.~~ "*Restructuring*" shall have the meaning ascribed to such term in the Restructuring Support Agreement.

169. ~~166.~~ "*Restructuring Expenses*" means, collectively, (i) all of the Ad Hoc Crossholder Group's and Ad Hoc First Lien Group's reasonable and documented fees, costs, and expenses incurred through the Effective Date in connection with the Restructuring Transactions, including, without limitation, all reasonable and documented fees, costs, and expenses of the Ad Hoc Crossholder Group Advisors and Ad Hoc First Lien Group Advisors and (ii) the reasonable and documented fees, costs, and expenses of the AST Advisors incurred from the Petition Date through the Effective Date in connection with the Restructuring Transactions.

170. ~~167.~~ "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement, dated as of January 5, 2025, by and among Ligado Networks LLC and certain of its direct and indirect subsidiaries listed on its signature page thereto, the Consenting Stakeholders, and AST, together with all exhibits and schedules thereto, as may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms.

171. ~~168.~~ "*Restructuring Transactions*" has the meaning set forth in Article V.B.

172. ~~169.~~ "*Restructuring Transactions Memorandum*" means a summary description of certain Restructuring Transactions to be included in the Plan Supplement that will set forth the material transactions required to effectuate the Restructuring Transactions including any "tax steps memorandum" or other document describing the steps to be taken and the tax consequences thereof in connection with the Restructuring Transactions which shall be subject to the consent of the Required Consenting Creditors.

173. ~~170.~~ "*Restructuring Term Sheet*" means that certain term sheet that sets forth the principal terms of the Restructuring Transaction, attached to the Restructuring Support Agreement as Exhibit A.

174. ~~171.~~ "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means the schedule (if any) of Executory Contracts and Unexpired Leases that shall be rejected by each applicable Debtor as of the Effective Date, as set forth in the Plan or Plan Supplement.

175. ~~172.~~ "*Schedule of Retained Causes of Action*" means a schedule of Causes of Action retained by the Reorganized Debtors filed as part of the Plan Supplement, which, for the avoidance of doubt, shall include, among others, any Causes of Action that the Debtors or the

17

Reorganized Debtors, as applicable, may have in connection with (i) the Ligado Takings Case and (ii) the Cooperation Agreement Litigation (subject to the releases provided for under the AST Definitive Agreements Order).

**176.** ~~173.~~ "*Schedules*" means the schedules of assets and liabilities, statements of financial affairs, lists of holders of Claims and Interests and all amendments or supplements thereto filed by the Debtors with the Bankruptcy Court.

**177.** ~~174.~~ "*Second Amended and Restated Operating Agreement*" means the Operating Agreement as further amended and restated pursuant to the terms of the Restructuring Support Agreement, the form of which will be included in the Plan Supplement, or as otherwise agreed by the Debtors and the Required Consenting Creditors.

**178.** ~~175.~~ "*Second Lien Collateral Trustee*" means U.S. Bank National Association, as collateral trustee under the Second Lien Notes Documents.

**179.** ~~176.~~ "*Second Lien Indenture*" means that certain Indenture, dated as of October 23, 2020, by and among Ligado, as issuer, the guarantors party thereto, and the Second Lien Trustee.

**180.** ~~177.~~ "Second Lien Noteholders" means the holders of the Second Lien Notes.

**181.** ~~178.~~ "*Second Lien Notes*" means those certain 17.5% PIK Senior Secured Second Lien Notes due 2024 issued pursuant to the Second Lien Indenture.

**182.** ~~179.~~ "*Second Lien Notes Claims*" means any Claim on account of the Second Lien Notes and payable under the Second Lien Indenture.

**183.** ~~180.~~ "*Second Lien Notes Documents*" means the documents that govern the Second Lien Notes, including the Second Lien Indenture.

**184.** ~~181.~~ "*Second Lien Trustee*" means Wilmington Savings Fund Society, FSB, as indenture trustee under the Second Lien Notes Documents.

