**<u>Exhibit B</u>**

**Blackline**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIGADO NETWORKS LLC *et al.*,[1] | ) | Case No. 25-10006 (TMH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. __** |
| | ) | |

**ORDER AUTHORIZING THE DEBTORS
TO (I) AMEND THE DIP CREDIT AGREEMENT AND (II) ENTER
INTO THE <u>LETTER AGREEMENT AND AST POWER OF ATTORNEY</u>**

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned Debtors for entry of an order authorizing the Debtors to amend the DIP Credit Agreement, enter into the Letter Agreement, and for related relief; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* of the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the U.S. Constitution; and this Court having found that venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the notice of the Motion was appropriate under the circumstances and that no other notice need be provided; and this Court having reviewed the Motion; and this Court having determined that the

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A).  The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, this Court makes the following findings of fact and conclusions of law:

A.      The financing available under the DIP Loan Documents, as amended by the DIP Amendment, represents the best and only available financing option for the Debtors under the circumstances.  The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders.

B.      The terms of the DIP Amendment are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties, and constitute reasonably equivalent value and fair consideration.

C.      The terms of the DIP Amendment have been negotiated in good faith and at arm's length between the Debtors and the DIP Lenders.

D.      Section 9 of the Mediated Agreement (attached as Exhibit 1 to the AST Definitive Documents Order) provided that "AST shall be granted a power of attorney in connection with the Backstop Commitment and shall be entitled to exercise the power of attorney to submit a draw request under the DIP Facility on behalf of the Debtors in the amount of the Refund Amount and direct such payment to be made directly to AST in satisfaction of Ligado's obligation to pay the Refund Amount to AST."

**E.      By consenting to the entry of this Order, each Backstop Incremental Lender (as defined in the DIP Amendment) has acknowledged and agreed that: (1) AST is and, for so long as the Backstop Commitments remain outstanding, shall be a third-party beneficiary of the DIP Amendment and a party in interest in these cases; (2) if a Backstop Incremental Lender fails to fund Backstop Incremental Loans as and when such Backstop**

2

**Incremental Lender is required to do so under the terms of the DIP Amendment or this Order, then AST may commence an action in this Court or intervene in an action commenced by the Debtors in this Court against such Backstop Incremental Lender, on a several and not joint basis, to enforce this Order and the DIP Amendment for the purpose of compelling such Backstop Incremental Lender to fund such Backstop Incremental Loans in accordance with the DIP Amendment or obtaining damages against such Backstop Incremental Lender for its failure to fund such Backstop Incremental Loans in accordance with the DIP Amendment; and (3) it shall not contend or assert in any action commenced before this Court that AST is not a proper party to bring a claim under the DIP Amendment or against the Backstop Incremental Lender (or otherwise intervene in any action commenced by the Debtors with respect to the DIP Amendment) and that it has waived the right to advance such contention or assertion.**

Based on the foregoing, it is **HEREBY ORDERED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      The DIP Amendment attached hereto as **Exhibit 1** is approved.

3.      The Letter Agreement attached hereto as **Exhibit 2** is approved.

4.      All parties' obligations and indebtedness arising under, in respect of, or in connection with the DIP Amendment shall be deemed to have been extended by the DIP Lenders in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Lenders (and the successors and assigns thereof, solely in their capacity as such) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the DIP Orders,

3

this Order or any provision thereof and hereof is vacated, reversed, or modified, on appeal or otherwise.

5.      Except as otherwise expressly provided herein or in the DIP Amendment, each provision of the DIP Orders and the DIP Loan Documents shall remain unchanged and in full force and effect.  All liens, priorities, and other rights, remedies, benefits, privileges, releases, and protections provided to the DIP Secured Parties in the DIP Orders and the DIP Loan Documents shall apply with equal force and effect with respect to the DIP Amendment, the Backstop Funding Commitments, and all rights and obligations in connection therewith or related thereto.

**6.      Notwithstanding anything to the contrary in the DIP Amendment, the effectiveness of each provision of this Order, the** DIP Amendment, and the Letter Agreement**, and the obligations of the parties therein, shall be conditioned upon entry of the Confirmation Order confirming an Acceptable Plan (as such term is defined in the DIP Loan Agreement).**

**7.**      6. The Debtors are authorized to take any and all actions necessary or appropriate to effectuate the relief granted in this Order.

**8.**      7. Notwithstanding anything in the Bankruptcy Rules to the contrary, this Order is immediately effective and enforceable upon its entry.

**9.**      8. This Court retains**For so long as the Backstop Commitments shall remain outstanding, this Court shall retain sole and exclusive** jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**10.      This Court shall retain jurisdiction to hear and determine any claim that may be asserted at any time based on the alleged failure of a Backstop Incremental Lender**

4

to fund Backstop Incremental Loans as and when such Backstop Incremental Lender is required under the terms of the DIP Amendment or this Order.

11.    AST is and, for so long as the Backstop Commitments remain outstanding, shall be a third-party beneficiary of the DIP Amendment and a party in interest in these cases.

12.    If a Backstop Incremental Lender fails to fund Backstop Incremental Loans as and when such Backstop Incremental Lender is required to do so under the terms of the DIP Amendment or this Order, then AST may commence an action in this Court or intervene in an action commenced by the Debtors in this Court against such Backstop Incremental Lender, on a several and not joint basis, to enforce this Order and the DIP Amendment for the purpose of compelling such Backstop Incremental Lender to fund such Backstop Incremental Loans in accordance with the DIP Amendment or obtaining damages against such Backstop Incremental Lender for its failure to fund such Backstop Incremental Loans in accordance with the DIP Amendment.

13.    Each Backstop Incremental Lender has waived its right to assert in any action commenced before this Court with respect to the DIP Amendment that AST is not a proper party to bring a claim under the DIP Amendment or against the Backstop Incremental Lender (or otherwise intervene in any action commenced by the Debtors with respect to the DIP Amendment).

14.    Any claim of the AST Parties (as defined in the Letter Agreement) in respect of the Refund Amount shall have the status of an allowed administrative expense claim against the Debtors' estates pursuant to sections 105(a), 503(b)(1) and 507(a)(2) of the Bankruptcy Code, without further order of this Court.

5

**15.** **The provisions of this Order control and take precedence over the DIP Amendment and the related documents.**

**16.** 9. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the payment of the Refund Amount and the implementation, interpretation and enforcement of the Letter Agreement.

**Exhibit 1**

**DIP Amendment**[1]

---

[1] The proposed form of order attached as Exhibit A hereto, the DIP Amendment, and the Letter Agreement are not final and remain subject in their entirety to further review, modification, approval and continuing negotiations among the Debtors, AST, the Ad Hoc Cross-Holder Group, and the Ad Hoc First Lien Group. All parties' rights are reserved.

*[DRAFT IS PRELIMINARY AND SUBJECT TO FURTHER REVIEW, MODIFICATION, APPROVAL AND NEGOTIATION.  ALL PARTIES' RIGHTS ARE RESERVED.]*

*Execution Version*

**AMENDMENT NO. 1**
**TO SENIOR SECURED SUPER-PRIORITY DEBTOR-IN-POSSESSION LOAN AGREEMENT**

This AMENDMENT NO. 1, dated as of [●]September 17, 2025 (this "**Amendment**") amends that certain Senior Secured Super-Priority Debtor-in-Possession Loan Agreement, dated as of January 5, 2025 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the date hereof, the "**Existing Loan Agreement**", and as further amended by this Amendment, the "**Amended Loan Agreement**"), among Ligado Networks LLC, a Delaware limited liability company, as borrower (the "**Borrower**"), the Subsidiary Guarantors, each as a Guarantor thereunder and a debtor and a debtor in possession under Chapter 11 of the Bankruptcy Code, the Lenders party thereto from time to time and U.S. Bank Trust Company, National Association ("**U.S. Bank**"), as administrative agent for the Lenders (including its successors and assigns, in such capacities, the "**Administrative Agent**"). Capitalized terms used but not defined herein shall have the meanings given to such terms in the Amended Loan Agreement.

