## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| LIGADO NETWORKS LLC *et al.*,[1] | ) | Case No. 25-10006 (TMH) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket Nos. 696, 920, 957, 958, & 985** |
|  | ) |  |

## REVISED FINDINGS OF FACT,
## CONCLUSIONS OF LAW, AND ORDER
## CONFIRMING JOINT CHAPTER 11 PLAN OF REORGANIZATION

**WHEREAS**, on June 24, 2025, after notice and a hearing, this Court entered the *Order (I) Approving Proposed Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling Confirmation Hearing, (IV) Establishing Notice and Objection Procedures for Confirmation of Proposed Plan, and (V) Granting Related Relief* [Docket No. 694] (the "Disclosure Statement Order"), which, among other things, approved the *Disclosure Statement for the Joint Chapter 11 Plan of Ligado Networks LLC and its Affiliated Debtors and Debtors in Possession* [Docket No. 697] (as it may be amended from time to time, the "Disclosure Statement");

**WHEREAS**, in accordance with the Disclosure Statement Order, and as set forth in the *Affidavits of Service* filed on July 9, 2025, and July 22, 2025 [Docket Nos. 736 and 755] (the

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtor's headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

"Solicitation Affidavits"), the above-captioned debtors (the "Debtors"), through their solicitation and balloting agent, Omni Agent Solutions, (i) duly caused the transmittal of the Disclosure Statement, the *Joint Chapter 11 Plan of Ligado Networks LLC and its Affiliated Debtors and Debtors in Possession* [Docket No. 696] (the "Plan")[2] (as it may be supplemented and/or further amended from time to time in accordance with the terms thereof and this order (the "Order" or the "Confirmation Order") or on the record of the hearing on the confirmation of the Plan (the "Confirmation Hearing"), and the related materials (collectively, the "Solicitation Package"), including ballots for casting votes on the Plan (the "Ballots"), to the holders of Claims and Interests entitled to vote, and (ii) served notice of the Confirmation Hearing on all parties in interest;

WHEREAS, as set forth in the *Certificate of Publication* filed on July 1, 2025 [Docket No. 728] (the "Publication Affidavit"), the Debtors caused notice of the Confirmation Hearing to be published in The New York Times and USA Today;

WHEREAS, as demonstrated by the Solicitation Affidavits and the Publication Affidavit, due and proper notice of the Confirmation Hearing and of the relief sought to be granted by this Order was given to all parties in interest in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order, and such notice is sufficient under the circumstances and no other or further notice is required;

WHEREAS, on July 17, 2025 and September 19, 2025, the Debtors filed the first and second Plan Supplements [Docket Nos. 750, 986] (collectively, the "Plan Supplement");

WHEREAS, on August 28, 2025, the Debtors filed (i) the *Debtors' Memorandum of Law in Support of Confirmation of the Plan* [Docket No. 916] (the "Confirmation Brief"), (ii)

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

2

the declarations of Douglas Smith [Docket No. 919] (the "Smith Declaration") and Michael Healy

[Docket No. 917] (the "Healy Declaration") in support of the confirmation of the Plan (collectively,

the "Confirmation Declarations"), and (iii) the *Declaration of Jeriad R. Paul Regarding the*

*Solicitation and Tabulation of Votes on, and Elections to Opt Out to the Third Party Release*

*Contained in the Joint Chapter 11 Plan of Ligado Networks LLC and Its Affiliated Debtors and*

*Debtors in Possession* [Docket No. 918] (the "Voting Report");

      **WHEREAS**, on September 23, 2025, this Court entered the *Order Authorizing*

*the Debtors to (I) Amend the DIP Credit Agreement and (II) Enter into the Letter Agreement and*

*AST Power of Attorney* [Docket No. 991] (the "DIP Amendment Order");

      **WHEREAS**, on September 22, 2025, this Court held the Confirmation Hearing;

      **WHEREAS**, this Court has considered all of the pleadings and other materials filed

in connection with the Confirmation Hearing, as well as the arguments of counsel and the evidence

presented, proffered, and adduced at the Confirmation Hearing; and

      **WHEREAS**, this Court is familiar with, and has taken judicial notice of, the entire

record of these Chapter 11 Cases;

      **NOW, THEREFORE**, based on the foregoing, and after due deliberation and

sufficient cause appearing therefor, this Court hereby finds as follows:

      **FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

      A.      Findings of Fact and Conclusions of Law. The findings and conclusions set

forth herein and on the record of the Confirmation Hearing constitute this Court's findings of fact

and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made

applicable to this matter by Bankruptcy Rules 7052 and 9014. To the extent any of the following

3

findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    <u>Jurisdiction, Venue, Core Proceeding.</u> This Court has jurisdiction over these cases and the confirmation of the Plan pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b). Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and this Court has the power to enter a final order with respect thereto. To the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment on this matter consistent with Article III of the United States Constitution, the Debtors and other applicable parties in interest have consented to entry of a final order by this Court. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    <u>Chapter 11 Petitions.</u> On January 5, 2025, each of the Debtors commenced its chapter 11 case by filing a voluntary petition for relief. These cases have been jointly administered for procedural purposes pursuant to the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 89]. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee of unsecured creditors has been appointed in these Chapter 11 Cases.

D.    <u>Judicial Notice.</u> This Court takes judicial notice of the docket of these cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before this Court during the pendency of these cases. Each resolution of objections to the confirmation of the Plan set forth on the record at the Confirmation Hearing is hereby incorporated by reference.

E.    <u>Burden of Proof.</u> The Debtors have met their burden of proving each applicable element of section 1129 of the Bankruptcy Code by a preponderance of the evidence.

F.    <u>Solicitation.</u> As described in and evidenced by the Solicitation Affidavits, transmittal and service of the Solicitation Packages were conducted in good faith and complied with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order. The Debtors and their applicable respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys are therefore entitled to the protections of section 1125(e) of the Bankruptcy Code.

G.    <u>Notice.</u> As evidenced by the Solicitation Affidavits and the Publication Affidavit, all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to the confirmation of the Plan) have been given due, proper, adequate, timely, and sufficient notice thereof in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. All such parties had an opportunity to appear and be heard with respect to the matters relating to the confirmation of the Plan.

