## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LIGADO NETWORKS LLC *et al.*,[1] | Case No. 25-10006 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Proposed Obj. Deadline:  January 9, 2026 at 4:00 pm (ET)** |
| | **Proposed Hearing Date:  January 14, 2026 at 11:00 am (ET)** |

## DEBTORS' MOTION FOR AN ORDER (I) ENFORCING THE AUTOMATIC STAY, (II) ENFORCING THE MEDIATED AGREEMENT, AND (III) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (the "Debtors" or "Ligado") respectfully state the following in support of this motion (the "Motion"):

## PRELIMINARY STATEMENT

1.      Several months ago, following mediation ordered by this Court, Ligado, AST SpaceMobile, Inc. ("AST") and Inmarsat Global Limited ("Inmarsat") entered into an agreement (the "Mediated Agreement") resolving all disputes between the parties with respect to the AST Transaction (as defined herein).  As soon as the ink was dry on the agreement, however, the parties came to the Court with varying interpretations of what the Mediated Agreement required the parties to insert into an Amended Inmarsat Cooperation Agreement[2] and an Inmarsat-AST

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2]     Capitalized terms not defined herein shall have the meaning ascribed to them in the Mediated Agreement.

Agreement. All parties expressed that the words included in the Mediated Agreement were precisely chosen to reflect the bounds of the parties' agreement.

2.      Following a hearing, this Court instructed the parties to proceed by incorporating into the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement, the express "language that is specifically identified in the [Mediated Agreement]." The parties did so.

3.      Following confirmation of Ligado's Plan, Ligado and AST paid Inmarsat hundreds of millions of dollars as cure amount under the Amended Inmarsat Cooperation Agreement and Ligado, as licensee, submitted an application to the Federal Communications Commission ("FCC"), consistent with the Mediated Agreement. The Mediated Agreement obligated the Debtors' application to the FCC to state that the system will be consistent with and remain within the technical, geographic and other limitations in the Amended Inmarsat Cooperation Agreement and request that the FCC recognize that the operations of the Proposed NGSO System have been so coordinated. That is precisely what the Debtors have now done, and AST endorsed that application to the FCC.

4.      Nevertheless, Inmarsat has declared its intent—in direct violation of the Mediated Agreement—to **not** support the application, and instead to affirmatively oppose it. On December 19, 2025, without seeking leave of the automatic stay, Inmarsat filed a breach of contract complaint in New York State court, seeking a judicial declaration and injunction, and reiterating the same arguments it asserted to this Court immediately after the parties executed the Mediated Agreement regarding Inmarsat's purported exclusive use of L-Band Spectrum[3] outside of North America. Nothing has changed in the time since the parties were last before this Court regarding the

---

[3]    The FCC has granted Ligado licenses (the "L-Band Licenses") authorizing it to use electromagnetic spectrum between 1525 - 1559 and 1626.5-1660.5 MHz (the "L-Band Spectrum" or "L-Band").

Mediated Agreement, except for the Debtors upholding their end of the bargain by filing an application with the FCC including the exact wording required by the Mediated Agreement.

5.      To be clear, when ordering the parties to proceed with the Amended Inmarsat Cooperation Agreement and Inmarsat-AST Agreement using the specific language of the Mediated Agreement, this Court instructed that if there were a future dispute "in concrete terms and practical terms" the parties could address that.  There is, however, no dispute in concrete or practical terms. Ligado's application requires it to continue to comply with the Amended Inmarsat Cooperation Agreement, just as required by the Mediated Agreement.  The filed FCC application explicitly states that the applicant will comply with the Amended Inmarsat Cooperation Agreement, just as the parties agreed it would under the Mediated Agreement, and there is no basis for Inmarsat to shirk its obligations under the Mediated Agreement after Inmarsat has received the exact consideration that Ligado and AST agreed to provide.

6.      Inmarsat's cooperation in the FCC application process was its critical obligation under the Mediated Agreement, to be provided in exchange for the $420 million that Inmarsat has now been paid and for the application to be submitted including the critical wording that the parties agreed upon.  Ligado seeks that Inmarsat be required to hold up its end of the Mediated Agreement and affirmatively support the FCC application and respectfully requests that this Court enforce the Mediated Agreement and order Inmarsat to support the Debtors' FCC application.

## **BACKGROUND**

### I.      **The AST Transaction**

7.      On January 5, 2025, the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code").  The Debtors and the holders of their prepetition funded debt were able to

successfully negotiate a balance sheet restructuring for the Debtors, as documented in the restructuring support agreement (the "RSA") executed on January 5, 2025, which is attached as Exhibit B to the *Declaration of Douglas Smith, Chief Executive Officer of Ligado Networks LLC, In Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 2].

