# **<u>EXHIBIT 17</u>**

DE:4923-4737-9079.1 42241.00001



November 21, 2025

Ms. Marlene H. Dortch
Secretary
Federal Communications Commission
45 L Street, NE
Washington, DC 20554

      Re:    Request for Confidential Treatment; Letter of Viasat, Inc.; Application of JSAT Beyond Innovation LLC, ICFS File No. SAT-LOA-20250718-00178

Dear Ms. Dortch:

    Viasat, Inc. ("Viasat") submits the attached confidential version of the letter (the "Letter") that it is filing today regarding the above-referenced application (the "Application").

    The Letter contains information relating to the coordination of satellite systems pursuant to procedures codified in the International Telecommunication Union's Radio Regulations—including information from documents "prepared in connection with coordination, notification, and recording of frequency assignments and Plan modifications, including . . . documents and correspondence prepared in connection with operator-to-operator arrangements."[1]  Portions of this submission marked as confidential accordingly fall within the categories of materials not routinely available for public inspection and must be accepted by the Commission on a confidential basis pursuant to Section 0.457(d)(1)(vii)(B) of the Commission's rules, and 5 U.S.C. § 552(b)(4).

    In addition, portions of this submission marked as confidential relate to commercially sensitive information regarding the technical specifications of the networks at issue and terms of coordination agreements negotiated by the parties, and thus fall within Exemption 4 of the Freedom of Information Act ("FOIA") and are entitled to confidential treatment under the Commission's rules.  See 5 U.S.C. § 552(b)(4); 47 C.F.R. § 0.457(d).[2]

---

[1] 47 C.F.R. § 0.457(d)(1)(vii)(B).

[2] To the extent that the terms of the parties' coordination agreement constitute material "prepared in connection with coordination, notification, and recording of frequency assignments and Plan modifications, including . . . documents and correspondence prepared in connection with operator-to-operator arrangements," 47 C.F.R. § 0.457(d)(1)(vii)(B), that information falls within

Accordingly, Viasat respectfully requests that the Commission withhold from public inspection, and accord confidential treatment to, the enclosed unredacted version of the submission, pursuant to FOIA and Sections 0.457(d) and 0.459 of the Commission's rules, 5 U.S.C. § 552(b); 47 C.F.R. §§ 0.457(d), 0.459.

Viasat separately is filing today with the Commission a redacted version of the filing from which the confidential portions have been removed. That redacted version is available for public inspection.

With respect to the specific factors set forth in Section 0.459(b) of the Commission's rules, 47 C.F.R. § 0.459(b), Viasat provides the following information:

1. **Identification of Specific Information for Which Confidential Treatment Is Sought (47 C.F.R. § 0.459(b)(1)).** Viasat respectfully requests that the Commission withhold from public inspection, and accord confidential treatment to, the information redacted from the publicly filed version of the Letter (the "Confidential Material").

2. **Description of Circumstances Giving Rise to the Submission (47 C.F.R. § 0.459(b)(2)).** The Confidential Material is being filed voluntarily in connection with the Letter concerning the Application.

3. **Explanation of the Degree to Which the Information Is Commercial or Financial, or Contains a Trade Secret, or Is Privileged (47 C.F.R. § 0.459(b)(3)).** The Confidential Material relates to the coordination terms for satellite networks and contains sensitive commercial information that would customarily be guarded from competitors. Notably, the Commission has recognized the "commercially sensitive nature of coordination of satellite systems . . . ." *See Amendment of Part 0 of the Commission's Rules Regarding Public Information, the Inspection of Records, and Implementing the Freedom of Information Act*, Order, 24 FCC Rcd 6904 ¶ 13 (2008). Accordingly, the Commission has made clear that documents prepared in connection with coordination, including "documents and correspondence prepared in connection with operator-to-operator arrangements," are privileged and confidential, falling within the scope of Exemption 4 to FOIA. 47 C.F.R. § 0.457(d)(1)(vii). In addition, the Commission has found that "information about work performed for the purpose of conducting a business's commercial operations," to which the Confidential Material pertains, is competitively sensitive information "that the provider would not customarily release to the public," and therefore needs to be protected. *Southern Company Request for Waiver of Section 90.629 of the Commission's Rules*, 14 FCC Rcd 1851, 1860 (1998) (citing *Public Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983)). Insight into the commercial terms that the parties have negotiated in satellite coordination agreements would provide competitors or future contracting parties with an advantage in present or future negotiations or dealings with Viasat. As a result, public disclosure of this

---

the categories of materials not routinely available for public inspection and must be accepted by the Commission on a confidential basis pursuant to 5 U.S.C. § 552(b)(4).

