# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LIGADO NETWORKS LLC *et al.*,[1]<br><br><br><br>Debtors. | Chapter 11<br><br>Case No. 25-10006 (TMH)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 1220, 1221, 1249** |

**DEBTORS' REPLY TO INMARSAT'S OMNIBUS OBJECTION TO (A) DEBTORS' MOTION FOR AN ORDER (I) ENFORCING THE AUTOMATIC STAY, (II) ENFORCING THE MEDIATED AGREEMENT, AND (III) GRANTING RELATED RELIEF AND (B) EMERGENCY MOTION BY AST & SCIENCE LLC FOR ENTRY OF AN ORDER ENFORCING THE MEDIATED AGREEMENT AND RELATED ORDERS**

The above-captioned debtors and debtors in possession (the "Debtors" or "Ligado") submit this reply (the "Reply") in further support of the *Debtors' Motion for an Order (I) Enforcing the Automatic Stay, (II) Enforcing the Mediated Agreement, and (III) Granting Related Relief* [Docket No. 1220] (the "Motion to Enforce") and in response to *Inmarsat Global Limited's Omnibus Objection to (A) Debtors' Motion for an Order (I) Enforcing the Automatic Stay, (II) Enforcing the Mediated Agreement, and (III) Granting Related Relief and (B) Emergency Motion by AST & Science LLC for Entry of an Order Enforcing the Mediated Agreement and Related Orders* filed

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

by Inmarsat Global Limited [Docket No. 1249] ("Objection").[2]  For the reasons set forth herein, the Objection should be overruled and the Motion to Enforce should be granted.

## PRELIMINARY STATEMENT

1. The Mediated Agreement is clear that Inmarsat must affirmatively support the FCC Application if (a) Ligado and AST meet their payment obligations and (b) the FCC Application meets the two conditions that were negotiated in the Mediated Agreement. The FCC Application faithfully satisfies the conditions that were negotiated and AST and Ligado have satisfied their payment obligations; but Inmarsat has sued Ligado and announced its intention to flagrantly breach its obligation to support the FCC Application. The Motion to Enforce seeks only to enforce Inmarsat's unambiguous obligation under the Mediated Agreement.

2. As the Court knows, after the Mediated Agreement was reached, the parties tried to agree on more comprehensive terms that could be reflected in a new cooperation agreement, but were unsuccessful in those efforts and the precise language of the Mediated Agreement was instead incorporated. Ligado and AST already have agreed, and truthfully have represented to the FCC that they have agreed, that the operations of all AST and Ligado spacecraft will remain within the technical, geographic, and other limitations of the Amended Inmarsat Cooperation Agreement. As specifically negotiated in the Mediated Agreement, the FCC Application therefore requests that the FCC recognize that the Proposed NGSO System has been "coordinated *subject to the terms of the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement*." Inmarsat, however, asserts—after receiving **$420 million** pursuant to the Mediated Agreement—that the Proposed NGSO System is not coordinated enough.

---

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion to Enforce.

3. This Court is well aware that the parties disagree on the interpretation of certain terms of the Amended Inmarsat Cooperation Agreement. The resolution of that dispute, however, is a matter for another day—that is ***not*** the agreement Ligado is asking the Court to enforce. As Inmarsat previously told this Court, "[i]t suffices to move Ligado's reorganization Plan forward for the Court to decide *whether* the Mediated Agreement preserves the Cooperation Agreement's limits, leaving for another day (and another court) the exact scope of *what* those limits are."[3] All Ligado is asking this Court to enforce is the unambiguous Mediated Agreement that requires Inmarsat to affirmatively support the FCC Application as long as two conditions have been satisfied. Any dispute over the interpretation or enforcement of the Mediated Agreement is properly before this Court. And Inmarsat's efforts to bring that dispute, resolution of which will necessarily have a critical impact on the success of the Debtors' reorganization in this forum, to the New York state court, presumably hoping for a different outcome, is a violation of the automatic stay.[4]

4. Inmarsat's procedural arguments are without merit. The Mediated Agreement was incorporated into the AST Order, as well as inextricably interwoven with the terms of the Debtors' confirmed Plan. Far from being a "dead letter" as Inmarsat contends, the survival of the Mediated Agreement is expressly provided for by the Debtors' confirmed Plan and the parties' continued performance thereunder is a condition precedent to the occurrence of the Effective Date. There can be no dispute that this Court has jurisdiction to enforce its own orders and consider any matters that impact the implementation of a chapter 11 plan it has confirmed.

