**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| LIGADO NETWORKS LLC *et al.*, | Case No. 25-10006 (TMH) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date: January 14, 2026 at 11:30 A.M. (EST)** |

**REPLY BY AST & SCIENCE LLC TO INMARSAT'S OMNIBUS OBJECTION**

AST,[2] for its reply to Inmarsat's omnibus objection (the "**Objection**," (Dkt. No. 1249)) dated January 12, 2026 and in further support of its emergency Motion (Dkt. No 1221), respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Having accepted $420 million of AST's money pursuant to the terms of the carefully crafted Mediated Agreement, Inmarsat now seeks to avoid compliance with its bargained-for-and-paid-for Regulatory Support Obligations thereunder—and violate the automatic stay in the process. Far from being "dead letter," as Inmarsat would have this Court believe, Objection n.7, the Mediated Agreement—and Inmarsat's Regulatory Support Obligations

---

[1] The debtors (the "**Debtors**" or "**Ligado**") in the above-captioned Chapter 11 cases (the "**Chapter 11 Cases**"), along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2] Capitalized terms used but not defined herein have the meaning ascribed to them in the emergency Motion.

contained therein—remains a critical component of these Chapter 11 Cases. Indeed, approval of the AST Transaction by the Regulatory Authorities is a condition to consummation of the Debtors' confirmed Chapter 11 Plan and, thus, the success of these Chapter 11 Cases. The Mediated Agreement was heavily negotiated and Inmarsat's Regulatory Support Obligations are clear. AST respectfully submits that this Court should not allow Inmarsat to shirk its Regulatory Support Obligations and use the regulatory process as leverage to obtain a better deal than it could get for itself through the Mediated Agreement.

2. Read together, the plain language of the Mediated Agreement and the FCC Application readily show that Ligado and AST have satisfied the requirements necessary to trigger Inmarsat's Regulatory Support Obligations. Nevertheless, Inmarsat brazenly claims that its prospective concerns about the eventual operation of the Proposed NGSO System somehow justify its current failure to provide its bargained-for regulatory support. Inmarsat's excuses are unavailing because, as discussed more fully below, they contravene the express language of the Mediated Agreement and the prior rulings of this Court. Indeed, as this Court has previously said, if there is a dispute in "concrete terms and practical terms" following regulatory approval of the Proposed NGSO System, the Mediated Agreement provides a mechanism for addressing such dispute. But that is not the position the parties are in today. The position the parties are in today is that AST has paid $420 million of bargained-for consideration in exchange for Inmarsat's regulatory support, and respectfully asks this Court to require Inmarsat to honor that obligation.

## ARGUMENT

### I. INMARSAT CANNOT SHIRK ITS REGULATORY SUPPORT OBLIGATIONS BY CLAIMING THAT LIGADO AND AST FAILED TO SATISFY CONDITIONS THAT ARE NOWHERE TO BE FOUND IN THE MEDIATED AGREEMENT

3. In the Objection, Inmarsat attempts to justify its failure to comply with its Regulatory Support Obligations by inventing and seeking to impose on AST obligations that go

well beyond the carefully crafted terms of the Mediated Agreement. These non-existent obligations relate to (a) coordination of the spacecraft and (b) Inmarsat's assertion (contrary to the Mediated Agreement and the FCC's rules) that AST should have filed the FCC Application.

4. Inmarsat's complaints about coordination are unfounded for at least three reasons, each of which is discussed more fully below. First, based on the express terms of the Mediated Agreement, Ligado and AST have done all they are required to do to trigger Inmarsat's Regulatory Support Obligations. Second, these issues have already been addressed and dealt with by the Court at the August 29, 2025 Hearing concerning the scope of the parties' obligations under the Cooperation Agreements (*i.e.*, the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement) and the Court's Coordination Order of September 2, 2025. Finally, Regulatory Approval of the AST Transaction—and, consequently, the Debtors' emergence from Chapter 11 through consummation of their confirmed Chapter 11 Plan—should not be held hostage to Inmarsat's subjective determination of whether the parties are sufficiently coordinated.

5. *First*, with respect to the negotiated provisions and express words of the Mediated Agreement itself, AST and Ligado have already committed in the Mediated Agreement that the operations of the Proposed NGSO System "will be consistent with and remain within the technical, geographic and other limitations in the Amended Inmarsat Cooperation Agreement and Ligado's other coordination agreements with various parties." Motion, Ex. B (Mediated Agreement) § 2. The FCC Application confirms this and also requests that the FCC "recognize that the operations of the Proposed NGSO System have been coordinated subject to the terms of the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement and give effect to such agreements by licensing the Proposed NGSO System to operate in accordance with the terms of such agreements." Motion Ex. B (Mediated Agreement) § 2; *see also* Motion ¶¶ 30-31. Tellingly,

the Mediated Agreement expressly states the FCC Application "will not be more granular in respect of" the aforementioned requests.  Motion, Ex. B (Mediated Agreement) n.8.

