**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| LIGADO NETWORKS LLC, *et al.*,[1] | ) | Case No. 25-10006 (TMH) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Obj. Deadline: March 23, 2026 at 4:00 p.m. (ET)** |
|  | ) | **Hr'g Date: March 30, 2026 at 2:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**(I) TEMPORARILY DELAYING LIGADO'S PERFORMANCE UNDER**
**THE MEDIATED AGREEMENT AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "Debtors" or "Ligado")

respectfully state as follows in support of this motion (this "Motion"):

**Preliminary Statement**

1. In June 2025, the Debtors, AST & Science LLC ("AST"), and Inmarsat Global

Limited (together with its parent, Viasat, Inc., "Inmarsat") entered into the Mediated Agreement

(as defined herein) to resolve several disputes between the parties. From Ligado's perspective, the

crux of the Mediated Agreement was Inmarsat's agreement to affirmatively support Ligado's

applications to the Federal Communications Commission (the "FCC") and its Canadian

counterpart, Innovation, Science and Economic Development Canada, regarding the proposed

non-geostationary orbit satellite system (the "Proposed NGSO System") in exchange for hundreds

of millions of dollars and the inclusion of two express statements in such applications. Inmarsat

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

itself encouraged this Court, more than once, to approve and enforce the Mediated Agreement as written and supported confirmation of the Plan, which incorporated the Mediated Agreement.

2. On December 8, 2025, Ligado filed a modification application with the FCC to enable flexible use of its L-Band spectrum for space-based mobile broadband services in the United States using the Proposed NGSO System (the "Application").

3. Yet, after Inmarsat received $420 million from Ligado and AST, Inmarsat abandoned its obligation to support the applications and instead filed a public complaint in New York State Court (the "Complaint") alleging that the Proposed NGSO System was not sufficiently coordinated with Inmarsat's system and promising to *oppose* the Application. This Court recognized that Ligado and AST had upheld their end of the bargain, saw Inmarsat's breach for what it was, and ordered Inmarsat to comply with its obligations under the Mediated Agreement.

4. Inmarsat appealed this Court's order, and on February 27, the United States District Court for the District of Delaware (the "District Court") granted Inmarsat a stay of this Court's order pending appeal. Ligado and AST both immediately noticed appeals to the United States Court of Appeals for the Third Circuit (the "Third Circuit"). Yet, Inmarsat seized its opportunity to file—less than an hour later and four days in advance of the FCC deadline—a 7-page Petition to Deny Ligado's Application (the "Petition to Deny").

5. A mere one business day later (on March 2), the Third Circuit summarily vacated the District Court's stay—in full throated agreement with this Court. Consistent with the Third Circuit Order (defined herein), and at Ligado's and AST's insistence in light of the impending FCC deadline, Inmarsat requested to withdraw its Petition to Deny, submitted to the FCC a one-sentence statement in support of the Application, and dismissed the Complaint with prejudice. But by "checking the court-ordered boxes," Inmarsat has by no means undone the harm it inflicted.

Inmarsat's Petition to Deny was a full-throated opposition to the Application placed into the public record at the FCC. A single sentence of support, standing alone and without explanation, does not—and cannot—neutralize the substantive arguments, technical objections, and policy concerns Inmarsat articulated across seven pages of opposition in the Petition to Deny, which to-date remains on file with the FCC notwithstanding Inmarsat's withdrawal request. Others have already seized upon Inmarsat's false claim that the Proposed NGSO System is not coordinated to argue to the FCC that it should deny the Application. The damage is already done, as was likely Inmarsat's intention when it filed the Petition to Deny four days ahead of the deadline. Ligado did not receive the benefit of its bargain. Indeed, Ligado anticipates that it may be forced to commence litigation against Inmarsat seeking hundreds of millions (or billions) of dollars in damages from Inmarsat's willful violations, which were too clever by half.

