<u>**Exhibit B**</u>

**Third Circuit Hearing Transcript**

UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

---------------------------------X

LIGADO NETWORKS, LLC,

AST & SCIENCE LLC,

    Appellants,

    v.                         Case No.

INMARSAT GLOBAL LIMITED,           26-1444,

    Appellees.             26-1445

---------------------------------X

ORAL ARGUMENTS

Before Circuit Judges

Arianna J. Freeman

Marjorie O. Rendell

Thomas L. Ambro

Job No.:   624255

Pages:   1 - 56

Transcribed by:   Esther M. Taylor

A P P E A R A N C E S

ON BEHALF OF APPELLANT LIGADO NETWORKS LLC:

ANDREW M. LEBLANC, ESQUIRE

MILBANK LLP

1101 New York Avenue, NW

Washington, DC 20005

(202) 835-7500

ON BEHALF OF APPELLANT AST & SCIENCE LLC:

MADLYN PRIMOFF, ESQUIRE

FRESHFIELDS

3 World Trade Center

174 Greenwich Street, 51st Floor

New York, NY 10007

(212) 277-4000

ON BEHALF OF THE APPELLEE INMARSAT GLOBAL LTD:

JOHN BASH, ESQUIRE

QUINN EMANUEL URQUHART & SULLIVAN, LLP

300 West 6th Street, Suite 2010

Austin, TX 78701

(737) 667-6100

P R O C E E D I N G S

HON. FREEMAN:  Good morning, everyone.  We're here for oral arguments in Case Numbers 26-1444 and 26-1445, In re: Ligado Networks LLC.

Mr. LeBlanc, will you be reserving any time for rebuttal?

MR. LEBLANC:  Yes, Your Honor, I'd like to reserve 3 of the 12 minutes that Ligado has of our 15 minutes for the appellants.

HON. FREEMAN:  Okay.  That will be granted.  And you can go right ahead.

MR. LEBLANC:  Great.  Thank you, Your Honor.

May it please the Court.

Let me begin by thanking the Court for setting oral argument so expeditiously in light of the exigent circumstances that Ligado finds itself in.

Quite simply, Ligado, AST, and Inmarsat have coordinated their use of spectrum assets associated with the proposed NGSO system

Transcript of Oral Arguments

4

pursuant to the amended cooperation agreement and the separate AST-Inmarsat agreement both of which were executed on September 21st of 2025.

Those agreements incorporated the term -- the terms of the mediated agreement that was signed by the parties in June of last year. That was all the coordination that was necessary between these parties, because what was critical to the parties and what AST urged the bankruptcy court to find was that the parties had agreed to comply with the existing terms, the existing technical, geographic, and other limitations of the cooperation agreement that have governed the parties' relationships for the last 18 years.

HON. AMBRO:  After September, you proceeded to plan confirmation.  Was there any objection by Inmarsat for the plan?

MR. LEBLANC:  There -- there was not, Your Honor, at -- at -- at all.  And, in fact, under the mediated agreement, we were required to enter into the amended cooperation agreement prior to plan confirmation.  We could not have

gone to plan confirmation until we had done what was required to do under the mediated agreement, and there was no objection from Inmarsat. Inmarsat did not stand up and say, We are not coordinated -- that the amended cooperation agreement that is contemplated had not been entered.

Quite to the contrary, it supported our confirmation and ultimately was paid $420 million in -- on October 31st in reliance on the very agreements that are now -- that -- that they're now breaching by the objection that they filed to the FCC application.

HON. AMBRO:  When is the next 115 million due?

MR. LEBLANC:  $100 million is due by March 31st.

HON. AMBRO:  Or 100 million.

MR. LEBLANC:  Yeah.

HON. AMBRO:  Yeah.

MR. LEBLANC:  A hundred million is due by March 31st, then $15 million is due on

plan effective date.  So that would be after the FCC application is granted.

HON. AMBRO:  So --

HON. RENDELL:  Have they explained -- have they explained to you their basis for concluding that further coordination was required?

MR. LEBLANC:  They -- Your Honor, other than what they put into their pleadings before the Court, they have not.  And -- and to be clear, and -- and we cite it quite heavily in our reply brief to their August submission to the Court, with respect to the dispute that we had over the terms of the mediated agreement.

In that dispute, they -- they could not have been more clear.  They said the existing limits in Exhibit L, or elsewhere in the cooperation agreement, do not need to be changed or be interpreted.

They agree -- Inmarsat agrees the mediated agreement imposes no additional limits on AST or Ligado beyond those in the cooperation

agreement.

They're now saying to the courts, and they -- they're now saying to the FCC that we agreed to some amorphous continued negotiation on -- and coordination that simply doesn't exist.  You cannot find it in the mediated agreement, and you cannot find it in the amended cooperation agreement.

If -- and it -- it's also illogical, in the extreme, to think that we would have gone to a mediation, reached a resolution with a party that we'd been viciously litigating against for a very long time and concluded that mediation by -- by walking out of there agreeing to pay them half a billion dollars, and still be subject to some future negotiation over coordination with no metes or bounds associated with it.  Entirely at their discretion as to whether sufficient coordination had happened.  We --

HON. AMBRO:  Something happened in November or December, whenever.  What is your

understanding of what caused things to go off the rails insofar as Inmarsat is concerned?

MR. LEBLANC:  Well, Your Honor, I think things have been off the rails with Inmarsat for quite some time.  The -- prior to -- in -- in August, what caused the negotiations at that time to go off the rails was a -- a suggestion by Inmarsat that there was some geographical limitation to AST's ability to operate outside of the United States embedded in the co-op agreement.

We don't believe that any such limitation exists in the co-op agreement.  AST certainly didn't think that they were signing up to a limitation to not operate in the L-band outside of North America.  And that was the -- the impasse that led us to the joint motions to enforce the mediated agreement in -- in August, the ones that have -- that we referred to so heavily.

HON. RENDELL:  Do you think they just realized they forgot to put something in all

these agreements?

MR. LEBLANC:  Your Honor, I -- I don't know.  What -- what I can tell you is that my client has operated under this agreement for 18 years.  And -- and until it was suggested in August of last year, no one had ever suggested that we had agreed to restrict our operations outside of North America, which is what they contend AST and we had done when we agreed to -- to the limitations of the co-op agreement.  And so --

HON. RENDELL:  So --

MR. LEBLANC:  -- yes, Your Honor --

HON. RENDELL:  Go ahead.

MR. LEBLANC:  -- we think they -- we think that they -- they realized that something was missing.

And I -- I think one important point to -- to make here is that Inmarsat, in addition to being a competitor of -- of ours and -- and certainly of the -- of the program that AST is trying to implement, they also are the only

other license holder to the L-band spectrum.

So if AST is -- I'm sorry, if -- if Inmarsat were successful in getting our plan not confirmed, not -- not able to go effective, getting the FCC to deny our application, and we were to have to liquidate because our Chapter 11 plan couldn't go forward --

HON. RENDELL:  Yes.

MR. LEBLANC:  -- they then would stand in -- in the shoes as the only licensed -- license holder in the entire L-band spectrum. That -- that's a huge incentive for them to breach the terms of their contract.

And I think importantly, we -- we think the district court just got it wrong; plainly, plainly wrong.  And in fairness to the district court, he has had this case -- he had this case for just a -- a passing moment.  We filed one brief.  He didn't ask for oral argument, so he didn't have a chance to -- to quiz us.

The bankruptcy court, by contrast,

has had dozens and dozens and dozens of briefs on this issue, has had four separate hearings dealing with exactly the issue that we are dealing with today, and intimately understands the nature of this mediated agreement.

And the bankruptcy court took no time in concluding that obviously the filing of a -- of a litigation against the debtor in a state court in New York was a breach of the automatic stay, but also that what they had done, the steps they had taken to try to interfere and to announce they were going to object to our FCC application, that that too was a breach of the amended -- of the -- of the mediated agreement. And that was not a hard question for the bankruptcy judge because he knew everything about this agreement.

And -- and so I -- the -- the simple reality is that the bankruptcy -- the -- the district court's stay order just misapplies the law and therefore is an abuse of discretion that this court should correct because we are -- and

-- and we -- we apologize that we're here on the deadline that was imposed by the FCC.  But the simple fact is the district court didn't enter the stay until Friday afternoon.  There -- there was simply nothing we could do to expedite this ahead of -- ahead of time.  And today is the critical day.

What we negotiated for in the mediated agreement was for their support during the comment period.  Today, the state of play is they rushed on Friday, after we had noticed this appeal, to file their opposition, their objection to our application, which is clearly a breach of the terms of the agreement that we had reached with them and carefully negotiated with the help of Bankruptcy Judge Bob Drain as our mediator, and it's clearly inappropriate.

So we would urge the Court to step in and right this wrong and either vacate the stay -- we think that's the right approach -- or apply an administrative stay that would then reintroduce the injunction and require Inmarsat

to file, today, a request to withdraw their objection to the FCC application and indicate their support for the FCC application, exactly as they contracted to do and have been entered into in the mediated agreement, in the amended cooperation agreement in the bankruptcy plan. This was the foundation --

HON. RENDELL: If we were -- if we -- if we were to vacate the district court's order, that's really all that's necessary; correct? The administrative stay isn't really necessary.

MR. LEBLANC: That's correct, Your Honor. We asked for the administrative stay because we didn't know that we would be able to get an audience with the Court, and we thought in the short term that that would have the same effect.

HON. RENDELL: Right.

MR. LEBLANC: But, ultimately, the request that we ask, and -- and certainly now that we've briefed -- briefed it and are here, is that Your Honors vacate the stay and -- which

would have the effect of reintroducing the injunction that was imposed by the bankruptcy court.

HON. RENDELL:  And they would then automatically have to withdraw their objection -- a file -- and actually something in support.

MR. LEBLANC:  That's -- that's exactly correct, Your Honor.

HON. RENDELL:  Okay.

MR. LEBLANC:  And -- and I -- I want to -- I want to address one issue that -- and I'm mindful of the time, Judge Freeman, but just one issue.  We -- we are not -- I -- I want to be clear.  We are not asking Inmarsat, and -- and no one is suggesting that they should be lying to the FCC.  They -- they seem to make that argument repeatedly.

We are simply demanding that they stop lying to the FCC and the rest of the world in arguing that we are not coordinated.  We coordinated it exactly the same way we did in 2007, we coordinated completely in the mediated

Transcript of Oral Arguments

15

agreement. And their own arguments in August make clear that we are coordinated if we incorporated exactly the terms with no changes to the technical requirements that are in the mediated agreement that -- I'm sorry, that are in the amended cooperation agreement.

Unless Your Honor has any questions (crosstalk)

HON. AMBRO: One -- one very quick factual question.

The opposing side says that you could extend today's comment period date. Is that correct?

MR. LEBLANC: That is not correct, Your Honor. And we cited to the Code of Federal Regulations provisions in our brief with respect to this.

We certainly could ask the FCC, but it is not our comment period; it's the FCC's comment period. And we -- we're -- I -- I don't even know. We -- we certainly wouldn't have had any reason to do that. But the -- the other

reality of this, Your Honor, is that every day of delay in the FCC process running is irreparable harm to us.

Inmarsat, I think, flippantly suggested we could simply withdraw our application and resubmit it, restart the process.

As the Court knows, we filed our application on December 8th, only 15 days before our deadline to do so, and it wasn't until January 30th that the comment period opened. That's a seven-week period.

So Inmarsat's flippantly suggested we could just withdraw the application, restart the process. And -- and what it buys for them is many, many more months of them not having a competitor in the marketplace with AST's ability to operate in this spectrum on these terms.

HON. FREEMAN:  Thank you, Mr. LeBlanc.  We'll hear you back on rebuttal.

MR. LEBLANC:  Thank you, Your Honor.

HON. FREEMAN:  All right.

Transcript of Oral Arguments

17

Ms. Primoff, you have three minutes.

MS. PRIMOFF: Thank you. I'd like to reserve perhaps a minute for rebuttal. And I join in the comments made just now by my colleague, Mr. LeBlanc. Thank you all for hearing us this morning.

I rise to make two particular points of concern to AST. One concern is irreparable harm to AST. The other concern is the $420 million we've already paid over to Inmarsat on a non-refundable basis under the binding mediated agreement.

So AST is building a space-based satellite network for smartphone communications. Instead of cell towers, we use satellites. We launch the satellites into low Earth orbit, the L-band. The AST transaction contemplates that Ligado and AST will jointly develop this -- this spectrum.

The spectrum rights are a scarce, finite, government-allocated resource. Ligado's spectrum is the largest available block of

spectrum in North America. So this is a unique opportunity for AST to acquire access to L-band spectrum that's not otherwise available in the marketplace.

Money cannot compensate us for this lost business opportunity if there's no FCC approval. And that's precisely why the bankruptcy court ordered specific performance.

Let's talk about the $420 million that we paid over to them, again, on a non-refundable basis, that was bargained for consideration for their support before the FCC.

As my colleague said, AST and Inmarsat are competitors. We simply do not want them messing around with the FCC process. Naturally, the FCC will -- will handle its process and make its own assessment of the application, but Inmarsat should not mess around.

