**Exhibit D**

**Third Circuit Opinion**

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 26-1444 & 26-1445
_____

IN RE LIGADO NETWORKS LLC, ET AL.,
Debtors

LIGADO NETWORKS LLC,
Debtor-Appellant in 26-1444

AST & SCIENCE LLC,
Appellant in 26-1445

_____

On Appeal from the United States District Court for the
District of Delaware
(District Court No. 1:26-cv-00118)
District Court Judge: Honorable Gregory B. Williams

_____

Decided Pursuant to Third Circuit L.A.R. 27.4
March 2, 2026

(Filed: March 4, 2026)

Before FREEMAN, RENDELL, AMBRO, *Circuit Judges*.

_____

O P I N I O N[*]

_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**PER CURIAM**.

On Friday, February 27, 2026, the District Court for the District of Delaware granted a stay motion filed by Inmarsat Global Limited ("Inmarsat"), preventing the enforcement of the Bankruptcy Court's order requiring Inmarsat to support the application to the Federal Communications Commission ("FCC") filed by Ligado Networks, LLC ("Ligado") and supported by AST & Science, LLC ("AST"). Because the FCC's deadline for public comment on the application was March 2, 2026, Ligado and AST filed emergency motions asking us to vacate the stay order. Because we concluded that the District Court's order was an abuse of discretion, we vacated the District Court's order on the morning of March 2 after hearing oral argument from the parties. This opinion follows.

I.

Inmarsat and Ligado are satellite service providers operating in the L-band spectrum across North America. In 2007, Inmarsat and Ligado's predecessors signed a Cooperation Agreement that resolved coordination disputes and provided Ligado access to a greater spectrum over North America. At the time, Inmarsat and Ligado deployed only geostationary ("GSO") satellites. On January 5, 2025, Ligado filed for Chapter 11 relief. It sought approval during its bankruptcy proceedings to enter into an agreement with AST (the "AST Transaction"), in which AST would sublease Ligado's spectrum usage rights under the Cooperation Agreement to commercialize the spectrum through a non-geostationary orbit satellite system (the "Proposed NGSO System"). Inmarsat objected to the AST Transaction. After mediation, Inmarsat, Ligado, and AST executed a binding term sheet (the "Mediated Agreement") with the Bankruptcy Court's approval.

2

Shortly thereafter, the parties began discussing an amended cooperation agreement as contemplated by the Mediated Agreement. But negotiations broke down, prompting Inmarsat and Ligado to file competing motions to enforce the Mediated Agreement. After a hearing, the Bankruptcy Court denied both motions and directed the parties "to include the language that is specifically identified in the [Mediated Agreement]" into the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement.[1] Aug. 29, 2025 Hr'g Tr. at 30:8–9. The parties complied, incorporating the language of the Mediated Agreement into the Amended Inmarsat Cooperation Agreement. In September 2025, the Bankruptcy Court confirmed Ligado's plan of reorganization (the "Plan").

As relevant here, the Mediated Agreement requires the FCC application to expressly:

> (i) state that the operations of all AST and Ligado spacecraft, individually and taken as a whole, and regardless of orbit, will be consistent with and remain within the technical, geographic and other limitations in the Amended Inmarsat Cooperation Agreement and Ligado's other coordination agreements with various parties; and (ii) request that the FCC and ISED recognize that the operations of the Proposed NGSO System have been coordinated subject to the terms of the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement, and give effect to such agreements by licensing the Proposed NGSO System to operate in accordance with the terms of such agreements.

Mediated Agreement § 2. It further specified that the FCC application "will not be more granular in respect of prong (ii) and the Amended Inmarsat Cooperation Agreement shall not be submitted to the FCC with the initial applications or comments." *Id.* § 2 n.8. If those

---

[1] As relevant here, the Mediated Agreement contemplated two agreements: the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement. *See* Mediated Agreement at 1.

two conditions are met, Inmarsat "shall affirmatively support before the FCC [. . .] the initial regulatory applications seeking authority to operate the Proposed NGSO System within the L-Band in North America." *Id.* § 2. Such "affirmative support shall be limited to," *inter alia*, "filing Comments and Reply Comments in support of the application(s) at the FCC," "working cooperatively for NGSO and GSO systems for [Ligado] (including the Proposed NGSO System) and Inmarsat/Viasat to coexist in accordance with the Amended Inmarsat Cooperation Agreement; and refraining from taking any public or private action contrary to any of the foregoing." *Id.*

