

December 19, 2025

Marlene H. Dortch
Secretary
Federal Communications Commission
45 L Street, NE
Washington, DC  20554

> Re: Application For Modification of Space Station License of Ligado
> Networks Subsidiary LLC
> ICFS File No. SAT-MOD-20251206-00374
> Call Sign S2358

Dear Ms. Dortch:

This letter is submitted on behalf of Iridium Communications Inc. ("Iridium") in connection with the recent application for modification of space station license filed by Ligado Networks Subsidiary LLC, Debtor-in-Possession ("Ligado").[1]  In the Application, Ligado seeks to avoid the processing round requirements applicable to applications for NGSO-like systems under the Commission's rules by arguing that the modification does not trigger this requirement or, if the requirement is triggered, that a waiver would be appropriate.[2]  As described in more detail below, neither of these claims is correct and a processing round is required.

The Application proposes a brand new constellation with much higher capacity than Ligado's current operations and that will provide much different services than Ligado currently offers. It squarely falls under the processing round rules and is not subject to any exceptions. Ligado has not demonstrated that there are any special circumstances that would justify a deviation from the rules, and public interest considerations favor denying the request.  Notably, the claims of competitive benefit are significantly overstated because the claims are based on benefits derived from proposed AST operations *in frequency bands other than those licensed to Ligado,* rather than any incremental benefit from use of Ligado's frequencies.  Further, Ligado's reliance on a prior, decades-old waiver to support its request is misplaced.

Iridium has an interest in the questions raised by Ligado's request because it intends to file an application seeking access to these bands. Obtaining additional spectrum in the L-band would allow Iridium to expand the services it currently offers and to obtain more capacity to meet the rising demand for its industry-leading mobile-satellite services ("MSS"), including Iridium's standards-based direct-to-device ("D2D") service offering, Iridium NTN Direct.[3]

---

[1] Application For Modification of Space Station License of Ligado Networks Subsidiary LLC, ICFS File No. SAT-MOD-20251206-00374, Call Sign S2358 (filed Dec. 8, 2025) (the "Application").

[2] Application, Waiver Request Attachment (the "Waiver Request").

[3] https://www.iridium.com/services/iridium-ntn-direct (retrieved Dec. 19, 2025).



Marlene H. Dortch, Secretary
December 19, 2025
Page 2

**After Several Decades, Ligado Has Failed to Deploy Meaningful Satellite Service to the American People.**

Ligado and its predecessors have been licensed for decades, and has only one operational satellite.[4]  That satellite, launched in 2010, now is obsolete and has been unable to provide modern services for many years.[5]  Ligado's claim that it has a significant customer base is belied by its actual operations.[6]  It does not actively promote or market its satellite services, and its annual revenues are minuscule compared to other providers in the MSS market.[7]  Whatever efforts Ligado has made to use its assigned spectrum have failed, and this spectrum has effectively been fallow since the day it was assigned.  Even now Ligado does not propose to use the spectrum for its own services, but to place it in the hands of a third party.  The public interest would be better served by allowing other applicants, including those with proven records of putting spectrum to use promptly and efficiently, to have an opportunity to apply to use this spectrum in a processing round.

**The Rules Require Treating the Application as the Lead Application in a New Processing Round.**

Under the Commission's rules, when an application requests authorization for "NGSO-like satellite operation," it is considered in a processing round.[8]  Specifically, the first applicant seeking to use spectrum for an NGSO-like satellite operation does not receive any advantage for filing first.  Instead, after determining that an NGSO-like application is acceptable for filing, the Commission opens a window for other applicants to apply and have their proposals and spectrum allocations considered on equal footing with those of the other applicants.[9]  This requirement

---

[4] The satellite that was the subject of the 2005 Waiver Order never was launched.

[5] SkyTerra Subsidiary LLC, *Order and Authorization,* 25 FCC Rcd 3034, 3044 (2010).

[6] Waiver Request at 3.

