**Before the**
**FEDERAL COMMUNICATIONS COMMISSION**
**Washington, DC 20554**

| | | |
|---|---|---|
| In the Matter of | ) | ICFS File No. |
| | ) | |
| Ligado Networks Subsidiary, LLC, Debtor-in-Possession | ) | SAT-MOD-20251206-00374 |
| | ) | |
| | ) | Call Sign S2358 |
| For Authority to Launch and Operate the | ) | |
| SkyTerra Next Non-Geostationary Orbit System | ) | |

**PETITION TO DENY OF VIASAT, INC.**

Pursuant to Section 309(d) of the Communications Act, as amended, and Section 25.154(d) of the Commission's rules, Viasat, Inc. petitions to deny[1] the above-referenced application (the "Application") filed by Ligado Networks Subsidiary, LLC, Debtor-in-Possession ("Ligado").[2]  In the Application, Ligado seeks Commission authority to operate 96 mobile-satellite service ("MSS") payloads (collectively referred to by Ligado as "SkyTerra Next") using spectrum in the 1525-1559 MHz and 1626.5-1660.5 MHz bands (collectively, the "L Band") on approximately one-third of the satellites to be operated by AST & Science, LLC ("AST") as part of its proposed constellation, for which AST also seeks Commission authority.  Ligado's request is fatally flawed.

Ligado incorrectly claims that it has completed coordination of the proposed "SkyTerra Next" operations with Viasat and its subsidiary, Inmarsat (which conducts extensive operations in the L band, including in support of critical national security and safety-of-life applications).

---

[1]   47 U.S.C. § 309(d); 47 C.F.R. § 25.154(d).  Viasat has standing to file this petition because, among other things, Viasat and its subsidiaries hold authorizations in the L band and their services would be placed at increased risk of harmful interference if Ligado's proposed operations are authorized.

[2]   Ligado filed for bankruptcy protection in early 2025 and continues to operate as a debtor-in-possession.  *See, e.g.,* ICFS File No. SAT-ASG-20250115-00012.

In actuality, the parties commenced coordination discussions and acknowledged the need to develop and implement new coordination terms tailored to address the specific interference risks arising from prospective NGSO operations but did not agree on such terms or otherwise complete coordination with respect to such operations.  Ligado's Application mischaracterizes the state of coordination and materially understates the interference risks posed by the proposed "SkyTerra Next" operations.  Ligado's Application also ignores that AST, which would play a material role in those operations, has not effectuated coordination with Viasat.

Consequently, the Application presents "substantial and material" questions as to whether its grant would serve the public interest.  As such, the Commission *may not* move forward with grant and should deny the Application or designate it for hearing so that these matters can be investigated fully.[3]

I.      **THE PROPOSED OPERATIONS OF "SKYTERRA NEXT" HAVE NOT BEEN COORDINATED AND POSE UNACCEPTABLE RISKS OF HARMFUL INTERFERENCE TO OTHER L-BAND SERVICES**

As the Application notes, Ligado currently conducts L-band operations over a single GSO satellite—SkyTerra-1.[4]  That satellite, like all GSO satellites, maintains a fixed position relative to the Earth and other GSO satellites.  Consequently, the potential interference from SkyTerra-1 into other GSO satellites operating in the L band (including Viasat's satellites) is limited to those satellites within a certain longitudinal proximity to SkyTerra-1.  Moreover, the interference environment that must be managed to ensure the coexistence of particular satellites is generally static.  This has allowed Ligado to operate in the L band alongside other GSO

---

[3]   47 U.S.C. § 309(e).

[4]   Ligado Application, Legal Narrative, at 1.

networks using relatively straightforward coordination mechanisms, including those memorialized in the longstanding "Cooperation Agreement" between Ligado and Viasat.

But the Application does *not* involve SkyTerra-1 or any other Ligado GSO network that has been coordinated with Viasat.  Rather, the Application requests new authority to operate an *NGSO* system consisting of *96* satellite payloads that would be located in low-earth orbit ("LEO") and operate in the L band.  The proposed NGSO operations—like all NGSO operations—would be fundamentally different from GSO operations and would present materially different and substantially greater interference risks.  Among other things, NGSO satellites constantly move in relation to the Earth and other satellites, such that the interference they generate is not static and predictable but rather is probabilistic and time-varying.  NGSO satellites also have the potential to interfere with a much larger set of potential "victim" networks.  As the Application notes, the "SkyTerra Next" payloads would circle the globe about once every 98 minutes (or about 15 times a day).[5]  These AST satellites would pass through the service area of every Viasat GSO satellite around the world during each such orbit.

