No. 26-1444

IN THE

# United States Court of Appeals
# for the Third Circuit

IN RE LIGADO NETWORKS LLC, *et al.*

*Debtors.*

LIGADO NETWORKS LLC,

*Debtor-Appellant,*

v.

INMARSAT GLOBAL LIMITED,

*Plaintiff-Appellee.*

On Appeal from the United States District Court
for the District of Delaware (Williams, J.)
No. 26-cv-118 (GBW)

## LIGADO'S REPLY IN SUPPORT OF *EMERGENCY* MOTION FOR ADMINISTRATIVE STAY AND VACATUR OF STAY PENDING APPEAL

Mark D. Collins
Michael J. Merchant
Amanda R. Steele
Zachary J. Javorsky
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
collins@rlf.com

Dennis F. Dunne
Matthew L. Brod
Lauren C. Doyle
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
(212) 530-5000
ddunne@milbank.com

Andrew M. Leblanc
Colleen E. Roh Sinzdak
 *Counsel of Record*
Melanie Westover Yanez
Victoria L. Colbert
Elizabeth M. Fly
Chase J. Hanson
**MILBANK LLP**
1101 New York Avenue, NW
Washington, DC 20005
(202) 835-7570
crohsinzdak@milbank.com

March 1, 2026

*Counsel for Ligado Networks LLC*

## INTRODUCTION

On January 30, 2026, the Bankruptcy Court that has received ten briefs, held four hearings, and entered three orders regarding the Mediated Agreement found that Inmarsat had flagrantly violated the Mediated Agreement and the Bankruptcy Court's orders by refusing to support Ligado's FCC Application and instead filing a state court suit in violation of the Bankruptcy Code's automatic stay. The reason the Bankruptcy Court found the issue so cut and dry was plain: The basis for Inmarsat's assertion that it did not need to support Ligado's FCC Application was its claim that the Mediated Agreement required the parties to make further amendments to the Cooperation Agreement to ensure that the Proposed NGSO System has "been coordinated" with Inmarsat's systems under the Cooperation Agreement. But Inmarsat itself argued otherwise in its successful briefing before the Bankruptcy Court in August 2025.

In that briefing on the parties' cross-motions to enforce the Mediated Agreement, Inmarsat told the Bankruptcy Court that there was no need for the court to settle any disputes about the meaning of the Cooperation Agreement or what amendments to that agreement might be appropriate because "[t]he Mediated Agreement was designed to ensure that AST would be directly bound by the *existing* Cooperation Agreement limits" and that AST would "comply with the Cooperation Agreement limits *exactly as they currently apply to Ligado*. The Mediated

1

Agreement requires no more and no less."[1]  And Inmarsat emphasized that "the Mediated Agreement imposes no *additional limits* on AST or Ligado beyond those in the [2010] Cooperation Agreement."[2]  Inmarsat therefore told the Court that all it "need[ed] to do" to enforce the Mediated Agreement was "to make clear that, under the plain language of the Mediated Agreement, both Ligado and AST are bound to honor the existing geographic and other limits of the Cooperation Agreement (whatever they may be), and bound to sign definitive documents reflecting that commitment."[3]

Moreover, Inmarsat's August arguments worked.  The Bankruptcy Court began its August hearing about how to properly enforce the Mediated Agreement by stating that it found Inmarsat's arguments compelling and was inclined to simply order the parties to incorporate the text of the Mediated Agreement into the Cooperation Agreement—leaving all disputes about the meaning of various provisions of the Cooperation Agreement for a future date when the Proposed NGSO System is operational and there is a concrete dispute about interference.[4]  That is what Inmarsat asked for when it suggested that any such disagreements could await

---

[1]  Supp. Ex. A ¶¶ 13, 16 (emphasis added).

[2]  *Id.* ¶ 6.

[3]  *Id.* ¶ 4.

[4]  Ex. B at 6:17-23, 30:7-14.

2

resolution under the Cooperation Agreement's dispute resolution procedures "in the appropriate forum and in the context of a concrete factual dispute"—anything more, Inmarsat said, "would be an improper advisory opinion about the Cooperation Agreement."[5]

Because Inmarsat made these August representations and got what it wanted in an Enforcement Order from the Bankruptcy Court, it was obvious to Ligado, AST, and the Bankruptcy Court that Inmarsat had no meritorious reason for subsequently refusing to support Ligado's FCC Application based on a specious argument that the parties had to still negotiate further changes to the Cooperation Agreement to comply with the Mediated Agreement. As the Bankruptcy Court observed in rejecting Inmarsat's flawed arguments for further negotiations, the plain text of the Mediated Agreement "does not state that the parties must negotiate or complete additional technical exhibits before filing the FCC Application and … the mediated agreement does not condition Inmarsat's regulatory support on Inmarsat's subjective satisfaction that coordination has been sufficient."[6] Instead, it provides that Inmarsat will support Ligado's Application so long as it includes certain heavily negotiated statements.

