## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>LIGADO NETWORKS LLC, *et al.,*<br><br>            Debtors. | Chapter 11<br>Bankr. Case No. 25-10006 (TMH)<br><br>(Jointly Administered) |
| INMARSAT GLOBAL LIMITED,<br><br>          Appellant,<br><br>     v.<br><br>AST & SCIENCE LLC and LIGADO<br>NETWORKS LLC<br><br>          Appellees. | Civil Action No. 26-cv-00118 (GBW)<br><br>Appeal from the Bankruptcy Court |

## OBJECTION BY APPELLEE AST & SCIENCE LLC TO
## MOTION FOR STAY PENDING APPEAL

February 11, 2026

Madlyn Gleich Primoff, Esq.
Henry Hutten, Esq.
Alexander Rich, Esq.
Sarah Margolis, Esq.
**FRESHFIELDS US LLP**
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, New York 10007
Telephone: (212) 277-4000
Facsimile:  (212) 277-4001
Email: madlyn.primoff@freshfields.com
henry.hutten@freshfields.com
alexander.rich@freshfields.com
sarah.margolis@freshfields.com

Jeremy W. Ryan (No. 4057)
Katelin A. Morales (No. 6683)
Sameen Rizvi (No. 6902)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email: jryan@potteranderson.com
kmorales@potteranderson.com
srizvi@potteranderson.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................... 1

BACKGROUND ............................................................................................................................ 3

    I.       The AST Transaction: The Cornerstone of Ligado's Chapter 11 Plan........................ 3

    II.      The Mediated Agreement and Mediation Order ........................................................... 3

    III.    The August Motions to Enforce.................................................................................... 4

    IV.   Plan Confirmation........................................................................................................ 5

    V.     The FCC Application.................................................................................................... 6

    VI.    Inmarsat Files The NY Action...................................................................................... 6

    VII.   Ligado and AST Move to Enforce the Mediated Agreement ...................................... 7

    VIII.  Bankruptcy Court Hearing and Decision..................................................................... 7

A STAY IS NOT APPROPRIATE.................................................................................................. 9

    A.     Inmarsat Cannot Show Irreparable Harm. ................................................................. 10

    B.     Inmarsat Will Not Succeed on the Merits................................................................... 11

    C.     AST and Ligado Would Be Irreparably Harmed By a Stay. ....................................... 14

    D.     The Public Interest Disfavors a Stay........................................................................... 15

INMARSAT MUST POST A BOND............................................................................................ 16

CONCLUSION............................................................................................................................. 17

## TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*In re Broadstripe, LLC,*
    402 B.R. 646 (Bankr. D. Del. 2009) ................................................................ 15

*In re Cont'l Airlines,*
    91 F.3d 553 (3d Cir. 1996)............................................................................. 15

*In re Culp,*
    550 B.R. 683 (D. Del. 2015) .......................................................................... 14

*Danise v. Saxon Mortg. Servs., Inc.,*
    738 F. App'x 47 (3d Cir. 2018) ..................................................................... 13

*In re Essar Steel Minn. LLC,*
    2025 WL 974571 (D. Del. Apr. 1, 2025)...................................................... 9-10

*Holland v. Rosen,*
    895 F.3d 272 (3d Cir. 2018)............................................................................ 9

*In re JAB Energy Solutions II, LLC,*
    2025 WL 1937083 (3d Cir. July 15, 2025).................................................... 13

*In re Lazy Days' RV Ctr., Inc.,*
    724 F.3d 418 (3d Cir. 2013)........................................................................... 12

*In re Mallinckrodt plc,*
    2022 WL 1206489 (D. Del. Apr. 22, 2022).................................................... 11

*In re Natale,*
    280 F. App'x 227 (3d Cir. 2008) ............................................................... 13-14

*In re Revel AC, Inc.,*
    802 F.3d 558 (3d Cir. 2015)...................................................................... 2, 9-10

*In re Tribune Co.,*
    477 B.R. 465 (Bankr. D. Del. 2012) ............................................................. 16

*In re WorldCorp, Inc.,*
    252 B.R. 890 (Bankr. D. Del. 2000) ............................................................. 12

*In re W.R. Grace & Co.,*
    475 B.R. 34 (D. Del. 2012) .............................................................. 9, 14, 16

**Statutes**

11 U.S.C. § 105(a) .............................................................................................13

11 U.S.C. § 362(a)(3)........................................................................................7, 14

28 U.S.C. § 959..............................................................................................7-8, 14

**Other Authorities**

Fed. R. Bankr. P. 9014(c) ..................................................................................................................13

AST, for its objection to the Stay Motion filed by Inmarsat respectfully states as follows. In support of its objection, AST submits herewith the Declaration of Jennifer A. Manner (the "**Manner Declaration**"), which is incorporated herein by reference.[1]

