**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| LIGADO NETWORKS LLC, *et al.*,[1] | ) Case No. 25-10006 (TMH) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket Nos. 1508, 1525, 1530** |
| | ) |

**DEBTORS' REPLY IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER
(I) TEMPORARILY DELAYING LIGADO'S PERFORMANCE UNDER
THE MEDIATED AGREEMENT AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (the "Debtors" or "Ligado") submit

this reply in further support of the *Debtors' Motion for Entry of an Order (I) Temporarily Delaying*

*Ligado's Performance Under the Mediated Agreement and (II) Granting Related Relief* [Docket

No. 1508] (the "Motion") and in response to *Inmarsat Global Limited's Objection to Debtors'*

*Motion for Entry of an Order (I) Temporarily Delaying Ligado's Performance Under the Mediated*

*Agreement and (II) Granting Related Relief* [Docket No. 1530] (the "Objection"). For the reasons

set forth herein, the Objection should be overruled, and the Motion should be granted.[2]

**PRELIMINARY STATEMENT**

1. During these cases, Ligado and AST struck a bargain with Inmarsat to resolve

several outstanding disputes among them. The crux of Inmarsat's obligation under the agreement

was to affirmatively support Ligado's regulatory applications for the Proposed NGSO System,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A). The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2] Capitalized terms used not otherwise defined herein have the meanings ascribed to them in the Motion.

including the Application.[3] Notwithstanding that Ligado and AST paid Inmarsat *$420 million* and Ligado submitted the Application exactly as required by the Mediated Agreement, Inmarsat utterly failed to deliver on its obligation. First, Inmarsat publicly sued Ligado falsely alleging insufficient coordination, in material breach of their commitments. As bad as filing the Complaint was, Inmarsat's conduct with respect to the FCC process was even worse. Inmarsat filed a petition with the FCC to deny the Application, days before the deadline for submissions, at a time when it was aware that Ligado had sought Third Circuit review, even going so far as to admit to the Third Circuit that it filed at that time out of a fear (well grounded) that the Third Circuit might reimpose the injunction that this Court had ordered. These acts were blatant material breaches of Inmarsat's most central obligation under the Mediated Agreement, done in a manner specifically designed to cause maximum disruption to the FCC process. Inmarsat ran roughshod over the agreement that the parties struck.

2.      Notwithstanding Inmarsat's substantial breaches, Ligado has thus far upheld, and intends to continue to uphold, its end of the bargain. Indeed, the Mediated Agreement is important to Ligado's Plan and emergence. Ligado is not asking to terminate the remainder of the Mediated Agreement or exercising self-help; instead, Ligado is asking this Court for the modest relief of holding the $100 million payment in escrow until the earlier of the Plan Effective Date or resolution of litigation arising from Inmarsat's material and substantial breaches. This temporary

---

[3]    Inmarsat's "affirmative support" obligations under the Mediated Agreement include: "filing Comments and Reply Comments in support of the application(s) at the FCC and ISED, and responding to requests or inquiries from Ofcom regarding the coordination within the L-Band; providing notice to the Debtors of any industry and commercial customer complaints/objections about the application(s) received by or known to Inmarsat; engaging in negotiations with other Region 2 operators as needed to coordinate the Proposed NGSO System; working cooperatively for NGSO and GSO systems for the Debtors (including the Proposed NGSO System) and Inmarsat/Viasat to coexist in accordance with the Amended Inmarsat Cooperation Agreement; and refraining from taking any public or private action contrary to any of the foregoing." Mediated Agreement § 2.

relief will not impact the ultimate agreement reached under the Mediated Agreement—unlike the irreparable actions Inmarsat took.

3.    Yet, now, when Ligado seeks a temporary reprieve so as not to reward Inmarsat for its material and substantial breaches, Inmarsat suddenly wants to shield itself with the agreement it once called a "dead letter."  Although Inmarsat has now submitted Reply Comments (defined herein) that purport, based on the rulings of this Court and the Third Circuit, to support the Application, the damage is done.  No cure can be effected.  All that is left is to determine how harmful Inmarsat's breaches have been to Ligado.

4.    Requiring Ligado and AST to pay now another $100 million to Inmarsat—the party that intentionally deprived Ligado of the benefit of its bargain under the Mediated Agreement—is inequitable and should not be the result.  Ligado should be equitably excused from the burden of making a $100 million payment to Inmarsat on March 31, 2026.

