**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIGADO NETWORKS LLC, *et al.*,[1] | ) | Case No. 25-10006 (TMH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket Nos. 1672 & 1674** |
| | ) | |

**ORDER (I) APPROVING THE THIRD AMENDMENT TO**
**THE DIP CREDIT AGREEMENT AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned Debtors for entry of an order

(i) approving the Third DIP Amendment and (ii) granting certain related relief; and this Court

having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

*Standing Order of Reference* of the United States District Court for the District of Delaware, dated

February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2) and that this Court may enter a final order consistent with Article III of the U.S.

Constitution; and this Court having found that venue in this district is proper pursuant to 28 U.S.C.

§§ 1408 and 1409; and this Court having found that the notice of the Motion was appropriate under

the circumstances and that no other notice need be provided; and this Court having reviewed the

Motion; and this Court having determined that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and upon all of the proceedings had before this

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Ligado Networks LLC (3801); ATC Technologies, LLC (N/A); Ligado Networks (Canada) Inc. (N/A); Ligado Networks Build LLC (N/A); Ligado Networks Corp. (N/A); Ligado Networks Finance LLC (N/A); Ligado Networks Holdings (Canada) Inc. (N/A); Ligado Networks Inc. of Virginia (9725); Ligado Networks Subsidiary LLC (N/A); One Dot Six LLC (8763); and One Dot Six TVCC LLC (N/A).  The Debtors' headquarters is located at: 10802 Parkridge Boulevard, Reston, Virginia 20191.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or in the Third DIP Amendment.

Court; and after due deliberation and sufficient cause appearing therefor, this Court makes the following findings of fact and conclusions of law:

A.      The financing available under the DIP Loan Documents, as amended by the Third DIP Amendment, represents the best and only available financing option for the Debtors under the circumstances.  The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders.

B.      The terms of the Third DIP Amendment are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties, and constitute reasonably equivalent value and fair consideration.

C.      The terms of the Third DIP Amendment have been negotiated in good faith and at arm's length between the Debtors and the DIP Lenders.

Based on the foregoing, it is **HEREBY ORDERED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      The Third DIP Amendment attached hereto as **Exhibit 1** is approved.

3.      The Borrower is authorized and empowered to incur, and the Guarantors are hereby authorized and empowered to unconditionally guarantee, on a joint and several basis, the Additional Loans (including the Additional Roll-Up) in the aggregate principal amount of $125,000,000, together with applicable interest, protective advances, expenses, fees, and other charges due and payable therewith, subject to the terms and conditions of this order, the DIP Loan Documents, and the DIP Orders.  The Borrower is authorized and directed to pay, on a current basis, all fees and expenses as and when due under the terms of the Third DIP Amendment.  The Additional Loans shall constitute "DIP Loans" as defined in the DIP Orders, and all terms of the Final DIP Order shall be applicable to such Additional Loans (including the Additional Roll-Up).

4.      Without limiting the foregoing, and without the need for further approval of this Court, each Loan Party is authorized to perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution or recordation of pledge and security agreements, deeds of trust, and financing statements), and to pay all fees that may be required, necessary, or desirable for the Loan Parties to implement the terms of, performance of their obligations under or effectuate the purposes of and transactions contemplated by this order.

5.      The DIP Loan Documents and the Additional Loans (including the Additional Roll-Up) constitute valid, binding, enforceable, and non-avoidable obligations of each of the Loan Parties, and are fully enforceable against each of the Loan Parties, their estates, and any successors thereto, including, without limitation, any estate representative or trustee appointed in any of these chapter 11 cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of these chapter 11 cases, or in any other proceedings superseding or relating to any of the foregoing and/or upon the dismissal of any of these chapter 11 cases or any such successor cases, and their creditors and other parties in interest, in each case, in accordance with the terms thereof, this order, and the DIP Orders, as applicable.  The Loan Parties are jointly and severally liable for the Additional Loans (including the Additional Roll-Up).  No obligation, payment, transfer, or grant of security under the DIP Loan Documents, this order, or the DIP Orders to the DIP Lenders shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, 548, or 549 of the Bankruptcy Code, any applicable Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or other state statute or common law), or subject to any defense, reduction, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim, claim, counterclaim, offset, or any other challenge under the Bankruptcy Code or any applicable law.