**185.** ~~182.~~ "*Second Lien Trustees*" means, collectively, the Second Lien Trustee and the Second Lien Collateral Trustee.

**186.** ~~183.~~ "*Secured Claim*" means any Claim that is secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

**187.** ~~184.~~ "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended, together with the rules and regulations promulgated thereunder.

18

**188.** ~~185.~~ "*Strategic Collaboration and Spectrum Usage Agreement*" means that certain Strategic Collaboration and Spectrum Usage Agreement dated March 22, 2025, as amended, supplemented, or modified from time to time.

**189.** ~~186.~~ "*Transaction Commission Plan*" means that certain Ligado Networks LLC Transaction Commission Plan which became effective on December 10, 2021, as amended, supplemented, or modified from time to time.

**190.** ~~187.~~ "*Unexpired Lease*" means a lease to which one or more of the Debtors are party, which lease is subject to assumption or rejection in accordance with section 365 of the Bankruptcy Code.

**191.** ~~188.~~ "*Unimpaired*" means, with respect to a Class, Claim, Interest, or a holder of a Claim or Interest, that such Class, Claim, Interest, or holder is not Impaired.

**192.** ~~189.~~ "*Unsecured Claim*" means any Claim, other than an Administrative Claim, Priority Claim, Intercompany Claim, First Lien Claim, 1.5 Lien Term Loan Claim, Second Lien Notes Claim, or Other Secured Claim.

**193.** ~~190.~~ "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

**194.** ~~191.~~ "*Voting Record Date*" means June 20, 2025.

**195.** ~~192.~~ "*Viasat*" means Viasat, Inc. together with Inmarsat.

B.   *Rules of Interpretation*

For purposes of the Plan and unless otherwise specified herein:  (1) each term, whether stated in the singular or the plural, shall include, in the appropriate context, both the singular and the plural; (2) each pronoun stated in the masculine, feminine, or neuter gender shall include, in the appropriate context, the masculine, feminine, and the neuter gender; (3) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (4) all references to articles or Articles are references to the Articles hereof; (5) all captions and headings are inserted for convenience of reference only and are not intended to be a part of, or to affect the interpretation of, the Plan; (6) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (7) any reference to an existing document, schedule, or exhibit, whether or not filed, having been filed, or to be filed, shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (8) any reference to an event occurring on a specified date, including on the Effective Date, shall mean that the event will occur on that date or as soon thereafter as reasonably practicable; (9) any reference to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions except as specifically provided herein; (10) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time and as applicable to

19

Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their terms. The New Organizational Documents will provide preemptive rights only to the New Series A-1 Preferred Units, which shall apply with respect to all issuances of Units or debt (subject to customary carveouts). For the avoidance of doubt, any and all preemptive rights currently provided for in the Existing Operating Agreement will be waived and not apply with respect to any transactions in connection with the Plan and/or Restructuring.

**5.    Boeing Order**

**The Debtors shall comply with all terms and obligations of the Boeing Order, including, but not limited to, payment of the Final Cure Amount (as defined in the Boeing Order). For the avoidance of doubt, and notwithstanding anything else herein, the terms of the Boeing Order shall continue in force following entry of the Confirmation Order, and in the event of a conflict between the Boeing Order, on the one hand, and the Plan, Confirmation Order, or any other documents related thereto, on the other hand, the terms of the Boeing Order shall control.**

D.    *Corporate Existence*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated herein, including the Restructuring Transactions Memorandum, each of the Reorganized Debtors and their direct and indirect subsidiaries shall continue to exist after the Effective Date as a separate corporation, limited liability company, limited partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, limited partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective bylaws, limited liability company agreement, operating agreement, limited partnership agreement (or other formation documents) in effect prior to the Effective Date, except to the extent such formation documents are amended under the Plan or otherwise (including with respect to the Second Amended and Restated Operating Agreement), and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval of the Bankruptcy Court, the Canadian Court (to the extent permitted by Canadian law), or any other Entity (other than any requisite filings required under applicable law).