WHEREAS, pursuant to Section 2.18 of the Existing Loan Agreement, the Borrower has requested, and the Lenders identified on Schedule 1 hereto (each, a "**Backstop Incremental Lender**") have agreed to provide, subject to the terms and conditions set forth herein, additional Commitments on the date hereof in an amount equal to the aggregate Commitments set forth on Schedule 1 hereto (the "**Backstop Incremental Commitments**", and the Loans in respect thereof, the "**Backstop Incremental Loans**"); and

WHEREAS, the Borrower has requested, and the Lenders have agreed to make, certain other amendments to the Existing Loan Agreement as set forth herein, subject to the terms and conditions set forth herein.

NOW THEREFORE, each Backstop Incremental Lender, the other Lenders party hereto (collectively constituting the Required Lenders and the Required Ad Hoc Holders), the Borrower and the Administrative Agent hereby agree as follows:

Section 1.    Incremental Loan Facility.

(a)    Subject to the terms and conditions hereof and of the DIP Orders and DIP Recognition Orders, and in reliance upon the representations and warranties of the Loan Parties contained herein and the stipulations of Borrower in the DIP Orders, each Backstop Incremental Lender severally, and not jointly, agrees to (x) provide the Backstop Incremental Commitments on the First Amendment Effective Date (as defined below) and (y) fund Backstop Incremental Loans denominated in Dollars to the Borrower on the Backstop Incremental Funding Date (as defined below) in an aggregate principal amount not to exceed its Backstop Incremental Commitments.  Backstop Incremental Loans borrowed and repaid or prepaid may not be reborrowed.

(b)    Upon the occurrence of the First Amendment Effective Date, the Backstop Incremental Commitments shall constitute "Incremental Commitments" for all purposes of the Amended Loan Agreement and the Loan Documents, the Backstop Incremental Lenders shall constitute "Incremental Loan Lenders" for all purposes of the Amended Loan Agreement and the Loan Documents, and the Backstop Incremental Roll-Up Loans shall constitute "DIP Roll-Up Loans" for all purposes of the Amended Loan Agreement, including, for the avoidance or doubt, the calculation of each Lender's Commitments for Roll-Up. The Backstop Incremental Roll-Up Loans shall have the same terms as the DIP Roll-Up Loans outstanding prior to the First Amendment Effective Date and the Backstop Incremental Funded Loans if and when funded shall have the same terms as the DIP New Money Loans

the contrary set forth in Section 2.18 of the Existing Loan Agreement, the obligations of the Backstop Incremental Lenders to provide the Backstop Incremental Commitments and the effectiveness of the amendments set forth in Section 2 shall be effective upon the **date that the** following conditions ~~being~~**are** satisfied (or waived by the Backstop Incremental Lenders and the Required Ad Hoc Holders) ~~on the date hereof~~ (the "**First Amendment Effective Date**"):

(a)    each Backstop Incremental Lender shall have received, prior to or substantially concurrently with the First Amendment Effective Date, (i) all documentation and other information about any Loan Party reasonably requested by such Backstop Incremental Lender with respect to any Loan Party or AST, which documentation or other information is required by regulatory authorities under applicable "know your customer" and anti-money laundering rules and regulations, including the USA PATRIOT Act and (ii) if the Borrower qualifies as a "legal entity customer" under 31 C.F.R. § 1010.230, beneficial ownership certificates in relation to the Borrower pursuant to the requirements thereof, in each case, to the extent reasonably requested in writing by such Backstop Incremental Lender prior to or substantially concurrently with the First Amendment Effective Date;

(b)    prior to or substantially concurrently with the First Amendment Effective Date, the Administrative Agent and/or each Backstop Incremental Lender (as applicable) shall have received all reasonable and documented out-of-pocket expenses to be paid by the Borrower to the Administrative Agent or the Backstop Incremental Lenders, as applicable, on the First Amendment Effective Date for which invoices have been delivered to the Borrower prior to the First Amendment Effective Date, in each case, on or before the First Amendment Effective Date (and which, in the case of the Administrative Agent, the Borrower acknowledges shall include all outstanding and previously unbilled fees and expenses of counsel to the Administrative Agent incurred on or prior to the First Amendment Effective Date pursuant to or in connection with the Existing Loan Agreement (and the administration thereof) and the negotiation, execution and delivery of this Amendment);

(c)    the Backstop Incremental Lenders shall have received, with respect to this Amendment and other Loan Documents and any other matters as the Backstop Incremental Lenders shall reasonably request:

(i) a certificate of the secretary or assistant secretary of each Loan Party dated the First Amendment Effective Date, certifying (A) that attached thereto is a true and complete copy of each Organizational Document of such Loan Party certified (in the case of a Loan Party that is not a Foreign Subsidiary) as of a recent date by the Secretary of State of the jurisdiction of organization of the applicable Loan Party, (B) that attached thereto is a true and complete copy of resolutions duly adopted by the Board of Directors of such Loan Party authorizing the execution, delivery and performance of this Amendment and any other Loan Document to which such Person is a party and, in the case of the Borrower, the borrowings contemplated hereunder, and that such resolutions have not been modified, rescinded or amended and are in full force and effect and (C) as to the incumbency and specimen signature of each officer executing this Amendment and any other document delivered in connection herewith on behalf of such Loan Party (together with a certificate of another officer or a director (or if there is no such other officer or director of such Loan Party, an officer or director of the general partner, sole member or majority shareholder of such Loan Party) as to the incumbency and specimen signature of the secretary or assistant secretary executing the certificate in this clause (c));

(ii) a certificate as to the good standing of each Loan Party as of a recent date, from the Secretary of State of the jurisdiction of organization of the applicable Loan Party (or other applicable Governmental Authority);

US-LEGAL-13631179/3  181343-0001

(d)      there shall have been delivered to the Backstop Incremental Lenders executed counterparts of this Amendment by each of the Loan Parties, each of the Backstop Incremental Lenders, the Required Ad Hoc Holders and the Required Lenders;

(e)      the Backstop Incremental Lenders shall have received evidence in form and substance reasonably satisfactory to the Backstop Incremental Lenders and the Required Lenders of the Bankruptcy Court's ~~approval of (i) the making of the Backstop Incremental Commitments and the Backstop Incremental Loans and (ii) the AST Transaction (as defined in the Restructuring Support Agreement)~~**(i) entry of an order approving the Debtor's entry into this Amendment substantially in the form attached hereto as Annex B; and (ii) confirmation of an Acceptable Plan**;

(f)      As of the date hereof, the representations and warranties of such Loan Party set forth in Article 3 of the Amended Loan Agreement and in the other Loan Documents are true and correct in all material respects (except that any representation and warranty that is qualified as to "materiality" or "Material Adverse Effect" is true and correct in all respects) on and as of such date with the same effect as though such representations and warranties had been made on and as of such date; provided, that to the extent that any representation or warranty expressly relates to a given date or period, it is true and correct in all material respects (except that any representation and warranty that is qualified as to "materiality" or "Material Adverse Effect" is true and correct in all respects) as of such date or for such period;

(g)      As of the date hereof, the representations and warranties set forth in <u>Section 3</u> hereof shall be true and correct in all material respects (except that any representation and warranty that is qualified as to "materiality" or "Material Adverse Effect" is true and correct in all respects) on and as of such date with the same effect as though such representations and warranties had been made on and as of such date; <u>provided</u>, that to the extent that any representation or warranty expressly relates to a given date or period, it is true and correct in all material respects (except that any representation and warranty that is qualified as to "materiality" or "Material Adverse Effect" is true and correct in all respects) as of such date or for such period;

(h)      No Default or Event of Default shall have occurred and be continuing or would result from giving effect to the Backstop Incremental Commitments and the other transactions contemplated by this Amendment on the First Amendment Effective Date;

(i)      The execution, delivery and performance of this Amendment and each other agreement or instrument contemplated hereby are within such Loan Party's corporate or other organizational power and have been duly authorized by all necessary action on the part of such Loan Party; and

(j)      The Administrative Agent shall have received a certificate, dated the First Amendment Effective Date and signed by a Responsible Officer of the Borrower, attesting to the matters set forth in this Section 4 clauses (f), (g), (h) and (i).