H.    <u>Tabulation.</u> Claims and Interests, as applicable, in Class 3 (First Lien Claims), Class 4 (1.5 Lien Term Loan Claims), Class 5 (Second Lien Notes Claims), Class 9 (Existing Series A-0 Preferred Units), and Class 10 (Existing Series A-1 Preferred Units) are Impaired under the Plan, and their holders are entitled to vote on the Plan. As described in and evidenced by the Voting Report, each of these Classes has voted to accept the Plan by the numbers and amounts required by section 1126 of the Bankruptcy Code. No Class that was entitled to vote on the Plan voted to reject the Plan. The procedures used to tabulate the Ballots were fair and reasonable.

I.       <u>Plan Supplement.</u> The Plan Supplement includes, among other things, forms of the (i) New Organizational Documents, (ii) List of Members of the New Boards, (iii) Exit First Lien Facility Documents, (iv) Restructuring Transactions Memorandum, (v) Schedule of Retained Causes of Action, (vi) Management Incentive Plan, and (vii) Schedule of Rejected Executory Contracts and Unexpired Leases. All such materials comply with the terms of the Plan, and the notice of the filing of such documents complies with the Bankruptcy Code and Bankruptcy Rules, and no other or further notice is or shall be required.

J.       <u>Plan Modifications.</u> Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan described or set forth in this Confirmation Order or in any version of the Plan filed prior to entry of this Confirmation Order (collectively, the "<u>Plan Modifications</u>") constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest under the Plan. The Plan Modifications are consistent with the disclosures previously made in the Disclosure Statement and Solicitation Packages, and notice of the Plan Modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases. In accordance with Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Accordingly, the Plan, as modified, is properly before this Court and all votes cast with respect to the Plan prior to the Plan Modifications having been made shall be binding and shall apply with respect to the Plan.

RLF1 33885018v.1

K.    <u>Compliance with Section 1129(a) of the Bankruptcy Code.</u> The Plan complies with all applicable provisions of section 1129(a) of the Bankruptcy Code as set forth below.

L.    <u>1129(a)(1): Applicable Provisions of the Bankruptcy Code.</u> The Plan complies with all applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1):

i.    <u>Sections 1122 and 1123(a)(1).</u> Article III of the Plan designates fifteen Classes of Claims and Interests. The Claims and Interests placed in each Class are substantially similar to the other Claims or Interests, as applicable, in such Class. Valid business, factual, and legal reasons exist for separately classifying various Claims and Interests; therefore, sections 1122 and 1123(a)(1) are satisfied.

ii.   <u>Section 1123(a)(2).</u> Article III of the Plan specifies that Classes 1, 2, 6, 11, 12, 13, 14, and 15 are Unimpaired; therefore, section 1123(a)(2) is satisfied.

iii.  <u>Section 1123(a)(3).</u> Article III of the Plan specifies the treatment accorded to each Impaired Class; therefore, section 1123(a)(3) is satisfied.

iv.   <u>Section 1123(a)(4).</u> Article III of the Plan provides the same treatment to all Claims or Interests, as applicable, in each Class, on account of such Claim or Interest, unless the holder of a particular Claim or Interest agrees to a less favorable treatment; therefore, the Plan satisfies section 1123(a)(4).

v.    <u>Section 1123(a)(5).</u> Article V of the Plan and the documents in the Plan Supplement set forth adequate means for the implementation of the Plan; therefore, section 1123(a)(5) is satisfied.

vi.   <u>Section 1123(a)(6).</u> Article V.H of the Plan provides that the organizational documents of the Reorganized Debtors will prohibit the issuance of any non-voting equity securities to the extent required by the Bankruptcy Code; therefore, section 1123(a)(6) is satisfied.

vii.  <u>Section 1123(a)(7).</u> The identities of the known officers and directors of the Reorganized Debtors were disclosed at or before the Confirmation Hearing and the manner of their selection is not inconsistent with public policy; therefore, section 1123(a)(7) is satisfied.

viii. <u>Section 1123(a)(8).</u> None of the Debtors is an individual; therefore, section 1123(a)(8) is not applicable.

RLF1 33885018v.1

ix.  Section 1123(b). The Plan's discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with any of the applicable provisions of the Bankruptcy Code. The compromises and settlements reflected in the Plan, including those described in Articles V and VIII, are fair, equitable, reasonable, and in the best interests of the Debtors and their Estates; therefore, section 1123(b)(3) and Bankruptcy Rule 9019 are satisfied.

M.  1129(a)(2): Compliance of Plan Proponent. The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code and Bankruptcy Rules; therefore, the Plan complies with section 1129(a)(2).

N.  Section 1129(a)(3): Good Faith. The Debtors have proposed the Plan in good faith and not by any means forbidden by law. The Debtors' good faith is evident from the record of these cases and the Disclosure Statement. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Estates and effectuating a successful reorganization of the Debtors; therefore, the Plan complies with section 1129(a)(3).

O.  Section 1129(a)(4): Approval of Certain Payments as Reasonable. Any payment made or to be made by the Debtors for services or for costs and expenses in connection with these cases has been approved by, or is subject to the approval of, the Court as reasonable; accordingly, the Plan complies with section 1129(a)(4).

P.  Section 1129(a)(5): Disclosure of Directors and Officers. The identities of the Reorganized Debtors' known initial directors and officers were disclosed, to the extent known and determined, no later than the Confirmation Hearing. The identity of any insider that shall be employed or retained by the Reorganized Debtors, and the nature of such insider's compensation was disclosed, to the extent known and determined, no later than the Confirmation Hearing. The appointment to, or continuance in, such office of all such persons is consistent with the interests of creditors and public policy. Accordingly, the Plan complies with section 1129(a)(5).

8

Q.      <u>Section 1129(a)(6): Rate Changes.</u> Section 1129(a)(6) of the Bankruptcy Code is not applicable.

R.      <u>Section 1129(a)(7): Best Interest of Holders of Claims and Interests.</u> The liquidation analysis attached as Exhibit B to the Disclosure Statement and the evidence presented in the Healy Declaration establishes that each holder of a Claim or Interest, as applicable, in an Impaired Class will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date; accordingly, the Plan satisfies section 1129(a)(7).

S.      <u>Section 1129(a)(8): Acceptance by Impaired Classes.</u> Classes 1, 2, 6, 11, 12, 13, 14, and 15 are Unimpaired and thus deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Classes 3, 4, 5, 9, and 10 are Impaired and have voted to accept the Plan.

T.      <u>Section 1129(a)(9): Treatment of Claims Entitled to Priority.</u> The treatment of Administrative Claims and Priority Tax Claims under Article II and of Priority Non-Tax Claims under Article III of the Plan satisfies section 1129(a)(9).