8.    A critical component of the RSA and the restructuring contemplated thereby is a long-term commercial transaction between the Debtors and AST (the "AST Transaction").  After months of careful negotiation, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Enter into the AST Definitive Documents and (II) Granting Related Relief* [Docket Nos. 352, 359] (the "AST Motion"), seeking Court approval of the AST Transaction and the related definitive documentation (the "AST Definitive Documents").  Inmarsat filed an objection to the AST Motion on April 25, 2025 [Docket No. 462].  The Court approved the AST Motion on June 23, 2025.[4]

9.    Pursuant to the AST Transaction, Ligado agreed to, among other things, provide AST with usage rights with respect to certain of the Debtors' L-Band Spectrum rights and related assets and collaborate with AST to commercialize these L-Band Spectrum rights.  Also as set forth in the AST Definitive Documents, Ligado agreed to provide AST with such usage rights, subject to AST observing the measures and actions deemed necessary by Ligado to comply with its L-Band Licenses and, to the extent set forth in Exhibit 6 in the Collaboration Agreement (in the AST Definitive Documents), the operational and technical requirements necessary to ensure Ligado remains in compliance with, among other things, the Inmarsat Cooperation Agreement.[5]  In

---

[4]    *Order (I) Authorizing the Debtors to Enter Into the AST Definitive Documents and (II) Granting Related Relief* [Docket No. 692] (the "AST Order") and Exhibit 1 thereto (the "Mediated Agreement").

[5]    *See, e.g.,* AST Motion at Exhibit B, Section 2.1.

exchange, AST agreed to compensate Ligado, including by: (i) contributing certain warrants, convertible notes, and/or cash to the Debtors, (ii) making certain annual usage-right payments to the Debtors designed to cover the Debtors' costs under the Inmarsat Cooperation Agreement,[6] and (iii) paying the Debtors a certain percentage of revenues derived from AST's use of the Debtors' spectrum rights.  *See id.*

## II.    The Mediation

10.    Pursuant to the Court's March 31, 2025 order appointing a mediator [Docket No. 384], the Mediation Parties[7] engaged in mediation before Judge Robert Drain (Ret.) of all disputes related to the Inmarsat Cooperation Agreement, including the AST Motion and Inmarsat's objection to the AST Motion.[8]

11.    After months of hard-fought negotiations, the mediation parties (including Ligado, AST, and Inmarsat) reached a comprehensive resolution of all issues between the Debtors and Inmarsat.  The Mediated Agreement provided a schedule for cure payments to be made to Inmarsat and each party to the mediation—including Inmarsat—agreed to support the AST Transaction, including supporting the Debtors' efforts to obtain Court approval of the AST Transaction and Inmarsat affirmatively supporting Ligado's regulatory applications for the Proposed NGSO System.

12.    Under the Mediated Agreement, Ligado and AST agreed to provide Inmarsat with copies of the initial applications seeking FCC and Innovation, Science and Economic Development

---

[6]    "Inmarsat Cooperation Agreement" means the Amended and Restated Cooperation Agreement by and among Lightsquared LP, Skyterra (Canada) Inc., Lightsquared Inc. and Inmarsat Global Limited, dated August 6, 2010, as amended through December 31, 2024.

[7]    The "Mediation Parties" are the Debtors, the Ad Hoc First Lien Group, the Ad Hoc Crossholder Group, AST, Inmarsat, and Viasat, Inc. ("Viasat").

[8]    *Inmarsat Global Limited's Objection to Debtors' Motion for Entry of an Order Authorizing the Debtors to Enter into the AST Definitive Documents* [Docket No. 462] (the "Inmarsat Objection").

Canada (the "ISED") approval for the Proposed NGSO System contemplated by the AST Transaction. Critically, Inmarsat agreed to ***affirmatively support*** the initial regulatory applications to the FCC and ISED if the applications "meet the two conditions" in the first paragraph of Section 2 of the Mediated Agreement.[9] The "two conditions in the first paragraph" of Section 2 of the Mediated Agreement require that the initial regulatory applications:

> expressly: (i) state that the operations of all AST and Ligado spacecraft, individually and taken as a whole, and regardless of orbit, will be consistent with and remain within the technical, geographic and other limitations in the Amended Inmarsat Cooperation Agreement and Ligado's other coordination agreements with various parties; and (ii) request that the FCC and ISED recognize that the operations of the Proposed NGSO System have been coordinated subject to the terms of the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement, and give effect to such agreements by licensing the Proposed NGSO System to operate in accordance with the terms of such agreements.[10]