2

information would place Viasat at a competitive disadvantage vis-a-vis other competitors and in future coordination negotiations, and could damage Viasat's position in the marketplace.

4. **Explanation of the Degree to Which the Information Concerns a Service That Is Subject to Competition (47 C.F.R. § 0.459(b)(4)).** The Confidential Material contains certain terms of international coordination and commercial agreements, as well as operational and technical parameters of the satellite networks at issue. The satellite networks at issue provide broadband services, which are subject to vigorous competition from numerous other existing and potential providers offering such services over satellite, wireline, and terrestrial wireless technologies.

5. **Explanation of How Disclosure of the Information Could Result in Substantial Competitive Harm (47 C.F.R. § 0.459(b)(5)).** As noted above, a number of service providers, including satellite providers, compete or potentially compete with Viasat. If Viasat's competitors were to obtain access to the Confidential Material, they could use such information to improve their competitive positions vis-à-vis Viasat. The parties have extensively negotiated the terms of the coordination agreement at issue, including the specific technical and operational obligations of each party. Disclosure of this information could harm Viasat or the other party in future coordination negotiations. If competitors were to obtain access to the Confidential Material, competitors could unfairly benefit by using the commercial terms as the basis for negotiating their own satellite coordination agreements.

6. **Identification of Any Measures Taken by the Submitting Party To Prevent Unauthorized Disclosure (47 C.F.R. § 0.459(b)(6)).** The Confidential Material is not normally distributed, circulated, provided, or otherwise available to any party outside of Viasat absent agreement to be bound by nondisclosure undertakings.

7. **Identification of Whether the Information Is Available to the Public and the Extent of Any Previous Disclosure of the Information to Third Parties (47 C.F.R. § 0.459(b)(7)).** The Confidential Material is not available to the public. As noted above, third parties that have or need access to the information are bound by nondisclosure undertakings.

8. **Justification of the Period During Which the Submitting Party Asserts That Material Should Not Be Available for Public Disclosure (47 C.F.R. § 0.459(b)(8)).** Viasat requests that the Confidential Material be treated as confidential indefinitely. The technical information and commercial terms included in the Confidential Material discuss plans for existing satellites that will be operational for many years, as well as future satellites, and thus would continue to provide insight into Viasat's technologies, technical operations, and negotiating strategies well into the future.

9. **Other Information That Viasat Believes May Be Useful in Assessing Whether Its Request for Confidentiality Should Be Granted (47 C.F.R. § 0.459(b)(9)).** As discussed above, the commercial information and coordination parameters of the type included in the Confidential Material are competitively sensitive information that needs

to be protected.  In similar contexts, the Commission has adhered to a policy of not authorizing the disclosure of confidential information on the mere chance that it might be helpful to a third party.  Rather, the Commission insists on a showing that the information is a *necessary* link in a chain of evidence that will resolve an issue before the Commission.  *See Examination of Current Policy Concerning the Treatment of Confidential Information Submitted to the Commission*, Report and Order, 13 FCC Rcd 24816 ¶ 8 (1998).  Further, the Confidential Material includes sensitive commercial information that squarely falls within Exemption 4 to FOIA, insofar as this information relates to satellite system coordination and sensitive business negotiations and is (i) commercial or financial in nature; (ii) obtained by a person outside government; and (iii) privileged and confidential.  *See* 47 C.F.R. § 0.457(d)(1)(vii); *Washington Post Co. v. U.S. Department of Health and Human Services*, 690 F.2d 525 (D.C. Cir. 1982).  Where, as here, a party provides to the Commission, "on a voluntary basis," information "that would customarily not be released to the public by the person from whom it was obtained," such information is "categorical[ly]" protected from disclosure.  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 879 (D.C. Cir. 1992) (*en banc*).

For these reasons, Viasat respectfully requests that the Commission withhold from public inspection, and accord confidential treatment to, the enclosed Letter.  Please contact the undersigned should you have any questions regarding this submission.