---

[3] *Inmarsat Global Limited's Opposition to Ligado's Motion to Enforce the Parties' Mediated Agreement* [Docket No. 895] ¶ 37 (emphasis in original).

[4] Indeed, in its Complaint, Inmarsat itself alleges a breach of the Mediated Agreement. *See, e.g.,* Complaint ¶ 63-65.

5. The record in these Chapter 11 Cases does not suggest otherwise, notwithstanding Inmarsat's assertions. Within the Mediated Agreement, the parties agreed to an expedited resolution process for "**Breaches of the Amended Inmarsat Cooperation Agreement[,]**" specifically breaches of the "technical and/or geographic limitations of the Amended Inmarsat Cooperation Agreement in Exhibits B, C, L, M, N, T and U." *See* Mediated Agreement § 3. Inmarsat's Complaint, however, alleges a breach of the coordination obligations mandated by *the Mediated Agreement,* over which this Court expressly retained jurisdiction. What is more, this Court's statements during the last hearing to enforce the Mediated Agreement did not change that. Instead, the Court noted that the Mediated Agreement provides for an expedited dispute resolution process in the event there is a practical and concrete dispute about what the terms of the *Amended Inmarsat Cooperation Agreement* mean. Nor did this Court grant relief from the automatic stay when it suggested that one potential avenue for the prior dispute's resolution was that the court *could* give Inmarsat stay relief. If anything, the Court's remarks *confirm* that stay relief is necessary.

6. Because this Court has jurisdiction to enforce its own orders and the Mediated Agreement, an adversary proceeding is not necessary for the relief the Debtors seek. Inmarsat disingenuously suggests that granting the relief the Debtors are seeking would "resolve the merits" of its Complaint. Not so. The Debtors seek merely to enforce the Mediated Agreement and the AST Order in the appropriate forum, where the issues already were litigated between the parties. There is no reason, other than delay, to force the Debtors to once again litigate for the same relief they *already obtained* in the AST Order. Moreover, there is no requirement for an adversary proceeding here where the AST Order is expressly incorporated into the Plan. *See* Bankruptcy

Rule 7001(g) (obviating the need for an adversary where the relief at issue "is provided in a Chapter [11] plan.")

7. Having received all the benefit of its bargain struck in the Court-approved Mediated Agreement—including payment of *$420 million*, Inmarsat must uphold its obligations.

## ARGUMENT

### I. Inmarsat's New York Complaint Violates the Automatic Stay

#### A. The Automatic Stay Applies to Inmarsat's New York Complaint

8. Inmarsat's Complaint alleges breaches of the Mediated Agreement, which was approved by this Court in the AST Order and incorporated into the confirmed Plan. This is a clear breach of the automatic stay, which is intended, among other things, to protect debtors from actions seeking to exercise control over property of the estate outside the bankruptcy forum. By bringing an action to enforce the Mediated Agreement in New York state court—despite this Court's jurisdiction to interpret and enforce the agreement it has approved—Inmarsat violated the automatic stay. Indeed, far from being a "dead letter", as Inmarsat asserts, the Mediated Agreement is very much alive, and in fact, the Confirmation Order explicitly provides for its survival. *See* Confirmation Order [Docket No. 1007] ¶ 32. The Mediated Agreement is an integral part of the Debtors' confirmed Plan: performance thereunder is deemed a "Restructuring Transaction" under the Plan and the benefits the Debtors had bargained for in such agreement are instrumental for the Debtors' ongoing reorganization efforts. *See* Plan, Art. V(B). Article V(B)(6) of the Plan explicitly provides for the "execution, delivery, and/or performance of any applicable obligations or requirements of the Debtors. . . as set forth in the AST Definitive Agreements and the AST Definitive Agreements Order." *Id.* at Art. V(B)(6).