6. Yet Inmarsat contends that its Regulatory Support Obligations are not triggered until AST and Ligado agree to operate the Proposed NGSO System in compliance with *further amendments* to the Amended Inmarsat Cooperation Agreement that, in Inmarsat's view, are necessary *now* to coordinate the prospective operations of the Proposed NGSO System *after* it is approved and operational.  *See* Objection ¶¶ 72-73.[3]  But not only does that put the cart before the horse, it goes far beyond what is required by the plain words of the Mediated Agreement, which call for AST and Ligado to commit that the operations of Proposed NGSO System "*will be* consistent with and remain within the technical, geographic and other limitations in the Amended Inmarsat Cooperation Agreement" in its current form.  Motion, Ex. B (Mediated Agreement) § 2.[4]  That is a future tense commitment to be consistent, not a present tense requirement of consistency as a predicate to the FCC Application.

7. *Second*, Inmarsat's position that the parties' coordination obligations somehow

---

[3] As shown in the Motion and below, the plain words of the Mediated Agreement are clear and unambiguous.  As a result, this Court need not and should not consider the substantial extrinsic evidence, including exchanges among Inmarsat, AST and Ligado, that Inmarsat seeks to introduce in support of positions found nowhere in the Mediated Agreement.  *See* Opp. ¶¶ 23-27, 36-40; *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (NY Ct. App. 2002) ("[e]xtrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous"); *Samuel J. Heyman 1981 Continuing Tr. for Lazarus S. Heyman v. Ashland LLC*, 284 A.3d 714, 721 (Del. 2022) (stating "we do not consider extrinsic evidence unless we find that the text is ambiguous").

[4] If Inmarsat had bargained for its Regulatory Support Obligations to be conditioned on Ligado or AST's agreement for the Proposed NGSO System to comply with further amendments to the Amended Inmarsat Cooperation Agreement, the Mediated Agreement would have said so.  But "this is not the contract the parties wrote." *GRT, Inc. v. Marathon GTF Tech. Ltd.*, 2012 WL 2356489, at *6 (Del. Ch. June 21, 2012).  That Inmarsat now wishes that it had struck a different bargain is no reason to add implied terms found nowhere in the Mediated Agreement.  *See Nemec v. Shrader*, 991 A.2d 1120, 1125–26 (Del. 2010) (courts will not imply terms inconsistent with "conduct authorized by" the written terms of a contract).

extend beyond the plain words of the Mediated Agreement and the Cooperation Agreements is contrary to this Court's Coordination Order and its rulings at the August 29 Hearing. As was discussed at the August 29 Hearing, the parties negotiated the terms of the Cooperation Agreements extensively during the period following approval of the AST Transaction in June 2025. However, the parties reached an impasse and required Court intervention at the August 29 Hearing to determine the scope of the parties' obligations under the Cooperation Agreements. The Court determined that any question about the scope of the Cooperation Agreements should be resolved by requiring the exact text of the Mediated Agreement, without anything more, to be imported directly into the Inmarsat-AST Agreement and the Amended Inmarsat Cooperation Agreement. *See* Coordination Order ¶ 3; Motion, Ex. D (August 29 Hearing Tr.) at 30:7-9. Inmarsat confirmed at the August 29 Hearing that it was to incorporate these provisions "without variance into the" direct agreements and that it was "expected to then perform under" these contracts. Motion, Ex. D (August 29 Hearing Tr.) at 35:10-15. Thus, Inmarsat has exactly what it is entitled to under the Mediated Agreement and the Inmarsat-AST Agreement: a commitment that future operations will be consistent with the current Amended Inmarsat Cooperation Agreement.

8.      *Finally*, the Court's rulings at the August 29 Hearing firmly demonstrate that Inmarsat cannot shirk its Regulatory Support Obligations (and potentially hold up consummation of the Debtors' confirmed Chapter 11 Plan, which is dependent on approval by the Regulatory Authorities) based on Inmarsat's rank speculation that the eventual operations of the Proposed NGSO System might not comply with the metes and bounds of the Cooperation Agreements. Indeed, the Court has already stated that "if there is a dispute about what" the Mediated Agreement "ends up meaning *in concrete terms and practical terms*, then there is a way in the [Mediated Agreement] to deal with that." Motion, Ex. D (August 29 Hearing Tr.) at 30:10-14 (emphasis

added).[5] If, once the Proposed NGSO System is approved and operational, Inmarsat is concerned that there has been a violation of the Amended Inmarsat Cooperation Agreement, there is a provision in the Mediated Agreement allowing Inmarsat to seek highly expedited injunctive relief. *See* Motion, Ex. B (Mediated Agreement) § 3 & Rider A. But Inmarsat is not entitled to accept $420 million of AST's money and then violate the plain terms of the Mediated Agreement, this Court's orders and the automatic stay—and risk the consummation of the AST Transaction and the Plan to boot—by raising hypothetical concerns about what the potential operations of the Proposed NGSO System might be.