6.       Accordingly, Ligado moves this Court to temporarily relieve it from the burden of making the next $100 million payment ("Upcoming Cure Payment") due to Inmarsat on March 31, 2026. For clarity, Ligado is not seeking, and does not intend, to terminate the Mediated Agreement, nor to be forever relieved of its obligations. Specifically, Ligado asks that it be equitably relieved from making the Upcoming Cure Payment by March 31, 2026, and only have to do so upon the Effective Date[2] or upon resolution of litigation (described below) following the FCC's determination on Ligado's Application, whichever occurs first.

---

[2]     "Effective Date" shall have the meaning ascribed to it in the confirmed Plan, attached as Exhibit A to the *Revised Findings of Fact, Conclusions of Law, and Order Confirming Joint Chapter 11 Plan of Reorganization* [Docket No. 1007] (the "Confirmation Order").

**Background**

7.        On January 5, 2025 (the "Petition Date"), the Debtors commenced these cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code").  The Debtors are authorized to continue operating their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these cases, and no committees have been appointed or designated.

8.        Further information regarding the Debtors' business, capital structure, and the facts and circumstances leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Douglas Smith, Chief Executive Officer of Ligado Networks LLC, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 2] (the "First Day Declaration").

9.        On June 23, 2025, the Court granted the *Order (I) Authorizing the Debtors to Enter into the AST Definitive Documents and (II) Granting Related Relief* [Docket No. 692] (the "AST Order"),[3] approving the mediated agreement between the Mediation Parties and Viasat, Inc.[4] attached as Exhibit 1 to the AST Order (the "Mediated Agreement").

10.        On September 2, 2025, the Court entered the *Order Regarding Motions to Enforce* [Docket No. 940], directing the Debtors and Inmarsat to incorporate the exact words of the Mediated Agreement into the new agreements contemplated thereunder, including the Amended Inmarsat Cooperation Agreement (as defined in the Mediated Agreement).

11.        On September 29, 2025, the Court entered the Confirmation Order.

---

[3]    Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the AST Order.

[4]    As set forth in the Mediated Agreement, Viasat and Inmarsat are used interchangeably throughout this Motion.

12. On December 8, 2025, the Debtors filed the Application with the FCC for the Proposed NGSO System as contemplated by the Mediated Agreement.

13. On December 19, 2025, Inmarsat filed the Complaint in New York State Supreme Court, New York County, against certain of the Debtors and AST alleging that Ligado and AST had breached the Mediated Agreement and that Inmarsat was not required to support the Application.

14. Promptly thereafter, the Debtors and AST filed their respective motions to enforce the Mediated Agreement (the "Motions to Enforce") [Docket Nos. 1220, 1221].

15. On January 30, 2026, after briefing and a hearing on January 14, 2026 on the Motions to Enforce, the Court entered the *Order Granting (A) Debtors' Motion for an Order (I) Enforcing the Automatic Stay, (II) Enforcing the Mediated Agreement, and (III) Granting Related Relief and (B) Emergency Motion by AST & Science LLC for Entry of an Order Enforcing the Mediated Agreement and Related Orders of This Court Against Inmarsat Global Limited* [Docket No. 1304] (the "Enforcement Order"), which, among other things, (i) ordered Inmarsat to dismiss the Complaint with prejudice as it was filed in willful violation of the automatic stay, (ii) required Inmarsat to comply with its obligations under the Mediated Agreement, including by supporting the Application, and (iii) denied Inmarsat's request for a stay pending appeal.

16. On February 2, 2026, Inmarsat filed a *Notice of Appeal* of the Enforcement Order [Docket No. 1324] (the "Appeal"). The following day, Inmarsat filed an *Emergency Motion for Stay Pending Appeal*, Civ. No. 26-118 (GBW) [D. Docket No. 3]. Ligado and AST opposed the motion. *See* D. Docket Nos. 19, 22.

17. On February 27, 2026, the District Court entered an order staying the Enforcement Order pending the outcome of the Appeal [D. Docket No. 46] (the "District Court Order").

18.     Ligado and AST immediately noticed appeals of the District Court Order to the Third Circuit.  Case Nos. 26-1444 (Ligado), 26-1445 (AST).