So for all these reasons, we respectfully ask that you lift the stay, that Inmarsat be directed to support the application,

Transcript of Oral Arguments

19

and failing that, that they'd be required to post a bond of $520 million.  Thank you.

HON. FREEMAN:  Thank you, Ms. Primoff.

Mr. Bash.

MR. BASH:  Thank you, Judge Freeman. Can you hear me okay?

HON. FREEMAN:  Yes, we do.  Thank you.

MR. BASH:  May it please the Court, John Bash for Inmarsat.

Your Honors, the urgency today is lopsided.  If we don't get a petition to deny on file with the FCC today, we forfeit that under FCC rules, including our right to challenge any future FCC decision.

HON. AMBRO:  I have -- I have a -- a preliminary question.

Why didn't you wait until today to file that?  It looks like the decision of the district court came out on Friday afternoon. You -- there was an appeal at around 6:30, and

Transcript of Oral Arguments

20

then you still filed at some -- a petition in opposition to the FCC to the application of -- of the -- of Ligado.  Why didn't you wait?

MR. BASH:  Well, Judge Ambro, all our rights hinge on that filing.  We had no idea what was going to happen if they, on the last minute, would convince the Court to issue an administrative stay that would cause us to forfeit our appeal rights against FCC, an adverse FCC decision in our view.

We got a stay.  The other side could have, in their opposition papers in the district court, said, In the event of an adverse decision, Your Honor, we would like lead time and administrative stay.

They did not do that.  They did not e-mail us when it came down and said, We're going to seek a stay, please hold off.

We had very little time to protect extremely valuable rights in the FCC.  If we don't have that on file today, we lose our appeal rights from an adverse FCC decision.  It

all goes away.

HON. AMBRO:  Why, earlier, did you not object to the plan if you had concerns?

MR. BASH:  We have no objection to the plan.  Remember, Judge Ambro, this is a post-petition contract that imposes certain obligations on the parties.  As we read the contract, and I'd like to get into it -- it's the merits issue -- in a second.  The -- our obligation to support depended on further coordination of these NGSO satellites.

I mean, we -- we had no objection to the plan.  The plan didn't have any provision that we thought would have injured us.

HON. RENDELL:  Where is it --

HON. AMBRO:  Did the --

HON. RENDELL:  -- in the relevant -- where is it in the relevant documents and agreements that there is a proviso that you will only support if there is further coordination? Where do we -- where do you find that?

MR. BASH:  Well, in Term Sheet

Section 2, so this -- remember the context here. The parties -- and I -- I want to get to the text. It's Term Sheet Section 2, but let me give you the context of this.

The parties entered into mediation and developed a term sheet that was binding. But as term sheets go, it did not fill out all of the specific provisions.

And what the term sheet says is that for this application, Section 2 -- it's also called the Mediated Agreement Post-Bankruptcy Court Approval. In Section 2, it says that we support if they represent that this new NGSO system has been coordinated subject to a restated and amended agreement.

The obvious import of that, especially in light of the factual context which I'd like to get to in a second -- the obvious import of that is that there has to be further coordination according to new terms.

HON. RENDELL: I'm sorry, I'm sorry. Where is that obvious import? I -- will you

tell me again?  I don't get that.

MR. BASH:  Well, when -- when there's an existing coordination agreement that applies to a certain type of satellite, GSO satellites which are 35,000 miles from the Earth and in a fixed position, and then the obligation depends on a representation to a federal agency that there has been coordination of an NGSO system according to a new amended agreement, I don't think it's reasonable to think what that means is that the parties could just represent that because this agreement that applies to a different type of technology is still in force. We -- this has been coordinated according to a restated amended agreement.

I don't think any party thinks it would be reasonable to read this to mean you must mislead the FCC about what's happened.

Remember the factual context, Judge Rendell.  These NGSO satellites are totally different than GSO satellites.  They circle the Earth.  They are far closer -- 500

kilometers from the Earth rather than 35,000. They create all sorts of interference issues with satellites on the ground.

The idea that what the parties agreed to was to just represent to the FCC that something that clearly has not happened, terms specific to that technology happened, can't be right.

And -- and the last point I'll make -- and I know you might want to ask a follow-up question -- is after this term sheet was signed, the parties continued to negotiate for months about NGSO-specific terms. They exchanged drafts that used "NGSO" 96 times and had all of the different technologically specific terms for NGSO satellites.

The idea that what they agreed to was just to say, Well, this has been -- I mean, it's like if you had a private airfield and you said, Well, I've coordinated this with a civilian airport, so we're just going to use those exact terms to coordinate with the military air base

that has a totally different type of aviation technology.  It doesn't make any sense practically that the parties would have agreed to that.

The reason, Judge Rendell, that this ended up as a standalone agreement is that the parties hit an impasse on a totally different issue whether the exclusivity for my client outside of North America would also bind AST, this new party, to the agreements.  Couldn't agree on that, went to the bankruptcy court.  We wanted the bankruptcy court to resolve that. But given the -- the urgency of plan confirmation, the Court threw up its hands and said, Look, we're just going to make the term sheet the agreement.  Work out everything later.

We agreed to that.  Nobody was contemplating, at that time, that that meant these NGO-specific terms -- which were not really the point in controversy -- did not have to be worked out functionally before you can tell the FCC that they have been worked out.

Transcript of Oral Arguments

26

And I -- this is really important.  The -- the opening of my friend's reply brief, Ligado's reply brief, has all these quotes from us at this August hearing, which was about this North America issue that looks bad when you take them and apply them to this.  Nobody was talking about this issue there.  All of those quotes are about whether AST is bound by our exclusivity outside of North America.  And we were saying, Look, at minimum, AST is bound by the existing cooperation agreement terms.

No one was addressing the obligation or in the other side's view, the lack of obligation to amend those terms to deal with this different technology.  That wasn't at issue in that hearing.  The -- the transcript and our opposition is in the record before the courts. The Court can read it itself.

They are taking quotes about a totally different issue out of context.  So --

HON. RENDELL:  The --

HON. AMBRO:  It -- it looks like

you're attempting to renegotiate for additional anti-competitive terms that you didn't get earlier for outside North America.  Is that correct?

MR. BASH:  No.  So -- so I don't know what -- what the present tense of that question means.  That's certainly not the issue before the Court right now.  If you're talking about the August hearing, our view --

HON. AMBRO:  But -- but post-August, what do you -- isn't the issue relating to what type of coordination or anti-competitive terms exist for outside North America?

MR. BASH:  That is a separate issue. I mean, that's not the issue that the district court or the bankruptcy court ruled upon in this case.

In this case, it's about whether the parties, before we had an obligation to support, were obligated to, within North America, to work out the technical terms necessary to make sure that these non-geostationary satellites don't

interfere with our systems.

And I just -- I just want to emphasize this.  I know these are complex factual questions, but I don't think the parties really disagree about this.

Those raise totally different technical issues.  I mean, the interference.  They're moving, so they're constantly shifting their geometry.  They're much closer to the Earth.  The idea that the parties agreed and the bankruptcy court approved the contract that we can just tell the FCC that some terms for a totally different type of technology are sufficient for this is -- can't possibly be what the contract meant, and it's approved by the court --

HON. RENDELL:  But -- but you did agree.  You did agree, quote, they have been coordinated and there's not a provided, however, and there's not there -- and is there -- the intent was for further coordination and for the application and your -- your approval of it to

be dependent upon it, that's a huge deal that ought to be stated very specifically.  But as it is --

MR. BASH:  There's a (crosstalk)

HON. RENDELL:  -- it said they have been coordinated.

MR. BASH:  Judge -- Judge Rendell, that's fair.  But again, it -- it doesn't say that as of the time of this term sheet, they're coordinated.  What it says is that our obligation for approval is premised on a representation that they have --

HON. RENDELL:  Yes --

MR. BASH:  -- been coordinated under a --

HON. RENDELL:  Yes.

MR. BASH:  -- but under a new coordination agreement.  There was (crosstalk)

HON. RENDELL:  But you -- you agreed to that.  You didn't say, Oh, and but pending that and before an applicant -- before we -- we are in favor of the application, I have to say,

so there has to be further coordination.  So, you know, isn't this just your fault for not drafting this properly? agreeing to something that you later regretted?

MR. BASH:  Well, look, it -- it's fair to say I think that there may be ambiguity in the contract because of the circumstances in which this was done.  As I said, it was a term sheet, it didn't have it all worked out.  And then the parties at this -- the -- the Court at this August hearing just said, You know what, just make that the contract.

But I do think at least there's ambiguity when it says you have to make a representation to a federal agency that an NGSO system has been coordinated under an agreement, when clearly it has not.  Under any ordinary understanding of that, no terms were worked out.

And then there's the course of conduct.  After we signed this term sheet, after it became the mediated agreement, the parties continued to exchange drafts on numerous NGO-

specific terms that they never came to an agreement on.

And remember, I mean, this is a separate issue in the case, but it's related. The district court did not hold an evidentiary hearing on this. So, you know, when -- when -- when there are factual questions embedded in a party's contractual intent, usually you look at things like course of conduct, you have an evidentiary hearing. The district court --

HON. RENDELL: But --

MR. BASH: -- didn't have an evidentiary hearing on this, so we never got to put in evidence --

HON. RENDELL: This -- and this isn't just in the term sheet. This is in the mediated agreement. The mediated agreement, something that Judge Drain worked on for a long time and that you were -- and it says they have been coordinated and has affirmative support and extensive discussion of what this affirmative support shall be. So and all of a sudden you

come up and say, Oh, well, wait a minute.  There was a condition.  There's no condition in here.

HON. AMBRO:  And -- and you waited until after you got the $420 million payment at the end of October.

MR. BASH:  Well, let me take both of those questions in turn.

So, Judge Rendell, in terms -- it -- it doesn't say it's been coordinated as of the date of this agreement.  It says that it's been coordinated pursuant to amended terms that were never entered into and that's what they have to represent to get our support.  There is no statement in here that says, As of the date of this term sheet, it's in agreement.

And as to Judge Drain's work, we don't take any issue with that.  Remember, after this was approved, the parties continue to negotiate numerous NGO-specific terms after this was approved.  So Judge Drain, no doubt -- and I don't want to speak for him, but no doubt understood that those terms had to be worked out

Transcript of Oral Arguments

33

under this term sheet.

Judge Ambro, with respect to the 420 --

HON. RENDELL:  Let -- let me just come back on that, though.  The -- the mediation agreement also says the applications will not be more granular in respect of Prong 2.  So, I mean, that's pretty much saying, Hey, that's what it says.  That's all there is.  You gotta comply.

MR. BASH:  Respectfully, Judge Rendell, I don't think that's right.  That's referring to what the application has to say to the FCC.

We don't take any issue with that.  That's not referring to what coordination has to occur in order to make that statement.

Judge Ambro, I want to make sure I addressed your question about the $420 million.  First of all, this is just a preliminary point.  They owed us far more than that.  That was arrears for what they owed us in the past.  But

34

put that aside.  If you collected rent money from a tenant, that doesn't mean the tenant has license to destroy your house.

What we bargained for in this agreement was a properly coordinated NGSO system with our existing infrastructure.  There are no terms like that.  There are no NGO-specific terms that we have coordinated.  These satellites are far closer to Earth.  They interfere in a different way.

Ligado's pre-existing system has one satellite 35,000 kilometers from the Earth. This is almost 100 satellites, and they want more eventually, within 500 kilometers of terrestrial systems.  It creates totally different issues.  We didn't bargain for that when we -- when we accepted the money.  We bargained for a properly coordinated system.

So, I mean, the fact that you accept rent money from your tenants doesn't mean they can do anything to your house that they want. So I don't think that's true.

35

On the other factors aside from the merits in this case, we face a deadline today. We will forfeit our rights to file a petition to deny if we don't have that on file today. That's not only our right to submit this important information to the FCC, but it's also our appeal rights if we ultimately prevail in this case, and we want to challenge the -- and if FCC grants a license, we want to challenge it on appeal.  We forfeit all that today if we don't get it on file today.

I have not really heard a concrete interest on the other side.  Put aside the fact that they can extend the comment deadline.  We have a declaration from a person with 30 years of experience that says they could easily do that.  It's a discretionary thing by the FCC, but it could be done.

Put aside all that.  They have estimated this process could take up to 40 months.  Somebody else has already objected: Iridium.  We've put that into the record.

The idea that letting the district court do an expedited plenary review appeal has any concrete impact on them is totally speculative that it's going to make them have to liquidate. I mean, they have put in no factual evidence that shows that's a likely outcome.

Of course, the district court didn't hold an evidentiary hearing, which is a separate merits error, warranting vacatur of the injunction, or at least a stay of the injunction. There is no evidence that allowing us to leave our petition to deny on file and do an expedited appeal in the district court, potentially an expedited appeal in this court, will materially impact them.

If it gets closer to some deadline with their financing and they have new information to suggest that it's going to be a big problem for them, that our support is not on file, they could always come back to the courts and seek that relief and say circumstances have changed. But it's totally speculative that

allowing the district court of appeals to run its course will cause irreparable harm to them.