In December 2025, Ligado filed its FCC application, which stated that "Ligado has agreed that use of the L-Band by [the Proposed NGSO System] will comply with the Amended Inmarsat Cooperation Agreement, and that recognizes the [Proposed NGSO System] are consistent with and coordinated under the cooperation arrangement between Ligado and Inmarsat." FCC App. at 8. It further states that the operations "will be consistent with and remain within the technical, geographic and other limitations in the Amended Inmarsat Cooperation Agreement and Ligado's other coordination agreements with various parties." *Id.* at 12. Further, Ligado requested the FCC to "recognize that the operations of [the Proposed NGSO System] have been coordinated subject to the terms of the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement." *Id.* The FCC accepted Ligado's application on January 30, 2026, and the 30-day comment period began on that date.

Shortly after Ligado filed the FCC application, Inmarsat filed a complaint in the Supreme Court of the State of New York (the "New York Action"), alleging that AST and

4

Ligado breached their obligations in the Mediated Agreement and seeking a declaration regarding the parties' rights and obligations under that document. Inmarsat urged that coordination had not been completed and that the FCC application was to be filed only after such coordination was complete. Ligado and AST filed motions with the Bankruptcy Court to enforce the Mediated Agreement and demand Inmarsat withdraw the New York Action. The Bankruptcy Court agreed with Ligado and AST that Inmarsat's New York Action violated the automatic stay and ordered Inmarsat to dismiss the New York Action with prejudice. The Bankruptcy Court also concluded that Ligado's FCC application met both precedent conditions of Inmarsat's support and, thus, ordered that Inmarsat affirmatively support the FCC application.

Inmarsat appealed the Bankruptcy Court's order to the District Court and moved for a stay pending appeal. On February 27, 2026, the District Court granted Inmarsat's motion and stayed enforcement of the Bankruptcy Court's order pending appeal. Ligado filed a notice of appeal that evening. An hour later, Inmarsat filed an opposition to Ligado's FCC application. Ligado moved in this Court for an immediate administrative stay and vacatur of the District Court's stay. AST also moved to vacate the District Court's stay.

II.[2]

We part with the District Court's stay determination on two principal grounds: likelihood of success on the merits and irreparable harm absent a stay. We address both aspects of the District Court's ruling in turn.

---

[2] This Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) ("So long as a party to a proceeding or case in

5

**A. Likelihood of Success[3]**

First, the District Court identified the central merits issue as whether the Bankruptcy Court erred in finding that Inmarsat had a contractual obligation to support Ligado's FCC application. It stated that "no agreement was reached" relating to the Amended Inmarsat Cooperation Agreement. D.C. Mem. at 11. The Bankruptcy Court had entered an Enforcement Order that directed the parties to incorporate specific language of the Mediated Agreement into an Amended Inmarsat Cooperation Agreement and an Inmarsat-AST Agreement. The parties complied, incorporating the Mediated Agreement terms into the Amended Inmarsat Cooperation Agreement. Indeed, confirmation of Ligado's Plan was conditioned on the execution of that Agreement. *See* Mediated Agreement at 1 n.4.

Aside from this factual error, the District Court also erred in its analysis of the likelihood of success on the merits. Without acknowledging whether there was an ambiguity in the language or what principles of contract interpretation it utilized, the District Court concluded that "[a] reasonable construction of [the] language is that the parties were required to coordinate the operations of the Proposed NGSO System *before* the FCC application was filed." D.C. Mem. at 10 (emphasis in original). The District Court

---

bankruptcy meets the conditions imposed by § 1292, a court of appeals may rely on that statute as a basis for jurisdiction."). The District Court's Order dissolved the Bankruptcy Court's injunction. *See* D.C. Mem. at 7 (describing the Bankruptcy Court's order as "grant[ing] an injunction"); *cf. In re Trans World Airlines, Inc.*, 18 F.3d 208, 213–14 (3d Cir. 1994) (lacking jurisdiction to review a stay of bankruptcy court order that was a money judgment rather than an injunction).