[7] For instance, Ligado received satellite service revenues of less than $11 million in the first ten months of 2025, according to its reports to the Bankruptcy Court, compared to Iridium's $475 million for satellite services in the first nine months of 2025.  Iridium holds only a fraction of the spectrum controlled by Ligado – less than 9 MHz compared to 45 MHz.  Iridium Communications, Iridium Communications, Form 10-Q for the quarter ended September 30, 2025, at 4, *available at* https://app.quotemedia.com/data/downloadFiling?webmasterId=101533&ref=319522846&type=PDF&symbol=IRDM&cdn=0e3e58697b1f6b12259d8e69ae3fb69f&companyName=Iridium+Communications+Inc&formType=10-Q&dateFiled=2025-10-23 (retrieved Dec. 19, 2025).  Ligado's actual revenues cast great doubt on its claim of serving "millions of MSS devices."  Waiver  Request at 3.

[8] 47 C.F.R. § 25.156(d)(1).

[9] 47 C.F.R. § 25.157(c).

1750 Tysons Blvd., Suite 1400, McLean, VA 22102 USA      t: +1.703.287.7400      f: +1.703.287.7450

www.iridium.com



Marlene H. Dortch, Secretary
December 19, 2025
Page 3

applies to both initial applications and applications for modification of existing licenses.  For the reasons described below, the Application is subject to the processing round requirement.[10]

First, the Application plainly contemplates an NGSO-like satellite operation.  The Application proposes to modify Ligado's current license to permit the use of Ligado's spectrum on a constellation of 96 AST satellites in low earth orbit, which Ligado has described as "a non-geostationary orbit ('NGSO') satellite system . . . to enable space-based broadband D2D and Internet of Things ("IoT") services."[11]  This subjects the Application to the processing round requirements of Sections 25.156 and 25.157.

Second, the Application does not fall within either of the exceptions to the processing round rule.  It does not qualify as a replacement for the existing Ligado system, which consists of one geostationary satellite.[12]  A replacement satellite is, in essence, a one-to-one substitution for an existing satellite that is being retired or has been lost.[13]  Here, the existing satellite will remain on orbit and operational.[14]  Nor does Ligado propose a small satellite system in size or number of satellites.[15]

Third, the existence of Ligado's single satellite does not affect the applicability of the processing round requirement.  Under Sections 25.156 and 25.157, there is no exception for a modification of a system when the licensee is authorized to operate a geostationary satellite.  Further, Section 25.156 explicitly covers both initial applications and an application for "modification . . . of an authorization."[16]  Indeed, Ligado has described the constellation covered

---

[10] Even if the Commission does not open a processing round, under the coordination plan that covers Ligado's spectrum, other parties are entitled to be granted access to spectrum via coordination with existing operators in the band.

[11] Ligado Statement on Bankruptcy Court Approval of AST Space Mobile Transaction, Jul. 1, 2025, *available at* https://ligado.com/press/ligado-networks-statement-on-bankruptcy-court-approval-of-ast-spacemobile-transaction/ (retrieved Dec. 19, 2025).  *See also* AST SpaceMobile Announces Settlement Term Sheet Facilitating Long-Term Access to up to 45 MHz of Premium Lower Mid-Band Spectrum in North America for Direct-to-Device Satellite Applications, Jun. 13, 2025, *available at* https://feeds.issuerdirect.com/news-release.html?newsid=8216358937649711&symbol=ASTS (retrieved Dec. 19, 2025) (describing the Ligado transaction as "add[ing] additional capabilities to AST SpaceMobile's technology and space-based network, based on the largest-ever communications arrays deployed in low Earth orbit") (the "AST Term Sheet Announcement").

[12] 47 C.F.R. § 25.156(b).

[13] 47 C.F.R. § 25.157(b)(1).

[14] Application at 1-2.

[15] 47 C.F.R. § 25.156(i) (exempting small satellite systems from processing rounds).

[16] 47 C.F.R. § 25.156(a).



Marlene H. Dortch, Secretary
December 19, 2025
Page 4

by the Application as "add[ing] an MSS system."[17]  The filing should therefore be properly treated as a newly filed application, rather than a modification of an existing license.

Moreover, Ligado cannot reasonably argue that its proposed new constellation does not affect the interference environment to conform to the Commission's *Teledesic* standard.[18]  The change from one GSO satellite to nearly 100 NGSO satellites cannot plausibly result in operating under the same technical parameters.  Even if Ligado's implausible argument is that the new constellation would operate at interference levels equivalent to its single aged GSO satellite (even as that satellite will remain in space), then the Commission should enforce the *Teledesic* standard and allow other operators the opportunity to use this long-underutilized spectrum.[19]

**Ligado Does Not Meet the Commission's Standards for Granting a Waiver.**

The Commission has long recognized the high bar to granting a waiver of its rules.[20]  A party requesting a waiver must show that special circumstances warrant a deviation from a rule and that granting the waiver will benefit the public interest.[21]  The Commission cannot grant a waiver unless that standard is met, but Ligado does not even approach meeting either prong of that test.