Operations over "SkyTerra Next" would therefore pose a material risk of harmful interference into Viasat's GSO operations in the L band—including critical safety-of-life and national security services.  This interference would be aggregated and compounded across multiple "SkyTerra Next" satellites through complex and dynamic geometries.  In short, the interference potential of "SkyTerra Next" would be different in kind and greater in magnitude than that posed by Ligado's existing GSO operations, and present much more difficult coordination challenges that are not adequately recognized or addressed by the existing Cooperation Agreement between the parties.

---

[5]    *Id.* at 5 (noting orbital period of 98 minutes).

The only feasible way to mitigate the substantial interference risks posed by the proposed NGSO operations would be through carefully crafted constraints that are tailored to account for the complex nature of NGSO (vs. GSO) operations and memorialized in a coordination agreement between Viasat on the one hand, and Ligado and AST on the other hand.  Absent such an agreement, there *necessarily* are "substantial and material" questions as to whether the proposed operations would serve the public interest—and the Commission is compelled to deny the Application or designate it for hearing.

More specifically, Ligado incorrectly claims that the parties have executed an "amended cooperation agreement" that "recognizes the proposed North American L-band NGSO operations are consistent with and coordinated under the cooperation arrangement between Ligado and Inmarsat."[6]  But even a cursory review of the Cooperation Agreement (even as recently amended in connection with the ongoing Ligado bankruptcy) reveals that this is not true.  That agreement identifies specific satellite networks that have been coordinated by the parties.  Notably, *all* of the satellite networks so identified are *GSO* satellite networks.[7]  The agreement also provides a specific mechanism through which "replacement" satellites "operating at substantially the same orbit location" as an already-coordinated GSO satellite can be added by right to the scope of the coordination arrangement.  As for *other* satellites—including *NGSO* satellites—the agreement provides that the parties must attempt to coordinate their operations and "negotiate the terms of revised satellite coordination agreements."[8]

---

[6]    *Id.* at 8.

[7]    *See* Cooperation Agreement, Exhibits I and J.

[8]    *See id*. §§ 3.3(b)(ii) and 5.5(c).

And while the parties have attempted to coordinate prospective NGSO systems in the L band, the undeniable fact is that coordination was not completed—as reflected in the fact that the list of coordinated networks in the Cooperation Agreement does *not* include "SkyTerra Next"—or any other prospective Ligado or AST NGSO operations in the L band.[9]  The failure to complete coordination is also reflected in the fact that the set of specific coordination terms provided in the Cooperation Agreement has not been updated to account for any planned NGSO operations, even though Ligado itself *acknowledged* the need to develop and implement such terms in connection with planned NGSO operations in the L band.

Indeed, in early-2025 the parties began discussing a potential amendment to the Cooperation Agreement intended to address potential NGSO operations in the band.  Ligado itself drafted a "Second Amended and Restated Cooperation Agreement" that attempted to accomplish this feat, including by adding *46* express references to "NGSO" operations in the coordination terms (the operative L-band Coordination Plan in the Cooperation Agreement does not mention "NGSO" operations even once).  Subsequent drafts exchanged by the parties (i) recognized that *no* NGSO satellites were included in the list of already-coordinated satellites, and would need to be explicitly added to that list for coordination to be effectuated; (ii) recognized that additional technical terms would need to be added to the agreement to address issues specific to prospective NGSO operations; and (iii) sought to define a distinct "NGSO Plan" that would address coordination issues arising in the NGSO (vs. GSO) context.  But these coordination negotiations were never completed and the needed amendment to the Coordination Agreement was never finalized (notwithstanding Ligado's recognition that "gaps" in the

---

[9]   The recent amendment of the Cooperation Agreement in connection with Ligado's ongoing bankruptcy did not alter the basic mechanisms described above.