---

[5]   Supp. Ex. A ¶ 7.

[6]   Ex. A 19:7-17.

Ligado's Application includes those statements verbatim and Ligado and AST have already paid Inmarsat $420 million dollars. Yet Inmarsat now insists that—contrary to its prior statements and common sense—the Mediated Agreement was simply an agreement to negotiate further coordination, such that Inmarsat could keep the $420 million while opposing Ligado's Application so long as Inmarsat, in its sole discretion, determines that more coordination is necessary. That is absurd.

Inmarsat's efforts to raise enough smoke to conceal its about face on coordination and its atextual and illogical reading of the Mediated Agreement worked with the District Court, but they cannot be permitted to work here. Without this Court's immediate intervention, Inmarsat will have succeeded in denying Ligado and AST what it promised and what they paid dearly for—support in the *regular course* in the FCC application process. Inmarsat's suggestions that Ligado has the unilateral power to extend the FCC's comment window are both entirely unsupported and beside the point. Ligado and AST entered the Mediated Agreement and paid hundreds of millions of dollars to avoid the delay that would be caused if Inmarsat objected. Inmarsat therefore cannot defeat claims of irreparable harm by asserting that the only injury to the parties is delay. And Inmarsat further errs in suggesting that there is no real harm because if Inmarsat's FCC objection is baseless (which it is), Ligado will ultimately prevail before that agency. Ligado and AST have no doubt they will prevail before the agency. Their concern all along has been

4

that—as a competitor—Inmarsat could use specious objections to hopelessly delay or derail the regulatory process. That is *exactly* what Inmarsat asks this Court to help it do.

Inmarsat's remaining arguments all fail. It has no real response to Ligado's jurisdictional arguments. Inmarsat conspicuously ignores the Supreme Court's recent pronouncement on finality in *Ritzen*, relying instead on pre-*Ritzen* precedents. And it makes no effort to reconcile its mistaken reading of *Trans World* with the Supreme Court's holding in *Germain.* This Court should be highly skeptical of any jurisdictional argument that requires ignoring binding Supreme Court precedent. Its "merits" arguments fare no better. Inmarsat attempts to dismiss its prior inconsistent statements from its August briefing as having "*nothing* to do with coordination." Response at 30. But the August statements were categorical: All the Bankruptcy Court needed to do was order the parties to amend the Cooperation Agreement by incorporating the terms of the Mediated Agreement. No further amendments were necessary. Nor is Inmarsat successful in its efforts to rehabilitate the merits arguments the District Court declined to reach, all of which are easily dismissed. D. Ct. Resp. Dkt. No. 22.

This Court should restore the holdings of the Bankruptcy Court by granting the administrative stay.

5

Case 25-1406-DT Document 30-8 Filed 03/28/26 Page 37 of 26

## ARGUMENT

### I.      This Court Has Appellate Jurisdiction

This Court plainly has jurisdiction under both 28 U.S.C. § 1292(a)(1) and § 158(d)(1).  The District Court recognized the Bankruptcy Court "grant[ed] an injunction," Memorandum at 7, so the District Court's stay expressly modified or dissolved that injunction, bringing its order squarely within § 1292(a)(1).  *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992).  This Court's decisions are not to the contrary.  *In re Trans World Airlines, Inc.*, 18 F.3d 208, 213-14 (3d Cir. 1994) (no jurisdiction under § 1292(a)(1) because stay halted a "money judgment," not an injunction).  Inmarsat has no meaningful response, instead relying on dicta in one case, Response at 16-17 (quoting *Cohen*), and a case addressing the distinct scenario where a court does not expressly rule on injunctive relief, *id* (citing *Defense Distributed*).  Nor does Inmarsat grapple with *Ritzen*'s recognition that bankruptcy decisions are final where they dispose of discrete issues—exactly what happened here.

### II.     The District Court Fundamentally Misinterpreted The Parties' Agreement

The District Court fundamentally misunderstood the Mediated Agreement and Amended Cooperation Agreement.  Crediting Inmarsat's position, the District Court held that "[t]he parties spent months trying to reach agreement on amendments to the Cooperation Agreement that would coordinate the new NGSO satellites, but

no agreement was reached" and, the District Court found it significant that the Mediated Agreement referred to the terms of a "new Amended Agreement"—which the District Court believed does not yet exist. Memorandum at 11. None of that is correct.