## PRELIMINARY STATEMENT

Having accepted *$420 million* of AST's money pursuant to the carefully crafted terms of the Mediated Agreement, Inmarsat now seeks to avoid compliance with its bargained-and-paid-for Regulatory Support Obligations thereunder. The Mediated Agreement was heavily negotiated and Inmarsat's Regulatory Support Obligations are clear. Indeed, the Bankruptcy Court—which presided over the entry into, and approved the terms of, the Mediated Agreement—expressly determined that:

- No additional coordination process is required. *See* Ex. A 18:20-25; 19:1-11.[2]
- The Mediated Agreement does not condition Inmarsat's Regulatory Support Obligations on "Inmarsat's subjective satisfaction that coordination has been sufficient." *Id.* at 19:12-17.
- The two necessary preconditions to Inmarsat's Regulatory Support Obligations have been satisfied, *id.* at 20:1-7, and Inmarsat is required to support Ligado's FCC Application. Ex. B ¶ 3.

Inmarsat brazenly claims that its concerns about the eventual operations of the Proposed NGSO System justify its failure to support Ligado's FCC Application, as required. As the Bankruptcy Court found, Inmarsat's position is unsupported by the Mediated Agreement and poses potentially "catastrophic" harm to AST and Ligado. *See* Ex. A 22:3-5.

AST respectfully submits that the Stay Motion should be denied because Inmarsat will suffer no harm whatsoever in the absence of a stay pending appeal. The Manner Declaration at

---

[1]  Capitalized terms used but not defined herein have the meaning ascribed to them in the Manner Declaration.

[2]  References to an "Ex." are to the exhibits appended to the Declaration of Henry Hutten submitted contemporaneously herewith.

¶ 30 demonstrates that any potential for harmful interference with Inmarsat's satellite services is in no way imminent, is temporally remote and is entirely speculative. The Proposed NGSO System has not been approved by the Regulatory Authorities and no satellites have been launched.  The risk of harmful interference with Inmarsat's satellites during the pendency of this appeal, if Inmarsat is required to honor its obligation to support the FCC Application, is nonexistent.

Additionally, Inmarsat has no risk of irreparable harm at any point in time because the Mediated Agreement contains "Coordination Breach Procedures," setting forth an extremely expedited process for obtaining injunctive relief for any harmful interference caused by operation of the Proposed NGSO System.  Under Third Circuit precedent, Inmarsat's lack of irreparable harm requires its Stay Motion to fail "without further analysis."  *In re Revel AC, Inc.*, 802 F.3d 558, 571 (3d Cir. 2015).

Nor can Inmarsat satisfy the remaining stay factors. Inmarsat will not succeed on the merits.  The Bankruptcy Court's carefully reasoned Decision was compelled by the unambiguous terms of the Mediated Agreement.  *See* Ex. A 19:7-11 ("Inmarsat's interpretation that extensive additional coordination must occur … is irreconcilable with the parties' explicit agreement.").

Importantly, it is AST and Ligado that will be irreparably harmed if Inmarsat fails to support the FCC Application, as the Bankruptcy Court expressly determined. *Id.* at 22:6-16. Neither the AST Transaction nor Ligado's Chapter 11 Plan can be consummated without the regulatory approval that Inmarsat committed (and was paid $420 million of AST's money) to support. Inmarsat's breach of its Regulatory Support Obligations jeopardizes AST's "unique" opportunity to "obtain usage rights to the L-[B]and [S]pectrum." *Id.* at 22:6-13. A stay would also undermine the strong public interest in promoting the successful rehabilitation of debtors in Chapter 11 cases.

As the Bankruptcy Court recognized, if Inmarsat can "withhold the regulatory support that it committed to make based on interpretations" of the Mediated Agreement that are "contrary to [its] plain language," this would "give Inmarsat improper leverage to extract additional concessions." *Id.* at 22:22-23:1.   This Court too should reject Inmarsat's gambit to flout its bargained-and-paid-for regulatory support as leverage to obtain more than it agreed to in the Mediated Agreement.

## BACKGROUND

### I.      The AST Transaction: The Cornerstone of Ligado's Chapter 11 Plan.

The cornerstone of Ligado's restructuring in its Chapter 11 cases is the AST Transaction whereby, in exchange for the right to access Ligado's L-Band Spectrum, AST will provide Ligado with a substantial revenue stream to fund its post-Chapter 11 business. The AST Transaction, and the effectiveness of Ligado's Plan, remains subject to FCC approval.

On March 22, 2025, Ligado filed a motion (Bankr. Dkt. No. 352)[3] seeking to enter into the AST Transaction.   Inmarsat objected to that motion because it wanted to be paid its alleged $550 million cure claim under its Cooperation Agreement with Ligado.   The Cooperation Agreement addressed, *inter alia*, coordination of the rights of Inmarsat and Ligado to use their FCC-licensed L-Band Spectrum.