## ARGUMENT

### I.    Ligado Did Not Receive the Benefit of Its Bargain

5.    As this Court has recognized, the Debtors and AST have complied with the Mediated Agreement in all respects, including by already paying Inmarsat $420 million in exchange for Inmarsat's *affirmative support* for the Application.  Yet, Inmarsat has continuously attempted to cause the delay or denial of the Application.  Avoiding the uncertainty, risk, and delay that would be caused by Inmarsat's opposition of the Application was exactly what the Debtors and AST bargained—and agreed to pay more than $500 million—for in the Mediated Agreement.

6.    Inmarsat's protestation that Ligado did not agree to pay Inmarsat $535 million *in exchange* for Inmarsat's affirmative support makes no sense—the Mediated Agreement is a settlement between parties that each gave up certain rights in exchange for others.  Inmarsat's

Objection places the focus of the Mediated Agreement on what Inmarsat agreed to relinquish: it gave up $101 million in cure payments Ligado allegedly owed to Inmarsat in exchange for certain "guaranteed" payments. *See, e.g.*, Objection ¶ 5. Inmarsat conveniently brushes aside Ligado's side of the bargain: Ligado agreed to stay the lawsuit it filed against Inmarsat in New York County Supreme Court and agreed to pay $535 million in exchange for Inmarsat's agreement that it would affirmatively support the regulatory applications for the Proposed NGSO System, including the Application.

7.        Inmarsat repeatedly argues that the Upcoming Cure Payment "is **not** conditioned on Inmarsat supporting the FCC application[.]" Objection ¶ 36 (emphasis in original); *see also id.* ¶¶ 3, 12, and 39. But this argument misses the critical point: the entire crux of the Mediated Agreement was Inmarsat's agreement to affirmatively support Ligado's applications to its regulators. Inmarsat breached this obligation. By filing the Complaint and the Petition to Deny, Inmarsat not only failed to meet its obligations under the Mediated Agreement but actively sought to harm Ligado's prospects before the FCC.

8.        Given the unique circumstances present here, Ligado is not seeking to terminate the Mediated Agreement, nor to be forever relieved of its obligations. But that does not erase the fact that Inmarsat materially breached its obligations under the Mediated Agreement. In an attempt to excuse its conduct, Inmarsat asserts that Ligado's statement that the Petition to Deny was an effort to nullify the Third Circuit's review is "patently false." Objection ¶ 25. Inmarsat has this backwards. Mere hours after the District Court entered an order staying this Court's Enforcement Order, Inmarsat rushed to file the Petition to Deny on February 27, 2026—four days in advance of the March 2, 2026 deadline to file comments with the FCC. Inmarsat made this filing *four days early* despite the fact that Ligado and AST had **already** noticed appeals of the District Court Order

to the Third Circuit.   Nowhere does the Objection explain how Inmarsat's "time-sensitive" concerns could not wait until the deadline to file comments with the FCC.  Objection ¶ 7.  Nor does the Objection mention that the Petition to Deny was filed *after* Ligado and AST had already noticed appeals; indeed, the Objection tries to bury this fact by stating that Ligado and AST filed motions to vacate the District Court Order "the day after Inmarsat filed" the Petition to Deny.  Objection ¶ 26.  This is misleading, at best.  Inmarsat was on notice of the appeals having been filed prior to filing the Petition to Deny and the motions to vacate were filed overnight in the very early morning hours of February 28, 2026.[4]  The Objection does nothing to explain how Inmarsat's egregious course of conduct was anything but an attempt to avoid the Third Circuit's review.  If Inmarsat had simply waited to file their Petition to Deny on the date that it was due, the Third Circuit would have prevented them from filing it and Ligado would have been spared from that material breach.  That "Inmarsat had drafted and was preparing to file the Petition [to Deny] on February 27 before Ligado or AST even noticed an appeal" is of no matter.[5]  Objection ¶ 25.  Inmarsat was aware of the appeals being filed before it rushed to the FCC four days before the deadline.

9.      Inmarsat also cites the District Court Order as support for its argument that Inmarsat filed the Petition to Deny in good faith.  *See* Objection ¶¶ 7, 62.  But this ignores that the District Court Order was based on a fundamental and foundational misunderstanding by the District Court: that Inmarsat and Ligado never executed the Amended Inmarsat Cooperation Agreement.  *See* Motion Ex. D at 6 (finding District Court made a "factual error" in stating that "no agreement was

---

[4]   Moreover, the filing of the motions to vacate was delayed until the early morning hours in large part because Ligado and AST needed to address Inmarsat's premature filing of the Petition to Deny in the motions.