6.      The proceeds of the Additional Loans (i) shall be held in the Escrow Account and constitute "DIP Collateral" as such term is defined in the Final DIP Order, (ii) may only be withdrawn from the Escrow Account subject to the satisfaction of the applicable conditions precedent in the Amended Loan Agreement, and (iii) upon the occurrence of and during the continuance of an Event of Default, at the direction of the Required Ad Hoc Lenders, the Administrative Agent shall (subject to complying with the DIP Remedies Notice Period (as defined in the Final DIP Order)) apply all funds on deposit in the Escrow Account to repay or prepay, as applicable, the 2026 DIP Term Loans, which shall be applied to the 2026 DIP Term Loans, allocated between the DIP New Money Loans and the Roll-Up Loans in accordance with Section 2.10(h) of the Amended Loan Agreement.

7.      Paragraph 25(a) of the Final DIP Order shall be revised and replaced in its entirety with the following:  "**Definition**.  As used in this Final Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code, together with interest, if any, under section 3717 of title 31 of the United States Code (without regard to the notice set forth in clause (iii) below); (ii) all reasonable fees and expenses up to $25,000.00 incurred by a trustee appointed under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in clause (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all fees and expenses incurred by persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Committee (if any) pursuant to sections 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before, or on the first business day following, delivery by the DIP Agent (acting at the direction of the Required Lenders) of a

Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice (the "Allowed Professional Fees"); and (iv) Allowed Professional Fees of Debtor Professionals, in an aggregate amount not to exceed (a) $1,500,000 plus (b) the amount of any earned and payable transaction or similar fee (including any deferred fees) approved by the Court in connection with an order authorizing the Debtors' retention of their investment banker (provided, that to the extent that the Debtors include an amount in the Carve-Out pursuant to (iv)(b), it shall be in funded into a segregated account and shall only be eligible to fund the specific investment banker fees for which it was initially included; provided, further, that, solely in connection with any conversion of these cases under chapter 7 of the Bankruptcy Code, under no circumstance shall the amount for (iv)(b) include a reserve for any success or transaction fee that could have been earned in connection with consummation of the Plan had it taken effect unless such amounts would otherwise be payable in connection with the chapter 7 cases), incurred after the first business day following delivery by the DIP Agent (acting at the direction of the Required Lenders) of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amount set forth in this clause (iv), the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, the "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent (acting at the direction of the Required Lenders) to the Debtors, their lead restructuring counsel, the U.S. Trustee, and the lead restructuring counsel to the Committee (if any), delivered following the occurrence and during the continuation of a Termination Event, stating that the Post-Carve Out Trigger Notice Cap has been invoked."

8.      All parties' obligations and indebtedness arising under, in respect of, or in connection with the Third DIP Amendment shall be deemed to have been extended by the DIP

Lenders in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Lenders (and the successors and assigns thereof, solely in their capacity as such) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the DIP Orders, this order, or any provision thereof and hereof is vacated, reversed, or modified, on appeal or otherwise.

9. Except as otherwise expressly provided herein or in the Third DIP Amendment, each provision of the DIP Orders and the DIP Loan Documents shall remain unchanged and in full force and effect. All liens, priorities, and other rights, remedies, benefits, privileges, releases, and protections provided to the DIP Secured Parties in the DIP Orders and the DIP Loan Documents shall apply with equal force and effect with respect to the Third DIP Amendment and all rights and obligations in connection therewith or related thereto.

10. The Debtors are authorized to take any and all actions necessary or appropriate to effectuate the relief granted in this order.

11. Notwithstanding anything in the Bankruptcy Rules to the contrary, this order is immediately effective and enforceable upon its entry.

12. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this order.

**Dated: May 22nd, 2026**
**Wilmington, Delaware**

**THOMAS M. HORAN**
**UNITED STATES BANKRUPTCY JUDGE**

6