E.    *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated herein, including the Restructuring Transactions Memorandum, on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property in each Estate, all Causes of Action (including, without limitation, all Causes of Action identified in the Schedule of Retained Causes of Action), and any property acquired by the Debtors pursuant to the Plan shall vest in the Reorganized Debtors, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtors may operate their businesses and may use, acquire, or dispose of

35

identified in the Plan Supplement to the extent known. Each such director, manager, and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtors.

Except to the extent that a member of the board of directors or managers, as applicable, of a Debtor continues to serve as a director or manager of such Reorganized Debtor on the Effective Date, the members of the board of directors or managers, as applicable, of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the Reorganized Debtors on or after the Effective Date and each such director or manager shall be deemed to have resigned or shall otherwise cease to be a director or manager of the applicable Debtor on the Effective Date. Commencing on the Effective Date, each of the directors or managers, as applicable, of each of the Reorganized Debtors shall serve pursuant to the terms of the applicable organizational documents of such Reorganized Debtor and may be replaced or removed in accordance with such organizational documents.

1.      Reorganized Parent Board

The initial Reorganized Parent Board shall be appointed on the Effective Date in accordance with the Restructuring Support Agreement and the Second Amended and Restated Operating Agreement. The initial Reorganized Parent Board shall be disclosed in the Plan Supplement to the extent known.

2.      Officers of Reorganized Debtors

Except as otherwise provided in the Plan Supplement, the officers of the respective Reorganized Debtors immediately before the Effective Date, as applicable, shall serve as the initial officers of each of the respective Reorganized Debtors on and after the Effective Date. After the Effective Date, the selection of officers of the Reorganized Debtors shall be as provided by their respective organizational documents.

3.      New Subsidiary Boards

On the Effective Date, the New Subsidiary Boards shall be appointed in accordance with the applicable New Organizational Documents **or as set forth in the Plan Supplement**.

J.      *Exemption from Securities Laws*

The offer, issuance, and distribution under the Plan of the New Preferred Units shall be exempt, without further act or actions by any Entity, from registration under the Securities Act and any other applicable securities laws to the fullest extent permitted by section 1145 of the Bankruptcy Code. Subject to any transfer provisions and other applicable provisions set forth in the New Organizational Documents, these securities may be resold without registration under the Securities Act or other federal securities laws pursuant to the exemption provided by section 4(a)(1) of the Securities Act, unless the holder is an "underwriter" with respect to such securities, as that term is defined in section 1145(b) of the Bankruptcy Code. In addition, subject to any transfer provisions and other applicable provisions set forth in the New Organizational

39

Except as otherwise explicitly provided with respect to an Insurance Policy Notwithstanding**, notwithstanding** anything to the contrary in the Disclosure Statement, Plan, the Definitive Documents, the Confirmation Order, any bar date order or notice, any claim objection or notice of satisfaction of claims, or any other document related to any of the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction, discharge or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases):

a.    on the Effective Date, all Insurance Policies shall be assumed in their entireties, unaltered, by the Reorganized Debtors pursuant to sections 105 and 365 of the Bankruptcy Code and shall continue in full force and effect thereafter in accordance with their respective terms and conditions;

b.    the Reorganized Debtors shall be liable in full for all of their and all of the Debtors' obligations under the Insurance Policies in accordance with and subject to the terms and conditions of the Insurance Policies, regardless of whether any such obligations arise or become due before, on, or after the Effective Date, and without the need or requirement for an Insurer to file or serve any objection to a notice of proposed cure amount (or lack of such notice) or file or serve a request, motion, or application for payment of or Proof of Claim, cure amount, or Administrative Claim;