Section 5.      <u>Conditions to Backstop Incremental Funding Date</u>. The obligations of the Backstop Incremental Lenders to fund the Backstop Incremental Loans to the Borrower shall be effective upon the first Business Day upon which the following conditions have been satisfied (or waived by the Required Ad Hoc Holders) (the "**Backstop Incremental Funding Date**"):

(a)      the Administrative Agent shall have received a Borrowing Request in accordance with Section 2.18(a) of the Amended Loan Agreement, which Borrowing Request shall provide direction to fund the proceeds of the Backstop Incremental Loans directly to AST (or a subsidiary thereof to the extent designated in writing in such Borrowing Request); provided that, any Person designated to

any provision thereof), <u>provided</u> that any Liens arising pursuant to any Loan Document or any Loan Security Agreement shall be subject to the challenge provisions described in paragraph 27 of the Final DIP Order, solely as such Liens arise on account of the Incremental Loan Facility; <u>provided</u>, further, that merely the denial or disaffirmation, filing or assertion of invalidity of a Loan Document or any material provision thereof will not cause this condition to fail to be satisfied;

(iv)    actual invalidity or impairment of any Loan Document (including the failure of any Liens purported to be created by any Loan Security Document or the DIP Orders or the DIP Recognition Orders on any material portion of the Collateral to remain or otherwise become perfected), <u>provided</u> that any Liens arising pursuant to any Loan Document or any Loan Security Agreement shall be subject to the challenge provisions described in paragraph 27 of the Final DIP Order, solely as such Liens arise on account of the Incremental Loan Facility; <u>provided</u>, further, that merely the denial or disaffirmation, filing or assertion of invalidity of a Loan Document will not cause this condition to fail to be satisfied;

(v)    dismissal of any of the Cases or ~~conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code or~~ dismissal of the Recognition Proceedings, or the filing of a motion or other pleading seeking such dismissal ~~or conversion~~ of the Cases or dismissal of the Recognition Proceedings;

(vi)    entry of an order without the prior consent of Required Lenders amending, supplementing or otherwise modifying any DIP Order or DIP Recognition Order or any Loan Document, in each case in a manner adverse to any of the Agents or Lenders;

(vii)    reversal, vacation or stay of the effectiveness of any DIP Order or DIP Recognition Order;

(viii)    the Loan Parties' filing of (or supporting another party in the filing of) a motion seeking entry of, or the entry of an order, granting any superpriority claim or Lien (except as contemplated herein) which is senior to or pari passu with the Lenders' claims under the Loan Documents, the Prepetition Debt Documents and the transactions contemplated thereby; <u>provided</u> that (x) the Required Lenders shall have opposed such filing in respect of a superpriority claim or Lien and (y) such filing shall not have been dismissed for a period of 90 days or more; and/or

(ix)    cessation of the Liens or the DIP Superpriority Claims to be valid, perfected and enforceable in all respects.

Section 6.    <u>Amendment Limited; No Waiver</u>. This Amendment is limited as specified herein and shall not, other than as expressly set forth herein, constitute a modification, acceptance or waiver of any other provision of the Existing Loan Agreement. The terms and conditions of the Amended Loan Agreement, as amended or supplemented by this Amendment, constitute the entire agreement and understanding of the parties hereto with respect to its subject matter and supersede all oral communications and prior writings with respect thereto. This Amendment, the making of the Backstop Incremental Commitments and/or the funding of any Backstop Incremental Loans shall not constitute or be deemed to be, by implication or otherwise a waiver of or otherwise affect the rights and remedies of the Lenders or the Secured Parties under the Existing Loan Agreement, the Amended Loan Agreement or any other Loan Document, and shall not alter, modify, amend or in any way affect any of the terms, conditions, obligations, covenants or agreements contained in the Existing Loan Agreement, the Amended Loan Agreement or any other Loan Document or any other provision of the Existing Loan Agreement, the Amended Loan Agreement or any other Loan Document, including the Maturity Date,

9

Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act, or any other similar state laws based on the Uniform Electronic Transactions Act.

Section 11.    <u>Directions to the Administrative Agent</u>. The Lenders party hereto, constituting the Required Lenders and the Required Ad Hoc Holders, by their signature hereto, direct the Administrative Agent to enter into this Amendment and any and all other documents, certificates, instruments or agreements required to consummate the transactions contemplated pursuant to this Amendment.

Section 12.    <u>Submission to Jurisdiction of the Bankruptcy Court</u>. Each Lender party hereto, by execution hereof, hereby consents to submit (or reaffirm its submission) to the jurisdiction of the Bankruptcy Court, and any applicable Order approving the provision of the Backstop Incremental Commitments, the making of the Backstop Incremental Loans and the other transactions contemplated by this Amendment, and acknowledges and agrees that the Bankruptcy Court retains exclusive jurisdiction over any disputes concerning payment of the Backstop Incremental Loans as contemplated by this Amendment.

Section 13.    <u>The Cases</u>.  Each Lender party hereto, by execution hereof, hereby (A) agrees that such Lender (i) shall not seek, request, or support, directly or indirectly, a dismissal of the Cases or join in, consent to, or otherwise support any motion, pleading, or request by any Person seeking a dismissal of the Cases and (ii) shall use commercially reasonable efforts to affirmatively oppose any such motion, pleading, or request for any such dismissal of the Cases by any Person on or after the date hereof, including, without limitation, by filing an objection or statement in opposition thereto and (B) directs the Administrative Agent to take any such action contemplated in the foregoing clause (A)(ii) on behalf of the Required Lenders**, subject to the Administrative Agent's receipt of security or indemnity reasonably satisfactory to it against any and all liability or expense which may be incurred by it by reason of taking or continuing to take such action**.  Notwithstanding anything to the contrary herein, any breach by a Lender of the terms of this Section 13 shall not result in a failure of the conditions in clauses (e)(v) and (e)(viii) of Section 5 to be satisfied.

Section 15.    <u>Sufficiency of Funds</u>.  ~~[~~Each Backstop Incremental Lender party hereto severally represents and warrants, as of the date hereof, that it has ~~(together with its Affiliates and its and their respective managed funds and/or accounts)~~ access to sufficient capital to fulfill its obligations to provide its Backstop Incremental Commitments and to fund any Backstop Incremental Loans in the amount and at the time required hereunder and under the Amended Loan Agreement~~]~~.[1]

**[*Signature Pages Follow*]**

---

[1] ~~NTD: Subject to ongoing review.~~

US-LEGAL-13631179/3  181343-0001

SCHEDULE 1

**Backstop Incremental Commitments**

| | Backstop Incremental Lender | Backstop Incremental Commitment – Net Funded Amount | Backstop Incremental Commitment (inclusive of OID) |
|---|---|---|---|
| | [__] | $[__] | $[__] |
| | [__] | $[__] | $[__] |
| | [__] | $[__] | $[__] |
| **TOTAL COMMITMENTS** | **$[547,000,000.00]** | **$[__]** |

ANNEX A

**Amended Loan Agreement**

[Attached.]