U.      <u>Section 1129(a)(10): Acceptance by at Least One Impaired Class.</u> As set forth in the Voting Report, at least one Impaired Class has accepted the Plan by the requisite amount and number of votes, determined without counting the votes of insiders; accordingly, the Plan satisfies section 1129(a)(10).

V.      <u>Section 1129(a)(11): Feasibility.</u> The information in the Disclosure Statement, the Confirmation Declaration, and the evidence at the Confirmation Hearing together with the record of these Chapter 11 Cases, establish that the Plan is feasible, that there is a

9

reasonable prospect that the Reorganized Debtors will be able to meet their financial obligations under the Plan, and that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Reorganized Debtors; accordingly, the Plan satisfies section 1129(a)(11).

W.    Section 1129(a)(12): Payment of Statutory Fees. Article XII.C of the Plan provides that all fees payable pursuant to 28 U.S.C. § 1930 will be paid by the Debtors or Reorganized Debtors, as applicable; accordingly, the Plan satisfies section 1129(a)(12).

X.    Section 1129(a)(13): Payment of Retiree Benefits. Article VI.I of the Plan provides that all retiree benefits, if any, will continue to be paid in accordance with applicable law; accordingly, the Plan satisfies section 1129(a)(13).

Y.    Section 1129(a)(14)-(16): Inapplicable Provisions. The Debtors are not individuals or nonprofit corporations; therefore, sections 1129(a)(14), (15), and (16) do not apply.

Z.    Section 1129(d): Principal Purpose of the Plan. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, as amended, and no governmental entity has objected to the confirmation of the Plan on such grounds; therefore, the Plan satisfies section 1129(d).

AA.    Injunctions, Releases, and Exculpation. This Court has jurisdiction under 28 U.S.C. § 1334 and authority under sections 105(a) and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a) to approve the injunctions, releases, and exculpations set forth in Article VIII of the Plan. As has been established by the evidence presented at the Confirmation Hearing, the injunctions, releases, and exculpations contained in the Plan (i) were integral and essential to the Plan, (ii) confer substantial benefits on the Estates, (iii) are fair, equitable, and reasonable, (iv) are in the best interests of the Debtors, their Estates, and all parties in interest, (v) are appropriately

10

tailored to the facts and circumstances of these cases; and (vi) given after due notice and opportunity for objection and opt-out (where applicable). Failure to approve these injunctions, exculpations, and releases would jeopardize the Debtors' ability to confirm and implement the Plan.

BB.    <u>The Releases by the Debtors.</u> The releases granted by the Debtors and their Estates pursuant to Article VIII.D.1 of the Plan (the "<u>Debtors' Releases</u>") represent a valid exercise of the Debtors' business judgment. For the reasons set forth in the Disclosure Statement and the Confirmation Brief, and based on the evidence proffered or adduced at the Confirmation Hearing, the Debtors' Releases are: (i) an integral and necessary part of the Plan; (ii) a good-faith settlement and compromise of the claims and Causes of Action released; and (iii) given in exchange for good and valuable consideration provided by the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan. The Debtors' Releases constitute a bar to the Debtors, the Reorganized Debtors, the Estates, or any party purporting to claim through any of the foregoing, from asserting any claim or Cause of Action released pursuant to Article VIII.D.1 of the Plan, except as otherwise set forth in the Plan.

CC.    <u>The Third-Party Releases.</u> The releases contained in Article VIII.D.2 of the Plan (the "<u>Third-Party Releases</u>") are appropriate. For the reasons set forth in the Disclosure Statement, the Confirmation Brief, and based on the evidence proffered or adduced at the Confirmation Hearing, the Third-Party Releases are (i) consensual; (ii) essential to the Confirmation of the Plan; (iii) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (iii) a good faith settlement and compromise of the claims released by Article VIII.D of the Plan; (iv) materially beneficial and in

11

the best interests of the Debtors and the Estates; (v) fair, equitable, and reasonable; and (vi) given and made after due notice and opportunity for hearing. The Third-Party Releases constitute a bar to any Releasing Party asserting any claim or Cause of Action released pursuant to Article VIII.D of the Plan. The Third-Party Releases appropriately offer protection to the parties that participated constructively in the Debtors' restructuring and are consensual under applicable law because they are being granted only by (i) the Released Parties; (ii) parties who voted on the Plan and did not opt out of the Third-Party Releases on their Ballot; (iii) parties who were entitled to vote on the Plan but did not vote for or against the Plan and did not opt out of the Third-Party Releases on their Ballot; and (iv) parties who are deemed to accept the Plan and did not opt out of the Third-Party Releases by submitting a timely and duly completed opt-out form. The transactions described in Article V.B of the Plan (the "Restructuring Transactions") would not be possible without the support of the Released Parties.

DD.   Exculpation. The exculpation granted under Article VIII.E of the Plan is reasonable in scope and does not relieve any Exculpated Party of liability for an act or omission to the extent such act or omission is determined in a Final Order to have constituted a criminal act, intentional fraud, or willful misconduct. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in the solicitation of votes on, and distributions under, the Plan in good faith and in compliance with applicable laws and, therefore, without affecting or limiting either the Debtors' Releases or Third-Party Releases, are not, and on account of such actions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

EE.     <u>Compromise and Settlement.</u> The Plan constitutes a good-faith compromise and settlement of all Claims, Interests, disputes, and controversies relating to the rights of the holders of Claims and Interests pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.

FF.     <u>Good Faith.</u> The Plan, all documents contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, are in the best interests of the Debtors and their Estates, and shall, upon completion of documentation and execution in accordance with the terms and conditions of the Plan, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law. These documents and agreements are essential elements of the Plan, and the Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.

GG.     <u>Executory Contracts and Unexpired Leases.</u> The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan and the Restructuring Transactions, and are in the best interests of the Debtors, their Estates, Holders of Claims and Interests, and other parties in interest.

HH.     Any provision in an assumed Executory Contract or Unexpired Lease that (i) prohibits, restricts, or conditions the assumption and/or assignment, or purports to prohibit, restrict, or condition the assumption and/or assignment (including any "change of control" provision) of such agreement or allows any party to such agreement to terminate, recapture, impose

13

any penalty, condition renewal or extension, or modify any term or condition upon the assumption and/or assignment of such agreement or (ii) provides for modification, breach, or termination, or deemed modification, breach, or termination on account of or relating to any of the following: (a) the commencement of these Chapter 11 Cases, (b) the insolvency or financial condition of any Debtor at any time, (c) the Debtors' assumption and/or assignment of such agreement, (d) a change of control or similar occurrence, or (e) the consummation of the Plan or the Restructuring Transactions constitute unenforceable discriminatory or anti-assignment provisions that are void and of no force and effect pursuant to sections 365(b), 365(e), 365(f), and 525 of the Bankruptcy Code. The consummation of the Plan and the implementation of the Restructuring Transactions are not intended to, and shall not, constitute a "change of control" under any agreement to which a Debtor is a party, except as expressly set forth in the Plan or this Order.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT**:

1.      <u>Findings of Fact and Conclusions of Law.</u> The findings of fact and conclusions of law set forth in the preceding section and on the record of the Confirmation Hearing are hereby incorporated into this Order in their entirety.