13.     To memorialize Inmarsat's commitment to affirmatively support the regulatory applications (and other commitments made in the Mediated Agreement), the Debtors and Inmarsat agreed to enter into the Amended Inmarsat Cooperation Agreement to incorporate certain provisions of the Mediated Agreement.[11] AST and Inmarsat also agreed to execute a new agreement, the Inmarsat-AST Agreement, to give each other another mechanism by which to directly enforce the commitments made in the Mediated Agreement.[12] The Mediation Parties also

---

[9]     *See* Mediated Agreement §2 ("Provided the Applications meet the two conditions in the first paragraph of this section, Inmarsat (on behalf of Inmarsat Global Ltd. and its affiliates) shall affirmatively support before the FCC and ISED the initial regulatory applications seeking authority to operate the Proposed NGSO System within the L-Band in North America.").

[10]    *Id.* at 2.

[11]    *See id.* at 2 n.6.

[12]    *See id.* at 1 n.5.

agreed on a fast-track, detailed, and comprehensive dispute resolution process for handling any future claims of breaches of the Amended Inmarsat Cooperation Agreement.[13]

14.    The Mediated Agreement was submitted to the Court as Exhibit 1 to the revised proposed order granting the AST Motion [Docket No. 651].  On June 23, 2025, the Court held a hearing on the AST Motion and the Mediated Agreement at which Inmarsat's counsel urged the Court to enter the AST Order.  Following the hearing, the Court issued an order granting the AST Motion, approving the Mediated Agreement, approving the AST Definitive Documents, and authorizing the Debtors to enter into and perform all obligations contemplated by the AST Definitive Documents.  The AST Order expressly provides that "[t]he Mediated Agreement is approved in its entirety and the parties agree to perform in accordance with and be bound by the terms set forth therein."[14]  It further provides that "[t]he Debtors and Inmarsat are authorized to enter into an amendment to the Inmarsat Cooperation Agreement on terms consistent with the term of this Order (including, for the avoidance of doubt, [the Mediated Agreement] attached hereto)."[15]

15.    In addition, the AST Order authorizes the Debtors "to take all actions that are reasonably necessary or appropriate to effectuate the relief granted in [the AST] Order."[16]  Finally, the AST Order states that this Court "retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order, including enforcement of the Mediated Agreement."[17]

---

[13]    *See id.* at 3-6.

[14]    AST Order ¶ 6.

[15]    *Id*. ¶ 7.

[16]    *Id*. ¶ 12.

[17]    *Id*. ¶ 13.

16.    Following entry of the AST Order, the Debtors continued moving towards confirmation of the Plan.

### III.    Dispute Over the AST Order and Mediated Agreement

17.    As this Court is aware, days before a hearing on confirmation of the Plan, the parties reached an impasse on implementing the Mediated Agreement in the Amended Inmarsat Cooperation Agreement and Inmarsat-AST Agreement.  Inmarsat asserted an interpretation of the documents—which interpretation was repeatedly rejected by AST and Ligado—that would allow it to seize more than the parties had bargained for in the Mediated Agreement, threatening to upend the Debtors' restructuring efforts.

18.    As a result, in August 2025, the Debtors and Inmarsat filed cross-motions to enforce the terms of the AST Order and the Mediated Agreement (the "Motions to Enforce").[18]  AST objected to Inmarsat's motion.[19]  In September 2025, the Court denied both motions and directed the Debtors and Inmarsat to incorporate the exact words of the Mediated Agreement into the new agreements contemplated thereunder.[20]  On September 21, 2025, the parties complied with the Court's order and executed the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement.  Each agreement attached the Mediated Agreement and reaffirmed the parties' agreement to be bound by its terms.

---

[18]    *Motion of Inmarsat Global Limited for Entry of an Order Enforcing and Implementing the Mediated Agreement* [Docket Nos. 824 (sealed), 825 (redacted)]; *Debtors' Motion for an Order (I) Enforcing the AST Order and Mediated Agreement and (II) Granting Related Relief* [Docket Nos. 826 (sealed), 827 (redacted)].

[19]    *AST's (A) Objection to Inmarsat's Motion for Entry of Order Enforcing and Implementing the Mediated Agreement and (B) Joinder in Support of Debtors' Motion for Order Enforcing the AST Order and Mediated Agreement* [Docket No. 896 (sealed), 904 (redacted)].