                              Respectfully submitted,

                              /s/

                              Jarrett S. Taubman
                              VP & Deputy Chief Government Affairs and Regulatory Officer
                              VIASAT, INC.
                              901 K Street NW, Suite 400
                              Washington, DC  20001

cc:    Jennifer A. Manner, AST & Science, LLC (redacted version)
        Vernon G. Ross, Ligado Networks LLC (redacted version)
        Tai Ishikawa, JSAT Beyond Innovation LLC (redacted version)
        Danielle Pineres, Planet Labs PBC (redacted version)



**VIA ELECTRONIC FILING**

November 21, 2025

Ms. Marlene H. Dortch
Secretary
Federal Communications Commission
45 L Street, NE
Washington, DC 20554

      Re:    Application of JSAT Beyond Innovation LLC, ICFS File No. SAT-LOA-20250718-00178

Dear Ms. Dortch:

Viasat submits this letter in response to the Petition to Deny filed in this proceeding by AST & Science, LLC ("AST") and Ligado Networks LLC ("Ligado") on November 18, 2025 ("Joint Petition").[1] The Joint Petition addresses the above-referenced application of JSAT Beyond Innovation LLC ("JBI") in which JBI seeks authority to operate a new non-geostationary orbit ("NGSO") satellite system in the Earth-Exploration Satellite Service. Among other things, JBI's NGSO satellites would communicate in the L band with satellites operated by Inmarsat, a wholly owned subsidiary of Viasat.[2]

In the Joint Petition, AST and Ligado raise concerns with respect to these proposed L-band operations. As AST and Ligado acknowledge, their concerns are the same concerns they previously raised in connection with a similar application filed by Planet Labs PBC ("Planet").[3] In the context of that proceeding, Viasat provided factual and legal analysis demonstrating that these concerns were without merit as: (i) Planet's proposed L-band operations would be fully consistent with the Commission's rules and policies, as well as the existing coordination agreement between Inmarsat and Ligado; and (ii) Planet had made commitments in its

---

[1]    *See* Petition to Deny of AST & Science, LLC and Ligado Networks LLC, ICFS File No. SAT-LOA-20250718-00178 (Nov. 18, 2025) ("Joint Petition").

[2]    ICFS File No. SAT-LOA-20250718-00178, Legal Narrative, at 6 ("JBI Legal Narrative").

[3]    Joint Petition at 4-5 ("Substantively, the issues presented by the Application are the same as are presented by the application for modification of licenses held [by] [sic] Planet Labs PBC, and demand a similar approach by the Commission . . . .").

application that would appropriately cabin any risk of harmful interference to other spectrum users.[4]

The same factual and legal analysis applies with respect to JBI's proposed L-band operations. JBI, like Planet, has acknowledged that its proposed L-band operations would be nonconforming in nature[5] and has committed to operate without causing harmful interference to other L-band operations and accept interference from other authorized L-band operations.[6] AST and Ligado acknowledge these commitments, and neither so much as *suggests* that JBI would not operate accordingly—or that its proposed operations would pose any actual risk of harmful interference.[7]

Nevertheless, AST and Ligado complain that JBI's application somehow does not "demonstrate that it will not cause interference."[8] This simply is not true. As JBI's application establishes, Inmarsat will assign specific channels for JBI's use that have been coordinated for use with Inmarsat satellites, ensuring that there will be no harmful interference between JBI's proposed operations and Ligado's operations.[9] To clarify, the existing coordination agreement between Inmarsat and Ligado: ██████████████████████████████████████████ JBI's proposed operations would remain within ██████████████████████████████████████████. As such, any impact on Ligado's network resulting from such operations would not and could not constitute cognizable harmful interference.

For its part, AST has not applied for *any* authority to use the L band in the United States, and certainly has not been authorized by the Commission to conduct L-band operations. AST states that it intends to use "Ligado's" L-band spectrum to provide service to users in the United States,[10] but this would require AST—and not Ligado—to hold appropriate Commission

---

[4]    *See* Letter from Viasat, Inc. to FCC, ICFS File No. SAT-MOD-20250527-00129 (Sep. 9, 2025) ("Viasat Letter"). Viasat incorporates by reference its previously filed analysis.

[5]    JBI Legal Narrative at 6, 13-14.

[6]    *Id.* at 6.

[7]    Joint Petition at 1-2, 5.

[8]    *Id*. at 5.

[9]    JBI Legal Narrative at 13-14. Any suggestion that JBI's application is deficient because it does not provide a full set of transmit and receive channels, *see* Joint Petition at 5-6, ignores the manner in which the L-band is typically licensed. Inmarsat is authorized to operate across the L-band, and not in specific channels. Third parties communicating with Inmarsat satellites are generally authorized in like fashion.

[10]   Joint Petition at 4 (suggesting that AST-Ligado agreement "will allow AST SpaceMobile to use Ligado's L-band MSS spectrum to increase the capabilities of space-based mobile

2

authorizations. The Commission has not authorized AST to use "Ligado's" L-band spectrum to provide service in the United States (and, in any event, Ligado is not authorized to conduct NGSO operations in the L band, either). AST therefore has *no* basis for claiming protection from JBI's proposed L-band operations.