5

9. In addition, as noted in the Motion to Enforce, Plan Art. V(C)(3) provides that "the terms of the AST Definitive Agreements Order shall survive entry of the Confirmation Order" and that the Debtors "shall continue to perform in accordance with the AST Definitive Agreements, and in compliance with the AST Definitive Agreements Order, and take all steps required thereunder in connection with the AST Transaction." *Id*. at Art. V(C)(3). The "AST Definitive Agreements Order" is defined as "the Bankruptcy Court order authorizing entry into the AST Transaction by the Debtors, ***including the Mediated Agreement***[.]" *Id.* at Art. I(A)(21) (emphasis added).

10. Indeed, the continued existence of the Mediated Agreement and no default thereunder ***is a condition for the occurrence of the Effective Date***:

> [T]he AST Definitive Agreements shall not have been terminated in accordance with any applicable terms and no default giving any party thereto the right to terminate any of the AST Definitive Agreements shall exist thereunder[.]

*Id.* at Art. IX(A)(18). Any characterization of the Mediated Agreement as a "dead letter" is flatly incorrect. The Mediated Agreement remains a key part of the Debtors' ongoing reorganization efforts, and any challenge thereunder directly falls under this Court's power to enforce the Mediated Agreement.

11. For the same reasons, Inmarsat's reference to 28 U.S.C. § 959 does not save its violative action. While Section 959 creates a narrow exception to the automatic stay to allow for suits against a trustee, receiver or manager, such exception is nevertheless subject to "the general equity power of [the Bankruptcy] court so far as the same may be necessary to the ends of justice." 28 U.S.C. § 959(a). Indeed, courts often use their equitable powers to stay such actions. *See, e.g., In re Telegroup, Inc.*, 237 B.R. 87, 96 (Bankr. D.N.J. 1999). Here, Inmarsat filed the New York state court action alleging a breach of the Mediated Agreement (over which this Court has

continuing jurisdiction). The lawsuit is not one merely incidental to the carrying on of business; it is one to enforce an agreement and order critical to the administration of the estate. *Cf. Habererm v. Lehigh & N.E. Ry. Co.*, 554 F.2d 581 (3d Cir. 1977) (granting relief from stay to allow suit against bankrupt railroad to allow aging plaintiff to recover pension and compensation (ongoing business), arising years after bankruptcy cases commenced). In addition, Inmarsat tries to sidestep the Debtors' assertion that the automatic stay has been violated under section 362(a)(3) by claiming it is not seeking to obtain or control Ligado's FCC license. Objection ¶ 47. Inmarsat is attempting to interfere with and adjudicate Ligado's rights under the Mediated Agreement, an important asset of the Debtors' that is integral to the Plan, by filing the Complaint, directly embodying an "act to. . . .exercise control over property of the estate" that is prohibited by the automatic stay. *See* 11 U.S.C. § 362(a)(3).[5]

12.     In addition, Inmarsat flagrantly mischaracterizes this Court's words concerning whether relief from the automatic stay was needed when raising disputes under the Mediated Agreement. Inmarsat suggests that based on the Court's statements at the August 29 hearing, it believed it did not need relief from the automatic stay. *See* Objection ¶¶ 49, 50. This Court, however, stated:

> I can enter an order that says you go ahead and you said what you're going to put in the mediated agreements in the settlement term sheet, you go ahead and do that, and I ***could*** also say, if there is a dispute, Inmarsat, to the extent they need it, they have stay relief and they can go pursue it wherever they need to pursue it. That's ***a*** way to handle it.

---

[5] Inmarsat cites *In re Kish*, 41 B.R. 620 (Bankr. E.D. Mich. 1984) *and Larami Ltd. v. Yes! Ent. Corp.*, 244 B.R. 56 (D.N.J. 2000) to justify its characterization of filing the Complaint as not "seeking to obtain or control Ligado's FCC license" but rather "simply [seeking] that Ligado comply with its Post-Petition Contracts and truthfully represent the parties' positions to the FCC." Objection ¶ 47. But Inmarsat directly sought adjudication of the Mediated Agreement when it filed its Complaint in New York State Court—an agreement that is essential to the Debtors' estates—and therefore sought to exercise "control over" the Debtors' estates. 11 U.S.C. § 362(a)(3). Further, *Kish* interpreted an outdated version of section 362(a)(3), which language did not stay attempts to "exercise control over" the property of the estate.