9. Inmarsat's second excuse for not honoring its Regulatory Support Obligations—that AST did not jointly submit the FCC Application alongside Ligado—is unacceptable for any of the following reasons. First, in the FCC Application, Ligado seeks to modify *its own* satellite license,[6] and the FCC's rules contemplate that there will be only a single applicant for each license. *See, e.g.*, 47 CFR 25.102(a) ("No *person* shall use or operate apparatus for the transmission of energy or communications or signals by space or earth stations except under, and in accordance with, an appropriate authorization granted by the" FCC) (emphasis added). Far from showing AST has no intention of complying with its agreements, *contra* Objection n.8, having only a single applicant per license allows the FCC to know exactly who is responsible when satellite signals

---

5 *See also* Emergency Motion, Ex. D (August 29 Hearing Tr.) at 6:11-16 (in which this Corut stated that "[AST and Ligado] say if and when AST or Ligado *seeks to operate* in a manner implicating the parties['] underlying dispute over the m[etes] and bounds of the cooperation agreement, that dispute can be resolved in the appropriate forum in the context of a *concrete factual dispute*. I tend to agree with those things.") (emphasis added).

6 The FCC Application was filed by Ligado because, through the Application, "Ligado" seeks "to modify *its* current satellite license" to operate in the L-Band so that it can "place an L-band payload . . . on AST SpaceMobile's" satellites. *See* Motion, Ex. E (FCC Application) (emphasis added). Ligado "will maintain operational control over [this] payload" and "will have ultimate control over the use of its L-band spectrum over North America." *Id.*

must be modified or turned off.[7] Second, there is simply no language in the Mediated Agreement requiring AST to file the FCC Application jointly with Ligado, and Inmarsat's apparent wish that it had bargained for such language is not a basis to imply additional terms. *See GRT*, 2012 WL 2356489, at *6 (rejecting a proffered interpretation that would, as Inmarsat's interpretation here, subject an "independent provision" to an "implicit condition" contained nowhere in the contract).

10. In short, Inmarsat's feeble excuses about why it need not comply with its Regulatory Support Obligations have no basis in the Mediated Agreement and contravene this Court's prior orders. Inmarsat's brazen claim that it can keep half a billion dollars, as well as the option to oppose the FCC Application—and thereby risk consummation of the AST Transaction and the Plan itself—simply cannot be squared with the deal reflected in the Mediated Agreement.

## II. INMARSAT HAS PROVIDED NO JUSTIFICATION FOR ITS STAY VIOLATION

11. For the reasons explained in Ligado's reply brief, which AST joins and incorporates by reference herein, Inmarsat has no adequate explanation for its violation of the automatic stay. Through the NY State Action, Inmarsat is seeking to determine the Debtors' rights and obligations pursuant to the Mediated Agreement and the Amended Inmarsat Cooperation Agreement. *See* Motion Ex. A (NY State Complaint) ¶¶ 7-8, 60, 65. The Mediated Agreement and the Amended Inmarsat Cooperation Agreement are key assets of the Debtors and the cornerstone of their confirmed Chapter 11 Plan. Thus, Inmarsat's attempt to interfere with and adjudicate Ligado's rights pursuant to the Mediated Agreement and the Amended Inmarsat Cooperation Agreement (the first iteration of which was executed prepetition in 2007) is a textbook "act to . . . exercise control over property of the estate," 11 U.S.C. § 362(a)(3), that is prohibited by the automatic stay.

---

[7] *See* Motion, Ex. E (FCC Application) at 6 (in "keeping with Commission precedent," Ligado will have "the ability to turn off, at Ligado's sole command and to the extent required by the Commission, the operations and transmission" of its payload on AST's satellites).

12. Inmarsat's assertion that this Court has already granted stay relief is wrong and misstates what Court actually said at the August 29 Hearing. *See* Objection ¶¶ 48-50. The Court posed the following hypothetical at the August 29 Hearing in considering alternative ways it could proceed:

> You know, he's [Inmarsat's counsel] looking for a little bit more from the Court tha[n] I indicated that I'm likely to want to do, but there are other ways to handle that. Like we can enter an order that says – I can enter an order that says you go ahead and you said what you're going to put in the mediated agreements in the settlement term sheet, you go ahead and do that, and I could also say, if there is a dispute, Inmarsat, to the extent they need it, they have stay relief and they can go pursue it wherever they need to pursue it. That's a way to handle it.