19.     After the notices of appeal had already been filed, Inmarsat nevertheless filed the 7-page Petition to Deny with the FCC.  The Petition to Deny, among other egregious remarks, asserts that:

> Ligado **incorrectly** claims that the parties have executed an 'amended cooperation agreement' that 'recognizes the North American L-band NGSO operations are consistent with and coordinated under the cooperation agreement between Ligado and Inmarsat.' But even a cursory review of the Cooperation Agreement (even as recently amended in connection with the ongoing Ligado bankruptcy) reveals that this is not true.[5]

As this Court is well-aware, notwithstanding Inmarsat's outrageous statement, the parties only "recently amended" the Cooperation Agreement for the specific purpose of incorporating the Mediated Agreement, which addresses the Proposed NGSO System.  Against this backdrop, Inmarsat unequivocally concluded its Petition to Deny by stating that the FCC "cannot, should not, and **must not** grant Ligado's Application . . . ."[6]

20.     Ligado promptly notified Inmarsat via email that by filing the Petition to Deny, it breached its regulatory support obligations set forth the Mediated Agreement and demanded that Inmarsat immediately withdraw the Petition to Deny.

21.     On March 2, 2026, the Third Circuit held oral argument on the appeals.  During argument, the Third Circuit panel observed, among other things, that there was "no condition" in the Mediated Agreement requiring coordination beyond the terms of the Amended Inmarsat Cooperation Agreement; that Inmarsat did not raise at Plan confirmation any objection to the scope

---

[5]   *See Petition to Deny of Viasat, Inc.*, In the Matter of Application of Ligado Networks Subsidiary, LLC, Debtor in Possession, File No. SAT-MOD-20251206-00374, dated February 27, 2026, at p. 7.

[6]   *Id.*

of the Amended Inmarsat Cooperation Agreement, which had to be executed prior to Plan confirmation; and that Inmarsat waited until after it was paid $420 million to manufacture the purported condition of further coordination.[7]  Shortly after argument, the Third Circuit summarily vacated the District Court Order [Ligado 3d Cir. Docket No. 29] (the "Third Circuit Order").[8]

22.    Viasat subsequently requested to withdraw the Petition to Deny and filed a one-sentence letter of support for the Application.  Inmarsat also voluntarily dismissed its Complaint then pending in the United States Bankruptcy Court for the Southern District of New York.  *See Notice of Voluntary Dismissal with Prejudice*, Adv. Pro. No. 26-01005 [Docket No. 14].

23.    On March 4, 2026, the Third Circuit issued an opinion (the "Opinion") setting forth the rationale for the Third Circuit Order [Ligado 3d Cir. Docket No. 31].  Among other things, the Third Circuit held that:

> the Bankruptcy Court correctly noted that the relevant language 'requires a statement that coordination exists under and pursuant to these agreements, but not that some additional coordination process beyond the agreement's terms has been completed.'  Jan. 27, 2026 Hr'g Tr. at 18:20–23.  The Bankruptcy Court also rejected the proposition that the Mediated Agreement conditioned Inmarsat's support on its subjective satisfaction that coordination had been sufficient.  *See id.* at 19:15-17.  The "support" obligation as we quoted above appears unambiguous.
>
> . . . The plain language of the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement committed Ligado and AST to ensure the operations of the Proposed NGSO System comply with those terms, regardless of whether the satellites are GSO or NGSO.[9]

24.    Inmarsat's District Court Appeal remains pending.

---

[7]  *See* Mar. 2, 2026 Third Circuit Hr'g Tr. at 4:15-5:13; 31:15-32:5; 38:17-39:6, attached hereto as **Exhibit B**.

[8]  Attached hereto as **Exhibit C**.

[9]  Opinion at 7, attached hereto as **Exhibit D**.

**Jurisdiction and Venue**

25.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, and paragraph 13 of the AST Order ("This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order, including enforcement of the Mediated Agreement.").

26.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Debtors consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by this Court in connection with this Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the U.S. Constitution.