On the other hand, they do not deny that we will forfeit our appellate rights and forfeit our chance to object in the administrative proceedings if we don't have that on file today.  The equities are lopsided.

And -- and then bear in mind the public interest.  Sometimes the public interest factor is sort of an afterthought.  It's immense here.  We are telling the FCC that they have not, in fact, done the technical coordination required to make sure that our 911-type systems and our aviation systems will not be interfered with by their satellites.

They say, Well, you could raise that later.  But we can't raise that later.  All we can raise later is that whatever coordination the FCC approves has not been breached.  But this is about -- it's like the tennis lines example we give.  This is about what those metes and bounds ought to be.  We're -- we --

HON. RENDELL:  The bankruptcy court -- the bankruptcy court said you could raise that later.  There are lots of provisions if there's interference.  This is not something that's lost.

MR. BASH:  Judge Rendell, that's not true.  What the bankruptcy court was referring to is that later we could say they violated the coordination terms.  But this is all about what those terms ought to be.  So what -- you know, if they draw the lines wrong in the tennis court, you can't later say the lines are drawn wrong.  All you can say is the ball was in or out.  So it's -- it's just not true that -- that we can raise that later.  I mean, this -- this is --

HON. AMBRO:  If in August and September and October, you're still saying we haven't negotiated what the terms ought to be, then why didn't you bring it up then rather than agree to what the district or the bankruptcy court has suggested and was ultimately put into

the plan?

MR. BASH: Because we understood, Judge Ambro, that this was a post-petition contract that required that coordination before it could be -- before our obligation would arrive. And that's how --

HON. AMBRO: Did --

MR. BASH: -- we understood the contract and (crosstalk)

HON. AMBRO: -- did you put that on the record before the bankruptcy court?

MR. BASH: No one was disputing it. I mean, that wasn't the dispute, but we did not. The answer is because no one was disputing that. I mean, we thought that was obvious from the contract, especially, Judge Ambro, because of the course of dealing.

After this term -- this agreement is worked out with Judge Drain, the parties negotiated extensively the NGSO terms. No one was acting like that's not something that had to be done. That -- that wasn't the dispute. The

dispute was this other thing about outside of North America.  That wasn't the dispute between the parties.

And, Judge Ambro, I'll just point this out to you.  In September and November of this year, we submitted filings to the FCC in other proceedings saying this was not yet coordinated.  Okay?  In response to other proceedings involving AST, their systems were not yet coordinated.  They knew full well what our position was on this, and we also told them that in November.

HON. AMBRO:  Judge Horan notes in his -- the transcript of his decision on page 12 that in November, Viasat, which is, I guess, your parent, filed a comment letter with the FCC relating to the application of a third party called Planet Labs to allow certain of Planet Labs' satellites to communicate in the L-band with Inmarsat satellites.

And in a November 21st, '25, letter, Viasat stated that Ligado and AST had not

coordinated regarding the NGSO L-band operations.

Is that what happened?  There -- there was some type of arrangement, involvement of Planet Labs that somehow caused a problem for your corporate parent?

MR. BASH:  My -- my understanding of those filings -- and -- and I apologize, Judge Ambro (inaudible) on short notice, I'm not intimately familiar with them.  But my understanding --

HON. AMBRO:  Well, you --

MR. BASH:  -- is that AST wanted to intervene in some way in that case, and we were explaining that ACT (sic) is not even approved yet.  They don't even have -- they haven't even coordinated.

My colleague can correct me if I'm wrong on rebuttal, but I think we were making the point that AST has not yet been coordinated because it was relevant to those third-party disputes and AST had some interest in those

Transcript of Oral Arguments

42

disputes.

HON. RENDELL:  What's the remaining time?

HON. FREEMAN:  The time has expired.

HON. RENDELL:  Oh, all right.

HON. FREEMAN:  But go ahead, Judge Rendell.

HON. RENDELL:  No, I (crosstalk) I have no further questions.

HON. FREEMAN:  Judge Ambro?

HON. AMBRO:  I had -- I had -- I had a bunch, but I'll -- I'll skip them.

MR. BASH:  Judge Freeman, can I just make one statement at the end?

HON. FREEMAN:  Sure.

MR. BASH:  Obviously, the questions have been, you know, forceful.  And so I just want -- want to -- if -- if the Court is not inclined to uphold the district court's stay, I -- on these grounds, I would just ask two things:  One, I would ask the Court to look strongly at our other merits arguments, namely

Transcript of Oral Arguments

43

the argument that this injunction was improper without an evidentiary hearing, where the course of conduct evidence could have come in, where the NGSO coordination issues could have come in, and information relevant to the irreparable harm could have come in.  And I would ask the Court to uphold the stay on that alternative ground.

But if the Court is not inclined to uphold it at all, I would at least ask the Court to uphold the stay with respect to the New York action.  The -- the bankruptcy court ordered us to dismiss another proceeding with prejudice. That would mean it -- in theory, it has claim preclusive effect.  We can never bring it again regardless if we prevail in this proceeding. The other side has really presented no defensible basis to uphold that aspect of the injunction.

Thank you --

HON. FREEMAN:  But what -- if -- if the stay were -- the district court's stay were vacated as to the New York action, wouldn't the

district court be able to address that at some

point later?  I mean, have you made any argument

about irreparable harm in the interim while the

district court deals with this appeal?

MR. BASH:  For the New York action?

Well, I mean, the irreparable harm is if we

dismiss an act -- I might be misunderstanding

the question, Judge Freeman, but the irreparable

harm is if we dismiss an action with prejudice.

The fact that the decisions in this case may get

vacated wouldn't affect some case in New York

State Court that was dismissed with prejudice.

If we're -- you know, if we were

ordered to stay that case, or I guess they

dismiss it without prejudice, although I'd want

to think about the statute of limitations --

HON. RENDELL:  But -- but that's not

really before us.  What's before us is whether

the district court order stays or is vacated.

Once -- if it is vacated, then the bankruptcy

court order is in effect.  We have no -- we have

no basis for -- for questioning the bankruptcy

court's determination there.

MR. BASH:  Judge Rendell, what I'm saying is that I'd ask the Court at minimum -- of course, we want the whole stay affirmed, but I'd ask the Court at minimum to affirm the stay with respect to the injunction of the New York action, because that requires us to dismiss a case with prejudice which is clear, irreparable harm, has no basis in the bankruptcy code to require us to dismiss something in a way that would have claim preclusive effect.  And so we'd at least ask the Court to vacate or to affirm the stay in that respect (crosstalk)

HON. AMBRO:  Well, when was the -- when was the complaint filed in New York?

MR. BASH:  New York State Court, Superior Court.

HON. AMBRO:  In New York State Court. When was the complaint filed?

MR. BASH:  Which -- which court?

HON. FREEMAN:  When?

HON. AMBRO:  When -- when was the --

46

MR. BASH: Oh, oh, when.

HON. AMBRO: -- complaint filed?

MR. BASH: December, I believe is that -- well, I believe it was November or December. I'm -- I'm -- I'm blanking on it right now. But it was before the current motions. The current motions were, in part, a response to that action.

HON. RENDELL: (Crosstalk) Judge Freeman.

HON. AMBRO: So the judge ruled on January 30th. You, on February 3, went to the District Court in Delaware. And I guess the Court, 24 days later, Friday evening or whatever, rendered its decision. Is that correct?

MR. BASH: That -- that all sounds roughly correct. I might have a day off or two, but that's roughly correct. Yes.

HON. RENDELL: All right. Thank you.

HON. FREEMAN: Okay.

MR. BASH: So we ask the Court to

affirm (crosstalk) I'm sorry.

HON. FREEMAN:  Thank you. (Crosstalk) thank you, Mr. Bash.

Mr. LeBlanc, could you begin your rebuttal by addressing the continued negotiations that post-date the -- the term sheet?

MR. LEBLANC:  Absolutely, Your Honor. I'm happy to.  And I -- and I would like to address a couple of other points as well.

The -- the parties, and -- and I think Judge Horan recognized this completely both in August and -- and subsequent to that. The parties are, of course, free to mutually agree to change any terms that they want to. And -- and we endeavored to do that.

To -- to be clear, the -- the cooperation agreement began in -- in 2007 -- it's 18 years old -- and it has been amended now 22 times.  We would like to restate and update that cooperation agreement.  We -- we tried to do that.  We endeavored to do that with using

48

the -- the contours of those things that we agreed to in mediation and incorporating those, as well as other changes to just update it to -- to the current.

We were woefully unsuccessful in that endeavor and that's what brought us back to endorsing the -- the incorporation just of the mediated agreement terms into the amended cooperation agreement. And -- and that was, from our perspective, from Judge Horan's perspective, and most importantly, from Inmarsat's perspective, necessary and sufficient to reach an amended cooperation agreement. That was what they argued, is we could just incorporate the terms into that agreement.

So while we tried to do other changes, and we're always free to negotiate mutually acceptable other changes, it -- it was never necessary for us to do that. And when we failed, and we were coming up on a deadline for us to get confirmation, both sides went to the court and said, Please, now, we need you to

enforce the mediated agreement.  And Inmarsat urged us -- urged the Court to just order us to adopt into the amended cooperation agreement the verbatim language of the mediated agreement, Sections 2, 3, and 4, which the parties agreed would be incorporated in the amended cooperation agreement, and that's exactly what we did.  And so --

HON. RENDELL:  Why -- it seems like Mr. Bash is saying there wasn't an amended cooperation agreement, and that's what the district court said.  There was an amended cooperation agreement; correct?

MR. LEBLANC:  Correct, Your Honor.  That -- that is one of the more frustrating things of the district court opinion to us, is that that -- that is a fundamental misunderstanding.  There was -- and -- and not only was there, but there had to be to go to confirmation.  In -- in the mediated agreement, in Footnote 4, in the last sentence, it says, Ligado and Inmarsat shall execute the amended

Transcript of Oral Arguments

50

Inmarsat cooperation agreement prior to confirmation of the plan.

Inmarsat did not stand up on September 29th at our confirmation hearing and say, We have not executed the amended Inmarsat cooperation agreement. Quite to the contrary, they said we did, because we had on September 21st. So the -- the very thing that we were required to do prior to confirmation, we did. And Inmarsat raised no issue with respect to that.

And -- and I do think this is, to me, the central fallacy of the argument on the other side. We are coordinated pursuant to the mediated agreement. The phrase "proposed NGSO system" appears 17 times in the mediated agreement. And many of those terms, many of those provisions have been incorporated into that amended Inmarsat cooperation agreement that we have executed.

And -- and I think it's important to focus on the -- the two things that we said the

applications must state to gain their support.

The first was the applications will expressly

state that the operations of all AST and Ligado

spacecrafts, individually and taken as a whole

regardless of orbit, will be consistent with and

remain within the technical, geographic, and

other limitations in the amended Inmarsat

cooperation agreement and Legado's other

coordination agreements with various parties.

That is the coordination.  We have

taken it upon ourselves that when this system is

created, it has to comply with the hundreds of

pages of technical requirements in the

cooperation agreement.  That is how we are

coordinated.

Then the next provision says -- and I

think the district court just misread this as

well -- it says that we shall request that the

FCC and ISED, the Canadian equivalent, recognize

that the operations of the proposed NGSO system

have been coordinated subject to the terms of

the amended Inmarsat cooperation agreement and

the Inmarsat-AST agreement, and give effect to such agreements by licensing the proposed NGSO system to operate in accordance with the terms of such agreements.

Those are the very agreements that were executed on September 21st. And so we have been coordinated for an NGSO system pursuant to those agreements as incorporated -- the mediated agreement as incorporated into those agreements. That is literally the exact structure that the parties negotiated here. And what did we get if we had made those statements and we had executed those agreements? We got their support; not their -- their abstention. Their support. And, certainly, not their objection.

Now, Inmarsat now says that this is critically important to them because otherwise they will waive their appellate rights.

They negotiated away their appellate rights with us in return for us doing all of these things, including agreeing that our NGSO system will operate consistent with the

limitations that existed for our GEO system. That is our obligation, including paying them an enormous payment, notwithstanding the fact that we had claims pending against them that numbered in the billions of dollars.  We waived those claims.

And -- and so they voluntarily gave up their right to contest this.  And that is the -- that is the primary benefit that we extracted from them.  And they now are telling the Court, Oh, don't worry, we can change it later.

There has already been an enormous amount of damage done to my client because of their actions, both the filing of a lawsuit in -- in New York alleging that they were going to object, and then their rushing to object after we'd noticed the appeal to this Court so that other parties who are -- who may be filing statements today will undoubtedly refer to their objection filed on Friday.

Huge amounts of damage has been caused to us.  We will rectify that elsewhere,

Transcript of Oral Arguments

54

but Your -- this Court has the opportunity to protect us from further harm, and we'd ask that you --

HON. FREEMAN:  Okay.  Thank you, Mr. LeBlanc.

MR. LEBLANC:  Thank you, Your Honors.