[3] We review the grant of a stay for abuse of discretion. *See Jackson v. Danberg*, 594 F.3d 210, 216 (3d Cir. 2010). "However, we review *de novo* the District Court's decision on the likelihood of success, for it involves a purely legal determination." *See In re Revel AC, Inc.*, 802 F.3d 558, 567 (3d Cir. 2015) (citation omitted).

thus concluded that the Mediated Agreement required further negotiation and coordination. But there is nothing within the Mediated Agreement, or anywhere in the documents that have been referred to, indicating a further coordination agreement needed to be reached. Rather, the Bankruptcy Court correctly noted that the relevant language "requires a statement that coordination exists under and pursuant to these agreements, but not that some additional coordination process beyond the agreement's terms has been completed." Jan. 27, 2026 Hr'g Tr. at 18:20–23. The Bankruptcy Court also rejected the proposition that the Mediated Agreement conditioned Inmarsat's support on its subjective satisfaction that coordination had been sufficient. *See id.* at 19:15-17. The "support" obligation as we quoted above appears unambiguous.

The Mediated Agreement was the result of hard-fought negotiations at arm's length through mediation between sophisticated parties. The plain language of the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement committed Ligado and AST to ensure the operations of the Proposed NGSO System comply with those terms, regardless of whether the satellites are GSO or NGSO. Inmarsat's argued interpretation, as adopted by the District Court, inserts an additional requirement for specific coordination as to the NGSO satellites before the FCC application could be filed. But that is not the court's role. "Sympathy aside, it is axiomatic that a court may not rewrite the clear provisions of a contract to make it more reasonable or to protect a party against an unwelcome result." *Brisbin v. Superior Valve Co.,* 398 F.3d 279, 290 (3d Cir. 2005)

(citing *Sultan Chemists, Inc. v. U.S. EPA,* 281 F.3d 73, 80 (3d Cir. 2002)).[4] The District Court's interpretation is unsupported by the plain language of the Mediated Agreement. *See Fiore v. Fiore*, 46 N.Y.2d 971, 973 (NY Ct. App. 1979) ("[C]ourts may not rewrite a term of a contract by 'interpretation' when it is clear and unambiguous on its face.").

Accordingly, the District Court erred in concluding that Inmarsat had demonstrated a reasonable chance of prevailing in the contract dispute and granting a stay on, *inter alia*, that basis.

### B. Irreparable Harm

We also disagree that Inmarsat will face irreparable harm if it is obligated to satisfy its contractual obligation to support the FCC application. The District Court found that Inmarsat would have "minimal realistic recourse" if it suffers interference after the FCC approves the Proposed NGSO System. To the contrary, Inmarsat can litigate the scope of the Amended Inmarsat Cooperation Agreement in the appropriate forum in the specific factual context that any interference arises. D.C. Mem. at 12. As recognized by the Bankruptcy Court, the Mediated Agreement provides for a detailed dispute resolution process. *See* Mediated Agreement § 3. Inmarsat urges that it will be irreparably harmed if

---

[4] Neither the District Court nor the parties identify which state law governs the contracts here. Regardless, the general principles of contract interpretation used here apply under both New York and Delaware law. *See also See Ontario, Inc. v. Samsung C&T Corp.*, 31 N.Y.3d 372, 381 (NY Ct. App. 2018) ("[W]here a contract was negotiated between sophisticated, counseled business people negotiating at arm's length, courts should be especially reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include." (internal citations and quotations omitted)); *GRT, Inc. v. Marathon GTF Tech., Ltd.*, 2012 WL 2356489, at *6 (Del. Ch. June 21, 2012) ("Under Delaware law, courts will not rewrite contracts to read in terms that a sophisticated party could have, but did not, obtain at the bargaining table.").

8

forced to give up its ability to petition the FCC application. But Inmarsat bargained for and agreed to provide regulatory support so long as the conditions in the Mediated Agreement were met. Its contention that it would be "gagged" in having to make a representation to the FCC with what it disagrees is untrue. Accordingly, the irreparable harm factor was not met by Inmarsat.

III.

In this context, the District Court erred in concluding the first two stay factors were satisfied. Accordingly, the stay should have been denied. *See In re Revel AC, Inc.*, 802 F.3d 558, 571 (3d Cir. 2015). In light of our disposition, we need not address the various procedural issues raised by Inmarsat but not decided by that Court.

For these reasons, we vacated the District Court's stay order.