*There Are No Special Circumstances that Warrant a Deviation from the Rule*

The Waiver Request is devoid of any explanation of what, if any, special circumstances exist that make it inappropriate to require a processing round for a brand new constellation of nearly 100 satellites. It simply recites claims that the new constellation will not affect the interference environment and that the portion of the L-band used by Ligado is subject to coordination requirements.[22]  Neither of these is a special circumstance.  Satellite operators are expected not to interfere with other satellite operators and any operator using the band, new or existing, has to coordinate. Ligado does not explain why these normal requirements would warrant a deviation from the rule.

---

[17]  Ligado, "Unlocking the Next Frontier in Mobile Connectivity," *available at* https://ligado.com/blog/unlocking-the-next-frontier-in-mobile-connectivity/ (reviewed Dec. 19, 2025).

[18] Teledesic, *Order and Authorization,* 14 FCC Rcd 2261, 2264, ¶ 5 (Int'l Bur. 1999) (stating that "[i]f the proposed modification does not present any significant interference problems and is otherwise consistent with Commission policies, it is generally granted").

[19] Nor is there an open processing round for this spectrum today, so opening a new round is warranted.  47 C.F.R. § 25.157(c).

[20] *WAIT Radio v. FCC*, 418 F.2d 1153, 1157 (D.C. Cir. 1969) (stating that "[a]n applicant for waiver faces a high hurdle even at the starting gate").

[21] *NetworkIP, LLC v. FCC*, 548 F.3d 116, 125-28 (D.C. Cir. 2008), *Northeast Cellular Telephone Co. v. FCC*, 897 F.2d 1164, 1166 (D.C. Cir. 1990).

[22] As discussed above, the interference claim is dubious.



Marlene H. Dortch, Secretary
December 19, 2025
Page 5

*Granting a Waiver Would Be Contrary to the Public Interest.*

Public interest considerations also weigh against granting a waiver. The Application proposes a radical change in the use of the Ligado spectrum, essentially abandoning the basis for the original license application.  Given the chronic underuse of that spectrum, and the demand for NGSO services of all kinds, opening a processing round will result in the highest and best use of the spectrum.

Ligado has chronically mismanaged its use of the spectrum and does not offer meaningful service today.  And to the extent Ligado uses this application as an end run to Ligado's very public effort to give its spectrum to AST, there is no reason that Ligado should be rewarded for its warehousing behavior.[23]  Nor should Ligado be allowed to foreclose potential competitors by obtaining additional L-band rights in lieu of allowing competition and diverse uses of MSS spectrum to develop.

Ligado claims two types of potential public interest benefits to granting the waiver: (1) that it can put the spectrum to use promptly because it already has completed coordination and (2) that AST's use of Ligado's spectrum will foster competition in the market for "NGSO mobile broadband services."[24]  Neither of these claims survives scrutiny.

First, while Ligado may have privately completed coordination with at least one other operator for its original use of the spectrum, it still remains subject to ITU coordination and notification for its conversion to an operational NGSO system, as there are many other NGSO and GSO parties that have submitted Article 9 coordination filings to the ITU intending to use the Ligado spectrum  and it has not coordinated with them.[25]  All such ITU filings would have a first-come, first-served coordination priority over any Ligado ITU filing, which has not yet been submitted. As a result, there is no reason to think that Ligado would complete coordination any faster than other applicants in a processing round.  Further, even if other applicants might be subject to some delay in deploying their services because of coordination requirements, Ligado could deploy its service in advance of those companies after the processing round is complete.[26]

---

[23] *See* Matthew Glavy, "The FCC should avoid rewarding spectrum squatters," WASHINGTON EXAMINER (Oct. 20, 2025), *available at* https://www.washingtonexaminer.com/restoring-america/courage-strength-optimism/3855088/fcc-wireless-spectrum-space-marketplace/ (retrieved Dec. 19, 2025) (arguing that "the FCC should keep a watchful eye on chronically underused spectrum and consider making it available to competitive users through processing rounds (which is the FCC's way to allow multiple applicants to access satellite spectrum on a shared basis), as it has in the past").