Cooperation Agreement prevent it from fully or effectively addressing the interference risks that would arise from prospective NGSO operations in the L band).  Viasat has noted as much repeatedly, conspicuously, and in multiple proceedings before the Commission[10]—without eliciting any disagreement from Ligado.

Under these circumstances, Ligado's incorrect assertion that it has completed coordination of proposed "SkyTerra Next" operations is deeply troubling.

## II.    AST HAS NOT EFFECTUATED COORDINATION WITH VIASAT

As discussed above, Ligado has not coordinated the proposed operations of "SkyTerra Next" with Viasat—notwithstanding Ligado's incorrect claim that coordination was effectuated. But even if Ligado had completed such coordination, that alone would be inadequate to ensure that "SkyTerra Next" could coexist with Viasat's L-band operations without subjecting them to unacceptable interference.  This is because a separate company—AST—would also play a material role in operating "SkyTerra Next." The Application acknowledges that AST would own and operate the satellites that would house the "SkyTerra Next" payloads, and the TT&C and feeder links that are critical to the proper functioning of those payloads.[11]  And a separate agreement between the parties provides that AST, through its subsidiary, would "design,

---

[10]   *See* Letter from Viasat to FCC, ICFS File No. SAT-MOD-20250527-00129, at 2 (Sep. 9, 2025); Letter from Viasat to FCC, ICFS File No. SAT-LOA-20250718-00178, at 3 (Nov. 21, 2025) (noting that Ligado's concerns about the impact of proposed ISLs were misplaced because they would use L-band spectrum coordinated for use with Inmarsat satellites, whereas potential NGSO operations in the L band were both unauthorized and uncoordinated).  Ligado responded by disputing whether the Cooperation Agreement extended to ISLs in question—but not that coordination had not been completed with respect to prospective NGSO operations.

[11]   Ligado Application, Technical Supplement, at 2 ("The TT&C-RF subsystem and feeder link will be provided by the AST SpaceMobile constellation . . . ").

develop, procure, own, and operate" the NGSO satellites and use Ligado's spectrum rights in the L band over those satellites.[12]

Given AST's role in operating the "SkyTerra Next" payloads, it is critical that it also be bound by appropriate coordination terms.  But AST, like Ligado, has not completed coordination with Viasat; instead AST has aggressively asserted that it is free to use Ligado's spectrum assignments in the L band *without* living up to even those commitments made by Ligado in the existing Cooperation Agreement to facilitate coexistence with Viasat in the GSO context (which, again, would not adequately constrain interference from prospective NGSO operations in the L band).  AST's operation of "SkyTerra Next" under these circumstances would pose material risks to other L-band operators and the broader public interest.

*     *     *     *     *

For the reasons set forth above, the proposed operations of "SkyTerra Next" would pose material risks to the public interest.  The Commission cannot, should not, and ***must not*** grant Ligado's Application until these material risks have been fully investigated and mitigated.

Respectfully submitted,

/s/
Jarrett S. Taubman
VP & Deputy Chief Government Affairs and
Regulatory Officer
VIASAT, INC.
901 K Street NW, Suite 400
Washington, DC  20001

February 27, 2026

---

[12]   *See* Strategic Collaboration and Spectrum Usage Agreement by and among Ligado Networks LLC and Spectrum USA I, LLC (Mar. 22, 2025), https://www.sec.gov/Archives/edgar/data/1780312/000164117225000330/ex10-2.htm.

## CERTIFICATE OF SERVICE

I, Jarrett S. Taubman, hereby certify that on this 27th day of February, 2026, I caused true and correct copies of the foregoing Petition to Deny of Viasat, Inc. to be served via first-class mail upon the following:

Vernon Ross
Vice President, Legal and Regulatory Affairs
Ligado Networks LLC
10802 Parkridge Blvd.
Reston, VA 20191

Jennifer A. Manner
Senior Vice President, Regulatory Affairs and International Strategy
AST & Science, LLC
2901 Enterprise Lane
Midland, TX 79706

Kara Leibin Azocar
Vice President, Regulatory
Iridium Communications, Inc.
1750 Tysons Blvd., Suite 1400
McLean, VA 22102

/s/

Jarrett S. Taubman