Before Ligado's bankruptcy, Ligado and Inmarsat coordinated their use of L-band spectrum under the Cooperation Agreement. Prepetition, there were 21 amendments to the Cooperation Agreement.[7] During Ligado's bankruptcy, Inmarsat objected to Ligado's proposed transaction under which AST would begin using Ligado's spectrum. The Bankruptcy Court directed the parties to mediate their disputes.[8] That mediation yielded the Mediated Agreement, providing that Inmarsat "shall affirmatively support" Ligado's Application so long as it states that that the proposed system is coordinated "subject to" the Amended Cooperation Agreement. Mediated Agreement § 2. The Bankruptcy Court subsequently approved Ligado's entry into the Mediated Agreement.[9]

Thereafter, the parties disagreed about the meaning of the Mediated Agreement and brought that dispute before the Bankruptcy Court in August 2025. To resolve that dispute, the Bankruptcy Court entered the Enforcement Order and

---

[7] Ex. K ¶ 5.
[8] Bankr. Dkt. No. 384.
[9] Ex. D ¶ 6.

"directed [the parties] to incorporate the specific language of the [Mediated Agreement] into the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement, as applicable, unless otherwise mutually agreed by the parties."[10] With that, the parties negotiated and executed said *Amended* Cooperation Agreement by incorporating the terms of the Mediated Agreement into the 2010 Cooperation Agreement, thereby requiring AST to comply with the extensive technical and geographic limitations in the 2010 Cooperation Agreement in operating the Proposed NGSO System, providing direct recourse against AST, and introducing a new, expedited dispute resolution mechanism for coordination breaches. Mediated Agreement §§ 2-4.

Even Inmarsat does not dispute this, since confirmation of Ligado's Plan was conditioned on execution of the Amended Cooperation Agreement. Mediated Agreement n.4. Thus, the District Court's assertion that "no agreement was reached," Memorandum at 11, is simply wrong. The parties did reach an agreement and executed the Amended Cooperation Agreement.[11]

The District Court further erred by interpreting the Mediated Agreement to require further negotiation and coordination. Memorandum at 11. But that is wrong. *Nothing* in the Mediated Agreement specifies that the parties must negotiate or

---

[10] Ex. E ¶ 3.
[11] Ex. K ¶¶ 5, 8; Ex. A 11:1-2.

coordinate further. Inmarsat cannot point to a single express provision requiring as much.

Instead, Inmarsat bases its entire contract interpretation claim on an argument that the parties must have intended they would *further* coordinate to Inmarsat's satisfaction. But that suggestion writes words into the Mediated Agreement that simply are not there and ignores Inmarsat's account of the Mediated Agreement from its August briefing.[12] The only reasonable conclusion is that the parties agreed to leave well enough alone and live by the existing technical limitations of the 2010 Cooperation Agreement, as amended by incorporating key provisions of the Mediated Agreement.[13]

The Bankruptcy Court understood all of this. It correctly observed "[t]he [M]ediated [A]greement is a valid, binding contract, it was negotiated at arm's length through mediation under Judge Drain, and all the parties of course, having signed onto the mediated agreement, urged this Court to approve it, which I did."[14] Consistent with its binding nature, the Bankruptcy Court correctly found that "[f]ootnote 6 to the mediated agreement provides that Sections II through IV of the mediated agreement would be incorporated into the amended Inmarsat cooperation

---

[12]  *Contra* Memorandum at 10.

[13]  Mediated Agreement nn.5, 6.

[14]  Ex. A at 21:9-13.

9

agreement" and that, "consistent with the Court's instructions … Ligado and Inmarsat executed a further amended cooperation agreement."[15]

Until very recently, Inmarsat agreed. When it first asked the Bankruptcy Court to enforce the Mediated Agreement in August 2025, Inmarsat told the Bankruptcy Court that it "*agrees* that the Mediated Agreement imposes no *additional limits* on AST or Ligado beyond those in the [2010] Cooperation Agreement."[16] Because that is the case, Inmarsat urged the Bankruptcy Court that all it "needs to do … is to make clear that, under the plain language of the Mediated Agreement, both Ligado and AST are bound to honor the existing geographic and other limits of the Cooperation Agreement (whatever they may be), and bound to sign definitive documents reflecting that commitment."[17] The Mediated Agreement bound all parties to honor the "existing limits … in the Cooperation Agreement" such that those restrictions "do not need to change or be interpreted[.]"[18] Having taken that position before the Bankruptcy Court, Inmarsat cannot now jettison it by protesting that these statements were not about coordination. Response at 29-30. But the fact that the parties preserved their dispute about the scope of Cooperation

---

[15]  *Id.* at 9:9-11, 10:19, 11:1-2.

[16]  Supp. Ex. A ¶ 6.

[17]  *Id.* ¶ 4.

[18]  *Id.*

Agreement outside of North America is not the same as *this* dispute: Whether Ligado and AST upheld the Mediated Agreement in the FCC Application.[19]

Only after Inmarsat pocketed $420 million did it insist the Mediated Agreement vests it with the unilateral ability to declare how much coordination is enough. As the Bankruptcy Court recognized, Ligado and AST did not sign up for an agreement by which they would pay Inmarsat over $500 million and proceed with confirmation of the Plan if the entire bargain were subject to future negotiation.[20] The District Court simply mistook the effect of the Mediated Agreement and what it required, thereby committing an error of law requiring reversal. *Doe v. Nat'l Bd. of Medical Examiners*, 199 F.3d 146, 154 (3d Cir. 1999).