### II.     The Mediated Agreement and Mediation Order.

Inmarsat's objection was resolved through months of mediation, and extensive negotiation of the Mediated Agreement. On June 23, 2025, the Bankruptcy Court entered the Mediation Order, approving the AST Transaction and the Mediated Agreement.  *See* Ex. C.

The Mediated Agreement provides for AST to fund $535 million of payments to Inmarsat.

---

[3]      References to a "Bankr. Dkt. No." are to the docket entries in the above-captioned Chapter 11 cases.

The first installment of $420 million was *indefeasibly* paid by AST in October 2025. Ex. C-1 § 4.

Section 2 of the Mediated Agreement requires Inmarsat to "affirmatively support" Ligado's regulatory applications relating to the Proposed NGSO System provided that two conditions are met. *Id.* at § 2. The "two conditions" in Section 2 require that regulatory applications:

> (i) state that the operations of all AST and Ligado spacecraft, individually and taken as a whole, and regardless of orbit, will be consistent with and remain within the technical, geographic and other limitations in the Amended Inmarsat Cooperation Agreement and Ligado's other coordination agreements with various parties; and

> (ii) request that the FCC and ISED recognize that the operations of the Proposed NGSO System have been coordinated subject to the terms of the Amended Inmarsat Cooperation Agreement and the Inmarsat-AST Agreement and give effect to such agreements by licensing the Proposed NGSO System to operate in accordance with the terms of such agreements.

The Mediated Agreement states that "[t]he applications will not be more granular in respect of prong (ii)" above. *Id.* at n.8. Inmarsat also must "refrain[] from taking any public or private action contrary to any of" its Regulatory Support Obligations. *Id.*

### III.    The August Motions to Enforce.

The Mediated Agreement required AST and Inmarsat to execute a separate agreement, *i.e.*, the Inmarsat-AST Agreement, giving each party rights against the other "in connection with any" alleged "Coordination Breach." *Id.* at n.5. The Mediated Agreement also required Ligado and Inmarsat to execute the Amended Inmarsat Cooperation Agreement (the "**CoopAg**"), with Sections 2–4 of the Mediated Agreement "to be incorporated" therein. *Id.* at n.6. Ligado, Inmarsat and AST negotiated the terms of the Inmarsat-AST Agreement and the CoopAg but reached an impasse. Manner Decl. ¶ 15.

On August 14, 2025, Inmarsat filed a motion with the Bankruptcy Court, seeking to incorporate anti-competitive language into its direct agreements with AST and Ligado and to "compel" AST's specific performance under the Mediated Agreement. Ex. D Conclusion.

Inmarsat argued—*in direct contravention of its current position*—that "section 105(a) of the Bankruptcy Code, the [Mediation] Order, and the Mediated Agreement" were the "statutory and legal predicates" necessary to compel performance. *Id.* p.1, ¶ 14. Ligado filed a cross-motion, which AST joined.

Following the August 29, 2025 hearing to consider Inmarsat's motion and Ligado's cross-motion, the Bankruptcy Court directed the parties "to include the language that is specifically identified in the [Mediated Agreement]" into the CoopAG and the Inmarsat-AST Agreement. Ex. E 30:8-9; *see also* Ex. F ¶ 3.

On September 21, 2025, (i) AST and Inmarsat executed the Inmarsat-AST Agreement, incorporating Sections 2-3 of the Mediated Agreement, *see* Ex. G, and (ii) Ligado and Inmarsat executed the CoopAg, incorporating Sections 2-4 of the Mediated Agreement.

The Mediated Agreement, the CoopAG and the Inmarsat-AST Agreement contain AST and Ligado's promise that the operations of the Proposed NGSO System will "be consistent with and remain within the technical, geographic and other limitations in the [CoopAg]." Ex. C-1 § 2. This promise is enforceable because Section 3 of the Mediated Agreement includes Coordination Breach Procedures allowing Inmarsat to seek highly expedited injunctive relief for an alleged breach of the "technical and/or geographical limitations of the" CoopAg "that is "caused by the operations of the Proposed NGSO System." *Id.* at § 3.

## IV.    Plan Confirmation.

On September 29, 2025, the Bankruptcy Court confirmed the Plan. FCC approval of the AST Transaction is a condition precedent to the "effectiveness" of the Plan. Bankr. Dkt. No. 1007-1 at Art. IX(A)(17).