[5]   To that end, why did Inmarsat not have a full-throated statement in support ready and drafted before the outcome of the Third Circuit appeal?

reached" when the parties had incorporated the Mediated Agreement terms into the Amended Inmarsat Cooperation Agreement).   The District Court's confusion was the direct result of Inmarsat's disingenuous assertion to the District Court that the Mediated Agreement "contemplated the parties' entry into the 'Amended Inmarsat Cooperation Agreement,' defined as the 'Amendment and Restatement to the Inmarsat Cooperation Agreement contemplated by this Term Sheet.'   The reason the agreement was to be 'Restate[d]' was precisely because it would have new coordination terms" that, according to Inmarsat, were never reached.  D. Docket No. 37 at 8 (internal citations omitted).   Inmarsat knew the parties had executed the Amended Inmarsat Cooperation Agreement even if it had confused the District Court into thinking that they had not.

10.    And, despite Inmarsat's protestations otherwise, Inmarsat's mandated remedial actions did not timely cure the breaches, nor have they erased the damage.  Although Inmarsat has now requested to withdraw the Petition to Deny—as it was *required* to do so upon entry of the Third Circuit Order—Ligado and AST cannot be restored to the original position that they would have occupied absent Inmarsat's breaches.  Again, the harm of placing the Complaint and Petition to Deny into the public record and allowing others to seize upon Inmarsat's vehement arguments against the Proposed NGSO System cannot be undone and is in direct contravention of the affirmative support requiring them to "refrain[] from taking any public or private action contrary to" their obligation to affirmatively support the Application.[6]

11.    The assertion that Inmarsat timely cured is laughable.  *See* Objection ¶ 43. Inmarsat's single sentence letter of support to the FCC did not cure the breach of filing the Petition to Deny.  The Petition to Deny made, over seven pages, spirited arguments against the Proposed NGSO System and enabled other parties to object to the Proposed NGSO System on the grounds

---

[6]    Mediated Agreement § 2.

that the system was not coordinated with Inmarsat.[7]  Inmarsat's single sentence letter did not expressly and specifically repudiate each argument raised in the Petition to Deny or explain with particularity the substantive basis for its support and reversal of its prior position.  In short, Inmarsat did not put forward a submission containing sufficient detail and persuasive force to counterbalance the lingering effects of the Petition to Deny.  And Inmarsat does not even attempt to explain how Inmarsat purportedly timely (within 10 days) cured the breach caused by filing the Complaint when Inmarsat did not dismiss the Complaint until March 2, 2026, nearly three months after the lawsuit was initially filed.

12.     Inmarsat's Reply Comments filed on March 23, 2026 similarly do not cure or undo the harm of the Petition to Deny.[8]  The Reply Comments, filed as required by the Mediated Agreement and Amended Inmarsat Cooperation Agreement,[9] address certain of SSA and Iridium's concerns with the Application.  Inmarsat, however, replied to these concerns on a high level by reiterating the decision from the Third Circuit and noting that it supports the Application "pursuant to the decision of the" Third Circuit.[10]  And although the Reply Comments provide thin support for the Application, the harm done is irreparable.

---

[7]     It is of no import, nor is it a surprise, that Ligado said the Petition to Deny is "not part of the record" and therefore cannot be considered by the FCC.  *See* Objection Ex. Q at 5 n.12.  It is true that the Petition to Deny is now technically a nullity before the FCC, but that does not undo the harm Inmarsat inflicted in making that filing. Although other filers should not rely on a withdrawn petition, Iridium has.  And regardless, Inmarsat's filing injected uncertainty and delay into a regulatory process pivotal to the Plan and the Debtors' emergence from bankruptcy—the very thing Ligado sought to avoid in negotiating the Mediated Agreement.

[8]     *See Reply Comments of Inmarsat Global Ltd.*, In the Matter of Application of Ligado Networks Subsidiary, LLC, Debtor in Possession, File No. SAT-MOD-20251206-00374, dated Mar. 23, 2026 (the "Reply Comments").

[9]     *See* Mediated Agreement § 2 (including filing reply comments among the affirmative support obligations of Inmarsat).

[10]    *See Reply Comments of Inmarsat Global Ltd.*, In the Matter of Application of Ligado Networks Subsidiary, LLC, Debtor in Possession, File No. SAT-MOD-20251206-00374, dated Mar. 23, 2026.