c.    nothing shall permit or otherwise effectuate a sale, assignment or other transfer of the Insurance Policies, any portion thereof, and/or any rights, benefits, claims, proceeds, rights to payment, or recoveries under and/or relating to the Insurance Policies without the prior express written consent of the applicable Insurer; and

d.    from and after the Effective Date, the automatic stay of section 362(a) of the Bankruptcy Code and the injunctions set forth in Article VIII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (1) (A) claimants with valid workers' compensation claims, (B) claimants with claims against non-Debtors that may be entitled to coverage under Insurance Policies with respect to such claims, or (C) direct action claims against any of the Insurers under applicable non-bankruptcy law to proceed with their claims; (2) the Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims, (B) claims against non-Debtors who may be entitled to coverage under the Insurance Policies with respect to such claims, (C) claims where a claimant asserts a direct claim against any of the Insurers under applicable non-bankruptcy law, or an order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay and/or the injunctions set forth in Article VIII of the Plan to proceed with its claim, and (D) all costs in relation to each of the foregoing; (3) the Insurers to draw on or against, use or apply any or all of the collateral or security provided by or on behalf of the Debtors (and the Reorganized Debtors, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the Debtors (and the Reorganized Debtors, as applicable) and/or apply such proceeds to the obligations of the Debtors (and the Reorganized Debtors, as applicable) under the Insurance Policies in such order as the Insurer may determine; and (4) the Insurers to cancel any Insurance Policies and take other actions relating to the Insurance Policies (including

46

16.      the Plan shall not have been materially amended, altered, or modified from the Plan as confirmed by the Confirmation Order, unless such material amendment, alteration, or modification has been made in accordance with the terms of the Plan as confirmed by the Confirmation Order;

17.      the Approval Condition (as defined in the Framework Agreement) shall have occurred, and all governmental and third-party approvals and consents, including FCC and ISED approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on such transactions; ~~and~~

18.      the AST Definitive Agreements Order shall have been entered and remain in full force and effect and the AST Definitive Agreements shall not have been terminated in accordance with any applicable terms and no default giving any party thereto the right to terminate any of the AST Definitive Agreements shall exist thereunder~~.~~**; and**

19.      **the Debtors shall have complied with all terms and obligations of the Boeing Order, including, but not limited to, payment of the Final Cure Amount (as defined in the Boeing Order), if any.**

B.      *Waiver of Conditions*

The conditions to Confirmation and the Effective Date set forth in this Article IX may be waived by the Debtors upon the prior written consent of each of the Required Consenting Creditors and AST (to the extent consent rights over such condition are set forth in the Restructuring Support Agreement), without notice, leave, or order of the Bankruptcy Court or the Canadian Court; provided that the Debtors may not waive the conditions set forth in Article IX.A.2 and IX.A.3.      If the Plan is confirmed for fewer than all of the Debtors, only the conditions applicable to the Debtor or Debtors for which the Plan is confirmed must be satisfied or waived for the Effective Date to occur.

**ARTICLE X**
**MODIFICATION, REVOCATION, OR WITHDRAWAL OF PLAN**

A.      *Modification and Amendments*

Except as otherwise specifically provided in the Plan, and subject to the terms of the Restructuring Support Agreement, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code.      Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan and the terms of the Restructuring Support Agreement, each Debtor expressly reserves

62

Dated: ~~June 24~~**September 8**, 2025

Respectfully submitted,

LIGADO NETWORKS LLC
LIGADO NETWORKS CORP.
LIGADO NETWORKS HOLDINGS (CANADA) INC.
LIGADO NETWORKS (CANADA) INC.
ATC TECHNOLOGIES, LLC
LIGADO NETWORKS INC. OF VIRGINIA
ONE DOT SIX LLC
ONE DOT SIX TVCC LLC
LIGADO NETWORKS SUBSIDIARY LLC
LIGADO NETWORKS FINANCE LLC
LIGADO NETWORKS BUILD LLC

By:   /s/ Douglas Smith
      Name: Douglas Smith
      Title: Chief Executive Officer

74