*[DRAFT IS PRELIMINARY AND SUBJECT TO FURTHER REVIEW, MODIFICATION, APPROVAL AND NEGOTIATION.  ALL PARTIES' RIGHTS ARE RESERVED.]*

*Conformed through the First Amendment to the Senior Secured Super-Priority Debtor-In-Possession Loan Agreement*

# SENIOR SECURED SUPER-PRIORITY DEBTOR-IN-POSSESSION LOAN AGREEMENT

**among**

**LIGADO NETWORKS LLC,**
**as the Borrower and as a Debtor and Debtor-in-Possession under Chapter 11 of the Bankruptcy Code,**

**and**

**THE GUARANTORS PARTY HERETO,**
**as Guarantors, Debtors and Debtors-in-Possession under Chapter 11 of the Bankruptcy Code,**

**THE LENDERS PARTY HERETO,**

**and**

**U.S. BANK TRUST COMPANY, NATIONAL ASSOCIATION,**
**as Administrative Agent**

**TABLE OF CONTENTS**

**Page**

**ARTICLE 1**
**DEFINITIONS**

Section 1.01    Defined Terms .................................................................. 2
Section 1.02    Terms Generally ............................................................... 50
Section 1.03    Accounting Terms; GAAP ................................................ 50
Section 1.04    Resolution of Drafting Ambiguities ................................. 51
Section 1.05    Permitted Liens ................................................................ 51
Section 1.06    Divisions ........................................................................... 51
Section 1.07    Discretion ......................................................................... 51

**ARTICLE 2**
**THE LOANS**

Section 2.01    Commitments ..................................................................... 51
Section 2.02    Loans ................................................................................. 58
Section 2.03    Borrowing Procedure ........................................................ 58
Section 2.04    Evidence of Debt; Repayment of Loans ........................... 59
Section 2.05    Fees; Additional Payment ................................................ 60
Section 2.06    Interest on Loans .............................................................. 61
Section 2.07    [Reserved] ......................................................................... 63
Section 2.08    [Reserved] ......................................................................... 63
Section 2.09    Repayment of Loans ......................................................... 63
Section 2.10    Optional and Mandatory Prepayments of Loans ............. 63
Section 2.11    [Reserved] ......................................................................... 64
Section 2.12    Yield Protection ................................................................ 65
Section 2.13    [Reserved] ......................................................................... 66
Section 2.14    Payments Generally; Pro Rata Treatment; Sharing of Setoffs ... 66
Section 2.15    Taxes ................................................................................. 67
Section 2.16    Mitigation Obligations ..................................................... 72
Section 2.17    Currency Indemnity .......................................................... 72
Section 2.18    Incremental Loan Facilities .............................................. 73
Section 2.19    Certain Bankruptcy Matters ............................................. 75

**ARTICLE 3**
**REPRESENTATIONS AND WARRANTIES**

Section 3.01    Organization; Powers ........................................................ 77
Section 3.02    Authorization; Enforceability .......................................... 77
Section 3.03    No Conflicts ...................................................................... 77
Section 3.04    Financial Statements; Projections .................................... 78
Section 3.05    Properties .......................................................................... 78
Section 3.06    Intellectual Property ......................................................... 80
Section 3.07    Equity Interests and Subsidiaries .................................... 80
Section 3.08    Litigation; Compliance with Laws ................................... 81

i

SCHEDULES

Schedule 1.01(b)     Subsidiary Guarantors
Schedule 1.01(c)     Investments
Schedule 1.01(d)     Liens
Schedule 2.01        Commitments
Schedule 3.03        Governmental Approvals; Compliance with Laws
Schedule 3.06(c)     Violations or Proceedings
Schedule 3.07(c)     Organizational Chart
Schedule 3.08        Litigation and Government Proceedings
Schedule 3.09        Material Agreements
Schedule 3.18        Environmental Matters
Schedule 3.19        Insurance
Schedule 3.23(a)     Communications Licenses
Schedule 3.23(b)     FCC Proceedings
Schedule 3.24(a)     Assets and Liabilities of One Dot Six LLC and Ligado Networks Inc. of Virginia
Schedule 5.14        Post-Closing Matters
Schedule 6.01(b)     Indebtedness
Schedule 6.08(d)     Transactions with Affiliates

EXHIBITS

Exhibit A      Form of Administrative Questionnaire
Exhibit B-1    Form of Assignment and Assumption
Exhibit C      [Reserved]
Exhibit D      Form of Joinder Agreement
Exhibit E      Form of Note
Exhibit F-1    Form of Perfection Certificate
Exhibit F-2    Form of Perfection Certificate Supplement
Exhibit G      Form of Borrowing Request
Exhibit H-1    Form of Tax Compliance Certificate
Exhibit H-2    Form of Tax Compliance Certificate
Exhibit H-3    Form of Tax Compliance Certificate
Exhibit H-4    Form of Tax Compliance Certificate
Exhibit I      [Reserved]
Exhibit J      Form of Initial Budget
Exhibit K      Form of Election Joinder
Exhibit L      Form of Cash Flow Certificate
Exhibit M      Form of Canadian Security Agreement
Exhibit N      Form of Intercompany Note
Exhibit O      Form of Loan Security Agreement
Exhibit P      Form of Reaffirmation Agreement

i

**SENIOR SECURED SUPER-PRIORITY DEBTOR-IN-POSSESSION
LOAN AGREEMENT**

This SENIOR SECURED SUPER-PRIORITY DEBTOR-IN-POSSESSION LOAN AGREEMENT (this "**Agreement**"), dated as of January 5, 2025, among Ligado Networks LLC, a Delaware limited liability company, as a debtor and debtor-in-possession under chapter 11 of the Bankruptcy Code (the "**Borrower**"), the Subsidiary Guarantors (such term and each other capitalized term used but not defined herein having the meaning given to it in Article 1), each as a Guarantor hereunder and a debtor and a debtor in possession under Chapter 11 of the Bankruptcy Code, the Lenders from time to time party hereto and U.S. Bank Trust Company, National Association ("**U.S. Bank**"), as administrative agent for the Lenders (including its successors and assigns, in such capacities, the "**Administrative Agent**").

**WITNESSETH:**

WHEREAS, the Borrower and the Subsidiary Guarantors (each, a "**Debtor**" and collectively, the "**Debtors**") intend to file voluntary petitions with the Bankruptcy Court initiating their respective cases that are pending under chapter 11 of the Bankruptcy Code (each case of the Borrower and each other Debtor, a "**Case**" and collectively, the "**Cases**") and continued to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code (the date upon which the Cases are filed, the "**Petition Date**");

WHEREAS, prior to the Closing Date, the Lenders party hereto (or Affiliates thereof) provided secured financing to the Borrower pursuant to the Prepetition Debt Documents (in such capacity, the "**Prepetition Lenders and Holders**"), which secured financing was guaranteed by each of the Subsidiary Guarantors;

WHEREAS, Ligado Networks LLC, in its capacity as foreign representative of the Debtors, intends to seek recognition of the Cases under Part IV of the *Companies Creditors Arrangement Act* (Canada) (the "**CCAA**") from the Ontario Superior Court of Justice (Commercial List) (the "**CCAA Court**");

WHEREAS, the Borrower has requested that the Lenders provide a senior secured super-priority debtor-in-possession term loan credit facility in an aggregate initial principal amount of up to $939,151,166 (together with any applicable Capitalized Amount and Roll-Up Loans) (the "**DIP Facility**") comprised of: (i) a new money term loan facility in an aggregate initial principal amount of up to $441,999,891 (together with any applicable Capitalized Amount and Roll-Up Loans) and (ii) the roll up of the Prepetition Roll-Up Indebtedness into Roll-Up Loans on the Final Order Entry Date hereunder in an aggregate minimum initial principal amount of $497,151,275 (together with any applicable Capitalized Amount), and, with all of the Borrower's Obligations under the DIP Facility to be guaranteed by each Guarantor and all of the Borrower's and the Guarantors' Obligations under the DIP Facility to be secured by the Collateral,

WHEREAS, the Lenders are willing to make available to Borrower the DIP Facility (and U.S. Bank is willing to serve as Administrative Agent and Collateral Agent in respect of the DIP

hereof. As of the First Amendment Effective Date, the total amount of the Backstop Incremental Commitments is $[547,000,000]547,368,421.05.