2.      <u>Confirmation of Plan.</u> The Plan, a copy of which is attached hereto as <u>Exhibit A</u>, is confirmed pursuant to section 1129 of the Bankruptcy Code. The terms of the Plan, all exhibits and schedules thereto, and the documents in the Plan Supplement (all of the foregoing, collectively, the "<u>Plan Documents</u>") (i) are incorporated herein by reference and constitute an integral part of this Order and (ii) shall be effective and binding on the applicable parties as of the Effective Date. The failure to specifically include or refer to any particular article, section, or provision of the Plan or any of the Plan Documents in this Order shall not diminish or impair the effectiveness or enforceability of such article, section, or provision, it being the intent of this Court

14

that the Plan is confirmed in its entirety. Subject to the terms of Article X of the Plan and the Boeing Order, the Debtors shall have the right to alter, amend, update, or modify the Plan and any of the Plan Documents prior to the Effective Date.

3.     <u>Objections.</u> Any objections to, or any statements and reservations of rights in connection with, the confirmation of the Plan that have not been settled, withdrawn, or resolved prior to or by entry of this Order are overruled on the merits and denied.

4.     <u>Effectuating Documents; Further Transactions.</u> After the entry of this Order, the Debtors or Reorganized Debtors, as applicable, and their appropriate officers, representatives, and members of the boards of directors or managers shall be authorized to (i) issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and (ii) take such other actions as may be necessary or appropriate to effectuate, implement, and evidence the terms and conditions of the Plan Documents and the Restructuring Transactions without the need for any further approvals, authorization, or consents, except those expressly required by the Plan Documents. Subject to the occurrence of, the Effective Date, whenever an act or event is deemed to have been done or to have occurred under the Plan, it shall be deemed to have been done or to have occurred without any further act by any party.

5.     <u>Restructuring Transactions.</u> On and after the entry of this Order, but subject to the occurrence of the Effective Date, the Debtors and Reorganized Debtors shall be authorized to take all actions consistent with this Order and the Plan as may be necessary or appropriate to effectuate the Restructuring Transactions. Notwithstanding anything to the contrary in any assumed Executory Contract or Unexpired Lease, on and after the Effective Date, the Restructuring Transactions shall occur without the requirement of any additional notice or consent.

6.     <u>Approval of the New Organizational Documents.</u> The form of each of the New Organizational Documents, including the *Second Amended and Restated Operating Agreement* filed as part of the Plan Supplement, is hereby approved; *provided*, that, (i) notwithstanding the foregoing approval of the form of the New Organizational Documents included in the Plan Supplement as of the date hereof, the parties to the Restructuring Support Agreement shall retain their applicable consent rights set forth therein with respect to the New Organizational Documents, (ii) the New Organizational Documents may be modified after the date hereof with consent of the Required Ad Hoc Holders (as defined in the DIP Order), and (iii) the final form of the New Organizational Documents shall be acceptable to the Required Ad Hoc Holders in all respects. The Reorganized Debtors are authorized, without further approval of the Court or any other party, to execute, deliver, and file, as applicable, the New Organizational Documents and all agreements, documents, instruments, and certificates relating thereto and to take such actions as reasonably deemed necessary to perform their obligations thereunder. As of the Effective Date, the New Organizational Documents shall be effective, operative, and binding on, and enforceable against, the Reorganized Debtors.

7.     <u>Board of Directors/Officers.</u> On the Effective Date, (i) the terms of the current members of the Debtors' boards of directors or managers, as applicable, shall expire, and such directors and managers shall be deemed to have resigned their positions, solely in their capacities as such, without the necessity of taking any further action and (ii) the members of the New Boards and the officers of the Reorganized Debtors shall be appointed as set forth in the Plan Supplement.

8.     <u>Management Incentive Plan.</u> Effective as of the Effective Date of the Plan, the New Board shall adopt, approve or ratify, as applicable, the Management Incentive Plan;

16

*provided*, that, (i) the Management Incentive Plan may be modified after the date hereof with consent of the Required Ad Hoc Holders (as defined in the DIP Order), and (iii) the final form of the Management Incentive Plan shall be acceptable to the Required Ad Hoc Holders in all respects.

9.     <u>Preservation of Causes of Action.</u> Except as provided in the Plan or in any Plan Document, and subject to the AST Definitive Agreements Order and the Boeing Order, in accordance with section 1123(b)(3) of the Bankruptcy Code and Article V.M of the Plan, the Reorganized Debtors shall retain all of the Debtors' and the Estates' Causes of Action, except for any claims or Causes of Action against any Released Party which shall be released under Article VIII of the Plan. On and after the Effective Date, the Reorganized Debtors may, in their sole discretion, pursue, enforce, or settle any claim or Cause of Action to the extent not released under the Plan. On the Effective Date, the applicable Reorganized Debtor shall be deemed to be substituted as a party to any litigation in which a Debtor is a party (including any pending contested matters, adversary proceedings or objections to Claims in these cases) or any appeals therefrom that has not been released under the Plan. The Reorganized Debtors are not required to, but may, take such steps as are appropriate to provide notice of such substitution.

10.     <u>Vesting of Assets.</u> On and after the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, without further action of the Debtors, Reorganized Debtors, or any other party, all property of the Estates, and any property acquired by the Debtors pursuant to the Plan, shall vest in the applicable Reorganized Debtors free and clear of all Liens, Claims, Interests, charges, and other encumbrances except as otherwise expressly provided in the Plan. The Plan shall be conclusively deemed to be adequate notice that such Liens, Claims, Interests, charges, or other encumbrances are being extinguished, except as otherwise provided in the Plan. On and after the Effective Date, the Reorganized Debtors may operate their businesses

17

and may use, acquire, or dispose of property without supervision or approval of the Court, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, except as otherwise expressly provided in the Plan.