[20]    *Order Regarding Motions to Enforce* [Docket No. 940].

IV.     **Plan Confirmation**

19.     On September 8, 2025, the Debtors filed the amended Plan [Docket No. 957].  The

Plan provides, in relevant part:

> On or before the Effective Date, the Debtors and/or the Reorganized Debtors, as applicable, and AST **shall continue to perform in accordance with the AST Definitive Agreements, and in compliance with the AST Definitive Agreements Order, and take all steps required thereunder in connection with the AST Transaction**, including the provision by AST of all payment obligations provided for in the AST Definitive Agreements.  For the avoidance of doubt, and notwithstanding anything else herein, the terms of **the AST Definitive Agreements Order shall survive entry of the Confirmation Order**, and in the event of a conflict between the AST Definitive Agreements Order, on the one hand, and the Plan, Confirmation Order, or any other documents related thereto, on the other hand, the terms of the AST Definitive Agreements Order shall control. [21]

20.     On September 29, 2025, the Court issued the *Revised Findings of Fact, Conclusions of Law, and Order Confirming Joint Chapter 11 Plan of Reorganization* [Docket No. 1007] (the "Confirmation Order").

V.      **Inmarsat Fails to Adhere to the Mediated Agreement**

21.     Following confirmation, the Debtors and AST upheld their obligations under the Mediated Agreement, including paying Inmarsat $420 million as the first installment of cure payments by October 31, 2025, as provided under the Mediated Agreement.

22.     Shortly after Plan confirmation, Ligado provided Inmarsat with the first draft of its proposed FCC application for the Proposed NGSO System.[22]  And, as recognized by the Mediated Agreement, "Ligado and AST [already] provided certain due diligence materials requested by

---

[21]   Plan Art. V(C)(3).  "AST Definitive Agreements Order" is defined in the Plan to mean "the Bankruptcy Court order authorizing entry into the AST Transaction by the Debtors, **including the Mediated Agreement**[.]  Plan Art. I(A)(21).

[22]   Compl. ¶ 52

Inmarsat to evaluate the technical parameters of the Proposed NGSO System."[23]   The draft application provided to Inmarsat expressly stated "the proposed North American L-band NGSO operations are consistent with and coordinated under the cooperation arrangement between Ligado and Inmarsat."[24]   As Inmarsat admits, this express statement is what is required under the Mediated Agreement.[25]

23.     On December 8, 2025, the Debtors, as the party licensed to use the L-Band Spectrum, filed the FCC application as contemplated by the Mediated Agreement (the "FCC Application"), attached hereto as **Exhibit B**.   Pursuant to the Mediated Agreement, the FCC Application states:

> The operations of all AST and Ligado spacecraft, individually and taken as a whole, and regardless of orbit, will be consistent with and remain within the technical, geographic and other limitations in the Amended Inmarsat Cooperation Agreement and Ligado's other coordination agreements with various parties.  Ligado requests the [FCC] recognize that the operations of the [the Proposed NGSO System] have been coordinated subject to the terms of the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement and give effect to such agreements by licensing the [Proposed NGSO System] to operate in accordance with the terms of such agreements.[26]

AST submitted a letter to endorse the Debtors' FCC Application.[27]

24.     The FCC Application clearly meets the two conditions precedent from Section 2 of the Mediated Agreement that are the sole requirements to trigger Inmarsat's obligation to support the FCC Application.   Although the FCC Application fully complies with the terms of the

---

[23]   Mediated Agreement §2.

[24]   Compl. ¶ 53

[25]   *See id.* ("the Term Sheet required Ligado and AST to make this statement in its application"); *see also* Mediated Agreement §2.

[26]   Ex. B (FCC Application) at 12.

[27]   *Id.* at 41.

Mediated Agreement and meets all of the requirements necessary to obligate Inmarsat to affirmatively support the application, on December 19, 2025, Inmarsat filed a complaint (the "Complaint"), attached hereto as **Exhibit C**, in New York State Supreme Court, New York County in response to the Debtors' FCC filing.  Inmarsat did not seek relief from the automatic stay before filing the Complaint.  Ligado and AST will seek to remove this improperly filed action to this Court.