Viasat appreciates that AST aspires to operate in the L band, and entered into a contractual arrangement with Ligado in an attempt to advance that objective. This contractual arrangement was a central component of Ligado's bankruptcy exit plan.[11] However, AST's potential operations have not yet been appropriately coordinated with those spectrum users that the Commission has approved to operate in the L band. As Viasat explained in the Planet application proceeding, the Commission's public interest analysis with respect to any application allowing AST spacecraft to use the L band would necessarily be required to consider whether AST has completed such coordination. At the time, Viasat made clear that AST had not coordinated any potential L-band NGSO operations with Viasat.[12] That has not changed.

In July 2025, in connection with settling various disputes related to Ligado's bankruptcy, Viasat, AST, and Ligado began discussions for a coordination arrangement that would cover the prospective operations of an NGSO system to be proposed by AST and Ligado. Based on those negotiations, the parties appear to agree that successful coordination would require: ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Draft amendments to the Inmarsat-Ligado Cooperation Agreement and a draft agreement between Inmarsat and AST that would have addressed the matters identified above (among others) and resulted in AST's proposed NGSO system being coordinated in North America were exchanged but never consummated. Although Inmarsat has invited AST and Ligado to resume coordination negotiations, they have not accepted the invitation. Therefore, the coordination process is far from complete.

If and when the anticipated coordination is completed, the settlement reached by the parties in Ligado's bankruptcy proceeding contemplates that AST and Ligado will file an application with the Commission stating that "operations of all AST and Ligado spacecraft, individually and taken as a whole, and regardless of orbit, will be consistent with and remain

---

broadband services . . . ."); *id.* (referring to "L-band services provided by AST SpaceMobile's planned LEO constellation").

[11] Plan Disclosure Statement, *In re Ligado Networks, LLC*, Case No. 25-10006, Dkt. 697 (June 24, 2025), https://casedocs.omniagentsolutions.com/cmsvol2/pub_47388/2117e8f6-348b-43f3-bd8b-ca78eed2d510_697.pdf.

[12] In the Planet application proceeding, Viasat specifically noted that coordination between Inmarsat and AST had *not* been completed. Viasat Letter at 2. AST and Ligado subsequently responded to Viasat's letter "to ensure the record of this proceeding accurately reflects L-band coordination arrangements." Letter from AST and Ligado to FCC, ICFS File No. SAT-MOD-20250527-00129 (Sep. 19, 2025). Tellingly, neither AST nor Ligado challenged Viasat's characterization of the status of its coordination with AST. *See id.*

within the technical, geographic and other limitations in the Amended Inmarsat Cooperation Agreement and Ligado's other coordination agreements with various parties."[13]  To date, AST has not committed that the "operations of all [its] spacecraft" will remain within those limitations, which is one reason the coordination simply has not been completed—to say nothing of AST actually obtaining Commission approval to operate in the L band.

In short, the Joint Petition's assertion that relevant L-band spectrum will "shortly become a critical part of [AST's] space-based mobile broadband services"[14] presumes far too much.

In any event, AST and Ligado have failed to meet their burden of adducing "specific allegations of fact" sufficient to demonstrate that grant of JBI's application would be prima facie inconsistent with the public interest.[15]  The Joint Petition should therefore be denied.

Please contact the undersigned should you have any questions.

Respectfully submitted,

/s/

Jarrett S. Taubman
VP & Deputy Chief Government Affairs and Regulatory Officer
VIASAT, INC.
901 K Street NW, Suite 400
Washington, DC  20001

cc:   Jennifer A. Manner, AST & Science, LLC (redacted version)
       Vernon G. Ross, Ligado Networks LLC (redacted version)
       Tai Ishikawa, JSAT Beyond Innovation LLC (redacted version)
       Danielle Pineres, Planet Labs PBC (redacted version)

---

[13]   See Ligado – Settlement Term Sheet, In re Ligado Networks, LLC, Case No. 25-10006, Dkt. 692 (June 23, 2025) ("The applications [for a proposed non-geostationary satellite orbit satellite system to be operated in the L-Band in North America] will expressly: (i) state that the operations of all AST and Ligado spacecraft, individually and taken as a whole, and regardless of orbit, will be consistent with and remain within the technical, geographic and other limitations in the Amended Inmarsat Cooperation Agreement and Ligado's other coordination agreements with various parties . . . ."), https://casedocs.omniagentsolutions.com/cmsvol2/pub_47388/1e359022-9f4b-421c-821b-126cd4f5812a_692.pdf.

[14]   Joint Petition at 7.

[15]   47 C.F.R. § 25.154(a)(4).