August 29, 2025 Hrg. Tr. at 28:16-23 (emphasis added). The Court's statement that it "could" grant stay relief is an affirmation that the automatic stay applies to disputes arising under the Mediated Agreement. Inmarsat's interpretation that the Court somehow blessed in advance any action that would violate the automatic stay does not follow.

      **B.    Even if the Automatic Stay Does Not Apply, Disputes About the Mediated Agreement are Properly Before this Court, Not in New York State Court**

      13.    Inmarsat critically misconstrues the Mediated Agreement by concluding that the proper forum for resolution of disputes thereunder is the New York Supreme Court, Commercial Division or the federal court in the Southern District of New York. Objection ¶ 48. Instead, the Mediated Agreement states that ". . . .the availability of injunctive relief through the expedited arbitral process set forth above does not preclude a Party from seeking enforcement of the ***Amended Inmarsat Cooperation Agreement*** in the New York Supreme Court, Commercial Division or the federal court in the Southern District of New York[.]" *See* Mediated Agreement at 5 (emphasis added). Again, the Debtors are not seeking enforcement of the Amended Inmarsat Cooperation Agreement. Rather, and as is crystal clear from the Motion to Enforce, the Debtors seek enforcement of the ***Mediated Agreement***, incorporated into the AST Order. And, as the AST Order provides, this Court retains jurisdiction "with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order, including enforcement of the Mediated Agreement." AST Order ¶ 13. In its Complaint, Inmarsat principally argues that Ligado and AST's actions contravene the provisions of the ***Mediated Agreement***. *See, e.g.,* Complaint ¶¶ 63, 64 ("The Term Sheet obligates Ligado and AST to coordinate the Proposed NGSO System before filing any application with the FCC…[t]he parties have not coordinated the Proposed NGSO System"; "The Term Sheet further requires that both AST and Ligado would jointly file the application. . . .[this] is a breach of the Term Sheet[.]") While Inmarsat also alleges a breach

of the Amended Inmarsat Cooperation Agreement, it is ultimately the Mediated Agreement that Inmarsat alleges was breached. Additionally, resolution of a dispute with respect to the AST Order—which is an order approving the use of estate property—is a core proceeding pursuant to the 28 U.S.C. § 157(b)(2), as explicitly provided therein. *See* AST Order at 1. Therefore, this dispute properly belongs in this Court, which is the proper forum to enforce the Mediated Agreement it has approved. And that is precisely what the Debtors and AST seek to do.[6]

## II. No Adversary Proceeding is Required to Enforce an Order of this Court

14. Inmarsat argues that the Debtors may not seek injunctive relief without an adversary proceeding. Objection ¶¶ 52, 53. However, the equitable relief the Debtors seek is enforcement of the Mediated Agreement previously approved by this Court pursuant to the AST Order. Under the AST Order, Inmarsat must abide by all of its obligations under the Mediated Agreement, which Inmarsat has failed to do. When a party petitions a court to enforce its own order, an adversary proceeding is not required. *See, e.g., In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418 (3d Cir. 2013) (finding that when bankruptcy court was adjudicating a motion to interpret and enforce its existing prior order, an adversary proceeding was not necessary); *In re WorldCorp, Inc.*, 252 B.R. 890, 895 (Bankr. D. Del. 2000) (concluding that "an adversary proceeding is not necessary where the relief sought is the enforcement of an order previously obtained"); *In re Nortel Networks, Inc.*, No. 09-10138 (KG), 2013 WL 1385271 (Bankr. D. Del. Apr. 3, 2013) (holding that an adversary proceeding was not required because the motion at issue was an "effort to enforce an agreement" the court had previously approved).[7]

---

[6] The caselaw Inmarsat cites in paragraph 48 of its Objection is inapposite. The dispute at issue is the parties' performance under the Mediated Agreement and how the words of the Mediated Agreement are to be interpreted. A dispute under the Mediated Agreement is squarely within this Court's power to decide.