Motion Ex. D (August 29 Hearing Tr.) at 28:13-23.

13. But, as Inmarsat knows, that is not how the Court determined to resolve the parties' dispute. Rather, the Court determined that the "parties are directed to include the language that is specifically identified in the settlement term sheet" in their direct agreements. *Id.* at 30:8-9. If Inmarsat could have commenced the NY State Action without violating the automatic stay, there would have been no need for this Court to say that "stay relief" would be necessary for Inmarsat to pursue a lawsuit outside this Court. The Court referenced stay relief, thus putting all parties on notice that stay relief *would* in fact be required.

## III. THIS COURT CAN PROPERLY DECIDE AST'S MOTION

14. In a last-ditch effort to avoid the impact of the Mediated Agreement and this Court's Coordination Order, Inmarsat claims that this Court cannot consider AST's Motion, which seeks specific performance, because AST did not commence an adversary proceeding, and because this Court supposedly "lacks the authority to resolve the merits of a pending state court case." *See* Opp ¶¶ 51-55. Both contentions fail.

15. *First*, AST's request for specific performance is properly brought before this Court on a contested matter because AST seeks enforcement of this Court's prior Mediation Order and

Enforcement Order. *See In re WorldCorp, Inc.*, 252 B.R. 890, 895 (Bankr. D. Del. 2000) (permitting enforcement of a court-approved settlement agreement via motion pursuant to section 105(a) of the Bankruptcy Code because the debtor was "merely seeking to enforce an order already in place"). Indeed, Inmarsat itself sought injunctive relief from this Court requiring Ligado and AST to supposedly comply with the Mediated Agreement last August, and did so without commencing an adversary proceeding. *See* Inmarsat Motion to Enforce. Having done so, Inmarsat cannot claim entitlement to more procedural protections than it sought to afford Ligado and AST.

16. In addition, AST may proceed by motion because it seeks to enforce the existing automatic stay under Section 362 of the Bankruptcy Code, which remains "in full force and effect until the Effective Date." Plan, Article XII.G; *see also In re Cont'l Airlines, Inc.*, 236 B.R. 318, 327 (Bankr. D. Del. 1999) (debtor was not required to file an adversary proceeding to seek enforcement of [a] confirmation order because it was "not seeking an injunction," but "was merely seeking to enforce an injunction already in place").

17. *Second*, Inmarsat is incorrect that this Court lacks authority to order Inmarsat to dismiss the NY State Action. *See* Objection ¶ 55. Far from Inmarsat's contention that AST is asking this Court to review collaterally the merits of a state court proceeding, *see id.*, AST seeks to make Inmarsat honor its own contractual obligations by, *inter alia*, dismissing the Complaint. *See* Motion, Ex. F (Proposed Order) at ¶ 5(b). The NY Court hast not made *a single determination* in the NY State Action. A response to the Complaint, should one be necessary, is not due until February 20, 2026. Thus, AST is not asking for collateral review of any state court decision.

18. Notably, this Court specifically retained jurisdiction to enforce the Mediation Order, *see* Motion Ex. B (Mediation Order) ¶ 13, and "to hear and determine all maters arising from or related to the implementation, interpretation and/or enforcement of the" Coordination

Order, Dkt. No. 940 ¶ 4. And the Court has already determined that the interpretation and enforcement of the parties' rights and obligations pursuant to the Mediated Agreement constitutes a "core proceeding." *Id.* at 2. And again, Inmarsat has specifically invoked this Court's retention of jurisdiction with respect to the Mediation Order when seeking to compel Ligado and AST to "comply" with the Mediated Agreement, *see* Inmarsat Motion to Enforce ¶ 36, which is no different than what AST seeks to do here.

19. For the foregoing reasons, and those stated in the Motion, AST respectfully submits that this Court should enter the Proposed Order attached as **Exhibit F** to the Motion (i) requiring Inmarsat to dismiss the NY State Action with prejudice, (ii) compelling Inmarsat to comply with its obligations under the Mediated Agreement to affirmatively support, and refrain from opposing, the FCC Application and (iii) granting further relief as may be just and proper.

Dated: January 14, 2026
Wilmington, Delaware

*/s/ Jeremy W. Ryan*

Jeremy W. Ryan (Bar No. 4057)
Katelin A. Morales (Bar No. 6683)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, DE 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
Email: jryan@potteranderson.com
kmorales@potteranderson.com

Madlyn Gleich Primoff (admitted *pro hac vice*)
Henry Hutten (admitted *pro hac vice*)
Alexander Rich (admitted *pro hac vice*)

**FRESHFIELDS US LLP**
3 World Trade Center
New York, New York 10007
Telephone: (212) 277-4000

Email: madlyn.primoff@freshfields.com
henry.hutten@freshfields.com
alexander.rich@freshfields.com