27.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

28.     The bases for the relief requested herein are section 105(a) of the Bankruptcy Code and the AST Order.

**Relief Requested**

29.     By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"): (i) relieving the Debtors from making the Upcoming Cure Payment by March 31, 2026 and extending the time to make the Upcoming Cure Payment until the earlier of (a) the Effective Date or (b) if such amount is not offset by damages owed by Inmarsat to Ligado and/or AST, final resolution of any potential litigation arising from Inmarsat's breach of the Mediated Agreement following an FCC order on the Application, (ii) ordering the Debtors to hold the Upcoming Cure Payment in escrow, (iii) ordering no interest shall accrue on the amount of the Upcoming Cure Payment, and (iv) granting related relief.

**The Upcoming Cure Payment**

30.     On October 31, 2025, the Debtors made a substantial and indefeasible lump sum payment to Inmarsat in the amount of $420 million in compliance with the Mediated Agreement. The Mediated Agreement also requires the Debtors to make the indefeasible Upcoming Cure Payment to Inmarsat in the amount of $100 million on March 31, 2026, as well as a $15 million payment on the Effective Date.

31.     However, after accepting the initial $420 million payment, Inmarsat failed utterly to hold up its end of the bargain.  The Mediated Agreement required Inmarsat to affirmatively support the Application and to refrain from taking action that is contrary to that affirmative-support obligation.  Not only did Inmarsat file the Complaint publicly expounding upon its opposition to the Application in violation of this Court's automatic stay and the Mediated Agreement, Inmarsat seized a momentary opportunity to submit the Petition to Deny, emphatically *opposing* the Application in direct violation of the Mediated Agreement and the Enforcement Order.  Inmarsat did so on February 27, 2026, notwithstanding the Debtors' and AST's already-noticed appeals of the District Court Order to the Third Circuit and the fact that the deadline for submission of any comments was four days later on Monday, March 2.

32.     Indeed, counsel for Inmarsat effectively conceded to the Third Circuit that Inmarsat made its submission to the FCC early and immediately after its temporary victory to avoid the potential imposition of an administrative stay of the District Court Order, effectively seeking to nullify the Third Circuit's review:

> **Judge Ambro**: Why didn't you wait until [March 2] to file [the Petition to Deny]?  It looks like the decision of the district court came out on Friday afternoon.  . . . [T]here was an appeal at around 6:30, and then you still filed [] a petition in opposition to the FCC to the application of [] Ligado.  Why didn't you wait?"

> **Counsel for Inmarsat**: Well, Judge Ambro, all our rights hinge on that filing. We had no idea what was going to happen if [Ligado and AST at] the last minute, would convince the Court to issue an administrative stay that would cause us to forfeit our appeal rights against FCC, an adverse FCC decision, in our view. We got a stay. The other side could have, in their opposition papers in the district court, said, In the event of an adverse decision, Your Honor, we would like lead time and administrative stay. They did not do that. They did not e-mail us when it came down and said, We're going to seek a stay. Please hold off. We had very little time to protect extremely valuable rights in the FCC. If we don't have that on file today, we lose our appeal rights from an adverse FCC decision. It all goes away.[10]

33.     After the Third Circuit Order was entered, Ligado and AST encouraged Inmarsat to submit to the FCC a straightforward statement of support, free of any caveats or otherwise limiting language, in an effort to ensure that Inmarsat did the bare minimum to correct the record at the FCC by the same-day March 2 deadline. While Inmarsat did subsequently request to withdraw its opposition and submit the minimally required statement in support of the Application, these submissions cannot and did not remedy the damage already caused by Inmarsat's breaches.

34.     Further exacerbating the harm, as one could anticipate, Iridium Communications Inc. ("Iridium") submitted the only other petition requesting that the Application be denied. *See Petition to Deny of Iridium Communications Inc.*, In the Matter of Application of Ligado Networks Subsidiary, LLC, Debtor in Possession, File No. SAT-MOD-20251206-00374, dated Mar. 2, 2026. Iridium's petition specifically referred to the Complaint, Inmarsat's Petition to Deny (which Iridium also attached to its petition), the Appeal, and Inmarsat's statements before this Court, in asserting that Inmarsat demonstrated that the Proposed NGSO System was not properly coordinated and requesting that the FCC investigate the dispute between Ligado and Inmarsat. *Id.* at 18–25.