HON. FREEMAN:  Judge Ambro, Judge Rendell, anything further?

HON. AMBRO:  No --

HON. RENDELL:  Nothing further.

HON. AMBRO:  -- nothing further.

HON. FREEMAN:  Okay.  And Ms. Primoff, you have one minute.

MS. PRIMOFF:  Very briefly, just one commercial point.

AST's public filings -- AST is a public company -- recite that the average cost estimate for the BlueBird satellites to be launched is between nineteen and twenty-three million dollars per satellite.

So Mr. Bash made reference to 100 satellites at $20 million a satellite.  We're

Transcript of Oral Arguments

55

talking about $2 billion of material.  Nobody's going to launch $2 billion worth of stuff and not have it work.  We believe we are coordinated.

HON. FREEMAN:  Okay.  Thank you.

HON. AMBRO:  Thank you.

HON. FREEMAN:  Thank you all for your very helpful written submissions and arguments, especially on this short notice.  We appreciate you being here this morning, and we -- we understand the timeline you're on, and so we are working expeditiously to get you a decision.

MS. PRIMOFF:  We are grateful to the Court.  Thank you.

MR. BASH:  Thank you.

MR. LEBLANC:  Thank you.

HON. FREEMAN:  Thank you.

(The recording was concluded.)

Transcript of Oral Arguments

56

CERTIFICATE OF TRANSCRIBER

I, Esther M. Taylor, do hereby certify that this transcript was prepared from the digital audio recording of the foregoing proceeding; that said transcript is a true and accurate record of the proceedings to the best of my knowledge, skills, and ability; and that I am neither counsel for, related to, nor employed by any of the parties to the case and have no interest, financial or otherwise, in its outcome.

_____

Esther M. Taylor

March 8, 2026

(624255, Oral Arguments)

Transcript of Oral Arguments

57

| A | | | |
|---|---|---|---|
| **ability** | 44:5, 44:9, | **against** | 49:20, 50:1, |
| 8:9, 16:17, | 45:7, 46:8 | 7:13, 11:8, | 50:6, 50:15, |
| 56:7 | **actions** | 20:9, 53:4 | 50:17, 50:19, |
| **able** | 53:14 | **agency** | 51:8, 51:14, |
| 10:4, 13:15, | **actually** | 23:7, 30:15 | 51:22, 52:1, |
| 44:1 | 14:6 | **agree** | 52:9 |
| **about** | **addition** | 6:20, 25:11, | **agreements** |
| 11:17, 18:9, | 9:19 | 28:18, 38:21, | 4:4, 5:11, 9:1, |
| 23:18, 24:13, | **additional** | 47:15 | 21:19, 25:10, |
| 26:4, 26:7, | 6:21, 27:1 | **agreed** | 51:9, 52:2, |
| 26:8, 26:19, | **address** | 4:10, 7:4, 9:7, | 52:4, 52:5, |
| 27:8, 27:18, | 14:11, 44:1, | 9:9, 24:4, | 52:8, 52:9, |
| 28:5, 33:19, | 47:10 | 24:17, 25:3, | 52:13 |
| 37:20, 37:21, | **addressed** | 25:17, 28:10, | **agrees** |
| 38:9, 40:1, | 33:19 | 29:19, 48:2, | 6:20 |
| 44:3, 44:16, | **addressing** | 49:5 | **ahead** |
| 55:1 | 26:12, 47:5 | **agreeing** | 3:12, 9:14, |
| **absolutely** | **administrative** | 7:14, 30:3, | 12:6, 42:6 |
| 47:8 | 12:21, 13:11, | 52:21 | **air** |
| **abstention** | 13:13, 20:8, | **agreement** | 24:22 |
| 52:14 | 20:15, 37:6 | 4:1, 4:2, 4:5, | **airfield** |
| **abuse** | **adopt** | 4:13, 4:20, | 24:19 |
| 11:21 | 49:3 | 4:21, 5:2, 5:6, | **airport** |
| **accept** | **adverse** | 6:14, 6:18, | 24:21 |
| 34:19 | 20:10, 20:13, | 6:21, 7:1, 7:7, | **all** |
| **acceptable** | 20:22 | 7:8, 8:11, 8:13, | 4:7, 4:19, |
| 48:18 | **affect** | 8:18, 9:4, 9:10, | 8:22, 13:10, |
| **accepted** | 44:11 | 11:5, 11:14, | 16:22, 17:5, |
| 34:17 | **affirm** | 11:17, 12:9, | 18:20, 20:4, |
| **access** | 45:5, 45:12, | 12:14, 13:5, | 21:1, 22:7, |
| 18:2 | 47:1 | 13:6, 15:1, | 24:2, 24:14, |
| **accordance** | **affirmative** | 15:5, 15:6, | 26:3, 26:7, |
| 52:3 | 31:20, 31:21 | 17:12, 22:11, | 30:9, 31:22, |
| **according** | **affirmed** | 22:15, 23:3, | 33:9, 33:20, |
| 22:20, 23:9, | 45:4 | 23:9, 23:12, | 35:10, 35:19, |
| 23:14 | **after** | 23:15, 25:6, | 37:17, 38:9, |
| **accurate** | 4:15, 6:1, | 25:16, 26:11, | 38:13, 42:5, |
| 56:6 | 12:11, 24:11, | 29:18, 30:16, | 43:9, 46:17, |
| **acquire** | 30:20, 32:4, | 30:21, 31:2, | 46:20, 51:3, |
| 18:2 | 32:17, 32:19, | 31:17, 32:10, | 52:20, 55:7 |
| **act** | 39:18, 53:16 | 32:15, 33:6, | **alleging** |
| 41:15, 44:7 | **afternoon** | 34:5, 39:18, | 53:15 |
| **acting** | 12:4, 19:21 | 47:18, 47:21, | **allow** |
| 39:21 | **afterthought** | 48:8, 48:9, | 40:18 |
| **action** | 37:10 | 48:13, 48:15, | **allowing** |
| 43:11, 43:22, | **again** | 49:1, 49:3, | 36:11, 37:1 |
| | 18:10, 23:1, | 49:4, 49:7, | **almost** |
| | 29:8, 43:14 | 49:11, 49:13, | 34:13 |

Transcript of Oral Arguments

**already**
17:10, 35:21, 53:12
**also**
7:9, 9:22, 11:10, 22:10, 25:9, 33:6, 35:6, 40:11
**alternative**
43:7
**although**
44:15
**always**
36:20, 48:17
**ambiguity**
30:6, 30:14
**ambro**
1:16, 4:15, 5:14, 5:18, 5:20, 6:3, 7:21, 15:9, 19:17, 20:4, 21:2, 21:5, 21:16, 26:22, 27:10, 32:3, 33:2, 33:18, 38:17, 39:3, 39:7, 39:10, 39:16, 40:4, 40:13, 41:9, 41:12, 42:10, 42:11, 45:14, 45:18, 45:22, 46:2, 46:11, 54:7, 54:9, 54:11, 55:6
**amend**
26:14
**amended**
4:1, 4:21, 5:5, 7:7, 11:14, 13:5, 15:6, 22:15, 23:9, 23:15, 32:11, 47:19, 48:8, 48:13, 49:3, 49:6, 49:10, 49:12, 49:22,

50:5, 50:19, 51:7, 51:22
**america**
8:16, 9:8, 18:1, 25:9, 26:5, 26:9, 27:3, 27:13, 27:20, 40:2
**amorphous**
7:4
**amount**
53:13
**amounts**
53:21
**andrew**
2:3
**announce**
11:12
**another**
43:12
**answer**
39:14
**anti-competitive**
27:2, 27:12
**any**
3:7, 4:16, 8:12, 15:7, 15:22, 19:15, 21:13, 23:16, 25:2, 30:17, 32:17, 33:15, 36:3, 44:2, 47:15, 56:9
**anything**
34:21, 54:8
**apologize**
12:1, 41:8
**appeal**
12:12, 19:22, 20:9, 20:22, 35:7, 35:10, 36:2, 36:13, 36:14, 44:4, 53:17
**appeals**
1:1, 37:1
**appears**
50:16

**appellant**
2:2, 2:9
**appellants**
1:6, 3:10
**appellate**
37:4, 52:18, 52:19
**appellee**
2:17
**appellees**
1:9
**applicant**
29:21
**application**
5:13, 6:2, 10:5, 11:13, 12:13, 13:2, 13:3, 16:6, 16:9, 16:14, 18:18, 18:22, 20:2, 22:10, 28:22, 29:22, 33:13, 40:17
**applications**
33:6, 51:1, 51:2
**applies**
23:3, 23:12
**apply**
12:21, 26:6
**appreciate**
55:9
**approach**
12:20
**approval**
18:7, 22:12, 28:22, 29:11
**approved**
28:11, 28:15, 32:18, 32:20, 41:15
**approves**
37:19
**argued**
48:14
**arguing**
14:20
**argument**
3:17, 10:20,

14:17, 43:1, 44:2, 50:13
**arguments**
1:12, 3:3, 15:1, 42:22, 55:8, 56:22
**arianna**
1:14
**around**
18:15, 18:19, 19:22
**arrangement**
41:4
**arrears**
33:22
**arrive**
39:6
**aside**
34:1, 35:1, 35:13, 35:19
**asked**
13:13
**asking**
14:14
**aspect**
43:17
**assessment**
18:17
**assets**
3:22
**associated**
3:22, 7:17
**ast**
1:5, 2:9, 3:20, 4:9, 6:22, 8:13, 9:9, 9:21, 10:2, 17:8, 17:9, 17:13, 17:17, 17:18, 18:2, 18:13, 25:9, 26:8, 26:10, 40:9, 40:22, 41:13, 41:20, 41:22, 51:3, 54:16
**ast's**
8:9, 16:17, 54:16

Transcript of Oral Arguments

59

**ast-inmarsat**
4:2
**attempting**
27:1
**audience**
13:15
**audio**
56:4
**august**
6:12, 8:6,
8:18, 9:6, 15:1,
26:4, 27:9,
30:11, 38:17,
47:13
**austin**
2:21
**automatic**
11:9
**automatically**
14:5
**available**
17:22, 18:3
**avenue**
2:5
**average**
54:17
**aviation**
25:1, 37:14
**away**
21:1, 52:19

**B**

**back**
16:20, 33:5,
36:20, 48:6
**bad**
26:5
**ball**
38:13
**bankruptcy**
4:9, 10:22,
11:6, 11:16,
11:19, 12:16,
13:6, 14:2,
18:8, 25:11,
25:12, 27:16,
28:11, 38:1,
38:2, 38:7,

38:21, 39:11,
43:11, 44:20,
44:22, 45:9
**bargain**
34:16
**bargained**
18:11, 34:4,
34:18
**base**
24:22
**bash**
2:18, 19:5,
19:6, 19:10,
19:11, 20:4,
21:4, 21:22,
23:2, 27:5,
27:14, 29:4,
29:7, 29:14,
29:17, 30:5,
31:12, 32:6,
33:11, 38:6,
39:2, 39:8,
39:12, 41:7,
41:13, 42:13,
42:16, 44:5,
45:2, 45:16,
45:20, 46:1,
46:3, 46:17,
46:22, 47:3,
49:10, 54:21,
55:15
**basis**
6:5, 17:11,
18:11, 43:17,
44:22, 45:9
**bear**
37:8
**became**
30:21
**because**
4:8, 10:6,
11:16, 11:22,
13:14, 23:12,
30:7, 39:2,
39:14, 39:16,
41:21, 45:7,
50:7, 52:17,
53:13

**been**
5:6, 6:16,
7:12, 8:4, 13:4,
22:14, 23:8,
23:14, 24:18,
25:22, 28:18,
29:6, 29:14,
30:16, 31:19,
32:9, 32:10,
37:19, 41:20,
42:17, 47:19,
50:18, 51:21,
52:7, 53:12,
53:21
**before**
1:13, 6:10,
16:9, 18:12,
25:21, 26:17,
27:7, 27:19,
29:21, 39:4,
39:5, 39:11,
44:18, 46:6
**began**
47:18
**begin**
3:16, 47:4
**behalf**
2:2, 2:9, 2:17
**being**
9:20, 55:10
**believe**
8:12, 46:3,
46:4, 55:3
**benefit**
53:9
**best**
56:6
**between**
4:8, 40:2,
54:19
**beyond**
6:22
**big**
36:19
**billion**
7:15, 55:1,
55:2
**billions**
53:5

**bind**
25:9
**binding**
17:11, 22:6
**blanking**
46:5
**block**
17:22
**bluebird**
54:18
**bob**
12:16
**bond**
19:2
**both**
4:2, 32:6,
47:13, 48:21,
53:14
**bound**
26:8, 26:10
**bounds**
7:17, 37:22
**breach**
10:13, 11:9,
11:13, 12:14
**breached**
37:19
**breaching**
5:12
**brief**
6:12, 10:19,
15:16, 26:2,
26:3
**briefed**
13:21
**briefly**
54:14
**briefs**
11:1
**bring**
38:20, 43:14
**brought**
48:6
**building**
17:13
**bunch**
42:12
**business**
18:6