[24] Waiver Request at 2-3.

[25] The ITU-R Space Network System database (accessed via https://www.itu.int/itu-r/space/apps/public/spaceexplorer/networks-explorer) shows dozens of satellite filings in the 1525-1559 MHz (s-E) and 1626.5-1660.5 MHz (E-s) frequency bands.

[26] 47 C.F.R. § 25.157(f).

1750  Tysons  Blvd.,  Suite  1400,  McLean,  VA  22102  USA      t:  +1.703.287.7400      f:  +1.703.287.7450

www.iridium.com



Marlene H. Dortch, Secretary
December 19, 2025
Page 6

Second, there is no reason to think that granting the waiver will result in more competitive benefits than holding a processing round. The potential benefits are, at best, incremental, as the proposed AST constellation will use the spectrum that AST already has rights to use under its agreements with Verizon and AT&T.[27]

In addition, even assuming Ligado's application otherwise meets all Commission requirements, establishing a processing round does not foreclose Ligado from using the spectrum, but instead ensures that greater competition leads to superior service in the L-band.[28] In particular, opening a processing round would allow other applicants, including Iridium, to use this spectrum in new and innovative ways, to expand existing services to a broader customer base, and more.[29] And, as Chairman Carr has noted, "more competition . . . means more innovation," which is critical to winning Space Race 2.0.[30] The benefits of those potential new uses have to be weighed against the incremental benefits of giving AST access to all of Ligado's spectrum for a proposed service that already is being offered by several other companies.

Moreover, grant of a waiver would be contrary to the purposes of the processing round rule. This rule serves to avoid significant interference and to prevent any one operator from monopolizing the spectrum where there is demand for more entrants.[31] The Application,

---

[27] Public Notice, "Space Bureau, Wireless Telecommunications Bureau, and Public Safety and Homeland Security Bureau Accept for Filing Applications of AST & Science, LLC and AT&T, Verizon, and Firstnet Requesting Supplemental Coverage from Space Authorization and Seek Comment on Waiver Requests," SB Docket No. 25-201, ICFS File Nos. SAT-MOD-20250612-00145, SAT-AMD-20250718-00181, and SAT-AMD- 20250903-00248, ULS File Nos. 0010538493, 0011607666, and 0011654129 (rel. Sep. 5, 2025) (seeking Commission authorization for SCS service to be provided by AST using spectrum from terrestrial wireless carriers).

[28] Some of the spectrum that would be made available to AST under this application is licensed to Inmarsat and would continue to be available regardless of the outcome of a processing round. *See* AST Term Sheet Announcement.

[29] For instance, Iridium has long experience providing spectrally-efficient services that make full use of the spectrum it is assigned, and could broaden the scope of its offerings with additional spectrum.

[30] Remarks of Chairman Carr, "Build America: Unleashing America's Space Economy And Winning The Space Race 2.0," Oct. 6, 2025, available at https://docs.fcc.gov/public/attachments/DOC-415040A1.pdf (reviewed Dec. 19, 2025).

[31] *See* Space Exploration Holdings, LLC Request for Modification of the Authorization for the SpaceX NGSO Satellite System, *Order and Authorization and Order on Reconsideration,* 36 FCC Rcd 7995, ¶ 16 (2021) ("we conclude that [the] focus on the public interest in avoiding significant radiofrequency interference is consistent with the purpose of the Commission's processing round procedure, which is designed to establish the interference environment in which participants in the processing round could reasonably anticipate they would be entitled to



Marlene H. Dortch, Secretary
December 19, 2025
Page 7

however, does not contemplate any other users of the band, and instead assumes that Ligado should have all of the spectrum, despite its decades-long failure to use that spectrum efficiently. In fact, given Ligado's failure to use the spectrum, it cannot claim to be harmed by a processing round that still would leave it with substantial spectrum resources.

*The 2005 Waiver Is Irrelevant to Ligado's Current Application.*

The Waiver Request argues that the Commission's grant of a waiver of the processing round rules for Ligado's second satellite justifies a waiver in this case as well.[32]  Given the significant differences between the 2005 waiver and what Ligado is requesting today, the Commission should not afford any weight to this prior decision in evaluating this Application.