## III.   The District Court's Stay Subjects Ligado To Irreparable Harm

The District Court misunderstood Inmarsat's claim of potential harm. The District Court stated that if the Amended Cooperation Agreement defines what constitutes 'interference,' Ligado and AST will be under no obligation to amend those coordination terms to cover NGSO satellites. Memorandum at 12. This is a fundamental misunderstanding of coordination. The historical and Amended Cooperation Agreement establish parameters for satellite operations that prevent

---

[19]  Ex. A 13:2-6; Supp. Ex. B. at 38:5-7.
[20]  Ex. A 18:20-23; 19:12-17.

11

interference.[21] Ligado and AST have agreed (and have told the FCC they agreed) to operate the NGSO in compliance with the existing limits, meaning the Proposed NGSO System will not cause interference to Inmarsat.[22] But even assuming that at some point, the *operations* of any satellite system under the Amended Cooperation Agreement causes interference to another party, Inmarsat now has direct recourse and expedited dispute resolution procedures.[23] Those are precisely the procedures Inmarsat bargained for. "[C]ompelling Inmarsat to honor its commitments causes Inmarsat no cognizable harm. Inmarsat agreed to these obligations and has been paid."[24]

Ligado, on the other hand, risks adverse action from the FCC based on Inmarsat's flagrant, self-serving Response. Inmarsat falsely claims Ligado "determined" Monday's deadline. Response at 23. This critically ignores Ligado was obligated to file the Application by December 23, 2025[25] and, as the Bankruptcy Court recognized, any delay in obtaining FCC approval comes at great expense to Ligado while benefiting Inmarsat, its competitor.[26] Moreover, Ligado is

---

[21] Ex. A 5:22-6:6.

[22] Ex. G at 12.

[23] Mediated Agreement § 3.

[24] Ex. A at 22:1-3.

[25] Ex. K ¶ 19.

[26] Ex. A 22:9-16; Ex. K ¶ 22.

contractually bound by its stakeholders to secure regulatory approval within heavily-negotiated milestones, and the failure to do so would trigger a default under its financing facility and a termination right under Ligado's Restructuring Support Agreement.[27]  Further, Ligado cannot unilaterally change the FCC deadlines as Inmarsat suggests.  Response at 24.  That is the FCC's decision, not Ligado's, and it is the FCC's policy that extensions "shall not be routinely granted."  47 C.F.R. § 1.46(a).[28]  The Bankruptcy Court correctly observed that failure to obtain timely FCC approval would upend the Plan and cause "catastrophic harm to the estates and their stakeholders."[29]

## CONCLUSION

The Court should grant an administrative stay and vacate the District Court's stay.

---

[27]  Bankr. Dkt. Nos. 2; 104 Ex. 1.
[28]  Made applicable by 47 C.F.R. § 25.154(a)(3).
[29]  *Id.* at 22:5.

13

Dated:  March 1, 2026

/s/ *Michael J. Merchant*
Andrew M. Leblanc
Colleen E. Roh Sinzdak
  *Counsel of Record*
Melanie Westover Yanez
Victoria L. Colbert
Elizabeth M. Fly
Chase J. Hanson
**MILBANK LLP**
1101 New York Avenue, NW
Washington, DC 20005
(202) 835-7570
crohsinzdak@milbank.com

Dennis F. Dunne
Matthew L. Brod
Lauren C. Doyle
**MILBANK LLP**
55 Hudson Yards
New York, NY 10001
(212) 530-5000
ddunne@milbank.com

Mark D. Collins
Michael J. Merchant
Amanda R. Steele
Zachary J. Javorsky
**RICHARDS, LAYTON
& FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
collins@rlf.com

*Counsel to Ligado Networks LLC*

14

# COMBINED CERTIFICATE OF COMPLIANCE

1.  Pursuant to this Court's Local Appellate Rules ("LAR") 28.3(d) and 46.1(e), as the signatory on the foregoing document, I am admitted and a member in good standing at the Bar of this Court.

2.  This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure ("FRAP") 27(d)(2)(A) because it contains 2,592 words, excluding the parts of the motion exempted by FRAP 32(f).

3.  This motion complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman) using Microsoft Word, the same program used to calculate the word count.

4.  This motion complies with LAR 31.1(c) because the electronic file was scanned with the following antivirus software, and no virus was detected: Microsoft Defender Antivirus Version 1.429.516.0.

Dated:  March 1, 2026

By: */s/ Michael J. Merchant*
Michael J. Merchant