## V.      The FCC Application.

On December 8, 2025, Ligado filed the FCC Application, *see* Ex. H, which AST expressly endorsed.  *Id.* at 42. The FCC Application clearly "meet[s] the two conditions" in Section 2 of the Mediated Agreement set out at page 4 above. First, it reflects the agreement by Ligado and AST that the Proposed NGSO System's spacecraft will remain within the technical, geographic and other limitations of the CoopAg. Second, it requests the FCC recognize that the operations of the Proposed NGSO System have been coordinated subject to the terms of the relevant agreements among Inmarsat, Ligado and AST. *Id.* at 12.  As described further in the Manner Declaration, *see* ¶¶ 17-18, "the operations of the Proposed NGSO System have been coordinated subject to the terms of the [CoopAg] and the Inmarsat-AST Agreement," Ex. C-1 § 2, because the Inmarsat-AST Agreement and the CoopAg incorporate the language of Sections 2 and 3 of the Mediated Agreement, which language constitutes AST and Ligado's coordination commitments.

Thus, as the Bankruptcy Court determined, the FCC Application "contains the statements, substantially in the form that were required by Section II of the [M]ediated [A]greement," Ex. A 12:19-21, and the "FCC [A]pplication accurately states that operations will be consistent with and remain within" the limitations "of the [CoopAg]." *Id.* at 20:1-4. Because "both conditions have been satisfied," *id.* at 20:6-7, Inmarsat must support the FCC Application and **"refrain[] from"** any **"action contrary to"** this obligation. Ex. C-1 § 2 (emphasis added).

## VI.     Inmarsat Files the NY Action.

On December 19, 2025, Inmarsat commenced the NY Action, asserting wrongly that AST and Ligado breached their obligations under the Mediated Agreement because additional coordination was needed. *See* Ex. I ¶¶ 62-64.  In violation of its express obligation to refrain from taking action contrary to the FCC Application, Inmarsat stated that it "intends to petition the **FCC to deny** the [FCC] [A]pplication." *Id.* at ¶¶ 7, 59 (emphasis added).

6

## VII.    Ligado and AST Move to Enforce the Mediated Agreement.

On January 2, 2026, Ligado and AST filed Emergency Motions to enforce the automatic stay under Section 362 of the Bankruptcy Code and to compel Inmarsat to perform its Regulatory Support Obligations.

Inmarsat filed an objection, contending that (1) the NY Action did not violate the automatic stay, (2) the Bankruptcy Court could not order specific performance without an adversary proceeding; and (3) its Regulatory Support Obligations were not triggered until the parties agreed upon *further* amendments to the CoopAg.  This third contention **flatly contravened** *Inmarsat's prior statements* to the Bankruptcy Court that, pursuant to the Mediated Agreement:

> [B]oth Ligado and AST are bound to honor the *existing* geographic and other limits of the Cooperation Agreement (*whatever they may be*)" and that the "existing limits" in "the Cooperation Agreement *do not need to change*."

Ex. J ¶ 4 (emphasis added). Indeed, Inmarsat told the Bankruptcy Court in connection with the disputes last August that it "*agrees* that the Mediated Agreement imposes no *additional limits* on AST or Ligado beyond those in the Cooperation Agreement."  *Id.* at ¶ 6 (emphasis in original).

## VIII.   Bankruptcy Court Hearing and Decision.

The Bankruptcy Court conducted a hearing on the Emergency Motions on January 14, 2026. On January 27, 2026, the Bankruptcy Court issued its thorough and well-reasoned Decision, rejecting each of Inmarsat's arguments. Ex. A.

*First*, Inmarsat violated the automatic stay. The NY Action sought to "exercise control over" property of Ligado—including Ligado's rights to use the L-Band Spectrum and Ligado's rights pursuant to the Mediated Agreement—and was barred by section 362(a)(3) of the Bankruptcy Code. *Id.* at 14:5-15:8. While 28 U.S.C. § 959 allows post-petition lawsuits against a debtor concerning "ordinary business operations" without stay relief, that statute "doesn't displace Section 363(a)(3)'s prohibition on acts to exercise control over [e]state property." *Id.* at 15:17-

7

16:12. Even if the NY Action was not barred by the automatic stay, the Bankruptcy Court would still have exercised its "great" discretion under 28 U.S.C. § 959 to "bar the [NY Action] from going forward" given "the absolutely critical nature of the FCC licenses and the [M]ediated [A]greement to" the Debtors' reorganization. *Id.* at 16:14-22.

*Second*, no separate adversary proceeding was required. In the Mediation Order, the Bankruptcy Court "expressly retained jurisdiction" with respect to "all matters arising from or relating to the implementation, interpretation and enforcement of" the Mediated Agreement, which is exactly what the Emergency Motions "concern[ed]." *Id.* at 13:20-14:4. The Plan provides "for the survival of" the Mediation Order, which "approved the [M]ediated [A]greement." *Id.* at 11:14-16. Because "an adversary proceeding isn't required where," as with the Emergency Motions, "the relief sought is provided in a Chapter 11 plan," there was no requirement for an adversary proceeding. *Id.* at 17:25-18:7.