## II.    The Relief Sought in the Motion Is Not Inconsistent with the Mediated Agreement

13.    Inmarsat asserts that Ligado cannot seek a temporary delay of Ligado's performance under the Mediated Agreement, and that the remedy Ligado seeks is indeed "inconsistent" with the Mediated Agreement and the Amended Cooperation Agreement. Objection ¶¶ 51, 65.  But as explained in the Motion, Inmarsat's egregious conduct necessitates equitable relief to permit a *temporary* delay of the Upcoming Cure Payment until the Debtors can better assess the harm that Inmarsat has caused.[11]  After Inmarsat received $420 million from Ligado and AST, Inmarsat then brazenly publicly rejected its obligations under the Mediated Agreement and instead filed the Complaint in New York state court alleging that the Proposed NGSO System was not sufficiently coordinated and promised to *oppose* the Application.  This Court found that Inmarsat breached the Mediated Agreement and ordered Inmarsat to comply with its obligations under the Mediated Agreement.  Inmarsat appealed that order, and on February 27, 2026, the District Court granted Inmarsat a stay pending appeal.  That same day, an hour *after* Ligado and AST noticed appeals to the Third Circuit, Inmarsat made good upon its threat issued in the Complaint and seized its opportunity to file—four days in advance of the March 2, 2026 FCC deadline—the Petition to Deny.  This harm cannot be undone.  Inmarsat's Petition to Deny was a full-throated opposition to the Application placed into the FCC public record which, as Inmarsat likely hoped, others seized upon to argue to the FCC that it should deny the Application.

14.    As explained above, a temporary delay makes sense here and is in no way inconsistent with the Mediated Agreement.  Inmarsat makes the outrageous assertion that Ligado

---

[11]    Inmarsat's repeated assertion that Ligado is seeking to "indefinitely" delay making the Upcoming Cure Payment is false. *See* Objection ¶¶ 1, 36, 45.  The Motion makes plain that Ligado is seeking only for the Court to authorize Ligado to hold the Upcoming Cure Payment in escrow until the earlier of (i) the Effective Date or (ii) if such amount is not offset by damages owed by Inmarsat to Ligado and/or AST, final resolution of any potential litigation arising from Inmarsat's breach of the Mediated Agreement following an FCC order on the Application.

cannot seek any remedies outside of a "specified a three-step process" laid out in the Mediated

Agreement (Objection ¶ 39) but in any event, Ligado can never have any claims against Inmarsat

unless an "Inmarsat-Caused FCC Non-Approval" occurs.   Objection ¶ 44.   This blatantly

misconstrues the Mediated Agreement, which provides:

> If Ligado is aware of an Inmarsat action (or inaction) that it believes breaches Inmarsat's regulatory support obligations in Section 2, it must provide notice of the alleged breach within ten (10) days of becoming aware of such action (or inaction). Inmarsat shall have ten (10) days to cure the alleged breach.  If the alleged breach is not cured within ten (10) days, then Ligado *may* file a claim that Inmarsat has breached its Section 2 obligations ("Breach Allegations"), provided that such a claim *must be filed no later than* the day that is thirty (30) days following an "Inmarsat- Caused FCC Non-Approval."

Mediated Agreement § 5 (emphasis added).  An "Inmarsat-Caused FCC Non-Approval" is defined

as "denial of Ligado's FCC application for the Proposed NGSO System, or the FCC imposition of

limitations or conditions on the grant of the FCC Application, in either case caused by Inmarsat's

actual breach of its regulatory support obligations specified in any Breach Allegations." *Id.* at 9.

The plain language of the Mediated Agreement provides Ligado has the ability to file claims

against Inmarsat for breach *up to and until* 30 days following an Inmarsat-Caused FCC Non-

Approval, if one occurs.  Nowhere in the Mediated Agreement does it specify that an Inmarsat-

Caused FCC Non-Approval is a *predicate* to Ligado having a claim for breach against Inmarsat.

Nor does the Mediated Agreement obligate Ligado to seek relief under the three-step process

identified in the Mediated Agreement now.  *See* Objection ¶ 39.

15.     The result that Inmarsat espouses is nonsensical, as Ligado already has suffered

damages as a result of the delay and uncertainty caused by Inmarsat's actions that predate any

future Inmarsat-Caused FCC Non-Approval.  Indeed, this delay and uncertainty is precisely what

Ligado negotiated to avoid via the Mediated Agreement.  It is true that until the FCC makes a

determination on the Application, Ligado may not know the full extent of the damages caused by

Inmarsat's breaches of the Mediated Agreement.  But although the *extent* of the harm cannot yet be ascertained, it is unquestionable that Inmarsat has breached the Mediated Agreement and caused Ligado and AST some harm.  Ligado and AST should not now have to turn over an additional $100 million to Inmarsat until it can be determined whether the size of their substantial claims against Inmarsat will dwarf the Upcoming Cure Payment.

16.    To the extent the Court utilizes its equitable power to temporarily extend the Upcoming Cure Payment deadline, Inmarsat will not be irreparably harmed, as the funds are preserved should they ultimately need to be paid.