"**Backstop Incremental Unused Commitment Fee**" has the meaning assigned to such term in Section 2.05(j).

"**Backstop Incremental Funded Loans**" means any Borrowing hereunder of Loans in respect of the Backstop Incremental Commitments.

"**Backstop Incremental Funding Date**" has the meaning set forth in the First Amendment.

"**Backstop Incremental Lender**" means any Lender that holds a Backstop Incremental Commitment outstanding hereunder.

"**Backstop Incremental Loans**" means any Backstop Incremental Funded Loans and/or Backstop Incremental Roll-Up Loans, as the context requires.

"**Backstop Incremental Roll-Up Loans**" means the Roll-Up Loans deemed funded under Section 2.01(d)(ii)(C) and Section 2.01(d)(ii)(D) on the First Amendment Effective Date and the Backstop Incremental Funding Date respectively.

"**Backstop Incremental OID**" has the meaning assigned to such term in Section 2.05(i)

"**Backstop Incremental Ticking Fee**" has the meaning assigned to such term in Section 2.05(j).

"**Backstop Lenders**" has the meaning assigned to such term in Section 2.01(f)(i).

"**Backstop Limited Events of Default**" has the meaning assigned to such term in the First Amendment.

"**Bail-In Action**" means the exercise of any Write-Down and Conversion Powers by the applicable Resolution Authority in respect of any liability of an Affected Financial Institution.

"**Bail-In Legislation**"   means (a) with respect to any EEA Member Country implementing Article 55 of Directive 2014/59/EU of the European Parliament and of the Council of the European Union, the implementing law, regulation rule or requirement for such EEA Member Country from time to time which is described in the EU Bail-In Legislation Schedule and (b) with respect to the United Kingdom, Part I of the United Kingdom Banking Act 2009 (as amended from time to time) and any other law, regulation or rule applicable in the United Kingdom relating to the resolution of unsound or failing banks, investment firms or other financial institutions or their affiliates (other than through liquidation, administration or other insolvency proceedings).

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as now and hereafter in effect, or any successor statute.

US-LEGAL-13631178/3  181343-0001

"Capex & Other Non-Operating Disbursements", and "Total Professional Fees" (or words of like import).

"**Disqualified Capital Stock**" means any Equity Interest which, by its terms (or by the terms of any security into which it is convertible or for which it is exchangeable), or upon the happening of any event, (a) matures (excluding any maturity as the result of an optional redemption by the issuer thereof) or is mandatorily redeemable, pursuant to a sinking fund obligation or otherwise, or is redeemable at the option of the holder thereof, in whole or in part, on or prior to the date that is 180 days after the Maturity Date, (b) is convertible into or exchangeable (unless at the sole option of the issuer thereof) for (i) debt securities or (ii) any Equity Interests referred to in (a) above, in each case at any time on or prior to the date that is 180 days after the Maturity Date or (c) contains any repurchase obligation which may come into effect prior to payment in full of all Obligations; *provided*, *however*, that any Equity Interests that would not constitute Disqualified Capital Stock but for provisions thereof giving holders thereof (or the holders of any security into or for which such Equity Interests are convertible, exchangeable or exercisable) the right to require the issuer thereof to redeem such Equity Interests upon the occurrence of a change in control or an asset sale occurring prior to the date that is 180 days after the Maturity Date shall not constitute Disqualified Capital Stock if such Equity Interests provide that the issuer thereof will not redeem any such Equity Interests pursuant to such provisions prior to the repayment in full of the Obligations.

"**Disqualified Company**" **means any Person that is a competitor of the Borrower identified to the Administrative Agent in writing on or prior to the First Amendment Effective Date and Affiliates of such Person;** *provided***, that the identities of Disqualified Companies may be disclosed to assignees prior to entering into an Assignment and Assumption.**

"**Dividend**" with respect to any Person means that such Person has declared or paid a dividend or returned any equity capital to the holders of its Equity Interests or authorized or made any other distribution, payment or delivery of property or cash (in each case, other than any such dividend, distribution, payment or delivery of property consisting of Qualified Capital Stock of such Person, and excluding, for the avoidance of doubt, consent fees or payments) to the holders of its Equity Interests as such, or redeemed, retired, purchased or otherwise acquired, directly or indirectly, for consideration (other than Qualified Capital Stock of such Person) any of the outstanding Equity Interests of such Person (or any options or warrants issued by such Person with respect to its Equity Interests), or set aside any funds for any of the foregoing purposes, or shall have permitted any of its Subsidiaries to purchase or otherwise acquire for consideration (other than outstanding Qualified Capital Stock of such Person) any of the outstanding Equity Interests of such Person (or any options or warrants issued by such person with respect to its Equity Interests).  "Dividends" with respect to any Person shall also include all payments made by such Person with respect to any stock appreciation rights or equity incentive plans or setting aside of any funds for the foregoing purposes, but, for the avoidance of doubt, (x) any payments under cash incentive and bonus plans and (y) any dividend, distribution, payment or delivery of property consisting solely of Qualified Capital Stock of such Person, in each case, shall not be considered a "Dividend".

ES-LEGAL-13631178/3  181343-0001

"**Final DIP Order Entry Date**" means the date on which the Bankruptcy Court enters the Final DIP Order in the Cases.

"**Final DIP Recognition Order**" means an order of the CCAA Court in form and substance satisfactory to the Administrative Agent and the Required Lenders recognizing the Final DIP Order and giving it full force and effect in Canada.

"**Final Order**" means an order, ruling, or judgment of the Bankruptcy Court or CCAA Court (or other court of competent jurisdiction) that (i) is in full force and effect, (ii) is not stayed, and (iii) is no longer subject to review, reversal, vacatur, modification, or amendment, whether by appeal or by writ of certiorari; *provided*, *however*, that the possibility that a motion under Rules 50 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in such other court of competent jurisdiction) may be filed relating to such order, ruling, or judgment shall not cause such order, ruling, or judgment not to be a Final Order.

"**FIRREA**" means the Financial Institutions Reform, Recovery and Enforcement Act of 1989, as amended.

"**First Amendment**" means that certain Amendment No. 1 to Senior Secured Super-Priority Debtor-in-Possession Loan Agreement, dated as of the First Amendment Effective Date, by and among the Borrower, the Guarantors party thereto, the Lenders party thereto and the Administrative Agent.

"**First Amendment Effective Date**" ~~means [●], 2025~~**shall have the meaning assigned to such term in the First Amendment**.

"**First DIP DDTL Borrowing**" means the initial Borrowing of DIP Delayed Draw Term Loans.

"**First Round Electing Lender**" as defined in Section 2.01(f)(i).

"**First Priority**" means, with respect to any Lien purported to be created in any Collateral pursuant to any Loan Security Document, that such Lien is senior in priority to any other Lien to which such Collateral is subject, other than the Carve-Out, the AST Break-Up Fee (if any), the Administration Charge and Prepetition Permitted Prior Liens applicable to such Collateral which as a matter of law have priority over the respective Liens on such Collateral created pursuant to the relevant Loan Security Document.