11.     <u>Discharge of Claims and Termination of Interests.</u> Except as otherwise provided in the Plan or this Order, as of the Effective Date: (i) the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of such Claims and Interests, including any interest that could have accrued thereon; (ii) the Plan shall bind all holders of Claims and Interests, whether or not such holders voted to accept or reject the Plan; (iii) all Claims and Interests existing on the Effective Date shall be discharged and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code; and (iv) all Persons and Entities shall be precluded from asserting any Claims, Interests, or other liabilities based upon any document, instrument, or any act or omission of any kind that was executed or occurred, as applicable, on or before the Effective Date against the Estates, the Debtors, the Reorganized Debtors, their respective successors and assigns, and their respective assets and properties. Except as otherwise provided in the Plan, the occurrence of the Effective Date shall operate as a discharge, pursuant to, and to the full extent of, section 1141(d)(1) of the Bankruptcy Code.

12.     <u>Cancellation and Surrender of Instruments.</u> Except as provided in the Plan, on the Effective Date, without any further action, all notes, instruments, certificates, and other documents evidencing Claims or Interests shall be deemed canceled and surrendered and of no further force and effect; *provided that*, notwithstanding Confirmation or the occurrence of the Effective Date, the DIP Documents and the indentures and agreements governing the prepetition

18

secured debt shall continue in effect for the limited purposes of (i) allowing the applicable Agents and Trustees to make distributions on account of the Allowed Claims thereunder and to exercise their respective charging liens, (ii) preserving the rights of such Agents and Trustees to compensation, indemnification, and expense reimbursement, and (iii) allowing such Agents and Trustees to appear in any proceeding related to the implementation of the Plan, as more fully set forth in Article V.F of the Plan.

13.     <u>Release of Liens.</u> Except as otherwise provided in any Plan Document, including the Exit First Lien Facility Documents, on the Effective Date, subject to receipt of the applicable distributions, all Liens on the property of any Estate shall be fully released and discharged.

14.     <u>Corporate and Other Entity Action.</u> All actions contemplated in any Plan Document, whether to occur before, on, or after the Effective Date, including, without limitation, (i) appointment of the members of the New Boards and officers of the Reorganized Debtors, and (ii) implementation of the Restructuring Transactions, are authorized and approved in all respects without any further corporate or shareholder action. As of the Effective Date, any corporate or other action required by the Debtors or Reorganized Debtors in connection with the Plan Documents and/or the Restructuring Transactions shall be deemed to have occurred, in each case, without any further action by any Person or Entity.

15.     <u>Executory Contracts and Unexpired Leases.</u> In accordance with the terms of the Plan, as of the Effective Date, each Executory Contract and Unexpired Lease shall be deemed assumed by the applicable Reorganized Debtor as of the Effective Date, except for any Executory Contract or Unexpired Lease that (i) was previously assumed or rejected pursuant to a Final Order, (ii) is listed on the Rejection Schedule, or (iii) is the subject of a separate motion filed

19

by a Debtor for assumption, rejection or extension of the applicable deadline for assumption or rejection under section 365 of the Bankruptcy Code pending on the Effective Date. Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.  This Order constitutes approval of the assumption, assumption and assignment, or rejection, as applicable, of the Executory Contracts and Unexpired Leases as set forth in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

16.    If any Person or Entity that may have had the right to consent to the assumption and/or assignment of an Executory Contract or Unexpired Lease failed to object timely to the assumption and/or assignment of such agreement, such Person or Entity is deemed to have consented to such assumption and/or assignment, as well as to the proposed Cure Amount, for purposes of section 365 of the Bankruptcy Code, and shall be forever barred, estopped, and enjoined from challenging the validity of such assumption, assignment, or Cure Amount thereafter. The Reorganized Debtors are deemed to have demonstrated adequate assurance of future performance with respect to each assumed Executory Contract and Unexpired Lease within contemplation of section 365 of the Bankruptcy Code.

17.    Except as provided in the Boeing Order, upon the assumption of an Executory Contract or Unexpired Lease by the applicable Reorganized Debtor pursuant to the Plan, no default or other unperformed obligation of a Debtor thereunder arising on or prior to the Effective Date shall exist, and each non-Debtor party to such Executory Contract or Unexpired

20

Lease is forever barred, estopped, and permanently enjoined from (i) declaring a breach or default under such agreement for any act or omission occurring on or prior to the Effective Date, and (ii) raising or asserting against the Debtors, the Estates or the Reorganized Debtors, or the assets or property of any of them, any fee, default, termination, breach, Claim, Cause of Action, or condition arising under or related to the agreement based upon a fact or circumstance that occurred on or prior to the Effective Date.

18.    Restrictions on Assumption/Assignment. Any provision in an assumed Executory Contract or Unexpired Lease that prohibits, restricts, or conditions the assumption and/or assignment, or purports to prohibit, restrict, or condition the assumption and/or assignment (including any "change of control" provision) of such agreement or allows any party to such agreement to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assumption and/or assignment of such agreement constitutes an unenforceable anti-assignment and/or discrimination provision and shall be void and of no force and effect. Any provision in an assumed Executory Contract or Unexpired Lease that provides for modification, breach, or termination, or deemed modification, breach, or termination on account of or relating to any of the following: (i) the commencement of these Chapter 11 Cases, (ii) the insolvency or financial condition of any Debtor at any time, (iii) the Debtors' assumption and/or assignment of such agreement, (iv) a change of control or similar occurrence, or (v) the consummation of the Plan or the Restructuring Transactions shall be deemed modified so as not to entitle the non-Debtor party thereto to prohibit, restrict, or condition assumption and/or assignment, to modify, terminate, or declare a breach or default under such agreement, or to exercise any other breach- or default-related rights or remedies with respect thereto on account of any of the occurrences described in (i) through (v).

21

19.    Notwithstanding anything else herein, including, for the avoidance of doubt, paragraphs 15-18, the cure, assumption, and rights and obligations of the parties under the Inmarsat Cooperation Agreement (as it may be amended from time to time) shall be governed by the AST Definitive Agreements Order, which order remains in full force and effect in all respects notwithstanding entry of this Order.

20.    Plan Distributions. The Reorganized Debtors and the Disbursing Agent, as applicable, are authorized and directed to make all distributions pursuant to the terms of the Plan and to pay any applicable fees and expenses in connection therewith.

21.    Disputed, Contingent, and Unliquidated Claims. Prior to the Effective Date, the Debtors, and after the Effective Date, the Reorganized Debtors, shall have the exclusive authority to: (i) file, withdraw, or litigate to judgment, objections to Disputed Claims; (ii) settle or compromise any Disputed Claims without any further notice to or action, order, or approval by the Court; and (iii) direct the Claims and Noticing Agent to adjust the claims register to reflect any resolutions of Disputed Claims without any further order by the Court.