26. Inmarsat's Complaint makes plain Inmarsat's intention to abandon its obligations under the Mediated Agreement.  In the Complaint, Inmarsat asserts, incorrectly, that notwithstanding that Ligado and AST agreed in both of the Mediated Agreement and the FCC Application that "the operations of all AST and Ligado spacecraft, individually and taken as a whole, and regardless of orbit, will be consistent with and remain within the technical, geographic and other limitations in the Amended Inmarsat Cooperation Agreement," Ligado and AST have nonetheless breached the Mediated Agreement by not coordinating the Proposed NGSO System. In doing so, Inmarsat makes the same arguments it previously asserted to this Court regarding what coordination means under the Amended Inmarsat Cooperation Agreement.

26. As this Court ruled in September, however, there is no concrete or practical dispute regarding the interpretation of the Mediated Agreement and nothing since September has changed this reality.  The FCC Application expressly states the Proposed NGSO System will continue to comply with the Amended Inmarsat Cooperation Agreement, just as the parties agreed under the Mediated Agreement.[28]  The Debtors and AST have fully complied with their obligations under the Mediated Agreement and there is no basis for Inmarsat to breach its obligations under the

---

[28] If there is an alleged future breach of the Amended Inmarsat Cooperation Agreement, including any "disputes about compliance with its technical, geographic and other limitations or any claims of interference", the parties have included in the Amended Inmarsat Cooperation Agreement, an expedited process for dealing with such breaches of that agreement.  *See* Mediated Agreement § 3.

Mediated Agreement.  Yet in the Complaint, Inmarsat unequivocally states it intends **to oppose** Ligado's FCC Application in direct contravention of its obligations under the Mediated Agreement.[29]

27.     On December 29, 2025, the Debtors and AST notified Inmarsat via email that by filing the Complaint and publicly asserting that Inmarsat intends to oppose the FCC Application, it is in breach of its regulatory support obligations set forth the Mediated Agreement and  demanding that Inmarsat immediately withdraw the Complaint and honor its regulatory support obligations in accordance with the terms of the Mediated Agreement.  Inmarsat did not respond to this demand.

## JURISDICTION AND VENUE

28.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference of the United States District Court for the District of Delaware, dated as of February 29, 2012 and paragraph 13 of the AST Order ("[t]his Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order, including enforcement of the Mediated Agreement").  Indeed, the Court has authority to enforce its own orders.  *See* 11 U.S.C. § 105(a); *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150 (2009) ("[W]here the plain terms of a court order unambiguously apply, as they do here, they are entitled to their effect.").

29.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Debtors consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by this Court in connection with this Motion to the extent that it is later determined that this Court, absent consent

---

[29]  Compl. ¶¶ 7, 59.

of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

30.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

31.     The statutory bases for the relief requested herein are sections 105(a) and 362 of the Bankruptcy Code.

## RELIEF REQUESTED

32.     By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**, (i) enforcing the automatic stay, (ii) enforcing the Mediated Agreement, and (iii) granting such other relief as the Court deems appropriate under the circumstances.

## ARGUMENT

### I.     Inmarsat Violated the Automatic Stay

33.     The automatic stay is "one of the most fundamental protections provided by the Bankruptcy Code[.]"  *In re THG Holdings LLC*, 604 B.R. 154, 160 (Bankr. D. Del. 2019). According to 11 U.S.C. § "362(c), the automatic stay may terminate pursuant to certain conditions, such as when "the time the case is closed" or "the time the case is dismissed[.]"  But none of these conditions have occurred here, even though the Plan has been confirmed.  The Plan expressly provides that the automatic stay will continue to be operational until the Effective Date occurs:

> Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court or the Canadian Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  For the avoidance of doubt, (1) ***upon the Effective Date, the automatic stay pursuant to section 362 of the Bankruptcy Code of any litigation proceedings against or involving the Debtors shall terminate***, and (2) all injunctions or

13

> stays contained in the Plan or the Confirmation Order shall remain
> in full force and effect in accordance with their terms.

Plan, Art. XII § G (emphasis added).

34.     As this Court is aware, the Effective Date has not taken place.  The Effective Date

will occur when several conditions precedent are met, as outlined in the Confirmation Order.  *See*

Confirmation Order ¶ 22 ("The Plan shall not become effective unless and until all conditions set

forth in Article IX.A of the Plan have been satisfied or waived in accordance with the provisions

of Article IX.B of the Plan.")  Because the Effective Date has not occurred, the Debtors are still

protected by the automatic stay.