[7] Inmarsat's selection of caselaw on Bankruptcy Rule 7001(g) does not apply because the Debtors are simply seeking to enforce an order of this Court, not relief that may only be obtained in an adversary proceeding. Thus,

15. Furthermore, Bankruptcy Rule 7001 provides that a proceeding to obtain an injunction or equitable relief requires an adversary proceeding, "*except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief*." FRBP 7001(g) (emphasis added). Here, the Plan provides for the relief the Debtors seek—it requires the Debtors and AST to continue to perform in accordance with the AST Order (including to perform the Mediated Agreement), and take all steps required thereunder in connection with the AST Transaction. *See* Plan Art. V(C)(3).

16. And even without the caselaw and rules described above, "courts in many instances have found that judicial economy permits the courts to look beyond Rule 7001 to the merits of the dispute provided no prejudice will result." *In re Brier Creek Corp. Ctr. Assocs. Ltd. P'ship*, No. 12-01855-SWH, 2013 WL 144082, at *2 (Bankr. E.D.N.C. Jan. 14, 2013) (citations omitted). No prejudice will result to Inmarsat if this Court enforces the Mediated Agreement and holds Inmarsat to its obligations thereunder. Inmarsat repeatedly asserts that the Motion to Enforce is procedurally improper. However, Inmarsat's filing of its Complaint in the New York state court forced the Debtors to seek to enforce the automatic stay and the Mediated Agreement in this Court. This Court has the power to enforce the plain words of the Mediated Agreement, which is the core— and only—dispute currently between the parties.

---

the cases Inmarsat cites are distinguishable. *See, e.g., Matter of Perkins*, 902 F.2d 1254 (7th Cir. 1990) (plaintiff improperly filed a turnover action as a motion and not adversary proceeding); *Jordan v. State of Washington (In re Prehired, LLC)*, 2025 WL 2661765 (D. Del. Sept. 16, 2025) (plaintiff did try to enforce a previous order of the court, but plaintiff had not been a relevant party to the court's order or participated in the litigation leading to the court's order); *In re Lengacher*, 485 B.R. 380 (Bankr. N.D. Ind. 2012) (debtors sought an extension of the automatic stay to certain non-debtors, which the court ruled required an adversary proceeding).

### III. This Court Should Enforce the Mediated Agreement

#### A. Ligado and AST Have Fulfilled Their Obligations Under the Mediated Agreement

17. After weeks, if not months, of negotiations of the disputes among Ligado, AST and Inmarsat, the parties eventually achieved the Mediated Agreement. The Mediated Agreement, the wording of which was painstakingly drafted and revised until the final version approved by the Court, expressly states that "[p]rovided the Applications meet the two conditions in the first paragraph of this section, Inmarsat . . . shall affirmatively support before the FCC and ISED the initial regulatory applications seeking authority to operate the Proposed NGSO System within the L-Band in North America." *See* Mediated Agreement § 2. The two enumerated conditions of the first paragraph of section 2 are that the FCC Application: (1) "state that the operations of all AST and Ligado spacecraft, individually and taken as a whole, and regardless of orbit, will be consistent with and remain within the technical, geographic and other limitations in the Amended Inmarsat Cooperation Agreement" and (2) "request that the FCC and ISED recognize that the operations of the Proposed NGSO System have been coordinated subject to the terms of the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement, and give effect to such agreements by licensing the Proposed NGSO System to operate in accordance with the terms of such agreements."[8]

18. The FCC Application does precisely that, and truthfully so. Ligado, AST and Inmarsat negotiated *ad nauseum* to come to an agreement on precise language to include in the Amended Inmarsat Cooperation Agreement but were unable to achieve consensus; hence, the last round of motions to enforce filed in August 2025. But as this Court recognized, if the parties could