---

[10]   Ex. B. (Mar. 2, 2026 Third Circuit Hr'g Tr.) at 19:19–21:1.

35.     Even after Inmarsat requested to withdraw its Petition to Deny from the FCC, Iridium made two further submissions continuing to assert that the Proposed NGSO System was not coordinated based on Inmarsat's statements in various court filings. *See Supplement to Petition to Deny of Iridium Communications, Inc.*, In the Matter of Application of Ligado Networks Subsidiary, LLC, Debtor in Possession, File No. SAT-MOD-20251206-00374, dated Mar. 4, 2026;Iridium's *Response to Ligado Letter of March 6, 2026,* In the Matter of Application of Ligado Networks Subsidiary, LLC, Debtor in Possession, File No. SAT-MOD-20251206-00374, dated Mar. 9, 2026.  Similarly, the Satellite Safety Alliance ("SSA") submitted comments to the FCC asserting that Petition to Deny and its submissions to court "reveal that coordination has not been effected" causing "technical and public interest concerns for all L-band operators." *See Comments of GPS, Aviation, Weather, Water, and Satcom Users*, In the Matter of Application of Ligado Networks Subsidiary, LLC, Debtor in Possession, File No. SAT-MOD-20251206-00374, dated Mar. 2, 2026.  While there is clear harm to Ligado from Inmarsat's actions, the extent of the harm from the snowball effect of Inmarsat's actions is unknowable until the FCC makes a final decision on the Application.

36.     Therefore, the Debtors request that the Court use its equitable powers to temporarily excuse Ligado's performance under the Mediated Agreement to allow the Debtors to delay making the Upcoming Cure Payment during the pendency of the Application proceeding until the Debtors can determine the extent of the damages from Inmarsat's breach of the Mediated Agreement. While the Debtors have and continue to uphold their end of the bargain by complying with the Mediated Agreement in its entirety and continue to desire that all parties perform thereunder, the Debtors, as a matter of equity, should not be asked to continue to hand Inmarsat significant

payments even though Inmarsat materially breached the agreement and the damages resulting therefrom are as of yet, unknown.[11]

37.     In any event, if the Upcoming Cure Payment is permitted to be held in abeyance, Ligado will make the Upcoming Cure Payment upon the Effective Date or the resolution of litigation arising from Inmarsat's wanton breach of the Mediated Agreement, whichever occurs first.[12]

## Basis for Relief

38.     This Court has "jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of [the AST Order], including enforcement of the Mediated Agreement."  AST Order ¶ 13.  Additionally, courts may generally modify a settlement agreement when a party has materially breached the agreement or when it otherwise equitable to do so.  *See, e.g.*, *Wolf v. Wolf*, 59 F. App'x 403, 406 (2d Cir. 2003) (stating that a court's "modification of a settlement agreement may be valid, however, where a party has materially breached the agreement" and remanding for consideration of whether actions amounted to a material breach); *Scharf v. Levittown Pub. Schs.*, 970 F. Supp. 122, 129 (E.D.N.Y. 1997) ("Where there is a material breach of the settlement agreement, a district judge may enforce the terms of the stipulation of settlement by altering the terms of the agreement.") (finding material breach and granting request for modification of the settlement).

39.     Furthermore, the Court may authorize the relief requested herein pursuant to section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code codifies the

---

[11]   Although it should not be made to do so, Ligado will, in the absence of a Court order granting the relief sought in this Motion, make the Upcoming Cure Payment.

[12]   To protect all parties' rights should the Upcoming Cure Payment need to be made in the future, Ligado is willing to hold the funds in escrow during the pendency of the delay.

Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

40. Given Inmarsat's breach of the Mediated Agreement, the Debtors submit that the Court should use its equitable powers to allow the Debtors to delay making the Upcoming Cure Payment. The Debtors have already promptly paid Inmarsat $420 million and have complied with the Mediated Agreement in all respects. Nonetheless, Inmarsat has continuously acted in ways designed to cause the delay or denial of the Application by manufacturing regulatory uncertainty. But avoiding the uncertainty, risk, and delay that would be caused by Inmarsat's opposition of the Application was exactly what the Debtors and AST negotiated for in the Mediated Agreement in exchange for prompt payment of such significant sums to Inmarsat. Amidst this backdrop, the Debtors have not received what they bargained for, and while they continue to honor the Mediated Agreement and seek to have all parties perform thereunder, Inmarsat's multiple breaches of the Mediated Agreement have created substantial harm to Ligado. Until the Application is decided upon, however, Ligado cannot know the true impact and extent of the damages from Inmarsat's breach of the Mediated Agreement. In light of the substantial claims that Ligado may have against Inmarsat for Inmarsat's repeated breaches of the Mediated Agreement, Ligado should not have to turn over an additional $100 million to Inmarsat at this time (which very well may be offset by damages), and the Debtors should be permitted to hold such payments in abeyance pending a determination on the Application.

41. The Debtors may have significant claims against Inmarsat for filing the Complaint and submitting the Petition to Deny. Even though Inmarsat has requested to withdraw the Petition to Deny and subsequently submitted a statement in support of the Application upon entry of the Third Circuit Order (the bare minimum required in the face of the impending FCC comment

deadline), the impact of the Petition to Deny and the Complaint on Ligado and AST has not been wiped away, and Inmarsat remains in breach of the Mediated Agreement.  Inmarsat's contractual obligations to support Ligado under the Mediated Agreement must be construed in context. Having submitted a comprehensive opposition to the Application in the Petition to Deny—which remains on file at the FCC pending action on Inmarsat's request to withdraw—Inmarsat was obligated to do more than merely submit a *pro forma* one-sentence support statement to the FCC. While it may well be that Ligado and AST cannot be restored to the original position that they would have occupied absent Inmarsat's breach, Inmarsat should have expressly and specifically repudiated each argument raised in its Petition to Deny, explained with particularity the substantive basis for its support and reversal of its prior position, and put forward a submission containing sufficient detail and persuasive force to counterbalance the lingering effects of the Petition to Deny.[13]  Instead, Inmarsat's public and repeated actions continue to muddy the waters with respect to the Application, and while Ligado expects to prevail before the FCC, any delay or uncertainty caused by Inmarsat's actions is precisely what Ligado negotiated to avoid via the Mediated Agreement.  Further, other parties, like Iridium and SSA, have picked up and even attached Inmarsat's Petition to Deny, further showing that Inmarsat's wrongs were not corrected through their mandated "remedial" actions.[14]

42.    For the reasons set forth herein, the Debtors submit that it is necessary and appropriate for the Court to use its equitable powers on or before March 30, 2026, to allow the Debtors to delay making the Upcoming Cure Payment until the Application is decided upon by

---

[13]    In addition, the Mediated Agreement and the Amended Inmarsat Cooperation Agreement obligate Inmarsat to submit Reply Comments in support of the Application.  The deadline for submission of such comments is March 23, 2026.

[14]    By this motion, Ligado is not seeking monetary damages for Inmarsat's breach of the Mediated Agreement and thus, Ligado's obligation to make an election as to its sole and exclusive remedy, as set forth in Section 5 of the Mediated Agreement, is not triggered.

the FCC and the Debtors are able to determine the extent of the damages from Inmarsat's breach of the Mediated Agreement.

43.    Prior to the submission of this Motion, counsel for Ligado conferred with counsel for Inmarsat to inquire if Inmarsat would agree to this requested relief.  To date, Inmarsat has not agreed.