Transcript of Oral Arguments

60

buys
16:15

**C**

called
22:11, 40:18
came
19:21, 20:17,
31:1
can't
24:7, 28:14,
37:17, 38:12
canadian
51:19
cannot
7:6, 7:7, 18:5
carefully
12:15
case
1:7, 3:3,
10:17, 10:18,
27:17, 27:18,
31:4, 35:2,
35:8, 41:14,
44:10, 44:11,
44:14, 45:8,
56:9
cause
20:8, 37:2
caused
8:1, 8:6, 41:5,
53:22
cell
17:15
center
2:12
central
50:13
certain
21:6, 23:4,
40:18
certainly
8:14, 9:21,
13:20, 15:18,
15:21, 27:7,
52:15
certificate
56:1

certify
56:3
challenge
19:15, 35:8,
35:9
chance
10:20, 37:5
change
47:15, 53:11
changed
6:19, 36:22
changes
15:3, 48:3,
48:17, 48:18
chapter
10:6
circle
23:22
circuit
1:2, 1:13
circumstances
3:18, 30:7,
36:21
cite
6:11
cited
15:15
civilian
24:20
claim
43:13, 45:11
claims
53:4, 53:6
clear
6:11, 6:16,
14:14, 15:2,
45:8, 47:17
clearly
12:13, 12:17,
24:6, 30:17
client
9:4, 25:8,
53:13
closer
23:22, 28:9,
34:9, 36:16
co-op
8:11, 8:13,

9:10
code
15:15, 45:9
colleague
17:5, 18:13,
41:18
collected
34:1
come
32:1, 33:5,
36:20, 43:3,
43:4, 43:6
coming
48:20
comment
12:10, 15:12,
15:19, 15:20,
16:11, 35:14,
40:16
comments
17:4
commercial
54:15
communicate
40:19
communications
17:14
company
54:17
compensate
18:5
competitor
9:20, 16:17
competitors
18:14
complaint
45:15, 45:19,
46:2
completely
14:22, 47:12
complex
28:3
comply
4:11, 33:10,
51:12
concern
17:8, 17:9
concerned
8:2

concerns
21:3
concluded
7:13, 55:18
concluding
6:6, 11:7
concrete
35:12, 36:3
condition
32:2
conduct
30:20, 31:9,
43:3
confirmation
4:16, 4:22,
5:1, 5:9, 25:14,
48:21, 49:20,
50:2, 50:4, 50:9
confirmed
10:4
consideration
18:12
consistent
51:5, 52:22
constantly
28:8
contemplated
5:6
contemplates
17:17
contemplating
25:18
contend
9:9
contest
53:8
context
22:1, 22:4,
22:17, 23:19,
26:20
continue
32:18
continued
7:4, 24:12,
30:22, 47:5
contours
48:1
contract
10:13, 21:6,

Transcript of Oral Arguments

61

21:8, 28:11,
28:15, 30:7,
30:12, 39:4,
39:9, 39:16
**contracted**
13:4
**contractual**
31:8
**contrary**
5:8, 50:6
**contrast**
10:22
**controversy**
25:20
**convince**
20:7
**cooperation**
4:1, 4:13,
4:21, 5:5, 6:18,
6:22, 7:8, 13:6,
15:6, 26:11,
47:18, 47:21,
48:9, 48:13,
49:3, 49:6,
49:11, 49:13,
50:1, 50:6,
50:19, 51:8,
51:14, 51:22
**coordinate**
24:22
**coordinated**
3:21, 5:5,
14:20, 14:21,
14:22, 15:2,
22:14, 23:14,
24:20, 28:19,
29:6, 29:10,
29:14, 30:16,
31:20, 32:9,
32:11, 34:5,
34:8, 34:18,
40:8, 40:10,
41:1, 41:17,
41:20, 50:14,
51:15, 51:21,
52:7, 55:4
**coordination**
4:7, 6:6, 7:5,

7:17, 7:19,
21:11, 21:20,
22:20, 23:3,
23:8, 27:12,
28:21, 29:18,
30:1, 33:16,
37:12, 37:18,
38:9, 39:4,
43:4, 51:9,
51:10
**corporate**
41:6
**correct**
11:22, 13:10,
13:12, 14:8,
15:13, 15:14,
27:4, 41:18,
46:16, 46:18,
46:19, 49:13,
49:14
**cost**
54:17
**could**
4:22, 6:15,
12:5, 15:11,
15:18, 16:5,
16:14, 20:11,
23:11, 35:16,
35:18, 35:20,
36:20, 37:16,
38:2, 38:8,
39:5, 43:3,
43:4, 43:6,
47:4, 48:14
**couldn't**
10:7, 25:10
**counsel**
56:8
**couple**
47:10
**course**
30:19, 31:9,
36:7, 37:2,
39:17, 43:2,
45:4, 47:14
**court**
1:1, 3:15,
3:16, 4:10,

6:10, 6:13,
10:15, 10:17,
10:22, 11:6,
11:9, 11:22,
12:3, 12:18,
13:15, 14:3,
16:8, 18:8,
19:10, 19:21,
20:7, 20:13,
22:12, 25:11,
25:12, 25:14,
26:18, 27:8,
27:16, 28:11,
28:16, 30:10,
31:5, 31:10,
36:2, 36:7,
36:13, 36:14,
37:1, 38:1,
38:2, 38:7,
38:12, 38:22,
39:11, 42:18,
42:21, 43:6,
43:8, 43:9,
43:11, 44:1,
44:4, 44:12,
44:19, 44:21,
45:3, 45:5,
45:12, 45:16,
45:17, 45:18,
45:20, 46:13,
46:14, 46:22,
48:22, 49:2,
49:12, 49:16,
51:17, 53:10,
53:17, 54:1,
55:14
**court's**
11:20, 13:9,
42:19, 43:21,
45:1
**courts**
7:2, 26:17,
36:20
**create**
24:2
**created**
51:12
**creates**
34:15

**critical**
4:8, 12:7
**critically**
52:17
**crosstalk**
15:8, 29:4,
29:18, 39:9,
42:8, 45:13,
46:9, 47:1, 47:3
**current**
46:6, 46:7,
48:4

---
**D**
---

**damage**
53:13, 53:21
**date**
6:1, 15:12,
32:10, 32:14
**day**
12:7, 16:1,
46:18
**days**
16:9, 46:14
**dc**
2:6
**deadline**
12:2, 16:10,
35:2, 35:14,
36:16, 48:20
**deal**
26:14, 29:1
**dealing**
11:3, 11:4,
39:17
**deals**
44:4
**debtor**
11:8
**december**
7:22, 16:9,
46:3, 46:5
**decision**
19:16, 19:20,
20:10, 20:14,
20:22, 40:14,
46:15, 55:12
**decisions**
44:10

Transcript of Oral Arguments

62

| | | | |
|---|---|---|---|
| **declaration** 35:15 | 44:9, 44:15, 45:7, 45:10 | 32:20, 39:19 **drain's** 32:16 | **endeavored** 47:16, 47:22 |
| **defensible** 43:17 | **dismissed** 44:12 | **draw** 38:11 | **ended** 25:6 |
| **delaware** 46:13 | **dispute** 6:13, 6:15, | **drawn** 38:12 | **endorsing** 48:7 |
| **delay** 16:2 | 39:13, 39:22, 40:1, 40:2 | **due** 5:15, 5:16, | **enforce** 8:18, 49:1 |
| **demanding** 14:18 | **disputes** 41:22, 42:1 | 5:22 **during** | **enormous** 53:3, 53:12 |
| **deny** 10:5, 19:13, | **disputing** 39:12, 39:14 | 12:9 | **enter** 4:21, 12:3 |
| 35:4, 36:12, 37:3 | **district** 10:15, 10:17, | E **e-mail** | **entered** 5:7, 13:4, 22:5, 32:12 |
| **depended** 21:10 | 11:20, 12:3, 13:9, 19:21, | 20:17 **earlier** | **entire** 10:11 |
| **dependent** 29:1 | 20:12, 27:15, 31:5, 31:10, | 21:2, 27:3 **earth** | **entirely** 7:18 |
| **depends** 23:6 | 36:1, 36:7, 36:13, 37:1, | 17:16, 23:5, 23:22, 24:1, | **equities** 37:7 |
| **destroy** 34:3 | 38:21, 42:19, 43:21, 44:1, | 28:10, 34:9, 34:12 | **equivalent** 51:19 |
| **determination** 45:1 | 44:4, 44:19, 46:13, 49:12, | **easily** 35:16 | **error** 36:9 |
| **develop** 17:18 | 49:16, 51:17 **documents** | **effect** 13:17, 14:1, | **especially** 22:17, 39:16, |
| **developed** 22:6 | 21:18 **doing** | 43:14, 44:21, 45:11, 52:1 | 55:9 **esquire** |
| **different** 23:13, 23:21, | 52:20 **dollars** | **effective** 6:1, 10:4 | 2:3, 2:10, 2:18 **esther** |
| 24:15, 25:1, 25:7, 26:15, | 7:15, 53:5, 54:20 | **either** 12:19 | 1:22, 56:2, 56:20 |
| 26:20, 28:6, 28:13, 34:10, | **done** 5:1, 9:9, | **else** 35:21 | **estimate** 54:18 |
| 34:16 **digital** | 11:10, 30:8, 35:18, 37:12, | **elsewhere** 6:17, 53:22 | **estimated** 35:20 |
| 56:4 **directed** | 39:22, 53:13 **doubt** | **emanuel** 2:19 | **even** 15:21, 41:15, |
| 18:22 **disagree** | 32:20, 32:21 **down** | **embedded** 8:10, 31:7 | 41:16 **evening** |
| 28:5 **discretion** | 20:17 **dozens** | **emphasize** 28:3 | 46:14 **event** |
| 7:18, 11:21 **discretionary** | 11:1 **drafting** | **employed** 56:8 | 20:13 **eventually** |
| 35:17 **discussion** | 30:3 **drafts** | **end** 32:5, 42:14 | 34:14 **ever** |
| 31:21 **dismiss** | 24:14, 30:22 **drain** | **endeavor** 48:6 | 9:6 |
| 43:12, 44:7, | 12:16, 31:18, | | |

Transcript of Oral Arguments

63

| | | | |
|---|---|---|---|
| **every** | **expedited** | **fair** | **filed** |
| 16:1 | 36:2, 36:13, | 29:8, 30:6 | 5:13, 10:19, |
| **everyone** | 36:14 | **fairness** | 16:8, 20:1, |
| 3:3 | **expeditiously** | 10:16 | 40:16, 45:15, |
| **everything** | 3:17, 55:12 | **fallacy** | 45:19, 46:2, |
| 11:16, 25:16 | **experience** | 50:13 | 53:20 |
| **evidence** | 35:16 | **familiar** | **filing** |
| 31:14, 36:6, | **expired** | 41:10 | 11:7, 20:5, |
| 36:11, 43:3 | 42:4 | **far** | 53:14, 53:18 |
| **evidentiary** | **explained** | 23:22, 33:21, | **filings** |
| 31:5, 31:10, | 6:4, 6:5 | 34:9 | 40:6, 41:8, |
| 31:13, 36:8, | **explaining** | **fault** | 54:16 |
| 43:2 | 41:15 | 30:2 | **fill** |
| **exact** | **expressly** | **favor** | 22:7 |
| 24:21, 52:10 | 51:2 | 29:22 | **financial** |
| **exactly** | **extend** | **fcc** | 56:10 |
| 11:3, 13:3, | 15:12, 35:14 | 5:13, 6:2, 7:3, | **financing** |
| 14:8, 14:21, | **extensive** | 10:5, 11:12, | 36:17 |
| 15:3, 49:7 | 31:21 | 12:2, 13:2, | **find** |
| **example** | **extensively** | 13:3, 14:16, | 4:10, 7:6, 7:7, |
| 37:21 | 39:20 | 14:19, 15:18, | 21:21 |
| **exchange** | **extracted** | 16:2, 18:6, | **finds** |
| 30:22 | 53:9 | 18:12, 18:15, | 3:19 |
| **exchanged** | **extreme** | 18:16, 19:14, | **finite** |
| 24:13 | 7:10 | 19:15, 19:16, | 17:21 |
| **exclusivity** | **extremely** | 20:2, 20:9, | **first** |
| 25:8, 26:8 | 20:20 | 20:10, 20:20, | 33:20, 51:2 |
| **execute** | **F** | 20:22, 23:18, | **fixed** |
| 49:22 | **face** | 24:5, 25:22, | 23:6 |
| **executed** | 35:2 | 28:12, 33:14, | **flippantly** |
| 4:3, 50:5, | **fact** | 35:6, 35:9, | 16:4, 16:13 |
| 50:20, 52:6, | 4:19, 12:3, | 35:17, 37:11, | **floor** |
| 52:12 | 34:19, 35:13, | 37:19, 40:6, | 2:13 |
| **exhibit** | 37:12, 44:10, | 40:16, 51:19 | **focus** |
| 6:17 | 53:3 | **fcc's** | 50:22 |
| **exigent** | **factor** | 15:19 | **follow-up** |
| 3:18 | 37:10 | **february** | 24:10 |
| **exist** | **factors** | 46:12 | **footnote** |
| 7:6, 27:13 | 35:1 | **federal** | 49:21 |
| **existed** | **factual** | 15:15, 23:7, | **force** |
| 53:1 | 15:10, 22:17, | 30:15 | 23:13 |
| **existing** | 23:19, 28:4, | **file** | **forceful** |
| 4:11, 6:17, | 31:7, 36:5 | 12:12, 13:1, | 42:17 |
| 23:3, 26:10, | **failed** | 14:6, 19:14, | **foregoing** |
| 34:6 | 48:20 | 19:20, 20:21, | 56:4 |
| **exists** | **failing** | 35:3, 35:4, | **forfeit** |
| 8:13 | 19:1 | 35:11, 36:12, | 19:14, 20:9, |
| **expedite** | | 36:20, 37:7 | 35:3, 35:10, |
| 12:5 | | | |