First, there are significant factual differences between the application that resulted in the 2005 Waiver and this Application.  The 2005 Waiver concerned a single new space station that would have operated from a geosynchronous orbit.[33]  The underlying application did not propose any new services, but only to extend the service that Ligado's predecessor already was providing to a new geographic area.  In contrast, this Application is proposing an entirely new constellation, shifting from a single geostationary satellite to nearly 100 satellites in non-geostationary orbits.[34]  It is, as Ligado has acknowledged, a brand new system and is likely to have significant effects on the interference environment in the L-band.[35]  In this context, there is no basis for giving a decades-old waiver any weight in the Commission's analysis, especially because the Commission has not relied on that waiver in any subsequent decisions.

Similarly, the language Ligado quotes from the 2005 Waiver Order does not address situations in which a licensee proposes to completely remake a system and to use the spectrum it was assigned in ways that are different than what it requested in its initial application.[36]  Rather,

---

operate their systems") (citing Update to Parts 2 and 25 Concerning Non-Geostationary, Fixed-Satellite Service Systems and Related Matters, *Report and Order and Further Notice of Proposed Rulemaking,* 32 FCC Rcd. 7809, 7829, para. 61 (2017)).  The Commission has recognized the concerns raised by monopolization of spectrum in processing rounds in the rules. Section 25.157(g)(2) provides that, in the event that there are not enough licensees "to make reasonably efficient use" of a band after one or more licenses in a band are cancelled, the Commission will open a new processing round to ensure that the band will be used efficiently. 47 C.F.R. § 25.157(g)(2).  This demonstrates how strong the presumption is against having a limited number of licensees.

[32] Waiver Request at 2.

[33] *Mobile Satellite Ventures Subsidiary LLC*, 20 FCC Rcd 479 (2005) (the "2005 Waiver Order").

[34] Application, Narrative at 1-2.

[35] *See* text accompanying note 17.

[36] 2005 Waiver Order, 20 FCC Rcd at 482, *citing* Amendment of the Commission's Space Station Licensing Rules and Policies, *First Report and Order and Further Notice of Proposed Rulemaking,* 18 FCC Rcd 10760, 10806 (2003) (the "2003 Space Order").



Marlene H. Dortch, Secretary
December 19, 2025
Page 8

that language is about the question of what the Commission will do when it completes a processing round.[37]  In fact, the Commission decision cited in the 2005 Waiver Order recognizes that a processing round is appropriate when an operator abandons its authorized operations, which is effectively what Ligado is proposing here.[38]

In addition, the underlying processing round rules have been modified multiple times since the 2005 Waiver, and reflect significant changes in how the Commission approaches processing rounds.[39]  The many changes in the rules make it inappropriate to rely on interpretations that were incorporated into a 2005 waiver.  Given these changes, the Commission cannot rely on interpretations adopted in the long-ago order that Ligado cites.

**Conclusion.**

For these reasons, and consistent with the requirements of the Commission's rules, the Commission should open a processing round in response to Ligado's Application.

Respectfully submitted,

Iridium Communications Inc.

*Kara Leibin Azocar*
Kara Leibin Azocar
Vice President, Regulatory & Public Policy

cc:    As per attached service list
       Jay Schwarz, Chief, Space Bureau

---

[37] The paragraph cited in the 2005 Waiver Order addresses whether the Commission should keep other pending applications on file after granting an NGSO application, and concludes that the Commission should "not [] keep subsequently filed applications on file" and instead "deny the application rather than keeping the application on file in case the lead applicant does not construct its satellite system."  2003 Space Order, 18 FCC Rcd at 10806.

[38] *Id.* (stating that a new processing round will be ordered when a space station operator abandons its system through the surrender of a license).

[39] *See, e.g.,* Streamlining Licensing Procedures for Small Satellites, *Report and Order,* 34 FCC Rcd 13077 (2019); Amendment of the Commission's Space Station Licensing Rules and Policies, *Second Order on Reconsideration,* 31 FCC Rcd 9398 (2016).

**CERTIFICATE OF SERVICE**

I, Tammi A. Foxwell, hereby certify that on December 19, 2025, a true and correct copy of this letter was served electronically to the following:


Vernon G. Ross
Vice President, Legal and Regulatory Affairs
LIGADO NETWORKS LLC
10802 Parkridge Blvd
Reston, VA 20191


*/s/ Tammi A. Foxwell*
Tammi Foxwell