*Third*, the Bankruptcy Court rejected Inmarsat's contention that additional coordination of the Proposed NGSO System was necessary by stating:

> So, this language [in the Mediated Agreement] requires a statement that coordination exists under and pursuant to [the Inmarsat-AST Agreement and CoopAg], but not that some additional coordination process beyond the agreement[s'] terms has been completed.
>
> Footnote 8 to Section 2 [of the Mediated Agreement] expressly states the [FCC] application[] will not be more granular . . . and this provision directly refutes any argument that the FCC [A]pplication must contain detailed technical specifications or elaborate coordination documentation beyond the statements required by condition 2. . . . So, Inmarsat's interpretation that extensive additional coordination must occur before the FCC [A]pplication can be filed is irreconcilable with the parties' explicit agreement that the application will not be more granular.
>
> The [M]ediated [A]greement also does not state that the parties must negotiate or complete additional technical exhibits before filing the FCC [A]pplication, and it doesn't . . . condition Inmarsat's regulatory support on Inmarsat's subjective satisfaction that coordination has been sufficient.
>
> By executing the [CoopAG] and the Inmarsat[-]AST [A]greement, AST and

Ligado committed that operations of the [P]roposed NGSO [S]ystem would comply with the cooperation agreement's terms.

*Id*. at 18:20-19:21. The FCC Application therefore satisfied both conditions precedent to Inmarsat's Regulatory Support Obligations. *Id*. at 20:1-7.

The Bankruptcy Court also ordered specific performance. *Id*. at 21:3-23:4. "[C]ompelling Inmarsat to honor its" obligations "causes Inmarsat no cognizable harm" because "it has agreed to those obligations and has been paid." *Id.* at 21:23-23:4. Meanwhile, "[f]ailure to obtain the regulatory approval would likely result in failure of the [P]lan, causing catastrophic harm to the estates and their stakeholders," *id.* at 22:3-5, which "cannot be adequately compensated in damages." *Id.* at 22:14-15. Moreover, the L-Band Spectrum is a "finite [g]overnment-allocated resource," and thus the "opportunity for AST to obtain usage rights to the L-[B]and [S]pectrum is unique" and "[n]o amount of money could recreate" that opportunity if Inmarsat's breaches caused regulatory approval to fail. *Id.* at 22:6-13.

The Bankruptcy Court entered its Order on January 30, 2026 granting the Emergency Motions and denying Inmarsat's oral motion for a stay pending appeal. *See* Ex. B.[4]

### A STAY IS NOT APPROPRIATE

A stay pending appeal "is an extraordinary remedy" granted "only in limited circumstances." *Holland v. Rosen*, 895 F.3d 272, 285 (3d Cir. 2018). Inmarsat "bears the burden of showing" a stay is justified, *In re W.R. Grace & Co.*, 475 B.R. 34, 205 (D. Del. 2012) in accordance with the factors in *Revel*, 802 F.3d at 568. As this Court observed in *In re Essar Steel Minnesota LLC*, 2025 WL 974571 (D. Del. Apr. 1, 2025) (denying stay), if the movant fails to

---

[4] The Bankruptcy Court did not "summarily" deny Inmarsat's stay request. Mot. at 8. In its Decision, the Bankruptcy Court carefully determined that (1) Inmarsat has no chance of success on the merits, (2) Inmarsat cannot show irreparable harm, and (3) the balance of the harms favors Ligado and AST.

show "either" irreparable harm or likelihood of success, the stay should be denied without further analysis." *Revel* at 571.

###### A.    Inmarsat Cannot Show Irreparable Harm.

Inmarsat will not suffer irreparable harm during its appeal by supporting the FCC Application because there is no risk, let alone "*likelihood*," of "actual and imminent" injury. *Id.* The Proposed NGSO System is not approved, launched or operational. Manner Decl. ¶ 30. Therefore, there is zero possibility of harmful interference with Inmarsat's satellites during its appeal.

Nevertheless, after the Proposed NGSO System is approved and launched, if Inmarsat believes that the satellites do not comply with the limits in the CoopAg, Inmarsat "can invoke the dispute resolution procedures" contained in the Mediation Agreement, as it previously told the Bankruptcy Court. *See* Ex. J ¶ 37. Indeed, the Coordination Breach Procedures provide that, if an alleged "Coordination Breach" is not cured within 24 hours of Inmarsat notifying Ligado or AST, Inmarsat may file a "Coordination Breach Complaint' with a neutral arbitrator, who must hold a hearing within five days, and issue a ruling within seven days.  *See* Ex. C-1 § 3.  If there were a breach, this ruling must include a corrective injunction that must be implemented within 24 hours. *See id.*  These periods "may be reduced" for any breach "alleged to impact the availability of Inmarsat safety services."  *Id.*  Thus, even if there could be harmful interference during appeal, Inmarsat would have an adequate remedy.  *Essar*, 2025 WL 974571, at *6 (no irreparable harm where "any potential harm can be redressed by a legal remedy").