**III.    The Court Can Authorize Holding the Upcoming Cure Payment in Escrow**

17.    Inmarsat complains that, by the Motion, Ligado is seeking a bespoke form of relief. *See* Objection ¶ 45.  On this at least, Inmarsat is not off the mark.  These are not ordinary circumstances.  To avoid uncertainty, risk, and delay in the regulatory processes required to complete the AST Transaction—the key piece of Ligado's restructuring—Ligado and AST agreed to pay Inmarsat hundreds of millions of dollars.  And this is the critical issue Inmarsat fails to grasp: the Mediated Agreement obligated Inmarsat to affirmatively support the Application before the FCC, but instead, it filed an uninhibited Complaint and a premature Petition to Deny. Inmarsat's breaches were not (and cannot be) cured.  The harm is irreparable.

18.    To be clear, Ligado is not asking this Court to forever (or indefinitely, as Inmarsat suggests) relieve the obligation to make the Upcoming Cure Payment.  But Inmarsat has inflicted substantial harm, and equity mandates that the Debtors be permitted to hold the Upcoming Cure Payment in escrow until the final result of Inmarsat's actions can be determined.

19.    Contrary to Inmarsat's arguments otherwise, this Court retained jurisdiction over the Mediated Agreement and it may exercise that jurisdiction to authorize the requested relief

pursuant to section 105(a) of the Bankruptcy Code.   11 U.S.C. § 105(a); AST Order ¶ 13. Inmarsat's attempts to distinguish *Wolf and Scharf* do not overcome the simple truth that courts may modify a settlement agreement when a party has materially breached the agreement.  *See Wolf v. Wolf*, 59 F. App'x 403, 406 (2d Cir. 2003); *Scharf v. Levittown Pub. Schs.*, 970 F. Supp. 122, 129 (E.D.N.Y. 1997).   That principle is even more apt when the settlement to be modified was approved by a bankruptcy court that can utilize its equitable powers to simply authorize a delay in making a payment due under a settlement it approved.

## IV.      Inmarsat's Other Assertions Provide No Basis to Deny the Motion

20.      **An Adversary Proceeding Is Not Necessary.**   An adversary proceeding is not required for the Court to issue the relief sought by the Motion.  *See* Objection ¶¶ 63-65.   There is no dispute that this Court retained jurisdiction over the Mediated Agreement.  *See* AST Order ¶ 13 ("This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order, including enforcement of the Mediated Agreement.").   Inmarsat cannot explain why an Adversary Proceeding would be necessary for this Court to exercise that retained jurisdiction to modify its own order.

21.      **This Court Can Exercise Jurisdiction.**   The same reasoning negates Inmarsat's assertion that this Court should not exercise its jurisdiction here.  *See* Objection ¶¶ 66-71.  As made clear throughout the Motion, the Debtors are seeking a temporary delay of performance due under an order over which this Court expressly retained jurisdiction.   The Court has inherent authority to enforce its own orders and should exercise its jurisdiction to issue the relief requested in the Motion.

11

## CONCLUSION

22.    For the reasons stated herein and in the Motion, the Debtors respectfully request that the Court overrule the Objection, grant the Motion, equitably relieve the Debtors from making the Upcoming Cure Payment by March 31, 2026, and grant such other and further relief as may be just and proper.

[*Remainder of page intentionally left blank*]

Dated: March 25, 2026  /s/ Michael J. Merchant
Wilmington, Delaware  Mark D. Collins, Esq. (Bar No. 2981)
Michael J. Merchant, Esq. (Bar No. 3854)
Amanda R. Steele, Esq. (Bar No. 5530)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:        collins@rlf.com
              merchant@rlf.com
              steele@rlf.com

-and-

Dennis F. Dunne, Esq. (admitted *pro hac vice*)
Matthew L. Brod, Esq. (admitted *pro hac vice*)
Lauren C. Doyle, Esq. (admitted *pro hac vice*)
**MILBANK LLP**
55 Hudson Yards
New York, New York 10001
Telephone:    (212) 530-5000
Facsimile:    (212) 530-5219
Email:        ddunne@milbank.com
              mbrod@milbank.com
              ldoyle@milbank.com

Andrew M. Leblanc, Esq. (admitted *pro hac vice*)
Melanie Westover Yanez, Esq. (admitted *pro hac vice*)
**MILBANK LLP**
1101 New York Avenue, NW
Washington DC 20005
Telephone:    (202) 835-7500
Facsimile:    (202) 263-7586
Email:        aleblanc@milbank.com
              mwyanez@milbank.com

*Co-Counsel for Debtors in Possession*