"**Fitch**" means Fitch Ratings Inc. or any successor to the rating agency business thereof.

"**Flood Insurance Requirements**" means, in order to comply with the National Flood Insurance Reform Act of 1994 and related legislation (including the regulations of the Board of Governors), the following documents:  (A) a completed standard "life of loan" flood hazard determination form, (B) if any improvements to the applicable real property are located in a special flood hazard area, a notification to the Borrower (the "**Borrower Notice**") and (if applicable) notification to the Borrower that flood insurance coverage under the National Flood Insurance Program ("**NFIP**") is not available because the community does not participate in the

US-LEGAL-13631178/3   181343-0001

Each of the delivery of a Borrowing Request and the acceptance by Borrower of the proceeds of any DIP Delayed Draw Term Loans shall constitute a representation and warranty by Borrower and each other Loan Party that on such date of Borrowing (both immediately before and after giving effect to such Borrowing and the application of the proceeds thereof) the conditions contained in Sections 4.03(d), 4.03(g), and 4.03(h) through (and including) 4.03(r) will be satisfied on such date of Borrowing.

Notwithstanding the foregoing, if the Required Ad Hoc Holders determine in their sole discretion that the Borrower has failed to satisfy any of the conditions precedent set forth in this Section 4.03 and so advise the Administrative Agent in writing, the Administrative Agent shall decline to fund such DIP Delayed Draw Term Loans.

Section 4.04    Conditions to Backstop Incremental Funding Date.  The obligations of the Backstop Incremental Lenders to fund the Backstop Incremental Loans to AST (or a subsidiary thereof to the extent designated in writing in such Borrowing Request) on the Backstop Incremental Funding Date shall be subject to the conditions set forth in Section 65 of the First Amendment.

# ARTICLE 5
# AFFIRMATIVE COVENANTS

The Borrower and each Subsidiary Guarantor warrants, covenants and agrees with each Lender that so long as this Agreement shall remain in effect and until the Commitments have been terminated and the principal of and interest on each Loan and all fees and all other expenses or amounts payable under any Loan Document shall have been paid in full, unless the Required Lenders shall otherwise consent in writing, it will, and will cause each of its Subsidiaries to:

Section 5.01    Financial Statements, Reports, etc.  Furnish to the Administrative Agent for distribution to each Lender:

(a)    *Annual Reports*.  As soon as available and in any event within (i) 122 days after the end of the fiscal year ending December 31, 2024 and (ii) 90 days after the end of each fiscal year (other than the fiscal year ending December 31, 2024), beginning with the fiscal year ending December 31, 2024, the consolidated balance sheet, consolidated income statement and consolidated cash flow of the Borrower and its Subsidiaries as of and for the fiscal year then ended, setting forth in each case in comparative form the corresponding figures from the corresponding period from the previous fiscal year, and a "Management's Discussion and Analysis of Financial Condition and Results of Operations" substantially equivalent to that which would be required to be included in an Annual Report on Form 10-K of the Borrower if the Borrower were to be subject to an obligation to file such a report under the Exchange Act. The filing by the Borrower of its Form 10-K or any successor or comparable forms with the Securities and Exchange Commission as at the end of and for any fiscal year reported on as aforesaid shall be deemed to satisfy the obligations of this paragraph with respect to such year;

(b)    *Quarterly Reports*.  As soon as available and in any event within (i) 66 days after the end of the fiscal quarter ending March 31, 2025 and (ii) 45 days after the end of each of the first three fiscal quarters of each fiscal year (other than the fiscal quarter ending

107

severally agrees to pay to the Administrative Agent or Collateral Agent, as the case may be, such Lender's Applicable Percentage (determined as of the time that the applicable unreimbursed expense or indemnity payment is sought) of such unpaid amount; *provided* that the unreimbursed expense or indemnified loss, claim, damage, liability or related expense, as the case may be, was incurred by or asserted against the Administrative Agent or Collateral Agent in its capacity as such.

(d)     To the extent permitted by applicable law, no party hereto shall assert, and each such party hereby waives, any claim against any other party, on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, this Agreement, any other Loan Document or any agreement or instrument contemplated hereby, the Transactions, any Loan or the use of the proceeds thereof; *provided* that, nothing in this clause (d) shall relieve the Borrower of any obligation it may have to indemnify an Indemnitee against special, indirect, consequential or punitive damages asserted against such Indemnitee by a third party.

(e)     All amounts due under this Section 10.03 shall be payable promptly after written demand therefor.

Section 10.04  <u>Successors and Assigns</u>.

(a)     The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns permitted hereby, except that (i) neither the Borrower nor any other Loan Party may assign or otherwise transfer any of its rights or obligations hereunder without the prior written consent of each Lender (and any attempted assignment or transfer by the Borrower or any other Loan Party without such consent shall be null and void) and (ii) no Lender may consummate any Transfer of Loans or any of its rights or obligations hereunder except in accordance with this Section 10.04. Nothing in this Agreement, expressed or implied, shall be construed to confer upon any Person (other than the parties hereto, their respective successors and assigns permitted hereby and, to the extent expressly contemplated hereby, the Related Parties of each of the Administrative Agent and the Lenders) any legal or equitable right, remedy or claim under or by reason of this Agreement.

(b)     (i)  Subject to the conditions set forth in Section 10.04(b)(ii), any Lender may assign to a Lender, an Affiliate of a Lender, a Participant or any other Person that is an Eligible Assignee (and any attempted assignment or transfer to a Person that is not an Eligible Assignee shall be null and void) all or a portion of its rights and obligations under this Agreement as a Lender (including all or a portion of its Commitments and Loans at the time owing to it), in each case (other than any assignment consummated pursuant to the Syndication Transactions), with the prior written consent of:

~~(A) [reserved]; and~~

**(A)     solely in respect of assignments or transfers of Backstop Incremental Commitments,**

**(1)     to the extent such assignment is to an Affiliate and/or Approved Fund of a Backstop Incremental Lender**

(which Affiliate or Approved Fund is not a Backstop Incremental Lender), the Borrower (such consent not to be unreasonably withheld, conditioned or delayed, it being acknowledged and agreed that the only basis for the Borrower to reasonably withhold, condition or delay consent is if the Borrower reasonably and in good faith has concerns about the ability or willingness of the proposed assignee to fund the Backstop Incremental Commitments on the Backstop Incremental Funding Date); provided that no consent shall be required from the Borrower pursuant to this Section 10.04(b)(i)(A)(1) (x) to the extent that the applicable assignor of Backstop Incremental Commitments agrees in writing in the applicable Assignment and Assumption to remain jointly and severally liable to fulfill its obligations to provide its Backstop Incremental Commitments and to fund its Backstop Incremental Loans in the amount and at the time required under this Agreement or (y) upon the occurrence and during the continuation of a Backstop Limited Event of Default; provided, further, that the Borrower shall be deemed to have consented thereto unless it shall have expressed to the Administrative Agent in writing that it is reasonably withholding, conditioning or delaying its consent to such assignment (it being acknowledged and agreed that the only basis for the Borrower to reasonably withhold, condition or delay consent is if the Borrower reasonably and in good faith has concerns about the ability or willingness of the proposed assignee to fund the Backstop Incremental Commitments on the Backstop Incremental Funding Date) within ten (10) Business Days after having received notice thereof; and