22.    Conditions Precedent to the Effective Date. The Plan shall not become effective unless and until all conditions set forth in Article IX.A of the Plan have been satisfied or waived in accordance with the provisions of Article IX.B of the Plan.  In addition to the conditions set forth in Article IX.A of the Plan, the Plan shall not become effective unless and until (x) the credit agreement and related documentation for the Exit First Lien Facility (including the non-disturbance agreement described below) is acceptable to AST (acting reasonably); and (y) the Exit First Lien Facility Agent shall have executed an agreement with AST that: (a) all parties agree is enforceable as a subordination agreement pursuant to Section 510 of the Bankruptcy Code; and (b) provides for (i) express acknowledgement of and consent to the rights granted to AST under

22

the AST Agreements and the non-disturbance of such rights upon any enforcement under the Exit First Lien Facility, and (ii) recognition of such rights in any proceeding under the Bankruptcy Code or similar law with respect to any of the Debtors following entry into the Exit First Lien Facility; and (c) agreement by the Exit First Lien Facility Agent that the rights of AST will be enforceable through specific performance (which will be the sole remedy available to the agent (and, for the avoidance of doubt, to any lenders under the Exit First Lien Facility)).

23.     <u>Withdrawal and Modification of the Plan.</u> Subject to Article X of the Plan, the Debtors reserve the right to withdraw, alter, amend, or modify the Plan prior to the Effective Date.

24.     <u>Transfer Taxes.</u> To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a security or the making or delivery of an instrument or transfer of any property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and this Order authorizes and directs the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents with respect to such issuance, transfer or exchange without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to (i) the creation of any mortgage, deed of trust, lien, or other security interest; (ii) the making or assignment of any lease or sublease; or (iii) the making or delivery of any deed or other instrument of transfer or assignment, in each case, under, in furtherance of, or in connection with the Plan.

25.     <u>Injunctions, Releases, and Exculpation.</u> As of the Effective Date, the injunctions, releases, and exculpation provisions set forth in the Plan (including, without limitation, the provisions set forth in Article VIII thereof) are hereby approved and shall be

23

effective and binding on all Persons and Entities, to the extent provided in the Plan, without further

Order or action by this Court.

i.  <u>Exculpation (Article VIII.E of the Plan).</u> To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action based on any act or omission occurring from the Petition Date through the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the Restructuring Support Agreement, the Restructuring, the DIP Facility, the DIP Orders, the DIP Documents, any Canadian Court Recognition Order, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes gross negligence, intentional fraud or willful misconduct as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code and have participated in good faith with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

ii.  <u>Releases.</u>

a.  <u>Releases by the Debtors (Article VIII.D.1 of the Plan).</u> As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring or as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed

24

conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of each Debtor, each Reorganized Debtors, and each Estate, in each case, on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action, whether prepetition or postpetition, derivatively, by or through the foregoing Persons, from any and all Claims and Causes of Action (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities laws, or otherwise that the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Chapter 11 Cases, the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents (including the Definitive Documents), or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any Causes of Action identified in the Schedule of Retained Causes of Action, (ii) any Causes of Action that the Debtors or Reorganized Debtors, as applicable, may have in connection with the Ligado Takings Case, (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring

25

Transaction, or any document, instrument, or Agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including the Exit First Lien Facility Documents, or any Claim or obligation arising under the Plan and (iv) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct.

b. <u>Releases by Holders of Claims or Interests (Article VIII.D.2 of the Plan).</u> As of the Effective Date, except for (i) the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring, (ii) the liability of any Released Party that is the result of any act or omission determined in a Final Order to have constituted gross negligence, intentional fraud, or willful misconduct, (iii) the rights provided or reserved for under the AST Definitive Agreements Order, or (iv) as otherwise provided in any order of the Bankruptcy Court, on and after the Effective Date, to the fullest extent permitted by law, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, to the maximum extent permitted by law, by the Releasing Parties, in each case, from any and all Claims and Causes of Action whatsoever, whether prepetition or postpetition (including any Avoidance Actions and any derivative claims, asserted or assertable on behalf of the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including any of the Debtors' predecessors), the Reorganized Debtors, or the Estates, the Chapter 11 Cases the Restructuring, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors (including any of the Debtors' predecessors) or the Reorganized Debtors, the subject matter of,

26

or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between the Debtors (including any of the Debtors' predecessors) and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the Restructuring Support Agreement, the Restructuring, the DIP Orders, any Canadian Court Recognition Order, the DIP Documents, the Disclosure Statement, the Exit First Lien Facility, the Definitive Documents, the Plan Supplement, and the Plan and related agreements, instruments, and other documents, or the solicitation of votes with respect to the Plan, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before Effective Date.

Entry of the Confirmation Order shall, subject to the occurrence of the Effective Date, constitute the Bankruptcy Court's approval of the releases contained in the Plan and a finding that each release described is (i) in exchange for the good and valuable consideration provided by the Released Parties, including without limitation, the Released Parties' contributions to implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the holders of Claims and Interests, (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a sound exercise of the Debtors' business judgment.

iii.   <u>Injunction (Article VIII.F of the Plan).</u> Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests or Causes of Action or liabilities that have been released, discharged, or are subject to exculpation are permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on

27

account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests or Causes of Action or liabilities released or settled pursuant to the Plan.

26.    <u>United States Government</u>. As to the United States, its agencies or any instrumentalities thereof (collectively, the "<u>United States</u>"), notwithstanding anything contained in the Plan, Plan Supplement, other implementing documents (the "<u>Documents</u>") or this Order to the contrary, nothing therein shall:

  i.    limit or be intended to or be construed to bar the United States from pursuing any police or regulatory action or any criminal action;

  ii.    discharge, release, exculpate, impair or otherwise preclude: (a) any obligation or liability to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (b) any claim or Claim of the United States arising on or after the Effective Date; (c) any liability of the Debtors under police or regulatory statutes or regulations to the United States as the owner, lessor, lessee or operator of property that such Entity owns, operates or leases after the Effective Date; or (d) any claim or liability owed by any non-Debtor to the United States, including, but not limited to, any liabilities arising under the federal environmental, criminal, civil or common law;

  iii.    enjoin or otherwise bar the United States from asserting or enforcing, outside the Bankruptcy Court, any obligation or liability described in the preceding clause (ii); provided, however, that the non-bankruptcy rights and defenses of all Entities with respect to (a)–(d) in clause (ii) are likewise fully preserved;

  iv.    affect any right of setoff or recoupment of the United States against any of the Debtors or Reorganized Debtors;

  v.    confer exclusive jurisdiction upon the Bankruptcy Court except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code);