35.     When Inmarsat filed the Complaint seeking both declaratory relief and an

injunction requiring immediate "cooperation with [] Inmarsat" to coordinate the Proposed NGSO

System's operations, it violated the automatic stay.  *See* 11 U.S.C. § 362(a)(3) (prohibiting "any

act to obtain possession of property of the estate or of property from the estate or to exercise control

over property of the estate"); *In re Steward*, 338 B.R. 654, 659 (Bankr. D.N.J. 2006) ("The

automatic stay is a freeze on any action or proceeding against the debtor"); *Newberry v. City of*

*San Bernardino (In re City of San Bernardino)*, 558 B.R. 321, 328 (C.D. Cal. 2016) ("[a] lawsuit

unquestionably seeks to 'exercise control' over the estate's 'property' when it seeks to enjoin the

debtor from certain uses of its income-producing property").

36.     Indeed, Inmarsat's Complaint alleges violations arising under the Mediated

Agreement—a core proceeding in these chapter 11 cases—and seeks damages for Ligado's

purported breach.  Inmarsat not only seeks damages (which would certainly impact the Debtors'

estates) but a judicial declaration that Ligado breached the Mediated Agreement, and previews it

will oppose Ligado's pending FCC Application.  Such actions could critically affect the Debtors'

go-forward business and upend their ongoing reorganization efforts.  The Mediated Agreement

arose during the pendency of these cases and was approved by this Court.  By resolving the differences between the Debtors, its key stakeholders, and Inmarsat, the Mediated Agreement provided the Debtors the means to successfully obtain approval of the Plan.

37.    In addition, during the hearing on the Motions to Enforce, this Court explained that one way it could handle the dispute was to say that to the extent Inmarsat needs relief from the automatic stay, "they have stay relief" but this Court did not choose that path.[30]  Instead, the Court, as it indicated it was likely to do, ordered the parties to incorporate the specific language of the Mediated Agreement and if and when there was a dispute about what it means "in concrete terms and practical terms," the Mediated Agreement provides a path to address that.[31]  There is no concrete or practical dispute regarding the interpretation of the Mediated Agreement.

38.    In any event, any complaint or challenge relating to the Mediated Agreement should be heard by the very Court that blessed the agreement.  Further, the fact that the Debtors have a confirmed Plan does not allow Inmarsat to file a lawsuit against the Debtors outside of this Court.  It is clear that Inmarsat has violated the automatic stay and this Court should enjoin Inmarsat from pursuing the Complaint and any other actions outside of this Court.

## II.    Inmarsat Must be Held to the Parties' Mediated Agreement

39.    In the Complaint, Inmarsat has anticipatorily repudiated the Mediated Agreement by stating that it intends to oppose the FCC Application.  Inmarsat has no basis to do so.  To date, the Debtors have met all their obligations under the Mediated Agreement, including by paying Inmarsat over $400 million dollars and submitting the FCC Application consistent with the

---

[30]    Aug. 29, 2025 Hearing Tr. at 28:21.

[31]    Aug. 29, 2025 Hearing Tr. at 30:10-11.

requirements of the Mediated Agreement. Inmarsat must also be held to the terms of the Mediated

Agreement as written and affirmatively support the FCC Application.

40.    Under Section 2 of the Mediated Agreement titled "Inmarsat Regulatory Support,"

the Debtors are obligated to provide Inmarsat with draft copies of the FCC and ISED applications

for the Proposed NGSO System. Inmarsat admits the Debtors complied with this obligation shortly

after Plan confirmation. *See* Compl. ¶ 52. Further, at the time of filing the applications, the

Mediated Agreement required that the Debtors (i) expressly state the Proposed NGSO System will

be consistent with the terms of the Amended Inmarsat Cooperation Agreement and (ii) request that

the FCC and ISED recognize that the operations of the Proposed NGSO System have been

coordinated subject to the terms of the Amended Inmarsat Cooperation Agreement and the

Inmarsat-AST Agreement, and give effect to such agreements by licensing the Proposed NGSO

System to operate in accordance with those terms. *See* Mediated Agreement §2. Provided that the

applications meet those two requirements, Inmarsat is obligated to affirmatively support the initial

applications for the Proposed NGSO System before the FCC and ISED. *Id.* This commitment

from Inmarsat is critical, as FCC approval of the Proposed NGSO System is a pivotal piece of the

Debtors' Plan of reorganization.

41.    After supplying the draft to Inmarsat, the Debtors filed the FCC Application. The

FCC Application expressly states the operations of the Proposed NGSO System will comply with

the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement and requests

that the FCC license the Proposed NGSO System to operate in accordance with the terms of such

agreements. Ex. B (FCC Application) at 12. That is exactly what the Mediated Agreement

required of the Debtors to trigger Inmarsat's regulatory support obligations under Section 2 of the Mediated Agreement.