---

[8] Inmarsat also asserted that it was a breach of the Mediated Agreement that AST did not co-file the FCC Application. *See* Objection ¶ 60 n.8. But Inmarsat does not, and cannot, assert that the Mediated Agreement required AST to file an application to modify a license held by Ligado.

reach agreement on additional language, so be it; otherwise, the precise language of the Mediated Agreement was to be incorporated into both the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement.  *See* August 29, 2025 Hrg. Tr. at 30:7-14; 36:5-12.  The parties could not agree to other language and so incorporated the exact language of the Mediated Agreement into the other two agreements.  By doing so, Ligado and AST agreed that the operations of the Proposed NGSO System would be bound by the geographic, technical, and other limitations in the Amended Inmarsat Cooperation Agreement.  Thus, "the operations of the Proposed NGSO System ***have been coordinated subject to the terms of the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement***[.]"  Mediated Agreement § 2 (emphasis added).  The Amended Inmarsat Cooperation Agreement is replete with technical, geographic and other limitations and Ligado and AST have agreed that the Proposed NGSO System will comply with those limitations.  Inmarsat's filings seemingly suggest that the limitations of the Amended Inmarsat Cooperation Agreement do not even touch on coordination, but the entire focus of the agreement is coordination to avoid interference.  It is hardly "skeletal."  *Cf.* Objection ¶ 71.  That Inmarsat desires further coordination does not make Ligado's representation in the FCC Application untrue.  Inmarsat is not the sole arbiter of the *quantum* of coordination required.

19.    The Mediated Agreement requires that the FCC Application ask the FCC to recognize that the Proposed NGSO System has been coordinated subject to the Amended Inmarsat Cooperation Agreement.  It has been and the Application makes the request.  What specific terms are encompassed by the Amended Inmarsat Cooperation Agreement is not an issue for today.  To quote Inmarsat:

> It suffices to move Ligado's reorganization Plan forward for the Court to decide *whether* the Mediated Agreement preserves the Cooperation Agreement's limits, leaving for another day (and another court) the exact scope of *what* those limits are. Ligado and AST have not even applied to

regulators to provide a satellite service outside North America inconsistent with the Exclusive Use rights Inmarsat is claiming, let alone launched any satellites. ***If and when either occur***, the parties can litigate the scope of the Cooperation Agreement in the appropriate forum, applying the Cooperation Agreement's terms to the specific factual context that exists then.

*Inmarsat Global Limited's Opposition to Ligado's Motion to Enforce the Parties' Mediated Agreement* [Docket No. 895] ¶ 37 (emphasis added). Neither Ligado nor AST have applied to operate the Proposed NGSO System outside of North America, or even outside of the United States. If and when that ever occurs and Inmarsat asserts there is a breach of coordination, Inmarsat can use the agreed upon expedited procedures to resolve such dispute. Until then, this Court need only enforce the Mediated Agreement as written.[9]

20. Indeed, nothing in the Mediated Agreement sets forth a requirement for further coordination. To the contrary, footnote 8 of the Mediated Agreement states:

> The ***applications will not be more granular in respect of prong (ii)*** and the Amended Inmarsat Cooperation Agreement shall not be submitted to the FCC with the initial applications or comments, and Inmarsat/Viasat shall promptly refer any specific request by the FCC for the Agreement or any portion thereof to Ligado.

Mediated Agreement § 2 n.8 (emphasis added). Thus, specifically with respect to the very representation that the Proposed NGSO System had been coordinated—that Inmarsat accuses Ligado of falsely making—the parties agreed that the applications ***would not be more granular*** than the language agreed to in the Mediated Agreement. There is no requirement for further coordination.

21. That the proposed system is non-geostationary (NGSO), as opposed to geostationary (GSO), also does not mandate further coordination. Indeed, the Amended Inmarsat

---

[9] The plain words of the Mediated Agreement are unambiguous and can be enforced without this Court's consideration of the extrinsic evidence referenced in Inmarsat's Objection as purported support for its assertion that more coordination is necessary.