44.    The Ad Hoc Cross-Holder Group and Ad Hoc First Lien Group support this Motion and the relief requested herein.

**Notice**

45.    The Debtors will provide notice of this Motion to:  (i) the Office of the U.S. Trustee for the District of Delaware; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors (on a consolidated basis); (iii) Foley & Lardner LLP, as counsel to U.S. Bank National Association, in its capacities as Prepetition First Lien Notes Trustee, Prepetition First Lien Notes Collateral Trustee, First Lien Collateral Trustee, First Lien Representative, Prepetition First Lien Loan Administrative Agent, Prepetition First Lien Loan Collateral Agent, Prepetition 1.5 Lien Administrative Agent, Prepetition 1.5 Lien Collateral Agent, Initial Additional Pari Collateral Agent, Initial Additional Authorized Representative for the Notes Secured Parties, Senior Collateral Trustee, Junior Lien Representative, Junior Collateral Trustee, and DIP Agent; (iv) Seward & Kissel LLP, as counsel to Wilmington Savings Fund Society, in its capacity as Prepetition Second Lien Trustee and Prepetition Second Lien Collateral Trustee; (v) Sidley Austin LLP, as counsel to the Ad Hoc First Lien Group; (vi) Kirkland & Ellis LLP, as counsel to an Ad Hoc Cross-Holder Group; (vii) the Federal Communication Commission; (viii) the United States Securities and Exchange Commission; (ix) the Internal Revenue Service; (x) the state attorneys general for all states in which the Debtors conduct business; (xi) the United States Attorney's

Office for the District of Delaware; (xii) the Lease Counterparty; and (xiii) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that the motion notice requirements have been satisfied, and that no further notice is required under the circumstances.

**<u>No Prior Request</u>**

46.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that this Court enter an order, substantially in the form of the Proposed Order attached hereto, and grant such other relief as the Court deems appropriate under the circumstances.

Dated: March 16, 2026　　　　　　　　　/s/ Michael J. Merchant
Wilmington, Delaware　　　　　　　　　Mark D. Collins, Esq. (Bar No. 2981)
　　　　　　　　　　　　　　　　　　Michael J. Merchant, Esq. (Bar No. 3854)
　　　　　　　　　　　　　　　　　　Amanda R. Steele, Esq. (Bar No. 5530)
　　　　　　　　　　　　　　　　　　**RICHARDS, LAYTON & FINGER, P.A.**
　　　　　　　　　　　　　　　　　　One Rodney Square
　　　　　　　　　　　　　　　　　　920 North King Street
　　　　　　　　　　　　　　　　　　Wilmington, DE 19801
　　　　　　　　　　　　　　　　　　Telephone:　(302) 651-7700
　　　　　　　　　　　　　　　　　　Facsimile:　(302) 651-7701
　　　　　　　　　　　　　　　　　　Email:　　　collins@rlf.com
　　　　　　　　　　　　　　　　　　　　　　　merchant@rlf.com
　　　　　　　　　　　　　　　　　　　　　　　steele@rlf.com

　　　　　　　　　　　　　　　　　　-and-

　　　　　　　　　　　　　　　　　　Dennis F. Dunne, Esq. (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　Matthew L. Brod, Esq. (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　Lauren C. Doyle, Esq. (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　**MILBANK LLP**
　　　　　　　　　　　　　　　　　　55 Hudson Yards
　　　　　　　　　　　　　　　　　　New York, New York 10001
　　　　　　　　　　　　　　　　　　Telephone:　(212) 530-5000
　　　　　　　　　　　　　　　　　　Facsimile:　(212) 530-5219
　　　　　　　　　　　　　　　　　　Email:　　　ddunne@milbank.com
　　　　　　　　　　　　　　　　　　　　　　　mbrod@milbank.com
　　　　　　　　　　　　　　　　　　　　　　　ldoyle@milbank.com

　　　　　　　　　　　　　　　　　　Andrew M. Leblanc, Esq. (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　**MILBANK LLP**
　　　　　　　　　　　　　　　　　　1101 New York Avenue, NW
　　　　　　　　　　　　　　　　　　Washington DC 20005
　　　　　　　　　　　　　　　　　　Telephone:　(202) 835-7500
　　　　　　　　　　　　　　　　　　Facsimile:　(202) 263-7586
　　　　　　　　　　　　　　　　　　Email:　　　aleblanc@milbank.com

　　　　　　　　　　　　　　　　　　*Co-Counsel for Debtors in Possession*