Transcript of Oral Arguments

64

37:4, 37:5
**forgot**
8:22
**forward**
10:7
**foundation**
13:7
**four**
11:2
**free**
47:14, 48:17
**freeman**
1:14, 3:2,
3:11, 14:12,
16:19, 16:22,
19:3, 19:6,
19:8, 42:4,
42:6, 42:10,
42:13, 42:15,
43:20, 44:8,
45:21, 46:10,
46:21, 47:2,
54:4, 54:7,
54:12, 55:5,
55:7, 55:17
**freshfields**
2:11
**friday**
12:4, 12:11,
19:21, 46:14,
53:20
**friend's**
26:2
**frustrating**
49:15
**full**
40:10
**functionally**
25:21
**fundamental**
49:17
**further**
6:6, 21:10,
21:20, 22:19,
28:21, 30:1,
42:9, 54:2,
54:8, 54:10,
54:11

**future**
7:16, 19:16

**G**

**gain**
51:1
**gave**
53:7
**geo**
53:1
**geographic**
4:12, 51:6
**geographical**
8:9
**geometry**
28:9
**getting**
10:3, 10:5
**give**
22:4, 37:21,
52:1
**given**
25:13
**global**
1:8, 2:17
**go**
3:12, 8:1, 8:7,
9:14, 10:4,
10:7, 22:7,
42:6, 49:19
**goes**
21:1
**going**
11:12, 20:6,
20:18, 24:21,
25:15, 36:4,
36:18, 53:15,
55:2
**gone**
5:1, 7:10
**good**
3:2
**gotta**
33:9
**governed**
4:13
**government-alloc-
ated**
17:21

**granted**
3:12, 6:2
**grants**
35:9
**granular**
33:7
**grateful**
55:13
**great**
3:13
**greenwich**
2:13
**ground**
24:3, 43:7
**grounds**
42:20
**gso**
23:4, 23:21
**guess**
40:15, 44:14,
46:13

**H**

**half**
7:15
**hand**
37:3
**handle**
18:16
**hands**
25:14
**happen**
20:6
**happened**
7:19, 7:21,
23:18, 24:6,
24:7, 41:3
**happy**
47:9
**hard**
11:15
**harm**
16:3, 17:9,
37:2, 43:5,
44:3, 44:6,
44:9, 45:9, 54:2
**hear**
16:20, 19:7

**heard**
35:12
**hearing**
17:6, 26:4,
26:16, 27:9,
30:11, 31:6,
31:10, 31:13,
36:8, 43:2, 50:4
**hearings**
11:2
**heavily**
6:11, 8:20
**help**
12:16
**helpful**
55:8
**here**
3:3, 9:19,
12:1, 13:21,
22:1, 32:2,
32:14, 37:11,
52:11, 55:10
**hereby**
56:2
**hey**
33:8
**hinge**
20:5
**hit**
25:7
**hold**
20:18, 31:5,
36:8
**holder**
10:1, 10:11
**hon**
3:2, 3:11,
4:15, 5:14,
5:18, 5:20, 6:3,
6:4, 7:21, 8:21,
9:12, 9:14,
10:8, 13:8,
13:18, 14:4,
14:9, 15:9,
16:19, 16:22,
19:3, 19:8,
19:17, 21:2,
21:15, 21:16,

Transcript of Oral Arguments

65

21:17, 22:21,
26:21, 26:22,
27:10, 28:17,
29:5, 29:13,
29:16, 29:19,
31:11, 31:15,
32:3, 33:4,
38:1, 38:17,
39:7, 39:10,
40:13, 41:12,
42:2, 42:4,
42:5, 42:6,
42:8, 42:10,
42:11, 42:15,
43:20, 44:17,
45:14, 45:18,
45:21, 45:22,
46:2, 46:9,
46:11, 46:20,
46:21, 47:2,
49:9, 54:4,
54:7, 54:9,
54:10, 54:11,
54:12, 55:5,
55:6, 55:7,
55:17
**honor**
3:8, 3:14,
4:19, 6:8, 8:3,
9:2, 9:13,
13:13, 14:8,
15:7, 15:15,
16:1, 16:21,
20:14, 47:8,
49:14
**honors**
13:22, 19:12,
54:6
**horan**
40:13, 47:12
**horan's**
48:10
**house**
34:3, 34:21
**however**
28:19
**huge**
10:12, 29:1,

53:21
**hundred**
5:21
**hundreds**
51:12

**I**

**idea**
20:5, 24:4,
24:17, 28:10,
36:1
**illogical**
7:9
**immense**
37:10
**impact**
36:3, 36:15
**impasse**
8:17, 25:7
**implement**
9:22
**import**
22:16, 22:19,
22:22
**important**
9:18, 26:1,
35:6, 50:21,
52:17
**importantly**
10:14, 48:11
**imposed**
12:2, 14:2
**imposes**
6:21, 21:6
**improper**
43:1
**inappropriate**
12:17
**incentive**
10:12
**inclined**
42:19, 43:8
**including**
19:15, 52:21,
53:2
**incorporate**
48:15
**incorporated**
4:4, 15:3,

49:6, 50:18,
52:8, 52:9
**incorporating**
48:2
**incorporation**
48:7
**indicate**
13:2
**individually**
51:4
**information**
35:6, 36:18,
43:5
**infrastructure**
34:6
**injunction**
12:22, 14:2,
36:10, 36:11,
43:1, 43:18,
45:6
**injured**
21:14
**inmarsat**
1:8, 2:17,
3:21, 4:17, 5:3,
5:4, 6:20, 8:2,
8:5, 8:8, 9:19,
10:3, 12:22,
14:14, 16:4,
17:10, 18:14,
18:18, 18:22,
19:11, 40:20,
49:1, 49:22,
50:1, 50:3,
50:5, 50:10,
50:19, 51:7,
51:22, 52:16
**inmarsat's**
16:13, 48:12
**inmarsat-ast**
52:1
**insofar**
8:2
**instead**
17:15
**intent**
28:21, 31:8
**interest**
35:13, 37:9,

41:22, 56:10
**interfere**
11:11, 28:1,
34:10
**interfered**
37:14
**interference**
24:2, 28:7,
38:4
**interim**
44:3
**interpreted**
6:19
**intervene**
41:14
**intimately**
11:4, 41:10
**involvement**
41:4
**involving**
40:9
**iridium**
35:22
**irreparable**
16:3, 17:8,
37:2, 43:5,
44:3, 44:6,
44:8, 45:8
**ised**
51:19
**issue**
11:2, 11:3,
14:11, 14:13,
20:7, 21:9,
25:8, 26:5,
26:7, 26:15,
26:20, 27:7,
27:11, 27:14,
27:15, 31:4,
32:17, 33:15,
50:10
**issues**
24:2, 28:7,
34:16, 43:4
**itself**
3:19, 26:18

**J**

**january**
16:11, 46:12

Transcript of Oral Arguments

66

**job**
1:20
**john**
2:18, 19:11
**join**
17:4
**joint**
8:17
**jointly**
17:18
**judge**
11:16, 12:16,
14:12, 19:6,
20:4, 21:5,
23:20, 25:5,
29:7, 31:18,
32:8, 32:16,
32:20, 33:2,
33:12, 33:18,
38:6, 39:3,
39:16, 39:19,
40:4, 40:13,
41:9, 42:7,
42:10, 42:13,
44:8, 45:2,
46:10, 46:11,
47:12, 48:10,
54:7, 54:8
**judges**
1:13
**june**
4:6

**K**

**kilometers**
24:1, 34:12,
34:14
**knew**
11:16, 40:10
**know**
9:3, 13:14,
15:21, 24:10,
27:5, 28:3,
30:2, 30:11,
31:6, 38:10,
42:17, 44:13
**knowledge**
56:7

**knows**
16:8

**L**

**l-band**
8:15, 10:1,
10:11, 17:17,
18:2, 40:19,
41:1
**labs**
40:18, 40:19,
41:5
**lack**
26:13
**language**
49:4
**largest**
17:22
**last**
4:6, 4:14, 9:6,
20:6, 24:9,
49:21
**later**
25:16, 30:4,
37:17, 37:18,
38:3, 38:8,
38:12, 38:15,
44:2, 46:14,
53:11
**launch**
17:16, 55:2
**launched**
54:19
**law**
11:21
**lawsuit**
53:14
**lead**
20:14
**least**
30:13, 36:10,
43:9, 45:12
**leave**
36:12
**leblanc**
2:3, 3:6, 3:8,
3:13, 4:18,
5:16, 5:19,

5:21, 6:8, 8:3,
9:2, 9:13, 9:15,
10:9, 13:12,
13:19, 14:7,
14:10, 15:14,
16:20, 16:21,
17:5, 47:4,
47:8, 49:14,
54:5, 54:6,
55:16
**led**
8:17
**legado's**
51:8
**let's**
18:9
**letter**
40:16, 40:21
**letting**
36:1
**license**
10:1, 10:11,
34:3, 35:9
**licensed**
10:10
**licensing**
52:2
**lift**
18:21
**ligado**
1:4, 2:2, 3:4,
3:9, 3:18, 3:20,
6:22, 17:18,
20:3, 40:22,
49:22, 51:3
**ligado's**
17:21, 26:2,
34:11
**light**
3:18, 22:17
**likely**
36:6
**limitation**
8:9, 8:13, 8:15
**limitations**
4:12, 9:10,
44:16, 51:7,
53:1

**limited**
1:8
**limits**
6:17, 6:21
**lines**
37:20, 38:11,
38:12
**liquidate**
10:6, 36:5
**literally**
52:10
**litigating**
7:12
**litigation**
11:8
**little**
20:19
**llc**
1:4, 1:5, 2:2,
2:9, 3:5
**llp**
2:4, 2:19
**long**
7:13, 31:18
**look**
25:15, 26:10,
30:5, 31:8,
42:21
**looks**
19:20, 26:5,
26:22
**lopsided**
19:13, 37:7
**lose**
20:21
**lost**
18:6, 38:5
**lots**
38:3
**low**
17:16
**lying**
14:16, 14:19

**M**

**made**
17:4, 44:2,
52:12, 54:21

Transcript of Oral Arguments

**madlyn**
2:10
**make**
9:19, 14:16,
15:2, 17:7,
18:17, 24:9,
25:2, 25:15,
27:21, 30:12,
30:14, 33:17,
33:18, 36:4,
37:13, 42:14
**making**
41:19
**many**
16:16, 50:17
**march**
5:17, 5:22,
56:21
**marjorie**
1:15
**marketplace**
16:17, 18:4
**material**
55:1
**materially**
36:15
**mean**
21:12, 23:17,
24:18, 27:15,
28:7, 31:3,
33:8, 34:2,
34:19, 34:20,
36:5, 38:15,
39:13, 39:15,
43:13, 44:2,
44:6
**means**
23:10, 27:7
**meant**
25:18, 28:15
**mediated**
4:5, 4:20, 5:2,
6:14, 6:21, 7:6,
8:18, 11:5,
11:14, 12:9,
13:5, 14:22,
15:5, 17:12,
22:11, 30:21,

31:16, 31:17,
48:8, 49:1,
49:4, 49:20,
50:15, 50:16,
52:8
**mediation**
7:11, 7:14,
22:5, 33:5, 48:2
**mediator**
12:17
**merits**
21:9, 35:2,
36:9, 42:22
**mess**
18:18
**messing**
18:15
**metes**
7:17, 37:21
**might**
24:10, 44:7,
46:18
**milbank**
2:4
**miles**
23:5
**military**
24:22
**million**
5:10, 5:15,
5:16, 5:18,
5:21, 5:22,
17:10, 18:9,
19:2, 32:4,
33:19, 54:20,
54:22
**mind**
37:8
**mindful**
14:12
**minimum**
26:10, 45:3,
45:5
**minute**
17:3, 20:7,
32:1, 54:13
**minutes**
3:9, 3:10, 17:1