Inmarsat's contentions that further coordination is required—and thus the Bankruptcy Court directed it to lie to the FCC—is belied by its own statements to the Bankruptcy Court that the only coordination required "under the plain language of the Mediated Agreement" was for AST and Ligado "to honor the existing geographic and other limits of the Cooperation Agreement

(whatever they may be), and [be] bound to sign definitive documents reflecting that commitment." Ex. J ¶ 4. As the Bankruptcy Court determined, there is no requirement for "some additional coordination process" beyond AST and Inmarsat's commitment that the operations Proposed NGSO System will be consistent with the Inmarsat-AST Agreement and the CoopAg. *See* Ex. A 18:22-23; Manner Decl. ¶¶ 17-18, 32.

Finally, Inmarsat will suffer no harm from dismissing the NY Action—in which it violated the automatic stay—with prejudice. *See* Ex. A 14:5-17:24. Inmarsat' right to assert a Coordination Breach in the future is preserved.

Inmarsat's failure to show irreparable harm, standing alone, is fatal to its Stay Motion. *In re Mallinckrodt plc*, 2022 WL 1206489, at \*1 (D. Del. Apr. 22, 2022) (denying a stay pending appeal solely because appellants "have not shown a likelihood of irreparable harm").

### B. Inmarsat Will Not Succeed on the Merits.

Inmarsat argues that (i) the Bankruptcy Court misinterpreted the Mediated Agreement, (ii) an adversary proceeding was required and (iii) the automatic stay did not apply. Not so.

***The Bankruptcy Court correctly interpreted the Mediated Agreement***. Inmarsat argues Ligado and AST must agree to further amendments to the CoopAg (a) before they can represent in the FCC Application that "the operations of the Proposed NGSO System have been coordinated subject to the terms of the [CoopAg]," Ex C-1 § 2 and thus (b) before Inmarsat's Regulatory Support Obligations are triggered. Mot. at 6-7, 15. This contravenes the plain language of the Mediated Agreement and is flatly contrary to Inmarsat's prior representations to the Bankruptcy Court.

AST and Ligado promised in the Mediated Agreement, the Inmarsat-AST Agreement and the CoopAG that "the operations of the Proposed NGSO System will be consistent with and remain within the technical, geographic and other limitations of the [CoopAg]." Ex. C-1 §§ 2, 3. As the

11

Bankruptcy Court held, the Mediated Agreement "requires a statement" in the FCC Application "that coordination exists under and pursuant to these agreements, but not that some additional coordination process beyond the agreement's terms has been completed." Ex. A 18:20-23. Therefore, by executing the Inmarsat-AST Agreement and CoopAg, AST and Ligado could accurately represent to the FCC that operations of the Proposed NGSO System have been coordinated subject to these agreements, and nothing more is required to trigger Inmarsat's Regulatory Support Obligations. *See id.* at 19:18-20:7; *see also* Manner Decl. ¶¶ 14, 17-19, 32.

***No adversary proceeding was necessary***. In its Emergency Motion, AST sought to enforce the Bankruptcy Court's prior Mediation Order, which the Bankruptcy Court had expressly retained jurisdiction to interpret and enforce together with the Mediated Agreement that was attached as an exhibit thereto. Under Third Circuit precedent, an adversary proceeding is unnecessary when a bankruptcy court is asked "to interpret and enforce its existing prior orders." *In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 425 (3d Cir. 2013); *In re WorldCorp, Inc.*, 252 B.R. 890, 895 (Bankr. D. Del. 2000) (enforcing a court-approved agreement via motion because the movant was "merely seeking to enforce an order already in place"). Contrary to Inmarsat's claim, Mot. at 12, a bankruptcy court may grant injunctive relief without an adversary proceeding even when it is not enforcing an existing injunction.[5]

The Bankruptcy Court rightly reached its Decision solely by interpreting the plain terms of the Mediated Agreement without relying on the ample extrinsic evidence submitted by Inmarsat, including letters and e-mails. *See* Bankr. Dkt. Nos. 1250, 1252. For this reason too, an adversary

---

[5] Moreover, the Bankruptcy Court expressly reserved jurisdiction in the Plan to "issue injunctions" to "restrain interference" with "[c]onsummation or enforcement of the Plan," Plan. Art. XI.10, Bankr. Dkt. No. 1007-1, and the Bankruptcy Court expressly found that it was enforcing the Plan when ordering injunctive relief. *See* Ex. A 18:4-7.