(2)    to the extent such assignment is to a Person other than a Backstop Incremental Lender and/or an Affiliate and/or Approved Fund of a Backstop Incremental Lender, the Borrower (such consent not to be unreasonably withheld, conditioned or delayed, it being acknowledged and agreed that the only basis for the Borrower to reasonably withhold, condition or delay consent is if the Borrower reasonably and in good faith has concerns about the ability or willingness of the proposed assignee to fund the Backstop Incremental Commitments on the Backstop Incremental Funding Date); provided that no consent shall be required from the Borrower pursuant to this Section 10.04(b)(i)(A)(2) (x) to the extent that the applicable assignee has an Investment Grade Rating for its long-term unsecured and non-credit-enhanced debt obligations as of the effective date of the applicable Assignment and Assumption or (y) upon the occurrence and during the continuation of a Backstop Limited Event of Default;

US-LEGAL-13631178/3  181343-0001

**provided, further, that the Borrower shall be deemed to have consented thereto unless it shall have expressed to the Administrative Agent in writing that it is reasonably withholding, conditioning or delaying its consent to such assignment (it being acknowledged and agreed that the only basis for the Borrower to reasonably withhold, condition or delay consent is if the Borrower reasonably and in good faith has concerns about the ability or willingness of the proposed assignee to fund the Backstop Incremental Commitments on the Backstop Incremental Funding Date) within ten (10) Business Days after having received notice thereof; and**

**(3)    to the extent such assignment is to a Disqualified Company, the Borrower; provided that no consent shall be required from the Borrower pursuant to this Section 10.04(b)(i)(A)(3) upon the occurrence and during the continuation of a Backstop Limited Event of Default; and**

(B)    the Administrative Agent, which consent shall not be unreasonably withheld, conditioned or delayed; *provided* that with respect to any assignment by a Lender to an Affiliate of such Lender or an Approved Fund of such Lender, such consent shall be deemed given so long as both parties to the assignment have complied with the other provisions set forth herein and the Administrative Agent has completed "know-your-customer" and other verifications required by law with respect to the assignee.

(ii)    Any such assignments (which, for the avoidance of doubt, shall not include any assignment consummated pursuant to the Syndication Transactions) shall be subject to the following additional conditions:

(A)    except in the case of an assignment to a Lender, an Affiliate of a Lender or an Approved Fund or an assignment of the entire remaining amount of the assigning Lender's applicable Commitment or Loans, the amount of the applicable Commitment or Loans of the assigning Lender subject to each such assignment (determined as of the date the Assignment and Assumption with respect to such assignment is delivered to the Administrative Agent) shall not be less than $1,000,000; *provided* that simultaneous assignments by, or to, two or more Approved Funds shall be combined for purposes of determining whether the minimum assignment requirement is met;

(B)    each partial assignment shall be made as an assignment of a proportionate part of all the assigning Lender's rights and obligations under this Agreement;

US-LEGAL-13631178/3  181343-0001

**ANNEX B**

**Approval Order**

**[Attached.]**

## Exhibit 2

### Letter Agreement[1]

---

[1] The proposed form of order attached as Exhibit A hereto, the DIP Amendment, and the Letter Agreement are not final and remain subject in their entirety to further review, modification, approval and continuing negotiations among the Debtors, AST, the Ad Hoc Cross-Holder Group, and the Ad Hoc First Lien Group. All parties' rights are reserved.

*[DRAFT IS PRELIMINARY AND SUBJECT TO FURTHER REVIEW, MODIFICATION, APPROVAL AND NEGOTIATION.  ALL PARTIES' RIGHTS ARE RESERVED.]*

**Ligado Networks LLC**

**10802 Parkridge Blvd.**

**Reston, VA 20191**

July [●]September 17, 2025

Spectrum USA I, LLC
Midland Intl. Air & Space Port
2901 Enterprise Lane
Midland, TX 79706

AST & Science, LLC
Midland Intl. Air & Space Port
2901 Enterprise Lane
Midland, TX 79706

Re: Letter Agreement and AST Power of Attorney

Ladies and Gentlemen:

**WHEREAS, FIRST**, reference is made to (i) the *Order (I) Authorizing the Debtors to Enter Into the AST Definitive Documents and (II) Granting Related Relief*, dated June 23, 2025 (Dkt. No. 692 of Bankr. D. Del. Case No. 25-10006 (TMH)) (the "AST Definitive Documents Order"), which authorized the entry by the Ligado Parties (as defined below) into the commercial agreements (collectively, the "AST Definitive Documents") executed by Ligado Networks LLC, a Delaware limited liability company ("Ligado") and  Ligado Networks (Canada) Inc., an Ontario corporation ("Ligado Canada", and together with Ligado, the "Ligado Parties" and each a "Ligado Party") and AST SpaceMobile, Inc. ("AST Parent"), AST & Science, LLC ("AST") and Spectrum USA I, LLC ("SpectrumCo", together with AST Parent and AST, the "AST Parties" and, the AST Parties together with the Ligado Parties, the "Parties"); (ii) that certain mediated agreement approved by the U.S. Bankruptcy Court on June 23, 2025 and annexed as **Exhibit 1** to the AST Definitive Documents Order, between, among others, the Ligado Parties and the AST Parties (the "Mediated Agreement"); and (iii) that certain Amendment No. 1 to Senior Secured Super-Priority Debtor-in-Possession Loan Agreement (the "Backstop Facility Amendment") dated as of July [24]September 17, 2025 with respect to that certain Senior Secured Super-Priority Debtor-in-Possession Loan Agreement, dated as of January 5, 2025 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the date hereof, the "Existing Loan Agreement", and as further amended by the Backstop Facility Amendment, the "Amended Loan Agreement"), among Ligado, the Subsidiary Guarantors, each as a Guarantor thereunder and a debtor and a debtor in possession under Chapter 11 of the Bankruptcy Code, the Lenders party thereto from time to time and U.S. Bank

Trust Company, National Association, as administrative agent for the Lenders (including its successors and assigns, in such capacities, the "<u>Administrative Agent</u>"). Capitalized terms used herein but not defined herein shall have the meanings given to such terms in the Backstop Facility Amendment (including the Amended Loan Agreement attached thereto).

**WHEREAS, SECOND**, pursuant to the AST Definitive Documents and the Mediated Agreement, the Ligado Parties are required to grant to the AST Parties a power of attorney in connection with the Backstop Commitment evidenced by the Backstop Facility Amendment, which power of attorney shall provide, among other things, that, upon an Approval Condition Failure (as defined in the Strategic Collaboration and Spectrum Usage Agreement between certain of the Parties) and the subsequent failure of Ligado to submit a Borrowing Request in accordance with the Backstop Facility Amendment (a "<u>Funding Request Failure</u>"), AST shall be entitled to exercise the power of attorney to submit a draw request under the Amended Loan Agreement on behalf of the Ligado Parties and direct such payment to be made directly to AST in satisfaction of Ligado's obligation to pay the Refund Amount to AST.

**WHEREAS, THIRD**, Section 9 of the Mediated Agreement provides that if an Approval Condition Failure shall occur, then:

(a)    The Ligado Parties shall automatically, and without the necessity of any further act or instrument or notice, be obligated to pay AST immediately the Refund Amount.

(b)    The Ligado Parties shall immediately submit a draw request under the Amended Loan Agreement in an amount equal to the Refund Amount and direct such payment to be made directly to AST; and if the Ligado Parties shall fail to do so, then AST shall be entitled to exercise its rights under a power of attorney in connection with the Amended Loan Agreement and shall be entitled to exercise the power of attorney to submit a draw request under the Amended Loan Agreement on behalf of the Ligado Parties in the amount of the Refund Amount and direct such payment to be made directly to AST in satisfaction of the Ligado Parties' obligation to pay the Refund Amount to AST.

(c)    Provided that the conditions for draw under the Amended Loan Agreement are satisfied, the Backstop Incremental Lenders shall fund the draw request, the proceeds of which shall be immediately and solely used to pay AST the Refund Amount.