28

vi.      authorize the assumption, assignment, sale or other transfer of any federal (a) grants, (b) grant funds, (c) contracts, (d) agreements, (e) awards, (f) task orders, (g) property, (h) intellectual property, (i) patents, (j) leases, (k) certifications, (l) applications, (m) registrations, (n) billing numbers, (o) national provider identifiers, (p) provider transaction access numbers, (q) licenses, including, without limitation, any license issued by the Federal Communications Commission, (r) permits, (s) covenants, (t) inventory, (u) guarantees, (v) indemnifications, (w) data, (x) records, or (y) any other interests belonging to the United States (collectively, "<u>Federal Interests</u>") without compliance with all terms of the Federal Interests and applicable law, except as otherwise permitted pursuant to the Bankruptcy Code;

vii.      be interpreted to set cure amounts related to any Federal Interests or to require the United States to novate, approve or otherwise consent to the assumption, assignment, sale or other transfer of any Federal Interests;

viii.      constitute or be deemed an approval or consent by the United States;

ix.      waive, alter, or otherwise limit the United States' property rights;

x.      be construed as a compromise or settlement of any liability, claim, Claim, Cause of Action or interest of the United States; or

xi.      modify the scope of section 525 of the Bankruptcy Code.

Further, in the event of an inconsistency or conflict between any provision of the Documents and any provision of this Order, then, solely as to the United States, the provisions of this Order and federal law shall control.

27.      <u>Insurance Contracts</u>. Notwithstanding anything to the contrary in the Disclosure Statement, Plan, the Definitive Documents, this Confirmation Order, any bar date order or notice, any claim objection or notice of satisfaction of claims, or any other document related to any of the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction, discharge or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases) on the Effective Date, all insurance policies that have been issued at any time by ACE American Insurance Company and/or any of its U.S.-based affiliates and the predecessors and successors

29

(collectively, and solely in their capacities as insurers of one or more of the Debtors, the "Chubb Companies") to (or providing coverage to) any of the Debtors or any of their affiliates or predecessors, all extensions and renewals thereof, and all agreements, documents or instruments related thereto (each as amended, modified or supplemented and including any exhibit or addenda thereto, collectively, the "Chubb Insurance Program") shall be assumed in their entireties, unaltered, by the Reorganized Debtors pursuant to sections 105 and 365 of the Bankruptcy Code and shall continue in full force and effect thereafter in accordance with their respective terms and conditions, and in addition to the assumption of the Chubb Insurance Program provided for herein, the Chubb Insurance Program shall be treated in accordance with Article VI.C.1(b)–(d) of the Plan.

28.     Texas Comptroller. The Texas Comptroller of Public Accounts, Revenue Accounting Division ("Texas Comptroller") asserts that they are a holder of a Priority Tax Claim. Notwithstanding anything in the Plan and/or the Confirmation Order to the contrary, the Plan shall not (i) release or discharge any entity, other than the Debtors or Reorganized Debtors, from any liability owed to the Texas Comptroller for a tax debt, including interest and penalties on such tax, or (ii) limit the Texas Comptroller's setoff rights under 11 U.S.C. § 553. This provision is not an admission by any party that such liability or setoff right exists. Further, a failure by the reorganized Debtors to make a payment to the Texas Comptroller that is an Allowed Claim pursuant to the terms of the Plan shall be an event of default (a "Texas Comptroller Event of Default"). If the reorganized Debtors fail to remedy a Texas Comptroller Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the Texas Comptroller, the Texas Comptroller may (i) enforce the entire amount of its claim, (ii) exercise all rights and remedies under applicable non-bankruptcy law, and (iii) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the Debtor: 10802 Parkridge

30

Blvd., Reston, Virginia 20191, Attn Chief Executive Officer, and upon Debtor's attorney at: Milbank LLP, 55 Hudson Yards, New York, New York 10001, Attn: Mathew L. Brod, Esq.; mbrod@milbank.com. The Debtors shall be allowed to remedy up to two (2) defaults. Upon a third default, the Texas Comptroller, at its option, may declare that the default is not subject to remediation and proceed to collect the remainder of the debt.

29.     Texas Taxing Authorities. Notwithstanding anything to the contrary in the Plan or Order, the Allowed Other Secured Claims of the Texas Taxing Authorities[3] (the "Tax Claims") shall be paid in full, with applicable statutory interest. Debtors shall pay all post-petition ad valorem tax liabilities (tax year 2025 and subsequent tax years), if any, owing to the Texas Taxing Authorities in the ordinary course of business as such tax debt comes due without the need of the Texas Taxing Authorities to file an administrative expense claim and/or request for payment. The Texas Taxing Authorities shall retain their post-petition liens against the Debtors' property, if any, until any such post-petition taxes are paid in full, including any accrued penalties and interest.

30.     Boeing Order. For the avoidance of doubt, and notwithstanding anything else herein, the terms of the Boeing Order shall remain in force following entry of this Confirmation Order, and in the event of a conflict between the Boeing Order, on the one hand, and the Plan, this Confirmation Order, or any other documents related thereto, on the other hand, the

---

[3]     Texas Taxing Authorities include all entities represented by Perdue Brandon Fielder Collins & Mott LLP, McCreary Veselka Bragg & Allen, P.C., and Linebarger Goggan Blair & Sampson LLP, including but not limited to: Taxing District Collected by Potter County, Lubbock Central Appraisal District, Andrews County Tax Office, and Andrews ISD, Brazoria County, Brazoria County Conservation & Reclamation District #3, Brazoria County Emergency District #3, Alvin Community College, Alvin Independent School and Brazoria County Special Road & Bridge, Carrollton-Farmers Branch ISD, Lone Star College System, Harris Co ESD #09, Cypress-Fairbanks ISD; McLennan County, Nueces County, Bexar County, Smith County, Town of Fairview, Tarrant County, Dallas County, City of Carrollton, Ellis County, The County of Williamson, Texas, The County of Denton, Texas, and The County of Brazos, Texas.

terms of the Boeing Order shall control.  Further, notwithstanding anything to the contrary in this Order or the Plan: (i) the Debtors' assumption of the SkyTerra Contract is subject to the terms of the Boeing Order; (ii) the Cure Amount required for assumption of the SkyTerra Contract will be determined pursuant to the Boeing Order; (iii) any withdrawal, alterations, amendments, or modifications of the Plan may not conflict with the terms of the Boeing Order.