42.     Inmarsat alleges the Debtors breached the Mediated Agreement because the Mediated Agreement obligates Ligado and AST to coordinate the Proposed NGSO System before filing an application with the FCC and the parties have not actually coordinated the Proposed NGSO System.  Compl. ¶ 63.  This is flatly wrong.  The Mediated Agreement requires the Debtors to submit regulatory applications that state the Proposed NGSO System will be consistent with the Amended Inmarsat Cooperation Agreement and request that the FCC recognize that the operations of the Proposed NGSO System have been coordinated subject to the terms of the Amended Inmarsat Cooperation Agreement.  That is precisely what the FCC Application does.

43.     Moreover, the Proposed NGSO System has been coordinated as set forth in the Mediated Agreement.  As Inmarsat states in its Complaint, "coordination" is a process of ensuring that satellite systems "do not interfere with one another" by reaching agreement on "appropriate technical parameters and limitations and other relevant terms."  Compl. ¶ 26.  Ligado already has agreed with Inmarsat on numerous technical parameters and limitations in the Amended Inmarsat Cooperation Agreement.  In turn, Ligado and AST already have agreed with Inmarsat that the Proposed NGSO System is to be operated subject to the requirements of the Amended Inmarsat Cooperation Agreement.  Inmarsat agreed that it would support the FCC Application provided that it made clear that any license issued by the FCC for the Proposed NGSO System will be subject to the terms of the Amended Inmarsat Cooperation Agreement, and the FCC Application does precisely that.   Moreover, the Mediation Parties agreed on a fast-track, detailed, and comprehensive dispute resolution process for handling any future claims of interference under the

Amended Inmarsat Cooperation Agreement.   Simply put, the Mediated Agreement already coordinated the Proposed NGSO System and addressed interference concerns.

44.    The Debtors' FCC Application makes clear the Debtors' intent to uphold all commitments made in the Mediated Agreement, including the commitment to operate the Proposed NGSO System in compliance with the Amended Inmarsat Cooperation Agreement. AST evinced its concurrence with Debtors' views when it submitted a letter to the FCC stating its support for Ligado's FCC Application and the limitations and operational restrictions contained therein.   Inmarsat and Ligado have thus coordinated the Proposed NGSO System by bringing it within the technical requirements of the Amended Inmarsat Cooperation Agreement.   Nothing more is required by the Mediated Agreement.

45.    The history of this case shows there is a clear disagreement between the Debtors, AST, and Inmarsat as to what the Amended Inmarsat Cooperation Agreement says with respect to Ligado's ability to operate in the L-Band outside North America.   Only months ago, these parties were in front of this Court because Inmarsat was seeking an interpretation of the Mediated Agreement that Ligado and AST asserted did not exist and was inconsistent with the substance of the Mediated Agreement.   This Court was clear that if any party breached the Amended Inmarsat Cooperation Agreement or there was a ripe dispute over the meaning of the Amended Inmarsat Cooperation Agreement, the parties could seek to litigate that dispute at that future time.   But that time has not come (other than Inmarsat's anticipatory repudiation of its obligation to support Ligado's application).   Nothing has changed in the time since the parties were last before this Court regarding the Mediated Agreement, except for the Debtors upholding their end of the bargain and Inmarsat now announcing its intention to breach its obligations.   The Debtors are now taking the

steps necessary to emerge from bankruptcy.  Inmarsat's Complaint seeks to disrupt that progress and is a direct attack on the Debtors' ability to consummate the Plan.

46.     The Debtors are seeking this Court to, once again, enforce the Mediated Agreement as written.  The Mediated Agreement says Ligado[32] must submit a regulatory application to the FCC containing certain language.  The Debtors have strictly complied with that requirement.  The Court need not wade into to what "coordination" means under the Amended Inmarsat Cooperation Agreement because that issue is not yet ripe.

47.     Nevertheless, Inmarsat re-raises the same anti-competitive and unsupportable interpretations of the Amended Inmarsat Cooperation Agreement in an attempt to justify its anticipatory repudiation of its commitments under the Mediated Agreement.  The Debtors and AST have already paid more than $400 million to Inmarsat and submitted the FCC Application consistent with the terms of the Mediated Agreement.  Inmarsat must now be held to its end of the bargain.  The Complaint is another attempt by Inmarsat to reopen the dispute over the interpretation of the Amended Inmarsat Cooperation Agreement.  That issue is simply for another day.