Cooperation Agreement protects Inmarsat (and Ligado) from interference regardless of whether that interference comes from a GSO or NGSO system. In fact, Ligado and AST, by coordinating the operations of the Proposed NGSO System subject to the terms of Amended Inmarsat Cooperation Agreement, have agreed to more onerous terms than may otherwise apply to an NGSO system. The protections for Inmarsat are the same in any event, and with the expedited dispute resolution procedures, Inmarsat has even greater enforcement mechanisms now than it did before execution of the Mediated Agreement.

22. In other words, "[a]ll the Court needs to do to move matters forward is to make clear that, under the plain language of the Mediated Agreement, [the parties] are bound to honor the existing geographic and other limits of the Cooperation Agreement (whatever they may be), and bound to sign definitive documents reflecting that commitment. The existing limits in Exhibit L or elsewhere in the Cooperation Agreement do not need to change or be interpreted. Indeed, the parties expressly agreed in the Mediated Agreement that the technical and geographic requirements 'will not change.' Mediated Agreement § 2." *Inmarsat Global Limited's Opposition to Ligado's Motion to Enforce the Parties' Mediated Agreement* [Docket No. 895] ¶ 4. Inmarsat cannot use its perceived (and manufactured) lack of sufficient coordination as an escape hatch allowing it to shirk its obligations after accepting payment of hundreds of millions of dollars in exchange.

### B. Inmarsat Must Fulfill Its Obligations Under the Mediated Agreement

23. On October 31, 2025, Ligado and AST paid Inmarsat **$420 million**. Ligado filed its FCC Application, confirming and representing to the FCC that the operations of Ligado and AST spacecraft would be bound by the limitations of the Amended Inmarsat Cooperation Agreement and that the Proposed NGSO System was coordinated subject to the Amended Inmarsat Cooperation Agreement. Those are not meaningless representations to Ligado's primary regulator

and Ligado did not agree to make such representations without expecting Inmarsat to fulfill its obligations in return. Inmarsat must uphold its end of the bargain and cannot withhold its support barring some indeterminate further level of coordination. The time to specify what must be done to obligate Inmarsat to support the FCC Application has come and gone; the parties executed a binding document putting in black and white the obligations of both parties, and the Court approved such document. Ligado and AST have satisfied their obligations and Inmarsat must now do the same.

## CONCLUSION

24. For the reasons stated herein and in the Motion to Enforce, Ligado respectfully requests that the Court overrule the Objection, grant the Motion to Enforce, enforce the Mediated Agreement, and grant such other and further relief as is just and proper.

| | |
|---|---|
| Dated: January 13, 2026<br>Wilmington, Delaware | */s/ Michael J. Merchant*<br>Mark D. Collins, Esq. (Bar No. 2981)<br>Michael J. Merchant, Esq. (Bar No. 3854)<br>Amanda R. Steele, Esq. (Bar No. 5530)<br>Zachary J. Javorsky, Esq. (Bar No. 7069)<br>**RICHARDS, LAYTON & FINGER, P.A.**<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>Telephone:   (302) 651-7700<br>Facsimile:    (302) 651-7701<br>Email:          collins@rlf.com<br>                    merchant@rlf.com<br>                    steele@rlf.com<br>                    javorsky@rlf.com<br><br>-and-<br><br>Dennis F. Dunne, Esq. (admitted *pro hac vice*)<br>Matthew L. Brod, Esq. (admitted *pro hac vice*)<br>Lauren C. Doyle, Esq. (admitted *pro hac vice*)<br>**MILBANK LLP**<br>55 Hudson Yards<br>New York, New York 10001<br>Telephone:   (212) 530-5000<br>Facsimile:    (212) 530-5219<br>Email:          ddunne@milbank.com<br>                    mbrod@milbank.com<br>                    ldoyle@milbank.com<br><br>Andrew M. Leblanc, Esq. (admitted *pro hac vice*)<br>Melanie Westover Yanez, Esq. (admitted *pro hac vice*)<br>**MILBANK LLP**<br>1101 New York Avenue, NW<br>Washington DC 20005<br>Telephone:   (202) 835-7500<br>Facsimile:    (202) 263-7586<br>Email:          aleblanc@milbank.com<br>                    mwyanez@milbank.com<br><br>*Co-Counsel for Debtors in Possession* |