**misapplies**
11:20
**mislead**
23:18
**misread**
51:17
**missing**
9:17
**misunderstanding**
44:7, 49:18
**moment**
10:18
**money**
18:5, 34:1,
34:17, 34:20
**months**
16:16, 24:12,
35:21
**more**
6:16, 16:16,
33:7, 33:21,
34:14, 49:15
**morning**
3:2, 17:6,
55:10
**most**
48:11
**motions**
8:17, 46:7
**moving**
28:8
**much**
28:9, 33:8
**must**
23:18, 51:1
**mutually**
47:14, 48:18

---
**N**
---

**namely**
42:22
**naturally**
18:16
**nature**
11:5
**necessary**
4:7, 13:10,
13:11, 27:21,

48:12, 48:19
**need**
6:18, 48:22
**negotiate**
24:12, 32:19,
48:17
**negotiated**
12:8, 12:15,
38:19, 39:20,
52:11, 52:19
**negotiation**
7:4, 7:16
**negotiations**
8:6, 47:6
**neither**
56:8
**network**
17:14
**networks**
1:4, 2:2, 3:5
**never**
31:1, 31:13,
32:12, 43:14,
48:19
**new**
2:5, 2:14,
11:9, 22:13,
22:20, 23:9,
25:10, 29:17,
36:17, 43:10,
43:22, 44:5,
44:11, 45:6,
45:15, 45:16,
45:18, 53:15
**next**
5:14, 51:16
**ngo**
30:22
**ngo-specific**
25:19, 32:19,
34:7
**ngso**
3:22, 21:11,
22:13, 23:8,
23:20, 24:14,
24:16, 30:15,
34:5, 39:20,
41:1, 43:4,

Transcript of Oral Arguments

68

50:15, 51:20,
52:2, 52:7,
52:21
**ngso-specific**
24:13
**nineteen**
54:19
**nobody**
25:17, 26:6
**nobody's**
55:1
**non**
18:10
**non-geostationary**
27:22
**non-refundable**
17:11
**north**
8:16, 9:8,
18:1, 25:9,
26:4, 26:9,
27:3, 27:13,
27:20, 40:2
**notes**
40:13
**nothing**
12:5, 54:10,
54:11
**notice**
41:9, 55:9
**noticed**
12:11, 53:17
**notwithstanding**
53:3
**november**
7:22, 40:5,
40:12, 40:15,
40:21, 46:4
**numbered**
53:4
**numbers**
3:4
**numerous**
30:22, 32:19
**nw**
2:5
**ny**
2:14

**O**

**object**
11:12, 21:3,
37:5, 53:16
**objected**
35:21
**objection**
4:17, 5:3,
5:12, 12:13,
13:2, 14:5,
21:4, 21:12,
52:15, 53:20
**obligated**
27:20
**obligation**
21:10, 23:6,
26:12, 26:14,
27:19, 29:11,
39:5, 53:2
**obligations**
21:7
**obvious**
22:16, 22:18,
22:22, 39:15
**obviously**
11:7, 42:16
**occur**
33:17
**october**
5:10, 32:5,
38:18
**oh**
29:20, 32:1,
42:5, 46:1,
53:11
**okay**
3:11, 14:9,
19:7, 40:8,
46:21, 54:4,
54:12, 55:5
**old**
47:19
**once**
44:20
**one**
9:6, 9:18,
10:19, 14:11,

14:13, 14:15,
15:9, 17:8,
26:12, 34:11,
39:12, 39:14,
39:20, 42:14,
42:21, 49:15,
54:13, 54:14
**ones**
8:19
**only**
9:22, 10:10,
16:9, 21:20,
35:5, 49:19
**opened**
16:11
**opening**
26:2
**operate**
8:10, 8:15,
16:18, 52:3,
52:22
**operated**
9:4
**operations**
9:7, 41:2,
51:3, 51:20
**opinion**
49:16
**opportunity**
18:2, 18:6,
54:1
**opposing**
15:11
**opposition**
12:12, 20:2,
20:12, 26:17
**oral**
1:12, 3:3,
3:17, 10:19,
56:22
**orbit**
17:16, 51:5
**order**
11:20, 13:9,
33:17, 44:19,
44:21, 49:2
**ordered**
18:8, 43:11,

44:14
**ordinary**
30:17
**other**
4:12, 6:9,
10:1, 15:22,
17:9, 20:11,
26:13, 35:1,
35:13, 37:3,
40:1, 40:7,
40:8, 42:22,
43:16, 47:10,
48:3, 48:16,
48:18, 50:13,
51:7, 51:8,
53:18
**otherwise**
18:3, 52:17,
56:10
**ought**
29:2, 37:22,
38:10, 38:19
**ourselves**
51:11
**out**
7:14, 19:21,
22:7, 25:16,
25:21, 25:22,
26:20, 27:21,
30:9, 30:18,
32:22, 38:14,
39:19, 40:5
**outcome**
36:6, 56:11
**outside**
8:10, 8:16,
9:8, 25:9, 26:9,
27:3, 27:13,
40:1
**over**
6:14, 7:16,
17:10, 18:10
**owed**
33:21, 33:22
**own**
15:1, 18:17

**P**

**page**
40:14

Transcript of Oral Arguments

**pages**
1:21, 51:13
**paid**
5:9, 17:10, 18:10
**papers**
20:12
**parent**
40:16, 41:6
**part**
46:7
**particular**
17:7
**parties**
4:6, 4:8, 4:9, 4:10, 4:14, 21:7, 22:2, 22:5, 23:11, 24:4, 24:12, 25:3, 25:7, 27:19, 28:4, 28:10, 30:10, 30:21, 32:18, 39:19, 40:3, 47:11, 47:14, 49:5, 51:9, 52:11, 53:18, 56:9
**party**
7:12, 23:16, 25:10, 40:17
**party's**
31:8
**passing**
10:18
**past**
33:22
**pay**
7:15
**paying**
53:2
**payment**
32:4, 53:3
**pending**
29:20, 53:4
**performance**
18:8
**perhaps**
17:3

**period**
12:10, 15:12, 15:19, 15:20, 16:11, 16:12
**person**
35:15
**perspective**
48:10, 48:11, 48:12
**petition**
19:13, 20:1, 35:3, 36:12
**phrase**
50:15
**plainly**
10:16
**plan**
4:16, 4:17, 4:22, 5:1, 6:1, 10:3, 10:7, 13:6, 21:3, 21:5, 21:13, 25:13, 39:1, 50:2
**planet**
40:18, 41:5
**play**
12:10
**pleadings**
6:9
**please**
3:15, 19:10, 20:18, 48:22
**plenary**
36:2
**point**
9:18, 24:9, 25:20, 33:20, 40:4, 41:20, 44:2, 54:15
**points**
17:7, 47:10
**position**
23:6, 40:11
**possibly**
28:14
**post**
19:2

**post-august**
27:10
**post-bankruptcy**
22:11
**post-date**
47:6
**post-petition**
21:6, 39:3
**potentially**
36:14
**practically**
25:3
**pre-existing**
34:11
**precisely**
18:7
**preclusive**
43:14, 45:11
**prejudice**
43:12, 44:9, 44:12, 44:15, 45:8
**preliminary**
19:18, 33:20
**premised**
29:11
**prepared**
56:3
**present**
27:6
**presented**
43:16
**pretty**
33:8
**prevail**
35:7, 43:15
**primary**
53:9
**primoff**
2:10, 17:1, 17:2, 19:4, 54:13, 54:14, 55:13
**prior**
4:22, 8:5, 50:1, 50:9
**private**
24:19

**problem**
36:19, 41:5
**proceeded**
4:16
**proceeding**
43:12, 43:15, 56:5
**proceedings**
37:6, 40:7, 40:9, 56:6
**process**
16:2, 16:7, 16:15, 18:15, 18:17, 35:20
**program**
9:21
**prong**
33:7
**properly**
30:3, 34:5, 34:18
**proposed**
3:22, 50:15, 51:20, 52:2
**protect**
20:19, 54:2
**provided**
28:19
**provision**
21:13, 51:16
**provisions**
15:16, 22:8, 38:3, 50:18
**proviso**
21:19
**public**
37:9, 54:16, 54:17
**pursuant**
4:1, 32:11, 50:14, 52:7
**put**
6:9, 8:22, 31:14, 34:1, 35:13, 35:19, 35:22, 36:5, 38:22, 39:10

**Q**

**question**
11:15, 15:10,

19:18, 24:11,
27:6, 33:19,
44:8
**questioning**
44:22
**questions**
15:7, 28:4,
31:7, 32:7,
42:9, 42:16
**quick**
15:9
**quinn**
2:19
**quite**
3:20, 5:8,
6:11, 8:5, 50:6
**quiz**
10:21
**quote**
28:18
**quotes**
26:3, 26:7,
26:19

**R**

**rails**
8:2, 8:4, 8:7
**raise**
28:6, 37:16,
37:17, 37:18,
38:2, 38:15
**raised**
50:10
**rather**
24:1, 38:20
**reach**
48:13
**reached**
7:11, 12:15
**read**
21:7, 23:17,
26:18
**reality**
11:19, 16:1
**realized**
8:22, 9:16
**really**
13:10, 13:11,

25:20, 26:1,
28:5, 35:12,
43:16, 44:18
**reason**
15:22, 25:5
**reasonable**
23:10, 23:17
**reasons**
18:20
**rebuttal**
3:7, 16:20,
17:3, 41:19,
47:5
**recite**
54:17
**recognize**
51:19
**recognized**
47:12
**record**
26:17, 35:22,
39:11, 56:6
**recording**
55:18, 56:4
**rectify**
53:22
**refer**
53:19
**reference**
54:21
**referred**
8:19
**referring**
33:13, 33:16,
38:7
**refundable**
18:11
**regarding**
41:1
**regardless**
43:15, 51:5
**regretted**
30:4
**regulations**
15:16
**reintroduce**
12:22
**reintroducing**
14:1

**related**
31:4, 56:8
**relating**
27:11, 40:17
**relationships**
4:14
**relevant**
21:17, 21:18,
41:21, 43:5
**reliance**
5:10
**relief**
36:21
**remain**
51:6
**remaining**
42:2
**remember**
21:5, 22:1,
23:19, 31:3,
32:17
**rendell**
1:15, 6:4,
8:21, 9:12,
9:14, 10:8,
13:8, 13:18,
14:4, 14:9,
21:15, 21:17,
22:21, 23:20,
25:5, 26:21,
28:17, 29:5,
29:7, 29:13,
29:16, 29:19,
31:11, 31:15,
32:8, 33:4,
33:12, 38:1,
38:6, 42:2,
42:5, 42:7,
42:8, 44:17,
45:2, 46:9,
46:20, 49:9,
54:8, 54:10
**rendered**
46:15
**renegotiate**
27:1
**rent**
34:1, 34:20

**repeatedly**
14:17
**reply**
6:12, 26:2,
26:3
**represent**
22:13, 23:11,
24:5, 32:13
**representation**
23:7, 29:12,
30:15
**request**
13:1, 13:20,
51:18
**require**
12:22, 45:10
**required**
4:20, 5:2, 6:7,
19:1, 37:13,
39:4, 50:9
**requirements**
15:4, 51:13
**requires**
45:7
**reserve**
3:9, 17:3
**reserving**
3:6
**resolution**
7:11
**resolve**
25:12
**resource**
17:21
**respect**
6:13, 15:16,
33:2, 33:7,
43:10, 45:6,
45:13, 50:10
**respectfully**
18:21, 33:11
**response**
40:8, 46:8
**rest**
14:19
**restart**
16:6, 16:14
**restate**
47:20