proceeding was unnecessary. *E.g.*, *In re JAB Energy Solutions II, LLC*, 2025 WL 1937083, at *3 (3d Cir. July 15, 2025) (declining "to disturb" a bankruptcy court's ruling on the "procedural grounds" asserted by Inmarsat here when the bankruptcy court's ruling concerned only "interpretation of" the operative document).[6]

Nor can Inmarsat raise the procedural issue of an adversary proceeding because Inmarsat itself has previously engaged in motion practice (not an adversary proceeding) to ask the Bankruptcy Court to compel AST's compliance with the Mediated Agreement. See Ex. D. Based on the Mediated Agreement, the Mediated Order, and the Bankruptcy Court's inherent authority under section 105(a) of the Bankruptcy Code, *id.* at p.1, ¶ 14, the Bankruptcy Court granted injunctive relief. Ex. F ¶ 3(directing AST and Ligado to execute contracts with Inmarsat). After adopting this position and inducing the Bankruptcy Court's reliance on it, Inmarsat cannot now in good faith, without offending the integrity of the courts, assert an "irreconcilably inconstant" position seeking more protections than it afforded AST. *Danise v. Saxon Mortgage Servs. Inc*, 738 F. App'x 47, 50-51 (3d Cir. 2018). Inmarsat is judicially estopped from doing so. *Id.*

Nor can Inmarsat complain that it had insufficient time to oppose the Emergency Motions or take discovery. Rather than object to AST's motion to shorten the notice period, Inmarsat sought (and was granted) ten days to respond to the Emergency Motions. *See* Ex. K 7:4-14, 8:1-2. Inmarsat did not seek to propound discovery to oppose the Emergency Motions, even though the Bankruptcy Rules permitted it to do so. *See* FED. R. BANKR. P. 9014(c). Thus, Inmarsat's argument that it was entitled to additional time to take discovery and put forth evidence is "waived and may not be considered by the district court on appeal." *In re Natale*, 280 F. App'x 227, 229 (3d Cir.

---

[6] Likewise, the substantial extrinsic evidence of the parties' supposed intent that Inmarsat includes in the Declaration of John P. Janka, *see* ¶¶ 15-25, is irrelevant and should not be considered by this Court.

2008).

***The Bankruptcy Court properly enforced the automatic stay***.  The Mediated Agreement and Ligado's licenses to use the L-Band Spectrum are core assets of Ligado's bankruptcy estate. Thus, the NY Action—which seeks determinations concerning these property rights—is a textbook prohibited "act to . . . exercise control over property of the estate."  11 U.S.C. § 362(a)(3); *W.R. Grace*, 475 B.R. at 147-48 (automatic stay bars post-confirmation action that would "inevitably have an adverse impact on the property of the bankruptcy estate").  There was no error, much less abuse of discretion, in the Bankruptcy Court's conclusions that (i) section 362(a)(3) of the Bankruptcy Code bars the NY Action, and that (ii) even if it did not, the Bankruptcy Court would use its "great" discretion under 28 U.S.C. § 959 to bar the NY Action given "the critical nature of the FCC licenses and the [M]ediated [A]greement" to consummation of the Plan.  Ex. A 16:10-22.

Inmarsat's failure to show likelihood of success also dooms its Stay Motion.  *In re Culp*, 550 B.R. 683, 700 (D. Del. 2015) (denying stay "without further analysis" because movants did not show "they are likely to succeed on the merits").

### C.    AST and Ligado Would Be Irreparably Harmed By a Stay.

As the Bankruptcy Court determined, the balance of the harms strongly disfavors a stay:

> Denying specific performance would allow Inmarsat to retain $420 million so far without providing the consideration it bargained to provide. Conversely, compelling Inmarsat to honor its commitment causes Inmarsat no cognizable harm. Inmarsat agreed to these obligations, [and] has been paid.  Failure to obtain the regulatory approval would likely result in failure of the [P]lan, causing catastrophic harm to the estates and their stakeholders.

Ex. A 21:23-22:5.

The FCC opened the comment period on the FCC Application on January 30, 2026. Manner Decl. ¶ 22.  There is a 30-day window in which Inmarsat can provide initial comments

14

supporting the FCC Application. *Id.* If Inmarsat opposes the FCC Application (as it intends to do) that bell cannot be unrung. *Id.*

The Mediated Agreement is a contract for Inmarsat's support in obtaining regulatory approval for a one-of-a-kind AST Transaction. The irreparable harm from Inmarsat's breach is the potential loss of the entire AST Transaction, and the destruction of AST's "unique" opportunity to "obtain usage rights to the L-band spectrum" that "can't be purchased on the open market." Ex. A 22:6-9; Manner Decl. ¶ 27. If Inmarsat derails the AST Transaction, "[n]o amount of money could recreate" AST's opportunity to access the L-Band Spectrum. Ex. A 22:12-13; Manner Decl. ¶ 27.