**WHEREAS, ~~FIFTH~~<u>FOURTH</u>**, the Parties agree that any amounts recovered by AST in connection herewith shall be for the sole and exclusive benefit of AST and shall be retained by AST.

For and in consideration of the mutual promises made herein and under the AST Definitive Documents and the Mediated Agreement, and other good and valuable consideration, the receipt and sufficiency of which the Parties acknowledge, the Parties, intending to be legally bound, agree as follows:

2

1.    Power of Attorney Concerning Borrowing Request. Ligado hereby grants AST an irrevocable power of attorney coupled with an interest and irrevocably appoints AST (or any wholly-owned subsidiary of AST designated in writing by AST on or after the date hereof) as Ligado's attorney-in-fact, with full authority in the place and stead of Ligado and in the name of Ligado or otherwise, in its discretion, to [take any action]- upon the occurrence of a Funding Request Failure[- and to execute any agreements, contracts, documents, instruments or other records that AST (or any such subsidiary) may deem necessary or advisable upon the occurrence of a Funding Request Failure to cause the funding of the Backstop Incremental Loans pursuant to the Backstop Facility Amendment, including, without limitation to]- submit to the Administrative Agent a Borrowing Request, which Borrowing Request shall provide direction to fund the proceeds of the Backstop Incremental Loans directly to AST (or a subsidiary thereof to the extent designated in writing in such Borrowing Request [and in compliance with the Backstop Facility Amendment), and any other documentation or agreement as may be required to satisfy the conditions to funding under the Backstop Facility Amendment.]

2.    Acknowledgement of Administrative Expense Claim. Ligado hereby acknowledges and agrees that any claim of the AST Parties in respect of the Refund Amount shall have the status of an allowed administrative expense claim against the Debtors' estates pursuant to sections 105(a), 503(b) and 507(b) of title 11 of the United States Code.

3.    [Agreement Not to**Agreements Regarding** Consent to Assignment of Backstop Incremental Commitments.  Ligado hereby acknowledges and agrees that Ligado shall not consent to any assignment of the Backstop Incremental Commitments without AST's prior written consent.]**:**

**(a)    Ligado shall notify AST within one (1) Business Day of Ligado's receipt of a request for consent by a Backstop Incremental Lender to transfer or assign all or a portion of its Backstop Incremental Commitments in accordance with Section 10.04(b)(i)(A) of the Amended Loan Agreement;**

**(b)    with respect to any requests for consent received by Ligado pursuant to Sections 10.04(b)(i)(A)(1) or (2) of the Amended Loan Agreement, (i)** Ligado shall not consent to any **such request for consent** without AST's prior written consent **(not to be unreasonably withheld, conditioned or delayed, it being acknowledged and agreed that the only reasonable basis for AST to withhold, condition or delay its consent is AST's good faith concern about the ability or willingness of the proposed assignee to fund the Backstop Incremental Commitments on the Backstop Incremental Funding Date); provided, that AST shall be deemed to have consented (in writing where applicable) thereto unless it shall have expressed to Ligado in writing that it is reasonably withholding, conditioning or delaying its consent to such assignment (it being acknowledged and agreed that the only reasonable basis for AST to withhold, condition or delay its consent is AST's good faith concern about the ability or willingness of the proposed assignee to fund the Backstop Incremental Commitments on the Backstop Incremental Funding Date) within eight (8) Business Days after having received notice thereof; (ii) Ligado shall affirmatively reject any such request for consent within ten (10) Business Days of Ligado's receipt of any such**

US-LEGAL-13680913_181343-0001

**request for consent in accordance with Section 10.04(b)(i)(A)(1) or (2) of the Amended Loan Agreement upon AST's reasonable written instruction  (it being acknowledged and agreed that the only basis for AST to reasonably instruct Ligado to reject such consent is AST's good faith concern about the ability or willingness of the proposed assignee to fund the Backstop Incremental Commitments on the Backstop Incremental Funding Date) to reject such request within eight (8) Business Days after AST received notice thereof and (iii) in no event shall Ligado consent to a request for consent under Sections 10.04(b)(i)(A)(1) or (2) of the Amended Loan Agreement contrary to (or without) written instructions (or deemed consent) from AST unless Ligado reasonably and in good faith believes that the basis for AST's withholding, conditioning or delaying of its consent is not premised on AST's reasonable and good faith concern about the ability or willingness of the proposed assignee to fund the Backstop Incremental Commitments on the Backstop Incremental Funding Date;**

**(c)    with respect to any requests for consent received by Ligado pursuant to Section 10.04(b)(i)(A)(3) of the Amended Loan Agreement, (i) in no event shall Ligado consent to any such request for consent without AST's prior written consent and (ii) Ligado shall affirmatively reject any such request for consent upon AST's written instruction; and**

**(d)    all notices and other communications provided for in this Section 3 shall be delivered in writing (e-mail suffing) to AST and Ligado at the address set forth on Exhibit A hereto.**

<u>Miscellaneous</u>

4.    This Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communication and prior writings with respect thereto.

5.    This Agreement may not be amended, waived, discharged or terminated, unless such amendment, waiver, discharge, or termination is in writing and signed by each Party.

6.    [Each Party hereby agrees that any debt financing sources of AST or any of its subsidiaries are express and intended third party beneficiaries of this Agreement, entitled to enforce the provisions of this Agreement in their own name.]

7.    A failure or delay in exercising any right, power or privilege in respect of this Agreement will not be presumed to operate as a waiver, and a single or partial exercise of any right, power or privilege will not be presumed to preclude any subsequent or further exercise, of that right, power or privilege or the exercise of any other right, power or privilege.

8.    If any provision of this Agreement, or the application thereof to any party or any circumstance, is held to be unenforceable, invalid or illegal (in whole or in part) for any reason (in any jurisdiction), the remaining terms of this Agreement, modified by the deletion of the unenforceable, invalid or illegal portion (in any relevant jurisdiction), will continue in full force

Agreed and Accepted:

~~SPECTRUM USA I~~AST & SCIENCE, LLC

By:_____ Name:
    Title:

*[Signature Page to Letter Agreement and AST Power of Attorney]*

**Exhibit A – Address for Notices**

**If to AST:**

AST & Science, LLC
Midland Intl. Air & Space Port
**2901 Enterprise Lane**
**Midland, TX 79706**
**Attn: Andrew M. Johnson (e-mail: andrew.johnson@ast-science.com)**

**With a copy (which shall not constitute notice) to:**
By: _____ Name:
**Freshfields US LLP**
**3 World Trade Center**
**175 Greenwich Street**
**New York, New York 10007**
Title**Attn**:
**Madlyn Primoff (e-mail: madlyn.primoff@freshfields.com);**
**Kyle Lakin (e-mail: kyle.lakin@freshfields.com);**
**Alexander Rich (e-mail: alexander.rich@freshfields.com);**
**Nora McDonnell (e-mail: nora.mcdonnell@freshfields.com); and**
**Jordan Phelan (e-mail: jordan.phelan@freshfields.com).**

**If to Ligado:**

**Ligado Networks LLC**
**10802 Parkridge Boulevard**
**Reston, VA 20191**
**Attention of General Counsel**
**E-mail: legal@ligado.com; vicky@ligado.com; eric@ligado.com**

**With a copy (which shall not constitute notice) to:**

**Milbank LLP**
**55 Hudson Yards**
**New York, NY 10001**
**Attention of Maya Grant and Matt Brod**
**E-mail: mgrant@milbank.com; mbrod@milbank.com; tperetz@milbank.com;**
**ngonski@milbank.com; LigadoMilbankFinance@milbank.com;**
**LigadoMilbankFRG@milbank.com**

*[Signature Page to Letter Agreement and AST Power of Attorney]*