31.    DIP Amendment Order. For the avoidance of doubt, entry of this Confirmation Order confirming the Plan shall constitute entry of an order confirming an Acceptable Plan (as such term is defined in the DIP Order) and shall satisfy the applicable condition to effectiveness in section 4(e)(ii) of the Amendment No. 1 to the Senior Secured Super-Priority Debtor-In-Possession Loan Agreement approved pursuant to the DIP Amendment Order. Accordingly, the "First Amendment Effective Date" (as defined in Amendment No. 1 to the Senior Secured Super-Priority Debtor-In-Possession Loan Agreement) shall be deemed to have occurred without the necessity of any other or further act, instrument, or notice upon entry of this Confirmation Order.  Notwithstanding anything else herein, the DIP Amendment Order shall remain in force following entry of this Confirmation Order.

32.    AST Definitive Agreements Order. Notwithstanding anything else herein, the AST Definitive Agreements Order shall survive confirmation of the Plan, the entry of this Confirmation Order and the occurrence of the Effective Date.

33.    Reversal/Stay/Modification/Vacatur. Except as otherwise provided in this Order, if any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed by a subsequent Order of this Court or any other court of competent jurisdiction, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or Lien incurred or undertaken by the Debtors or the

32

Reorganized Debtors, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any reversal, stay, modification, or vacatur of this Order, any act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Order and the Plan.

34.    <u>Headings.</u> Headings utilized herein are for convenience and reference only, and do not constitute a part of this Order for any other purpose.

35.    <u>Professional Fee Claims.</u> Each Professional asserting a Professional Fee Claim for services rendered before the Effective Date must file (and serve on the notice parties) an application for final allowance of such Professional Fee Claim no later than forty-five (45) days after the Effective Date. Objections to any Professional Fee Claim must be filed and served on the notice parties and the applicable Professional not later than twenty-one (21) days after the filing of the final fee application. Allowed Professional Fee Claims shall be satisfied from the Professional Fee Escrow Account. If the amount in the Professional Fee Escrow Account is insufficient to fund payment in full of all Allowed Professional Fee Claims, the deficiency shall be funded by the Reorganized Debtors without any further action or order of the Court. The Professional Fee Escrow Account and the amounts therein shall not constitute property of the Debtors, their Estates, or the Reorganized Debtors. When all Allowed Professional Fee Claims have been irrevocably paid in full in Cash pursuant to one or more Final Orders of the Court, any remaining funds held in the Professional Fee Escrow Account shall be remitted to the Reorganized Debtors without any further notice to or action, order, or approval of this Court or any other Person or Entity.

33

36.     <u>Payment of Restructuring and Agent/Trustee Expenses.</u> The Restructuring Expenses and the fees, costs, and expenses of the Agents/Trustees, in each case, incurred, or estimated to be incurred, up to and including the Effective Date shall be paid in full in cash on the Effective Date (to the extent not previously paid) without the requirement to file a fee application with the Court.

37.     <u>Return of Utility Deposits.</u> All utilities, including any Person who received a deposit or other form of "adequate assurance" of performance pursuant to section 366 of the Bankruptcy Code during these Chapter 11 Cases (collectively, the "<u>Deposits</u>"), are directed to return such Deposits to the Reorganized Debtors, either by setoff against postpetition indebtedness or by Cash refund, within thirty (30) days following the Effective Date.

38.     <u>Inconsistency.</u> Except as otherwise set forth herein, to the extent of any inconsistency between this Order and the Plan or any other Plan Document, this Order shall govern; *provided*, *however*, that for the avoidance of doubt and notwithstanding anything else in this Order, in the event of a conflict between the AST Definitive Agreements Order or the DIP Amendment Order, on the one hand, and the Plan, this Order, the Plan Documents, or any other documents (excluding the Boeing Order) related thereto, on the other hand, the terms of the AST Definitive Agreements Order or the DIP Amendment Order, as applicable, shall control.

39.     <u>Entire Agreement.</u> Except as otherwise expressly provided in the Plan and the Boeing Order, the Plan Documents supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on the subjects covered thereby, all of which have become merged into the Plan and/or the other Plan Documents.

RLF1 33885018v.1

40.     <u>Document Retention.</u> On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with the Debtors' current document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

41.     <u>Successors and Assigns.</u> The rights, benefits, and obligations of any Person or Entity named or referred to in any Plan Document or this Order shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

42.     <u>Notice of Entry of Order and Effective Date.</u> In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the entry of this Order, the Reorganized Debtors shall serve notice of the entry of this Order (the "<u>Notice of Confirmation</u>"), and upon the occurrence of the Effective Date shall serve notice of the Effective Date (the "<u>Notice of Effective Date</u>"), on the U.S. Trustee, all known holders of Claims and Interests, other parties in interest, and any identified Person or Entity subject to the injunction provided for in the Plan. The forms of the Notice of Confirmation and the Notice of Effective Date are hereby approved in all respects and are sufficient notice of entry of this Order and the occurrence of the Effective Date.

43.     <u>Retention of Jurisdiction</u>. Notwithstanding entry of this Order and the occurrence of the Effective Date, on and after the Effective Date, this Court retains jurisdiction over the Chapter 11 Cases, all matters arising out of or related to the Chapter 11 Cases and the Plan, including, without limitation, the matters set forth in Article XI of the Plan.

44.     <u>Effect of Non-Occurrence of Conditions to the Effective Date</u>. If the Effective Date does not occur, the Plan shall be null and void and nothing contained in the Plan shall: (i) constitute a waiver or release of any Claim or Interest; (ii) prejudice in any manner the

rights of the Debtors, including any right to seek an extension of the exclusivity periods under section 1121(d) of the Bankruptcy Code, or any other Person or Entity; or (iii) constitute an admission, acknowledgement, offer or undertaking by the Debtors or any other Entity.

45.     Final Order. This Order is a final order, and the period in which an appeal thereof must be filed shall commence upon its entry on the docket of the Chapter 11 Cases.

46.     Substantial Consummation. On the Effective Date, the Plan shall be deemed to be substantially consummated for the purposes of sections 1101 and 1127 of the Bankruptcy Code.

47.     Waiver of Stay. The requirements of Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry are hereby waived, sufficient cause having been shown. This Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(h), 6006(d), or 7062 or otherwise.

Dated: September 29th, 2025
Wilmington, Delaware

THOMAS M. HORAN
UNITED STATES BANKRUPTCY JUDGE

36