## NO PRIOR REQUEST

48.     No prior request for the relief sought in this Motion has been made to this or any other court.

---

[32]   Inmarsat also alleges the Mediated Agreement requires both the Debtors and AST submit the FCC Application. Compl. ¶ 64.  The Mediated Agreement, however, does not contain any requirements as to which entities must file the regulatory applications, and Ligado as the sole FCC licensee of this spectrum filed the FCC Application to modify how it can use this spectrum.  Ligado's FCC Application clearly states that all of Ligado's space stations in the form of a payload which will ride on AST's satellite (together, the Proposed NGSO System), will operate in accordance with the Amended Inmarsat Cooperation Agreement and requests that the FCC modify Ligado's license to use the Proposed NGSO System in accordance with the terms of the Inmarsat Cooperation Agreement. Ex. B (FCC Application) at 12.  It is disingenuous to suggest filing the application in Ligado's name only would allow AST to avoid being bound by the FCC license for the Proposed NGSO System it will operate.  In addition, the letter filed by AST in support of the FCC Application further rebuts this claim.

**NOTICE**

49.    The Debtors will provide notice of this Motion to:  (i) the Office of the U.S. Trustee for the District of Delaware; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (iii) Foley & Lardner LLP, as counsel to U.S. Bank National Association, in its capacities as Prepetition First Lien Notes Trustee, Prepetition First Lien Notes Collateral Trustee, First Lien Collateral Trustee, First Lien Representative, Prepetition First Lien Loan Administrative Agent, Prepetition First Lien Loan Collateral Agent, Prepetition 1.5 Lien Administrative Agent, Prepetition 1.5 Lien Collateral Agent, Initial Additional Pari Collateral Agent, Initial Additional Authorized Representative for the Notes Secured Parties, Senior Collateral Trustee, Junior Lien Representative, Junior Collateral Trustee, and DIP Agent; (iv) Seward & Kissel LLP, as counsel to Wilmington Savings Fund Society, in its capacity as Prepetition Second Lien Trustee and Prepetition Second Lien Collateral Trustee; (v) Sidley Austin LLP, as counsel to the Ad Hoc First Lien Group; (vi) Kirkland & Ellis LLP, as counsel to an Ad Hoc Cross-Holder Group; (vii) the Federal Communications Commission; (viii) the United States Securities and Exchange Commission; (ix) the Internal Revenue Service; (x) the state attorneys general for all states in which the Debtors conduct business; (xi) the U.S. Trustee; and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that that the motion notice requirements have been satisfied, and that no further notice is required under the circumstances

**CONCLUSION**

50.    For the foregoing reasons, the Court should enter an order substantially in the form attached hereto as Exhibit A, (i) enforcing the automatic stay, (ii) enforcing the Mediated

Agreement, and (iii) granting such other relief as the Court deems appropriate under the circumstances.

[*Signature Page Follows*]

Dated: January 2, 2026        /s/ Michael J. Merchant
Wilmington, Delaware           Mark D. Collins, Esq. (Bar No. 2981)
                               Michael J. Merchant, Esq. (Bar No. 3854)
                               Amanda R. Steele, Esq. (Bar No. 5530)
                               Zachary J. Javorsky, Esq. (Bar No. 7069)
                               **RICHARDS, LAYTON & FINGER, P.A.**
                               One Rodney Square
                               920 North King Street
                               Wilmington, DE 19801
                               Telephone:     (302) 651-7700
                               Facsimile:      (302) 651-7701
                               Email:          collins@rlf.com
                                               merchant@rlf.com
                                               steele@rlf.com
                                               javorsky@rlf.com
                               -and-
                               Dennis F. Dunne, Esq. (admitted *pro hac vice*)
                               Matthew L. Brod, Esq. (admitted *pro hac vice*)
                               Lauren C. Doyle, Esq. (admitted *pro hac vice*)
                               **MILBANK LLP**
                               55 Hudson Yards
                               New York, New York 10001
                               Telephone:     (212) 530-5000
                               Facsimile:      (212) 530-5219
                               Email:          ddunne@milbank.com
                                               mbrod@milbank.com
                                               ldoyle@milbank.com

                               Andrew M. Leblanc, Esq. (admitted *pro hac vice*)
                               Melanie Westover Yanez, Esq. (admitted *pro hac vice*)
                               **MILBANK LLP**
                               1101 New York Avenue, NW
                               Washington DC 20005
                               Telephone:     (202) 835-7500
                               Facsimile:      (202) 263-7586
                               Email:          aleblanc@milbank.com
                                               mwyanez@milbank.com

                               *Co-Counsel for Debtors in Possession*