Transcript of Oral Arguments

71

| | | | |
|---|---|---|---|
| **restated** 22:15, 23:15 **restrict** 9:7 **resubmit** 16:6 **return** 52:20 **review** 36:2 **right** 3:12, 12:19, 12:20, 13:18, 16:22, 19:15, 24:8, 27:8, 33:12, 35:5, 42:5, 46:6, 46:20, 53:8 **rights** 17:20, 20:5, 20:9, 20:20, 20:22, 35:3, 35:7, 37:4, 52:18, 52:20 **rise** 17:7 **roughly** 46:18, 46:19 **ruled** 27:16, 46:11 **rules** 19:15 **run** 37:1 **running** 16:2 **rushed** 12:11 **rushing** 53:16 | 48:22, 49:12, 50:7, 50:22, 56:5 **same** 13:17, 14:21 **satellite** 17:14, 23:4, 34:12, 54:20, 54:22 **satellites** 17:15, 17:16, 21:11, 23:4, 23:20, 23:21, 24:3, 24:16, 27:22, 34:9, 34:13, 37:15, 40:19, 40:20, 54:18, 54:22 **say** 5:4, 24:18, 29:8, 29:20, 29:22, 30:6, 32:1, 32:9, 33:14, 36:21, 37:16, 38:8, 38:12, 38:13, 50:5 **saying** 7:2, 7:3, 26:9, 33:8, 38:18, 40:7, 45:3, 49:10 **says** 15:11, 22:9, 22:12, 29:10, 30:14, 31:19, 32:10, 32:14, 33:6, 33:9, 35:16, 49:21, 51:16, 51:18, 52:16 **scarce** 17:20 **science** 1:5, 2:9 **second** 21:9, 22:18 **section** 22:1, 22:3, | 22:10, 22:12 **sections** 49:5 **seek** 20:18, 36:21 **seem** 14:16 **seems** 49:9 **sense** 25:2 **sentence** 49:21 **separate** 4:2, 11:2, 27:14, 31:4, 36:8 **september** 4:3, 4:15, 38:18, 40:5, 50:4, 50:8, 52:6 **setting** 3:17 **seven-week** 16:12 **shall** 31:22, 49:22, 51:18 **sheet** 21:22, 22:3, 22:6, 22:9, 24:11, 25:16, 29:9, 30:9, 30:20, 31:16, 32:15, 33:1, 47:7 **sheets** 22:7 **shifting** 28:8 **shoes** 10:10 **short** 13:16, 41:9, 55:9 **should** 11:22, 14:15, 18:18 | **shows** 36:6 **sic** 41:15 **side** 15:11, 20:11, 35:13, 43:16, 50:14 **side's** 26:13 **sides** 48:21 **signature-p1kal** 56:18 **signed** 4:6, 24:11, 30:20 **signing** 8:14 **simple** 11:18, 12:3 **simply** 3:20, 7:5, 12:5, 14:18, 16:5, 18:14 **skills** 56:7 **skip** 42:12 **smartphone** 17:14 **some** 7:4, 7:16, 8:5, 8:8, 20:1, 28:12, 36:16, 41:4, 41:14, 41:22, 44:1, 44:11 **somebody** 35:21 **somehow** 41:5 **something** 7:21, 8:22, 9:16, 14:6, 24:6, 30:3, 31:17, 38:4, 39:21, 45:10 |

**S**

**said**
6:16, 18:13,
20:13, 20:17,
24:19, 25:15,
29:5, 30:8,
30:11, 38:2,

Transcript of Oral Arguments

72

| | | | |
|---|---|---|---|
| **sometimes** 37:9 | **statement** 32:14, 33:17, 42:14 | **submitted** 40:6 | **systems** 28:1, 34:15, 37:13, 37:14, 40:9 |
| **sorry** 10:2, 15:5, 22:21, 47:1 | **statements** 52:12, 53:19 | **subsequent** 47:13 | **T** |
| **sort** 37:10 | **states** 1:1, 8:10 | **successful** 10:3 | **take** 26:5, 32:6, 32:17, 33:15, 35:20 |
| **sorts** 24:2 | **statute** 44:16 | **sudden** 31:22 | **taken** 11:11, 51:4, 51:11 |
| **sounds** 46:17 | **stay** 11:10, 11:20, 12:4, 12:19, 12:21, 13:11, 13:14, 13:22, 18:21, 20:8, 20:11, 20:15, 20:18, 36:10, 42:19, 43:7, 43:10, 43:21, 44:14, 45:4, 45:5, 45:13 | **sufficient** 7:19, 28:14, 48:12 | **taking** 26:19 |
| **space-based** 17:13 | | **suggest** 36:18 | **talk** 18:9 |
| **spacecrafts** 51:4 | | **suggested** 9:5, 9:6, 16:5, 16:13, 38:22 | **talking** 26:6, 27:8, 55:1 |
| **speak** 32:21 | | **suggesting** 14:15 | **taylor** 1:22, 56:2, 56:20 |
| **specific** 18:8, 22:8, 24:7, 24:15, 31:1 | | **suggestion** 8:8 | **technical** 4:12, 15:4, 27:21, 28:7, 37:12, 51:6, 51:13 |
| **specifically** 29:2 | **stays** 44:19 | **suite** 2:20 | |
| **spectrum** 3:21, 10:1, 10:11, 16:18, 17:19, 17:20, 17:22, 18:1, 18:3 | **step** 12:18 | **sullivan** 2:19 | **technologically** 24:15 |
| | **steps** 11:11 | **superior** 45:17 | **technology** 23:13, 24:7, 25:2, 26:15, 28:13 |
| | **still** 7:15, 20:1, 23:13, 38:18 | **support** 12:9, 13:3, 14:6, 18:12, 18:22, 21:10, 21:20, 22:13, 27:19, 31:20, 31:22, 32:13, 36:19, 51:1, 52:13, 52:14 | |
| **speculative** 36:4, 36:22 | | | **tell** 9:3, 23:1, 25:22, 28:12 |
| **st** 2:13, 4:3, 5:10, 5:17, 5:22, 40:21, 50:8, 52:6 | **stop** 14:19 | | **telling** 37:11, 53:10 |
| | **street** 2:13, 2:20 | | **tenant** 34:2 |
| **stand** 5:4, 10:10, 50:3 | **strongly** 42:22 | **supported** 5:8 | **tenants** 34:20 |
| **standalone** 25:6 | **structure** 52:10 | **sure** 27:21, 33:18, 37:13, 42:15 | **tennis** 37:20, 38:11 |
| **state** 11:8, 12:10, 44:12, 45:16, 45:18, 51:1, 51:3 | **stuff** 55:2 | **system** 3:22, 22:14, 23:8, 30:16, 34:5, 34:11, 34:18, 50:16, 51:11, 51:20, 52:3, 52:7, 52:22, 53:1 | **tense** 27:6 |
| | **subject** 7:16, 22:14, 51:21 | | |
| | **submission** 6:12 | | **term** 4:5, 13:16, |
| **stated** 29:2, 40:22 | **submissions** 55:8 | | |
| | **submit** 35:5 | | |

Transcript of Oral Arguments

73

21:22, 22:3,
22:6, 22:7,
22:9, 24:11,
25:15, 29:9,
30:8, 30:20,
31:16, 32:15,
33:1, 39:18,
47:6
**terms**
4:5, 4:11,
6:14, 10:13,
12:14, 15:3,
16:18, 22:20,
24:6, 24:13,
24:15, 24:22,
25:19, 26:11,
26:14, 27:2,
27:12, 27:21,
28:12, 30:18,
31:1, 32:8,
32:11, 32:19,
32:22, 34:7,
34:8, 38:9,
38:10, 38:19,
39:20, 47:15,
48:8, 48:15,
50:17, 51:21,
52:3
**terrestrial**
34:15
**text**
22:3
**th**
16:11, 46:12,
50:4
**thank**
3:13, 16:19,
16:21, 17:2,
17:5, 19:2,
19:3, 19:6,
19:8, 43:19,
46:20, 47:2,
47:3, 54:4,
54:6, 55:5,
55:6, 55:7,
55:14, 55:15,
55:16, 55:17
**thanking**
3:16

**theory**
43:13
**therefore**
11:21
**they'd**
19:1
**thing**
35:17, 40:1,
50:8
**things**
8:1, 8:4, 31:9,
42:21, 48:1,
49:16, 50:22,
52:21
**think**
7:10, 8:4,
8:14, 8:21,
9:15, 9:16,
9:18, 10:14,
10:15, 12:20,
16:4, 23:10,
23:16, 28:4,
30:6, 30:13,
33:12, 34:22,
41:19, 44:16,
47:12, 50:12,
50:21, 51:17
**thinks**
23:16
**third**
1:2, 40:17
**third-party**
41:21
**thomas**
1:16
**thought**
13:16, 21:14,
39:15
**three**
17:1
**threw**
25:14
**time**
3:7, 7:13, 8:5,
8:7, 11:6, 12:6,
14:12, 20:14,
20:19, 25:18,
29:9, 31:18,

42:3, 42:4
**timeline**
55:11
**times**
24:14, 47:20,
50:16
**today**
11:4, 12:6,
12:10, 13:1,
19:12, 19:14,
19:19, 20:21,
35:2, 35:4,
35:10, 35:11,
37:7, 53:19
**today's**
15:12
**told**
40:11
**took**
11:6
**totally**
23:21, 25:1,
25:7, 26:20,
28:6, 28:13,
34:15, 36:3,
36:22
**towers**
17:15
**trade**
2:12
**transaction**
17:17
**transcribed**
1:22
**transcriber**
56:1
**transcript**
26:16, 40:14,
56:3, 56:5
**tried**
47:21, 48:16
**true**
34:22, 38:7,
38:14, 56:5
**try**
11:11
**trying**
9:22

**turn**
32:7
**twenty-three**
54:19
**two**
17:7, 42:20,
46:18, 50:22
**tx**
2:21
**type**
23:4, 23:13,
25:1, 27:12,
28:13, 37:13,
41:4

**U**

**ultimately**
5:9, 13:19,
35:7, 38:22
**under**
4:20, 5:2, 9:4,
17:11, 19:14,
29:15, 29:17,
30:16, 30:17,
33:1
**understand**
55:11
**understanding**
8:1, 30:18,
41:7, 41:11
**understands**
11:4
**understood**
32:22, 39:2,
39:8
**undoubtedly**
53:19
**unique**
18:1
**united**
1:1, 8:10
**unless**
15:7
**unsuccessful**
48:5
**until**
5:1, 9:5, 12:4,
16:10, 19:19,

Transcript of Oral Arguments

32:4
**update**
47:20, 48:3
**uphold**
42:19, 43:7,
43:9, 43:10,
43:17
**urge**
12:18
**urged**
4:9, 49:2
**urgency**
19:12, 25:13
**urquhart**
2:19
**use**
3:21, 17:15,
24:21
**using**
47:22
**usually**
31:8

**V**

**vacate**
12:19, 13:9,
13:22, 45:12
**vacated**
43:22, 44:11,
44:19, 44:20
**vacatur**
36:9
**valuable**
20:20
**various**
51:9
**verbatim**
49:4
**viasat**
40:15, 40:22
**viciously**
7:12
**view**
20:10, 26:13,
27:9
**violated**
38:8
**voluntarily**
53:7

**W**

**wait**
19:19, 20:3,
32:1
**waited**
32:3
**waive**
52:18
**waived**
53:5
**walking**
7:14
**want**
14:10, 14:11,
14:13, 18:14,
22:2, 24:10,
28:2, 32:21,
33:18, 34:13,
34:21, 35:8,
35:9, 42:18,
44:15, 45:4,
47:15
**wanted**
25:12, 41:13
**warranting**
36:9
**washington**
2:6
**way**
14:21, 34:10,
41:14, 45:10
**we'll**
16:20
**we're**
3:3, 12:1,
15:20, 20:17,
24:21, 25:15,
37:22, 44:13,
48:17, 54:22
**we've**
13:21, 17:10,
35:22
**went**
25:11, 46:12,
48:21
**west**
2:20

**whatever**
37:18, 46:15
**whenever**
7:22
**whether**
7:19, 25:8,
26:8, 27:18,
44:18
**whole**
45:4, 51:4
**withdraw**
13:1, 14:5,
16:5, 16:14
**within**
27:20, 34:14,
51:6
**without**
43:2, 44:15
**woefully**
48:5
**work**
25:16, 27:20,
32:16, 55:3
**worked**
25:21, 25:22,
30:9, 30:18,
31:18, 32:22,
39:19
**working**
55:12
**world**
2:12, 14:19
**worry**
53:11
**worth**
55:2
**wouldn't**
15:21, 43:22,
44:11
**written**
55:8
**wrong**
10:15, 10:16,
12:19, 38:11,
38:13, 41:19

**Y**

**yeah**
5:19, 5:20

**year**
4:6, 9:6, 40:6
**years**
4:14, 9:5,
35:15, 47:19
**york**
2:5, 2:14,
11:9, 43:10,
43:22, 44:5,
44:11, 45:6,
45:15, 45:16,
45:18, 53:15

**$**

**$100**
5:16
**$15**
5:22
**$2**
55:1, 55:2
**$20**
54:22
**$420**
5:10, 17:10,
18:9, 32:4,
33:19
**$520**
19:2

**1**

**100**
5:18, 34:13,
54:21
**10007**
2:14
**11**
10:6
**1101**
2:5
**115**
5:15
**12**
3:9, 40:14
**1444**
1:8, 3:4
**1445**
1:9, 3:4
**15**
3:10, 16:9

Transcript of Oral Arguments

**17**
50:16
**174**
2:13
**18**
4:14, 9:5,
47:19

**2**

**20005**
2:6
**2007**
14:22, 47:18
**2010**
2:20
**202**
2:7
**2025**
4:3
**2026**
56:21
**21**
4:3, 40:21,
50:8, 52:6
**212**
2:15
**22**
47:20
**24**
46:14
**25**
40:21
**26**
1:8, 1:9, 3:4
**277**
2:15
**29**
50:4

**3**

**30**
16:11, 19:22,
35:15, 46:12
**300**
2:20
**31**
5:10, 5:17,
5:22

**35,000**
23:5, 24:1,
34:12

**4**

**40**
35:20
**4000**
2:15
**420**
33:3

**5**

**500**
23:22, 34:14
**51**
2:13
**56**
1:21

**6**

**6**
19:22
**6100**
2:22
**624255**
1:20, 56:22
**667**
2:22
**6th**
2:20

**7**

**737**
2:22
**7500**
2:7
**78701**
2:21

**8**

**835**
2:7
**8th**
16:9

**9**

**911**
37:13

**96**
24:14