Regulatory approval of the AST Transaction is a condition precedent to Plan consummation. If Inmarsat is allowed, contrary to the Mediated Agreement, to oppose the FCC Application, that could "result in failure of the [P]lan, causing catastrophic harm to" the Debtors "and their stakeholders." Ex. A 22:3-5. This too constitutes irreparable injury. *In re Broadstripe, LLC*, 402 B.R. 646, 658 (Bankr. D. Del. 2009) (finding irreparable harm where the absence of specific performance "could irreparably jeopardize" the debtor's "prospects for reorganization in [C]hapter 11").

### D.     The Public Interest Disfavors a Stay.

Public policy strongly favors consummation of confirmed plans of reorganization. *In re Cont'l Airlines*, 91 F.3d 553, 565 (3d Cir. 1996) (noting the "strong public policy in favor of maximizing debtors' estates and facilitating successful reorganization."). Inmarsat's continuing breaches of the Mediated Agreement threaten to interfere with consummation of the AST Transaction and the Plan, with potentially "catastrophic harm" to Ligado's reorganization. Ex. A 22:3-5. Moreover, allowing Inmarsat to "withhold regulatory support that it committed to make" would give it "improper leverage to extract additional concessions." *Id.* at 22:20-23:1; Manner

15

Decl. ¶¶ 28, 34.

## INMARSAT MUST POST A BOND

If the Court grants the Stay Motion, Inmarsat must be required to post a bond of at least $520 million. A bond should be ordered if it is needed to "secure the prevailing party against any loss that might be sustained as a result of an ineffectual appeal." *In re Tribune Co.*, 477 B.R. 465, 468 (Bankr. D. Del. 2012). If a movant seeks a stay without a bond, it "has the burden of demonstrating why the court should deviate from the ordinary full security requirement," *W.R. Grace*, 475 B.R. at 209, which requires "exceptional circumstances." *Tribune*, 477 B.R. at 478.

If the AST Transaction does not receive regulatory approval, Inmarsat is not obligated to return the "indefeasible" payments it receives under the Mediated Agreement to Ligado or AST. Ex. C-1 §§ 4, 9. Because Inmarsat's conduct could result in the loss of regulatory approval, Inmarsat must be required to protect Ligado against the harm that it will demonstrably suffer (*e.g.*, $520 million), which monies will have been paid by Ligado and AST to Inmarsat. Thus, in addition to the immeasurable loss from failure to consummate the AST Transaction and the Plan (which no amount of money can fix), Inmarsat's breaches of the Mediated Agreement may harm Ligado by at least this amount. Thus, any stay should be conditioned on Inmarsat's supersedeas bond of at least $520 million. *E.g.*, *Tribune*, 477 B.R. at 484-85 (conditioning a stay on a $1.5 billion bond).

[*remainder of page intentionally left blank*]

16

## **CONCLUSION**

AST respectfully requests that the Court deny the Stay Motion or, in the alternative, require

Inmarsat to post a supersedeas bond of no less than $520 million before any stay is ordered.

Dated: February 11, 2026
Wilmington, Delaware

*/s/ Jeremy W. Ryan*

Jeremy W. Ryan (Bar No. 4057)
Katelin A. Morales (Bar No. 6683)
Sameen Rizvi (Bar No. 6902)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, DE 19801
Telephone:    (302) 984-6000
Facsimile:    (302) 658-1192
Email:        jryan@potteranderson.com
              kmorales@potteranderson.com
              srizvi@potteranderson.com

-and-

Madlyn Gleich Primoff (admitted *pro hac vice*)
Henry Hutten (admitted *pro hac vice*)
Alexander Rich (admitted *pro hac vice*)
Sarah Margolis (admitted *pro hac vice*)
**FRESHFIELDS US LLP**
3 World Trade Center
174 Greenwich Street, 51st Floor
New York, New York 10007
Telephone:    (212) 277-4000
Facsimile:    (212) 277-4001
Email:        madlyn.primoff@freshfields.com
              henry.hutten@freshfields.com
              alexander.rich@freshfields.com
              sarah.margolis@freshfields.com

*Counsel for AST & Science LLC*

17

## CERTIFICATE OF COMPLIANCE

Pursuant to Bankruptcy Rule 8015(h), I hereby certify that this document complies with the type-volume limitation of Bankruptcy Rule 8013(f)(3)(A). Exclusive of the exemption portions specified in Bankruptcy Rule 8015(g), this document contains 4,922 words as counted by the word-processing system used to prepare the document.

Dated: February 11, 2026                    /s/ Jeremy W. Ryan
Wilmington, Delaware                        Jeremy W. Ryan (Bar No. 4057)